**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHERYL HALL FRAZIER,** | ) | |
| **individually and on behalf of a class** | ) | |
| **of similarly situated persons,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:08-cv-11-MHT** |
| | ) | |
| **ACCREDITED HOME LENDERS,** | ) | |
| **INC., d/b/a HOME FUNDS DIRECT,** | ) | |
| | ) | |
| **Defendant** | ) | |

## DEFENDANT ACCREDITED HOME LENDERS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendant Accredited Home Lenders, Inc., doing business as Home Funds Direct (herinafter, "Accredited"), is entitled to summary judgment in the instant case because the undisputed facts provide no evidentiary basis to support Plaintiff's claims. Plaintiff has sued Accredited pursuant to a federal statute that requires lenders to inform consumers of the cost of credit they obtain. The purpose behind the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, is to make sure borrowers are aware of how much certain loans will cost them, so that they can shop around for the best terms before obtaining a loan. *See* 15 U.S.C. § 1601(a). Curiously, the facts and circumstances of this case show that, not only did Accredited provide Plaintiff with the required information, but Accredited even went so far as to overestimate that portion of the loan transaction that reflects the cost of the loan. In essence, Accredited's minor miscalculation of Plaintiff's finance charge worked to Plaintiff's advantage by indicating to her that the loan

would cost more than it actually did, thus giving Plaintiff even more incentive to shop her loan around to other lenders, which is the primary purpose of TILA. *Id.*

Contrary to Plaintiff's allegations, it is clear that Accredited did not violate TILA, and Plaintiff is not entitled to any of the relief she seeks. Civil damages are not available to Plaintiff, because the one-year limitation on such damages expired some eighteen months before Plaintiff filed the instant suit. Additionally, Accredited properly excluded from the finance charge certain allegedly "marked-up" settlement fees, because the settlement company that closed Plaintiff's loan, Swafford and Hays Settlement Services ("Swafford"), did not act as Accredited's agent, and Accredited did not require or retain any portion of those fees. Furthermore, any allegedly erroneous disclosures of the amount financed, the finance charge, and the APR were within the permissible margin of error and therefore do not violate TILA. The evidence also indicates that Plaintiff's loan is not a "high cost" loan and therefore does not trigger the protections afforded by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1639, as implemented by 12 C.F.R. § 226.32. Accordingly, Plaintiff is not entitled to rescind her loan, nor is she entitled to recover any form of damages from Accredited. There is no genuine issue of material fact in this case, and as such, Accredited respectfully requests that its Motion for Summary Judgment be granted.

## FACTS

Plaintiff Cheryl Hall Frazier obtained from Accredited a $56,000 loan secured by a mortgage on her home on March 25, 2005. While Accredited funded the loan, the loan was actually closed by Swafford, who is not a party to this suit.

As part of the loan transaction, Plaintiff was provided a Truth in Lending Disclosure Statement, Good Faith Estimate, and a HUD Settlement Statement, which listed various amounts

charged in conjunction with Plaintiff's loan and which were all signed by Plaintiff.  *See* Truth in Lending Disclosure Statement, Good Faith Estimate, and HUD-1 Settlement Statement, attached as Exhibits 1, 2, and 3, respectively.   Both the Truth in Lending Disclosure and the Good Faith Estimate were prepared by Accredited, and the Settlement Statement was prepared by Swafford.  *See* Deposition of Robert Dooley as representative for Accredited, attached without exhibits as Exhibit 4, at 43, 5-7; 55, 20-21; 63, 10-11.

Plaintiff insists in her First Amended Complaint ("Complaint") that Accredited violated various provisions of TILA by failing to properly disclose as finance charges certain fees imposed for recording the mortgage, abstract/title search, title examination, title insurance, and endorsements (collectively, "settlement fees").  Complaint, at ¶¶ 34-36.   Implicit in Plaintiff's allegations is an assertion that in closing the loan, Swafford acted on behalf of and as agent for Accredited, and therefore Accredited must be liable for Swafford's alleged marking up of these particular fees.  Complaint, at ¶ 11.  To the contrary, Swafford acted independently of Accredited in imposing the settlement fees charged to Plaintiff.  Deposition of Greg Swafford, attached without exhibits as Exhibit 5, at 45, 20-25; 46, 1-5; Deposition of Cheryl Hall Frazier, attached without exhibits as Exhibit 6, at 42, 19-22; 44, 6-10; Exhibit 4, at 97, 5-10.  Accordingly, these settlement fees were properly excluded from the finance charge pursuant to TILA.

Plaintiff also alleges that her loan was subject to protections afforded by HOEPA because the points and fees associated with her loan exceeded 8% of the total loan amount.  Complaint, at ¶ 70.  Furthermore, because Accredited allegedly failed to provide Plaintiff with certain disclosures at least three days in advance of the loan closing in accordance with HOEPA, Plaintiff asserts that she is entitled to damages and rescission of the loan.  Complaint, at ¶¶ 71-75.  However, as demonstrated below, Plaintiff's loan was not a "high cost" loan by HOEPA

standards, and Plaintiff is not entitled to rescind her loan or collect any amount of damages from Accredited.

## LAW AND ARGUMENT

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party points to an absence of proof on claims as to which the non-movant has the burden of proof at trial, the non-moving party must put forth "sufficient evidence … for a jury to return a verdict for that party." *Curtis v. Secor Bank*, 896 F. Supp. 1115, 1117 (M.D. Ala. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A non-moving party to a motion for summary judgment is not entitled to rely on general allegations or denials, but must come forth with significant probative evidence demonstrating the existence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Of course, not every fact will defeat a motion for summary judgment. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). A fact issue is "material" only if a reasonable jury could return a verdict for the non-moving party based on the evidence adduced. *Anderson*, 477 U.S. at 248.

Summary judgment should be granted in favor of Accredited because there is no evidence from which a reasonable jury could conclude that settlement fees imposed by Swafford

were improperly excluded from the finance charge or that Plaintiff's loan was a "high cost" loan. Indeed, the facts indicate that Swafford did not act as the agent of Accredited in imposing the settlement fees at issue and Accredited certainly did not require or retain any of those charges. Any alleged inaccuracies in the finance charge disclosure were immaterial for purposes of TILA and actually inured to Plaintiff's benefit by indicating to her that the cost of the loan was higher than it actually was. Finally, the points and fees charged to Plaintiff in the loan transaction did not exceed 8% of the total amount of the loan. Accordingly, Accredited is entitled to summary judgment on all counts.

I.     **Plaintiff's Claim for Damages is Barred by TILA's One Year Limitation Period.**

Plaintiff is not entitled to statutory damages pursuant to 15 U.S.C. § 1640, because she filed the instant lawsuit more than one year after the occurrence of the alleged TILA violations. TILA provides that an action for damages for violations of TILA is to be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). If any violation of TILA occurred, which Accredited denies, it necessarily would have occurred on March 25, 2005, when Plaintiff's loan was closed. Plaintiff waited to file suit, however, until September 7, 2007, almost two and one-half years after the transaction and eighteen months after the limitations period had run. Accordingly, even if the court determined that Plaintiff was entitled to rescind her loan, which Accredited denies, her claim for damages would be barred nonetheless under the one year limitations period. *See Brown v. Nationscredit Fin. Serv. Corp.*, 349 F. Supp. 2d 1134 (N.D. Ill. 2005).

II.     **In Accordance with TILA, Accredited Properly Excluded from the Finance Charge the Purportedly Marked-Up Fees Charged by Swafford.**

As the first section of TILA points out, disclosure of the finance charge and other aspects of a loan transaction not only adds stability to the economy and increases competition among

lenders, but such disclosure also enables consumers "to compare more readily the various credit terms available … and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).  Regulation Z requires that the disclosures made to the borrower both describe the finance charge as "the dollar amount the credit will cost [the borrower]" and list the amount of the finance charge.  12 C.F.R. § 226.18(d).  While the technical definition of "finance charge" is quite complicated and full of numerous exceptions under TILA, the finance charge basically amounts to "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit."  15 U.S.C. § 1605(a).  Clearly, then, TILA requires that the finance charge be disclosed so that a prospective borrower shopping for a loan will know how much he or she will ultimately have to pay in order to obtain a particular loan.

Frazier alleges that Accredited's failure to include in the finance charge certain allegedly marked-up settlement fees amounts to a violation of TILA.  However, these fees were properly excluded from the finance charge because Swafford did not act as the agent of Accredited in imposing these fees, and Accredited neither required nor retained these fees.  *See* 15 U.S.C. § 1605(a).  Furthermore, even if Frazier were able to prove that the fees were required and retained by Accredited, which Accredited denies, the fees were bona fide and reasonable and were therefore properly excluded from the finance charge.  *See* 12 C.F.R. § 226.4(c)(7).[1] Finally, even if Frazier were to prove that some portion of the settlement fees should have been included in the finance charge, which Accredited also denies, the finance charge that was

---

[1] Regulation Z, 12 C.F.R. § 226.1 *et seq.*, is the Federal Reserve Board's regulation implementing the Truth in Lending Act, and, "absent some obvious repugnance to [TILA], the Board's regulation implementing this legislation should be accepted by the courts, as should the Board's interpretation of its own regulation."  *Anderson Brothers Ford v. Valencia*, 452 U.S. 205, 219 (1981).

disclosed was within TILA's tolerance for accuracy and thus cannot form the basis for liability. *See* 15 U.S.C. § 1605(f).

A.     **Accredited is not liable for the acts of Swafford, because Swafford did not act as Accredited's agent in imposing the allegedly marked-up settlement fees.**

Plaintiff's claims against Accredited rely on the mistaken assumption that the settlement agent who closed Plaintiff's loan, Swafford, acted as the agent of Accredited.  To the contrary, as evidenced by Swafford's deposition testimony, Swafford acted independently of Accredited in closing Plaintiff's loan, and as such, Accredited cannot be charged with any responsibility for Swafford's actions.  In situations similar to that of Accredited, courts have held that TILA liability should not be imposed on a lender based on the actions of an independent settlement agent.

In *O'Brien v. J.I. Kislak Mortgage Corp.*, 934 F. Supp. 1348 (S.D. Fla. 1996), the court rejected plaintiffs' argument that closing instructions provided by the lender established an agency relationship between the lender and its closing agents and correspondents such that TILA liability could be imposed on the lender based on fees charged by the closing agent.  934 F. Supp. at 1358.  The court explained, "the act of sending closing instructions raises, at the most, an issue of fact as to whether the correspondent or closing party is an agent of the lender."  *Id.* (citing *Hickey v. Great Western Mortgage Corp.*, No. 94 C 3638, 1995 WL 121534 (N.D. Ill. Mar. 17, 1995)).  Indeed, "[c]losing instructions by themselves do not prove an agency relationship."  *Id.* (citing *Hickey*; *Baker v. ICA Mortage Corp.*, 588 A.2d 616 (R.I. 1991)).

In *Cowan v. Bank United of Texas*, 70 F.3d 937 (7th Cir. 1996), the court held that TILA did not require disclosure of a $14 overnight courier fee as part of the finance charge because the fee was imposed by the title company and the lender did not require payment of prior mortgages to be made via overnight courier service.  70 F.3d at 943.  The court rejected plaintiffs'

arguments that the lender's knowledge of the overnight courier fee and desire that the prior

mortgages be paid off promptly amounted to a requirement from the lender that the title

company use the overnight service. *Id.* at 942. The court explained:

> [W]hen the title company is making its own decisions on how to carry out its
> responsibility as settlement agent at a closing the lender is not responsible and the
> [Truth in Lending] Act is not in play, even if the lender has a perfectly clear idea
> of what the title company is going to do. Any other conclusion would rapidly
> expand the concept of "finance charge" to encompass every fee by whomever
> charged in connection with the making of a loan.

*Id.* at 943.

Alabama district courts have similarly held that fees imposed by a settlement company

were not required to be disclosed as part of the finance charge when the settlement company was

not acting as the lender's agent. In *Smith v. Highland Bank*, 915 F. Supp. 281 (N.D. Ala. 1996)

plaintiff claimed an expedited delivery fee which covered overnight delivery of the payoff of

plaintiff's prior mortgage, delivery of executed loan documents to the lender, and $6 retained by

the closing attorney, should have been disclosed as a "finance charge" under TILA. 915 F. Supp.

at 284-285. The court concluded that the fee was not to be disclosed as a finance charge,

because the closing attorney testified that he imposed the charge on his own initiative and was

not required or requested by the lender to use overnight delivery. *Id.* Furthermore, while the

closing attorney acted on behalf of the lender "in certain aspects of the closing transaction, he

also acted as the agent of the borrower, plaintiff, in other aspects of the transaction." *Id.* at 287.

Based on testimony of the closing attorney that he acted solely on behalf of the borrower in

arranging for the expedited delivery and based on the fact that expedited delivery of the payoff

saved plaintiff over $400.00 in interest on the prior mortgage, it was clear that the closing

attorney was not acting as the lender's agent in imposing the $25 fee, and no TILA violation had

occurred. *Id.*

The court in *Curtis v. Secor Bank*, 896 F. Supp. 1115 (M.D. Ala. 1995), granted summary judgment in favor of defendant lender on the basis that an overnight delivery fee imposed by the closing agent was neither required nor retained by the lender. 896 F. Supp. at 1119. In deciding the motion, the court considered an unopposed affidavit of the closing attorney stating that the lender did not require payoff checks to be sent overnight; that the lender's closing instructions did not require overnight delivery; the lender's lack of involvement in the manner of the prior lien's satisfaction; the fact that the overnight delivery benefitted plaintiff, rather than the lender, by saving plaintiff $700 in interest; and finally, that the lender did not retain any portion of the $15 overnight delivery charge. *Id.*

According to the testimony of Greg Swafford and Accredited representative Robert Dooley, Accredited advised Swafford of the amounts to charge the borrower for "lender fees," which include those items listed at Section B of the lender's closing instructions. *See* Closing Instructions, attached as Exhibit 7, at 1; Exhibit 5, at 43, 21-24; Exhibit 4, at 43, 25; 44, 1-10; 52, 6-8. Indeed, Accredited determined those fees and withheld those amounts when they sent the loan funds to Swafford for disbursal. Exhibit 5, at 45, 1-5. On the other hand, those fees listed at lines 1102 (Abstract/Title Search), 1103 (Title Examination), 1108 (Title Insurance), 1111 (Endorsements), and 1201 (Recording Fees) of the HUD Settlement Statement were charged by Swafford without any involvement by Accredited in calculating or charging those fees. *Id.* at 45, 20-25; 46, 1-9; Exhibit 4, at 44, 11-21; Exhibit 6 at 42, 19-22; 44, 6-10; 57,23; 58, 1-8. Because Accredited was not involved at all in imposing these settlement fees, it can hardly be said that Swafford was acting as the agent of Accredited in charging these fees to Plaintiff. As such, liability for Swafford's alleged mark-ups of these fees can not be imposed on Accredited, and

Accredited can not be held liable for failing to disclose the settlement agent's fees as part of the finance charge.

### B.    Accredited neither required nor retained any portion of the allegedly marked-up fees charged by Swafford.

TILA provides that charges imposed by a closing agent are not to be included in the finance charge "if the creditor does not require the imposition of the charges or the services provided and does not retain the charges."  15 U.S.C.A. § 1605(a).  Accordingly, the allegedly marked-up charges for title insurance, abstract/title search, title examination, endorsements, and recording fees were properly excluded from the finance charge, because Accredited did not require the allegedly marked-up charges to be imposed and Accredited did not retain any portion of the marked-up amounts.  *See* Exhibit 5, at 120, 22-25; Exhibit 6, at 42, 15-18; 44, 16-22; 46, 16-19; 47, 14-18.

Swafford testified in his 30(b)(6) deposition that, with respect to the $250 charge for title examination, no amount of that charge was paid to a third party.  Exhibit 5, at 52, 19-21; 54, 12-18.  Therefore, it is clear that Accredited did not retain any portion of that charge.  Similarly, Accredited received no portion of the $200 charge for title insurance, as that amount was divided between the title insurance company and Swafford.  *Id.* at 63, 1-7.  The $120 recording fee was split between Swafford and the court where the mortgage was recorded, with Accredited receiving no portion of that fee.  *Id.* at 69, 10-14.  Swafford confirmed that Accredited received no portion of the fees charged for abstract/title search, title examination, title insurance, endorsements or recording fees.  *Id.* at 71, 6-11.  Frazier also testified in her deposition that she was unaware of any evidence that Accredited played any role in determining the amount of those fees or that Accredited retained any portion of those fees.  Exhibit 6, at 42, 15-18; 44, 16-22; 46, 16-19; 47, 14-18; 54, 5-10, 18-20; 55, 2-7, 10-17; 56, 12-17; 57, 2-4, 10-15.  Swafford confirmed

that Accredited never "require[d] that any fees be marked up on any amount." Exhibit 5, at 120, 22-25. Swafford further testified that Accredited did not require Frazier to use Swafford to settle her loan. *Id.* at 112, 3-8. Dooley similarly testified that Accredited did not require the use of Swafford, and that if the borrower had requested to use a different settlement company, Accredited would have agreed to negotiate that issue. Exhibit 4, at 54, 1-2, 21-25; 55, 1-3. Accordingly, because Accredited neither required the imposition of the marked-up charges nor retained any portion of those fees, TILA prohibited Accredited from including those fees in the finance charge calculation.

**C.    The contested charges are "bona fide" and "reasonable" pursuant to Regulation Z.**

Even if the allegedly marked-up fees were determined to have been required or retained by Accredited, which is denied, for purposes of TILA, those fees are "bona fide" and "reasonable," and therefore were properly excluded from the finance charge, pursuant to Regulation Z. 12 C.F.R. § 226.4(c)(7). Regulation Z provides that if "bona fide" and "reasonable," certain fees, including "fees for title examination, abstract of title, title insurance, property survey, and similar purposes," may be excluded from the finance charge. § 226.4(c)(7)(i). Furthermore, the Official Staff Interpretation to 12 C.F.R. § 226.4(c)(7) provides that "the cost of verifying or confirming information connected to the item [listed in § 226.4(c)(7)] is also excluded. For example, credit report fees cover not only the cost of the report, but also the cost of verifying information in the report." Official Staff Interpretation, Supp. I to Part 226, 12 C.F.R. § 226.4(c)(7)-1.[2] Accordingly, while portions of the total fees for title insurance, abstract/title search, and title examination may have been retained by Swafford,

---

[2] "The official staff interpretations of Regulation Z, unless demonstrably irrational, are binding." *Smith v. Highland Bank*, 915 F. Supp. 281, 286 (N.D. Ala. 1996) (quoting *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir. 1993))

these portions covered the cost of Swafford's verification and confirmation of the services provided and were bona fide and reasonable. Therefore, these fees were properly excluded from the finance charge.

Case law interpreting this language explains that fees are "bona fide" if the services for which the fees were imposed were actually performed. *Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 800 (7th Cir. 2004). In *Guise*, summary judgment was affirmed for the defendant lender who was sued by borrowers asserting TILA violations based on allegedly inflated fees for title insurance and endorsements that were not included in the finance charge. *Id.* at 798. Plaintiffs asserted that the finance charge was therefore understated and they were entitled to rescind their loan. *Id.* The court concluded that plaintiffs failed to state a claim under TILA, because even if the fees were excessive, the allegedly excessive amount was still "well within the permitted margin of error of $900 under § 1605(f) and 12 C.F.R. § 226.23(g) for a loan of $180,000." *Id.* at 800. Rejecting plaintiffs' argument that if a charge was excessive, then the entire amount of the charge should be included in the finance charge, the court explained, "An allegedly partial overcharge does not convert the entire title insurance transaction into a finance charge, it only demonstrates that some amount of the fee was not eligible from [sic] exclusion from the finance charge computation." *Id.* The court next rejected plaintiffs' argument that no portion of the title insurance fee was reasonable or bona fide and explained that there was no indication that the transaction was not bona fide, where plaintiffs "did not allege in their complaint … that they did not receive title insurance and endorsements from Clearwater, nor did the complaint allege any facts to give rise to the inference that Clearwater failed to perform those services." *Id.* Furthermore, plaintiffs' assertion that the district court was wrong to conclude that $601 would have been a reasonable fee for title insurance and endorsements was rejected, because plaintiffs

themselves stated in their complaint that the $1145 charged was twice a reasonable amount. *Id.* at 800-801.

In *Brannam v. Huntington Mortgage Co.*, 287 F.3d 601 (6th Cir. 2002), the court explained that reasonableness of a fee depends on "the prevailing practices in the relevant market." 287 F.3d at 606. The Sixth Circuit affirmed summary judgment against the Brannams on their claim that the defendant lender violated TILA by failing to disclose as a finance charge a fee for document preparation. *Id.* at 602. The court said that the fee was both bona fide and reasonable; therefore, it was appropriately excluded from the finance charge. *Id.* at 606. There was no evidence to support plaintiffs' claim that the fee for document preparation actually covered loan origination costs and therefore was not bona fide. *Id.* The fee was reasonable, according to the court, because "it was for a service actually performed and reasonable in comparison to the prevailing practices of the industry in the relevant market." *Id.* Furthermore, the court explained that plaintiffs produced no evidence to contradict the lender's evidence that the document preparation fee was reasonable in the locality; therefore, "there [wa]s no genuine issue of material fact as to whether the fee was 'reasonable' as required by Regulation Z." *Id.*

Swafford explained that the $200 charge for abstract or title search covered the cost of receiving and confirming the abstract/title search order with the loan officer, entering the order into the data base, determining the county where the property is located, sending the order to an abstractor in that same county, monitoring the order to make sure it was returned within 48 hours, and reviewing the abstract/title search to make sure it included all necessary components, such as copies of deeds, mortgages, judgments, and legal descriptions, etc. Exhibit 5, at 48, 17-25; 49, 1-7. A portion of the $200 fee was paid to Southern Land & Title for conducting the abstract/title search, and Swafford retained the remaining portion for its cost in verifying

Southern Land & Title's work.  *Id.* at 48, 5-10; 50, 2-9.  Frazier has made no assertion that the abstract/title search was not performed and has provided no proof that the fee was excessive. Accordingly, the fee for abstract/title search was bona fide and reasonable, and was properly excluded from the finance charge.  *See* 12 C.F.R. § 226.4(c)(7); *Brannam*, 287 F.3d at 606.; *Guise*, 377 F.3d at 800.

Swafford testified that the $250 charged for title examination was standard with respect to title examination fees in the industry.  Exhibit 5, at 53, 20-22; 54, 2-6.  The entire amount of this fee was paid directly to Swafford and Hays and covered the cost of Swafford's commitment department receiving the title search from the abstracting department, analyzing the information obtained from the courthouse, and putting this information in the form of a title commitment.  *Id.* at 51, 19-25; 52, 1-14.  The fee also covered any efforts by Swafford's processing department to clear up any issues in the title commitment based on feedback from the lender.  *Id.* at 52.  Again, Frazier has not alleged that this work was not performed and has provided no evidence to contradict Swafford's testimony that the fee for title examination was standard.  Accordingly, the fee was properly excluded from the finance charge.  *See* 12 C.F.R. § 226.4(c)(7); *Brannam*, 287 F.3d at 606.; *Guise*, 377 F.3d at 800.

Swafford also explained that the title insurance fee of $200 was based on the amounts provided by the underwriter, which Swafford understood to have been approved by the Alabama Department of Insurance.  Exhibit 5, at 60, 19-24; 61, 2-6.  Furthermore, Dooley testified that it is Accredited's policy for its employees to review the Settlement Statements to determine if any of the fees were unreasonable or not bona fide.  Exhibit 4, at 46, 17-21; 48, 8-13.  It is Frazier's burden to produce evidence establishing that the rates at issue were unreasonable as compared to the market rates in her locality or that title insurance was not provided.  Frazier has not done so.

Frazier has not and *can not* allege that title insurance was not provided, or that an abstract or title search and title examination were not conducted. Furthermore, Frazier has produced no evidence to support her contention that the fees for title insurance, abstract/title search, and title examination were unreasonable in the context of prevailing rates for these services in her market. Swafford's testimony, however, does support Accredited's position that the rates were reasonable. Even if Frazier were to put forth evidence that portions of the settlement fees were not bona fide and reasonable, any allegedly excessive fees were imposed by Swafford without Accredited's involvement, much less requirement, therefore they were properly excluded from the finance charge.

**D.    The finance charge disclosure is within TILA's tolerance for accuracy.**

Because Accredited actually overestimated the finance charge in the Truth in Lending Disclosure Statement, there was no violation of TILA. Congress expressed the purpose behind TILA as follows:

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit…

15 U.S.C.A. § 1601(a). Congress intended for finance charges and other amounts to be disclosed to borrowers so that they would know the cost of borrowing and perhaps use that information to shop around for credit; therefore, it is not surprising that Congress does not impose TILA liability against lenders when the finance charge disclosed is greater than the actual finance charge. TILA's requirement that the finance charge be disclosed to the borrower is subject to the limitation that "the disclosure of the finance charge and other disclosures affected by the finance

charge" are considered accurate "if the amount disclosed as the finance charge … is greater than the amount required to be disclosed…" 15 U.S.C.A. § 1605(f)(1)(B); *see also Carmichael v. The Payment Center, Inc.*, 336 F.3d 636 (7th Cir. 2003). Accordingly, because Accredited actually *overestimated* the finance charge by including certain lender fees that were not "required to be disclosed" in the finance charge, the Frazier loan transaction did not violate TILA.

The Final Truth-in-Lending Disclosure Statement lists the finance charge as $85,772.51. *See* Exhibit 1. This amount includes the following charges:

- The prepaid finance charge of $3,582.90, which represents the Loan Origination Fee of $1,960.00, plus the Processing Fee of $500.00, the Underwriting Fee of $500.00, the Appraisal Review Fee of $250.00, the Flood Zone Determination Fee of $9.50, the Tax Service Fee of $66.00, the Per Diem Interest Fee of $22.40, and the Settlement/Closing Fee of $275.00; and

- Interest during the term of the loan, which totals $82,189.61 and is calculated by subtracting the principal amount of the loan of $56,000.00 from the total amount of payments of $138,189.61.

*See* Accredited's Response to Plaintiff's Second Set of Interrogatories and Request for Production, attached as Exhibit 8, at Interrog. 3. The prepaid finance charge actually was overstated by $325.50, because the appraisal review fee, the flood zone determination fee, and the tax service fee were not required to be included in the finance charge, pursuant to Regulation Z. Regulation Z provides that "property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations" may be excluded from the finance charge. 12 C.F.R. § 226.4(c)(7)(iv). Also excluded are "[a]mounts required to be paid into escrow or trustee

accounts if the amounts would not otherwise be included in the finance charge."

§ 226.4(c)(7)(v). The fees that are excluded from the finance charge pursuant to § 226.4(c)(7)

include even those fees for services that "are performed by the creditor's employees rather than

by a third party. In addition, the cost of verifying or confirming information connected to the

item is also excluded [from the finance charge]." Official Staff Interpretations, Supp. I to Part

226, 12 C.F.R. § 226.4(c)(7)-1. These fees are collected for the following purposes:

- Flood Zone Determination Fee: for obtaining information regarding whether the property was in a Special Flood Hazard Area and for monitoring the property in the event map revisions result in the restructuring of the lender's insurance requirements;
- Tax Service Fee: for monitoring the property real estate taxes after loan closing;
- Appraisal Review Fee: for an in-house appraiser's review of the appraisal report to verify the adequacy and completeness of the report, and to verify that the property value meets the minimum guidelines for the loan program.

Exhibit 8 at Interrog. 6. Accordingly, these fees were unnecessarily included in the finance

charge calculation, which caused the finance charge as disclosed to exceed the amount "required

to be disclosed" as the finance charge significantly.

Even if Plaintiff were somehow able to prove that the allegedly marked-up portions of the

settlement fees should have been included in the finance charge, which Accredited denies, the

finance charge disclosed would nonetheless be lawful for purposes of TILA because Accredited

actually overestimated the finance charge by $325.50. Accredited disclosed the finance charge

to be $85,772.51, when the amount required to be disclosed as the finance charge was only

$85,447.01. Even if Frazier were to prove, as she alleges in her complaint, that the finance

charge should have included $325 in excess charges for title examination and abstract/title search

(Complaint ¶ 24), $40 for title insurance (Complaint ¶ 26), $50 for endorsements (Complaint

¶ 27), and $64.50 in excess recording fee charges, these charges would amount to $479.50,

which would bring the finance charge to $85,926.51. Regulation Z allows the disclosed finance charged to be *underestimated* by the greater of $100 or one-half of one percent of the loan amount. 12 C.F.R. § 226.23(g). One-half of one percent of $56,000 is $280.00. The finance charge Accredited disclosed ($85,772.51) is only $154 less that the finance charge calculated taking Plaintiff's allegations as true ($85,926.51); therefore, Accredited's disclosure of the finance charge was within TILA's $280 tolerance for accuracy for this loan. *See* 15 U.S.C. § 1605(f); 12 C.F.R. § 226.23(g). Accordingly, there is no genuine issue of material fact regarding the finance charge disclosure, and summary judgment in favor of Accredited is appropriate.

### III.    Plaintiff's Loan Is Not A High Cost Loan Under HOEPA.

The Home Ownership and Equity Protection Act, codified at 15 U.S.C. § 1639, is an amendment to TILA which provides additional protections for borrowers of "high cost" loans. HOEPA requires, among other things, that the creditor disclose to the prospective borrower of a "high cost" loan at least three days before the loan is closed the annual percentage rate and the monthly payment amount associated with the borrower's loan. 15 U.S.C. § 1639(b), 1639(a)(2)(A). HOEPA also mandates that the disclosure must inform the borrower that mere receipt of the disclosures and signing the loan application do not obligate the borrower to complete the loan transaction and that the borrower's failure to comply with the loan obligations could result in loss of the borrower's home and any equity the borrower has in the home. 15 U.S.C. § 1639(a)(1). However, loans that are not classified as "high cost" are not subject to these additional disclosure requirements. 15 U.S.C. § 1639(a)(1). HOEPA applies, *inter alia*, to those closed-end home mortgages in which "the total points and fees payable by the consumer at

or before loan closing will exceed the greater of 8 percent of the total loan amount or $400[3]…"
12 C.F.R. § 226.32(a)(1)(ii).  Contrary to Plaintiff's allegations, Plaintiff's loan is not a "high cost" loan, and Plaintiff is not entitled to any protections provided by HOEPA, because the points and fees charged Plaintiff do not exceed 8% of the loan amount.

To determine whether the points and fees associated with a loan exceed 8% of the total amount of the loan, it is first necessary to determine the total amount of the loan.  The total amount of the loan equals the amount financed, determined according to 12 C.F.R. § 226.18(b), minus any cost listed in § 226.32(b)(1)(iii) and § 226.32(b)(1)(iv) that is considered points and fees under § 226.32(b)(1) and is also financed by the lender.  Official Staff Interpretations Supplement I to Part 226, Section 226.32(a)(1)(ii)-1.

The amount financed is essentially the amount of credit extended to the borrower and includes the principal loan amount, plus amounts financed by the lender that are not included in the finance charge, minus any prepaid finance charge.  12 C.F.R. § 226.18(b).  The principal amount of the Frazier loan is $56,000.  The amounts financed that are not part of the finance charge include the following:

| Fee Description | Line from HUD-1 | Amount |
|---|---|---|
| Appraisal | 803 | 300.00 |
| Zone Determination Fee | 811 | 9.50 |
| Tax Service Fee | 812 | 66.00 |
| Appraisal Review Fee | 813 | 250.00 |
| Hazard Insurance Premium | 903 | 1068.00 |
| Hazard Insurance (Res.) | 1001 | 356.00 |
| County Property Taxes (Res.) | 1004 | 313.25 |
| Accounting Adjustment | 1008 | -134.25 |
| Abstract/Title Search | 1102 | 200.00 |
| Title Examination | 1103 | 250.00 |
| Title Insurance | 1108 | 200.00 |

---

[3] The $400 figure is adjusted annually "by the annual percentage change in the Consumer Price Index…."  Official Staff Interpretations Supplement I to Part 226, § 226.32(a)(1)(ii)-2.

| Endorsements | 1111 | 50.00 |
|---|---|---|
| Recording Fee | 1201 | 120.00 |
| Tax Stamps | 1203 | 84.00 |
| **TOTAL** | | **$3,132.50** |

The appraisal fee is not part of the finance charge, pursuant to 12 C.F.R. § 226.4(c)(7), which excludes from the finance charge "property appraisal fees" that are "bona fide and reasonable in amount." § 226.4(c)(7)(iv). The zone determination fee, tax service fee, and appraisal review fee are all excluded from the finance charge pursuant to § 226.4(c)(7), which excludes real estate transaction charges "even if the services for which the fees are imposed are performed by the creditor's employees rather than by a third party. In addition, the cost of verifying or confirming information connected to the item is also excluded." Official Staff Interpretations Supplement I to Part 226, Section 226.4(c)(7)-1. The hazard insurance premium is excluded from the finance charge because it is a "premium[] for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property…" 12 C.F.R. § 226.4(d)(2). The escrowed amounts for hazard insurance and county property taxes and the accounting adjustment associated with those amounts are not included in the finance charge, because they are "amounts required to be paid into escrow…[that] would not otherwise be included in the finance charge." § 226.4(c)(7)(v). The hazard insurance reserve would otherwise be excluded from the finance charge according to § 226.4(d)(2), and the county property taxes would be excluded, because such taxes are a charge "of a type payable in a comparable cash transaction," therefore they are not considered a finance charge. § 226.4(a). The tax stamp is also excluded from the finance charge pursuant to § 226.4(e)(1).

Contrary to Plaintiff's allegations, the fees for abstract/title search, title examination, and title insurance, endorsements, and recording were all properly excluded from the finance charge, because the charges were neither required nor retained by Accredited. TILA provides that fees

charged by third party closing agents are to be excluded from the finance charge "if the creditor does not require the imposition of the charges or the services provided and does not retain the charges." 15 U.S.C.A. § 1605(a). TILA also excludes from the finance charge certain real estate related charges, so long as they are "bona fide and reasonable in amount," 12 C.F.R. § 226.4(c)(7). Accordingly, even if Plaintiff were able to prove that certain allegedly marked-up portions of the settlement charges were not bona fide or reasonable, these portions still were properly excluded from the finance charge because Accredited did not require or retain those charges. Exhibit 4, at 97, 5-10; Exhibit 5, at 45, 20-22; 46, 1-5; Exhibit 6, at 42, 15-18; 44, 16-22; 46, 16-19; 47, 14-18.

The prepaid finance charge includes the following:

| Fee Description | Line from HUD-1 | Amount |
|---|---|---|
| Loan Origination Fee | 801 | 1960.00 |
| Processing Fee | 808 | 500.00 |
| Underwriting Fee | 809 | 500.00 |
| Interest from Odd Days | 901 | 22.40 |
| Settlement/Closing Fee | 1101 | 275.00 |
| **TOTAL** | | **$3257.40** |

Accordingly, the amount financed equals $56,000.00, plus $3,132.50, minus $3,257.40, or $55,875.10. With the amount financed determined, it is then necessary to subtract any costs listed in 12 C.F.R. § 226.32(b)(1)(iii) and § 226.32(b)(1)(iv) that are considered points and fees under § 226.32(b)(1) and are also financed by the lender. Official Staff Interpretation Supplement I to Part 226, Section 226.32(a)(1)(ii)-1. Section 226.32(b)(1)(iii) says that all items listed in § 226.4(c)(7), except for amounts held to pay taxes in the future, are not considered points and fees so long as they are reasonable, the creditor is not compensated directly or

indirectly from the charge, and no affiliate of the creditor receives the charge.

§ 226.32(b)(1)(iii).  These amounts include the following:

| Fee Description | Line from HUD-1 | Amount |
|---|---|---|
| Zone Determination Fee | 811 | 9.50 |
| Tax Service Fee | 812 | 66.00 |
| Appraisal Review Fee | 813 | 250.00 |
| Endorsements | 1111 | 50.00 |
| **TOTAL** | | **$375.50** |

 The total loan amount thus equals $55,875.10 minus $375.50, or $55,499.60.  Eight percent of

this amount is $4,439.97.  Therefore, as long as the total points and fees do not exceed

$4,439.97, the Frazier loan is not a "high cost" loan subject to HOEPA protections.  The total

points and fees are determined according to § 226.32(b)(1) and include the following:

| Fee Description | Line from HUD-1 | Amount |
|---|---|---|
| Settlement/Closing Fee | 1101 | 275.00 |
| Loan Origination Fee | 801 | 1960.00 |
| Processing Fee | 808 | 500.00 |
| Underwriting Fee | 809 | 500.00 |
| Endorsements | 1111 | 50.00 |
| Appraisal Review Fee | 813 | 250.00 |
| Zone Determination Fee | 811 | 9.50 |
| Tax Service Fee | 812 | 66.00 |
| **TOTAL** | | **$3610.50** |

Because the total points and fees of $3610.50 is less than 8% of the total loan amount

($4,439.97), HOEPA protections do not apply to the Frazier loan.  Accordingly Frazier is not

entitled to rescind her loan or recover any damages from Accredited.

## CONCLUSION

Accredited respectfully requests that its Motion for Summary Judgment be granted.

Plaintiff's claim for civil damages under TILA is barred by the one-year limitation period.

Moreover, Plaintiff is not entitled to damages or rescission, because any miscalculation of the

finance charge disclosure led to an overestimation, which inured to Plaintiff's benefit and can not

form the basis for liability under TILA.  Finally, Plaintiff's loan was not a "high cost" loan

entitling her to HOEPA's additional protections; therefore her claim that Accredited violated

HOEPA is wholly without merit.  Accordingly, there is no genuine issue of material fact as to

any of Plaintiff's claims, and summary judgment is appropriate.


Respectfully submitted,

s/ J. DOUGLAS MINOR, JR.

*Attorney for Defendant Accredited Home
Lenders, Inc.*


OF COUNSEL

J. Douglas Minor, Jr. (admitted *pro hac vice*)
J. William Manuel
Kathleen R. Shields
Bradley Arant Rose & White LLP
Suite 450, One Jackson Place
188 East Capitol Street
PO Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

Robert E. Poundstone, IV
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

## <u>CERTIFICATE OF SERVICE</u>

          I hereby certify that on July 10, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Earl Price Underwood, Jr.**
Law Offices of Earl P. Underwood,Jr.
PO Box 969
Fairhope, AL 36533-0969
251-990-5558
Fax: 251-990-0626
Email: epunderwood@alalaw.com

**George Richardson Irvine, III**
Stone Granade & Crosby PC
PO Drawer 1509
Bay Minette, AL 36507-1509
251-626-6696
Fax: 251-626-2617
Email: GRI@SGCLAW.COM

**James Donnie Patterson**
Law Offices of Earl P Underwood
PO Box 969
Fairhope, AL 36533-0959

251-990-5558
Fax: 251-990-0626
Email: jpatterson@alalaw.com

**Kenneth Joseph Riemer**
166 Government Street, Suite 100
PO Box 1206
Mobile, AL 36633-1206
251-432-9212
Fax: 251-433-7172
Email: kjr@alaconsumerlaw.com

**Steven Leon Nicholas**
Cunningham, Bounds, Crowder, Brown and Breedlove, LLC
PO Box 66705
Mobile, AL 36660-6705
251-471-6191
Fax: 251-479-1031
Email: sln@cunninghambounds.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

       NONE

          Respectfully submitted,

          s/ J. DOUGLAS MINOR, JR.