**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**CHERYL HALL FRAZIER,**                    *

    **Plaintiff,**                    *

**vs.**                    *    **CIVIL NUMBER: 1:08-cv-11-MHT**

**ACCREDITED HOME LENDERS,**                    *
**INC., d/b/a HOME FUNDS DIRECT,**
                    *

    **Defendant**

**<u>PARTIES JOINT RECORD</u>**

# ATTENTION
# CLOSING AGENT

*PLEASE RETURN ORIGINAL SIGNED DOCUMENTS FOR FUNDING TO THE FOLLOWING ADDRESS:*

**Attn: Retail Funding**
**1130 Northchase Parkway**
**Suite 200**
**Marietta, GA  30067-6420**

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE DOC/FUNDING DEPARTMENT.*

*PHONE:* (866) 539-7025

MIN # 100176105031729174               HALL               Loan #  0503172917
AHL 610104.UFF                     Page 1 of 1

# ATTENTION CLOSING AGENTS:

1. **Do not make <u>any</u> changes to the loan documents. All changes require prior authorization by the Lender.**

2. **Please comply with the following policies related to the dates of our loan documents.**
   * Do not change to the date of our loan documents.
   * Accredited Home Lenders, Inc. does not require that the date of the loan documents be the same as date the Borrower is signing the documents.
   * The Borrower should date the documents the day they actually sign them.

3. **Please comply with the following policies related to RESPA Regulations.**
   * Accredited Home Lenders, Inc. must approve any changes to fees charges by the Broker.
   * <u>No demands to closing should be accepted.</u>
   * The payee must be shown next to all fees and charges on the final HUD-1.

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE DOC/FUNDING DEPARTMENT.*

*PHONE: (866) 539-7025*

MIN # 100176105031729174                    **HALL**                    Loan #  0503172917
AHL CLSGAGTN.UFF                           Page 1 of 1

OUR LOAN NO. 0503172917                              CLOSING DATE March 25, 2005

# LENDERS' INSTRUCTIONS

ISSUE DATE March 25, 2005

**IF THE LOAN DOES NOT CLOSE AS SCHEDULED PLEASE NOTIFY OUR OFFICE IMMEDIATELY** (DO NOT USE OUR FUNDS IF YOU CANNOT COMPLY WITH ALL OF THE INSTRUCTIONS ON PAGES 2, 3, & 4 AND ADDITIONAL INSTRUCTIONS)

CLOSING AGENT SWAFFORD & HAYES SETTLEMENT SERVICES INC   ATTENTION  JAMES W SWAFFORD
CLOSING AGENT ADDRESS    9041 EXECUTIVE PARK DRIVE, KNOXVILLE, TN 37923
CLOSING AGENT PHONE NUMBER  (865)934-0466          CLOSING AGENT FAX NUMBER  (865)934-0215
LOAN PURPOSE  Refi Cash Out          LIEN TYPE 1st          LOAN TYPE Fixed
MTGE AMT. $  56,000.00     INTEREST RATE  7.299     % INITIAL RATE  7.299%     MARGIN  0.000     %
TERM  360/360     MUST CLOSE BY  04/05/2005     DOCUMENT EXPIRE ON  04/05/2005
MORTGAGOR(S) NAME(S)  CHERYL HALL
PROPERTY ADDRESS   105 TV ROAD, DOTHAN, AL 36301
TITLE COMPANY  SWAFFORD & HAYES SETTLEMENT SERVICES INC
TITLE NUMBER  05-2813          PHONE NUMBER  (865)934-0466

## A. ENCLOSED ARE THE FOLLOWING DOCUMENTS PERTAINING TO THE MORTGAGE CLOSING:

( X ) DEED / MORTGAGE                              ( ) ORIGINAL POWER OF ATTORNEY - RETURN TO DESIGNEE

( ) RIDER(S), ADDENDUM, ALLONGE #  _____       ( X ) TAX FORM # 4506 OR 8821

( X ) NOTE                                         ( ) _____

( X ) RIDER(S) ATTATCHED SCHEDULES #_____    ( ) _____

( X ) TRUTH INLENDING FINAL (REG Z)               ( ) _____

( X ) W-9                                          ( ) _____

( X ) INFORMATIONAL DISCLOSURES                   ( ) _____

( X ) RIGHT TO CANCEL - 3 COPIES PER BORROWER     ( ) _____
      -RETURN 1 EACH

## B. THE FOLLOWING LENDER ITEMS HAVE BEEN DEDUCTED FROM OUR CHECK/DRAFT TO YOU:

| FEE ITEMS: HUD-1 # | LENDER FEES | N/A | LENDER POC | TOTAL FEES |
|---|---|---|---|---|
| 801 Origination Fee | 1,960.00 | | | 1,960.00 |
| 802 Discount Points | | | | |
| 903 Appraisal Fee | | | | 300.00 |
| 804 Credit Report Fee | | | | |
| 805 Final Inspection/442 Fee | | | | |
| 907 Application Fee | | | | |
| 810 Processing Fee | 500.00 | | | 500.00 |
| 811 Underwriting Fee | 500.00 | | | 500.00 |
| 813 Appraisal Review Fee | 250.00 | | | 250.00 |
| 815 Escrow Holdback Fee | | | | |
| 816 Funding Fee | | | | |
| 818 Courior Fee | | | | |
| 825 Warehouse Fee | | | | |
| 827 Reverif Fee | | | | |
| 828 Flood Cert/Life of Loan Fee | 9.50 | | | 9.50 |
| 829 Tax Service Fee | 66.00 | | | 66.00 |
| 901 Interest for 2 days  @ $ 11.2 per day | 22.40 | | | |
| 1001 Hazard Insurance 4 month(s) @  $89.00 | 356.00 | | | 356.00 |
| 1003 City Property Tax 0 month(s) @  $0.00 | | | | |
| 1004 County Property Tax 7 month(s) @  $44.75 | 313.25 | | | 313.25 |
| 1005 School Tax 0 month(s) @  $0.00 | | | | |
| 1006 Flood Insurance 0 month(s) @  $0.00 | | | | |
| 1008 Agg. Acctg. Adjustment | -134.25 | | | -134.25 |
| 1301 Survey Fee | | | | |
| **TOTALS** | **3,842.90** | **0.00** | **0.00** | **4,120.50** |

**PAID BY LENDER**

204  LENDER CREDIT TO BORROWER     $ 0.00
809  YIELD SPREAD TO BROKER (POC)  $ 0.00
1203 STATE TAX/STAMPS             $               **NET CHECK / DRAFT $  52,157.10**

For all Dry-Funding States and Refinances in Wet-Funding States:
**ALL DOCUMENTS MUST BE IN OUR OFFICE TWO (2) BUSINESS DAYS PRIOR TO DISBURSEMENT OF LOAN FUNDS**
**C.** POLICY OF THE TITLE INSURANCE REQUIREMENTS ARE SET FORTH ON PAGE 2 AND OUR LIEN MUST BE SUBJECT ONLY TO EXCEPTION NUMBERS   B1)1-9 B2)1-7 _____ AS
SHOWN ON THE PRELIMINARY REPORT /COMMITMENT DATED  March 18, 2005 _____.

Initial _____

Page 1 of 4
AHL: G635-AHL.UFF

# LENDERS' INSTRUCTIONS

**INITIAL
CLOSING
INSTRUCTIONS**

DO NOT CLOSE THIS LOAN IF:

1. We have not received and approved Preliminary Commitment for Title Insurance.
2. You are past the expiration date of our legal papers.
3. We have not received and approved an Estimated Closing Statement.
4. You have not given signed copy of these instructions plus any amendments to the borrowers.
5. If there has been any change to the original sales contract which we have not approved in writing.
6. If we have not received and accepted/approved:
   a.   Security instruments conformed and certified plus two copies.
   b.   Note plus two certified copies.
   c.   Any other items sent for execution and/or notary in the numbers sent. We will not accept witnessed acknowledgments on notarized items.
7. We have not received an acceptable hazard insurance binder.
8. All conditions of our loan commitment have not been met.
9. SIGNATURES Please insure that the Borrowers sign ALL loan documents **EXACTLY AS THEIR NAMES ARE TYPED ON THE DOCUMENTS, EVEN IF THIS IS NOT THEIR USUAL SIGNATURE.** Please pay special attention to middle initials and middle names, and Junior and Senior. You should review the signature on each document **CAREFULLY. IF THERE IS ANY QUESTION AS TO THE READABILITY OF THE SIGNATURE OF AN INDIVIDUAL, YOU SHOULD OBTAIN A NOTARIZED SIGNATURE AFFIDAVIT** and return it with the other documents.
10. TAX CERTIFICATION This form must be completed and signed by YOU and have the LEGAL DESCRIPTION ATTACHED OR ENTERED AT THE BOTTOM OF THE FORM. Please be sure that ALL information is complete and correct and that you show an amount of taxes next due, even an estimated amount.
11. REVIEW All documents MUST be in our office for review PRIOR to recording. We request that documents be received a MINIMUM of ONE DAY PRIOR TO THE DAY YOU WISH TO RECORD. Please include THREE (3) CERTIFIED COPIES EACH OF THE NOTE AND DEED OF TRUST and provide copies of all other executed documents for recording such as Warranty Deed, Excise Affidavit, Quit Claim Deed, Buyer or Seller Power of Attorney, etc. Please direct the title company to forward take-off copies of ALL pages of ALL recorded documents as soon as possible.
12. Sales price is other than $00.00

**TITLE
POLICY
REQUIREMENTS**

1. The title policy must insure the mortgage as a good and valid lien of the type shown on Page 1 in accordance with your Preliminary Commitment for Title Insurance. We must have the original and two copies of the policy.
2. THERE MUST BE NO OTHER LIENS AGAINST THE PROPERTY OTHER THAN THOSE SHOWN ON PAGE 1, unless approved by us in writing.
3. No past-due taxes or special assessments are to be shown as exceptions. The title policy must show current year's taxes "not yet due and payable," or current half paid.
4. In examining the title, if you find any violations of restrictions, easements, or encroachments, secure our approval prior to the closing.
5. Vestee name spelling(s) must be identical to mortgage/deed of trust.
6. Marital status must be shown.
7. We require two copies of conditions, covenants, and restrictions and of any recorded exceptions not covered by FHA/VA/FNMA/FHLMC General Waivers.
8. The mortgage transaction must include the proper execution and recording of all necessary instruments to assure the issuance of a Mortgagee Title Policy, without exceptions except as shown on Page 1.
9. This Policy must be in the loan amount or maximum principal balance to be reached if negative amortization is involved (not to exceed 125%) insuring **Home Funds Direct**
                                  and its successors and/or assigns, and subject only to the following:
   Restrictions and building lines of record provided that the policy contains
   an Endorsement covering any violation.
10. Any lien for financing subordinate to ours and approved by us must be listed on the title policy and the policy must expressly provide that such lien is subordinate to that of our mortgage lien.
11. Property address must be shown as a part of the policy or by endorsement in states where possible.
12. Plat or survey must show correct street name or road name in full; must show all reference points used in legal description.
13. Protection of insured must be provided in the case of any unlocated easements, rights of way, encroachments, etc.
14. Protection of improvements including landscaping, must be provided if water, oil, gas, or mineral reservations exist and allow the right of surface entry.
15. The following endorsements must be included in the Mortgagees policy: 100, 116, 8.1, 6.2 if ARM with no negative amortization, condominium or P.U.D., if applicable, and **EPA**

16. Have title company forward owners policy to borrowers at property or mailing address.
17. Have Mortgagees policy delivered to lender's address on page 4 of these instructions within three days of closing.
18. Title Policy to read as follows:
    Home Funds Direct
    Its Successors and/or assigns
19. Lender does not accept limited coverage title policies for loans more than $50,000.00
20. Lender requires that the final title policy insure the lien shown on page 1 of the Closing Instructions independent of any other lien closed concurrently. A final title policy insuring a combination of multiple liens is unacceptable.

**LENDERS' INSTRUCTIONS**

 

# LENDERS' INSTRUCTIONS

**CLOSING PACKAGE REQUIREMENTS**

1. HUD 1 & Addendum showing both buyer and seller sides and including addresses of all parties to the escrow    3 certified copies.
2. Policy of title insurance - see Requirements.
3. Policy(s) of hazard insurance.
4. Copy of Conveyance Instrument(s) and Excise Affidavits.
5. Copy of your Closing Order to title company.
6. Copy of your Escrow Instructions - signed.

**HUD-1 REQUIREMENTS**

Comply with all provisions of RESPA, as amended, in preparing this form.
Must be typed.

**DOCUMENT REQUIREMENTS**

1. Be certain that all papers which were not dated when received are dated by the person(s) who are to sign them.
2. Be certain that if we send one or more copies of a document, that EACH is returned with original signature(s).
3. INTERIM INTEREST - It is REQUIRED that the HUD-1 be amended (if necessary) to show the correct date and amount, and it is also REQUIRED that all totals on the HUD-1 be amended to reflect the correct amount. DO NOT SIMPLY CROSS OUT THE AMOUNT AND WRITE A NEW ONE ABOVE IT!
4. DO NOT SHOW ANY CREDITS FROM SELLER TO BUYER WITHOUT CONSULTING OUR OFFICE.
5. Make NO changes on the papers without our permission. Call for instructions.
6. If we give permission to make changes on the papers, all changes MUST be initialed by ALL SIGNATORIES to the documents.
7. Do not use Power of Attorney unless prior approved by us.
8. If we allow the use of a Power of Attorney, the person using that authority must sign as, for example, "Jane Doe by John Doe, her attorney-in-fact."
9. If notice of Right to Rescind is enclosed, have it signed and dated, concurrently with the Note, by all borrowers.
10. We assume no liability as to the identity of any person executing or acknowledging any instruments or documents delivered to you in connection with this transaction.
11. ALL DOCUMENTS MUST BE SIGNED EXACTLY AS TYPED NAMES APPEAR.

**HAZARD INSURANCE**

A Hazard Insurance binder must be furnished at the time of closing in an amount not less than the loan amount, or replacement cost of the structure, whichever is less.  (Combined Loan Amount)

1. The policy must meet the following requirements:
   a. Original policy or facsimile signed by an authorized agent.
   b. Minimum one year term with coverage equal at least to full replacement cost of the improvements, or loan amount, whichever is less.    (Minimum remaining term of 6 months for Purchase or Refinance is acceptable.)
   c. Full, correct borrower(s) names.
   d. Full, correct property address.
   e. Premium amount must be indicated on the policy.
   f. Agent name and address.
   g. Our loan number MUST be indicated on the policy.
   h. Paid receipt for first year premium attached or shown on HUD-1 as paid in closing.
   i. Earthquake Insurance (if required) use same, identifying criteria as for Flood Insurance.
   j. Insurer must have rating in Best's Insurance Guide of at least Class VI.
   k. FLOOD INSURANCE (if required): Standard policy issued by member of National Flood Insurers Association for not less than our loan amount or the maximum amount available under National Flood Insurance program, whichever is less. The name(s) of the buyer(s), legal description, street address, city, state, county and zip code of security property on these policies must be identical to those of the loan instruments.
   l. On condominiums, we must have an individual endorsement meeting the criteria above.
   m. Loss Payable Clause to: Home Funds Direct
   A Division of Accredited Home Lenders, Inc.
   A California Corporation,
   It's successors and/or assigns
   P.O. Box 10436
   Van Nuys, CA 91410-0436

**CLOSER REQUIREMENTS**

For all Dry-Funding States and Refinances in Wet-Funding States:
ALL DOCUMENTS MUST BE IN OUR OFFICE <u>TWO (2) BUSINESS DAYS</u> PRIOR TO DISBURSEMENT OF LOAN FUNDS
LENDER REQUIRES CONFIRMATION OF DISBURSEMENT OF FUNDS WITHIN <u>48 HOURS</u> OF FUNDING.
DO NOT MAKE ANY CHANGES TO LOAN DOCUMENTS WITHOUT PRIOR LENDER AUTHORIZATION.
ALL FEES SHOWN ON THE HUD - 1   MUST MATCH EXACTLY THE FEES LISTED IN OUR CLOSING INSTRUCTIONS   i. e.  : <u>FEE ITEMS</u> - HUD DESCRIPTION AND DOLLAR AMOUNTS.
ALL PAYOFF CHECKS MUST BE SENT DIRECTLY TO THE CREDITOR.   DO NOT GIVE ANY CHECKS TO THE BORROWER.

**LENDERS' INSTRUCTIONS**



# LENDERS' INSTRUCTIONS

**BUYER COST REQUIREMENTS**

1. DOWNPAYMENT IN CASH FROM BORROWER(S) MUST TOTAL AMOUNT SHOWN ON PAGE 1.
2. BORROWERS CANNOT PAY THE FOLLOWING:

**VA LOANS**

1. PHOTOS & INSPECTION FEE MORE THAN ALLOWED BY VA
2. MESSENGER SERVICE
3. RECORDING OF ANY DOCUMENTS OTHER THAN DEED/DEED OF TRUST AND ANY ATTACHMENTS THERETO
4. ESCROW FEES
5. MORE THAN 2 MONTHS INSURANCE INTO ESCROW ACCOUNT
6. TERMITE INSPECTION
7. TAX SERVICE FEE
8. SETTLEMENT OR CLOSING FEE

**FHA LOANS**

1. TAX SERVICE/REGISTRATION FEE
2. MESSENGER SERVICE UNLESS AUTHORIZED BY BORROWER IN WRITING
3. RECORDING OF ANY DOCUMENTS OTHER THAN DEED OF TRUST/DEED AND ANY ATTACHMENTS THERETO
4. MORE THAN 2 MONTHS INSURANCE INTO ESCROW ACCOUNT
5. INSPECTION FEES - NOT MORE THAN ALLOWED BY FHA
6. DOCUMENT PREPARATION

**DISBURSEMENT**

1. It shall be the responsibility of the Closing Agent to request proceeds from the lender at such time as the Closing Agent is prepared to comply with all the terms and conditions of the Purchase/Sale Agreement and /or our Escrow Instructions. SUCH A REQUEST, BY THE CLOSING AGENT, FOR FUNDS SHALL BE DEEMED TO BE A CERTIFICATION (LENDER) THAT ALL TERMS AND CONDITIONS HAVE BEEN MET AND THAT THE DOCUMENTS WILL BE PROPERLY RECORDED NOT LATER THAN THE NEXT BUSINESS DAY AFTER THE DAY THE CLOSING AGENT HAS RECEIVED THE PROCEEDS CHECK. In the event that the documents are not recorded within 24 hours, the Closing Agent will immediately return the funds to the sender in accordance with the sender's instructions.

2. *HUD SETTLEMENT DATE*

GOVERNMENT LOANS: The HUD-1 settlement date MUST be the date on which the lender disburses proceeds to the Closing Agent and NOT the date on which proceeds are disbursed to the seller. These two dates may be the same day.

CONVENTIONAL LOANS: The settlement date on the HUD-1 statement may reflect the date on which the closing Agent disburses the proceeds, which would usually be the day after the Agent received loan proceeds from the lender.

**ADDITIONAL INSTRUCTIONS:**

1. Undertaking to close this loan and acceptance of the lender's funds for disbursement shall constitute an undertaking to close this loan and disburse such funds in accordance with these Closing Instructions, whether or not these Instructions are executed or delivered by the Closing Agent. Closing Agent will be responsible for any losses incurred by lender as a result of Closing Agent's failure to comply fully with these Closing Instructions.

2. Lender reserves the right to cancel or amend the loan or these instructions at any time prior to closing.

3. Closing Agent represents, warrants, and covenants that it is not an affiliate of or otherwise controlled by any party to this transaction.

4. From the time Closing Agent receives closing funds until the loan documents are sent to the lender, Closing Agent shall hold all loan documents for the benefit of the sender of the closing funds.

**E-MAIL:**

Handling of E-Mail and Closing Documents. If Closing Agent is willing to receive Closing Documents via e-mail, Closing Agent's e-mail address is set forth below, and Closing Agent shall be responsible for ensuring that all Closing documents received via e-mail are properly printed and otherwise handled in accordance with the Closing Documents handling requirements set forth above.
Closing Agent's Email Address: kimc@shssincorporated.com

---

THE UNDERSIGNED BORROWER(S)

1. DIRECT THAT THE LOAN PROCEEDS BE PAYABLE TO THE ORDER OF THE SETTLEMENT AGENT.
2. ACKNOWLEDGE 1ST PAYMENT DATE OF 05/01/2005
3. ACKNOWLEDGE THAT THE LENDER MAY CANCEL OR AMEND THESE INSTRUCTIONS WITHOUT MY/OUR APPROVAL.
4. ACKNOWLEDGE ESTIMATED MONTHLY PAYMENTS OF:

| | | |
|---|---|---|
| PRINCIPAL & INTEREST | $ | 383.89 |
| TAXES (BONDS) | | 44.75 |
| INSURANCE | | 89.00 |
| MTGE. INS. PREMIUM | | |
| | | |
| | | |
| **TOTAL** | $ | **517.64** |

___3-25-05___    _____
DATE      CHERYL HALL

_____    _____
DATE

_____    _____
DATE

_____    _____
DATE

### PLEASE RETURN DOCS TO:

**Home Funds Direct**
**1130 Northchase Parkway**
**Suite 200**
**Marietta, GA 30067-6420**

**Ken Harper**
CLOSER/FUNDER NAME

**(866) 539-7025**
TELEPHONE NUMBER

THE UNDERSIGNED AGREES TO CLOSE THIS LOAN IN ACCORDANCE WITH ALL OF THE INSTRUCTIONS AND CONDITIONS CONTAINED IN THE CLOSING INSTRUCTIONS.

**SWAFFORD & HAYES SETTLEMENT SERVICES**
SETTLEMENT AGENT

BY: _Jane Carcello_
SIGNATURE

**SWAFFORD & HAYES SETTLEMENT SERVICES**
TYPED NAME

**(865) 934-0466**
TELEPHONE NUMBER

___03/28/05___
DATE

1.00176105031729174
-635 (0208).01

HALL
Page 4 of 4

LENDERS' INSTRUCTIONS
Closing Instructions

## ADDENDUM TO LENDERS INSTRUCTIONS

BORROWER'S  **CHERYL HALL**

LOAN #   **0503172917**                                                    ESCROW #  **05-2813**

**ATTENTION CLOSING AGENTS: BY DISBURSING THIS LOAN YOU ARE GUARANTEEING DELIVERY OF THE FINAL HUD-1 WITHIN 24 HOURS OF CLOSING TO Home Funds Direct. PLEASE REMEMBER TO INCLUDE THE ACTUAL "DISBURSEMENT DATE" ON THE HUD-1 AND FAX TO THE ASSIGNED FUNDER INDICATED ON THE LENDER'S INSTRUCTIONS.**

## ** WE MUST HAVE THESE ITEMS IN AND APPROVED BEFORE FUNDING **

1.  __X__  **Home Funds Direct**
     IN **1st**      LIEN POSITION AT TIME OF FUNDS.

2.  __X__  INSURED CLOSING PROTECTION LETTER FROM TITLE AGENT OR COPY OF
     ERRORS AND OMISSION POLICY FROM CLOSING AGENT.

3.  _____  COPY OF SURVEY OF PROPERTY OR NON-IMPROVEMENT AFFIDAVIT.

4.  __X__  CERTIFIED COPY OF ESTIMATED AND/OR FINAL HUD-1.

5.  _____  CERTIFIED COPY OF ESCROW INSTRUCTIONS WITH CORRECT RATE, TERMS &
     LENDER SIGNED BY ALL PARTIES.

6.  __X__  COPY OF ALL BORROWER(S) PHOTO ID.

7.  __X__  COMPLETED CORRECT TYPED 1003 SIGNED BY BORROWER(S) AND INTERVIEWER.

8.  __X__  HAZARD INSURANCE POLICY & FLOOD INSURANCE POLICY (IF REQUIRED) WITH
     MINIMUM 6 MONTHS REMAINING & CONVERAGE OF THE LESSER OF:
     A.  THE COMBINED LOAN AMOUNT(S) OR   **$56,000.00**          OR
     B.  GAURANTEED REPLACEMENT COST  OR    **$0.00**              OR
     C.  TOTAL ESTIMATED NEW COST ON APPRAISAL.
     **MORTGAGE / LOSS PAYEE CLAUSE:**
     **Home Funds Direct**
     **A Division of Accredited Home Lenders, Inc.**
     **A California Corporation,**
     **It's successors and/or assigns**
     **P.O. Box 10436**
     **Van Nuys, CA 91410-0436**

9.  __X__  TITLE POLICY TO READ AS FOLLOWS:
     **Home Funds Direct**
     IT'S SUCCESSORS AND/OR ASSIGNS

10.  _____  BORROWER IS IN A SECTION 32 - MUST SIGN SECTION 32 NOTICE AND GO
     THROUGH 2 DAY RESCISSION PRIOR TO SIGNING FINAL LOAN DOCUMENTS.

11.  _____  BORROWER TO PROVIDE ORIGINAL SECTION 32 NOTICE SIGNED AND DATED PRIOR
     TO SIGNING FINAL LOAN DOCUMENTS.

12.  __X__  ALL LOAN DOCUMENTS MUST BE EXECUTED AT ESCROW OR CLOSING AGENT
     OFFICE.

13.  __X__  LENDER DOES NOT ACCEPT LIMITED COVERAGE TITLE POLICIES FOR LOANS
     GREATER THAN $50,000.00.

14.  __X__  COPY OF WIRE INSTRUCTIONS TO BE SUBMITTED WITHIN 24 HOURS OF FUNDING.
     FAX NUMBER**(866) 539-7026**

15.  _____  LENDER TO COLLECT AND PAY LIFE INSURANCE PREMIUM AT CLOSE OF ESCROW.

16.  __X__  POWER OF ATTORNEY IS PROHIBITED WITHOUT PRIOR AUTHORIZATION FROM
     LENDER.

17.  __X__  PROVIDE THREE CERTIFIED COPIES OF THE MORTGAGE/DEED OF TRUST WITH ALL
     RIDERS & THE NOTE WITH ALL RIDERS.

## ADDENDUM TO LENDERS INSTRUCTIONS, Continued

18.   Hazard Insurance Policy - If not impounded, requires 6 mo. coverage from loan date for refinances and 12 mo. for purchases. Mortgagee Clause:  Accredited Home Lenders, Inc., A California Corporation, ISAOA  P.O. Box 10436  Van Nuys, CA  91410-0436

19.   Pay the following in full at closing (payoff must show on est/final HUD1):

          Payoff Amount: THE CR STR/PROVIDIAN,     $785.00
          Payoff Amount: PALISADES,     $694.00
          Payoff Amount: HOLLOWAY CREDIT,     $452.00
          Payoff Amount: SMALL  LNS,     $399.00
          Payoff Amount: CRDT MGT,     $182.00
          Payoff Amount: FRIEDMANS JEWELERS,     $400.00
          Payoff Amount: ARMY AVIATION CENTER FCU,  $4,594.49
          Payoff Amount: ALABAMA APPRAISAL SERVICES,     $300.00
          Payoff Amount: State Farm Insurance,  $1,068.00

          Total Amount:  $8,874.49

20.   AHL to be insured in 1st lienhold position with clear title

21.   Corrected original 1003, pages 1-4, to be fully completed and signed by borrowers and broker.

22.   Certified copy of Final HUD1

23.   Funds to be wired to the title company only.

24.   Provide detailed cash-out letter from borrower.

### *** NO FURTHER CONDITIONS ON THIS LOAN

THE UNDERSIGNED BORROWER(S) AND CLOSING OFFICER ARE HEREBY AWARE AND UNDERSTAND THAT THIS LOAN IS APPROVED SUBJECT TO THE APPROVAL OF THE CONDITIONS LISTED ON THIS ADDENDUM PAGE.  THE CONDITIONS MUST BE REVIEWED AND APPROVED BY THE FUNDER AND/OR UNDERWRITER AT Home Funds Direct,

THE BORROWER(S) ARE AWARE THAT IN THE EVENT ANY OF THE ABOVE CONDITIONS ARE NOT ACCEPTABLE BY
Home Funds Direct,

THIS LOAN APPROVAL MAY BE RESCINDED AT THE SOLE DISCRETION AND OPTION OF
Home Funds Direct,

| Borrower **CHERYL HALL** | Date 3-25-05 | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

Closing Officer               Date

# CLOSING AGENT RIDER NOTICE

## <u>ATTENTION CLOSING AGENT:</u>

## PLEASE

## DO NOT SEPARATE ANY RIDERS

## THAT ARE ATTACHED TO THIS NOTE

## THANK YOU.

MIN # 100176105031729174                    HALL                    Loan #  0503172917
AHL 610086.UFF                              Page 1 of 1

# NOTE

March 25, 2005                      DOTHAN                            AL
|Date|                              [City]                            [State]

105 TV ROAD
DOTHAN, AL 36301
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 56,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Home Funds Direct**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        7.299 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st        day of each month beginning on May 1, 2005        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on April 1, 2035        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at        P.O. Box 502480 San Diego, CA 92150-2480
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 383.89        .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MIN# 100176105031729174                                    0503172917

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207).01        Form 3200 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3        Initials: C_H.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 10        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. Reasonable attorneys' fees shall not exceed 15% of the unpaid debt after default and referral of this Note to an attorney who is not a salaried employee of the Note Holder.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MIN# 100176105031729174               0503172917

Form 3200 1/01



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

 _____ (Seal)          _____ (Seal)
CHERYL HALL                   -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                         -Borrower

*[Sign Original Only]*

MIN# **1001761050317291**74                                    0503172917

-5N (0207).01                    Page 3 of 3                    Form 3200 1/01

Return To:
Home Funds Direct
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

——— ——————— [Space Above This Line For Recording Data]—— —————— ———

# MORTGAGE
MIN 100176105031729174

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated March 25, 2005                    ,
together with all Riders to this document.
**(B) "Borrower"** is CHERYL HALL

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

100176105031729                                    0503172917

**ALABAMA**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS         Form 3001 1/01

**(VMP) -6A(AL)** (0005).03
Page 1 of 15                    Initials: CH
    VMP MORTGAGE FORMS (800)521-7291

Hall-Frazier
Record - 000014

(D) "Lender" is **Home Funds Direct**

Lender is a **Corporation**
organized and existing under the laws of **the State of California**
Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
(E) "Note" means the promissory note signed by Borrower and dated **March 25, 2005**
The Note states that Borrower owes Lender **fifty-six thousand and 00/100**
Dollars
(U.S. $ **56,000.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **April 1, 2035**          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

100176105031729                                                        0503172917

Initials 

-6A(AL) (0005).03                    Page 2 of 15                    Form 3001 1/01

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
              **County**                      of                    **HOUSTON**                          :
          [Type of Recording Jurisdiction]               [Name of Recording Jurisdiction]
See Legal Description Addendum Page Attached

Parcel ID Number: **10-09-31-4-003-001.007**          which currently has the address of
**105 TV ROAD**                                                                        [Street]
**DOTHAN**                              [City] , Alabama **36301**          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

100176105031729                    Initials          0503172917

-6A(AL) (0005).03                    Page 3 of 18                    Form 3001 1/01

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

**Hall-Frazier**
**Record - 000017**

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Hall-Frazier
Record - 000020

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower *shall pay the premiums* required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**Hall-Frazier**
**Record - 000021**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



Hall-Frazier
Record - 000022

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

100176105031729                                                      0503172917

-6A(AL) (0005).03                    Page 10 of 15           Initials:                  Form 3001 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Hall-Frazier
Record - 000024

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in** HOUSTON
**County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**25. Attorneys' Fees.** Wherever this Security Instrument authorizes the Lender to collect reasonable attorneys' fees following default, such reasonable attorneys' fees shall not exceed fifteen percent (15%) of the unpaid debt after default and referral of the Security Instrument to an attorney who is not a salaried employee of Lender.




BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____(Seal)
                                    CHERYL HALL                -Borrower

_____    _____(Seal)
                                                               -Borrower

_____(Seal)    _____(Seal)
                    -Borrower                                  -Borrower

_____(Seal)    _____(Seal)
                    -Borrower                                  -Borrower

_____(Seal)    _____(Seal)
                    -Borrower                                  -Borrower

100176105031729                     0503172917

-6A(AL) (0005).03          Page 14 of 15          Form 3001 1/01

STATE OF ALABAMA,                                          County ss: *Houston*

On this _15_ day of *March* , *2005*                                   , I,

_Diane L. Hilson_

a Notary Public in and for said county and in said state, hereby certify that **CHERYL HALL**

whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged
before me that, being informed of the contents of the conveyance, he/she/they executed the same
voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this _25_ day of *March* *2005*

My Commission Expires:

**My Commission
Expires 3-06-06**

_____
Notary Public

Diane L. Hilson
Alabama State
at Large

Prepared By:
**Home Funds Direct
15090 Avenue of Science
San Diego, CA 92128**

100176105031729                    Initials:                    0503172917

-6A(AL) (0005).03                    Page 15 of 15                    Form 3001 1/01

## LEGAL DESCRIPTION ADDENDUM

| Borrower Name(s):<br>CHERYL HALL | Lender:<br>Home Funds Direct<br>15090 Avenue of Science<br>San Diego, CA 92128 |
|---|---|
| | **Loan #: 0503172917** |

**Property Address:**
105 TV ROAD
DOTHAN, AL 36301

**Legal Description:**
**SEE ATTACHED LEGAL DESCRIPTION**

Initials _____

**EXHIBIT A**

Situated in Dothan, Houston County, State of AL and being described as follows:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #10-09-31-4-003-001.007

BEING the same property conveyed to Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns, by deed from Samuel B. Pierce, Jr., Secretary of Housing and Urban Development of Washington, D.C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, dated 07-19-85, recorded 07-26-85, in Book 311, page 324, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Kevin Lorenzo Dixon, II, by deed from Louis E. Sowers and wife, Fay Sowers, dated 04-02-03, recorded 04-03-03, in Book 598, page 34, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Cheryl Hall, by deed from Kevin Lorenzo Dixon, II, a unmarried man, dated 03-02-05, recorded 03-11-05, in Book 622, page 443, in the Office of the Judge of Probate of Houston County, AL.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

105 TV Road, Dothan, AL  36301

Hall-Frazier
Record - 000030

# LOAN POLICY OF TITLE INSURANCE

### Issued by **Transnation Title Insurance Company**



*Transnation Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

**F52-1069870**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, TRANSNATION TITLE INSURANCE COMPANY, an Arizona corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, TRANSNATION TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**TRANSNATION TITLE INSURANCE COMPANY**

Attest: *Walker Powell*

Secretary



By: *Theodore L Chandler Jr*

President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulations (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NM 2     PA 20
ALTA Loan Policy (10/17/92)
**Form 1191-54B**     **ORIGINAL**     Valid only if Schedules A and B are attached

# COMMITMENT

State: **AL** County: **Houston**

Order #:  **05-2813**

| Plant #: * | Commitment #: F52-1069870 | Effective Date & Time: March 18, 2005 @ 8:00am | Reinsurance #: | Agent #: 05-2813 |
|---|---|---|---|---|

## Schedule A

1.  Policy or Policies to be issued:
    ALTA LOAN (10-17-92)
    Proposed Insured Loan:                                                Amount

    **Home Funds Direct, ISAOA, ATIMA**                                   **$56,000.00**

    2nd Proposed Insured Loan:                                            Amount


    ALTA OWNER'S (10-17-92)
    Proposed Insured Owners:                                              Amount

    **Cheryl Hall**

2.  The estate or interest in the land described or referred to in the Commitment and covered herein is:

    **Fee Simple**

    and is at the effective date hereof vested in:

    **Cheryl Hall**

3.  The land is described as follows:

    **105 TV Road, Dothan, AL  36301**


Issued By: *05-2813
**Swafford and Hays Settlement Services, Inc.**
**9041 Executive Park Drive, Suite 400**
**Knoxville, TN 37923**

*James W. _____ II*

Countersigned Authorized Signatory

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

Underwriter: Transnation Title Insurance Company

# COMMITMENT

## Schedule B - Section 1

The following are the requirements to be complied with:

1.  Instrument(s) creating the estate or interest to be insured must be approved, executed and filed for record to wit:

a.  Deed of Mortgage to be executed by Cheryl Hall, and spouse if any, securing Home Funds Direct, must be properly executed and recorded.

2.  Payment of the full consideration to, or for the account of, the grantors or mortgagors.

3.  Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

4.  Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

5.  Exceptions 3 and 4 of Schedule B - Section 2 of this commitment may be amended in or deleted from the policy to be issued if a survey, satisfactory to the Company, is furnished to Company.

6.  Affidavit to be executed by Cheryl Hall, stating: 1) There are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between 03-18-05 and the recording of the interest to be insured. 2) That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured. 3) That there are no unrecorded special assessments liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to the county or municipality.

7.  A search failed to discover any open mortgages of record as of 03-18-05 for the last 12 months.

8.  Satisfy and release Judgement in favor of Army Aviation Center F C U, dated 06-15-98, recorded 07-02-98, in book 89, page 185, in the Office of the Judge of Probate of Houston County, AL , against Cheryl R. Hall, in the principal amount of $3,558.26, plus costs and fees. *NOTE: The payoff amount is $4,594.49 good thru 4-24-05.*

9.  TAX ID # 10-09-31-4-003-001.007
    2004 Taxes in the amount of $534.23 are paid in full.
    2005 Taxes in the estimated amount of $537.00 will be out 10-1-05 and due by 12-31-05.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference In the insert pages.

Commitment #: F52-1069870                                                                    File #: 05-2813

# COMMITMENT

## Schedule B - Section 2

**Exceptions**

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1. **Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.**

2. **Rights or claims of parties in possession not shown by the Public Records.**

3. **Encroachments, overlaps, boundary lines disputes, and other matters which would be disclosed by an accurate survey and inspection of the premises.**

4. **Easements or claims of easements not shown by the Public Records.**

5. **Taxes or special assessments which are not shown as existing liens by the public records.**

6. **Taxes and assessments for the year 2005 and subsequent years, which are not yet due and payable.**

7. Subject to any restrictions, easements, setback lines, etc., as shown of record in Plat book 7, page 23, in the Office of the Judge of Probate of Houston County, AL.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

Commitment #: F52-1069870                                                                    File #: 05-2813

(Printed on Mar 25, 2005 @ 16 19)  US Department of Housing and Urban Development  OMB No 2502-0265

**A.**

**SETTLEMENT STATEMENT**

| B. Type of Loan | | | |
|---|---|---|---|
| 1. [ ] FHA  2. [ ] FmHA  3. [ ] Conv. Unins.<br>4. [ ] VA  5. [X] Conv. Ins. | 6. File Number:<br>05-2813 | 7. Loan Number:<br>0503172917 | 8. Mortgage Ins. Case #: |

C NOTE  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER/BUYER:**
Cheryl Hall 105 TV Road Dothan, AL 36301

**E. NAME AND ADDRESS OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:**
Home Funds Direct 1130 Northchase Parkway, Suite 200 Marietta, GA 30067

**G. PROPERTY LOCATION (Brief Legal):**
105 TV Road Dothan, AL 36301

**H. SETTLEMENT AGENT:**
Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Janet Shelley

**PLACE OF SETTLEMENT:**
9041 Executive Park Drive, Suite 400 Knoxville, TN 37923

**I. SETTLEMENT DATE:**
03/25/2005

**DISBURSEMENT DATE:**
03/30/2005

| J. SUMMARY OF BORROWER(S) TRANSACTION | | K. SUMMARY OF SELLER(S) TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER :** | | **400. GROSS AMOUNT DUE TO SELLER :** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 13,896.39 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | **13,896.39** | **420. Gross Amount Due Seller** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER :** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER :** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 56,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller in advance | | Adjustments for items unpaid by Seller in advance | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | **56,000.00** | **520. Total Reduction Amount Due Seller** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER :** | | **600. CASH AT SETTLEMENT TO/FROM SELLER :** | |
| 301. Gross Amount due from borrower (line 120) | 13,896.39 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 56,000.00 | 602. Less reductions in amt. due seller (line 520) | |
| **303. Cash [ ]From [X]To  Borrower** | **42,103.61** | **603. Cash [X]To [ ]From  Seller** | 0.00 |

SUBSTITUTION FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I on line 401(or if 401 is asterisked, line 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER, you are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller(s):

(Printed on May 25, 2005 @ 10:19)

**L.**

US Department of Housing and Urban Development
## SETTLEMENT CHARGES

OMB No. 2502-0265

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| **700. Total Sales/Broker's Commission based on price** | | |
| 701. Listing Realtor Commission | | |
| 702. Selling Realtor Commission | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  To: Home Funds Direct | 1,960.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee  To: Alabama Appraisal Service | 300.00 | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Processing Fee  To: Home Funds Direct | 500.00 | |
| 809. Underwriting fee  To: Home Funds Direct | 500.00 | |
| 810. Document Preparation Fee | | |
| 811. Zone Determination Fee  To: Home Funds Direct | 9.50 | |
| 812. Tax Service Fee  To: Home Funds Direct | 66.00 | |
| 813. Appraisal Review Fee  To: Home Funds Direct | 250.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from Odd Days  To: Home Funds Direct | 22.40 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Insurance Premium for  To: State Farm | 1,068.00 | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard insurance  To: Home Funds Direct | 356.00 | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes  To: Home Funds Direct | 313.25 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment  To: Home Funds Direct | -134.25 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | 275.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc. | 250.00 | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (Includes above item numbers: ) | | |
| 1108. Title Insurance  To: Transnation Title Insurance Company | 200.00 | |
| (Includes above item numbers: ) | | |
| 1109. Lender's coverage $67,500.00  @  $200.00 | | |
| 1110. Owner's coverage @ 0.00 | | |
| 1111. Endorsements  To: Swafford and Hays Settlement Services, Inc. | 50.00 | |
| 1112. | | |
| 1113. Overnight Courier & Handling Fees | | |
| **1200. GOVT. RECORDING, TRANSFER, AND SERVICE FEES** | | |
| 1201. Recording Fees and Service fees: To: Clerk of the Court | 120.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $84.00 To: Clerk of the Court | 84.00 | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest inspection | | |
| 1303. Payoff  To: Army Aviation Center F C U  good thru 4/24 | 4,594.49 | |
| 1304. | | |
| 1305. Payment  To: The CR STR/Providian | 785.00 | |
| 1306. Payment  To: Palisades | 694.00 | |
| 1307. Payment  To: Holloway Credit | 452.00 | |
| 1308. Payment  To: Small LNS | 399.00 | |
| 1309. Payment  To: Crdt MGT. | 182.00 | |
| 1310. Payment  To: Friedmans Jewelers | 400.00 | |
| 1311. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | **13,896.39** | **0.00** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWER(S):                                           SELLER(S):

Cheryl Hall

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

**Hall-Frazier**
**Record - 000036**

_Jane Carcello_ _____                    _05/28/08_ _____

Swafford and Hays Settlement Services, Inc.                    Date

NOTE:  Taxes have been prorated based on taxes for the year.  Any re-proration will be handled between the buyer and seller.  All utility bills (water, sewer, electric, cable and maintenance fees) have been paid or will be paid upon receipt of final bills.

WARNING:  It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine or imprisonment.  For details see.  Title 18 U.S. Code Section 1001 and Section 1010.

# FINAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| | Date: **03/25/2005**    Loan #: **0503172917** |
| | Loan Type: **Conventional** |

**Borrower Address:**
**105 TV ROAD**
**DOTHAN, AL 36301**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.975 % | $85,772.51 | $ 52,417.10 | $ 138,189.61 |

### PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $383.89 | 05/01/2005 | | | |
| 1 | $373.10 | 04/01/2035 | | | |

**DEMAND FEATURE:**    **X** This loan does not have a Demand Feature.    ☐ This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:**    ☐ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at:
**105 TV ROAD**
**DOTHAN, AL 36301**

**ASSUMPTION:** Someone buying this property **X** cannot assume the remaining balance due under original mortgage terms ☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $170.00

**PROPERTY INSURANCE:** **X** Property hazard insurance in the amount of the lesser of the loan amount or replacement cost with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any company acceptable to the lender.
Hazard insurance ☐ is **X** is not available through the lender at an estimated cost of N/A for N/A year term.

**LATE CHARGES:** If your payment is more than **10** days late, you will be charged a late charge of **5.000**% of the overdue payment.

**PREPAYMENT:** If you pay off your loan early, you
☐ may **X** will not have to pay a penalty.
☐ may **X** will not be entitled to a refund of part of the finance charge.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| _(signature)_ 3-25-05 | |
|---|---|
| Borrower    Date<br>CHERYL HALL | Borrower    Date |
| Borrower    Date | Borrower    Date |
| Borrower    Date | Borrower    Date |
| Borrower    Date | Borrower    Date |

# RIGHT TO CANCEL NOTICE

## WHEN COMPLETING THE "Notice of Right to Cancel":

* **Please verifiy that all dates are properly filled in; if they are not, the rescission must begin again.**

* **See attachment instruction sheet to help you determine dates.**

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE DOC/FUNDING DEPARTMENT.*

*PHONE: (866) 539-7025*

Closing Agent / Escrow Officer _Jane Carcello_ Date _05/28/05_

MIN # 100176105031729174     HALL           Loan # 0503172917
AHL 610087.UFF         Page 1 of 1

**Hall-Frazier**
**Record - 000039**

## INSTRUCTION SHEET
## DATING & INITIALING THE NOTICE OF RIGHT TO CANCEL

Prior to or at the time the Notice of Right to Cancel is presented to the Borrower for signature two(2) dates must be added to the form.

A.   Under item number 1, please write in the date on which the legal documents are being signed.

B.   In the last paragraph inside the box, please write in the "cancellation date" Remember this date must be three business days from the date the legal documents are signed.   Business days are Monday through Saturday, excluding legal holidays.

After the dates have been added to the Notice, the Borrower must initial both dates (A & B).


**SAMPLE:**

### NOTICE OF RIGHT TO CANCEL

                                                                Date:

Loan No:
Borrower:


Property Address:

---

**YOUR RIGHT TO CANCEL:**
You are entering into a new transaction to increase the amount of credit previously provided to you.  Your home is the security for this new transaction.  You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.   the date of the transaction, which is          **A**          ; or
2.   the date you received your Truth-in-Lending disclosures; or
3.   the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe.  Your home is the security for that amount.  Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit.  We must also return to you any money you have given to us or to anyone else in connection with this new transaction.

You may keep any money  or property we have given you until we have done the things mentioned above, but you must then offer to return the money or the property.  It is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing at:

Name of Creditor:



You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or by telegram, you must send the notice no later than midnight of          **B** .
                       (or midnight of the third business day following the latest of the three events listed above.)  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**



_____          _____
Consumer's Signature                    Date

---

I THE UNDERSIGNED HEREBY ACKNOWLEDGE, THAT, ON THE DATE SET FORTH BELOW, I RECEIVED TWO (2) COPIES (IN ADDITION TO THIS COPY) OF THIS NOTICE OF RIGHT TO CANCEL, ADVISING ME OF MY RIGHT TO CANCEL THE TRANSACTION TO WHICH THIS NOTICE RELATES AND ONE COPY OF THE FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT.

Each borrower/owner in this transaction has the right to cancel.  The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.



_____          _____
Consumer's Signature                    Date

## NOTICE OF RIGHT TO CANCEL

Loan No: 0503172917                                    Date: March 25, 2005
Borrower: CHERYL HALL


Property Address: **105 TV ROAD**
                  **DOTHAN, AL 36301**

---

YOUR RIGHT TO CANCEL:
You are entering into transaction that will result in a mortgage, lien, or security
interest on/in your home.  You have a legal right under federal law to cancel this
transaction, without cost, within three business days from whichever of the following
events occurs last:

1.   the date of the transaction, which is          **March 25, 2005**          ; or
2.   the date you received your Truth-in-Lending disclosures; or
3.   the date you received this notice of your right to cancel.


If you cancel the transaction, the mortgage, lien, or security interest is also
cancelled.  Within 20 calendar days after we receive your notice, we must take the
steps necessary to reflect the fact that the mortgage, lien, or security interest
on/in your home has been cancelled, and we must return to you any money or property
you have given to us or to anyone else in connection with this transaction.

You may keep any money  or property we have given you until we have done the things
mentioned above, but you must then offer to return the money or the property.  If it
is impractical or unfair for you to return the property, you must offer its reasonable
value.  You may offer to return the property at your home or at the location of the
property.  Money must be returned to the address below.  If we do not take possession
of the money or property within 20 calendar days of your offer, you may keep it
without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing at:

Name of Creditor: **Home Funds Direct**
                  **1130 Northchase Parkway, Suite 200**
                  **Marietta, GA 30067-6420**



You may use any written statement that is signed and dated by you and states your
intention to cancel, or you may use this notice by dating and signing below.  Keep one
copy of this notice because it contains important information about your rights.

If you cancel by mail or by telegram, you must send the notice no later than midnight
of   **March 29, 2005**
                    (or midnight of the third business day following the latest of the
three events listed above.)  If you send or deliver your written notice to cancel some
other way, it must be delivered to the above address no later than that time.


**I WISH TO CANCEL**


....      .- --- -.         .-- ..       .........
Consumer's Signature              Date
CHERYL HALL

---

I THE UNDERSIGNED HEREBY ACKNOWLEDGE, THAT, ON THE DATE SET FORTH BELOW, I RECEIVED TWO
(2) COPIES (IN ADDITION TO THIS COPY) OF THIS NOTICE OF RIGHT TO CANCEL, ADVISING ME OF
MY RIGHT TO CANCEL THE TRANSACTION TO WHICH THIS NOTICE RELATES AND ONE COPY OF THE
FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT.

Each borrower/owner in this transaction has the right to cancel.  The exercise of this
right by one borrower/owner shall be effective to all borrowers/owners.


Consumer's Signature              Date
CHERYL HALL

610005.uff

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [X] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA    ☐ Conventional    [X] Other (explain): ☐ FHA    ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| Amount $56,000.00 | Interest Rate 7.299 % | No. of Months 360 | Amortization Type: | [X] Fixed Rate    ☐ Other (explain): ☐ GPM    ☐ ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 105 TV ROAD, DOTHAN, AL 36301 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE TITLE | 0 |

| Purpose of Loan | ☐ Purchase    ☐ Construction    ☐ Other (explain): [X] Refinance    ☐ Construction-Permanent | Property will be: [X] Primary Residence    ☐ Secondary Residence    ☐ Investment |
|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 2002 | $80,000.00 | $0.00 | Cash-Out/Home Improve | Cost: $0.00 |

| Title will be held in what Name(s) CHERYL HALL | Manner in which Title will be held Individual | Estate will be held in: [X] Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| EQUITY |

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) CHERYL HALL | | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) (334) 792-3682 | DOB (MM/DD/YYYY) 07/01/1959 | Yrs. School 12 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married    [X] Unmarried (include single, divorced, widowed)    ☐ Separated | Dependents (not listed by Co-Borrower) no. 0    ages | ☐ Married    ☐ Unmarried (include single, divorced, widowed)    ☐ Separated | Dependents (not listed by Borrower) no.    ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) [X] Own ☐ Rent 2 No. Yrs. 105 TV ROAD DOTHAN, AL 36301 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

### IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer ☐ Self Employed DISABILITY ,AL | Yrs. on this job 3 Yrs. employed in this line of work/profession 3 | Name & Address of Employer ☐ Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) (334) 792-3682 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ |
|---|---|---|---|
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ |
|---|---|---|---|
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

0503172917




## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 1,302.75 | $ | $ 1,302.75 | Rent | $ 0.00 | /////// |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 0.00 | $ 383.89 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 89.00 | 0.00 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 44.75 | 0.00 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| **Total** | $ 1,302.75 | $ | $ 1,302.75 | **Total** | 133.75 | $ 383.89 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income   Notice:** Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.   Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | **LIABILITIES** | $ Payment/Months | $ |
| | | Name and address of Company | | |
| **List checking and savings accounts below** | | *** SEE ADDENDUM *** | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| FIRST UNION | | | | |
| | | Acct. no. | | |
| Acct. no. | $ 250.00 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) /0 | $ 0.00 | | | |
| | | Acct. no. | | |
| Life insurance net cash value | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ 0.00 | | | | |
| **Subtotal Liquid Assets** | $ 250.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 0.00 | Acct. no. | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | $ | | | |
| HONDA ACCORD | 15,000.00 | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | /////// |
| Other Assets (itemize) | $ | | | |
| OTHER | 3,000.00 | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ 0.00 | |
| **Total Assets a.** | $ 18,250.00 | Net Worth (a minus b) ▶ $ 18,250.00 | **Total Liabilities b.** | $ 0.00 |

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. | Purchase price | $ 0.00 |
| b. | Alterations, improvements, repairs | 0.00 |
| c. | Land (if acquired separately) | 0.00 |
| d. | Refinance (incl. debts to be paid off) | 0.00 |
| e. | Estimated prepaid items | 1,960.00 |
| f. | Estimated closing costs | 3,361.90 |
| g. | PMI, MIP, Funding Fee | 0.00 |
| h. | Discount (if Borrower will pay) | 0.00 |
| i. | Total costs (add items a through h) | 5,321.90 |
| j. | Subordinate financing | 0.00 |
| k. | Borrower's closing costs paid by Seller | 0.00 |
| l. | Other Credits (explain) | |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| | | 0.00 |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | 56,000.00 |
| n. | PMI, MIP, Funding Fee financed | 0.00 |
| o. | Loan amount (add m & n) | 56,000.00 |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | -50,678.10 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | | X | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable Federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 3-25-05 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | X I do not wish to furnish this information. | CO-BORROWER | I do not wish to furnish this information. |
|---|---|---|---|
| **Ethnicity:** | Hispanic or Latino / Not Hispanic or Latino | **Ethnicity:** | Hispanic or Latino / Not Hispanic or Latino |
| **Race:** | American Indian or Alaska Native / Asian / Black or African American / Native Hawaiian or Other Pacific Islander / White | **Race:** | American Indian or Alaska Native / Asian / Black or African American / Native Hawaiian or Other Pacific Islander / White |
| **Sex:** | Female / Male | **Sex:** | Female / Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | KRIS DILLON | Home Funds Direct |
| ☐ Face-to-face interview | Interviewer's Signature          Date | 1130 Northchase Parkway |
| ☐ Mail | 03/17/2005 | Suite 200 |
| X Telephone | Interviewer's Phone Number (incl. area code) | Marietta, GA 30067-6420 |
| ☐ Internet | | |

0503172917
VMP®-21N (0305)

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

**Hall-Frazier
Record - 000044**

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower:<br>HALL, CHERYL | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co Borrower's Signature: | Date |
|---|---|---|---|
| X | 3-25-08 | X | |

**Hall-Frazier Record - 000045**

**FINAL**

Lender: Home Funds Direct
Address: 15090 Avenue of Science
San Diego, CA 92128
Applicant(s): CHERYL HALL

Property Address:105 TV ROAD
DOTHAN, AL 36301

Loan Number: 0503172917
Sales Price: $0.00
Base Loan Amount: 56,000.00
Total Loan Amount: $$56,000.00
Type of Loan: Conventional Fixed
DatePrepared: March 25, 2005
Rate: 7.299    %Term: 360/360 mos

> The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates-the actual charges may be more or less. Your transaction may not involve a fee for every item listed.
> The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD 1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

### HUD-1 or HUD-1A      DESCRIPTION OF CHARGES

| | Lender | OTHER |
|---|---|---|
| 204 Lender Credit to Borr. | $ | $ |
| 801 Origination Fee | $ 1,960.00 | $ |
| 802 Discount Points | $ | $ |
| 803 Appraisal Fee | $ | $ 300.00 |
| 804 Credit Report Fee | $ | $ |
| 805 Final Inspection/442 Fee | $ | $ |
| 807 Application Fee | $ | $ |
| 809 Yield Spread Premium (POC) / Rebate to Broker(POC) $  0.00 | $ | $ |
| 810 Processing Fee | $ 500.00 | $ |
| 811 Underwriting Fee | $ 500.00 | $ |
| 813 Appraisal Review Fee | $ 250.00 | $ |
| 815 Escrow Holdback Fee | $ | $ |
| 816 Funding Fee | $ | $ |
| 818 Courier Fee | $ | $ |
| 825 Warehouse Fee | $ | $ |
| 827 Reverif Fee | $ | $ |
| 828 Flood Cert/Life of Loan Fee | $ 9.50 | $ |
| 829 Tax Service Fee | $ 66.00 | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| **SUB-TOTALS** | 3,285.50 | 300.00 |

| | OTHER CHARGES | |
|---|---|---|
| 901 Interest for 2 days    @ $ 11.2 per day | $ 22.40 | $ |
| 903 Hazard Insurance Premium | $ | $ |
| 904 Flood Insurance Premium | $ | $ |
| 1001 Hazard Insurance 4 month(s) @   $89.00 | $ 356.00 | $ |
| 1003 City Property Tax 0 month(s) @   $0.00 | $ | $ |
| 1004 County Property Tax 7 month(s) @  $44.75 | $ 313.25 | $ |
| 1005 School Tax 0 month(s) @   $0.00 | $ | $ |
| 1006 Flood Insurance 0 month(s) @   $0.00 | $ | $ |
| 1008 Agg. Acctg. Adjustment | $ -134.25 | $ |
| 1101 Settlement / Closing Agent Fee | $ | $ 275.00 |
| 1102 Abstract/Title Search Fee | $ | $ 200.00 |
| 1103 Title Examination Fee | $ | $ 250.00 |
| 1104 Title Insurance Binder | $ | $ |
| 1105 Closing Agent/Attorney Doc Fee | $ | $ |
| 1106 Notary Fee | $ | $ |
| 1107 Demand Fee | $ | $ |
| 1108 Title Insurance Premium | $ | $ 200.00 |
| 1201 Recording Fee - Deed/Mortgage | $ | $ 129.00 |
| 1202 City/County Tax- Deed/Mortgage | $ | $ |
| 1203 State Tax - Deed/Mortgage | $ | $ 84.00 |
| 1204 Misc Recording Fee | $ | $ 50.00 |
| 1205 Transfer Tax | $ | $ |
| 1301 Survey Fee | $ | $ |
| 1302 Pest Inspection | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

Lenders CFL License #

**TOTAL ESTIMATED SETTLEMENT CHARGES**                    $ 5,321.90

"P" designates  The Lender will require a particular provider from a Lender-controlled or approved list. The specific provider and actual cost will appear on the HUD-1 or HUD-1A.
These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs," and the Consumer Handbook on ARM Mortgages, if applicable.
☒ Use of a particular provider of service is required and the estimate is based on charges of the provider. Please see attached Addendum.

### THIS DOES NOT CONSTITUTE A LOAN COMMITMENT

| | | |
|---|---|---|
| Borrower CHERYL HALL | 3-25-05 Date | Borrower _____ Date |
| Borrower _____ | Date | Borrower _____ Date |
| Borrower _____ | Date | Borrower _____ Date |
| Borrower _____ | Date | Borrower _____ Date |

| Form **W-9**<br>(Rev. January 2003)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give form to the requester.<br>Do not send to the IRS. |
|---|---|---|

<table>
<tr><td rowspan="7" style="writing-mode:vertical">Print or type<br>See Specific Instructions on page 2.</td><td colspan="2">Name<br><br>CHERYL HALL</td></tr>
<tr><td colspan="2">Business name, if different from above</td></tr>
<tr><td>Check appropriate box: ☐ Individual/Sole proprietor ☐ Corporation ☐ Partnership ☐ Other ▶</td><td>☐ Exempt from backup<br>withholding</td></tr>
<tr><td>Address (number, street, and apt. or suite no.)<br>105 TV ROAD, ,</td><td>Requester's name and address (optional)</td></tr>
<tr><td>City, state, and ZIP code<br>DOTHAN, AL 36301</td><td rowspan="2">Home Funds Direct<br>15090 Avenue of Science<br>San Diego, CA 92128</td></tr>
<tr><td>List account number(s) here (optional)</td></tr>
</table>

### Part I | Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see **How to get a TIN** on page 3.

**Note:** *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

| Social security number |
|---|
| ▓▓▓▓▓▓▓▓ |

**or**

| Employer identification number |
|---|
|  |

### Part II | Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), **and**
2. I am not subject to backup withholding because: **(a)** I am exempt from backup withholding, or **(b)** I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or **(c)** the IRS has notified me that I am no longer subject to backup withholding, **and**
3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

| **Sign<br>Here** | Signature of<br>U.S. person ▶ | *(signature)* | Date ▶ 03/25/05 |
|---|---|---|---|

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

**1.** Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

**2.** Certify that you are not subject to backup withholding, or

**3.** Claim exemption from backup withholding if you are a U.S. exempt payee.

**Note:** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see **Pub. 515,** Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

**1.** The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

**2.** The treaty article addressing the income.

**3.** The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

**4.** The type and amount of income that qualifies for the exemption from tax.

**5.** Sufficient facts to justify the exemption from tax under the terms of the treaty article.

100176105031729174                                           0503172917

Form W-9 (Rev. 1 2003)

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exemption (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a **nonresident alien** or a **foreign entity** not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments (29% after December 31, 2003; 28% after December 31, 2005). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will **not** be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate **Instructions for the Requester of Form W-9.**

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your **individual** name as shown on your social security card or line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, **enter the owner's name on the "Name" line.** Enter the LLC's name on the "Business name" line.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note:** *You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).*

### Exempt From Backup Withholding

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note:** *If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.*

**Exempt payees.** Backup withholding is **not** required on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2);

2. The United States or any of its agencies or instrumentalities;

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities;

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities; or

5. An international organization or any of its agencies or instrumentalities.

Other payees that **may be exempt** from backup withholding include:

6. A corporation;

7. A foreign central bank of issue;

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States;

<div align="center">

10017610503172 9174    0503172917

</div>



Form W-9 (Rev. 1 2003)

9. A futures commission merchant registered with the Commodity Futures Trading Commission;

10. A real estate investment trust;

11. An entity registered at all times during the tax year under the Investment Company Act of 1940;

12. A common trust fund operated by a bank under section 584(a);

13. A financial institution;

14. A middleman known in the investment community as a nominee or custodian; or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| If the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt recipients 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation and reportable on Form 1099-MISC) are **not** exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services paid by a Federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN **in** the appropriate box. If you are a **resident alien** and you do not have and are not eligible to get an SSN, your TIN is your IRS *individual taxpayer identification number* (ITIN). Enter it in the social security number box. If you do not have an ITIN, see **How to get a TIN** below.

If you are a **sole proprietor** and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner **LLC** that is disregarded as an entity separate from its owner (see **Limited liability company (LLC)** on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

**Note:** *See the chart on page 4 for further clarification of name and TIN combinations.*

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get **Form SS-5,** Application for a Social Security Card, from your local Social Security Administration office or get this form on-line at **www.ssa.gov/online/ss5.html.** You may also get this form by calling 1-800-772-1213. Use **Form W-7,** Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or **Form SS-4,** Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web Site at **www.irs.gov.**

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** *Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.*

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

100176105031729174                    0503172917

Form W-9 (Rev. 1-2003)

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see **Exempt from backup withholding** on page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fisherman, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
|    b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal entity, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, or to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

100176105031729174                                                    0503172917



Form **4506-T**
(January 2004)

Department of the Treasury
Internal Revenue Service

### Request for Transcript of Tax Return

▶ **Do not sign this form unless all applicable parts have been completed.**
**Read the instructions on page 2.**
▶ **Request may be rejected if the form is incomplete, illegible, or any required part was blank at the time of signature.**

OMB No. 1545-1872

**TIP:** Use new Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use **Form 4506**, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first. | 1b First social security number on tax return or employer identification number (see instructions) |
|---|---|
| CHERYL HALL | ████████████ █ |
| 2a If a joint return, enter spouse's name shown on tax return | ████████  security number if joint tax return |

3  Current name, address (including apt., room, or suite no.), city, state, and ZIP code

CHERYL HALL
105 TV ROAD , DOTHAN, AL 36301

4  Address, (including apt., room, or suite no.), city, state, and ZIP code shown on the last return filed if different from line 3

5  If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

Home Funds Direct
15090 Avenue of Science San Diego, CA 92128

**CAUTION:** Lines 6 and 7 must be completed if the third party requires you to complete Form 4506-T. **Do not** sign Form 4506-T if the third party requests that you sign Form 4506-T and lines 6 and 7 are blank.

6  **Product requested.** Most requests will be processed within 10 business days. If the product requested relates to information from a return filed more than 4 years ago, it may take up to 30 days. Enter the return number here and check the box below. ▶

a  **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are generally available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years ☐

b  **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns ☐

c  **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years ☐

d  **Verification of Nonfiling,** which is proof from the IRS that you did not file a return for the year ☐

e  **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2003, filed in 2004, will not be available from the IRS until 2005. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 ☐

**CAUTION:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

7  **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a
(334) 792-3682

**Sign Here** ▶   ___ 3-25-05 ___
Signature (see instructions)                    Date

▶ _____
Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ _____
Spouse's signature                              Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.          Cat. No. 37667N          Form **4506-T** (1-2004)

100176105031729174                                                      0503172917

Form 4506-T (1 2004)

## A Change To Note

● New Form 4506-T, Request for Transcript of Tax Return, is used to request tax return transcripts, tax account transcripts, W-2 information, 1099 information, verification of non-filing, and a record of account. Form 4506, Request for Copy of Tax Return, is now used only to request copies of tax returns.

## Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series) and one for all other transcripts.

**Note:** If you are requesting more than one transcript or other product and the chart below shows two different service centers, mail your request to the service center based on the address of your most recent return.

### Chart for individual transcripts (Form 1040 series)

| If you lived in and filed an individual return: | Mail or fax to the Internal Revenue Service at: |
|---|---|
| Maine, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team 310 Lowell St. Stop 679 Andover, MA 01810<br>978-691-6859 |
| Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, West Virginia, Rhode Island | RAIVS Team 4800 Buford Hwy. Stop 91 Chamblee, GA 30341<br>678-530 5326 |
| Arkansas, Colorado, Kentucky, Louisiana, New Mexico, Oklahoma, Tennessee, Texas | RAIVS Team 3651 South Interregional Hwy. Stop 6716 Austin, TX 78741<br>512-460-2272 |
| Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming | RAIVS Team Stop 38101 Fresno, CA 93888<br>559-253-4992 |
| Delaware, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, Wisconsin | RAIVS Team Stop 841-6700 Kansas City, MO 64999<br>816-823-7667 |
| Ohio, Virginia | RAIVS Team 5333 Getwell Rd. Stop 2826 Memphis, TN 38118<br>901-546-4175 |

| Connecticut, District of Columbia, Maryland, New Jersey, Pennsylvania, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team DP SE 135 Philadelphia, PA 19255-0695<br>215 516-2931 |
|---|---|

### Chart for all other transcripts

| If you lived in: | Mail to the Internal Revenue Service at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | RAIVS Team Mail Stop 6734 Ogden, UT 84201<br>801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800F Cincinnati, OH 45250<br>859-669-3592 |

**Line 1b.** Enter your employer identification number if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: Learning about the law or the form, 10 min.; Preparing the form, 11 min.; and Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Tax Products Coordinating Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send the form to this address. Instead, see Where to file on this page.

100176105031729174

0503172917



9045T (0402).01

Page 2 of 2

Initials

# IRS FORM 4506-T CONSENT

### *** Attention Borrower(s) and Closing Agent ***

The attached form, Request for Transcript of Tax Return (IRS FORM 4506-T),

## should not be dated.

Form 4506-T allows the lender and its assigns to request IRS records for the purpose of comparing the IRS' information to the information submitted to the lender in connection with underwriting and approving the loan. By signing Form 4506 T, each borrower agrees to the foregoing and authorizes the lender and its assigns to date the form at the time it is desired to be submitted to the IRS.

Each borrower hereby acknowledges and agrees to the foregoing.

_____    3-25-05
Borrower **CHERYL HALL**                          Date

MIN #  100176105031729174              **HALL**                    0503172917

610091.uff                       **Page 1 of 1**                 Rev 10/04

# COMPLIANCE AGREEMENT

| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br><br>**Home Funds Direct<br>15090 Avenue of Science<br>San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD<br>DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

The undersigned borrower(s), in consideration of lender disbursing loan proceeds for the purchase or refinance of, or construction of improvements on the aforementioned property, agree(s), if requested by the lender or someone acting on behalf of said lender, to fully co-operate in adjusting for clerical errors, mistakes by the lender or by the broker, and all loan closing documentation deemed necessary or desirable, in the reasonable discretion of lender, to enable lender to sell, convey its interest in, seek guaranty of, or market said loan to any entity, including but not limited to, a secondary investor, the Federal National Mortgage Association (FNMA), the Federal Home Loan Mortgage Corporation (FHLMC), Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), or any Municipal Bonding Authority.

The undersigned borrower(s) agree(s) to sign or initial any original or new document requested by the lender to correctly reflect the terms of said loan. This shall be done within a reasonable time of request by the lender to do so and failure or refusal to sign or initial any documents requested is an event of default allowing lender to take any action necessary to collect said loan.

In order to assure that the loan documentation executed this date will conform and be acceptable in the market place in the instance of transfer, sale, or the conveyance by lender of its interest in and to the above mentioned property evidenced by said loan documentation, the undersigned borrower(s) do hereby so agree and covenant as aforesaid herein.

DATED effective this _25_ day _March_ , _2005_

| | | | |
|---|---|---|---|
| _____ 3-25-05 | | _____ | |
| Borrower    Date<br>**CHERYL HALL** | | Borrower    Date | |
| _____ | | _____ | |
| Borrower    Date | | Borrower    Date | |
| _____ | | _____ | |
| Borrower    Date | | Borrower    Date | |
| _____ | | _____ | |
| Borrower    Date | | Borrower    Date | |

STATE OF _Alabama_ }
COUNTY OF _Houston_ } SS

On _3-25-2005_ before me, _Diane L. Hilson_
Notary Public Name (printed)

personally appeared **CHERYL HALL**

☐ personally known to me -OR-

☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Diane L. Hilson
Alabama State
at Large

My Commission
Expires 3-06-06     Signature of Notary

| | | |
|---|---|---|
| MIN # 100176105031729174 | HALL | Loan # 0503172917 |
| CMPLAGRT.UFF | Page 1 of 1 | Rev. 10/04 |

## DISCLOSURE NOTICES

| Applicant(s)<br>**CHERYL HALL** | Lender:<br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| | Date: **March 25, 2005** |

Property Address
**105 TV ROAD**
**DOTHAN, AL 36301**

### AFFIDAVIT OF OCCUPANCY

The Applicant(s) hereby certify and acknowledge that, upon taking title to the real property described above, their occupancy status will be as follows:

**O C C U P A N C Y**

[X] Primary Residence - Occupied by Applicant(s) within 60 days of closing.

[ ] Secondary Residence - To be occupied by Applicant(s) at least 15 days yearly, as second home (vacation, etc.), while maintaining
principal residence elsewhere. (Please check this box if you plan to establish it as your primary residence at a future date (i.e., retirement)).

[ ] Investment Property - Not owner occupied. Purchased as an investment to be held or rented.

The Applicant(s) acknowledge it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning this loan application as applicable under the provisions of Title 18, United States Code, Section 1014.

### FAIR CREDIT REPORTING ACT

**F C R A**

An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of denied credit due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of Section 615(b) of the Fair Credit Reporting Act. You have the right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency if an adverse action is taken on your loan application. Under Section 612 of the Fair Credit Reporting Act you have the right to obtain within 60 days of an adverse action a free copy of the report from the consumer reporting agency. You also have the right to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

### EQUAL CREDIT OPPORTUNITY ACT

**E C O A**

The Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on a basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. Income which you receive as alimony, child support or separate maintenance need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan. Income from these and other sources, including part-time or temporary employment, will not be discounted by this lender because of your sex or marital status. However, we will consider very carefully the stability and probable continuity of any income you disclose to us. The Federal Agency that administers compliance with this law concerning this creditor is:

**FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY**
**ROOM 4037**
**WASHINGTON, D.C. 20580**

# DISCLOSURE NOTICES

## GOVERNMENT LOANS ONLY

**L O A N S**

RIGHT TO FINANCIAL PRIVACY ACT OF 1978 - This is notice to you as required by the Right to Financial Privacy Act of 1978 that the Department of Housing and Urban Development or Department of Veterans Affairs has a right of access to financial records held by a financial institution in connection with the consideration of administration of assistance to you. Financial records involving your transaction will be available to the Department of Housing and Urban Development or Department of Veterans Affairs without further notice or authorization but will not be disclosed or released to another Government agency or Department without your consent except as required or permitted by law.

## EMPLOYMENT CERTIFICATION

**E M P L O Y**

An approval for a loan is based upon employment , income and obligations as shown on the loan application. At closing, the applicant and co-applicant/spouse, if applicable, are required to execute a sworn statement affirming that they are currently working as previously reported, have not received notice of layoff nor have knowledge of pending layoff, and that outstanding obligations are substantially the same as reported on the application. Should a change occur in your employment or financial status prior to loan closing, immediately notify your loan officer, as it will be necessary to obtain approval of any changes.

## ANTI-COERCION STATEMENT

**I N S U R A N C E**

☐ The lender may not require the applicant to take insurance through any particular insurance agent or company to protect the mortgaged property. The applicant, has the right to have the insurance placed with an insurance agent or company of his choice, provided the company meets the requirements of the lender. The lender has the right to designate reasonable financial requirements as to the company and the adequacy of the coverage.

I have read the foregoing statement , and understand my rights and privileges and those of the lender relative to the placing of such insurance.

I have selected the following agencies to write the insurance covering the property described above:

**S T A T E M E N T**

**EUGENE MCGRIFF-STATE FARM FIRE AND**
_____
Insurance Company Name                                    Agent

**PO BOX 1185, DOTHAN AL, 36302**
_____
Agent's Address                          Agent's Telephone Number

☐ **FLOOD INSURANCE NOTIFICATION**

Federal regulations require us to inform you that the property used as security for this loan is located in an area identified by the Federal Emergency Management Agency (FEMA) as having special flood hazards and that in the event of damage to the property caused by flooding in a Federally-declared disaster, Federal disaster relief assistance, if authorized, will be available for the property. At the closing you will be asked to acknowledge your receipt of this information. If you have any questions concerning this notice, kindly contact your loan officer. IMPORTANT: Please notify your insurance agent that the "loss payable" clause for the mortgagee on both the hazard and flood insurance must read as follows, unless otherwise advised:

## DISCLOSURE NOTICES

I/We hereby certify that I/we have read the Notices set forth above and fully understand all of the above. In addition to these Notices, I/we the applicant(s) certify that I/we have received the "Settlement Cost Booklet" and the "Consumer Handbook on Adjustable Rate Mortgages" (CHARM booklet), if applicable.

| | | | |
|---|---|---|---|
| Borrower       3-25-05 | Date | Borrower | Date |
| **CHERYL HALL** | | | |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

**N O T I F I C A T I O N**

# APPRAISAL DISCLOSURE

| Borrower Name(s): | Lender: |
|---|---|
| CHERYL HALL | Home Funds Direct<br>15090 Avenue of Science<br>San Diego, CA 92128<br><br>0503172917 |

| Property Address: | Date: |
|---|---|
| 105 TV ROAD<br>DOTHAN, AL 36301 | March 25, 2005 |

You have the right to a copy of the appraisal report used in connection with your application for credit. If you wish a copy, please write to us at the mailing address we have provided. We must hear from you no later than 90 days after we notify you about the action taken on your credit application or you withdraw your application.

Contact: <u>Customer Service</u>
Lender/Broker: <u>Home Funds Direct</u>
Address: <u>Attention: Post Closing</u>
<u>16550 West Bernardo Dr. Bldg 1</u>
<u>San Diego, CA 92127-1870</u>
Telephone: <u>(877) 683-4466</u>

In your letter, give us the following information:

**Your Name**
**Your Address**
**Your Telephone Number**

 3-25-05

| Borrower CHERYL HALL | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

100176105031729174                                                 0503172917

# RESPA SERVICING DISCLOSURE

0503172917

Lender: **Home Funds Direct**
**15090 Avenue of Science**
**San Diego, CA 92128**

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights, *whether or not your loan servicing is transferred.* If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1.  The servicing is the best estimate of what will happen to the servicing of your mortgage loan:
    [X] We may assign, sell or transfer the servicing of your loan while the loan is outstanding.   [X] We are able to service your loan and we [ ] will   [ ] will not   [X] haven't decided whether to service your loan.
    OR
    [ ] We do not service mortgage loans, [ ] and we have not serviced mortgage loans in the past three years.
    [ ] We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.
    [ ] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
    [ ] sell all of the mortgage servicing   [ ] retain all of the mortgage servicing
    [ ] assign, sell or transfer _____ % of the mortgage servicing

2.  For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is between:

    _____ [0 to 25%] or [NONE]   _____ 26 to 50%   _____ 51 to 75%   **X** [76 to 100%] or [ALL]

This estimate [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3.  [X] We have previously assigned, sold or transferred the servicing of federally related mortgage loans.
    OR
    [ ] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| Year | Percentage of Loans Transferred | (Rounded to nearest quartile - 0%, 25%, 50%, 75%, or 100%) |
|------|-------------------------------|-------------------------------------------------------------|
| _____ | _____ % | |
| _____ | _____ % | |
| _____ | _____ % | |

This information [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.

**March 25, 2005**                                    **Home Funds Direct**
Date                                                  Present Servicer or Lender

**ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT**

I/We have read this disclosure form and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

_____   3-25-05   _____
Applicant **CHERYL HALL**   Date   Applicant   Date

_____   _____   _____
Applicant   Date   Applicant   Date

# ALABAMA
## Choice of Insurance Notice

| Loan Number | Date |
|---|---|
| 0503172917 | March 25, 2005 |

Borrower
**CHERYL HALL**

| Property Address | Lender |
|---|---|
| 105 TV ROAD | **Home Funds Direct** |
| DOTHAN, AL 36301 | **15090 Avenue of Science** |
| | **San Diego, CA 92128** |

The AL Code Section 5-19-20(e) requires that you receive written notification of your right to select insurance of your choice, when hazard insurance is required by the lender as a condition of the loan.

**Home Funds Direct**
shall not require that you, upon financing the purchase of real property or lending money on the security of real property, as a condition precedent, concurrent or subsequent to financing the purchase of such property or renewal or extension to lending money upon the security of a mortgage thereon, negotiate any policy of insurance or renewal thereof through a particular insurer, agent, solicitor or broker.

The lender reserves the right to approve or disapprove an insurer selected based on reasonable standards, such as financial soundness, services of insurer and required coverage.

Your acknowledgment below signifies that written notice was provided to you pursuant to the state statute.

**CHERYL HALL**

---

Date:          March 25, 2005          02:56PM

Stage:         60 - 60 - docs drawn stage

Borrower:      CHERYL HALL

Loan Number: 0503172917                                          **FINAL**

### SECTION 32 CALCULATION
### SUMMARY

| | |
|---|---|
| Section32: | No |
| Purpose: | REFI, CASH-OUT |
| Occupancy: | Owner Occupied |
| Loan Term / Balloon Term: | 360    / 360 |
| PrePayment Penalty: | No |
| Total DTI: | 39.734% |
| Doc Type: | Full |
| APR: | 7.975 |
| T-Bill Rate: | 4.550% |
| Max Rate w/o Sec32: | 12.550% |
| Amount Financed: | $52,417.10 |
| Sec32 Pts/Fees: | $3,560.50 |
| Max Fees w/o Sec32: | $4,193.37 |

### GOOD FAITH ESTIMATE
### SUMMARY

| HUD-1 or HUD-1A DESCRIPTION OF CHARGES | Lender | OTHER |
|---|---|---|
| 801  ORIGINATION FEE | $    1,960.00 | $        0.00 |
| 802  DISCOUNT FEE | $        0.00 | $        0.00 |
| 807  APPLICATION FEE | $        0.00 | $        0.00 |
| 810  PROCESSING FEE | $      500.00 | $        0.00 |
| 811  UNDERWRITING FEE | $      500.00 | $        0.00 |
| 812  DOCUMENT PREPARATION FEE | $ | $ |
| 813  APPRAISAL REVIEW FEE | $      250.00 | $        0.00 |
| 814  REDRAW FEE | $ | $ |
| 815  ESCROW HOLDBACK FEE | $        0.00 | $        0.00 |
| 816  FUNDING FEE | $        0.00 | $        0.00 |
| 819  COURIER FEE | $        0.00 | $        0.00 |
| 825  WAREHOUSE FEE | $        0.00 | $        0.00 |
| 827  RE-VERIFICATION FEE | $        0.00 | $        0.00 |
| 828  ZONE DETERMINATION FEE | $        9.50 | $        0.00 |
| 829  TAX SERVICE FEE | $       66.00 | $        0.00 |
| 830  LENDER SERVICE FEE | $ | $ |
| | $ | $ |
| 804  CREDIT REPORT FEE | $        0.00 | $        0.00 |
| | $ | $ |

| | | OTHER |
|---|---|---|
| 1101  CLOSING AGENT FEE | $ | $      275.00 |
| 1105  CLOSING AGENT DOCUMENT FEE | $ | $        0.00 |
| 1107  DEMAND FEE | $ | $        0.00 |
| 1112  COURIER FEE - CMG | $ | $ |

|  | | |
|---|---|---|
| INDIVIDUAL SUB-TOTALS | $    3,285.50 | $      275.00 |
| COMBINED SUB-TOTAL | | $    3,560.50 |
| 901  ODD DAYS INTEREST | | $       22.40 |
| TOTAL | | $    3,582.90 |

Loan Amount:    56,000.00

Rate:           7.299%

Margin:         0.000%

600068.uff

# ADDITIONAL REQUIREMENT FORM

| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br><br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL. 36301** | Date:<br>**March 25, 2005** |

Fax all items per item 5 below
if original loan documents are not with lender

1.  Closing agent in receipt of original handwritten & typed 1003's with correct loan amount & interest rate. Government Monitoring & Interviewer section to be completed.

2.  Insured Closing Protection Letter - *if applicable to your state* - (fax if possible)

3.  HUD to be a certified copy of the true original, must show all pay offs & fees paid to correct parties and all fees must match our loan documents.

4.  HUD to be a certified copy of the true original, must show all pay offs & fees paid to correct parties and all fees must match our loan documents.

5. **The day of disbursement (if loan package is not returned to lender during the rescission period) please fax a copy of the following fully executed items to:**
   **(866) 539-7026**
   A.  TRUTH IN LENDING
   B.  NOTICE OF RIGHT TO CANCEL - ONE FOR EACH BORROWER (IF APPLICABLE
   C.  OUTSTANDING CONDITIONS THAT MAY BE REQUIRED TO MEET OUR LOAN APPROVAL
   D.  CERTIFIED COPY OF FINAL HUD-1 EXECUTED BY ALL
   E.  FIRST PAGE AND SIGNATURE PAGE OF MORTGAGE AND ALL RIDERS
   F.  COMPLETE NOTE WITH ALL RIDERS

Upon receipt & approval of above items, we will provide you written authorization to release funds.

You may not release funds on this transaction until you are in receipt of written authorization from the lender.

| _Jane Carcillo_ | _05/28/05_ |
|---|---|
| Closing Officer | Date of Transaction |

| _[signature]_  3-25-05 | |
|---|---|
| Borrower<br>**CHERYL HALL**   Date | Borrower   Date |
| Borrower   Date | Borrower   Date |
| Borrower   Date | Borrower   Date |
| Borrower   Date | Borrower   Date |

# SIGNATURE / NAME AFFIDAVIT

DATE:          03/25/2005

LOAN #:        0503172917

BORROWER:      HALL, CHERYL

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

CHERYL HALL

(Print or Type Name)                          Signature

If applicable, complete the following:

**I AM ALSO KNOWN AS:**

CHERYL R. HALL

(Print or Type Name)                          Signature

CHERYL H. FRAZIER

(Print or Type Name)                          Signature


(Print or Type Name)                          Signature


(Print or Type Name)                          Signature

I FURTHER CERTIFY THAT ALL THE ABOVE LISTED NAMES ARE ONE AND THE SAME PERSON.

State of _Alabama_

County of _Houston_

Subscribed and sworn (affirmed) before me
this _25_ day of _March_ _2005_

_DIANE L. HILSON_
          Notary Public Name (printed)

Notary Public in and for

the State of _Alabama_

County of _Houston_

My Commission Expires: _My Commission Expires 3-06-06_

Diane L. Hilson
Alabama State
at Large

Loan # 0503172917
rev. 11/04

# PRIVACY POLICY

| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

The trust of our customers is very important to **Home Funds Direct**. Keeping non public personal information about our customers in a secure environment and using that information only in accordance with this Privacy Policy is our top priority.

This Privacy Policy includes examples of the types on non public personal information **Home Funds Direct** collects. The provisions of this Policy apply to all our customers and consumers.

**Home Funds Direct** collects non public personal information about you from the following sources:

* Information we receive from you on applications or other forms;
* Information about your transactions with us or others; and
* Information we receive from a consumer reporting agency.

We do not disclose any nonpublic personal information about you to anyone, except as permitted by law. If you decide to pay off your loans (s), we will adhere to the privacy policies and practices as described in this notice.

**Home Funds Direct** restricts access to your personal and account information to those employees who need to know that information to provide products or services to you. **Home Funds Direct** maintains electronic and procedural safeguards that comply with federal regulations to guard your nonpublic information.

We may disclose all of the information we collect, as described above, to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

**Home Funds Direct** sells its mortgage loans into securitizations from time to time and, as permitted by law, disclosure of nonpublic information could result from such activity.

**Home Funds Direct** does not disclose nonpublic information about former customers or customers with inactive accounts, except in accordance with this privacy policy.

---

| Borrower | Date | Borrower | Date |
|---|---|---|---|
| **CHERYL HALL** | 3-25-05 | | |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

**Hall-Frazier**
**Record - 000064**

# REQUEST FOR LOSS PAYABLE ENDORSEMENT

To: Agent or Broker

Name **EUGENE MCGRIFF-STATE FARM FIRE**

Add.**PO BOX 1185**

**DOTHAN, AL 36302**

Insured's Name & Address

Name **CHERYL HALL**

Add.**105 TV ROAD**
**DOTHAN, AL 36301**

This letter is to advise you that I/we have, on **March 25, 2005** granted a security interest on the property listed below, to the company listed as LENDER. Please issue your standard mortgagee loss payable endorsement as instructed below. Mail the original endorsement and a copy of the policy to the lender named, at the address below.

The agent listed above is my/our voluntary selection of agents, as my/our choice and whose selection was not a condition precedent to this loan. Said designation may be revoked hereafter by written notice to the party named.

Property Add. **105 TV ROAD**
   **DOTHAN, AL 36301**
Lender: **Home Funds Direct**           Indebtedness $**56,000.00**
   **1130 Northchase Parkway**
   **Marietta, GA 30067-6420**        Term: **360**          Months

         **EUGENE MCGRIFF-STATE FARM FIRE AND CASUA PO BOX 1185**
Insurance Company: **DOTHAN, AL 36302**

Phone No. _____ Policy No. **01-GP-2037-2**

Endorsement should show lender as:   **See mortgagee loss payable endorsement below**

[**x**] First      [ ] Second      [ ] Third      [ ] Other _____ Mortgagee

Lender as a condition of the loan in addition to the fire and casualty protection [ ] **Requires** [**x**] **Does not require** a Flood insurance policy in the amount of the indebtedness covering the real property listed above.

If I/we fail to furnish a valid insurance policy or written evidence from an insurance company for all the required coverages within 15 days, I/we hereby agree to pay LENDER or its assignees any earned premium and costs for any policy they may have to place to comply with this requirement.

Thank you in advance for your prompt attention.

Signatures:

_C Sun Sun_

**CHERYL HALL**

**Mortgagee loss payable endorsement**
**Home Funds Direct**
**A Division of Accredited Home Lenders, Inc.**
**A California Corporation,**
**It's successors and/or assigns**
**P.O. Box 10436**
**Van Nuys, CA 91410-0436**

# Initial Escrow Account Disclosure Statement

Date: 03/25/2005       Loan Number: 0503172917       Case Number: _____

Servicer's Name and Address:                      Borrowers:
**Accredited Home Lenders**                        **CHERYL HALL**
**Escrow Administration**
**15090 Avenue of Science 200**
**San Diego, CA 92128**

Toll Free Number: 877-683-4466
Property Address:                                  Mailing Address:
**105 TV ROAD**                                    **105 TV ROAD**
**DOTHAN, AL 36301**                               **DOTHAN, AL 36301**

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account.

| Month (or Period) | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| Initial Deposit: | | | | $           535.00 |
| Jun 05 | 133.75 | 0.00 | | 668.75 |
| Jul 05 | 133.75 | 0.00 | | 802.50 |
| Aug 05 | 133.75 | 0.00 | | 936.25 |
| Sep 05 | 133.75 | 0.00 | | 1,070.00 |
| Oct 05 | 133.75 | 0.00 | | 1,203.75 |
| Nov 05 | 133.75 | 0.00 | | 1,337.50 |
| Dec 05 | 133.75 | 537.00 | County Prop. Tax | 934.25 |
| Jan 06 | 133.75 | 0.00 | | 1,068.00 |
| Feb 06 | 133.75 | 0.00 | | 1,201.75 |
| Mar 06 | 133.75 | 1,068.00 | Hazard Ins. Impounds | 267.50 |
| Apr 06 | 133.75 | 0.00 | | 401.25 |
| May 06 | 133.75 | 0.00 | | 535.00 |

**(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.)** Cushion selected by servicer: $ _____ 267.50

[x] Your **Monthly**          mortgage payment for the coming year will be $ **517.64**          of which $ **383.89**    will be for principal and interest and $ **133.75**          will go into your escrow account, and $ **0.00**          will be for discretionary items (such as life insurance, disability insurance) that you chose to be included with your monthly payment.

[ ] Your first          mortgage payment for the coming year will be $          of which $          will be for principal and interest and $          will go into your escrow account, and $          will be for discretionary items (such as life insurance, disability insurance) that you chose to be included with your monthly payment. The terms of your loan may result in changes to the monthly principal and interest payments during the year.

VMP-503X (9802).01      2/98
VMP MORTGAGE FORMS - (800)521-7291

## HAZARD INSURANCE AUTHORIZATION & REQUIREMENTS

Lender: **Home Funds Direct**

Date: **March 25, 2005**
Loan Number: **0503172917**

Escrow Company: SWAFFORD & HAYES SETTLEMENT SERVICES INC
9041 EXECUTIVE PARK DRIVE, KNOXVILLE, TN, 37923

Escrow Number: **05-2813**

Borrower Name(s): CHERYL HALL

Property Address: 105 TV ROAD
DOTHAN, AL 36301

**AN ACCEPTABLE HAZARD INSURANCE POLICY, WITH ENDORSEMENTS AND/OR ASSIGNMENTS, MUST BE IN LENDER'S OFFICE BEFORE THIS LOAN CAN BE FUNDED; OTHERWISE, LENDER MAY BE FORCED TO PLACE INTERIM COVERAGE ON THE PROPERTY AT AN ADDITIONAL COST TO THE BORROWER(S).**

Your Lender may require that you or your Insurance Agency provide the "ORIGINAL POLICY", but generally, a "Binder" or a "Certificate of Evidence of Insurance" is acceptable. Ask your Lender which they will accept. Please forward all policies, assignments and/or endorsements to Lender at the above address, "ATTENTION: LOAN PROCESSING."

Listed below are your Lender's policies and procedures, and minimum requirements, for Hazard Insurance coverage.

1. The amount of coverage provided by the policy must be no less than the lesser of: 1) the replacement value of the improvements on the above referenced property as established by the insurance company providing coverage, or 2) an amount equal to the sum of this loan amount plus the balances of all other existing liens.
2. The insurance company providing coverage must have a "B+" rating or better in the latest edition of "Best's Insurance Guide", must be licensed to do business in the state in which property is located, and must be licensed to transact the lines of insurance required.
3. The Policy must provide at least "Broad Form" coverage on properties of one to four units, and at least "Vandalism & Malicious Mischief" on properties with over four units, WITH NO DEVIATION. Home owners policies must provide coverage equal to "HO3" form.
4. Deductibles may not be greater than the lesser of 1) $1,000.00 or 2) one percent (1.0%) of the coverage amounts determined using the guidelines in Requirement #1 above (This limit applies for loans secured by residential properties of 1 to 4 units which may be sold to or originated for either. Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, FHA or VA). Your Lender's deductible requirements may be more stringent; if so, you will be notified of your Lender's requirements prior to funding.
5. The Policy must provide coverage for a term of at least one year. Premiums may be paid on an annual installment basis only if the policy provides that the Lender will be notified in writing of cancellation 30 days prior to expiration of coverage, for any cause.
6. If a policy of coverage is already "in force" (typical in refinance transactions) which expires within six months from the date of the recording of this loan, Lender may require renewal of said policy for a term as required in #5 above.
7. All forms and endorsements pertaining to the Lender's requirements must appear on the "Declaration Page" of policy.
8. For loans which have Hazard Insurance premiums impounded by the Lender, when notifying Lender of any new policy or changes of Insurance Carrier, said notification must be accompanied by a signed "Broker of Record Authorization".
9. Verification of renewal of insurance policies must be in lender's office at least thirty days prior to the expiration date of the policy. If this requirement is not met, LENDER OR ITS SUCCESSORS AND/OR ASSIGNS MAY AT THEIR OPTION, BUT WITHOUT THE OBLIGATION TO DO SO, PROVIDE COVERAGE TO REPLACE ANY EXPIRING POLICIES WHICH HAVE NOT BEEN PROPERTY RENEWED. Premiums for such coverage shall be remitted promptly by the undersigned, or Lender may charge borrower's account for the cost thereof.
10. Lender's Loss Payable Endorsement 438 BFU for the 1st    Trust Deed to be affixed to policy in favor of:

Home Funds Direct
A Division of Accredited Home Lenders, Inc.
A California Corporation,
It's successors and/or assigns
P.O. Box 10436
Van Nuys, CA 91410-0436

**RE: LOAN NO: 0503172917**

11. The property address and the insured's names must be designated on the policy exactly as on the ALTA Title Policy.
12. The Lender's loan number must appear on the policy and on any subsequent endorsements.
13. The effective date of new policies, endorsements, and/or assignments shall be as of, or prior to, the date of recording of this loan.
14. Please notify your agent to forward future premium notices directly to you.
15. If the security property is a condominium, the Master Policy must contain a minimum of $1,000,000.00 coverage for "Directors & Officers" liability. A copy of the Master Policy, or a certificate showing proof of coverage for both the Homeowners Association and the Condominium unit owner, must be submitted to the Lender prior to funding.

**BY SIGNING BELOW**, each of the undersigned acknowledges that he or she has read, understands and accepts the foregoing provisions and insurance requirements. This authorization shall remain irrevocable for the undersigned as owner(s) of the property, and for any assignee(s), for as long as this loan remains on the subject property.

Borrower CHERYL HALL

Borrower

Borrower

Borrower

Borrower

Borrower

Borrower

Borrower

610030.UFF

## GENERAL AUTHORIZATION AND BORROWER'S CERTIFICATION

| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br><br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

### CERTIFICATION

The Undersigned certify the following:

1. I/We have applied for a mortgage loan from Lender. In applying for the loan, I/we completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that in the event the loan is processed under a reduced documentation program, Lender reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine, or imprisonment, or both to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### AUTHORIZATION TO RELEASE INFORMATION

To Whom It May Concern:

1. I/We have applied for a mortgage loan from Lender. As part of the application process, Lender may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to Lender, and to any investor to whom Lender may sell my mortgage, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. Lender or any investor that purchases the mortgage may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to Lender or the investor that purchased the mortgage is appreciated.

Privacy Act Notice: This information is to be used by the agency collecting it in determining whether you qualify as a prospective mortgagor under the program. It will not be disclosed outside this agency without your consent as required and permitted by law, you do not have to give us this information, but if you do not your approval as a prospective mortgagor may be delayed or rejected. The information requested in this form is authorized by Title 38, U.S.C. Chapter 37 (if VA); By 12 U.S.C., Section 1701 et., seq. if (HUD/FHA); and Title 42

| | | | |
|---|---|---|---|
| Borrower  3-25-05<br>**CHERYL HALL** | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

MIN # 100176105031729174      HALL      Loan #   0503172917
GNATBRCT.UFF      Page 1 of 1

# NOTICE TO BORROWER
## *NOT IN*
# SPECIAL FLOOD HAZARD AREA

Borrower: **HALL, CHERYL**                                    Loan #: **0503172917**

Property Location: **105 TV RD**
                                   **DOTHAN, AL  36301**

National Flood Insurance Program Community: **DOTHAN, CITY OF**

This Notice Date is as of: **03/18/05**

Attached is the completed Standard Flood Hazard Determination Form that indicates that the improved real estate or mobile home securing your loan is not located in an area designated by the Director of the Federal Emergency Management Agency ("FEMA") as a Special Flood Hazard Area ("SFHA"). As a result of this determination, you will not be required to obtain mandatory flood insurance in connection with the making of your loan.

However, your home may be near a SFHA. As such you, or your lender, may want to consider the advisability of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to the coverage types and amounts available to you and make your own determination as to whether you desire any such coverage.

If, however, at any time during the term of your loan the improved real estate or mobile home securing your loan is, due to re-mapping by FEMA or otherwise, located in an area that has been identified by the Director of FEMA as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Program, you will be so notified and advised that you must obtain an appropriate amount of flood insurance coverage. If, within 45 days after we send you such notification, you fail to purchase flood insurance in an amount not less than the amount we advise you is necessary, we shall purchase such flood insurance on your behalf at your expense, as we are authorized to do in accordance with the provisions of the Flood Disaster Protection Act of 1973, as amended.

I/We, the undersigned borrower(s)/applicant(s), hereby understand and agree to all the above.

| | |
|---|---|
| Borrower/Applicant                          Date | Borrower/Applicant                          Date |
| Borrower/Applicant                          Date | Borrower/Applicant                          Date |
| Borrower/Applicant                          Date | Borrower/Applicant                          Date |

# HARDSHIP NOTICE

| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br><br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

I/We are aware that my/our first payment is due on **May 1, 2005** and I/we will make a full payment on that date. I/We realize that my/our first payment is less than thirty (30) days from the date of funding and this does not create a financial hardship on me/us.

| | | | |
|---|---|---|---|
| _____ 3-25-05 | Date | _____ | Date |
| Borrower<br>**CHERYL HALL** | | Borrower | |
| _____ | Date | _____ | Date |
| Borrower | | Borrower | |
| _____ | Date | _____ | Date |
| Borrower | | Borrower | |
| _____ | Date | _____ | Date |
| Borrower | | Borrower | |

MIN #  100176105031729174                 HALL                 Loan #    0503172917
HRDSHNTC.UFF                              Page 1 of 1

# CREDIT SCORE NOTICE

| Borrower Name(s): | Lender: |
|---|---|
| CHERYL HALL | **Home Funds Direct** |
| | **15090 Avenue of Science** |
| | **San Diego, CA 92128** |
| | **(866) 487-4350** |
| | Date: |
| | March 25, 2005 |

## NOTICE TO THE HOME LOAN APPLICANT

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

One or more of the following consumer reporting agencies will provide the credit score:

| **Experian** | **Equifax Credit Information Services** | **Trans Union** |
|---|---|---|
| P.O. Box 2002 | P.O. Box 740241 | P.O. Box 4000 |
| Allen, TX 75013 | Atlanta, GA 30374 | Chester, PA 19016 |
| 1-888-397-3742 | 1-800-685-1111 | 1-866-887-2673 |

Your acknowledgment below signifies that this written notice was provided to you.

| Borrower CHERYL HALL | Date 3-25-05 | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

| Borrower | Date | Borrower | Date |
|---|---|---|---|

100176105031729174                                              0503172917

Date:        **March 25 , 2005**              02:56PM
Stage:       **60 - 60 - docs drawn stage**
Borrower:    **CHERYL HALL**

Loan Number:  **0503172917**                                                    **FINAL**

## HIGH COST LOAN SUMMARY

**State Test Failed:**              **No**
**State:**                         **AL**

Lien Position:                    **1st**
Purpose:                          **REFI, CASH-OUT**
Occupancy:                        **Owner Occupied**
Property Type:                    **SFR - Detached**
# of Units:                       **1**
Doc Type:                         **Full**
Interest Rate:                    **7.299**
Loan Term / Balloon Term:         **360/360**
Loan Amount:                      **56,000.00**
Prepayment Penalty:               **No**

**APR:**                           **7.975**
**T-Bill Rate:**                   **4.550%**
Max Rate:                         **0.000%**
Reduce **APR** By:                 **0.000%**

Amount Financed:                  **$52,417.10**
**State Pts/Fees:**                **$0.00**
Max Fees:                         **$0.00**
Reduce Fees By:                   **$0.00**

MIN #  100176105031729174                    **HALL**                Loan #    0503172917
HICTLNSM.UFF                                  **Page 1 of 1**

Addendum for Loan # : 0503172917 ~ HALL, CHERYL

--- LIABILITIES ---

| | | | |
|---|---|---|---|
| Creditor | :Subject Loan | Acct. # | : |
| Address | : | Balance | : $0.00 |
| | | Payment | : [$0.00] |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Mortgage | | |
| In Name Of | : | | |

| | | | |
|---|---|---|---|
| Creditor | :THE CR STR/PROVIDIAN | Acct. # | : |
| Address | : | Balance | : *$785.00 |
| | | Payment | : [$0.00] |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Installment | | |
| In Name Of | : | | |

| | | | |
|---|---|---|---|
| Creditor | :PALISADES | Acct. # | : |
| Address | : | Balance | : *$694.00 |
| | | Payment | : [$0.00] |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Installment | | |
| In Name Of | : | | |

| | | | |
|---|---|---|---|
| Creditor | :HOLLOWAY CREDIT | Acct. # | : |
| Address | : | Balance | : *$452.00 |
| | | Payment | : [$0.00] |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Installment | | |
| In Name Of | : | | |

| | | | |
|---|---|---|---|
| Creditor | :SMALL  LNS | Acct. # | : |
| Address | : | Balance | : *$399.00 |
| | | Payment | : [$0.00] |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Installment | | |
| In Name Of | : | | |

| | | | |
|---|---|---|---|
| Creditor | :CRDT MGT | Acct. # | : |
| Address | : | Balance | : *$182.00 |
| | | Payment | : [$0.00] |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Installment | | |
| In Name Of | : | | |

| | | | |
|---|---|---|---|
| Creditor | :FRIEDMANS JEWELERS | Acct. # | : |
| Address | : | Balance | : *$400.00 |
| | | Payment | : *$0.00 |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Installment | | |
| In Name Of | : | | |

| | | | |
|---|---|---|---|
| Creditor | :ARMY AVIATION CENTER FCU | Acct. # | : |
| Address | : | Balance | : *$4,594.49 |
| | | Payment | : *$0.00 |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Mortgage | | |
| In Name Of | : | | |

| | | | |
|---|---|---|---|
| Creditor | :ALABAMA APPRAISAL SERVICES | Acct. # | : |
| Address | : | Balance | : *$300.00 |
| | | Payment | : *$0.00 |
| C/S/Z | : | Rem. Term | : 0 |
| Acct. Type | :Mortgage | | |
| In Name Of | : | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | 3-25-05 | X | |

**Hall-Frazier**
**Record - 000073**

Addendum for Loan # : 0503172917    HALL, CHERYL

--- LIABILITIES ---

```
Creditor    :State Farm Insurance        Acct. #    :
Address     :                            Balance    : *$1,068.00
                                         Payment    : *$0.00
C/S/Z       :                            Rem. Term  :      0
Acct. Type  :Mortgage
In Name Of  :
```

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | 3-25-05 | X | |

hp officejet 5500 series 5510                Personal Printer/Fax/Copier/Scanner

Log for
Diane Hilson
334-794-9404
3/13/2005 6:15PM

Last Transaction

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| 03/13 | 06:13p | Fax Sent | 18659341236 | 1:52 | 4 | OK |

Hall-Frazier
Record - 000075

I Cheryl Hall am borrowing against my home for home improvement reasons, as I am the caretaker of a disabled individual residing permanently at my residence. Improvements will be made to add easy access and comfort throughout the home.

# Swafford & Hays Settlement Services, Inc.
## Privacy Policy

**Borrower Name(s):**  Cheryl Hall _____

**Date** 3-25-05

The trust of our customers is very important to Swafford & Hays Settlement Services, Inc. Keeping non-public personal information about our customers in a secure environment and using that information only in accordance with the Privacy Policy is our top priority.

This Privacy Policy includes examples of the types on non-public personal information Swafford & Hays Settlement Services, Inc. collects. The provisions of this Policy apply to all our customers and consumers.

We do no disclose any nonpublic personal information about you to anyone, except as permitted by law.

Swafford & Hays Settlement Services, Inc. restricts access to your personal and account information to those employees who need to know that information to provide service to you. Swafford & Hays Settlements Services, Inc. maintains electronic and procedural safeguards that comply with federal regulations to guard your nonpublic information.

We may disclose all of the information we collect to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

_____ 3-25-05 _____

**Borrower Signature**        **Date**        **Borrower Signature**              **Date**

File No: 05-2813

## AFFIDAVIT

The undersigned affiant(s) do hereby state the following:

1. That there are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between 03/25/2005 and the recording of the interest to be insured.

2. That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured.

3. That there are no unrecorded special assessment liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to that county or municipality.

The real estate and improvements referred to herein are situated in the County of Houston, State of AL, and described as follows, to-wit:

105 TV Road, Dothan, AL  36301

3-25-05
_____
Date

_____
Cheryl Hall

STATE OF AL

COUNTY OF Houston

Sworn to and subscribed before me this .

My Commission expires: **My Commission Expires 3-06-06**

_____
Notary Public

**Diane L. Hilson**
Alabama State
at Large

Loan Number 0503172917

**Hall-Frazier**

**Record - 000078**

File No: 05-2813

# AFFIDAVIT AS TO LIENS AND ENCUMBRANCES

On this, before me personally appeared Cheryl Hall, Owner of property and/or General Contractor, to me personally known, who, being duly sworn on (his/their) oath(s), did say that all of the persons, firms and corporations, including the general contractor and all subcontractors who have furnished services, labor or materials according to the plans and specifications, or extra items, used in the constructions or repair of buildings and improvements on the real estate hereinafter described, have been paid in full and that such work has been fully completed and accepted by the owner.

Affiant further says that no proceedings in bankruptcy or receivership have been instituted by or against him/them.

Affiant further says that no claims have been made to affiant by, nor is any suit now pending on behalf of any contractor, subcontractor, laborer or materialism, and further that not chattel mortgages, conditional bills of sale, retention of title agreements, security agreements, financing statements, or personal property leases have been given or are outstanding as to any fixtures, appliances, or equipment which are now installed in or upon said real property, or in the improvements thereon.

Affiant further says that there are no outstanding deeds of trusts, mortgages, judgement liens, mechanic's or materialmen's liens filed of record or unfilled claims or any other liens or encumbrances or any form of taxes, (including, property, real property, county, city, village, township or water/sewer) of any kind expect as follows:

Affiant on behalf of said Owner of Property and/or General Contractor does for a valuable consideration hereby agree and guarantee to hold None (by reason of the fact that it has issued its title insurance policies), harmless against any liens, claims or suit of or by any general contractor, subcontractor, mechanic or materialman, and against chattel mortgages, conditional bills of sales, retention of title agreements, security agreements, financing statements, or personal property leases in connection with the construction, repair or sale of such building or improvements on said real estate.

The real estate and improvements referred to herein are situated in the County of Houston, State of AL, and are described as follows, to-wit:

105 TV Road, Dothan, AL  36301

_3 - 25 - 0 5_
Date

_Cheryl Hall_
Cheryl Hall

STATE OF AL
COUNTY OF Houston

Sworn to and subscribed before me this .

My Commission expires:

**My Commission
Expires 3-06-06**

_Deane L. Hilson_
Notary Public

**Diane L. Hilson**
Alabama State
at Large
Loan No: 0503172917

Date Printed: Wednesday, March 15, 2006  12:2[...]

# LEDGER CARD

Order #: 05-2813
 Buyer/Borrower : Cheryl Hall
 Seller :
 Lender Name : Home Funds Direct
 Loan Number : 0503172917
 Property Address : 105 TV Road, Dothan, AL  36301

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn2 | Bank of America- TN (New) | 003786809771 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/30/2005 | funding wire | alisonw | 03/31/2005 | Home Funds Direct | 52,157.10 |
| **\*TOTAL DEPOSITS** | | | | | **52,157.10** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/31/2005 | 00025440 | m.lay | 04/30/2005 | Swafford and Hays Settlement Services, Inc. | (64.00) |
| 03/31/2005 | 00025441 | m.lay | 04/30/2005 | HOUSTON COUNTY JUDGE OF PROBATE | (84.00) |
| 03/31/2005 | 00025442 | m.lay | 04/30/2005 | HOUSTON COUNTY JUDGE OF PROBATE | (56.00) |
| 03/30/2005 | 00025171v | m.lay | 03/31/2005 | Clerk of the Court | (204.00) |
| 03/30/2005 | 00025172 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (715.00) |
| 03/30/2005 | 00025173 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 03/30/2005 | 00025174 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (60.00) |
| 03/30/2005 | 00025175v | alisonw | 03/31/2005 | Cheryl Hall | (42,103.61) |
| 03/30/2005 | 00025176 | m.jerger | 04/30/2005 | Alabama Appraisal Service | (300.00) |
| 03/30/2005 | 00025177 | m.jerger | 04/30/2005 | Army Aviation Center F C U  good thru 4/24 | (4,594.49) |
| 03/30/2005 | 00025178 | m.jerger | 04/30/2005 | The CR STR/Providian | (785.00) |
| 03/30/2005 | 00025179 | m.jerger | 04/30/2005 | Palisades | (694.00) |
| 03/30/2005 | 00025180 | m.jerger | 04/30/2005 | Holloway Credit | (452.00) |
| 03/30/2005 | 00025181 | m.jerger | 04/30/2005 | Small LNS | (399.00) |
| 03/30/2005 | 00025182 | m.jerger | 04/30/2005 | Crdt MGT. | (182.00) |
| 03/30/2005 | 00025183 | m.jerger | 04/30/2005 | Friedmans Jewelers | (400.00) |
| 03/30/2005 | 00025184 | m.jerger | 04/30/2005 | State Farm | (1,068.00) |
| 03/30/2005 | wire # 5312332 | alisonw | 03/31/2005 | Cheryl Hall | (42,103.61) |
| **\*TOTAL CHECKS** | | | | | **(94,464.71)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/30/2005 | 00025171 | m.lay | 03/31/2005 | Clerk of the Court | 204.00 |
| 03/30/2005 | 00025175 | alisonw | 03/31/2005 | Cheryl Hall | 42,103.61 |
| **\*TOTAL VOIDS** | | | | | **42,307.61** |

| **\*\*TOTALS FOR: tn2** | | | | | **0.00** |

### \*\*\*POSTED TOTAL — 0.00

## PENDING ESCROWS

### \*\*\*\*TOTAL(POSTED + PENDING) — 0.00

**Hall-Frazier**
**Record - 000080**

Date Printed: Wednesday, March 15, 2006  12:29:44 PM

## Disbursement Sheet

| | | |
|---|---|---|
| Order #: 05-2813 | Settlement Date: March 25, 2005 | Disbursement Date: 03/30/2005 |

| | | | |
|---|---|---|---|
| Buyer: | Cheryl Hall | Money Out: | $52,157.10 |
| Seller: | | Money In: | $52,157.10 |
| Property: | 105 TV Road Dothan, AL  36301 | Difference: | $0.00 |
| Lender: | Home Funds Direct | | |
| Loan #: | 0503172917 | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | Amount |
|---|---|---|---|---|---|
| 00025172 | 3/30/2005 3:34:01 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | $275.00 |
| | | | 1103 | Title examination | $250.00 |
| | | | 1111 | Endorsements | $50.00 |
| | | | 1108 | Title Insurance | $140.00 |
| | | | | **Total:** | **$715.00** |
| 00025173 | 3/30/2005 3:34:01 PM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | $200.00 |
| | | | | **Total:** | **$200.00** |
| 00025174 | 3/30/2005 3:34:01 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | $60.00 |
| | | | | **Total:** | **$60.00** |
| 00025440 | 3/31/2005 11:40:50 AM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: and Service fees: | $64.00 |
| | | | | **Total:** | **$64.00** |
| wire # 5312332 | 3/30/2005 4:22:14 PM | Cheryl Hall | 303 | Cash [ ]From  [X]To  Borrower | $42,103.61 |
| | | | | **Total:** | **$42,103.61** |
| 00025176 | 3/30/2005 3:34:01 PM | Alabama Appraisal Service | 803 | Appraisal Fee | $300.00 |
| | | | | **Total:** | **$300.00** |
| 00025177 | 3/30/2005 3:34:01 PM | Army Aviation Center F C U  good thru 4/24 | 1303 | Payoff | $4,594.49 |
| | | | | **Total:** | **$4,594.49** |
| 00025178 | 3/30/2005 3:34:01 PM | The CR STR/Providian | 1305 | Payment | $785.00 |
| | | | | **Total:** | **$785.00** |
| 00025179 | 3/30/2005 3:34:01 PM | Palisades | 1306 | Payment | $694.00 |
| | | | | **Total:** | **$694.00** |
| 00025180 | 3/30/2005 3:34:01 PM | Holloway Credit | 1307 | Payment | $452.00 |
| | | | | **Total:** | **$452.00** |
| 00025181 | 3/30/2005 3:34:01 PM | Small LNS | 1308 | Payment | $399.00 |
| | | | | **Total:** | **$399.00** |
| 00025182 | 3/30/2005 3:34:01 PM | Crdt MGT. | 1309 | Payment | $182.00 |
| | | | | **Total:** | **$182.00** |
| 00025183 | 3/30/2005 3:34:01 PM | Friedmans Jewelers | 1310 | Payment | $400.00 |
| | | | | **Total:** | **$400.00** |
| 00025184 | 3/30/2005 3:34:01 PM | State Farm | 903 | Hazard Insurance Premium for | $1,068.00 |
| | | | | **Total:** | **$1,068.00** |
| 00025441 | 3/31/2005 11:40:50 AM | HOUSTON COUNTY JUDGE OF PROBATE | 1203 | State tax/stamps:   Deed $0.00 Mortgage $84.00 | $84.00 |
| | | | | **Total:** | **$84.00** |
| 00025442 | 3/31/2005 11:40:50 AM | HOUSTON COUNTY JUDGE OF PROBATE | 1201 | Recording fees: and Service fees: | $56.00 |
| | | | | **Total:** | **$56.00** |

### Money In

| Ref# | Date | Name | Hud | Detail | Amount |
|---|---|---|---|---|---|
| 05-2813/Lender/1 | 03/30/2005 | Home Funds Direct | | | |
| | | | 202 | Principal amount of new loan(s) | $56,000.00 |
| | | | 801 | Loan Origination Fee | ($1,960.00) |
| | | | 808 | Processing Fee | ($500.00) |
| | | | 809 | Underwriting fee | ($500.00) |
| | | | 813 | Appraisal Review Fee | ($250.00) |
| | | | 811 | Zone Determination Fee | ($9.50) |
| | | | 812 | Tax Service Fee | ($66.00) |
| | | | 1004 | County property taxes | ($313.25) |

| 1001 | Hazard insurance | ($356.00) |
| 1008 | Aggregate Accounting Adjustment | $134.25 |
| 901 | Interest from Odd Days | ($22.40) |
| | **Total:** | **$52,157.10** |

(Printed on May 25, 2005 @ 16:19)                US Department of Housing and Urban Development                OMB No. 2502-0265

**L.**                                        **SETTLEMENT CHARGES**

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| 701. Listing Realtor Commission | | |
| 702. Selling Realtor Commission | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  To: Home Funds Direct | 1,960.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee  To: Alabama Appraisal Service | 300.00 | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Processing Fee  To: Home Funds Direct | 500.00 | |
| 809. Underwriting fee  To: Home Funds Direct | 500.00 | |
| 810. Document Preparation Fee | | |
| 811. Zone Determination Fee  To: Home Funds Direct | 9.50 | |
| 812. Tax Service Fee  To: Home Funds Direct | 66.00 | |
| 813. Appraisal Review Fee  To: Home Funds Direct | 250.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from Odd Days  To: Home Funds Direct | 22.40 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Insurance Premium for  To: State Farm | 1,068.00 | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard insurance  To: Home Funds Direct | 356.00 | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes  To: Home Funds Direct | 313.25 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment  To: Home Funds Direct | -134.25 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | 275.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc. | 250.00 | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (Includes above item numbers: ) | | |
| 1108. Title Insurance  To: Transnation Title Insurance Company | 200.00 | |
| (Includes above item numbers: ) | | |
| 1109. Lender's coverage $67,500.00  @  $200.00 | | |
| 1110. Owner's coverage @ 0.00 | | |
| 1111. Endorsements  To: Swafford and Hays Settlement Services, Inc. | 50.00 | |
| 1112. | | |
| 1113. Overnight Courier & Handling Fees | | |
| **1200. GOVT. RECORDING, TRANSFER, AND SERVICE FEES** | | |
| 1201. Recording Fees and Service fees:  To: Clerk of the Court | 120.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps:  Deed $0.00 Mortgage $84.00 To: Clerk of the Court | 84.00 | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest inspection | | |
| 1303. Payoff  To: Army Aviation Center F C U  good thru 4/24 | 4,594.49 | |
| 1304. | | |
| 1305. Payment  To: The CR STR/Providian | 785.00 | |
| 1306. Payment  To: Palisades | 694.00 | |
| 1307. Payment  To: Holloway Credit | 452.00 | |
| 1308. Payment  To: Small LNS | 399.00 | |
| 1309. Payment  To: Crdt MGT | 182.00 | |
| 1310. Payment  To: Friedmans Jewelers | 400.00 | |
| 1311. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | **13,896.39** | **0.00** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.
BORROWER(S):                                                    SELLER(S):

Cheryl Hall

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

**05-2813**

Home Funds Direct
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

Prepared by: Kathleen Tubbs
                 *Kathleen Tubbs*

MIN 1725   798
Recorded In Above Book and Page
04/01/2005 10:46:04 AM
Luke Cooley
Judge of Probate
Houston County, Alabama

—————— [Space Above This Line For Recording Data] ——————

Source of Title
Book 622
Page 443
PIN# 10-09-31-4-003-001.007

## MORTGAGE

MIN 100176105031729174

AFTER RECORDING RETURN TO:
SWAFFORD & HAYS SETTLEMENT SERVICES
9041 EXECUTIVE PARK DRIVE SUITE 400
KNOXVILLE, TN 37923

05-2813

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated March 25, 2005 together with all Riders to this document.
**(B) "Borrower"** is CHERYL HALL, UNMARRIED

105 TV Road, Dothan, AL 36301

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

100176105031729                           0503172917

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3001 1/01

-6A(AL) (0005).03
Page 1 of 15                    Initials: *CH*
VMP MORTGAGE FORMS  (800)521-7291

MIG    1725    799

(D) "Lender" is **Home Funds Direct**

Lender is a **Corporation**
organized and existing under the laws of the **State of California**
Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
(E) "Note" means the promissory note signed by Borrower and dated **March 25, 2005**
The Note states that Borrower owes Lender **fifty-six thousand and 00/100**

Dollars

(U.S. $56,000.00                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 1, 2035**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

100176105031729                                    0503172917

-6A(AL) (0005).01                 Page 2 of 15                        Form 3001 1/01

Hall-Frazier
Record - 000085

ᴬᴬᴳ    1725   800

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
County                             of                        HOUSTON                          :
        [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
See Legal Description Addendum Page Attached

Parcel ID Number: 10-09-31-4-003-001.007          which currently has the address of
105 TV ROAD                                                              [Street]
DOTHAN                               [City] , Alabama 36301              [Zip Code]
("Property Address"):
        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
        UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
        1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

                                        10017610503729                                    0503172917

ᴬᴮᴬ -6A(AL) (0005) 03                  Page 2 of 15                              Form 3001 1/01

Hall-Frazier
Record - 000086

876    1725    801

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

100176105031729                                              0503172917

-6A(AL) (0005).03                    Page 4 of 15                    Form 3001 1/01

Initials: C H

Hall-Frazier
Record - 000087

MTG    1725    802

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

100176105031729                                      0503172917

-6A(AL) (0005).03                     Page 5 of 15                         Form 3001 1/01

Hall-Frazier
Record - 000088

MTG    1725    803

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

100176105031729                          0503172917

-6A(AL) (0005).03                    Page 6 of 15        Initials: _____          Form 3001 1/01

MTG   1725   804

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

100176105031729                                    0503172917

-6A(AL) (0005).03                    Page 7 of 15        Initials: GH        Form 3001 1/01

Hall-Frazier
Record - 000090

MTG    1725    805

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

100176105031729                                    0503172917

-6A(AL) (0005) 03                Page 8 of 16         Initials: _____        Form 3001 1/01

MTG    1725    806

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

100176105031729                              05031/2917

-6A(AL) (0005).03                Page 9 of 15                Form 3001 1/01

Hall-Frazier
Record - 000092

MTG    1725    807

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

100176105031729                                    0503172917

-6A(AL) (0005).03                    Page 10 of 15           Form 3001 1/01

Hall-Frazier
Record - 000093

MTG    1725    808

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

100176105031729

-6A(AL) (0005).03    Page 11 of 15    Initials ___    0503172917    Form 3001 1/01

Hall-Frazier
Record - 000094

MTG    1725    809

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

100176105031729                    0503172917

6A(AL) (0005).03                  Page 12 of 15        Initials CATL        Form 3001 1/01

M16      1725      810

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in HOUSTON
County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

25. **Attorneys' Fees.** Wherever this Security Instrument authorizes the Lender to collect reasonable attorneys' fees following default, such reasonable attorneys' fees shall not exceed fifteen percent (15%) of the unpaid debt after default and referral of the Security Instrument to an attorney who is not a salaried employee of Lender.

100176105031729                    0503172917
Page 13 of 15          Initials: CxHb      Form 3001 1/01

-6A(AL) (0005).03

MTB     1725     811

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
CHERYL HALL                -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

100176105031729                    0503172917

-6A(AL) (0005).03          Page 14 of 15        Form 3001 1/01

**Hall-Frazier**
**Record - 000097**

MTG    1725   812

STATE OF ALABAMA,                                          County ss: *Housti*

On this ____35____ day of *March* , *2005* .

*Diane L. Hilson*

a Notary Public in and for said county and in said state, hereby certify that CHERYL HALL

whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this ____35____ day of *March* , *2005*

My Commission Expires:

My Commission
Expires 3-06-08

Notary Public

Diane L. Hilson
Alabama State
at Large

Prepared By:
Home Funds Direct
15090 Avenue of Science
San Diego, CA 92128

100176105031729                    0503172917

Page 15 of 15                      Form 3001 1/01

MTG    1725    813

## EXHIBIT A

Situated in Dothan, Houston County, State of AL and being described as follows:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #10-09-31-4-003-001.007

BEING the same property conveyed to Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns, by deed from Samuel B. Pierce, Jr., Secretary of Housing and Urban Development of Washington, D.C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, dated 07-19-85, recorded 07-26-85, in Book 311, page 324, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Kevin Lorenzo Dixon, II, by deed from Louis E. Sowers and wife, Fay Sowers, dated 04-02-03, recorded 04-03-03, in Book 598, page 34, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Cheryl Hall, by deed from Kevin Lorenzo Dixon, II, a unmarried man, dated 03-02-05, recorded 03-11-05, in Book 622, page 443, in the Office of the Judge of Probate of Houston County, AL.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

105 TV Road, Dothan, AL 36301

Mortgage Tax        84.00
Recording Fee       56.00
TOTAL              140.00



# COMMITMENT

State: AL County: Houston

Order #: 05-2813

| Plant #: | Commitment #: F52-1069870 | Effective Date & Time: March 18, 2005 @ 8:00am | Reinsurance #: | Agent #: 05-2813 |
|---|---|---|---|---|

## Schedule A

1. Policy or Policies to be issued:
   ALTA LOAN (10-17-92)
   Proposed Insured Loan:                                  Amount

   **Home Funds Direct, ISAOA, ATIMA**          **$77,200.00**

   2nd Proposed Insured Loan:                             Amount

   **None**

   ALTA OWNER'S (10-17-92)
   Proposed Insured Owners:                               Amount

   **Cheryl Hall**

2. The estate or interest in the land described or referred to in the Commitment and covered herein is:

   **Fee Simple**

   and is at the effective date hereof vested in:

   **Cheryl Hall**

3. The land is described as follows:

   **105 TV Road, Dothan, AL  36301**

*[Handwritten notes:]*
05-2813
Jaxes 334-677-4712
#8 Payoff
#9 Release
#10, 11 Not ours

*[Signature]* _____
Countersigned Authorized Signatory

Issued By: *05-2813
Swafford and Hays Settlement Services, Inc.
9041 Executive Park Drive, Suite 400
Knoxville, TN 37923

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages

Underwriter: Transnation Title Insurance Company

## COMMITMENT

### Schedule B - Section 2

**Exceptions**
Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1.  Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.  Rights or claims of parties in possession not shown by the Public Records.

3.  Encroachments, overlaps, boundary lines disputes, and other matters which would be disclosed by an accurate survey and inspection of the premises.

4.  Easements or claims of easements not shown by the Public Records.

5.  Taxes or special assessments which are not shown as existing liens by the public records.

6.  Taxes and assessments for the year 2005 and subsequent years, which are not yet due and payable.

7.  Subject to any restrictions, easements, setback lines, etc., as shown of record in Plat book 7, page 23, in the Office of the Judge of Probate of Houston County, AL.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

Commitment #: F52-1069870                                                                 File #: 05-2813

## EXHIBIT A

Situated in Dothan, Houston County, State of AL and being described as follows:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #10-09-31-4-003-001.007

BEING the same property conveyed to Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns, by deed from Samuel B. Pierce, Jr., Secretary of Housing and Urban Development of Washington, D.C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, dated 07-19-85, recorded 07-26-85, in Book 311, page 324, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Kevin Lorenzo Dixon, II, by deed from Louis E. Sowers and wife, Fay Sowers, dated 04-02-03, recorded 04-03-03, in Book 598, page 34, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Cheryl Hall, by deed from Kevin Lorenzo Dixon, II, a unmarried man, dated 03-02-05, recorded 03-11-05, in Book 622, page 443, in the Office of the Judge of Probate of Houston County, AL.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

105 TV Road, Dothan, AL 36301



**BAKER**
**DONELSON**
BEARMAN, CALDWELL
& BERKOWITZ, PC

WACHOVIA TOWER
420 TWENTIETH STREET NORTH
SUITE 1600
BIRMINGHAM, ALABAMA 35203
PHONE 205.328.0480
FAX 205.322.8007

www.bakerdonelson.com

ELIZABETH R. FLOYD
Direct Dial: 205.244.3813
Direct Fax: 205.488.3813
E-Mail Address: efloyd@bakerdonelson.com


**COPY**

April 10, 2008

**Via U.S. Mail**
Mr. J. Douglas Minor, Jr.
Bradley Arant Rose & White LLP
One Jackson Place, Suite 450
188 East Capital Street
Jackson, MS 39215-1789

   Re:  *Cheryl H. Frazier v. Accredited Home Lenders, Inc.*
      **United States District Court for the Middle District of Alabama**
      **Civil Action No. 1:08-CV-00011-MHT-SRW**

Dear Doug:

  Please find enclosed documents responsive to your subpoena to Swafford Settlement Services, Inc. along with the custodian's declaration regarding same.

       Sincerely,

       Elizabeth R. Floyd

Enclosures
cc:  Ms. Lisa Borden (without enclosures)

         **BRADLEY ARANT ROSE & WHITE**
         **RECEIVED**

         **APR 14 2008**

B ERF 780040 v1
2815578-000002 4/10/2008

ALABAMA • GEORGIA • LOUISIANA • MISSISSIPPI • TENNESSEE • WASHINGTON, D.C. • BEIJING, CHINA
Representative Office,
BD/BC International, LLC

**Hall-Frazier**
**Record - 000103**

## Home Funds Direct - Final Policies

The contents of this package include the following files. Please fax a copy of this form back to us with a
signature, at fax number (865) 934-1225. This will be a confirmation that the enclosed files have been received.

UPS Tracking Number
1ZAW5044-93231276

HFD05-0414.xls

Date Sent:
14-Apr-05

| File Number | Loan Number | Borrower's Name | Remarks |
|---|---|---|---|
| 05-2897 | 0503150563 | James/Brenda West | Original Final Policy & Recorded Mtg. |
| 05-2896 | 0502280108 | Carolyn/James Pettyjohn | Original Final Policy & Recorded Mtg. |
| 05-2813 | 0503172917 | Cheryl Hall | Original Final Policy & Recorded Mtg. |
| | | | |
| | | Home Funds Direct | |
| | | Attn: Post Closing Dept. | |
| | | 16550 West Bernardo Dr., Bldg. 1 | |
| | | San Diego, CA 92127-1870 | |

'*Enclosed are the Loan Policies and Recorded Mortgages for the above referenced loans.*'

HFD05-0414.xls
Shannon Keisling

_____
Authorization Signature from SHSS

_____
Receipt Acknowledged Signature
from Lender

Contact Information:
Swafford & Hays Settlement Services
9041 Executive Park Drive Suite 400
Knoxville, TN. 37923
*Toll Free: (888) 272-2915*
*Fax Number: (865) 934-1225*

Nancy Grimsley
Senior of Final Policy Department
(865) 934-0471

**Hall-Frazier**

**Record - 000104**



Generator: Shannon Keisling

## Commonwealth Ren

CWRAPAL05-0414.xls - Dat

| Policy No. | File # | Borrower | State | Loan Amo | Gross nd(s). | Total Premium | | Net Remittance | |
|---|---|---|---|---|---|---|---|---|---|
| F52-1070071 | 05-2813 | Cheryl Hail | AL | $ 56,00 | | $ 126.00 | | $ 37.80 | |
| | | | | | | $ 126.00 | | $ 37.80 | |

S Tracking Number: 1ZAW05044-91196354

Commonwealth Land Title Insurance Checklist

File No: 05-2813

| Lender: HFD Effec.Date: 4-1-05 @ 10:46 | Customer Name: Cheryl Hall |
|---|---|
| Loan Policy # F52-1070071 Policy Amt. $ 50,000 | 126.00 × .30 = $37.80 |
| Owners Policy # Amt.of Policy: $ | |
| State AL County Houston Town or City Dothan | |
| • Inclusive premium (TN) | |
| • Non Inclusive premium(TN) | |
| • Premium Tax % & amount | |
| | |
| • For 2nd mortgages, check HUD to see if LP premium has been charged. Most 2nd mortgages do not get LP • Home Equity Loans do not get LP | |

**Inclusive Counties (TN):**
- Davidson, Hamilton, Knox, Shelby. Premiums are higher in these counties. However, our contract with Commonwealth specifies we pay the non-inclusive rates.
- Figure both amts, & show both amts on policy inventory register. On our remittal sheet, show non-inclusive amt in the gross premium column.
- On Agency Service Center copy of policy, show both inclusive & non-inclusive premium amounts.

**Premium Tax (KY):** Certain cities & counties in Kentucky charge tax on premiums (list changes every June & is reissued in July.



# LOAN POLICY OF TITLE INSURANCE

Issued by **Transnation Title Insurance Company**

**POLICY NUMBER**
F52-1070071

 **LandAmerica Transnation**

*Transnation Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, TRANSNATION TITLE INSURANCE COMPANY, an Arizona corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, TRANSNATION TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**TRANSNATION TITLE INSURANCE COMPANY**

Attest:　　　　　　　　　　　　　　　　　　By:



_____　　　　　　　　　　　_____
Secretary　　　　　　　　　　　　　　　　　　　　President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land, (ii) the character, dimensions or location of any improvement now or hereafter erected on the land, (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NM 2　　PA 20
ALTA Loan Policy (10/17/92)
Form 1191-54B　　　　　OS-2813　　　　**ORIGINAL**　　　　Valid only if Schedules A and B are attached

**Hall-Frazier**
**Record - 000107**

## L O A N   F O R M

### Schedule A

State: AL County: Houston

| File Number 05-2813 | Policy Number F52-1070071 | Effective Date April 1, 2005 | Effective Time 10:46 am | Amount of Policy $56,000.00 |
|---|---|---|---|---|
| Commitment #: F52-1069870 | Simultaneous #: | | Reinsurance #: | |

1      Name of Insured:

      **Home Funds Direct, its successors and/or assigns as their interest may appear**

2.      The estate or interest in the land described or referred to in this Schedule A and which is encumbered by the insured mortgage is:

      **Fee Simple**

3.      The estate or interest referred to herein is at Date of Policy vested in:

      **Cheryl Hall, unmarried**

4      The mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows: Mortgage executed by Cheryl Hall, unmarried securing  Home Funds Direct, its successors and/or assigns as their interest may appear  dated March 25, 2005 , recorded April 1, 2005 ,at 10:46 am , in Book 1725, Page 798 in the Office of the Judge of Probate of Houston County, AL, in the amount of $56,000.00

5.      The land referred to herein is described as follows as set forth in the insured mortgage is situated in the County of Houston, State of AL and is identified:

      **105 TV Road, Dothan, AL  36301**

_(signature)_ II

Countersigned Authorized Signatory

Issued By: *05-2813
**Swafford and Hays Settlement Services, Inc.
9041 Executive Park Drive, Suite 400
Knoxville, TN 37923**

Note:   This Policy consists of insert pages labeled Schedule A and B. This policy is of no force and effect unless all pages are included along with any added pages incorporated by reference.

# L O A N   F O R M

## Schedule B - Part 1

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) by reason of the following exceptions:

1.    Rights or claims of parties in possession not shown by the Public Records.

2.    Encroachments, overlaps, boundary lines disputes, and other matters which would be disclosed by an accurate survey and inspection of the premises.

3.    Easements or claims of easements not shown by the Public Records.

4.    Taxes or special assessments which are not shown as existing liens by the public records.

5.    Taxes and assessments for the year 2005 and subsequent years .

　　　* * The following items, <u>as listed above</u>, are hereby deleted: #1, #2, and #5  * *

6.    Subject to any restrictions, easements, setback lines, etc., as shown of record in Plat book 7, page 23, in the Office of the Judge of Probate of Houston County, AL.


NOTE:       UNLESS SCHEDULE B, PART II IS ATTACHED THERE ARE NO SUBORDINATE MATTERS THAT AFFECT
            THE TITLE TO THE ESTATE OR INTEREST REFERRED TO IN SCHEDULE A.



Hall-Frazier
Record - 000109

# L O A N   F O R M

## Schedule B - Part 2

In addition to the matters set forth in Part 1 of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that such matters are subordinate to the lien or charge of the insured mortgage upon said estate or interest:

**NONE SHOWN**



Lender's File#050317291?

EN-17

1-4 Family Unit Residential          Other Risk (Commercial, greater than 1-4 family, vacant land)
NOTE: IF NOT CHECKED "OTHER RISK" RATE WILL BE CHARGED

## ENVIRONMENTAL PROTECTION LIEN
## ENDORSEMENT

Attached to and forming a part of
Policy No.
**F52-1070071**

Issued by

# Transnation Title Insurance Company

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a)     Any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B, or

(b)     Any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

This endorsement is made a part of the policy or commitment and is subject to all of the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy or commitment and prior endorsements, if any, nor does it extend the effective date of the policy or commitment and prior endorsements nor does it increase the face amount thereof.

**Transnation Title Insurance Company**                Dated this  April 1, 2005
                                                       Issued By:  *05-2813
                                                       Swafford and Hays Settlement Services, Inc.
                                                       9041 Executive Park Drive, Suite 400
                                                       Knoxville, TN 37923



Authorized Signatory

Note: This endorsement shall not be valid or binding until countersigned by an authorized signatory.

ALTA ENDORSEMENT FORM 8.1
(Environmental Protection Lien) (3/12/88)
EN-17 (7/01)

**Hall-Frazier**
**Record - 000111**

**EXHIBIT A**

Situated in Dothan, Houston County, State of AL and being described as follows:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #10-09-31-4-003-001.007

BEING the same property conveyed to Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns, by deed from Samuel B. Pierce, Jr., Secretary of Housing and Urban Development of Washington, D.C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, dated 07-19-85, recorded 07-26-85, in Book 311, page 324, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Kevin Lorenzo Dixon, II, by deed from Louis E. Sowers and wife, Fay Sowers, dated 04-02-03, recorded 04-03-03, in Book 598, page 34, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Cheryl Hall, by deed from Kevin Lorenzo Dixon, II, a unmarried man, dated 03-02-05, recorded 03-11-05, in Book 622, page 443, in the Office of the Judge of Probate of Houston County, AL.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

105 TV Road, Dothan, AL 36301



Hall-Frazier
Record - 000112

**CONDITIONS AND STIPULATIONS**
(continued)

Upon the exercise by the Company of either of the options provided for in paragraphs (a)(i) or (a)(ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7.   DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)   The liability of the Company under this policy shall not exceed the least of:

(i)   the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii)   the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time of loss or damage insured against by this policy occurs, together with interest thereon, or

(iii)   the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b)   In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c)   The Company will pay those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8.   LIMITATION OF LIABILITY.**

(a)   If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereto.

(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c)   The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d)   The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing an entire or in part the construction of an improvement to the land which at late to Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9.   REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a)   All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b)   Payment in part by any person or the principal or the indebtedness, or any obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, all reduce the amount of insurance pro tanto. The amount of insurance may thereafter increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c)   Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any such the Company may pay under any policy insuring a mortgage to which assignment taken in Schedule B or to which the insured has agreed, assumed, or taken subject, which is hereafter executed by an insured and which is a charge or lien on the estate

or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11.   PAYMENT OF LOSS.**

(a)   No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b)   When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12.   SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a)   The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b)   The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company's right of subrogation shall be affected, and the Company shall require the payment of any monies paid by the Company by reason of this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c)   The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1 (a)(i) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1 (a)(i) of these Conditions and Stipulations.

**13.   ARBITRATION.**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14.   LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a)   This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)   Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c)   No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the Company, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15.   SEVERABILITY.**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16.   NOTICES WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to: Consumer Affairs Department, P.O. Box 27567, Richmond, Virginia 23261-7567.



05- 2813





**LandAmerica**
**Transnation**

**POLICY NUMBER**

F52-1070071

**Transnation Title Insurance Company**

**LOAN POLICY OF TITLE INSURANCE**
**(10/17/92)**

Gross Premium: $ 126.00          Rate Code: 30

| REISSUE OR SUBSTITUTION INFORMATION. |
|---|
| Liability Cr. $ _____ |
| Premium Cr $ _____ |
| Policy No. _____ |

$126.00
x   30
$37.80

| STATISTICAL STATES ONLY | | | | |
|---|---|---|---|---|
| POLICY TYPE | TITLE SOURCE | PROPERTY TYPE | STATE REPORT CODE | RATE RULE # |
|  |  |  |  |  |

COMMENTS TO UNDERWRITER:

OS·2813
**AGENCY SERVICE CENTER**

| NOTICE |
|---|
| THIS PAGE MUST BE REMITTED TO UNDERWRITER WITH POLICY SCHEDULES. |



# TRANSNATION®
## LANDAMERICA™

## Alabama Title Insurance Rates

Transnation Title Insurance Company
2200 Woodcrest Place Suite 330
Birmingham, Al 35209
Ph: 205-868-1000
Fx: 205-868-1001

### Alabama Rate Calculation
Rev. 6/17/02

**Original Policy Rates**

| | | | |
|---|---|---|---|
| Owners Amount | 0 | Premium | 125.00 |
| Mortgage Amount | 56,000 | Premium | 126.00 |

**Abbreviated Policy Rates**

| | | | |
|---|---|---|---|
| Owners Amount | 0 | Premium | 150.00 |
| Mortgage Amount | 0 | Premium | 150.00 |

**Test Basic Reissue Rates**

| | | | |
|---|---|---|---|
| Owners Amount | 0 | Premium | 125.00 |
| Mortgage Amount | 0 | Premium | 125.00 |

**Reissue Policy Rates**

| | | | |
|---|---|---|---|
| Owners Amount | 0 | Premium | 125.00 |
| Previous Policy Amt | 0 | | |
| Mortgage Amount | 0 | Premium | 125.00 |
| Previous Policy amt | 0 | | |

**Simultaneous Policy Rate**

| | | | |
|---|---|---|---|
| Owners Amount | 0 | Premium | 200.00 |
| Mortgage Amount | 0 | | |

**Developers Rate**

| | | | |
|---|---|---|---|
| Policy Amount | 0 | Premium | 125.00 |

**Residential Limited Coverage Junior Loan Policy Rate**

| | | | |
|---|---|---|---|
| Policy Amount | 0 | Premium | 85.00 |



ayee: Cheryl Hall; 105 TV Road, Dothan, AL 36301
heck Date: 03/30/05    Amount: $**42,103.61    Check No.: 025175    Order Number: 05-2813
ud    Description                                                          Total
03    Cash [ ]From [X]To  Borrower                                     42,103.61
roperty Address: 105 TV Road Dothan AL 36301
eller:    Buyer: Cheryl Hall

# 5312332



05-2813

to fund on 03/30/05

Hall / Frazier            05-2813



CHERYL HALL FRAZIER
106 TV RD
DOTHAN AL 36301-6333

PAY

$

Void

Dollars

ROBERT L DUCKS JR



05-2813

Home Funds Direct
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

Prepared by: Kathleen Tubbs
            Kathleen Tubbs

M16        1725     798
Recorded in Above Book and Page
04/01/2005 10:46:04 AM
Luke Cooley
Judge of Probate
Houston County, Alabama

————————— [Space Above This Line For Recording Data] —————————

## MORTGAGE

MIN 100176105031729174

Source of Title
Book 622
Page 443
PIN# 10-09-31-4-003-001.007

AFTER RECORDING RETURN TO:
SWAFFORD & HAYS SETTLEMENT SERVICES
9041 EXECUTIVE PARK DRIVE SUITE 400
KNOXVILLE, TN 37923

05-2813

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 25, 2005 together with all Riders to this document.
(B) "Borrower" is CHERYL HALL , UNMARRIED

105 TV Road, Dothan, AL 36301

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

| 100176105031729 | 0503172917 |

**ALABAMA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**    Form 3001 1/01

-6A(AL) (0005).03
Page 1 of 15    Initials: CH
VMP MORTGAGE FORMS - (800)521-7291

MI6    1725    799

(D) "Lender" is **Home Funds Direct**

Lender is a **Corporation**
organized and existing under the laws of the **State of California**
Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
(E) "Note" means the promissory note signed by Borrower and dated **March  25,  2005**
The Note states that Borrower owes Lender **fifty-six thousand and 00/100**

Dollars

(U.S. $56,000.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **April  1,  2035**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

100176105031729                                0503172917

-6A(AL) (0005).01                  Page 2 of 15                Form 3001 1/01

8TG    1725    800

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the County of HOUSTON :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
**See Legal Description Addendum Page Attached**

Parcel ID Number: 10-09-31-4-003-001.007          which currently has the address of
105 TV ROAD                                              [Street]
DOTHAN                              [City], Alabama 36301          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

10017610503172 9          050317291 7

-6A(AL) (0005) 03          Page 3 of 15          Form 3001 1/01

876      1725      801

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

100176105031729                                    0503172917

-6A(AL) (0005).03          Page 4 of 15          Initials: ___          Form 3001 1/01

**Hall-Frazier**
**Record - 000121**

MTG    1725    802

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

100176105031729                                    0503172917

-6A(AL) (0005).03              Page 5 of 15              Form 3001 1/01

Hall-Frazier
Record - 000122

MTG    1725    803

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

**Hall-Frazier
Record - 000123**

MTG    1725    884

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

100176105031729                                      0503172917

-6A(AL) (0005).03          Page 7 of 15          Initials: GA          Form 3001 1/01

MTG    1725    805

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

MTG    1725    806

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

100176105031729                                              05031/2917

-6A(AL) (0005).03                Page 9 of 15                          Form 3001 1/01

MTG    1725    807

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

100176105031729                                    0503172917

-6A(AL) (0005).03                    Page 10 of 15        Initials: ___        Form 3001 1/01

Hall-Frazier
Record - 000127

MTG    1725   808

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Hall-Frazier
Record - 000128

MTG    1725    809

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(AL) (0005) 03                100176105031729                0503172917
                                 Page 12 of 15    Initials CATT.    Form 3001 1/01

M16    1725    A10

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in HOUSTON
County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

25. **Attorneys' Fees.** Wherever this Security Instrument authorizes the Lender to collect reasonable attorneys' fees following default, such reasonable attorneys' fees shall not exceed fifteen percent (15%) of the unpaid debt after default and referral of the Security Instrument to an attorney who is not a salaried employee of Lender.

100176105031729                    0503172917

-6A(AL) (0005).03          Page 13 of 15     Initials: CHb        Form 3001 1/01

MTB    1725    811

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Diane L. Wilson_

_Amy Johnson_

_____ (Seal)
CHERYL HALL                 -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)         _____ (Seal)
            -Borrower                              -Borrower

_____ (Seal)         _____ (Seal)
            -Borrower                              -Borrower

_____ (Seal)         _____ (Seal)
            -Borrower                              -Borrower

100176105031729                 0503172917

-6A(AL) (0005).03                Page 14 of 15                Form 3001 1/01

MTG     1725     812

STATE OF ALABAMA,                                            County ss: *Houstin*

On this ~~25~~ day of *March , 2005* ,

*Diane L. Hilson*
a Notary Public in and for said county and in said state, hereby certify that CHERYL HALL

whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged
before me that, being informed of the contents of the conveyance, he/she/they executed the same
voluntarily and as his/her/their act on the day the same bears date.
     Given under my hand and seal of office this ~~25~~ day of *March, 2005*

My Commission Expires:

My Commission
Expires 3-06-08

                                        _____
                                        Notary Public

                                        Diane L. Hilson
                                        Alabama State
                                        at Large

Prepared By:
Home Funds Direct
15090 Avenue of Science
San Diego, CA 92128

-8A(AL) (0005).00        100176105031729                    0503172917
                         Page 15 of 15                       Form 3001 1/01

MTG    1725    813

## EXHIBIT A

Situated in Dothan, Houston County, State of AL and being described as follows:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #10-09-31-4-003-001.007

BEING the same property conveyed to Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns, by deed from Samuel B. Pierce, Jr., Secretary of Housing and Urban Development of Washington, D.C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, dated 07-19-85, recorded 07-26-85, in Book 311, page 324, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Kevin Lorenzo Dixon, II, by deed from Louis E. Sowers and wife, Fay Sowers, dated 04-02-03, recorded 04-03-03, in Book 598, page 34, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Cheryl Hall, by deed from Kevin Lorenzo Dixon, II, a unmarried man, dated 03-02-05, recorded 03-11-05, in Book 622, page 443, in the Office of the Judge of Probate of Houston County, AL.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

105 TV Road, Dothan, AL 36301

| Mortgage Tax | 84.00 |
| Recording Fee | 56.00 |
| TOTAL | 140.00 |

03/25/2011 18:40 FAX

MAR-24-05 THU 3:17 PM GRm-MCGRIFF STATE FARM    FAX NO. 33r-712 1158    P 3



PREMIUM NOTICE
STATE FARM INSURANCE COMPANIES
AGENT ISSUED DECLARATIONS

559-916.4

| POLICY NUMBER | BILLING PERIOD | | AGENT CODE |
| 01-GP-2037-2 | FROM 03-24-2005 | TO 03-24-2006 | 1599 |

LOCATION (If other than Named Insured's mailing address)

INSURED
HALL, CHERYL
105 TV RD
DOTHAN, AL 36301

PREMIUM $ 1,068.00

AMOUNT PAID $    .00

AMOUNT DUE $ 1,068.00

DATE DUE 03-24-2005

MORTGAGEE
HOME FUNDS DIRECT
PO BOX 10436
VAN NUYS, CA 94741-0436

AGENT NAME & ADDRESS
MCGRIFF, EUGENE G
P O BOX 1185
DOTHAN, AL
36302-1185   (334)793-7618

Loan Number: 0503172917

This is the only notice you will receive.  Please make check payable
to STATE FARM and return it with this notice to the address shown below.
Your canceled check is your receipt.  Thanks for letting us serve you.

STATE FARM INSURANCE COMPANIES

AL-MISS REGIONAL OFFICE
PO BOX 2661
BIRMINGHAM AL  35297

559-916.4

# Chambless ❖ Math
A Professional Corporation

Mark N. Chambless
Leonard N. Math*
Karen P. Chambless
Brian W. Moore
Bernard R. Carr
Zack M. Azar
Michael A. Griggs
Katherine K. Laders
Kristen P. Southworth

Post Office Box 230759
Montgomery, Alabama 36123-0759
Telephone (334)272-2230
(800)371-4061
Facsimile (334)272-1955
Website: www.chamblessmath.com

Of Counsel:
E. Terry Brown
Michael E. Bybee
Kent D. McPhail
Jonass D. Chappell
Geoffrey Alexander

* Also admitted to the
Illinois Bar

## FACSIMILE TRANSMITTAL SHEET

CLIENT NAME / NUMBER: _____

FAX NUMBER: 865-934-1226

TO: Tracy

FROM: Alice Harris

DATE: March 24, 2005

NUMBER OF SHEETS: _____ (Including Cover Page)

SPECIAL INSTRUCTIONS OR REMARKS:

Re: Army Aviation Center FCU vs. Cheryl K. Hall #181177
The Balance is $4566.90. Please make payable to
Chambless Math PC. Atten: Alice Harris 5720 Carmichael
Road, Montgomery, AL 36117. The per diem is .89
Please let me know if you have any questions.
Thanks,
Alice Harris

Unless otherwise indicated or obvious from the nature of the transmittal, the information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by telephone and return the original message to us at the above address via U.S. Postal Service. Thank you.

If you do not receive all pages of transmission, please call as soon as possible at (334)272-2230, Ext. 38 and ask for ALICE HARRIS

Montgomery Office • 5720 Carmichael Road • Montgomery, Alabama 36117 • (334) 272-2230 Voice • (334) 272-1955 Facsimile
Birmingham Office • 3100 6th Avenue North • Suite 200 • Birmingham, Alabama 35203 • (205) 251-6565 Voice • (205) 252-2831 Facsimile

03/26/2011 16:08 FAX

FloodCert/Certificate                                                                        Page 2 of 2

## NOTICE TO BORROWER
### *NOT IN*
## SPECIAL FLOOD HAZARD AREA

Borrower: **HALL, CHERYL**                      Loan #: **0503172917**

Property Location: **105 TV RD**
                   **DOTHAN, AL 36301**

National Flood Insurance Program Community: **DOTHAN, CITY OF**

This Notice Date is as of: **03/18/05**

Attached is the completed Standard Flood Hazard Determination Form that indicates that the improved real
estate or mobile home securing your loan is *not* located in an area designated by the Director of the Federal
Emergency Management Agency ("FEMA") as a Special Flood Hazard Area ("SFHA"). As a result of this
determination, you will not be required to obtain mandatory flood insurance in connection with the making of
your loan.

However, your home may be near a SFHA. As such you, or your lender, may want to consider the advisability
of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to the
coverage types and amounts available to you and make your own determination as to whether you desire any
such coverage.

If, however, at any time during the term of your loan the improved real estate or mobile home securing your
loan is, due to re-mapping by FEMA or otherwise, located in an area that has been identified by the Director of
FEMA as an area having special flood hazards and in which flood insurance is available under the National
Flood Insurance Program, you will be so notified and advised that you must obtain an appropriate amount of
flood insurance coverage. If, within 45 days after we send you such notification, you fail to purchase flood
insurance in an amount not less than the amount we advise you is necessary, we shall purchase such flood
insurance on your behalf at your expense, as we are authorized to do so in accordance with the provisions of the
Flood Disaster Protection Act of 1973, as amended.

I/We, the undersigned borrower(s)/applicant(s), hereby understand and agree to all the above

| Borrower/Applicant | Date | Borrower/Applicant | Date |
|---|---|---|---|
| Borrower/Applicant | Date | Borrower/Applicant | Date |
| Borrower/Applicant | Date | Borrower/Applicant | Date |

https://www.floodcert.com/main/findorder.do?printable=1&floodCertNum=0503844472          3/18/2005

03/26/2011 16:08 FAX



**Home Funds**
D I R E C T

### PACSIMILE TRANSMITTAL SHEET

| | FROM |
|---|---|
| Shaun/Danny/Nicki | Brita Dickerson- Doc & Funding |
| **FAX NUMBER** 865.934.0215 | **DATE** 03/25/2005 |
| **COMPANY** Swafford & Hays | **TOTAL NO. OF PAGES INCLUDING COVER.** |
| **PHONE NUMBER** | **PHONE NUMBER** 770-541-5354  toll free 1-866-539-7025 |
| **RE:** Hall | **FAX NUMBER** 770-984-2796 |

X URGENT    X FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please find attached the following documents that must be added to the closing package.

❖ APPROVED HUD

❖ FLOOD ZONE NOTICE

### THANK YOU!!!!!!

Hall-Frazier
Record - 000137

A. SETTLEMENT STATEMENT

U.S. Department of Housing and Urban Development

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1 [ ] FHA  2 [ ] FmHA  3 [ ] Conv. Unins. | | 6. File Number: 05-2813 | 7. Loan Number: 850117297 | 8. Mortgage Ins. Case # |
| 4 [ ] VA  5 [X] Conv. Ins. | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER/BUYER: |
|---|
| Cheryl Hall 105 TV Road Dothan, AL 36301 |

| E. NAME AND ADDRESS OF SELLER: |
|---|
| approved BD BY 1/20/05 |

| F. NAME AND ADDRESS OF LENDER: |
|---|
| Home Funds Direct 1150 Northchase Parkway, Suite 200 Marietta, GA 30067 |

| G. PROPERTY LOCATION (Brief Legal): |
|---|
| 105 TV Road Dothan, AL 36301 |

| H. SETTLEMENT AGENT: | PLACE OF SETTLEMENT: |
|---|---|
| Swafford and Hays Settlement Services, Inc.  865-539-4450 Contact: Janet Shelley | 9041 Executive Park Drive, Suite 400 Knoxville, TN  37923 |

| I. SETTLEMENT DATE: | DISBURSEMENT DATE: |
|---|---|
| 03/25/2005 | 03/30/2005 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 13,896.39 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 13,896.39 | 420. Gross Amount Due To Seller | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 56,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller in advance | | Adjustments for items unpaid by Seller in advance | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 56,000.00 | 520. Total Reductions Amount Due Seller | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER | | 600. CASH AT SETTLEMENT TO/FROM SELLER | |
| 301. Gross Amount due from borrower (line 120) | 13,896.39 | 601. Gross amount due to seller (line 420) | |
| 302. Less amount paid by/for borrower (line 220) | 56,000.00 | 602. Less reductions in amt. due seller (line 520) | |
| 303. Cash [ ] From [X] To Borrower | 42,103.61 | 603. Cash [ ] To [ ] From Seller | |

SUBSTITUTION FORM 1099 SELLER STATEMENT: The information contained in blocks E, G, H and I on line 401 (or, if line 401 is not listed, line 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER, you are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller(s):

Hall-Frazier
Record - 000138

## SETTLEMENT CHARGES

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| 701. Listing Realtor Commission | | |
| 702. Selling Realtor Commission | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  To: Home Funds Direct | 1,960.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee  To: Alabama Appraisal Service | 300.00 | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Processing Fee  To: Home Funds Direct | 900.00 | |
| 809. Underwriting Fee  To: Home Funds Direct | 900.00 | |
| 810. Document Preparation Fee | | |
| 811. Zone Determination Fee  To: Home Funds Direct | 9.50 | |
| 812. Tax Service Fee  To: Home Funds Direct | 66.00 | |
| 813. Appraisal Review Fee  To: Home Funds Direct | 250.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest From/Until Days  To: Home Funds Direct | 22.48 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Insurance Premium for  To: State Farm | 1,008.00 | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard Insurance  To: Home Funds Direct | 350.00 | |
| 1002. Mortgage Insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes  To: Home Funds Direct | 313.25 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment  To: Home Funds Direct | -134.25 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | 275.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc | 250.00 | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fee | | |
| 1107. Attorney's Fees | | |
| (includes above item numbers ) | | |
| 1108. Title Insurance  To: Transnation Title Insurance Company | 200.00 | |
| (includes above item number ) | | |
| 1109. Lender's coverage $47,500.00  @  $200.00 | | |
| 1110. Owner's coverage @ 0.00 | | |
| 1111. Endorsement  To: Swafford and Hays Settlement Services, Inc | 50.00 | |
| 1112. | | |
| 1113. Overnight Courier & Handling Fees | | |
| **1200. GOVT. RECORDING, TRANSFER AND SERVICE FEES** | | |
| 1201. Recording Fees and Service fees:  To: Clerk of the Court | 120.00 | |
| 1202. City/county tax/stamps | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $84.00 To: Clerk of the Court | 84.00 | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1302. Payoff  To: Army Aviation Center F C U  good thru 6/24 | 4,594.49 | |
| 1304. | | |
| 1305. Payment  To: The CH STR/Providian | 785.00 | |
| 1306. Payment  To: Pinnacle | 694.00 | |
| 1307. Payment  To: Holloway Credit | 452.00 | |
| 1308. Payment  To: Small LNS | 399.00 | |
| 1309. Payment  To: Cnb MGT | 182.00 | |
| 1310. Payment  To: Fundamed Jewelers | 600.00 | |
| 1311. | | |
| **1400. Total Settlement Charges (enter on line 103, Section J and 502, Section K)** | 11,896.97 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWERS                                                                                    SELLERS

Cheryl Hall

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Hall-Frazier
Record - 000139

03/28/2011 19:08 FAX

Smith Food and Non-Intoxicant Services, Inc.

NOTE:  Taxes have been prorated based on last year of this year.  Any re-proration will be handled between the buyer and seller.  All utility bills (water, sewer, electric, gas) and maintenance have been paid or will be paid upon receipt of final bills.

WARNING:  It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine or imprisonment.  For details see:  Title 18 U.S. Code Section 1001 and Section 1010.

**Hall-Frazier**
**Record - 000140**

## COMMITMENT QUALITY CONTROL SHEET

| | |
|---|---|
| Verify all property docs are included in package | verify you have put comments in comments section for further processes(post closing/funding) |
| **TIL, Mortgage, Note, RTC | |
| *** (unless property is non-owner) | |
| Verify vesting on title matches mortgage | Broker Agreement States |
| Verify proper parties are printed on docs | NJ |
| *** marital states/spouses | VA |
| QCD/WD is Correct prior to sending, if required | FL |
| Verify HUD/TIL match (HLC) | LA |
| Verify all proper attachments get to notary | MA |
| *** Hud, Affs, Privacy policy, shortfall, waiver, no lien, exhibit, any other requirements, | DE |
| ****BROKER AGREEMENTS, GLADS, 1003, FLOOD CERTS-for all MISC | |
| Call notary to confirm receipt of docs | |
| Misc- make sure HUD is APPROVED by lender | |
| If POA is used make sure it is approved prior to closing. | Quality Control' |
| Subordination agreement-need original prior to closing | Hilson 3/25 |
| NJ/DE --QCD/WD forms sent to closing | |
| NY QCD/WD-appropriate people notified at SH | Closer sending out and verifying QC |
| **(info sent to borrowers by erica or post closer) | Danny Moore |
| MISC-RTC verify dates are correct and printed on the actual docs | Shaun Galford |
| GA LOANS- ALL LENDERS MUST HAVE | Kim Creasman |
| ** Waiver of Borrower Rights and Closing ATT Affidavit | Erica |
| | Janet Shelley |
| NC HLC | Shannon Odom |
| 3 odd extra docs must be signed at closing | Lee Strange |
| **Fair Lending Act** | Betsey Johnson |
| Borrowers Aff regarding income/repay | Shane Todd |
| Borrower Verification of Reasonable Net Benefi | |
| Legal description on MTG and our Legal must match | |
| HLC-Verify the attorney fee and name on HUD matches the attorney confirmation in system | Other |
| QCD and WD MUST BE EXECUTED PRIOR OR AT CLOSING | |
| | Signature  Erit |
| | Comments: |





03/26/2011 14:38 FAX
STA[redacted]A S MOSS HoCoRevComm 334-[redacted]7-4708 P.01

105 TV RD -G- 2004 No. 48869

| ASSESSED VALUE | TAXES STATE AND COUNTY | EXEMPT CODE | EXEMPTION VAL & TAX STATE AND COUNTY | NET TAXES STATE AND COUNTY | SCH CODE | SCHOOL TAX | MUN CODE | MUNICIPAL TAX |
|---|---|---|---|---|---|---|---|---|
| 16020 | 104.13<br>184.23<br><br>288.36 | | S<br>C | 104.13<br>184.23<br><br>288.36 | 3 | 128.16 | 03 | 80.10 |

IMP - LEGAL DESCRIPTION -

LOT 2 BLK C 3RD ADD TELEVISION HGTS SUB

RDIJUIF COUNTER CHECK

PAID
Starla Moss Matthews
Houston County
Revenue Commissioner

Drw# 38 3/25/2005 12:13

10-09-31-4-003-001.007

DIXON KEVIN LORENZO II
105 MELISSA LN
HEADLAND AL 36345 0000

Printed 03/25/2005 12:18
PAID BY - HALL CHERYL

PPIN 33994

| | |
|---|---|
| Taxes | 496.62 |
| Forestry | |
| Total | 496.62 |
| Interest | 14.69 |
| Citation | 7.92 |
| Delq. Fee | 10.00 |
| Advertising | |
| Probate Fee | 5.00 |
| Misc Fee | |
| Cr. Card Fee | |
| Grand Total | 534.23 |

105 TV RD -G- 2004 No. 48869

| ASSESSED VALUE | TAXES STATE AND COUNTY | EXEMPT CODE | EXEMPTION VAL & TAX STATE AND COUNTY | NET TAXES STATE AND COUNTY | SCH CODE | SCHOOL TAX | MUN CODE | MUNICIPAL TAX |
|---|---|---|---|---|---|---|---|---|
| 16020 | 104.13<br>184.23<br><br>288.36 | | S<br>C | 104.13<br>184.23<br><br>288.36 | 3 | 128.16 | 03 | 80.10 |

IMP - LEGAL DESCRIPTION -

LOT 2 BLK C 3RD ADD TELEVISION HGTS SUB

RDIJUIF COUNTER CHECK

PAID
Starla Moss Matthews
Houston County
Revenue Commissioner

Drw# 38 3/25/2005 12:13

10-09-31-4-003-001.007

DIXON KEVIN LORENZO II
105 MELISSA LN
HEADLAND AL 36345 0000

TAXPAYER'S COPY

Printed 03/25/2005 12:18
PAID BY - HALL CHERYL

PPIN 33994

| | |
|---|---|
| Taxes | 496.62 |
| Forestry | |
| Total | 496.62 |
| Interest | 14.69 |
| Citation | 7.92 |
| Delq. Fee | 10.00 |
| Advertising | |
| Probate Fee | 5.00 |
| Misc Fee | |
| Cr. Card Fee | |
| Grand Total | 534.23 |

Att. Chris RE. Cheryl Hall

Shannon

RE: Hall

05-2813

Send updated title
? Hud

Thanks!





Home Funds
1130 Northchase Parkway Suite 200
Marietta, GA. 30067-6420
Telephone:(866) 539-7025
Fax: (866) 539-7026

HUD Rowe

# Loan Status

Borrower: HALL, CHERYL
Co-Borrower:
Loan Number: 0503172917
Team: 351 - ATL001

Date: 03/24/2005 1:17 pm

05-2813

| | | | | | |
|---|---|---|---|---|---|
| Subject Property: 105 TV ROAD DOTHAN, AL 36301 | | Type: | SFR - Detached | Doc Type | Full |
| | | Occupancy: | Owner Occupied | Purpose | Refi Cash Out |
| | | Appraised Value: | $96,000.00 | Lien Pos. | 1st |
| | | Final Value: | $96,000.00 | | |
| Broker: | | Program: B Fixed Full Doc | | Term. | 360/360 |
| Contact: | | | | Pre-Pay Term. | None |
| Phone: | | LTV/CLTV: | 70.31% / 70.31% | Orig. Fee | 3.5 |
| Fax: | | Loan Amount: | $67,500.00 ✓ | Discount Pts. | 0 |
| | | Fixed Rate: | 7.299% | Special Product Code: | N/A |
| Appraisal: Unknown | | | | Credit Score: | Std: 575 Avg: 564 |

| | |
|---|---|
| Decision: Subject To Approval Date: 03/17/2005<br>*Approval expires 15 days from Decision Date, and is subject to requirements listed below*<br>*Any Change in Rate and /or Margin requires re-underwriting* | For Assistance Call:<br>Loan Specialist: Kim Stevenson<br>Account Executive: Kristopher Dillon |

***Note:** If any of these requirements are not met to our satisfaction, **HomeFunds Direct** reserves the right to cancel funding/purchase of this loan.. All documentation is subject to re-verification prior to funding. Loan approval is made subject to the following conditions:*

**Standard Closing Requirements**

HFD to phone verify employment.
Property taxes to be paid current.
Flood Insurance if applicable.
Copy of photo I.D. all borrowers.
Total broker/lender fees not to exceed 7% o
Approval is issued as shown provided the

HFD to update credit report if more than 60 days old on date of loan docs.
Section 32 loans not allowed.
...es for third-party appraisal and credit report fees charged to borrower.
...bject to state High Cost loan test.
...'s High Cost Loan test for APR and Points & Fees

05-2813

**Loan Conditions**

Appraisal Review Ordered: ...ved:

Taxes Delinquent

| Amended | Added | Due Prior | |
|---|---|---|---|
| | 03/24/2005 | Apr | |
| | 03/24/2005 | A | ...no. coverage from loan date for ... Accredited Home Lenders, Inc., A ... uys, CA 91410-0436 |
| | 03/24/2005 | | |
| | 03/24/200 | | ...ne, existing liens must be current for |
| | | | ...00 ✓ |
| | | | ..00 ✓ |
| | | | AKN... ...49 ✓ |
| | | | Total: |
| | 03/24/2005 | Approval | 5. Flood Certification (AHL... |
| | 03/24/2005 | Approval | 6. Satisfactory appraisal review (AHL to provide) |
| | 03/24/2005 | Approval | 7. Copies of invoices for any third-party fees charged to borrower (i.e. appraisal, credit, courier, escrow, etc.). |
| | 03/24/2005 | Approval | 8. Copy of SSI/Pension awards letter with copy of most recent check or bank statement, if direct deposit |

closing 3/25 5PM

67,500.00
105 TV RD.
Dothan AL
36301 Houston

ØB

534.23 D/O

193.20

GT 3/28

83/101.25

**Home Funds**
1130 Northchase Parkway Suite 200
Marietta, GA. 30067-6420
Telephone:(866) 539-7025
Fax:    (866) 539-7026

## Loan Status

Borrower: HALL, CHERYL
Co-Borrower:
Loan Number: 0503172917
Team: 351 - ATL001

Date: 03/24/2005 2:17 pm

**Loan Conditions**
Appraisal Review Ordered:                    Due:                    Received:

| Amended | Added | Due Prior To | Condition |
|---|---|---|---|
|  | 03/24/2005 | Funding | 9. Pay the following in full at closing (payoff must show on est/final HUD1): |

ALABAMA APPRAISAL SERVICE    $300.00
HOUSTON COUNTY TAXES    $635.00
ARMY AVIATION CENTER FCU    $4,594.49
Total:    $5,529.49

THE CR STR/PROVIDIAN    $785.00
PALISADES    $694.00
HOLLOWAY CREDIT    $552.00
SMALL LNS    $399.00
CRDT MGT    $182.00
FREEDMANS JEWELERS    $400.00
Total:    $2,912.00

| | 03/24/2005 | Funding | 10. AHL to be insured in 1st lienhold position with clear title |
| | 03/24/2005 | Funding | 11. Corrected original 1003, pages 1-4, to be fully completed and signed by borrowers and broker. |
| | 03/24/2005 | Funding | 12. Certified copy of Final HUD1 |
| | 03/24/2005 | Funding | 13. Funds to be wired to the title company only |

No Conditions have been satisfied

Page:    2 of 2

03/28/2011 15:29 FAX

**Home Funds**
F U N D S
1130 Northchase Parkway Suite 200
Marietta, GA. 30067-6420
Telephone (866) 539-7025
Fax:      (866) 539-7076

**File Summary**

Borrower:  HALL, CHERYL
Co-Borrower:
Loan Number:  0503172917
Team:  351 - ATL001
Underwriter:  Clarence Wells
Date:  03/24/2005 2:17 pm

File Notes

| Category | File Notes |
|---|---|
| Income | 03/24/2005 01:26:28 PM Kim Stevenson 579X1259%=723.75+579=$1302.75 |

Page:     1 of 1



**Home Funds**
1130 Northchase Parkway Suite 200
Marietta, GA. 30067-6420
Telephone: (866) 539-7025
Fax:     (866) 539-7026

## Risk Analysis
Borrower:  HALL, CHERYL
Co-Borrower:
Loan Number:  050317291?
Team:  351 - ATL001
Underwriter:  Clarence Wells
Date:  03/24/2005 2:17 pm

| | | |
|---|---|---|
| Subject Property:<br>105 TV ROAD<br>DOTHAN, AL. 30301 | Type:  RFR - Detached<br>Occupancy:  Owner Occupied<br>Appraised Value: $96,000.00<br>Final Value:  $96,000.00 | Doc Type:  Full<br>Purpose:  Refi Cash Out<br>Lien Pos:  1st<br>Original Purchase:<br>Date: |
| Decision:   Submit To Approval | Decision Date:  03/17/2005 | Price:  $80,000.00 |

| Requested Loan | Subject Loan | Orig. Fee 2.5 | | | Grade |
|---|---|---|---|---|---|
| Program:  Fixed | Program:  Fixed | Due: Pts. 0<br>Term:  360  / 360<br>Pre-Pay:  None<br>Taxes:  $44.75<br>Insurance $100.00 | Mortgage<br>Consumer<br>Overall Grade: | | CC<br>C<br>B |
| LTV:  88.54%<br>Amount  $85,000.00<br>Rate:  8.000% | B Fixed Full Doc<br>LTV/CLTV:  70.31% / 70.31%<br>Loan  $67,500.00<br>Fixed Rate:  7.299% | | Spec Prod Code:<br>Total DTI:<br>Vacancy | | N/A<br>46.63%<br>75% |

**Subject Property Liens (Current Scenario)**
Occupancy:  Owner Occupied

| Lien Position<br>and Creditor | Status | Current<br>Balance | Current<br>Payment | Payoff<br>Paydown | 30 | 60 | 90 | 120 | 150 | 150+ | Frclsr | NOD | NOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SOUTHERN APPRAISAL<br>SERVICE | | $300.00 | | Payoff | 0 | 0 | 0 | 0 | 0 | 0 | No | No | No |
| 0. HOUSTON COUNTY TAXES | | $635.00 | | Payoff | 0 | 0 | 0 | 0 | 0 | 0 | No | No | No |
| 0. ARMY AVIATION CENTER FCU | | $4,594.49 | | Payoff | 0 | 0 | 0 | 0 | 0 | 0 | No | No | No |
| Taxes and Insurance | | | $144.75 | | | | | | | | | | |
| Totals | | $5,529.49 | $144.75 | | 0 | 0 | 0 | 0 | 0 | 0 | No | No | No |

**Subject Property Liens (Proposed Scenario)**
Occupancy:   Owner Occupied

| Lien Position and Creditor | Proposed<br>Balance | Proposed<br>Payment |
|---|---|---|
| 1. Subject Loan | $67,500.00 | $462.72 |
| Taxes and Insurance | | $144.75 |
| Totals | $67,500.00 | $607.47 |

**No Current Non-Subject Property**

**No Current Non-Subject Property Liens**

**Consumer Debts**

| Creditor | Note | Current<br>Status | 12 Mo<br>Status | 24 Mo<br>Status | Current<br>Balance | Current<br>Payment | Payoff<br>Paydown | Utilized<br>Balance | Utilized<br>Payment |
|---|---|---|---|---|---|---|---|---|---|
| THE CR SERV/PROVIDIAN | | Collection | Collection | Current | $785.00 | | Payoff | $0.00 | $0.00 |
| PALISADES | | Collection | Collection | Current | $694.00 | | Payoff | $0.00 | $0.00 |
| HOLLOWAY CREDIT | | Collection | Collection | Current | $452.00 | | Payoff | $0.00 | $0.00 |
| SMALL LNS | | Charge Off | Charge Off | Current | $399.00 | | Payoff | $0.00 | $0.00 |
| CRDT MGT | | Collection | Collection | Current | $182.00 | | Payoff | $0.00 | $0.00 |
| FRIEDMANS JEWELERS | | Collection | Collection | Current | $400.00 | | Payoff | $0.00 | $0.00 |
| Totals | | | | | $2,912.00 | $0.00 | | $0.00 | $0.00 |

**Consumer Credit Analysis**

| Bankruptcy Filed: | | | | | Discharged/Dismissed: | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Current | 30 | 60 | 90+ | Collection | Charge<br>Off | In BK<br>Now | NOD Now | BK/NOD<br>12 Months |
| 12 Months | 0 | 0 | 0 | 0 | 0 | 0 | | | No |
| 24 Months | 0 | 0 | 0 | 0 | 0 | 0 | | No | No |

**Income**

| Borrower | Age | Employer/Source | Position | Job Type | Mo. Income | Yr | Mo |
|---|---|---|---|---|---|---|---|
| HALL, CHERYL N | 0 | SOCIAL SECURITY | | Fixed | $1,302.75 | | |

Page:    1 of 2

03/25/2011 15:29 FAX



**Home Funds**
1130 Northchase Parkway Suite 200
Marietta, GA. 30067-6420
Telephone (866) 539-7025
Fax:        (866) 539-7026

## Risk Analysis

Borrower: HALL, CHERYL
Co-Borrower:
Loan Number: 0503172917
Term: 351 - ATL001
Underwriter: Clarence Wells
Date: 03/14/2005 2:17 pm

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals | | | | | | $1,302.75 |

**Underwriter Grade Notes**

03/17/2005 02:08:38 PM Clarence Wells
no tag (property deeded to borrower 3/2005)
Mortgage (O/O)

03/17/2005 02:08:38 PM Clarence Wells
doesn't meet minimum seats requirement
Consumer (C-)

03/17/2005 02:08:38 PM Clarence Wells
555 fico, no bk or fc
Overall (A)

| Debt Ratios | Current | Proposed |
|---|---|---|
| Income | $1,302.75 | $1,302.75 |
| Positive Cash Flow | $0.00 | $0.00 |
| Total Income | $1,302.75 | $1,302.75 |
| Housing Cost | $144.75 | $607.47 |
| Housing DTI | 11.11% | 46.63% |
| Consumer Payments | $0.00 | $0.00 |
| Negative Cash Flow | $0.00 | $0.00 |
| Total Payments | $144.75 | $607.47 |
| Total DTI | 11.11% | 46.63% |

| Credit Score - Std. | 575 |
|---|---|
| Credit Score - Avg. | 564 |
| Time in Residence | 2 yrs 0 mths |
| # Dependents | 0 |
| Saves Monthly | ($462.72) |
| Gross Disposable | $693.28 |
| Real Estate Payoffs | $5,529.49 |
| Consumer Payoffs | $2,912.00 |
| Total Payoffs | $8,441.49 |

**Net Benefits**

☐ Purchase Money transaction with new housing cost reasonable compared to current housing.
☐ Purchase Money transaction; new housing cost substantially increased compared to current housing cost, but DTI is 45% or less, or there is substantial discretionary income to support the transaction.
☐ Refinance transaction with borrower's total monthly payments reduced by 5% or more
☐ Refinance transaction with a new lower interest rate, but total monthly payments reduced less than 5%.
☑ Refinance transaction to payoff delinquent debt and leave any remaining debt current.
☐ Refinance transaction to payoff a loan with a balloon payment.
☐ Refinance transaction with cash to borrower exceeding 10% of the loan amount or $10,000
☐ Refinance transaction to pay off existing adjustable rate loan into new fixed rate loan.
☐ Refinance transaction to change title vesting or ownership in subject property

Page:   2  of  2



03/26/2017 15:28 FAX

Date:           March 24, 2005           02:13PM

Stage:          49 - 49 - registration stage

Borrower:       CHERYL HALL

Loan Number:    0503172917                                    INITIAL

SECTION 32 CALCULATION
SUMMARY

| | |
|---|---|
| Section32: | No |
| Purpose: | REFI, CASH-OUT |
| Occupancy: | Owner Occupied |
| Loan Term / Balloon Term: | 360    / 360 |
| PrePayment Penalty: | No |
| Total LTV: | 46.630% |
| Doc Type: | Full |
| APR: | 7.919 |
| T-Bill Rate: | 4.550% |
| Max Rate w/o Sec32: | 12.550% |
| Amount Financed: | $63,105.00 |
| Sec32 Pts/Fees: | $3,963.00 |
| Max Fees w/o Sec32: | $5,848.40 |

GOOD FAITH ESTIMATE
SUMMARY

| HUD-1 or HUD-1A DESCRIPTION OF CHARGES | | Lender | | OTHER |
|---|---|---|---|---|
| 801 | ORIGINATION FEE | $ | 2,362.50 | $ 0.00 |
| 802 | DISCOUNT FEE | $ | 0.00 | $ 0.00 |
| 807 | APPLICATION FEE | $ | 0.00 | $ 0.00 |
| 810 | PROCESSING FEE | $ | 500.00 | $ 0.00 |
| 811 | UNDERWRITING FEE | $ | 500.00 | $ 0.00 |
| 812 | DOCUMENT PREPARATION FEE | $ | | |
| 813 | APPRAISAL REVIEW FEE | $ | 250.00 | $ 0.00 |
| 814 | REDRAW FEE | $ | 0.00 | $ 0.00 |
| 815 | ESCROW HOLDBACK FEE | $ | 0.00 | $ 0.00 |
| 816 | FUNDING FEE | $ | 0.00 | $ 0.00 |
| 819 | COURIER FEE | $ | 0.00 | $ 0.00 |
| 825 | WAREHOUSE FEE | $ | 0.00 | $ 0.00 |
| 827 | RE-VERIFICATION FEE | $ | 0.00 | $ 0.00 |
| 828 | FLOOD DETERMINATION FEE | $ | 9.50 | $ 0.00 |
| 829 | TAX SERVICE FEE | $ | 66.00 | $ 0.00 |
| 830 | LENDER SERVICE FEE | $ | | |
| 804 | CREDIT REPORT FEE | $ | 0.00 | $ 0.00 |
| | | | | OTHER |
| 1101 | CLOSING AGENT FEE | $ | | $ 275.00 |
| 1105 | CLOSING AGENT DOCUMENT FEE | $ | | $ 0.00 |
| 1107 | DEMAND FEE | $ | | $ 0.00 |
| 1112 | COURIER FEE - CLO | $ | | $ |

|  | | | |
|---|---|---|---|
| INDIVIDUAL SUB-TOTALS | $ 3,688.00 | $ 275.00 |
| COMBINED SUB-TOTAL | | $ 3,963.00 |
| 901 ODD DAYS INTEREST | | $ 432.00 |
| TOTAL | | $ 4,395.00 |

| | |
|---|---|
| Loan Amount: | 67,500.00 |
| Rate: | 7.299% |
| Margin: | 0.300% |

400000.str



Thursday, Mar 24, 2005  01:32 PM

**Hall-Frazier**
**Record - 000150**



# COMMITMENT

## Schedule B - Section 1

The following are the requirements to be complied with:

1   Instrument(s) creating the estate or interest to be insured must be approved, executed and filed for record to wit:

a.   Deed of Mortgage to be executed by Cheryl Hall, and spouse if any, securing Home Funds Direct, must be properly executed and recorded.

2   Payment of the full consideration to, or for the account of, the grantors or mortgagors.

3.   Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

4.   Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

5.   Exceptions 3 and 4 of Schedule B - Section 2 of this commitment may be amended in or deleted from the policy to be issued if a survey, satisfactory to the Company, is furnished to Company.

6.   Affidavit to be executed by Cheryl Hall, stating:  1)  There are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between 03-18-05 and the recording of the interest to be insured.  2)  That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured.  3)  That there are no unrecorded special assessments liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to the county or municipality.

7.   A search failed to discover any open mortgages of record as of 03-18-05 for the last 12 months.

8.   Satisfy and release Judgement in favor of Army Aviation Center F C U, dated 06-15-98, recorded 07-02-98, in book 89, page 185, in the Office of the Judge of Probate of Houston County, AL , against Cheryl R. Hall, in the principal amount of $3,558.26, plus costs and fees. _NOTE:  The payoff amount is $4,594.49 good thru 4-24-05._

9.   TAX ID # 10-09-31-4-003-001.007
2004 Taxes in the amount of $534.23 are due and delinquent for 1-1-05.
_Note: This amount is good thru 3-28-05, extra fees will be added after to advertise for tax sale._

2005 Taxes in the estimated amount of $537.00 will be out 10-1-05 and due by 12-31-05.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B Section 2.  This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference on the inside pages.

Commitment #: F52-1069870