## COMMITMENT

### Schedule B - Section 1

The following are the requirements to be complied with:

1.  Instrument(s) creating the estate or interest to be insured must be approved, executed and filed for record to wit:

a.  Deed of Mortgage to be executed by Cheryl Hall, and spouse if any, securing Home Funds Direct, must be properly executed and recorded.

2.  Payment of the full consideration to, or for the account of, the grantors or mortgagors.

3.  Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

4.  Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

5.  Exceptions 3 and 4 of Schedule B - Section 2 of this commitment may be amended in or deleted from the policy to be issued if a survey, satisfactory to the Company, is furnished to Company.

6.  Affidavit to be executed by Cheryl Hall, stating:  1)  There are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between 03-18-05 and the recording of the interest to be insured.  2)  That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured  3)  That there are no unrecorded special assessments liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to the county or municipality.

7.  A search failed to discover any open mortgages of record as of 03-18-05 for the last 12 months.

8.  Satisfy and release Judgement in favor of Army Aviation Center F C U, dated 06-15-98, recorded 07-02-98, in book 89, page 185, in the Office of the Judge of Probate of Houston County, AL , against Cheryl R. Hall, in the principal amount of $3,558.26, plus costs and fees. _NOTE:  The payoff amount is $4,594.49 good thru 4-24-05._

9.  TAX ID # 10-09-31-4-003-001.007
    2004 Taxes in the amount of $534.23 are due and delinquent for 1-1-05.
    _Note: This amount is good thru 3-28-05, extra fees will be added after to advertise for tax sale._

    2005 Taxes in the estimated amount of $537.00 will be out 10-1-05 and due by 12-31-05.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages included by reference on the Insert pages.

Commitment #: F52-1069870

**Hall-Frazier**
**Record - 000151**



## COMMITMENT

### Schedule B - Section 2

**Exceptions**

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1.  Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.  Rights or claims of parties in possession not shown by the Public Records.

3.  Encroachments, overlaps, boundary lines disputes, and other matters which would be disclosed by an accurate survey and inspection of the premises.

4.  Easements or claims of easements not shown by the Public Records.

5.  Taxes or special assessments which are not shown as existing liens by the public records.

6.  Taxes and assessments for the year 2005 and subsequent years, which are not yet due and payable.

7.  Subject to any restrictions, easements, setback lines, etc., as shown of record in Plat book 7, page 23, in the Office of the Judge of Probate of Houston County, AL.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

Commitment #: F52-1069870                                                                                      File #: 05-2913

**Hall-Frazier**
**Record - 000152**



## COMMITMENT

State: AL County: Houston

Order #: 05-2813

| Plant #: | Commitment #: F52-1069870 | Effective Date & Time: March 18, 2005 @ 8:00am | Reinsurance #: | Agent #: 05-2813 |
|---|---|---|---|---|

## Schedule A

1.  Policy or Policies to be issued:
    ALTA LOAN (10-17-92)
    Proposed Insured Loan:                                              Amount

    **Home Funds Direct, ISAOA, ATIMA**                        **$67,500.00**

    2nd Proposed Insured Loan:                                          Amount

    **None**

    ALTA OWNER'S (10-17-92)
    Proposed Insured Owners:                                            Amount

    **Cheryl Hall**

2.  The estate or interest in the land described or referred to in the Commitment and covered herein
    is:

    **Fee Simple**

    and is at the effective date hereof vested in:

    **Cheryl Hall**

3.  The land is described as follows:

    **105 TV Road, Dothan, AL  36301**

*[signature]* ꞏ

Countersigned Authorized Signatory

Issued By: *05-2813
Swafford and Hays Settlement Services, Inc.
9041 Executive Park Drive, Suite 400
Knoxville, TN 37923

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert page.

Underwriter: Transnation Title Insurance Company



Disclaimer | Close Window | Logoff

Help | Deed Tax and Fees | Print

If the PDF document you have selected comes up blank, please click the Refresh/Reload button on your browser.

**Mortgage Recording Estimator (MRE)™**

**Computation for Houston County, AL ( AL041)**

Amount of Mortgage: $67,500.00
The estimated Mortgage recording fee for Houston County is: $83.00
Estimated mortgage tax and financing fees for Houston County is: $101.25

Notes displayed on the results page are intended to have been applied/contemplated in the calculation results. For further clarification of a note, please reference the appropriate state or county in The Real Estate Recording Guide.

**Calculation Assumptions/Recording Notes:**

- THERE ARE TWO OR FEWER GRANTORS AND TWO OR FEWER GRANTEES ON THE DOCUMENT
- NOTE MARITAL STATUS OF INDIVIDUAL GRANTORS ON DEEDS AND MORTGAGES

**Recording Notes:**

- No additional fee for first two grantors and two grantees, first two mortgagors and mortgagees, etc. The fee applies to names above two in either category on all instruments.

**Tax Notes:**

- Before recording a deed, obtain a slip showing value of property from Revenue Commissioner to use in tax computation.

To change the computation of the estimated Mortgage recording fee, you may adjust the number of pages in the Mortgage to be recorded then click the Recompute button

Estimated number of pages in Mortgage: 25

Recompute | Choose Another County

**HUD-1 (fillable)**

Please note that in order to view text documents such as state summaries or statutes, you will need to have Adobe's Acrobat Reader installed on your system. This software is free.



Also, some problems have been experienced while trying to view Acrobat files with early versions of Internet Explorer or Netscape. We recommend downloading the latest version of your favorite browser. We've created links to Microsoft and Netscape browser download pages.



**Home Funds**
1130 Northchase Parkway Suite 200
Marietta, GA  30067-6420
Telephone: (866) 539-7025
Fax:        (866) 539-7026

**Loan Status**

Borrower: HALL, CHERYL
Co-Borrower:
Loan Number: 0503172917
Team: 351 - ATL001

Date: 03/24/2005 2:07 pm

| Subject Property: | Type: | SFR - Detached | Doc Type: | Full |
|---|---|---|---|---|
| 105 TV ROAD | Occupancy: | Owner Occupied | Purpose: | Refi Cash Out |
| DOTHAN, AL 36301 | Appraised Value: | $90,000.00 | Lien Pos: | 1st |
| | Final Value: | $90,000.00 | | |

| Broker: | Program: 8 Fixed Full Doc | Term: | 360(30) |
|---|---|---|---|
| Contact: | | Pre Pay Term: | None |
| Phone: | LTV/CLTV:  62.22% / 62.22% | Orig Fee: | .5 |
| Fax: | Loan Amount: $56,000.00 | Discount Pts: | 0 |
| | Fixed Rate:  7.299% | Special Product Code: N/A |

| Appraisal: Original | | | Credit Score:  Sell 575 Avg 584 |
|---|---|---|---|

| Decision: Approved | Date: 03/24/2005 | For Assistance Call: | |
|---|---|---|---|
| Approval expires 15 days from Decision Date, | Loan Specialist: | Kim Stevenson | |
| and is subject to requirements listed below. | Account Executive: | Kristopher Dillon | |
| Any Change in Rate and/or Margin requires re-underwriting. | | | |

*Note: If any of these requirements are not met to our satisfaction, HomeFunds Direct reserves the right to cancel funding/purchase of this loan. All documentation is subject to re-verification prior to funding. Loan approval is made subject to the following conditions*

**Standard Closing Requirements**
HFD to phone verify employment.                      HFD to update credit report if more than 60 days old on date of loan docs.
Property taxes to be paid current.                     Section 32 loans not allowed.
Flood Insurance if applicable.
Copy of photo I.D. all borrowers.                       Copies of invoices for third-party appraisal and credit report from charged to borrower
Total broker/lender fees not to exceed 7% of amount financed unless subject to state High Cost loan test.
Approval is issued as shown provided the loan does not exceed the property state's High Cost Loan test for APR and Points & Fees.

05.28/5

**Loan Conditions**
Appraisal Review Ordered:    3/21/2005          Due: 3/21/2005          Received:  3/24/2005

| Amended | Added | Due Prior To | Condition |
|---|---|---|---|
| | 03/24/2005 | Approval | 2  Hazard Insurance Policy - If not impounded, requires 6 mo. coverage from loan date for refinances and 12 mo. for purchases. Mortgage Clause: Accredited Home Lenders, Inc. A California Corporation, ISAOA  P.O. Box 10426  Van Nuys, CA  91410-0426 |
| | 03/24/2005 | Funding | 9  Pay the following in full at closing (payoff must show on outstand HUD1) |

√ HOUSTON COUNTY TAXES        $635.00
√ ARMY AVIATION CENTER FCU    $4,594.49
√ ALABAMA APPRAISAL SERVICES  $300.00
√ State Farm Insurance        $1,068.00
                      Total:  $6,597.49

√ THE CR STR/PROVIDIAN        $785.00
√ PALISADES                   $694.00
√ HOLLOWAY CREDIT             $452.00
√ SMALL LNS                   $399.00
√ CRDT MGT                    $182.00
√ FREEDMANS JEWELERS          $400.00
                      Total:  $2,912.00

| | 03/24/2005 | Funding | 10. AHL to be insured in 1st lienhold position with clear title |
| | 03/24/2005 | Funding | 11. Corrected original 1003, pages 1-4, to be fully completed and signed by borrowers and broker. |
| | 03/24/2005 | Funding | 12. Certified copy of Final HUD1 |
| | 03/24/2005 | Funding | 13. Funds to be wired to the title company only. |
| | 03/24/2005 | Funding | 14. Provide detailed cash-out letter from borrower. |

Conditions 1,3,4,5,6,7,8 have been satisfied



**Home Funds**
1130 Northchase Parkway Suite 200
Marietta, GA. 30067-6470
Telephone:(866) 539-7025
Fax:    (866) 539-7026

## Risk Analysis

Borrower: HALL, CHERYL
Co-Borrower:
Loan Number: 0503172917
Team: 351 - ATL001
Underwriter: Clarence Wells
Due: 03/24/2005 1:07 pm

| Subject Property: | Type: | SFR - Detached | Doc Type: | Full |
| 105 TV ROAD | Occupancy: | Owner Occupied | Purpose: | Refi Cash Out |
| DOTHAN, AL 36301 | Appraisal Value: | $90,000.00 | Lien Pos: | 1st |
| | Final Value: | $90,000.00 | Original Purchase | |
| | | | Date: | |
| Decision: Approved | Decision Date: | 03/24/2005 | Price: | $80,000.00 |

| Requested Loan | Subject Loan | Orig. Fee 3.5 | | Grade |
| Program: Fixed | Program: Fixed | Disc. Pts. 0 | Mortgage | CC |
| | | Term: 360 / 360 | Consumer | C |
| LTV: 88.56% | B Fixed Full Doc | Pre-Pay: None | Overall Grade: | B |
| Amount: $85,000.00 | LTV/CLTV: 61.33% / 61.13% | Taxes: $46.75 | Spec Prod Code: | N/A |
| Rate: 8.000% | Loan $56,000.00 | Insurance $89.00 | | |
| | Fixed Rate: 7.299% | | Total DTI | 39.73% |
| | | | Vacancy | 75% |

### Subject Property Liens (Current Scenario)
Occupancy: Owner Occupied

| Lien Position and Creditor | Status | Current Balance | Current Payment | Payoff/ Paydown | 30 | 60 | 90 | 120 | 150 | 180+ | Forcl | NOD | MOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 HOUSTON COUNTY TAXES | | $635.00 | | | 0 | 0 | 0 | 0 | 0 | 0 | No | No | |
| 0 ARMY AVIATION CENTER FCU | | $4,564.49 | | Payoff | 0 | 0 | 0 | 0 | 0 | 0 | No | No | |
| 0 ACADEMY APPRAISAL SERVICES | | $300.00 | | Payoff | 0 | 0 | 0 | 0 | 0 | 0 | No | No | |
| 0 State Farm Insurance | | $1,068.00 | | Payoff | 0 | 0 | 0 | 0 | 0 | 0 | No | No | |
| Taxes and Insurance | | | $133.75 | | | | | | | | | | |
| **Totals** | | $6,597.49 | $133.75 | | 0 | 0 | 0 | 0 | 0 | 0 | No | No | |

### Subject Property Liens (Proposed Scenario)
Occupancy: Owner Occupied

| Lien Position and Creditor | Proposed Balance | Proposed Payment |
|---|---|---|
| 1. Subject Loan | $56,000.00 | $383.99 |
| Taxes and Insurance | | $133.75 |
| **Totals** | $56,000.00 | $517.64 |

**No Current Non-Subject Property**

**No Current Non-Subject Property Liens**

### Consumer Debts

| Creditor | Note | Current Status | 12 Mo Status | 24 Mo Status | Current Balance | Current Payment | Payoff/ Paydown | Utilized Balance | Utilized Payment |
|---|---|---|---|---|---|---|---|---|---|
| THE CR STR/PROVIDIAN | | Collection | Collection | Current | $785.00 | | Payoff | $0.00 | |
| PALISADES | | Collection | Collection | Current | $694.00 | | Payoff | $0.00 | |
| HOLLOWAY CREDIT | | Collection | Collection | Current | $432.00 | | Payoff | $0.00 | |
| SMALL LNS | | Charge Off | Charge Off | Current | $396.00 | | Payoff | $0.00 | |
| CRDT MGT | | Collection | Collection | Current | $182.00 | | Payoff | $0.00 | |
| FRIEDMANS JEWELERS | | Collection | Collection | Current | $406.00 | | Payoff | $0.00 | |
| **Totals** | | | | | $2,911.00 | | | $0.00 | |

### Consumer Credit Analysis

| Bankruptcy Point: | Current | 30 | 60 | 90+ | Collection | Charge Off | In BK Now | NOD Now | BK/NOD 12 Months |
|---|---|---|---|---|---|---|---|---|---|
| 12 Months | 0 | 0 | 0 | 0 | 0 | 0 | No | No | No |
| 24 Months | 0 | 0 | 0 | 0 | 0 | 0 | No | No | No |

### Income

| Borrower | Age | Employer/Source | Position | Job Type | Mo. Income | Yr |
|---|---|---|---|---|---|---|
| HALL, CHERYL B | 0 | SOCIAL SECURITY | | Fixed | $1,102.75 | |

Page:    1 of 2

## COMMITMENT

### Schedule B - Section 1

The following are the requirements to be complied with:

1. Instrument(s) creating the estate or interest to be insured must be approved, executed and filed for record to wit:

a. Deed of Mortgage to be executed by Cheryl Hall, and spouse if any, securing Home Funds Direct, must be properly executed and recorded.

2. Payment of the full consideration to, or for the account of, the grantors or mortgagors.

3. Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

4. Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid

5. Exceptions 3 and 4 of Schedule B - Section 2 of this commitment may be amended in or deleted from the policy to be issued if a survey, satisfactory to the Company, is furnished to Company

6. Affidavit to be executed by Cheryl Hall, stating: 1) There are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between 03-18-05 and the recording of the interest to be insured. 2) That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured. 3) That there are no unrecorded special assessments liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to the county or municipality.

7. A search failed to discover any open mortgages of record as of 03-18-05 for the last 12 months.

8. Satisfy and release Judgement in favor of Army Aviation Center F C U, dated 06-15-98, recorded 07-02-98, in book 89, page 185, in the Office of the Judge of Probate of Houston County, AL , against Cheryl R. Hall, in the principal amount of $3,558.26, plus costs and fees. *NOTE: This amount is not payoff.*  *Not our borrower Diff SS#*

9. Satisfy and release Judgement in favor of Michael T. Megivern dba Wholesale Auto, dated 12-16-03, recorded 01-07-04, in book 109, page 278, in the Office of the Judge of Probate of Houston County, AL , against Cheryl Ann Hall aka etal, in the principal amount of $3,000.00, plus costs and fees. *NOTE: This amount is not payoff.*  **OK TO REM**  *Not our borrower or address*

10. Satisfy and release Lien in favor of Inland Southern Management Corp , dated 10-07-04, recorded 10-19-04, in book 105, page 420, in the Office of the Judge of Probate of Houston County, AL , against Kevin Dixon dba Eisah's, in the principal amount of $154,172.47, plus costs and fees. *NOTE: This amount is not payoff.*  **OK TO REMOVE**  *Not our borrower or address*

11. Satisfy and release Lien in favor of State of Alabama, recorded 12-14-04, in book 106, page 587, in the Office of the Judge of Probate of Houston County, AL , against Kevin Dixon, Eisahs. *NOTE: This amount is not payoff.*  **OK TO REMOVE**

12. TAX ID # 10-09-31-4-003-001.007
2004 Taxes in the estimated amount of $496.62 are due plus late fee.
NOTE: SUBJECT TO FINAL AUDIT OF TAXES



$534.23
90d
358

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2  This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

Commitment #: F52-1069870



06/04/2001  22:45   1-607   7-0303        ROBERT LOUCKS        001/001
                                                               PAGE  01

To Chris

RE. Cheryl Hall



✱ our borrower

Hall-Frazier
Record - 000158



03:55 03/25/'05                    PAGE 01



Will be getting Al,
License 10/24/01

Cheryl A
Hall
Dunn

Rt 2 B. W
284 C



MRF:I-01966-27474-0000 03/17/2005    TID:I-01966-27474 03/17/2005 08:35:02
CREDCO Instant Merge Credit Report        Acct: 129719
Prepared for: ACCREDITED HOME LENDERS-SD IA    Notes: 351
Requested: EFX, XPN, TUC - I    Delivered: EFX, XPN, TUC

App: HALL, CHERYL R    Ssn:
Curr Addr: 105 TV RD, DOTHAN, AL 36301

INSTANT MERGE SUMMARY

ACCOUNT DISTRIBUTION                    CURRENT STATUS(tradelines)
Account Type      Count    Balance    Payments Curr Clsd Curr 30 60 90+
Real Estate         0         $0        $0     -    -    -   -  -   -
Installment        20      $6458     $181   -   18    -   -  -   2
Revolving           1         $0        $0   -    1    -   -  -   -
Other              11     $3,273    $1,479   -    -    -   -  -  11
Total              32     $3,731   $11,660   -   19    -   -  -  13

INQUIRIES              PUBLIC RECORDS     HISTORICAL DELINQUENCIES(count)
6 Month Total    16     EFX    N/A     Account Type  LastDlq  30  60  90+
Elim. same day - 9     XPN    N/A     Real Estate     -      -   -   -
Adjusted Total    7     TUC    N/A     Installment   12/03   12   8  38
New Trades(6 Mos) 0     Last 2yrs N     Revolving     11/98    1   1   4
                                       Other           -      -   -  11
Oldest Trd: 03/88     On File: 06/95     Total         13   9  53

Only Applicant/Co-Applicant Information included in the Summary.

BUREAU SCORE INFORMATION

EFX BEACON 5.0          (APP)=  525 Factor: 00038, 00014, 00018, 00020
 00038 SERIOUS DELINQUENCY, AND DEROGATORY PUBLIC RECORD OR COLLECTION FILED
 00014 LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED
 00018 NUMBER OF ACCOUNTS WITH DELINQUENCY
 00020 LENGTH OF TIME SINCE DEROGATORY PUBLIC RECORD OR COLLECTION IS TOO
       SHORT
 ! Number of Inquiries Adversely Affected the Score

XPN FICO-II             (APP)=  552 Factor:   38,   18,   33,   16
 38 SERIOUS DELINQUENCY AND PUBLIC RECORDS OR COLLECTION FILED
 18 NUMBER OF ACCOUNTS DELINQUENT
 33 PROPORTION OF CURRENT LOAN BALANCE TO ORIGINAL LOAN AMOUNT
 16 INSUFFICIENT OR LACK OF REVOLVING ACCOUNT INFORMATION

TUC FICO Classic 98     (APP)=  575 Factor:  038,  018,  016,  002
 038 SERIOUS DELINQUENCY, AND PUBLIC RECORD OR COLLECTION FILED
 018 NUMBER OF ACCOUNTS WITH DELINQUENCY
 016 LACK OF RECENT REVOLVING ACCOUNT INFORMATION
 002 LEVEL OF DELINQUENCY ON ACCOUNTS
 ! Number of Inquiries Adversely Affected the Score



```
                        End of Decision Maker Report
-----------------------------------------------------------------------
REF:1-01966-27474-0000 03/17/2005        TID:1-01966-27474 03/17/2005 08:35:02
CREDCO Instant Merge Credit Report              Acct: 129719
Prepared for: ACCREDITED HOME LENDERS-SD JA     Notes: 151
Requested: EFX, XPM, TUC - 1                     Delivered: EFX, XPM, TUC
-----------------------------------------------------------------------
App: HALL, CHERYL R                                          San
Curr Addr: 105 TV RD, DOTHAN, AL 36301
-----------------------------------------------------------------------
Account Name/Number (Sources)                      Past Due      Last
   Open      High   Payment   Balance MOP Status Rptd 30 60 90+ MR D.q
-----------------------------------------------------------------------
Joint Accounts:
--------------
  1. PEOPLES BK/395330300XXXX (EFX-420B0000361,TUC1)
  J 06-99   7301   /0         CLOSED I-5 DEL 120  03-02 00 05 07  33 03-02
     Hist:  03-02 51454463324332211132232            3w7
     Ctgy:  AUTO
     AUTO LOAN
     CLOSED

Accounts under Applicant:
-------------------------
  2. THE CR STR/PROVIDIAN-940XXXX (EFX-616TY000111)
  I N/A    672   795      785 O-5 COLL/P&L 10-02 00 00 00   5
     Hist: 10-02 9----                                APP
     Ctgy: COLLECTION                         Term: REV
     ACCT SUBMITTED TO COLLECTION
     PAST DUE PAST $785

  3. PALISADES/HEILI-3HEILIG297XXXX (EFX-666FY00090I)
  I N/A    694   694      694 O-9 COLL/P&L 02-05 00 00 00  20
     Hist: 02-05 9----                                APP
     Ctgy: COLLECTION                         Term: REV
     ACCT SUBMITTED TO COLLECTION
     PAST DUE PAST $694

  4. PALISADES COLLECTION L/PALSHEILIG297XXXX (XPM-YC19839322I,TUC1)
  I 01-03   694   694      694 Y-9 COLL/P&L 02-05  -  - 23
     Hist: 02-05 9999999999999999-9--99-9             APP
     Ctgy: COLLECTION                         Term: REV
     CN: HEILIG MEYERS
     ACCT SUBMITTED TO COLLECTION COLL 04-03
     PAST DUE PAST $694

  5. HOLLOWAY CREDIT SOLUTI/724XXXX (EFX-470FA000361,XPM1,TUC1)
  I 01-03   452   N/A      452 Y-9 COLL/P&L 12-04  -  -   1
     Hist: 12-04 9                                    APP
     Ctgy: COLLECTION                         Term: REV
     CN: WIREGRASS ELECT
     UNPAID
     ACCT SUBMITTED TO COLLECTION COLL 12-04
     PAST DUE PAST $452
```





```
                              Page    * 8
------------------------------------------------------------
REF:1-01966-27474-0000 03/17/2005      TID:1-01966-27474 03/17/2005 OF:35:02
------------------------------------------------------------
Account Name/Number (Sources)                        Past due    Last
      Open    High   Payment  Balance MOP Status  Rptd 30 60 90+ MR Dlq

Accounts under Applicant (continued):
------------------------------------------------------------
6. SMALL LNS/7804 XXXX (EFX-420FP00261!)
! 01-02    399      81      399 I-9 COLL/P&L 02-05 01 01 14  38 12-03
  Hist:  02-05 9111111)11111115555555155               APP
  ACCT SUBMITTED TO COLLECTION COLL 02-05
  CHARGE OFF CHRG $399 CHRG 02-05             P/O
  PAST DUE PAST $399
  PAID - CREDIT LINE CLOSED

7. HOLLOWAY CREDIT SOLUT/474XXXX (EFX-420YA000001,XPN!,TUC!)
! 04-01    187    N/A      187 Y-9 COLL/P&L 12-04  -   -   -   1
  Hist:  12-04 9                                       APP
  Ctgy:  COLLECTION                          Term: REV
  CM: MEDICAL PAYMENT DATA
  UNPAID
  MEDICAL
  ACCT SUBMITTED TO COLLECTION COLL 12-04       WPA
  PAST DUE PAST $187

8. CRDT MGT/2614XXXXX (EFX-682YC05551!,TUC!)
! 03-04    182    N/A      182 Y-9 COLL/P&L 04-04  -   -   -   1
  Hist:  04-04 9                                       APP
  Ctgy:  COLLECTION              P/O            Term: REV
  CM: COMCAST DOTHAN
  UNPAID
  ACCT SUBMITTED TO COLLECTION COLL 04-04

9. HOLLOWAY CREDIT SOLUT/526XXXX (EFX-420YA000001,XPN!,TUC!)
! 10-01     93    N/A       93 Y-9 COLL/P&L 12-04  -   -   -   1
  Hist:  12-04 9                                       APP
  Ctgy:  COLLECTION                          Term: REV
  CM: MEDICAL PAYMENT DATA
  UNPAID
  MEDICAL
  ACCT SUBMITTED TO COLLECTION COLL 12-04       MIA
  PAST DUE PAST $93

10. HOLLOWAY CREDIT SOLUT/519XXXX (EFX-420YA000001,XPN!,TUC!)
! 09-01     93    N/A       93 Y-9 COLL/P&L 12-04  -   -   -   1
  Hist:  12-04 9                                       APP
  Ctgy:  COLLECTION                          Term: REV
  CM: MEDICAL PAYMENT DATA
  UNPAID
  MEDICAL
  ACCT SUBMITTED TO COLLECTION COLL 12-04       MIA   DUA
  PAST DUE PAST $93
```



```
                                    Page  1 B

RUN:1-01966-27474-0000 03/17/2006           TID:1-01966-27474 03/17/2005 08:35:02

Account Name/Number (Source(s)                                   Past Due    Last
              Open       High   Payment   Balance MOP  Status  Rptd  30 6C 90+ MR Dlq

Accounts under Applicant (Continued):

11. HOLLOWAY CREDIT SOLUT1/832XXXX (EFX-42DYAU0B0G1,XPN1,TUC1)
    ( 11-03      93   N/A        93 Y-9 COLL/P&L 12-04  -  -  -  1
    Hist:  12-04 9                                   APP
    Ctgy:  COLLECTION                                Term: REV
    CM: MEDICAL PAYMENT DATA
    UNPAID
    MEDICAL
    ACCT SUBMITTED TO COLLECTION COLL 12-04
    PAST DUE PAST $93

12. SMALL LNS/7804 XXXX (EFX-20FP002611)
    ( 03-02      90        90    59 Y-9 COLL/P&L 02-05 01 01 15  36 12-03
    Hist:  02-05 9111111111111155555555155         APP
    CHARGE OFF CHRG CHRG 02-05
    ACCT SUBMITTED TO COLLECTION COLL 02-05
    PAST DUE PAST $59
    (PAID) - CREDIT LINE CLOSED

13. HOLLOWAY CREDIT SOLUT1/357XXXX (EFX1,XPN-YC1904893I,TJC1)
    ( 10 99     255   N/A       -0- Y-9 COLL/P&L 12-04  -  -  -  3
    Hist:  12-04 9-9                                 APP
    Ctgy:  COLLECTION                                Term: REV
    CM: GRANDMA TOTAL COMMUNICATIONS
    PAID
    ACCT SUBMITTED TO COLLECTION COLL 12-04
    CHARGE OFF PAID CHRG 12-04 PAID 12-04
    ACCT SUBMITTED TO COLLECTION; PAID COLL 12-04

14. HOLLOWAY CREDIT SOLUT1/265XXXX (EFX1,XPN-YC1904893I)
    ( 06-99      38   N/A       N/A  Y-9 COLL/P&L 12-04  -  -  -  3
    Hist:  12-04 9-9                                 APP
    Ctgy:  COLLECTION                                Term: REV
    CM: MEDICAL PAYMENT DATA
    PAID
    MEDICAL
    ACCT SUBMITTED TO COLLECTION COLL 12-04

15. FARMERS FURN/99501278X2236XXXX (TUC-H0528A00211)
    ( 12-99      892    9          CLOSED I-9 COLL/P&L 10-03 00 00 00  46
    Hist:  10-03 9------------------          APP
    Ctgy:  INSTALLMENT SALES CONTRACT
    PAST DUE PAST $154
    CHARGE OFF CHRG $154 CHRG 10-03
    CLOSED
```



Page 8

REF:1-01966-27474-0000 03/17/2005    TID:1-01966-27474 03/17/2005 08:39:02

Account Name/Number (Sources)
                                                          Past due     Last
        Open    High   Payment  Balance MOP  Status  Rptd  30 60 90+ MR Dlq

Accounts under Applicant (continued):

16. FARMER FURN/170I2270XXXX (TUC-N05208N002)
    I 09-99    540    0/        CLOSED I-0 UNRATED  02-01 00 00 00  17
    Hist: 02-01 11111211111111111                              APP
    Ctgy: INSTALLMENT SALES CONTRACT
    CLOSED

17. FRIEDMANS JEWELERS/561821004XXXX (EFX),XPN!,TUC-J01VB8001')
    I 12-01    400    0         CLOSED I-9 COLL/P&L 03-05 01 01 01  39 07-02
    Hist: 03-05 9-9999999999-999999-9999                     APP
    Ctgy: INSTALLMENT SALES CONTRACT
    ACCT SUBMITTED TO COLLECTION COLL 01-05
    CHARGE OFF CHRG $400 CHRG 08-02
    PAST DUE PAST $400

18. PROVIDIAN FINANCIAL/0360C77XXXX (EFX-1E3B8253321,XPN!,TUC!)
    I 03-98    #05    0/        CLOSED R-9 COLL/P&L 07-02 01 01 04  53 11-98
    Hist: 07-02 9---9999999999999999999              Term: REV
    ACCT SUBMITTED TO COLLECTION COLL 07-02
    CHARGE OFF CHRG $671 CHRG 05-98
    CLOSED BY CREDITOR
    PAST DUE PAST $659
    ACCT TRANSFERRED
    ACCT PURCHASED BY ANOTHER LENDER

19. SMALL LNS/7804 XXXX (EFX-420FP00261)
    I 02-02    90    0         CLOSED I-1 CURRENT  05-02 00 00 00  4
    Hist: 05-02 1111                               APP
    PAID - CREDIT LINE CLOSED

20. SMALL LNS/7804 XXXX (EFX-420FP00261)
    I 12-01    80    0         CLOSED I-1 CURRENT  03-02 00 00 00  4
    Hist: 03-02 1111                               APP
    PAID - CREDIT LINE CLOSED

21. SMALL LNS/7804 XXXX (EFX-420FP00261)
    I 11-01    80    0         CLOSED I-1 CURRENT  02-02 00 00 00  3
    Hist: 02-02 111                                APP
    PAID - CREDIT LINE CLOSED

22. SMALL LNS/7804 XXXX (EFX-420FP00261)
    I 10-01    80    0         CLOSED I-1 CURRENT  01-02 00 00 00  4
    Hist: 01-02 1111                               APP
    PAID - CREDIT LINE CLOSED





Hall-Frazier
Record - 000165

03/23/2011 15:14 FAX

Page 1 8

REF:1-01966-27474-0000 03/17/2005 TID:1-01966-27474 03/17/2005 08:35:02

Account Name/Number (Sources) Past due Last
Open High Payment Balance MOP Status Rptd 30 60 90+ MR Dlq

Accounts under Applicant (continued):

23. SMALL LNS/7804 XXXX (EFX-420FP00261)
I 09-01 88 0 CLOSED I-1 CURRENT 12-01 00 00 00 4
Hist: 12-01 1111 APP
PAID - CREDIT LINE CLOSED

24. SMALL LNS/7804 XXXX (EFX-420FP00261)
I 08-01 88 0 CLOSED I-1 CURRENT 10-01 00 00 00 3
Hist: 10-01 111 APP
PAID - CREDIT LINE CLOSED

25. SMALL LNS/7804 XXXX (EFX-420FP00261)
I 07-01 88 0 CLOSED I-1 CURRENT 10-01 00 00 00 4
Hist: 10-01 1111 APP
PAID - CREDIT LINE CLOSED

26. SMALL LNS/7804 XXXX (EFX-420FP00261)
I 06-01 88 0 CLOSED I-1 CURRENT 09-01 00 00 00 4
Hist: 09-01 1111 APP
PAID - CREDIT LINE CLOSED

27. SMALL LNS/7804 XXXX (EFX-420FP00261)
I 04-01 88 0 CLOSED I-1 CURRENT 07-01 00 00 00 4
Hist: 07-01 1111 APP
PAID - CREDIT LINE CLOSED

28. SMALL LNS/7804 XXXX (EFX-420FP00261)
I 11-00 247 0 CLOSED I-1 CURRENT 05-01 00 00 00 7
Hist: 05-01 1111111 APP
PAID - CREDIT LINE CLOSED

29. SMALL LNS/7804 XXXX (EFX-420FP00261)
I 10-00 86 0 CLOSED I-1 CURRENT 01-01 00 00 00 4
Hist: 01-01 1111 APP
PAID - CREDIT LINE CLOSED

30. SMALL LNS/7804 XXXX (EFX-420FP00261)
I 08-00 173 0 CLOSED I-1 CURRENT 01-01 00 00 00 5
Hist: 01-01 11111 APP
PAID - CREDIT LINE CLOSED

31. SMALL LNS/7804XXXX (EFX-420FP00261)
I 12-99 173 0 CLOSED I-1 CURRENT 05-00 00 00 00 6
Hist: 05-00 111111 APP
PAID - CREDIT LINE CLOSED

32. SMALL LNS/7804 XXXX (EFX-420FP00261!)
I 03-00 173 0 CLOSED I-2 DEL 30 09-00 01 00 00 7 09-00
Hist: 09-00 2------ APP



03/25/2011 16:15 FAX

REF::1-01966-27474-0000 03/17/2005    TID:1-01966-27474 03/17/2005 08:35:02

Identification Information:
------------------------
1. HILL, CHERLY  Ssn:                    Age:45 (EFX)
2. HALL, CHERYL  Ssn:               (XPN)
3. HALL, CHERYL R  Ssn:             Dob: 07-01-59 (TUC)

Inquiries made in the last 180 days:
------------------------------------
 1. 03-17-05 FAC   (TUC-Z05635118) (APP)
 2. 03-16-05 TRANSUNION   (EFX-6682605471) (APP)
 3. 03-16-05 TRANSUNION REDIT CR BO   (XPN-XC1972538) (APP)
 4. 03-16-05 TU MRTG DPT   (TUC-I08005270) (APP)
 5. 03-10-05 LANDSAFE   (EFX-1802807517) (APP)
 6. 03-10-05 LANDSAFE CRT   (TUC-I0/183223) (APP)
 7. 03-10-05 LANDSAFECREDIT   (XPN-FN3970658) (APP)
 8. 03-08-05 UITECH   (EFX-180YM10442) (APP)
 9. 03-08-05 GMAC MORTGAGE   (XPN-FN8909276) (APP)
10. 03-08-05 GMAC MTG   (TUC-N05201031) (APP)
11. 03-08-05 LEWIS BRAC   (EFX-420FC00105) (APP)
12. 03-04-05 FA CREDCO   (EFX-1018037243) (APP)
13. 03-04-05 FA CREDCO   (TUC-P01293015) (APP)
14. 03-04-05 FIRST AMER CR SVCS INC   (XPN-FN3YH8260) (APP)
15. 12-14-04 PENN LOAN   (EFX-420FP01047) (APP)
16. 09-26-04 1ST PREMIER   (TUC-B00020123) (APP)

Address Information:
--------------------
1. 395 MALIBU ST
   KINSEY, AL 36303 7761 Rptd 04-95  (XPN) (APP)
2. 395 MALIBU ST
   DOTHAN, AL 36303 Rptd 02-98  (TUC) (APP)
3. 302 TRIM ST
   DOTHAN, AL 36301 Rptd 02-05  (EFX) (APP)
4. 105 TV RD
   DOTHAN, AL 36301 5333 Rptd 08-04  (XPN) (APP)
5. 305 TV RD
   DOTHAN, AL 36301 Rptd 04-04  (TUC) (APP)
6. 541 WALNUT ST BAS
   ELIZABETH, NJ 07201 J126 Rptd 09-94  (XPN) (APP)

AKA Information:
---------------
1. CHERYL, R HALL   (XPN) (APP)
2. DIXON, CHERYL R   (XPN) (APP)
3. DIXON,CHERYL.R   (TUC) (APP)
4. FRAZIER,CHERYL   (TUC) (APP)
5. HILL,CHERLY,R   (TUC) (APP)

Employment Information:
----------------------
1. DISABLED
   OCCUPATION UNKNOWN   (EFX) (APP)



```
--------------------------------------------------------------------
                          Pa    : 0
--------------------------------------------------------------------
REF:1-01966-27474-0000 03/17/2005        TID:1-01966-27474 03/17/2005 08:35:02
--------------------------------------------------------------------

Employment Information (Continued):
-----------------------------------
   2. EBONY EXPRESSIONS E ORANGE, NJ
      OCCUPATION UNKNOWN Rptd 09-94   (XPN) (APP)
   3. GENERAL CIGAR
      OCCUPATION UNKNOWN  (EFX) (APP)
   4. GENERAL CIGAR DOTHAN, AL
      MACH OPERATOR Rptd 08-95  (TUC) (APP)
   5. UNEMPLOYED
      OCCUPATION UNKNOWN  (EFX) (APP)

Miscellaneous Information:
--------------------------
   1. Variation between Inquiry and Onfile address  (EFX) (APP)
   2. Variation between Inquiry and Onfile address  (XPN) (APP)

Decode Directory Information:
-----------------------------
   1. FIRST AMER CR SVCS INC (XPN-3989260)
      (516)82-3400, 333 EARLE OVINGTON BLVD, UNIONDALE, NY 11553
   2. FRIEDMANS JEWELERS (XPN-3318669)
      (800)5(6-9033, 171 CROSSROADS PKWY, SAVANNAR, GA 31408
   3. GMAC MORTGAGE (XPN-8909276)
      (714)800-5871, 3200 PARK CENTER DR STR, COSTA MESA, CA 92626
   4. HOLLOWAY CREDIT SOLUTI (XPN-1984893)
      BY MAIL ONLY, PO BOX 6441, DOTHAN, AL 36302
   5. LANDSAFECREDIT (XPN-3970850)
      (818)563-1962, 155 N LAKE AVE, PASADENA, CA 91101
   6. PALISADES COLLECTION L (XPN-1983922)
      (800)441-9367, 210 SYLVAN AVE, ENGLEWOOD, NJ 07632
   7. PROVIDIAN FINANCIAL (XPN-3206450)
      BY MAIL ONLY, PO BOX 9180, PLEASANTON, CA 94566
   8. TRANSUNION RESID CR NO (XPN-1972539)
      (866)871-0390, PO BOX 21423, INDEPENDENCE, OH 44131

Public Record Information:
--------------------------
No Public Record Information found

Consumer Referral Information:
------------------------------
EFX = EQUIFAX INFORMATION SVCS, PHONE: (800) 685-1111
      P.O. BOX 740241, ATLANTA, GA 30374
XPN = EXPERIAN, PHONE: (888) 397-3742
      P.O. BOX 2002, ALLEN, TX 75013
TUC = TRANS UNION, PHONE: (800) 916-8800
      P.O. BOX 34012, FULLERTON, CA 92834

Prepared By: First American CREDCO
             12395 First American Way
             Poway, CA 92064-0495
             Contact: 800 368 8951    Fax: 866 510 5762
```

P.    t 8

REP:1-01966-27474-0300 03/17/2005          TID:1-01966-27474 03/17/2005 08:35:02

This report contains information supplied by the repositories named above. Its
contents have not been verified by First American CREDCO and may contain
duplicate information. While this report is being used for some real estate
lending purposes, it is not a Residential Mortgage Credit Report as defined by
FNMA, FHLMC, and FHA/VA guidelines.

!!!!! END OF INSTANT MERGE REPORT !!!!!

End of Credit Report

| | |
|---|---|
| 7, 8, 9 - Easements, etc. missing/incorrect | |
| 7, 8, 9 - Condominium clause missing/incorrect | |
| 7, 8, 9 - Gap Coverage clause missing | |
| 7, 8, 9 - Florida clause missing | |
| 7, 8, 9 - West Virginia clause missing | |

**Hall-Frazier**
**Record - 000169**

(Printed on Mar 25, 2005 @4:16:18)
A.

US Department of Housing and Urban Development

OMB No. 2502-0265

# SETTLEMENT STATEMENT

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1. [ ] FHA   2. [ ] FmHA   3. [ ] Conv Unins. | | 6. File Number: 05-2813 | 7. Loan Number: 0503172917 | 8. Mortgage Ins Case #: |
| 4. [ ] VA   5. [X] Conv. Ins. | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

D. NAME AND ADDRESS OF BORROWER/BUYER:
  Cheryl Hall 105 TV Road Dothan, AL 36301

E. NAME AND ADDRESS OF SELLER:

F. NAME AND ADDRESS OF LENDER:
  Home Funds Direct 1130 Northchase Parkway, Suite 200 Marietta, GA 30067

G. PROPERTY LOCATION (Brief Legal):
  105 TV Road Dothan, AL  36301

| H. SETTLEMENT AGENT: | PLACE OF SETTLEMENT: |
|---|---|
| Swafford and Hays Settlement Services, Inc.  865-539-1450 Contact: Janet Shelley | 9041 Executive Park Drive, Suite 400 Knoxville, TN  37923 |
| I. SETTLEMENT DATE: 03/25/2005 | DISBURSEMENT DATE: 03/30/2005 |

| J. SUMMARY OF BORROWER(S) TRANSACTION | | K. SUMMARY OF SELLER(S) TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER : | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 13,896.39 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 13,896.39 | 420. Gross Amount Due Seller | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER : | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 56,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller in advance | | Adjustments for items unpaid by Seller in advance | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 56,000.00 | 520. Total Reduction Amount Due Seller | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER : | | 600. CASH AT SETTLEMENT TO/FROM SELLER : | |
| 301. Gross Amount due from borrower (line 120) | 13,896.39 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 56,000.00 | 602. Less reductions in amt. due seller (line 520) | |
| 303. Cash [ ]From  [X]To  Borrower | 42,103.61 | 603. Cash [X]To  [ ]From  Seller | 0.00 |

SUBSTITUTION FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I on line 401(or if 401 is asterisked, line 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER, you are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller(s):

**L.** | | **SETTLEMENT CHARGES** | | |

| | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | | |
| 701. Listing Realtor Commission | | | |
| 702. Selling Realtor Commission | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee  To: Home Funds Direct | | 1,960.00 | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee  To: Alabama Appraisal Service | | 300.00 | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Assumption Fee | | | |
| 808. Processing Fee  To: Home Funds Direct | | 500.00 | |
| 809. Underwriting fee  To: Home Funds Direct | | 500.00 | |
| 810. Document Preparation Fee | | | |
| 811. Zone Determination Fee  To: Home Funds Direct | | 9.50 | |
| 812. Tax Service Fee  To: Home Funds Direct | | 66.00 | |
| 813. Appraisal Review Fee  To: Home Funds Direct | | 250.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from Odd Days  To: Home Funds Direct | | 22.40 | |
| 902. Mortgage Insurance Premium for | | | |
| 903. Hazard Insurance Premium for  To: State Farm | | 1,068.00 | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard insurance  To: Home Funds Direct | | 356.00 | |
| 1002. Mortgage insurance | | | |
| 1003. City property taxes | | | |
| 1004. County property taxes  To: Home Funds Direct | | 313.25 | |
| 1005. Annual assessments | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment  To: Home Funds Direct | | -134.25 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | | 225.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc. | | 250.00 | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance  To: Transnation Title Insurance Company | | 200.00 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's coverage $67,500.00 @ $200.00 | | | |
| 1110. Owner's coverage $0.00 | | | |
| 1111. Endorsements  To: Swafford and Hays Settlement Services, Inc | | 50.00 | |
| 1112. | | | |
| 1113. Overnight Courier & Handling Fees | | | |
| **1200. GOVT. RECORDING, TRANSFER, AND SERVICE FEES** | | | |
| 1201. Recording fees and Service fees:  To: Clerk of the Court | | 120.00 | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $84.00 To: Clerk of the Court | | 84.00 | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Payoff  To: Army Aviation Center F C U  good thru 4/24 | | 4,594.49 | |
| 1304. | | | |
| 1305. Payment  To: The CR STR/Providian | | 785.00 | |
| 1306. Payment  To: Palisades | | 694.00 | |
| 1307. Payment  To: Holloway Credit | | 452.00 | |
| 1308. Payment  To: Small LNS | | 399.00 | |
| 1309. Payment  To: Crdi MGT. | | 182.00 | |
| 1310. Payment  To: Friedmans Jewelers | | 400.00 | |
| 1311. | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | **13,896.39** | **0.00** |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWERS:                                                           SELLER(S):

(s) Hall

UD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

**Hall-Frazier**
**Record - 000171**

_Jane Carcillo_        _03/28/08_

Broker and Hays Settlement Services, Inc.          Date

NOTE: Taxes have been prorated based on taxes for the year. Any re-proration will be handled between the buyer and seller. All utility bills (water, sewer, electric, cable and telephone fees) have been paid or will be paid upon receipt of final bill.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

### EXHIBIT A

Situated in Dothan, Houston County, State of AL and being described as follows:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #10-09-31-4-003-001.007

BEING the same property conveyed to Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns, by deed from Samuel B. Pierce, Jr., Secretary of Housing and Urban Development of Washington, D.C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, dated 07-19-85, recorded 07-26-85, in Book 311, page 324, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Kevin Lorenzo Dixon, II, by deed from Louis E. Sowers and wife, Fay Sowers, dated 04-02-03, recorded 04-03-03, in Book 598, page 34, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Cheryl Hall, by deed from Kevin Lorenzo Dixon, II, a unmarried man, dated 03-02-05, recorded 03-11-05, in Book 622, page 443, in the Office of the Judge of Probate of Houston County, AL.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

105 TV Road, Dothan, AL  36301

## SHORTFALL AFFIDAVIT

The undersigned hereby consent and agree that in the event there are any shortfalls in any amounts payable to entities that are being paid in the course of this transaction, and those entity requests additional funds, then the undersigned consent as follows:

1. The undersigned will immediately and fully pay to the entity all funds necessary to pay the amount in full. If the undersigned fails to pay      said sums within seven business days, the undersigned will be liable for liquidated damages on an amount equal to the shortfall.

2. This obligation shall be a continuing obligation and may apply to one or more lenders.

3. In the event that this document must be enforced, the undersigned agrees to reimburse and hold harmless the lender from whom the undersigned this date is receiving funds, from any and all costs of enforcement of this agreement including reasonable attorneys fees and cost of enforcement.

Cheryl Hall

## NOTICE and WAIVER OF TITLE INSURANCE

Borrower(S):      Cheryl Hall        Date: _3-25-05_

Property Address:  105 TV Road, Dothan, AL  36301

Lender:              Home Funds Direct

I/We have been notified by the person conducting or handling the settlement of this transaction that I/We may obtain owner's title insurance coverage.

_____  I/We desire to purchase owner's title insurance coverage.  Further information will be furnished upon my request.

_____  I/We do not desire to purchase owner's title insurance.

I/We have read the above Notice and Waiver and acknowledge receiving a copy by signing below.

Date: _3-25-05_ _____        Date: _____

## COMMITMENT

State: AL County: Houston

Order #: 05-2813

| Plant #: | Commitment #: | Effective Date & Time: | Reinsurance #: | Agent #: |
|---|---|---|---|---|
| * | F52-1069870 | March 18, 2005 @ 8:00am | | 05-2813 |

### Schedule A

1. Policy or Policies to be issued:
   ALTA LOAN (10-17-92)
   Proposed Insured Loan:                                    Amount

   **Home Funds Direct, ISAOA, ATIMA**                       **$77,200.00**

   2nd Proposed Insured Loan:                                Amount

   **None**

   ALTA OWNER'S (10-17-92)
   Proposed Insured Owners:                                  Amount

   **Cheryl Hall**

2. The estate or interest in the land described or referred to in the Commitment and covered herein is:

   **Fee Simple**

   and is at the effective date hereof vested in:

   **Cheryl Hall**

3. The land is described as follows:

   105 TV Road, Dothan, AL  36301

_[handwritten: 05-2813   Taxes 334-677-4712   #8 payoff   #9 release   #10,11 Not ours]_

_[signature]_ James W. Swafford II

Countersigned Authorized Signatory

Issued By: *05-2813
Swafford and Hays Settlement Services, Inc.
9041 Executive Park Drive, Suite 400
Knoxville, TN 37923

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages

Underwriter: Transnation Title Insurance Company

Hall-Frazier
Record - 000176

## COMMITMENT

### Schedule B - Section 2

**Exceptions**

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Rights or claims of parties in possession not shown by the Public Records.

3. Encroachments, overlaps, boundary lines disputes, and other matters which would be disclosed by an accurate survey and inspection of the premises.

4. Easements or claims of easements not shown by the Public Records.

5. Taxes or special assessments which are not shown as existing liens by the public records.

6. Taxes and assessments for the year 2005 and subsequent years, which are not yet due and payable.

7. Subject to any restrictions, easements, setback lines, etc., as shown of record in Plat book 7, page 23, in the Office of the Judge of Probate of Houston County, AL.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

Commitment #: F52-1069870                                                    File #: 05-2813

## EXHIBIT A

Situated in Dothan, Houston County, State of AL and being described as follows:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #10-09-31-4-003-001.007

BEING the same property conveyed to Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns, by deed from Samuel B. Pierce, Jr., Secretary of Housing and Urban Development of Washington, D.C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, dated 07-19-85, recorded 07-26-85, in Book 311, page 324, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Kevin Lorenzo Dixon, II, by deed from Louis E. Sowers and wife, Fay Sowers, dated 04-02-03, recorded 04-03-03, in Book 598, page 34, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Cheryl Hall, by deed from Kevin Lorenzo Dixon, II, a unmarried man, dated 03-02-05, recorded 03-11-05, in Book 622, page 443, in the Office of the Judge of Probate of Houston County, AL.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

105 TV Road, Dothan, AL 36301

## Southern Land & Title, L.L.C.

Through Date: 3-18-05

Name Cheryl R. Hall   Ad ss: 105 TV Rd

City Dothan  County Houston  state Al  zip 36301

### Vesting Deed
### (Always Need Out-of-P) nty Warranty Deed)

Grantee (Current Owner) Cheryl Hall

Grantor Kevin Lorenzo Dixon II, an unmarried man

Dated Date 3-2-05  Recorded Date 3-11-05  Consideration (Amt) 10⁰⁰

Book 622  Page 443  Instrument No.

#### PUD/Condominium/Waterfront Information Circle Below
PUD  Y  N  Condo  Y  f  Waterfront  Y  N

Name

Recorded Date _____ Book _____ Page _____

#### Tax Information
Parcel I.D. No. 0-09-31-4-003-001.007  Tax Year 04  Amount $ 496.62   due plus late fees

Date Paid _____ Are There Delinquent Tax s? No  Yes ✓ Amount $

Appraised Value Land 7,100  Improvements 82,700  Total 89,800⁰⁰

#### Mortgage Number 1
#### (If no open mortgages report satisfied, arrange to institutional lender)

Exact Name(s) of Borrower(s) (None) I did not find a mortgage.

Lender _____ MERS as Nominee? Yes _____ No _____

Book _____ Page _____ Dated Date _____ Recorded Date _____

Amount $ _____ Maturity Date _____ Open Ended? Yes _____ No _____

Last Assignment To _____ MERS As Nominee? Yes _____ No _____

Dated Date _____ Recorded Date _____ Book _____ Page _____

**Mortgage 1 number 2**

Exact Name(s) of Borrower(s) _____

Lender _____ MERS as Nominee? Yes ____ No ____

Book ____ Page ____ Dated Date ____ Recorded Date ____

Amount $ ____ Maturity Date ____ Open Ended? Yes ____ No ____

Last Assignment To ____ MERS as Nominee? Yes ____ No ____

Dated Date ____ Recorded Date ____ Book ____ Page ____

**Mortgage 1 number 3**

Exact Name(s) of Borrower(s) _____

Lender _____ MERS is Nominee? Yes ____ No ____

Book ____ Page ____ Dated Date ____ Recorded Date ____

Amount $ ____ Maturity Date ____ Open Ended? Yes ____ No ____

Last Assignment To ____ MERS As Nominee? Yes ____ No ____

Dated Date ____ Recorded Date ____ Book ____ Page ____

\* 4 gml

**Judgment/Tax Lien/UCC #**

① Type Judgment Debtor Cheryl R Hall Creditor Army Aviation Center FCU
Date 6-15-98 Recorded Date 7-7-98 Book 89 Page 185 Amount $ 3,558.26
Case or File No. DV 98 000128

② Type Judgment Debtor Cheryl Ann Hall Creditor Michael T. Mesiwarn DBA Wholesale Auto
Date 12-16-03 Recorded Date 1-7-04 Book 103 Page 278 Amount $ 3,000 00
Case or File No. SM 2003 00 1994

③ Judgment Debtor: Kevin Dixon DBA Eisoh's Creditor: Inland Southern Management
dated 10-7-04   filed 11-12-04   Amt 15172.47   — see copy

④ Department of Revenue Book 106 / 420
dated 12-13-04   US - Kevin Dixon
filed 12-14-04   Amt 431.65   Book 106 / 587

### Chain of Title Sheet

Volume: 558  Page: 34  Type of Deed: Warranty Deed

Grantee: Kevin Lorenzo Dixon, II

Grantor: Louis E. Sowers + wife, Fay Sowers

Date: 4-2-03  Date Recorded: 4-3-03

Volume:_____ Page:_____ Type of Deed:_____

Grantee:_____

Grantor:_____

Date:_____ Date Recorded:_____

Volume:_____ Page:_____ Type of Deed:_____

Grantee:_____

Grantor:_____

Date:_____ Date Recorded:_____

Volume:_____ Page:_____ Type of Deed:_____

Grantee:_____

Grantor:_____

Date:_____ Date Recorded:_____

Use Additional Chain Sheet(s) As Needed

### Easements/Restrictions

Hall-Frazier
Record - 000181

## WARRANTY DEED

This Deed prepared without benefit of Title Opinion or Survey

STATE OF ALABAMA   }
HOUSTON COUNTY   }           KNOW ALL MEN BY THESE PRESENTS

That in consideration of ***Ten Dollars*** and other good and valuable consideration to the undersigned GRANTOR, in hand paid by the GRANTEE herein, the receipt whereof is acknowledged, I,

KEVIN LORENZO DIXON, II, a unmarried man
whose address is 105 Madison Lane, Headland, AL 36345

(herein referred to as GRANTOR), grant, bargain, sell and convey unto:

Cheryl Hall
whose address is 105 TV Road, Dothan, AL 36301

(herein referred to as GRANTEE), his heirs and assigns, all of my interest in the following described real estate situated in Houston County, Alabama, to-wit:

Lot 3, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat Book 7, Page 33, in the Office of the Judge of Probate, Houston County, Alabama.

Subject to:
1.   Ad valorem taxes which may be due now or subsequent thereto;
2.   Any applicable zoning ordinances;
3.   Easements, restrictions, reservations, right of way and set back lines of record;
4.   Mineral and mining rights not owned by Grantor(s).

THE ABOVE REFERENCED PROPERTY IS NOT THE HOMESTEAD OF THE GRANTOR(S).
TO HAVE AND TO HOLD to the said GRANTEE, to his heirs and assigns forever.

And I do, for myself and for my heirs, executors and administrators, covenant with said GRANTEE, his heirs and assigns, that I am lawfully seized in fee simple of said premises; that it is free from all encumbrances, unless otherwise stated above; that I have a good right to sell and convey the same as aforesaid; that I will, and my heirs, executors and administrators shall warrant and defend the same to the said grantee, his heirs and assigns forever, against the lawful claims of all persons.

In WITNESS WHEREOF, I have hereunto set my hand and seal this 2nd day of March, 2005.

_____
KEVIN LORENZO DIXON, II

STATE OF ALABAMA
HOUSTON COUNTY

I, the undersigned authority, a Notary Public in and for said County and State, hereby certify that KEVIN LORENZO DIXON, II, whose name is signed to the foregoing document and who is known to me, acknowledged before me this date, that being informed of the conveyance, he has executed the same voluntarily on the day the same bears date.

Given under my hand and seal this the 2nd day of March, 2005.

_____
Notary Public
My Commission Expires: 7-15-2008

This Instrument Prepared By:                       Send Tax Notice To:

J. Christopher Capps                                Cheryl Hall
Capps & Corbin, P. C.                              105 TV Road
179 S. Oates St., Suite 2, Dothan, AL 36301        Dothan, AL 36301
(334)673-7994

03/23/2005  12:57  2564133255          S L & T. L. L. C.          PAGE 02

## Chain of Title Sheet

Volume: 598  Page: 34       Type of Deed: Warranty Deed

Grantee: Kevin Lorenzo Dixon, II

Grantor: Louis E. Sowers twi E. Fay Sowers

Date: 4-2-03          Date Recorded: 4-3-03

Volume: 311  Page: 324      Type of Deed: Survivorship

Grantee: Louis F. Sowers + Fay Sowers

Grantor: Secretary of Housing + Urban Development

Date: 7-19-85         Date Recorded: 7-26-85

Volume: ___  Page: ___       Type of Deed: ___

Grantee: ___

Grantor: ___

Date: ___          Date Recorded: ___

Volume: ___  Page: ___       Type of Deed: ___

Grantee: ___

Grantor: ___

Date: ___          Date Recorded: ___

Use Additional Chain Sheet (s) As Needed

Easements/Restrictions

**Hall-Frazier**
**Record - 000183**

This instrument was prepared by:

 HALL, SMITH & JONES
Attorneys at Law
P. O. Box 1748
Dothan, Alabama 36302

**WARRANTY DEED**

STATE OF ALABAMA,
HOUSTON COUNTY.

KNOW ALL MEN BY THESE PRESENTS; That in consideration of Ten
Dollars and other valuable consideration to the undersigned
Grantor, in hand paid by the Grantee herein, the receipt whereof is
acknowledged, LOUIS K. SOWERS and wife, FAY SOWERS, (herein
referred to as Grantor, whether one or more), grant, bargain, sell
and convey unto ERVIN LORENZO DIXON, II, whose mailing address is
133 TV ROAD, DOTHAN, AL 36301, (herein referred to as Grantee,
whether one or more), the following described real estate situated
in Houston County, Alabama, to-wit:

Lot 3, Block "C", of the Third Addition to Television
Heights Subdivision in the City of Dothan, Alabama, as
found recorded in Plat Book 7, Page 23, in the Office of
the Judge of Probate of Houston County, Alabama.
Together with all improvements thereon.

THIS CONVEYANCE IS SUBJECT TO THE FOLLOWING:

1.  AD VALOREM TAXES WHICH MAY BE DUE NOW OR SUBSEQUENT
    HERETO;
2.  ANY APPLICABLE ZONING ORDINANCES;
3.  EASEMENTS, RESTRICTIONS, RESERVATIONS, RIGHT OF WAY
    AND SET BACK LINES OF RECORD;
4.  MINERAL AND MINING RIGHTS NOT OWNED BY GRANTOR.

TO HAVE AND TO HOLD, to the said Grantee, his, her or their
heirs and assigns forever.

And I (we) do, for myself (ourselves) and for my (our) heirs,
executors and administrators, covenant with said grantee, his, her
or their heirs and assigns, that I am (we are) lawfully seized in
fee simple of said premises; that they are free from all
encumbrances, unless otherwise stated above; that I (we) have a
good right to sell and convey the same as aforesaid; that I (we)
will, and my (our) heirs, executors and administrators shall
warrant and defend the same to the said grantee, his, her or their
heirs and assigns forever, against the lawful claims of all
persons.





CVL0312

ALABAMA JUDICIAL DATA CENTER
HOUSTON COUNTY
CERTIFICATE OF JUDGEMENT

DV 98 000128.00
M. JOHN STEENSLAND

IN THE DISTRICT COURT OF HOUSTON COUNTY

ARMY AVIATION CENTER F C U VS CHERYL R HALL [redacted]

DEFENDANT

HALL CHERYL R
295 MALIBU ST

KINSEY , AL 36303-0000

PARTY'S ATTORNEY:

I, JUDY BYRD , CLERK OF THE ABOVE NAMED COURT HEREBY CERTIFY THAT ON 06/15/98 PLAINTIFF, ARMY AVIATION CENTER F C U RECOVERED OF DEFENDANT IN SAID COURT A JUDGEMENT WITHOUT WAIVER OF EXEMPTIONS FOR THE SUM OF $3,550.26 DOLLARS PLUS $88.00 DOLLARS COURT COSTS. AND THAT THE PLAINTIFF'S ATTORNEY(S) OF RECORD WAS: MATH, LEONARD N

GIVEN UNDER MY HAND THIS DATE 06/15/98

Judy Byrd
CLERK: JUDY BYRD
114 N OATES PO DRAWR 6406
DOTHAN, AL 36302
(334) 677-4867

OPERATOR: JOS
PREPARED: 06/15/98

$4,566.90 balance today faxing P/O

JUDGE 09 185
Recorded In Above Book and Page
07/02/1998 10:27AM
Luke Cooley
Judge of Probate
Houston County, Alabama

PLAINTIFF'S ATTORNEY:

SPJ Fee 5.00
Recording Fee 3.50
TOTAL 8.50

Pd

MATH, LEONARD N
P O BOX 230759
1800-311-4061
MONTGOMERY AL 36123

800-311-4061
+Alice Harris
left Message 3-23 @ 4:24 pm

**Hall-Frazier**
**Record - 000186**

D/B
7-1-59

Credit Report
11-15-1960
1976
419-98-
3559

Donna
334.702
9113

AVEQ212                    ALABAMA JUDICIAL DATA CENTER
                                    HOUSTON COUNTY
                           CERTIFICATE OF JUDGEMENT          SM 2003 001994.00
                                                             M. JOHN STEENSLAND

        IN THE DISTRICT COURT OF HOUSTON COUNTY
MICHAEL T MCGIVERN DBA WHOLESALE AUTO VS CHERYL ANN HALL AKA ETAL

        DEFENDANT                                PARTY'S ATTORNEY
HALL CHERYL ANN AKA
CHERYL A HALL DUNN ETAL
384 E SAUNDERS RD #P-104
DOTHAN   ,AL 36301-0000

1. JUDY BYRD       , CLERK OF THE ABOVE NAMED COURT HEREBY
CERTIFY THAT ON 12/16/2003 PLAINTIFF, MCGIVERN MICHAEL T      RECOVERED
OF DEFENDANT IN SAID COURT A JUDGEMENT FOR THE
SUM OF     $3,000.00 DOLLARS PLUS       $113.00 DOLLARS COURT COSTS, AND
THAT THE PLAINTIFF'S ATTORNEY(S) OF RECORD WAS: *** PRO SE ***

GIVEN UNDER MY HAND THIS DATE 12/16/2003

                                        Judy Byrd
                                    CLERK JUDY BYRD
                                    PO BA 6406, 14 N OATES ST
                                    DOTHAN, AL  36302
                                    (334) 677-4867

PREPARED: YBB
PREPARED  12/16/2003

        PLAINTIFF'S ATTORNEY

+ 334.702 9113

MCGIVERN MICHAEL T
DBA WHOLESALE AUTO
384 E SD RD 183
DOTHAN      ,AL  36301-0000

Donna      4-23
$3,124.00
    652· South Oates St.
    Dothan, AL  36301

**Hall-Frazier**
**Record - 000187**

AV680318                         ALABAMA JUDICIAL DATA CENTER
                                        HOUSTON    COUNTY
                                CERTIFICATE OF JUDGEMENT
                                                           CV 2004-000216.00
                                                JERRY M. WHITE

                         IN THE CIRCUIT COURT OF HOUSTON    COUNTY
INLAND SOUTHERN MANAGEMENT CORP VS KEVIN DIXON DBA ELISAH'S

        DEFENDANT                              PARTY'S ATTORNEY

        DIXON KEVIN AN INDIVIDUAL DB
        108 MELISSA LANE
        HEADLAND   .AL 36345-0000

        I, JUDY BYRD          . CLERK OF THE ABOVE NAMES COURT HEREBY
CERTIFY THAT ON 10/05/2004 PLAINTIFF, INLAND SOUTHERN MANAGEMENT RECOVERED
OF DEFENDANT IN SAID COURT A JUDGEMENT WITHOUT WAIVER OF EXEMPTIONS FOR THE
SUM OF     $134,172.47 DOLLARS PLUS       $198.00 DOLLARS COURT COSTS, AND
THAT THE PLAINTIFF'S ATTORNEY(S) OF RECORD WAS:  LEE HEATHER ANN

GIVEN UNDER MY HAND THIS DATE 10/07/2004

                                         _Judy Byrd_
                                        CLERK/JUDGE BYRD
                                        DOTHAN AL  36302

OPERAID: LIL
PREPARED: 10/07/2004

        PLAINTIFF'S ATTORNEY:

        LEE HEATHER ANN
        110C SOUTHTRUST TOWER
        420 NORTH 20TH STREET
        BIRMINGHAM AL  35203



STATE OF ALABAMA
DEPARTMENT OF REVENUE
Montgomery, Alabama 36132

CYNTHIA UNDERWOOD

G. THOMAS SURTEES
Commissioner

LEWIS A. EASTERLY

NOTICE OF LIEN FOR TAXES

STATE OF ALABAMA
—vs—

DIXON KEVIN
RIZARD
105 KELISKA LN
HEADLAND, AL 36345-5210

TIME    14:37
Recorded in Above Book and Page
05/14/2004, Original 50
Lana Inslee
Judge of Probate
Houston County, Alabama

REFERENCE #: 0000094021
KIND OF TAX: SALES TAX
ACCOUNT NUMBER: R500 63376
COUNTY: HOUSTON
AMOUNT OF LIEN: 491.83
TAX PERIOD: OCTOBER 2003 - JANUARY 2004

As provided by Sections 40-1-2 and 40-29-30, et seq., Code of Alabama 1975,
the Alabama Department of Revenue certifies that the above named Taxpayer is
indebted to the Department of Revenue in the above amount. The State claims a
lien upon all property and rights to property belonging to said taxpayer.

Please record this notice in the real property records and return it to the
address shown below with endorsement and recording date.
ENTERED: 12-13-2004    (TDC)

_James R. Bowen_
ASSESSMENT OFFICER

ALABAMA DEPARTMENT OF REVENUE
ASSESSMENT SECTION SALES AND USE TAX
P.O. BOX 327750
MONTGOMERY, ALABAMA 36132-7720
TELEPHONE (334)242-1360

Recording Fee    $.00

FORM 40-29-0004    "AN AFFIRMATIVE ACTION/EQUAL OPPORTUNITY EMPLOYEE"

**SOUTHERN LAND & TITLE, L.L.C.**
406 South 2nd Street Gadsden, AL 35901
P. O. Box 1665 Gadsden, AL 35902

Norman R. Dasinger, Ed.D.
Jason E. Knowles, J.D.

Telephone 256-543-1361
Fax 256-543-1377
solandtitle@microxl.com

### FACSIMILE COVER SHEET

TO: _Marette_

FAX NO: _888-272-2916_

DATE: _3-23-05_

RE: _Cheryl R. Hall_    _#05-2813_
_Houston County, Al_

TOTAL PAGES: _3_

COMMENTS:

Chain of Title + deed to make

24 months

Thanks!
Jana

*Swofford & Hays Services, Inc*
*"Professionalism With Integrity"*
*9941 Executive Park Dr. / Suite 400/ Knoxville, TN 37923*
*Phone: 1-888-272-2915 Fax: 1-865-539-2483*
*Toll Free Fax : 1-888-272-2916*

File Number: 05-2813

Date: 3/18/2005

SHSS Contact: Abstract Department

Abstractor: Southern Land & Title     Phone: 256-543-1361     Fax: 256-543-1377

Please do Current Search on the following: MUST INCLUDE A 24 MONTH CHAIN OF TITLE
(If borrower has not been vested on title for 24 months, MUST include a copy of previous deed).

Borrower: Cheryl R. Hall          S.S. #: 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

Co-Borrower:             S.S. #:

Address: 105 TV Road

City: Dothan    State: AL   Zip: 36301

County: Houston

Comments:

*The Following is required on each order:*

-   Signature at the bottom confirming receipt of order within 2 hours along with fee that will be
    charged.
-   Search to be **COMPLETED** within 48 hours or call placed to SHSS contact listed above
    with status.
-   Weekly statements **MUST** be sent via U.S. Mail, ATTN: Accounting

*DOCUMENTS NEEDED WITH SEARCH:*

-   Need **COMPLETE** Copies of Current Vesting Deed ( see above for 24 month requirement).
    ALL Open Mortgages, ALL Judgments, ALL Liens, Easements, Rights of Ways, Agreements,
    Assignments, etc. *[MUST INCLUDE FIRST TWO PAGES AND LAST TWO PAGES OF
    MORTGAGES, AND ALL COPIES OF RELEVANT OTHER DOCUMENTS].*
-   Copies of Probates, Wills, Bankruptcies and Final Judgments of Divorce, if found.
-   Copies of Trust if found , especially in Vesting
-   Tax Bill and *ALL* amounts of Taxes and Dates they are Due. ALL delinquent issues must also
    be included.
-   Effective date *MUST* be on the abstractors write-up report.
-   (NO EXCEPTIONS)

THE SEARCH MUST BE TO US IN 48 HOURS OR A CALL PLACED.  ALL TAX
INFORMATION AND COPIES OF LIENS MUST BE PROVIDED. IF NOT WE WILL
DOC THE INVOICE BY 50% (Per Contract).

Received by: _____     Date / Time: 3-21-05 _____

Fee for Search: $65.          11 pages
                $7.-          Thanks!
                $72.-

**Swafford & Hays Services, Inc**
*"Professionalism With Integrity"*
*9041 Executive Park Dr. / Suite 400/ Knoxville, TN 37923*
*Phone: 1-888-272-2915  Fax: 1-865-539-1483*
*e-mail: s.kelly@shssincorporated.com*

RECEIVED
MAR 18 2005

05-2813

Date: March 18, 2005

SHSS Contact: Abstract Department

Order From:

Company: HOME FUNDS DIRECT

Address: 1130 NORTHCHASE PARKWAY, SUITE 200

City: MARIETTA          State: GA          Zip: 30067

Contact: KIM STEVENSON

Phone: 770-541-5343

Fax: 866-501-3001

E-mail: KISTEVENSON@HOMEFUNDSDIRECT.COM

Please do Current Owner Search on the following:

Borrower: **CHERYL R. HALL**          S.S. #: ▮▮▮▮▮

Home Phone: 334-792-3682          Work Phone:

Co-Borrower:          S.S. #:

Home Phone:          Work Phone:

Address: **105 TV ROAD**

City: **DOTHAN**          State: **AL**          Zip: **36301**

County: **HOUSTON**

Marital Status: ☐ Married   ☐ Divorced   ☒ Separated   ☐ Single

Type of loan: ☒ 1ST   ☐ 2nd   ☐ Home Equity

Is/Was this a land contract?   ☐ Yes   ☒ No

Loan Amount: $77,200

Comments: 2 YEAR CHAIN OF TITLE
PLEASE SEND A TAX CERT & FEE SHEET

*Swafford & Hays Services, Inc*
*"Professionalism With Integrity"*
*9041 Executive Park Dr. / Suite 400/ Knoxville, TN 37923*
*Phone: 1-888-272-2915  Fax: 1-865-539-1483*
*Toll Free Fax : 1-888-272-2916*

**File Number:** 05-2813

**Date:** 3/18/2005

**SHSS Contact:** Abstract Department

**Abstractor:** Southern Land & Title    **Phone:** 256-543-1361    **Fax:** 256-543-1377

**Please do Current Owner Search on the following: MUST INCLUDE A 24 MONTH CHAIN OF TITLE**
**(If borrower has not been vested on title for 24 months, MUST include a copy of previous deed).**

**Borrower:** Cheryl R. Hall          **S.S. #** ▮▮▮▮▮

**Co-Borrower:**          **S.S. #:**

**Address:** 105 TV Road

**City:** Dothan    **State:** AL    **Zip:** 36301

**County:** Houston

**Comments:**

*The Following is required on each order:*

- Signature at the bottom confirming receipt of order within 2 hours along with fee that will be charged.
- Search to be **COMPLETED** within 48 hours or call placed to SHSS contact listed above with status.
- Weekly statements **MUST** be sent via U.S. Mail, ATTN: Accounting

*DOCUMENTS NEEDED WITH SEARCH:*

- Need *COMPLETE* Copies of Current Vesting Deed ( see above for 24 month requirement), ALL Open Mortgages, ALL Judgments, ALL Liens, Easements, Rights of Ways, Agreements, Assignments, etc. *[MUST INCLUDE FIRST TWO PAGES AND LAST TWO PAGES OF MORTGAGES, AND ALL COPIES OF RELEVANT OTHER DOCUMENTS].*
- Copies of Probates, Wills, Bankruptcies and Final Judgments of Divorce, if found.
- Copies of Trust if found , especially in Vesting
- **Tax Bill** and *ALL* amounts of Taxes and Dates they are Due. ALL delinquent taxwes must also be included.
- Effective date *MUST* be on the abstractors write-up report.
- **(NO EXCEPTIONS)**

**THE SEARCH MUST BE TO US IN 48 HOURS OR A CALL PLACED.  ALL TAX**
**INFORMATION AND COPIES OF LIENS MUST BE PROVIDED. IF NOT WE WILL**
**DOC THE INVOICE BY 50% (Per Contract).**

Received by:_____    Date / Time:_____

Fee for Search:_____

**Hall-Frazier**
**Record - 000193**

**Mazet Mattingly**

| | |
|---|---|
| **From:** | Mazet Mattingly |
| **Sent:** | Friday, March 18, 2005 2:25 PM |
| **To:** | 'solandtitle@microxl.com' |
| **Subject:** | Cheryl Hall |

AbstractOrderForm
.pdf

Please respond to            this e-mail with a confirmation that you received this order.
Thanks
File #: 05-2813

1

Blank                          ⌐              ⌐                    Page 1 of 1

**Mazet Mattingly**

To:      klstevenson@homefundsdirect.com
Subject: Cheryl Hall

Confirmation of title request--Thank you for your order! All orders received by 4pm will be processed the same business day. However, 11am is the cut off time for most abstractors  Please adjust your TAT accordingly.

Again Thank you for your order and have a nice day.

Mazet Mattingly
Swafford & Hays Settlement Services, Inc.
Senior Of Abstract Dept.
Ph:  888-272-2915  EXT. 613 or 865-934-0613
Fax:  865-539-1483 or 888-272-2916

3/18/2005

IN WITNESS WHEREOF, I (we) have hereunto set my (our) hand(s) and seal(s) this 2nd day of April, 2003.

_Louis E. Sowers_
LOUIS E. SOWERS

_Fay Sowers_
FAY SOWERS

STATE OF ALABAMA,
HOUSTON COUNTY.

I, the undersigned authority, a Notary Public in and for said county, in said State, hereby certify that LOUIS E. SOWERS and FAY SOWERS, whose name(s) is/are signed to the foregoing conveyance and who is/are known to me, acknowledged before me on this day, that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this 2nd day of April, 2003.

NOTARY PUBLIC
My Commission Expires: 7/14/05

03/25/2011 13:28 FAX



**Home Funds**
D I R E C T
1130 Northchase Parkway Suite 200
Marietta, GA. 30067-6420
Telephone:(866) 539-7025
Fax:    (866) 539-7036

**Loan Status**
Borrower: HALL, CHERYL
Co-Borrower:
Loan Number: 0503172917
Team: 351 - ATL001

Date: 03/24/2005 1:17 pm

05-2813

| Subject Property: | Type: | SFR - Detached | Doc Type: | Full |
| 105 TV ROAD | Occupancy: | Owner Occupied | Purpose: | Full Cash Out |
| DOTHAN, AL 36301 | Appraised Value: | $96,000.00 | Lien Pos: | 1st |
| | Final Value: | $96,000.00 | | |

| Broker: | Program: B Fixed Full Doc | | Term: | 360/360 |
| Contact: | | | Pre-Pay Term: | None |
| Phone: | LTV/CLTV: | 70.31% / 70.31% | Orig. Fee: | 3.5 |
| Fax: | Loan Amount: | $67,500.00 ✓ | Discount Pts. | 0 |
| | Fixed Rate: | 7.299% | Special Product Code: | N/A |

| Appraisal: Unknown | | Credit Score: | Sid: 575 Avg: 566 |

| Decision: Subject To Approval | Date: 03/17/2005 | For Assistance Call: | |
| Approval expires 15 days from Decision Date, | | Loan Specialist: | Kim Stevenson |
| and is subject to requirements listed below. | | Account Executive: | Kristopher Dilks |
| Any Change in Rate and/or Margin requires re-underwriting | | | |

Note: If any of these requirements are not met to our satisfaction, HomeFunds Direct reserves the right to cancel funding/purchase of this loan. All documentation is subject to re-verification prior to funding. Loan approval is made subject to the following conditions:

**Standard Closing Requirements**
HFD to phone verify employment.                    HFD to update credit report if more than 60 days old on date of loan docs.
Property taxes to be paid current.                 Section 32 loans not allowed.
Flood insurance if applicable.
Copy of photo I.D. all borrowers.                  Copies of invoices for third-party appraisal and credit report fees charged to borrower.
Total broker/lender fees not to exceed 7% of amount financed unless subject to state High Cost loan test.
Approval is issued as shown provided the loan does not exceed the property state's High Cost Loan test for APR and Points & Fees.

05-2813

**Loan Conditions**
Appraisal Review Ordered:                    Due:                    Received:

| Amended | Added | Due Prior To | Condition |
| | 03/24/2005 | Approval | 1. Complete original appraisal |
| | 03/24/2005 | Approval | 2. Hazard Insurance Policy - If not impounded, requires 6 mo. coverage from loan date for refinances and 12 mo. for purchases. Mortgagee Clause: Accredited Home Lenders, Inc., A California Corporation, ISAOA P.O. Box 10436 Van Nuys, CA 91410-0436 |
| | 03/24/2005 | Approval | 3. ALTA Preliminary Title Report |
| | 03/24/2005 | Approval | 4. Payoff Statements (must show date next payment due, existing liens must be current for A, A- Grades) for: |

ALABAMA APPRAISAL SERVICE          $300.00 ✓
HOUSTON COUNTY TAXES                $635.00 ✓
ARMY AVIATION CENTER FCU            $4,594.49 ✓
Total:                              $5,529.49

| | 03/24/2005 | Approval | 5. Flood Certification (AHL to provide) |
| | 03/24/2005 | Approval | 6. Satisfactory appraisal review (AHL to provide) |
| | 03/24/2005 | Approval | 7. Copies of invoices for any third-party fees charged to borrower (i.e. appraisal, credit, courier, escrow, etc.) |
| | 03/24/2005 | Approval | 8. Copy of SSI/Pension awards letter with copy of most recent check or bank statement, if direct deposit. |

*Closing 3/25 5PM*              *67,500.00*
                                *105 TV RD.*
                                *Dothan AL*
*ØB*                            *36301 Houston*

Page:  1 of 2

*534.23 D/O*        *193.20*
   *GT 3/28*
                    *83/101.25*

**Mazet Mattingly**

| | |
|---|---|
| **From:** | SoLand&Title [solandtitle@microxl.com] |
| **Sent:** | Friday, March 18, 2005 2:36 PM |
| **To:** | Mazet Mattingly |
| **Subject:** | Re: Cheryl Hall |

Thanks for the order!
----- Original Message -----
From: "Mazet Mattingly" <m.mattingly@ahssincorporated.com>
To: <solandtitle@microxl.com>
Sent: Friday, March 18, 2005 1:25 PM
Subject: Cheryl Hall


Please respond to this e-mail with a confirmation that you received this
order. Thanks
File #: 05-2813

  <<AbstractOrderForm.pdf>>


------------------------------------------------------------------------
----

No virus found in this incoming message.
Checked by AVG Anti-Virus.
Version: 7.0.308 / Virus Database: 266.7.3 - Release Date: 3/15/2005

1

**Hall-Frazier**
**Record - 000198**

## COMMITMENT QUALITY CONTROL SHEET

| | |
|---|---|
| Check-Out - Incorrect jacket used | Order Entry - Status - Complete incorrect |
| Order Entry - Commitment Number incorrect | Order Entry - Commitment Typist incorrect |
| Order Entry - Parcel ID/Tax ID incorrect | Exhibit A - Derivation Clauses not chronological |
| Order Entry - Full Legal incorrect | (CW-)CM-1 - Lender.2 - None not entered |
| Who's Who - Buyer(s) incorrect | A&B - Paragraph(s) not indented correctly |
| Who's Who - Relationship(s) incorrect | A&B - Paragraph(s) not numbered correctly |
| Exhibit A - Situated in... incorrect | 6, 7, 8 - Paragraphs not indented correctly |
| Exhibit A - Legal missing word(s)/clause(s) | 6, 7, 8 - Paragraphs not numbered correctly |
| Exhibit A - NY clause missing | 6, 7, 8 - Mortgages/judgments not chronological |
| Exhibit A - Parcel ID/Tax ID incorrect | 7, 8, 9 - Paragraph(s) not indented correctly |
| Exhibit A - Derivation Clause missing/incorrect | 7, 8, 9 - Paragraph(s) not numbered correctly |
| Exhibit A - 24-Month Chain Clause missing | 7, 8, 9 - Gap Coverage spacing not removed |
| Exhibit A - Death Clause missing | Documents - Comments Log incomplete |
| Exhibit A - Florida Mailing phrase missing | Tasks - Commitment Completed... incomplete |
| Documents - Gap Coverage does not pulled | Printing - Gap/Estoppel does not printed |
| Documents - Estoppel letter(s) not pulled | |
| Documents - Incorrect (CW-)CM-1 pulled | |
| (CW-)CM-1 - Commitment Number Incorrect | **Quality Control Specialist:** |
| (CW-)CM-1 - Effective Date incorrect | *Rebecca Parker* |
| (CW-)CM-1 - Effective Time incorrect | |
| (CW-)CM-1 - ISAOA, ATIMA not entered | **Commitment Analyst:** |
| A&B - Incorrect mortgage clause | |
| A&B - And spouse if any incorrectly used | ☐ Betsey Johnson |
| A&B - Estoppel letter(s) clause missing | ☐ Geneva Lawson |
| 6, 7, 8 - Affidavit Clause missing/incorrect | ☐ Heatherlee Carter |
| 6, 7, 8 - No open... clause missing (Nothing) | ☐ Jamie Shelley |
| 6, 7, 8 - No open... clause missing (Mortgage) | ☐ Joe Dew |
| 6, 7, 8 - Mortgage(s) missing/incorrect | ☒ Liz Cochran |
| 6, 7, 8 - Assignment(s) missing/incorrect | ☐ Mary Laws |
| 6, 7, 8 - Modification(s) missing/incorrect | ☐ Nick Zanette |
| 6, 7, 8 - Consolidation(s) missing/incorrect | ☐ Nicki Massengill |
| 6, 7, 8 - Subordination(s) missing/incorrect | ☐ Rebecca Bright |
| 6, 7, 8 - Substitute Trustee(s) missing/incorrect | ☐ Rebecca Parker |
| 6, 7, 8 - Judgment(s) missing/incorrect | ☐ Shannon Keisling |
| 6, 7, 8 - Parcel ID/Tax ID incorrect | ☐ Sharri Stewart |
| 6, 7, 8 - Prior tax year(s) info missing/incorrect | ☐ Other: |
| 6, 7, 8 - Current tax year info missing/incorrect | |
| 6, 7, 8 - HOL - Tax Info Language missing | ☒ Commitment sent |
| 6, 7, 8 - HOL - This amount... not entered | ☐ Commitment on hold |
| 6, 7, 8 - MISC. - Subject to... not entered | |
| 7, 8, 9 - Plat Book/Page missing/incorrect | **Comments:** |
| 7, 8, 9 - Easements, etc. missing/incorrect | |
| 7, 8, 9 - Condominium clause missing/incorrect | |
| 7, 8, 9 - Gap Coverage clause missing | |
| 7, 8, 9 - Florida clause missing | |
| 7, 8, 9 - West Virginia clause missing | |

# ATTENTION
# CLOSING AGENT

*PLEASE RETURN ORIGINAL SIGNED
DOCUMENTS FOR FUNDING TO THE
FOLLOWING ADDRESS:*

**Attn: Retail Funding
1130 Northchase Parkway
Suite 200
Marietta, GA 30067-6420**

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE
DOC/FUNDING DEPARTMENT.*

*PHONE:* (866) 539-7025

MIN # 100176105031729174          HALL              Loan # 0503372917
AHL 610104.UFF                    Page 1 of 1

**Hall-Frazier**
**Record - 000200**

# ATTENTION CLOSING AGENTS:

1. **Do not make _any_ changes to the loan documents.  All changes require prior authorization by the Lender.**

2. **Please comply with the following policies related to the dates of our loan documents.**
   * Do not change to the date of our loan documents.
   * Accredited Home Lenders, Inc. does not require that the date of the loan documents be the same as date the Borrower is signing the documents.
   * The Borrower should date the documents the day they actually sign them.

3. **Please comply with the following policies related to RESPA Regulations.**
   * Accredited Home Lenders, Inc. must approve any changes to fees charges by the Broker.
   * No demands to closing should be accepted.
   * The payee must be shown next to all fees and charges on the final HUD-1.

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE DOC/FUNDING DEPARTMENT.*

*PHONE: (866) 539-7025*

MIN # 10017610503172917⁴    HALL    LOAN # 0503172917
AHL CLSGAGTN.UₓF    Page 1 of 1

R LOAN NO. 0503172917                                    CLOSING DATE  March 25, 2005

# LENDERS' INSTRUCTIONS

ISSUE DATE March 25, 2005

THE LOAN DOES NOT CLOSE AS SCHEDULED PLEASE NOTIFY OUR OFFICE IMMEDIATELY (DO NOT USE OUR FUNDS IF
U CANNOT COMPLY WITH ALL OF THE INSTRUCTIONS ON PAGES 2, 3, 4 AND ADDITIONAL INSTRUCTIONS)

OSING AGENT  SWAFFORD & HAYES SETTLEMENT SERVICES INC  ATTENTION  JAMES W SWAFFORD
OSING AGENT ADDRESS   9041 EXECUTIVE PARK DRIVE, KNOXVILLE, TN 37923
OSING AGENT PHONE NUMBER  (865)934-0466          CLOSING AGENT FAX NUMBER  (865)934-0215
AN PURPOSE  Refi Cash Out      LIEN TYPE  1st       LOAN TYPE  Fixed
GE AMT. $  56,000.00   INTEREST RATE  7.299  % INITIAL RATE  7.299%    MARGIN  0.000      %
RM   360/360       MUST CLOSE BY  04/05/2005       DOCUMENT EXPIRE ON  04/05/2005
RTGAGOR(S) NAME(S)   CHERYL HALL
OPERTY ADDRESS   105 TV ROAD, DOTHAN, AL 36301
TLE COMPANY  SWAFFORD & HAYES SETTLEMENT SERVICES INC
TLE NUMBER  05-2613            PHONE NUMBER  (865)934-0466

ENCLOSED ARE THE FOLLOWING DOCUMENTS PERTAINING TO THE MORTGAGE CLOSING:

X ) DEED / MORTGAGE                          ( X ) ORIGINAL POWER OF ATTORNEY - RETURN TO DESIGNEE

  ) RIDER(S), ADDENDUM, ALLONGE #  _____   ( X ) TAX FORM # 4506 OR 8821

X ) NOTE                                     ( )  _____

X ) RIDER(S) ATTATCHED SCHEDULES #_____   ( )  _____

X ) TRUTH INLENDING FINAL (REG Z)            ( )  _____

X ) W-9                                      ( )  _____

X ) INFORMATIONAL DISCLOSURES                ( )  _____

X ) RIGHT TO CANCEL - 3 COPIES PER BORROWER  ( )  _____
    -RETURN 1 EACH

. THE FOLLOWING LENDER ITEMS HAVE BEEN DEDUCTED FROM OUR CHECK/DRAFT TO YOU:

| FEE ITEMS: HUD-1 # | LENDER FEES | N/A | LENDER POC | TOTAL FEES |
|---|---|---|---|---|
| 801 Origination Fee | 1,960.00 | | | 1,960.00 |
| 802 Discount Points | | | | |
| 803 Appraisal Fee | | | | 300.00 |
| 804 Credit Report Fee | | | | |
| 805 Final Inspection/442 Fee | | | | |
| 807 Application Fee | | | | |
| 810 Processing Fee | 500.00 | | | 500.00 |
| 811 Underwriting Fee | 500.00 | | | 500.00 |
| 813 Appraisal Review Fee | 250.00 | | | 250.00 |
| 815 Escrow Holdback Fee | | | | |
| 816 Funding Fee | | | | |
| 818 Courier Fee | | | | : |
| 825 Warehouse Fee | | | | |
| 827 Reverif Fee | | | | |
| 828 Flood Cert/Life of Loan Fee | 9.50 | | | 9.50 |
| 829 Tax Service Fee | 66.00 | | | 66.00 |
| 901 Interest for 2 days   @ $ 11.2 per day | 22.40 | | | |
| 1001 Hazard Insurance 4 month(s) @   $89.30 | 356.00 | | | 356.00 |
| 1003 City Property Tax 0 month(s) @    $0.00 | | | | |
| 1004 County Property Tax 7 month(s) @  $44.75 | 313.25 | | | 313.25 |
| 1005 School Tax 0 month(s) @    $0.00 | | | | |
| 1006 Flood Insurance 0 month(s) @   $0.00 | | | | |
| 1008 Agg. Acctg. Adjustment | 134.25 | | | -134.25 |
| 1301 Survey Fee | | | | |
| TOTALS | 3,842.90 | 0.00 | 0.00 | 4,120.50 |

PAID BY LENDER

204 LENDER CREDIT TO BORROWER   $ 0.00
809 YIELD SPREAD TO BROKER (POC)  $ 0.00
1203 STATE TAX/STAMPS        $                    NET CHECK / DRAFT $  52,357.10

For all Dry-Funding States and Refinances in Wet-Funding States:
ALL DOCUMENTS MUST BE IN OUR OFFICE TWO (2) BUSINESS DAYS PRIOR TO DISBURSEMENT
OF LOAN FUNDS
C. POLICY OF THE TITLE INSURANCE REQUIREMENTS ARE SET FORTH ON PAGE 2 AND OUR LIEN MUST BE SUBJECT
ONLY TO EXCEPTION NUMBERS  B1)1-9 B2)1-7 _____  AS
SHOWN ON THE PRELIMINARY REPORT /COMMITMENT DATED  March 18, 2005

Initial CAH

Page 1 of 4
AHL 0635-ARL.UFF

**Hall-Frazier**
**Record - 000202**

## LENDERS' INSTRUCTIONS

**INITIAL**
**CLOSING**
**INSTRUCTIONS**

DO NOT CLOSE THIS LOAN IF:

1. We have not received and approved Preliminary Commitment for Title Insurance.
2. You are past the expiration date of our legal papers.
3. We have not received and approved an Estimated Closing Statement.
4. You have not given signed copy of these instructions plus any amendments to the borrowers.
5. If there has been any change to the original sales contract which we have not approved in writing.
6. If we have not received and accepted/approved:
   a.  Security instruments conformed and certified plus two copies.
   b.  Note plus two certified copies.
   c.  Any other items sent for execution and/or notary in the numbers sent. We will not accept witnessed acknowledgments on notarized items.
7. We have not received an acceptable hazard insurance binder.
8. All conditions of our loan commitment have not been met.
9. SIGNATURES Please insure that the Borrowers sign ALL loan documents EXACTLY AS THEIR NAMES ARE TYPED ON THE DOCUMENTS, EVEN IF THIS IS NOT THEIR USUAL SIGNATURE. Please pay special attention to middle initials and middle names, and Junior and Senior. You should review the signature on each document CAREFULLY. IF THERE IS ANY QUESTION AS TO THE READABILITY OF THE SIGNATURE OF AN INDIVIDUAL, YOU SHOULD OBTAIN A NOTARIZED SIGNATURE AFFIDAVIT and return it with the other documents.
10. TAX CERTIFICATION This form must be completed and signed by YOU and have the LEGAL DESCRIPTION ATTACHED OR ENTERED AT THE BOTTOM OF THE FORM. Please be sure that ALL information is complete and correct and that you show an amount of taxes next due, even an estimated amount.
11. REVIEW All documents MUST be in our office for review PRIOR to recording. We request that documents be received a MINIMUM of ONE DAY PRIOR to THE DAY YOU WISH TO RECORD. Please include THREE (3) CERTIFIED COPIES EACH OF THE NOTE AND DEED OF TRUST and provide copies of all other executed documents for recording such as Warranty Deed, Excise Affidavit, Quit Claim Deed, Buyer or Seller Power of Attorney, etc. Please direct the title company to forward take-off copies of ALL pages of ALL recorded documents as soon as possible
12. Sales price is other than $00.00

**TITLE**
**POLICY**
**REQUIREMENTS**

1. The title policy must insure the mortgage as a good and valid lien of the type shown on Page 1 in accordance with your Preliminary Commitment for Title Insurance. We must have the original and two copies of the policy.
2. THERE MUST BE NO OTHER LIENS AGAINST THE PROPERTY OTHER THAN THOSE SHOWN ON PAGE 1, unless approved by us in writing.
3. No past-due taxes or special assessments are to be shown as exceptions. The title policy must show current year's taxes "not yet due and payable," or current half paid.
4. In examining the title, if you find any violations of restrictions, easements, or encroachments, secure our approval prior to the closing.
5. Vestee name spelling(s) must be identical to mortgage/deed of trust.
6. Marital status must be shown.
7. We require two copies of conditions, covenants, and restrictions and of any recorded exceptions not covered by FHA/VA/FNMA/FHLMC General Waivers.
8. The mortgage transaction must include the proper execution and recording of all necessary instruments to assure the issuance of a Mortgagee Title Policy, without exceptions except as shown on Page 1.
9. This Policy must be in the loan amount or maximum principal balance to be reached if negative amortization is involved (not to exceed 125%) insuring Home Funds Direct
   and its successors and/or assigns, and subject only to the following:
   Restrictions and building lines of record provided that the policy contains
   an Endorsement covering any violation.
10. Any lien for financing subordinate to ours and approved by us must be listed on the title policy and the policy must expressly provide that such lien is subordinate to that of our mortgage lien.
11. Property address must be shown as a part of the policy or by endorsement in states where possible.
12. Plat or survey must show correct street name or road name in full, must show all reference points used in legal description.
13. Protection of insured must be provided in the case of any unlocated easements, rights of way, encroachments, etc.
14. Protection of improvements including landscaping, must be provided if water, oil, gas, or mineral reservations exist and allow the right of surface entry.
15. The following endorsements must be included in the Mortgagee policy: 100, 116, 8.1, 6.2 if ARM with no negative amortization, condominium or P.U.D., if applicable, and EPA
16. Have title company forward owners policy to borrowers at property or mailing address.
17. Have Mortgagee policy delivered to lender's address on page 4 of these instructions within three days of closing.
18. Title Policy to read as follows:
    Home Funds Direct
    Its Successors and/or assigns
19. Lender does not accept limited coverage title policies for loans more than $50,000.00
20. Lender requires that the final title policy insure the lien shown on page 1 of the Closing Instructions independent of any other lien closed concurrently.  A final title policy insuring a combination of multiple liens is unacceptable

-635 (02008 01)                    Page 2 of 4                    0503172917

**Hall-Frazier**
**Record - 000203**

## LENDERS' INSTRUCTIONS

| | | |
|---|---|---|
| **CLOSING PACKAGE REQUIREMENTS** | 1. | HUD 1 & Addendum showing both buyer and seller sides and including addresses of all parties to the escrow 3 certified copies. |
| | 2. | Policy of title insurance - see Requirements. |
| | 3. | Policy(s) of hazard insurance. |
| | 4. | Copy of Conveyance Instrument(s) and Excise Affidavits. |
| | 5. | Copy of your Closing Order to title company. |
| | 6. | Copy of your Escrow Instructions - signed. |

**HUD-1 REQUIREMENTS**

Comply with all provisions of RESPA, as amended, in preparing this form.
Must be typed.

**DOCUMENT REQUIREMENTS**

1. Be certain that all papers which were not dated when received are dated by the person(s) who are to sign them.
2. Be certain that if we send one or more copies of a document, that EACH is returned with original signature(s).
3. INTERIM INTEREST - It is REQUIRED that the HUD-1 be amended (if necessary) to show the correct date and amount, and it is also REQUIRED that all totals on the HUD-1 be amended to reflect the correct amount. DO NOT SIMPLY CROSS OUT THE AMOUNT AND WRITE A NEW ONE ABOVE IT!
4. DO NOT SHOW ANY CREDITS FROM SELLER TO BUYER WITHOUT CONSULTING OUR OFFICE.
5. Make NO changes on the papers without our permission. Call for instructions.
6. If we give permission to make changes on the papers, all changes MUST be initialed by ALL SIGNATORIES to the documents.
7. Do not use Power of Attorney unless prior approved by us.
8. If we allow the use of a Power of Attorney, the person using that authority must sign as, for example, "Jane Doe by John Doe, her attorney-in-fact."
9. If notice of Right to Rescind is enclosed, have it signed and dated, concurrently with the Note, by all borrowers.
10. We assume no liability as to the identity of any person executing or acknowledging any instruments or documents delivered to you in connection with this transaction.
11. ALL DOCUMENTS MUST BE SIGNED EXACTLY AS TYPED NAMES APPEAR.

**HAZARD INSURANCE**

A Hazard Insurance binder must be furnished at the time of closing in an amount not less the loan amount, or replacement cost of the structure, whichever is less.  (Combined Loan Amount)

1. The policy must meet the following requirements:
   a. Original policy or facsimile signed by an authorized agent.
   b. Minimum one year term with coverage equal at least to full replacement cost of the improvements, or loan amount, whichever is less.  (Minimum remaining term of 6 months for Purchase or Refinance is acceptable.)
   c. Full, correct borrower(s) names.
   d. Full, correct property address.
   e. Premium amount must be indicated on the policy.
   f. Agent name and address.
   g. Our loan number MUST be indicated on the policy.
   h. Paid receipt for first year premium attached or shown on HUD-1 as paid in closing.
   i. Earthquake insurance (if required) use same, identifying criteria as for flood insurance.
   j. Insurer must have rating in Best's Insurance Guide of at least Class VI.
   k. FLOOD INSURANCE (if required): Standard policy issued by member of National Flood Insurers Association for not less than our loan amount or the maximum amount available under National Flood Insurance program, whichever is less. The name(s) of the buyer(s), legal description, street address, city, state, county and zip code of security property on these policies must be identical to those of the loan instruments.
   l. On condominiums, we must have an individual endorsement meeting the criteria above.
   m. Loss Payable Clause to: Home Funds Direct
      A Division of Accredited Home Lenders, Inc.
      A California Corporation.
      It's successors and/or assigns
      P.O. Box 10436
      Van Nuys, CA 91410-0436

**CLOSER REQUIREMENTS**

**For all Dry-Funding States and Refinances in Wet-Funding States:**
**ALL DOCUMENTS MUST BE IN OUR OFFICE TWO (2) BUSINESS DAYS PRIOR TO DISBURSEMENT OF LOAN FUNDS**
**LENDER REQUIRES CONFIRMATION OF DISBURSEMENT OF FUNDS WITHIN 48 HOURS OF FUNDING.**
**DO NOT MAKE ANY CHANGES TO LOAN DOCUMENTS WITHOUT PRIOR LENDER AUTHORIZATION.**

**ALL FEES SHOWN ON THE HUD - 1  MUST MATCH EXACTLY THE FEES LISTED IN OUR CLOSING INSTRUCTIONS  i. e.  : FEE ITEMS - HUD DESCRIPTION AND DOLLAR AMOUNTS.**
**ALL PAYOFF CHECKS MUST BE SENT DIRECTLY TO THE CREDITOR.   DO NOT GIVE ANY CHECKS TO THE BORROWER.**

LENDERS' INSTRUCTIONS



## LENDERS' INSTRUCTIONS

**BUYER COST REQUIREMENTS**

1. DOWNPAYMENT IN CASH FROM BORROWER(S) MUST TOTAL AMOUNT SHOWN ON PAGE 1
2. BORROWERS CANNOT PAY THE FOLLOWING:

**VA LOANS**

1. PHOTOS & INSPECTION FEE MORE THAN ALLOWED BY VA
2. MESSENGER SERVICE
3. RECORDING OF ANY DOCUMENTS OTHER THAN DEED/DEED OF TRUST AND ANY ATTACHMENTS THERETO
4. ESCROW FEES
5. MORE THAN 2 MONTHS INSURANCE INTO ESCROW ACCOUNT
6. TERMITE INSPECTION
7. TAX SERVICE FEE
8. SETTLEMENT OR CLOSING FEE

**FHA LOANS**

1. TAX SERVICE/REGISTRATION FEE
2. MESSENGER SERVICE UNLESS AUTHORIZED BY BORROWER IN WRITING
3. RECORDING OF ANY DOCUMENTS OTHER THAN DEED OF TRUST/DEED AND ANY ATTACHMENTS THERETO
4. MORE THAN 2 MONTHS INSURANCE INTO ESCROW ACCOUNT
5. INSPECTION FEES - NOT MORE THAN ALLOWED BY FHA
6. DOCUMENT PREPARATION

**DISBURSEMENT**

1. It shall be the responsibility of the Closing Agent to request proceeds from the lender at such time as the Closing Agent is prepared to comply with all the terms and conditions of the Purchase/Sale Agreement and /or our Escrow Instructions. SUCH A REQUEST, BY THE CLOSING AGENT, FOR FUNDS SHALL BE DEEMED TO BE A CERTIFICATION (LENDER) THAT ALL TERMS AND CONDITIONS HAVE BEEN MET AND THAT THE DOCUMENTS WILL BE PROPERLY RECORDED NOT LATER THAN THE NEXT BUSINESS DAY AFTER THE DAY THE CLOSING AGENT HAS RECEIVED THE PROCEEDS CHECK. In the event that the documents are not recorded within 24 hours, the Closing Agent will immediately return the funds to the sender in accordance with the sender's instructions.

2. HUD SETTLEMENT DATE

GOVERNMENT LOANS: The HUD-1 settlement date MUST be the date on which the lender disburses proceeds to the Closing Agent and NOT the date on which proceeds are disbursed to the seller. These two dates may be the same day.

CONVENTIONAL LOANS: The settlement date on the HUD-1 statement may reflect the date on which the closing Agent disburses the proceeds, which would usually be the day after the Agent received loan proceeds from the lender.

**ADDITIONAL INSTRUCTIONS:**

1. Undertaking to close this loan and acceptance of the lender's funds for disbursement shall constitute an undertaking to close this loan and disburse such funds in accordance with these Closing Instructions, whether or not these instructions are executed or delivered by the Closing Agent. Closing Agent will be responsible for any issue incurred by lender as a result of Closing Agent's failure to comply fully with these Closing Instructions.

2. Lender reserves the right to cancel or amend the loan or these instructions at any time prior to closing

3. Closing Agent represents, warrants, and covenants that it is not an affiliate of or otherwise controlled by any party to this transaction.

4. From the time Closing Agent receives closing funds until the loan documents are sent to the lender, Closing Agent shall hold all loan documents for the benefit of the sender of the closing funds.

**E-MAIL:**

Handling of E-Mail and Closing Documents. If Closing Agent is willing to receive Closing Documents via e-mail, Closing Agent's e-mail address is set forth below, and Closing Agent shall be responsible for ensuring that all Closing documents received via e-mail are properly printed and otherwise handled in accordance with the Closing Documents handling requirements set forth above.
Closing Agent's Email Address: klmc@kssincorporated.com

---

THE UNDERSIGNED BORROWER(S)

1. DIRECT THAT THE LOAN PROCEEDS BE PAYABLE TO THE ORDER OF THE SETTLEMENT AGENT.
2. ACKNOWLEDGE 1ST PAYMENT DATE OF <u>05/01/2005</u>
3. ACKNOWLEDGE THAT THE LENDER MAY CANCEL OR AMEND THESE INSTRUCTIONS WITHOUT MY/OUR APPROVAL.
4. ACKNOWLEDGE <u>ESTIMATED</u> MONTHLY PAYMENTS OF:

| | | |
|---|---|---|
| PRINCIPAL & INTEREST | $ | 383.89 |
| TAXES (BONDS) | | 44.75 |
| INSURANCE | | 89.00 |
| MTGE. INS. PREMIUM | | |
| | | |
| TOTAL $ | | 517.64 |

3-25-05
DATE

CHERYL HALL

DATE

DATE

DATE

**PLEASE RETURN DOCS TO:**

Home Funds Direct
1130 Northchase Parkway
Suite 200
Marietta, GA 30067-6420

Ken Harper
CLOSER/FUNDER NAME

(866) 539-7025
TELEPHONE NUMBER

THE UNDERSIGNED AGREES TO CLOSE THIS LOAN IN ACCORDANCE WITH ALL OF THE INSTRUCTIONS AND CONDITIONS CONTAINED IN THE CLOSING INSTRUCTIONS.

SWAFFORD & HAYES SETTLEMENT SERVICES
SETTLEMENT AGENT

BY Jane Carcello
SIGNATURE

SWAFFORD & HAYES SETTLEMENT SERVICES
TYPED NAME

(865) 934-0466
TELEPHONE NUMBER

03/28/05
DATE

LENDERS' INSTRUCTIONS
Closing Instructions

---

Hall-Frazier
Record - 000205

## ADDENDUM TO LENDERS INSTRUCTIONS

BORROWER'S  CHERYL HALL

LOAN #    0503172917                                      ESCROW # 05-2813

**ATTENTION CLOSING AGENTS: BY DISBURSING THIS LOAN YOU ARE GUARANTEEING DELIVERY OF THE FINAL HUD-1 WITHIN 24 HOURS OF CLOSING TO Home Funds Direct. PLEASE REMEMBER TO INCLUDE THE ACTUAL "DISBURSEMENT DATE" ON THE HUD-1 AND FAX TO THE ASSIGNED FUNDER INDICATED ON THE LENDER'S INSTRUCTIONS.**

## ** WE MUST HAVE THESE ITEMS IN AND APPROVED BEFORE FUNDING **

1. __X__ Home Funds Direct
        IN 1st     LIEN POSITION AT TIME OF FUNDS.

2. __X__ INSURED CLOSING PROTECTION LETTER FROM TITLE AGENT OR COPY OF ERRORS AND OMISSION POLICY FROM CLOSING AGENT.

3. _____ COPY OF SURVEY OF PROPERTY OR NON-IMPROVEMENT AFFIDAVIT.

4. __X__ CERTIFIED COPY OF ESTIMATED AND/OR FINAL HUD-1.

5. _____ CERTIFIED COPY OF ESCROW INSTRUCTIONS WITH CORRECT RATE, TERMS & LENDER SIGNED BY ALL PARTIES.

6. __X__ COPY OF ALL BORROWER(S) PHOTO ID.

7. __X__ COMPLETED CORRECT TYPED 1003 SIGNED BY BORROWER(S) AND INTERVIEWER.

8. __X__ HAZARD INSURANCE POLICY & FLOOD INSURANCE POLICY (IF REQUIRED) WITH MINIMUM 6 MONTHS REMAINING & COVERAGE OF THE LESSER OF-
        A. THE COMBINED LOAN AMOUNT(S)  OR    **$56,000.00**          OR
        B. GAURANTEED REPLACEMENT COST  OR    **$0.00**               OR
        C. TOTAL ESTIMATED NEW COST ON APPRAISAL.
        MORTGAGE / LOSS PAYEE CLAUSE:
        Home Funds Direct
        A Division of Accredited Home Lenders, Inc.
        A California Corporation,
        It's successors and/or assigns
        P.O. Box 10436
        Van Nuys, CA 91410-8436

9. __X__ TITLE POLICY TO READ AS FOLLOWS:
        Home Funds Direct
        IT'S SUCCESSORS AND/OR ASSIGNS

10. _____ BORROWER IS IN A SECTION 32 - MUST SIGN SECTION 32 NOTICE AND GO THROUGH 2 DAY RESCISSION PRIOR TO SIGNING FINAL LOAN DOCUMENTS.

11. _____ BORROWER TO PROVIDE ORIGINAL SECTION 32 NOTICE SIGNED AND DATED PRIOR TO SIGNING FINAL LOAN DOCUMENTS.

12. __X__ ALL LOAN DOCUMENTS MUST BE EXECUTED AT ESCROW OR CLOSING AGENT OFFICE.

13. __X__ LENDER DOES NOT ACCEPT LIMITED COVERAGE TITLE POLICIES FOR LOANS GREATER THAN $50,000.00.

14. __X__ COPY OF WIRE INSTRUCTIONS TO BE SUBMITTED WITHIN 24 HOURS OF FUNDING. FAX NUMBER(866) 539-7026

15. _____ LENDER TO COLLECT AND PAY LIFE INSURANCE PREMIUM AT CLOSE OF ESCROW.

16. __X__ POWER OF ATTORNEY IS PROHIBITED WITHOUT PRIOR AUTHORIZATION FROM LENDER.

17. __X__ PROVIDE THREE CERTIFIED COPIES OF THE MORTGAGE/DEED OF TRUST WITH ALL RIDERS & THE NOTE WITH ALL RIDERS.

## ADDENDUM TO LENDERS INSTRUCTIONS, Continued

18.  Hazard Insurance Policy - If not impounded, requires 6 mo. coverage from loan
     date for refinances and 12 mo. for purchases. Mortgagee Clause: Accredited
     Home Lenders, Inc., A California Corporation, ISAOA P.O. Box 10436 Van Nuys,
     CA  91410-0436

19.  Pay the following in full at closing (payoff must show on est/final HUD1):

     Payoff Amount: THE CR STR/PROVIDIAN,   $785.00
     Payoff Amount: PALISADES,    $694.00
     Payoff Amount: HOLLOWAY CREDIT,   $452.00
     Payoff Amount: SMALL LNS,   $399.00
     Payoff Amount: CRDT MGT,   $182.00
     Payoff Amount: FRIEDMANS JEWELERS,   $400.00
     Payoff Amount: ARMY AVIATION CENTER FCU,  $4,594.49
     Payoff Amount: ALABAMA APPRAISAL SERVICES,   $300.00
     Payoff Amount: State Farm Insurance,  $1,068.00

     Total Amount: $8,874.49

20.  AHL to be insured in 1st lienhold position with clear title

21.  Corrected original 1003, pages 1-4, to be fully completed and signed by
     borrowers and broker.

22.  Certified copy of Final HUD1

23.  Funds to be wired to the title company only.

24.  Provide detailed cash-out letter from borrower.


### *** NO FURTHER CONDITIONS ON THIS LOAN

THE UNDERSIGNED BORROWER(S) AND CLOSING OFFICER ARE HEREBY AWARE AND UNDERSTAND THAT
THIS LOAN IS APPROVED SUBJECT TO THE APPROVAL OF THE CONDITIONS LISTED ON THIS ADDENDUM
PAGE.  THE CONDITIONS MUST BE REVIEWED AND APPROVED BY THE FUNDER AND/OR UNDERWRITER AT
Home Funds Direct.

THE BORROWER(S) ARE AWARE THAT IN THE EVENT ANY OF THE ABOVE CONDITIONS ARE NOT
ACCEPTABLE BY
Home Funds Direct.

THIS LOAN APPROVAL MAY BE RESCINDED AT THE SOLE DISCRETION AND OPTION OF
Home Funds Direct.

| Borrower  3-25-05 | Date | Borrower | Date |
|---|---|---|---|
| CHERYL HALL | | | |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

Closing Officer                 Date

MIN #  10017810503172174                    HALL                    Loan #   0503172917
AHL 610022-F UFF                          Page 2

# CLOSING AGENT RIDER NOTICE

## ATTENTION CLOSING AGENT:

### PLEASE

### DO NOT SEPARATE ANY RIDERS

### THAT ARE ATTACHED TO THIS NOTE

### THANK YOU.

MIN # 100176105031729174          HALL          Loan # 0503172917
AIII. 610086.UPF               Page 1 of 1

**Hall-Frazier**
**Record - 000208**

# NOTE

March 25, 2005                         DOTHAN                              AL
[Date]                                  [City]                            [State]

105 TV ROAD
DOTHAN, AL 36301
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $56,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  Home Funds Direct

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of              7.299 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st        day of each month beginning on May 1, 2005              . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on April 1, 2035         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at              P.O. Box 502480 San Diego, CA  92150-2480
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $383.89

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MIN# 100176105031729174                                               0503172917

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0207).01          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials: C.H.

Hall-Frazier
Record - 000209

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 10     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. Reasonable attorneys' fees shall not exceed 15% of the unpaid debt after default and referral of this Note to an attorney who is not a salaried employee of the Note Holder.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MIN# 100176105031729174                                              0503172917

GMAC-5N 0370J 01                          Page 2 of 3                          Form 3200 1/01

Hall-Frazier
Record - 000210

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
CHERYL HALL                    -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                       -Borrower

[Sign Original Only]

MIN# 100176108031729174                    0503172917

SN (02021.01)              Page 3 of 3              Form 3200 1/01

Return To:
Home Funds Direct
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

———————— [Space Above This Line For Recording Data] ———— — ————

## MORTGAGE

MIN 100176105031729174

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 25, 2005
together with all Riders to this document.
(B) "Borrower" is CHERYL HALL

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

100176105031729                              0503172917

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3001 1/01

-6A(AL) (0005).03
Page 1 of 15        Initials
VMP MORTGAGE FORMS  (800)521-7291

Hall-Frazier
Record - 000212

(D) "Lender" is Home Funds Direct

Lender is a Corporation
organized and existing under the laws of the State of California
Lender's address is 15090 Avenue of Science
San Diego, CA 92128
(E) "Note" means the promissory note signed by Borrower and dated March 25, 2005
The Note states that Borrower owes Lender fifty-six thousand and 00/100

Dollars

(U.S. $56,000.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

100176105031729                                    0503172917

-6A(AL) (0005).02                    Page 2 of 15                    Form 3001 1/01

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
County                    of                    HOUSTON                    :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
See Legal Description Addendum Page Attached

Parcel ID Number: 10-09-31-4-003-001.007          which currently has the address of
105 TV ROAD                                                           [Street]
DOTHAN                              [City] , Alabama 36301          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

10017610503172 9                          0503172917

-6A(AL) (0005).03                Page 3 of 15              Form 3001 1/01

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

100176105031729

-6A(AL) (0005).03

Page 5 of 15

0503172917

Form 3001 1/01

Hall-Frazier
Record - 000216

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

10017610503172 9

-6A(AL) (0005) 03                    Page 6 of 15                    0503172917

Form 3001 1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. *Protection of Lender's Interest in the Property and Rights Under this Security Instrument.* If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Hall-Frazier
Record - 000218

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

100176105031729                          0503172917

-6A(AL) (0005) 03                    Page 8 of 18        Initials: ___        Form 3001 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

1 0 0 1 7 6 1 0 5 0 3 1 7 2 9                          0 5 0 3 1 7 2 9 1 7

-6A(AL) (0005).02                    Page 9 of 15                         Form 3001 1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

100176105031729                      0503172917

(AMP)-6A(AL) (0005).03              Page 10 of 15           Initials   Form 3001 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

100176105031729                                                  0503172917

-6A(AL) (0005).03                    Page 11 of 15          Initials: _____         Form 3001 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

100176105031729

0503172917

-6A(AL) (0005).03

Page 12 of 16

Initials

Form 3001 1/01

Hall-Frazier
Record - 000223

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in HOUSTON
County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

25. Attorneys' Fees. Wherever this Security Instrument authorizes the Lender to collect reasonable attorneys' fees following default, such reasonable attorneys' fees shall not exceed fifteen percent (15%) of the unpaid debt after default and referral of the Security Instrument to an attorney who is not a salaried employee of Lender.

10017610503172 9                                        0503172917

-6A(AL) (0005).02                    Page 13 of 15        Initials: _____        Form 3001 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Diane L. Wilson_                                    _____ (Seal)
                                                                      -Borrower
                                    CHERYL HALL

_____                     _____ _____ _____ (Seal)
                                                                      -Borrower

_____ _____ _____ (Seal)      _____ _____ _____ (Seal)
                        -Borrower                              -Borrower

_____ _____ _____ (Seal)      _____ _____ _____ (Seal)
                        -Borrower                              -Borrower

_____ _____ _____ (Seal)      _____ _____ _____ (Seal)
                        -Borrower                              -Borrower

100176105031729                       0503172917

⊕6A(AL) (0005).03          Page 14 of 15          Form 3001 1/01

STATE OF ALABAMA,                                        County ss: *Houston*

On this _____ 25 _____ day of *March*, *2005* _____ , I,

*DIANE L. Hilson*

a Notary Public in and for said county and in said state, hereby certify that CHERYL HALL

whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this _____ 25 _____ day of *March*, *2005*

My Commission Expires:

**My Commission**
**Expires 3-06-06**

_____
Notary Public

**Diane L. Hilson**
Alabama State
at Large

Prepared By:
Home Funds Direct
15090 Avenue of Science
San Diego, CA 92128

100176105031729                        0503172917

-6A(AL) (0005).01          Page 16 of 16     Initials _____     Form 3001 1/01

## LEGAL DESCRIPTION ADDENDUM

| Borrower Name(s): | Lender: |
|---|---|
| CHERYL HALL | Home Funds Direct |
| | 15090 Avenue of Science |
| | San Diego, CA 92128 |
| | Loan #: 0503172917 |

**Property Address:**
105 TV ROAD
DOTHAN, AL 36301

**Legal Description:**
SEE ATTACHED LEGAL DESCRIPTION

Initials

EXHIBIT A

Situated in Dothan, Houston County, State of AL and being described as follows:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

The above legal description being the same as the last deed of record, no boundary survey having been made at the time of this conveyance.

Parcel #10-09-31-4-003-001.007

BEING the same property conveyed to Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns, by deed from Samuel B. Pierce, Jr., Secretary of Housing and Urban Development of Washington, D.C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, dated 07-19-85, recorded 07-26-85, in Book 311, page 324, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Kevin Lorenzo Dixon, II, by deed from Louis E. Sowers and wife, Fay Sowers, dated 04-02-03, recorded 04-03-03, in Book 598, page 34, in the Office of the Judge of Probate of Houston County, AL.

BEING the same property conveyed to Cheryl Hall, by deed from Kevin Lorenzo Dixon, II, a unmarried man, dated 03-02-05, recorded 03-11-05, in Book 622, page 443, in the Office of the Judge of Probate of Houston County, AL.

This Derivation Clause represents a 24 month Chain of Title.

The above information is to be used for reference purposes only and not to be relied on as evidence of title and/or encumbrances. Accordingly, said information is furnished at a reduced rate, and the Company's liability shall in no event exceed the amount paid for said information.

105 TV Road, Dothan, AL  36301

# LOAN POLICY OF TITLE INSURANCE

Issued by **Transnation Title Insurance Company**

**POLICY NUMBER**
F52-1069870

 **LandAmerica Transnation**

*Transnation Title Insurance Company is a member of the LandAmerica family of title insurance underwriters.*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, TRANSNATION TITLE INSURANCE COMPANY, an Arizona corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the site;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, TRANSNATION TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**TRANSNATION TITLE INSURANCE COMPANY**

Attest:

*Whitney Powell*
Secretary



By:

*Theodore L Chandler Jr*
President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulations (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials) over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NM 2    PA 20
ALTA Loan Policy (10/17/92)
Form 1191-54B

**ORIGINAL**

Valid only if Schedules A and B are attached

# COMMITMENT

State: AL County: Houston

Order #: 05-2813

| Plant #: * | Commitment #: F52-1069870 | Effective Date & Time: March 18, 2005 @ 8:00am | Reinsurance #: | Agent #: 05-2813 |
|---|---|---|---|---|

## Schedule A

1. Policy or Policies to be issued:
   ALTA LOAN (10-17-92)
   Proposed Insured Loan:                                      Amount

   **Home Funds Direct, ISAOA, ATIMA**                         **$56,000.00**

   2nd Proposed Insured Loan:                                  Amount


   ALTA OWNER'S (10-17-92)
   Proposed Insured Owners:                                    Amount

   **Cheryl Hall**

2. The estate or interest in the land described or referred to in the Commitment and covered herein is:

   **Fee Simple**

   and is at the effective date hereof vested in:

   **Cheryl Hall**

3. The land is described as follows:

   **105 TV Road, Dothan, AL  36301**


*James W. (signature) II*

Countersigned Authorized Signatory

Issued By:  *05-2813
Swafford and Hays Settlement Services, Inc.
9041 Executive Park Drive, Suite 400
Knoxville, TN 37923

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the  insert pages.

Underwriter: Transnation Title Insurance Company

Hall-Frazier
Record - 000230

## COMMITMENT

### Schedule B - Section 1

The following are the requirements to be complied with:

1. Instrument(s) creating the estate or interest to be insured must be approved, executed and filed for record to wit:

a. Deed of Mortgage to be executed by Cheryl Hall, and spouse if any, securing Home Funds Direct, must be properly executed and recorded.

2. Payment of the full consideration to, or for the account of, the grantors or mortgagors.

3. Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

4. Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

5. Exceptions 3 and 4 of Schedule B - Section 2 of this commitment may be amended in or deleted from the policy to be issued if a survey, satisfactory to the Company, is furnished to Company.

6. Affidavit to be executed by Cheryl Hall, stating: 1) There are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between 03-18-05 and the recording of the interest to be insured. 2) That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured. 3) That there are no unrecorded special assessments liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to the county or municipality.

7. A search failed to discover any open mortgages of record as of 03-18-05 for the last 12 months.

8. Satisfy and release Judgement in favor of Army Aviation Center F C U, dated 06-15-98, recorded 07-02-98, in book 89, page 185, in the Office of the Judge of Probate of Houston County, AL , against Cheryl R. Hall, in the principal amount of $3,558.26, plus costs and fees. *NOTE: The payoff amount is $4,594.49 good thru 4-24-05.*

9. TAX ID # 10-09-31-4-003-001.007
   2004 Taxes in the amount of $534.23 are paid in full.
   2005 Taxes in the estimated amount of $537.00 will be out 10-1-05 and due by 12-31-05.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

Commitment #: F52-1069870                                                    File # 05-2813

Hall-Frazier
Record - 000231

## COMMITMENT

### Schedule B - Section 2

**Exceptions**

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Rights or claims of parties in possession not shown by the Public Records.

3. Encroachments, overlaps, boundary lines disputes, and other matters which would be disclosed by an accurate survey and inspection of the premises.

4. Easements or claims of easements not shown by the Public Records.

5. Taxes or special assessments which are not shown as existing liens by the public records.

6. Taxes and assessments for the year 2005 and subsequent years, which are not yet due and payable.

7. Subject to any restrictions, easements, setback lines, etc., as shown of record in Plat book 7, page 23, in the Office of the Judge of Probate of Houston County, AL.

NOTE: This Commitment consists of insert pages labeled in Schedule A, Schedule B-Section 1, and Schedule B-Section 2. This commitment is of no force and effect unless all schedules are included, along with any Rider pages incorporated by reference in the insert pages.

Commitment #: F52-1069870

File #: 05-2813

Hall-Frazier
Record - 000232

| L. | | US Department of Housing and Urban Development **SETTLEMENT CHARGES** | | OMB No. 2502-0265 |
|---|---|---|---|---|
| *(Previous rev. Mar 27, 2005 @ 16-19)* | | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
| **700. Total Sales/Broker's Commission based on price** | | | | |
| 701. Listing Realtor Commission | | | | |
| 702. Selling Realtor Commission | | | | |
| 703. Commission paid at Settlement | | | | |
| 704 | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee  To: Home Funds Direct | | | 1,960.00 | |
| 802. Loan Discount | | | | |
| 803. Appraisal Fee  To: Alabama Appraisal Service | | | 300.00 | |
| 804. Credit Report | | | | |
| 805. Lender's Inspection Fee | | | | |
| 806. Mortgage Insurance Application Fee | | | | |
| 807. Assumption Fee | | | | |
| 808. Processing Fee  To: Home Funds Direct | | | 500.00 | |
| 809. Underwriting Fee  To: Home Funds Direct | | | 500.00 | |
| 810. Document Preparation Fee | | | | |
| 811. Zone Determination Fee  To: Home Funds Direct | | | 9.50 | |
| 812. Tax Service Fee  To: Home Funds Direct | | | 66.00 | |
| 813. Appraisal Review Fee  To: Home Funds Direct | | | 250.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest from Odd Days  To: Home Funds Direct | | | 22.40 | |
| 902. Mortgage Insurance Premium for | | | | |
| 903. Hazard Insurance Premium for  To: State Farm | | | 1,068.00 | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. Hazard insurance  To: Home Funds Direct | | | 356.00 | |
| 1002. Mortgage insurance | | | | |
| 1003. City property taxes | | | | |
| 1004. County property taxes  To: Home Funds Direct | | | 313.25 | |
| 1005. Annual assessments | | | | |
| 1006. | | | | |
| 1007. | | | | |
| 1008. Aggregate Accounting Adjustment  To: Home Funds Direct | | | -134.25 | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | | | 275.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | | | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc. | | | 250.00 | |
| 1104. Title insurance binder | | | | |
| 1105. Document preparation | | | | |
| 1106. Notary Fees | | | | |
| 1107. Attorney's Fees | | | | |
| (Includes above item numbers: ) | | | | |
| 1108. Title Insurance  To: Transnation Title Insurance Company | | | 200.00 | |
| (Includes above item numbers: ) | | | | |
| 1109. Lender's coverage $67,500.00  @  $200.00 | | | | |
| 1110. Owner's coverage @ 0.00 | | | | |
| 1111. Endorsements  To: Swafford and Hays Settlement Services, Inc. | | | 50.00 | |
| 1112. | | | | |
| 1113. Overnight Courier & Handling Fees | | | | |
| **1200. GOVT. RECORDING, TRANSFER, AND SERVICE FEES** | | | | |
| 1201. Recording fees and Service fees  To: Clerk of the Court | | | 120.00 | |
| 1202. City/county tax/stamps: | | | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $84.00 To: Clerk of the Court | | | 84.00 | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | | | | |
| 1302. Pest inspection | | | | |
| 1303. Payoff  To: Army Aviation Center F C U  good thru 4/24 | | | 4,594.49 | |
| 1304. | | | | |
| 1305. Payment  To: The CR STR/Providian | | | 785.00 | |
| 1306. Payment  To: Palisades | | | 694.00 | |
| 1307. Payment  To: Holloway Credit | | | 452.00 | |
| 1308. Payment  To: Small LNS | | | 309.00 | |
| 1309. Payment  To: Crdt MGT | | | 182.00 | |
| 1310. Payment  To: Friedmans Jewelers | | | 400.00 | |
| 1311. | | | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | | 13,896.39 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWER(S)                                                    SELLER(S)

Cheryl Hall

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

_Jane Carcello_          05/28/05
Swailes and Hays Settlement Services, Inc.          Date

NOTE: Taxes have been prorated based on taxes for the year. Any re-proration will be handled between the buyer and seller. All utility bills (water, sewer, electric, cable and maintenance fees) have been paid or will be paid upon receipt of final bills.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

**Hall-Frazier**
**Record - 000234**

# FINAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| Borrower Name(s): CHERYL HALL | Lender: Home Funds Direct 15090 Avenue of Science San Diego, CA 92128 |
|---|---|
| | Date: 03/25/2005     Loan #: 0503172917 |
| | Loan Type: Conventional |

**Borrower Address:**
105 TV ROAD
DOTHAN, AL 36301

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.975 % | $85,772.51 | $ 52,417.10 | $ 138,189.61 |

### PAYMENT SCHEDULE

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $383.89 | 05/01/2005 | | | |
| 1 | $373.10 | 04/01/2035 | | | |

**DEMAND FEATURE:** X | This loan does not have a Demand Feature. | | This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:** | This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at:
105 TV ROAD
DOTHAN, AL 36301

**ASSUMPTION:** Someone buying this property | X | cannot assume the remaining balance due under original mortgage terms | may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $170.00

**PROPERTY INSURANCE:** X | Property hazard insurance in the amount of the lesser of the loan amount or replacement cost with a mortgage clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any company acceptable to the lender.
Hazard insurance | is | X | is not available through the lender at an estimated cost of N/A for N/A year term.

**LATE CHARGES:** If your payment is more than 10 days late, you will be charged a late charge of 5.000% of the overdue payment.

**PREPAYMENT:** If you pay off your loan early, you
| may | X | will not have to pay a penalty.
| may | X | will not be entitled to a refund of part of the finance charge.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| Borrower  CHERYL HALL | Date  3-25-05 | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

# RIGHT TO CANCEL NOTICE

**WHEN COMPLETING THE "Notice of Right to Cancel":**

* **Please verifiy that all dates are properly filled in; if they are not, the rescission must begin again.**

* **See attachment instruction sheet to help you determine dates.**

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE DOC/FUNDING DEPARTMENT.*

*PHONE: (866) 539-7025*

Closing Agent / Escrow Officer _Jane Carcello_    Date _05/28/05_

MIN # 100176105031729174        HALL        Loan # 0503172917
AHL 610087.UFF                  Page 1 of 3

**INSTRUCTION SHEET**
**DATING & INITIALING THE NOTICE OF RIGHT TO CANCEL**

Prior to or at the time the Notice of Right to Cancel is presented to the Borrower for signature two(2) dates must be added to the form.

A.    Under item number 1, please write in the date on which the legal documents are being signed.

B.    In the last paragraph inside the box, please write in the "cancellation date" Remember this date must be three business days from the date the legal documents are signed.  Business days are Monday through Saturday, excluding legal holidays.

After the dates have been added to the Notice, the Borrower must initial both dates (A & B).

SAMPLE:

**NOTICE OF RIGHT TO CANCEL**

                                                        Date:

Loan No:
Borrower:

Property Address:

---

**YOUR RIGHT TO CANCEL:**
You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.  the date of the transaction, which is    **A**    ; or
2.  the date you received your truth-in-lending disclosures; or
3.  the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you personally owe.  Your home is the security for that amount.  Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit.  We must also return to you any money you have given to us or to anyone else in connection with this new transaction.

You may keep any money or property we have given you until we have made the things mentioned above, but you then offer to return the money or the property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing at:

Name of Creditor:

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or by telegram, you must mail the notice no later than midnight of
                    the midnight of the 3rd business day following the latest of the three events listed above.]    **B**    .  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

Consumer's Signature                    Date

---

I THE UNDERSIGNED HEREBY ACKNOWLEDGE, THAT, ON THE DATE SET FORTH BELOW, I RECEIVED TWO (2) COPIES (IN ADDITION TO THIS COPY) OF THIS NOTICE OF MY RIGHT TO CANCEL, ADVISING ME OF MY RIGHT TO CANCEL THE TRANSACTION TO WHICH THIS NOTICE RELATES AND ONE COPY OF THE FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT.

Each borrower/owner in this transaction has the right to cancel.  The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

Consumer's Signature                    Date

610063.uff                        HALL.                    0503172917

Hall-Frazier
Record - 000237

NOTICE OF RIGHT TO CANCEL

Loan No:  0503172917                          Date: March 25, 2005
Borrower: CHERYL HALL


Property Address: 105 TV ROAD
                  DOTHAN, AL 36301

---

YOUR RIGHT TO CANCEL:
You are entering into transaction that will result in a mortgage, lien, or security interest on/in your home.  You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

1.   the date of the transaction, which is        **March 25, 2005**        ; or
2.   the date you received your Truth-in-Lending disclosures; or
3.   the date you received this notice of your right to cancel.


If you cancel the transaction, the mortgage, lien, or security interest is also cancelled.  Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money  or property we have given you until we have done the things mentioned above, but you must then offer to return the money or the property.  If it is impractical or unfair for you to return the property, you must offer its reasonable value.  You may offer to return the property at your home or at the location of the property.  Money must be returned to the address below.  If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:

Name of Creditor: **Home Funds Direct**
                  **1130 Northchase Parkway, Suite 200**
                  **Marietta, GA 30067-6420**



You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below.  Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or by telegram, you must send the notice no later than midnight of   **March 29, 2005**       (or midnight of the third business day following the latest of the three events listed above.)  If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.


I WISH TO CANCEL


. . . . .                    . . . .
Consumer's Signature         Date
CHERYL HALL

---

I THE UNDERSIGNED HEREBY ACKNOWLEDGE, THAT, ON THE DATE SET FORTH BELOW, I RECEIVED TWO (2) COPIES (IN ADDITION TO THIS COPY) OF THIS NOTICE OF RIGHT TO CANCEL, ADVISING ME OF MY RIGHT TO CANCEL THE TRANSACTION TO WHICH THIS NOTICE RELATES AND ONE COPY OF THE FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT.

Each borrower/owner in this transaction has the right to cancel.  The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.


_____    3-25-05
Consumer's Signature       Date
CHERYL HALL

610009.uff

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☐ Conventional  ☒ Other (explain):  ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|

| Amount $56,000.00 | Interest Rate 7.299 % | No. of Months 360 | Amortization Type: ☒ Fixed Rate  ☐ Other (explain):  ☐ GPM  ☐ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 105 TV ROAD, DOTHAN, AL 36301 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE TITLE | 0 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| ☒ Refinance  ☐ Construction-Permanent | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 2002 | $80,000.00 | $ 0.00 | Cash-Out/Home Improve | Cost: $ 0.00 |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in |
|---|---|---|
| CHERYL HALL | Individual | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| EQUITY |

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | CHERYL HALL | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| | (334)792-3682 | 07/01/1959 | 12 | | | | |

| ☒ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. ___ ages ___ | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no. ___ ages ___ |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent ___ No. Yrs. 2 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|
| 105 TV ROAD | |
| DOTHAN, AL 36301 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | ☐ Self Employed  Yrs. on this job | Name & Address of Employer | ☐ Self Employed  Yrs. on this job |
| DISABILITY | Yrs. employed in this line of work/profession 3 | | Yrs. employed in this line of work/profession |
| , AL | | | |
| Position/Title/Type of Business | Business Phone (incl. area code) (334)792-3682 | Position/Title/Type of Business | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | ☐ Self Employed | Dates (from - to) | Name & Address of Employer | ☐ Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

0503172917

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

C.H.

VMP-21N (0305)   VMP Mortgage Solutions (800)521-7291

**Hall-Frazier**
**Record - 000239**

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 1,302.75 | $ | $ 1,302.75 | Rent | $ 0.00 | |
| Overtime | 0.00 | | 0.00 | First Mortgage (P&I) | 0.00 | 383.89 |
| Bonuses | 0.00 | | 0.00 | Other Financing (P&I) | 0.00 | 0.00 |
| Commissions | 0.00 | | 0.00 | Hazard Insurance | 89.00 | 0.00 |
| Dividends/Interest | 0.00 | | 0.00 | Real Estate Taxes | 44.75 | 0.00 |
| Net Rental Income | 0.00 | | 0.00 | Mortgage Insurance | 0.00 | 0.00 |
| Other (before completing, see the notice in "describe other income," below) | 0.00 | 0.00 | 0.00 | Homeowner Assn. Dues | 0.00 | 0.00 |
| | | | | Other: | 0.00 | 0.00 |
| Total | $ 1,302.75 | $ | $ 1,302.75 | Total | $ 133.75 | $ 383.89 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ 0.00 | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | Name and address of Company | $ Payment/Months | $ |
| List checking and savings accounts below | | *** SEE ADDENDUM *** | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| FIRST UNION | | | | |
| | | Acct. no. | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| | $ 250.00 | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Stocks & Bonds (Company name/number & description) /0 | $ 0.00 | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | |
| Life insurance net cash value | $ 0.00 | | | |
| Face amount: $ 0.00 | | | | |
| Subtotal Liquid Assets | $ 250.00 | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 0.00 | | | |
| Vested interest in retirement fund | $ 0.00 | Name and address of Company | $ Payment/Months | |
| Net worth of business(es) owned (attach financial statement) | $ 0.00 | | | |
| Automobiles owned (make and year) | | | | |
| HONDA ACCORD | 15,000.00 | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | | | |
| OTHER | 3,000.00 | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 0.00 | |
| Total Assets a. | $ 18,250.00 | Net Worth (a minus b) | $ 18,250.00 | Total Liabilities b. $ 0.00 |

0503172917

VMP-23N (0305)    Page 2 of 4    Freddie Mac Form 65 01/04 / Fannie Mae Form 1003 01/04

## VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 0.00 |
| e. Estimated prepaid items | 1,980.00 |
| f. Estimated closing costs | 3,361.90 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 5,321.90 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits (explain) | |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 56,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 56,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -50,678.10 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☒ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ ☒ | ☐ ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ ☒ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☐ |
| h. Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☐ |
| j. Are you a U.S. citizen? | ☒ ☐ | ☐ ☐ |
| k. Are you a permanent resident alien? | ☐ ☒ | ☐ ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ ☐ | ☐ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☒ ☐ | ☐ ☐ |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 3-26-08 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

**BORROWER** ☐ I do not wish to furnish this information

Ethnicity: ☐ Hispanic or Latino ☒ Not Hispanic or Latino

Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☒ White

Sex: ☐ Female ☒ Male

**CO-BORROWER** ☒ I do not wish to furnish this information

Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino

Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White

Sex: ☐ Female ☐ Male

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | KRIS DILLON | Home Funds Direct |
| ☐ Face-to-face interview | Interviewer's Signature     Date | 1130 Northchase Parkway |
| ☐ Mail | 03/17/2008 | Suite 200 |
| ☒ Telephone | Interviewer's Phone Number (incl. area code) | Marietta, GA 30067-6420 |
| ☐ Internet | | |

0503172917
VMP -21N (0305)                    Page 3 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

**Continuation Sheet/Residential Loan Application**

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark **B** for Borrower or **C** for Co-Borrower. | Borrower: | Agency Case Number: |
|---|---|---|
| | HALL, CHERYL | |
| | Co-Borrower: | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 3-23-05 | X | |

0503172917

VMP -21N (0305)

Page 4 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

**Hall-Frazier**
**Record - 000242**

:NAL

&ny: Home Funds Direct
Toan: 15090 Avenue of Science
San Diego, CA 92128
-Locant(s): CHERYL HALL

perty Address:105 TV ROAD
DOTHAN, AL 36301

**GOOD FAITH ESTIMATE**

Loan Number: 0503172917
Sales Price: $0.00
Base loan Amount: $6,000.00
Total Loan Amount: $856,000.00
Type of Loan: Conventional Fixed
DatePrepared: March 25, 2005
Rate: 7.299   %Term:360/360 mos

The information provided below reflects estimates of the charges which are you are likely to incur at the settlement
your loan. The fees listed are estimates-the actual charges may be more or less. Your transaction may not
volve a fee for every item listed.
The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD 1 or
J-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1 A settlement statement
l show you the actual cost for items paid at settlement.

| D-1 or HUD-1A    DESCRIPTION OF CHARGES | Lender | OTHER |
|---|---|---|
| 1 Lender Credit to Borr. | $ | $ |
| 1 Origination Fee | $ 1,960.00 | $ |
| 2 Discount Points | $ | $ 300.00 |
| 3 Appraisal Fee | $ | $ |
| 4 Credit Report Fee | $ | $ |
| 5 Final Inspection/442 Fee | $ | $ |
| 7 Application Fee | $ | $ |
| 9 Yield Spread Premium (POC) / Rebate to Broker(POC) $   0.00 | $ | $ |
| 0 Processing Fee | $ 500.00 | $ |
| 1 Underwriting Fee | $ 500.00 | $ |
| 3 Appraisal Review Fee | $ 250.00 | $ |
| 5 Escrow Holdback Fee | $ | $ |
| 6 Funding Fee | $ | $ |
| 6 Courier Fee | $ | $ |
| 5 Warehouse Fee | $ | $ |
| 7 Reverif Fee | $ | $ |
| 8 Flood Cert/Life of Loan Fee | $ 9.50 | $ |
| 0 Tax Service Fee | $ 66.00 | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
| SUB-TOTALS | 3,285.50 | 300.00 |

| | | OTHER CHARGES |
|---|---|---|
| 1 Interest for 2 days    @ $ 11.2 per day | $ 22.40 | $ |
| 3 Hazard Insurance Premium | $ | $ |
| 4 Flood Insurance Premium | $ | $ |
| 101 Hazard Insurance 4 month(s) @   $89.00 | $ 356.00 | $ |
| 103 City Property Tax 0 month(s) @   $0.00 | $ | $ |
| 104 County Property Tax 7 month(s) @   $44.75 | $ 313.25 | $ |
| 105 School Tax 0 month(s) @   $0.00 | $ | $ |
| 106 Flood Insurance 0 month(s) @   $0.00 | $ | $ |
| 108 Agg. Acctg. Adjustment | $ 134.25 | $ |
| 101 Settlement / Closing Agent Fee | $ | $ 275.00 |
| 102 Abstract/Title Search Fee | $ | $ 200.00 |
| 103 Title Examination Fee | $ | $ 255.00 |
| 104 Title Insurance Binder | $ | $ |
| 105 Closing Agent/Attorney Doc Fee | $ | $ |
| 106 Notary Fee | $ | $ |
| 107 Demand Fee | $ | $ |
| 108 Title Insurance Premium | $ | $ 263.00 |
| 201 Recording Fee - Deed/Mortgage | $ | $ 129.00 |
| 202 City/County Tax- Deed/Mortgage | $ | $ |
| 203 State Tax - Deed/Mortgage | $ | $ 84.00 |
| 204 Misc Recording Fee | $ | $ 50.00 |
| 205 Transfer Tax | $ | $ |
| 301 Survey Fee | $ | $ |
| 302 Pest Inspection | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |

enders CFL License #

| TOTAL ESTIMATED SETTLEMENT CHARGES | ███ | $   5,321.90 |

P designation: The lender will require a particular provider from a lender-controlled or approved list. The specific provider and actual cost will
appear on the HUD-1 or HUD-1A.
These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the
HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real
property and the lender will take a first lien on the property. The undersigned acknowledges receipt of the booklet "Settlement Costs" and the Consumer
Handbook on ARM Mortgages, if applicable.

I Use of a particular provider of service is required and the estimate is based on charges of the provider. Please see attached Addendum.

**THIS DOES NOT CONSTITUTE A LOAN COMMITMENT**

Borrower CHERYL HALL                Date   3-25-05   Borrower                Date

Borrower                Date   Borrower                Date

Borrower                Date   Borrower                Date

Borrower                Date   Borrower                Date

MIN # 100176105031729174                HALL                Loan #  0503172917

Ami GFE-C.UPF                Page 1 of 1

Form **W-9**
Rev. January 2003)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give form to the requester.
Do not send to the IRS.

Name
**CHERYL HALL**

Business name, if different from above

Check appropriate box: ☐ Individual/Sole proprietor ☐ Corporation ☐ Partnership ☐ Other ▶ _____    ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)
**105 TV ROAD, ,**

Requester's name and address (optional)
Home Funds Direct
15090 Avenue of Science
San Diego, CA 92128

City, state, and ZIP code
**DOTHAN, AL 36301**

List account number(s) here (optional)

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Social security number
**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**

or

Employer identification number

Note: If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here
Signature of U.S. person ▶    Date ▶ 03/25/05

### Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

U.S. person. Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

Note: If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

Foreign person. If you are a foreign person, use the appropriate Form W-8 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

Nonresident alien who becomes a resident alien. Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

100176105031729174

0503172917

VMP-9030 (0306).01    Form **W-9** (Rev. 1-2003)
VMP Mortgage Solutions (800)521-7291

Page 1 of 4

Form W-9 (Rev. 1 2003)

Example. Article 20 of the U.S. China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S. China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments (29% after December 31, 2003; 28% after December 31, 2005). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 4 for details), or

3. The IRS tells you that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your **individual** name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note:** *You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.).*

### Exempt From Backup Withholding

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends.

**Note:** *If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.*

**Exempt payees.** Backup withholding is not required on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2);

2. The United States or any of its agencies or instrumentalities;

3. A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities;

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities; or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation;

7. A foreign central bank of issue;

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States;



10017610503172917 9174      0503172917

VWR 9030 (03DS).01      Page 2 of 4

Form W-9 (Rev. 1-2003)

9. A futures commission merchant registered with the Commodity Futures Trading Commission;

10. A real estate investment trust;

11. An entity registered at all times during the tax year under the Investment Company Act of 1940;

12. A common trust fund operated by a bank under section 584(a);

13. A financial institution;

14. A middleman known in the investment community as a nominee or custodian; or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| If the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt recipients 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC, are not exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services paid by a Federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN **in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner LLC that is disregarded as an entity separate from its owner (see Limited liability company (LLC) on page 2), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

**Note:** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form on-line at www.ssa.gov/online/ss5.html. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web Site at www.irs.gov.

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

 9030 (2008-01)

100176105031729174          0503172917

Form W-9 (Rev. 1-2003)

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see Exempt from backup withholding on page 2.

Signature requirements. Complete the certification as indicated in 1 through 5 below.

1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. Real estate transactions. You must sign the certification. You may cross out item 2 of the certification.

4. Other payments. You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have (previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or single-owner LLC | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship or single-owner LLC | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses this numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, or to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

10017610503172917417

0503172917

 -9030 (63001-01)

Page 4 of 4

Form **4506-T**
(January 2004)

### Request for Transcript of Tax Return

OMB No. 1545-1872

Department of the Treasury
Internal Revenue Service

▶ Do not sign this form unless all applicable parts have been completed.
Read the instructions on page 2.
▶ Request may be rejected if the form is incomplete, illegible, or any required
part was blank at the time of signature.

**TIP:** Use new Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first. | 1b First social security number on tax return or employer identification number (see instructions) |
|---|---|
| CHERYL HALL | |
| 2a If a joint return, enter spouse's name shown on tax return | 2b Second social security number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code
CHERYL HALL
105 TV ROAD , DOTHAN, AL 36301

**4** Address, (including apt., room, or suite no.) city, state, and ZIP code shown on the last return filed if different from line 3

**5** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

**Home Funds Direct**
15090 Avenue of Science San Diego, CA 92128

**CAUTION:** *Lines 6 and 7 must be completed if the third party requires you to complete Form 4506-T. Do not sign Form 4506-T if the third party requests that you sign Form 4506-T and lines 6 and 7 are blank.*

**6** Product requested. Most requests will be processed within 10 business days. If the product requested relates to information from a return filed more than 4 years ago, it may take up to 30 days. Enter the return number here and check the box below ▶

**a** Return Transcript, which includes most of the line items of a tax return as filed with the IRS. Transcripts are generally available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years □

**b** Account Transcript, which contains information concerning the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns □

**c** Record of Account, which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years □

**d** Verification of Nonfiling, which is proof from the IRS that you did not file a return for the year □

**e** Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2003, filed in 2004, will not be available from the IRS until 2005. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 □

**CAUTION:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

**7** Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T.

Signature of taxpayer(s). I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a
(334) 792-3682

| Sign Here | ▶ Signature (see instructions) | 3-25-05 Date |
|---|---|---|
| | Title (if line 1a above is a corporation, partnership, estate, or trust) | |
| | Spouse's signature | Date |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.

Cat. No. 37667N

Form **4506-T** (1-2004)

100176105031729174                    0503172917

VMP-9045T (0402).01)          Page 1 of 2          VMP Mortgage Solutions (800)521-7291

**Hall-Frazier**
**Record - 000248**

Form 4506-T (1-2004)

Page 2

## A Change To Note

- New Form 4506-T, Request for Transcript of Tax Return, is used to request tax return transcripts, tax account transcripts, W-2 information, 1099 information, verification of non-filing, and a record of account. Form 4506, Request for Copy of Tax Return, is now used only to request copies of tax returns.

## Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series) and one for all other transcripts.

**Note:** If you are requesting more than one transcript or other product and the chart below shows two different service centers, make your request to the service center based on the address of your most recent return.

## Chart for individual transcripts (Form 1040 series)

| If you lived in and filed an individual return: | Mail or fax to the Internal Revenue Service at: |
|---|---|
| Maine, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team 310 Lowell St. Stop 679 Andover, MA 01810 978-691-6859 |
| Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, West Virginia, Rhode Island | RAIVS Team 4800 Buford Hwy. Stop 91 Chamblee, GA 30341 678-530-5320 |
| Arkansas, Colorado, Kentucky, Louisiana, New Mexico, Oklahoma, Tennessee, Texas | RAIVS Team 3651 South Interregional Hwy. Stop 6716 Austin, TX 78741 512-460-2272 |
| Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington, Wyoming | RAIVS Team Stop 38101 Fresno, CA 93888 559-253-4992 |
| Delaware, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, South Dakota, Wisconsin | RAIVS Team Stop 841-6700 Kansas City, MO 64999 816-823-7667 |
| Ohio, Virginia | RAIVS Team 5333 Getwell Rd. Stop 2826 Memphis, TN 38118 901-546-4175 |

Connecticut, District of Columbia, Maryland, New Jersey, Pennsylvania, a foreign country, or A.P.O. or F.P.O. address — RAIVS Team DP SE 135 Philadelphia, PA 19255-0695 — 215-516-2931

## Chart for all other transcripts

| If you lived in: | Mail to the Internal Revenue Service at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | RAIVS Team Mail Stop 6734 Ogden, UT 84201 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800F Cincinnati, OH 45250 859-669-3592 |

**Line 1b.** Enter your employer identification number if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 7.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: Learning about the law or the form, 10 min.; Preparing the form, 11 min.; and Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Tax Products Coordinating Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send the form to this address. Instead, see Where to file on this page.

# IRS FORM 4506-T CONSENT

### *** Attention Borrower(s) and Closing Agent ***

The attached form, Request for Transcript of Tax Return (IRS FORM 4506-T),

## should not be dated.

Form 4506-T allows the lender and its assigns to request IRS records for the
purpose of comparing the IRS' information to the information submitted to the
lender in connection with underwriting and approving the loan. By signing
Form 4506-T, each borrower agrees to the foregoing and authorizes the lender
and its assigns to date the form at the time it is desired to be submitted to
the IRS.

Each borrower hereby acknowledges and agrees to the foregoing.

_____    3-25-05 _____

Borrower **CHERYL HALL**                              Date

MIN #   100176105031729174              **HALL**                    0503172917

610091.uff                        **Page 1 of 1**                    Rev 10/04

Hall-Frazier
**Record - 000250**

## COMPLIANCE AGREEMENT

| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br><br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

The undersigned borrower(s), in consideration of lender disbursing loan proceeds for the purchase or refinance of, or construction of improvements on the aforementioned property, agree(s), if requested by the lender or someone acting on behalf of said lender, to fully co-operate in adjusting for clerical errors, mistakes by the lender or by the broker, and all loan closing documentation deemed necessary or desirable, in the reasonable discretion of lender, to enable lender to sell, convey its interest in, seek guaranty of, or market said loan to any entity, including but not limited to, a secondary investor, the Federal National Mortgage Association (FNMA), the Federal Home Loan Mortgage Corporation (FHLMC), Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), or any Municipal Bonding Authority.

The undersigned borrower(s) agree(s) to sign or initial any original or new document requested by lender to correctly reflect the terms of said loan. This shall be done within a reasonable time of request by the lender to do so and failure or refusal to sign or initial any documents requested is an event of default allowing lender to take any action necessary to collect said loan.

In order to assure that the loan documentation executed this date will conform and be acceptable in the market place at the time of transfer, sale, or the conveyance by lender of its interest in and to the above mentioned property evidenced by said loan documentation, the undersigned borrower(s) do hereby so agree and covenant as aforesaid herein.

DATED effective this 25 day March , 2005

| _____ 3-25-05 | |
|---|---|
| Borrower<br>**CHERYL HALL**    Date | Borrower    Date |
| Borrower    Date | Borrower    Date |
| Borrower    Date | Borrower    Date |
| Borrower    Date | Borrower    Date |

STATE OF Alabama }
COUNTY OF Houston } SS

On 3-25-2005 before me, DIANE L. Hilson
Notary Public Name (printed)

personally appeared **CHERYL HALL**

☐ personally known to me -OR-    ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Diane L. Hilson
Alabama State
at Large

My Commission
Expires 3-06-06    Signature of Notary

MIN # 1001761050317291174    HALL    Loan # 0503172917
CMPLAGR1.UFF    Page 1 of 1    Rev. 10/04