## DISCLOSURE NOTICES

| Applicant(s)<br>CHERYL HALL | Lender:<br>Home Funds Direct<br>15090 Avenue of Science<br>San Diego, CA 92128 |
|---|---|
| | Date: March 25, 2005 |

Property Address
105 TV ROAD
DOTHAN, AL 36301

### AFFIDAVIT OF OCCUPANCY

The Applicant(s) hereby certify and acknowledge that, upon taking title to the real property described above, their occupancy status will be as follows:

[X]  Primary Residence - Occupied by Applicant(s) within 60 days of closing.

[ ]  Secondary Residence - To be occupied by Applicant(s) at least 15 days yearly, as second home (vacation, etc.), while maintaining
       principal residence elsewhere. (Please check this box if you plan to establish it as your primary residence at a future date (i.e., retirement)).

[ ]  Investment Property - Not owner occupied. Purchased as an investment to be held or rented.

The Applicant(s) acknowledge it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning this loan application as applicable under the provisions of Title 18, United States Code, Section 1014.

### FAIR CREDIT REPORTING ACT

An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of denied credit due to an unfavorable consumer report, you will be advised of the identity of the Consumer Reporting Agency making such report and of right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of Section 615(b) of the Fair Credit Reporting Act. You have the right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency if an adverse action is taken on your loan application. Under Section 612 of the Fair Credit Reporting Act you have the right to obtain within 60 days of an adverse action a free copy of the report from the consumer reporting agency. You also have the right to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

### EQUAL CREDIT OPPORTUNITY ACT

The Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on a basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. Income which you receive as alimony, child support or separate maintenance need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan. Income from these and other sources, including part-time or temporary employment, will not be discounted by this lender because of your sex or marital status. However, we will consider very carefully the stability and probable continuity of any income you disclose to us. The Federal Agency that administers compliance with this law concerning this creditor is:

**FEDERAL TRADE COMMISSION, EQUAL CREDIT OPPORTUNITY**
**ROOM 4037**
**WASHINGTON, D.C. 20580**

MIN # 100175105031729174                    HALL                    Loan #  0503172917
AHL DISCNTC1.UFF                    Page 1 of 3                    Rev. 05/04

## DISCLOSURE NOTICE

### GOVERNMENT LOANS ONLY

RIGHT TO FINANCIAL PRIVACY ACT OF 1978 - This is notice to you as required by the Right to Financial Privacy Act of 1978 that the Department of Housing and Urban Development or Department of Veterans Affairs has a right of access to financial records held by a financial institution in connection with the consideration of administration of assistance to you. Financial records involving your transaction will be available to the Department of Housing and Urban Development or Department of Veterans Affairs without further notice or authorization but will not be disclosed or released to another Government agency or Department without your consent except as required or permitted by law.

### EMPLOYMENT CERTIFICATION

An approval for a loan is based upon employment, income and obligations as shown on the loan application. At closing, the applicant and co-applicant/spouse, if applicable, are required to execute a sworn statement affirming that they are currently working as previously reported, have not received notice of layoff nor have knowledge of pending layoff, and that outstanding obligations are substantially the same as reported on the application. Should a change occur in your employment or financial status prior to loan closing, immediately notify your loan officer, as it will be necessary to obtain approval of any changes.

☐ ANTI-COERCION STATEMENT

The lender may not require the applicant to take insurance through any particular insurance agent or company to protect the mortgaged property. The applicant, has the right to have the insurance placed with an insurance agent or company of his choice, provided the company meets the requirements of the lender. The lender has the right to designate reasonable financial requirements as to the company and the adequacy of the coverage.

I have read the foregoing statement, and understand my rights and privileges and those of the lender relative to the placing of such insurance.

I have selected the following agencies to write the insurance covering the property described above:

EUGENE MCGRIFF-STATE FARM FIRE AND
_____
Insurance Company Name                                    Agent

PO BOX 1185, DOTHAN AL, 36302
_____
Agent's Address                          Agent's Telephone Number

☐ FLOOD INSURANCE NOTIFICATION

Federal regulations require us to inform you that the property used as security for this loan is located in an area identified by the Federal Emergency Management Agency (FEMA) as having special flood hazards and that in the event of damage to the property caused by flooding in a Federally-declared disaster, Federal disaster relief assistance, if authorized, will be available for the property.
At the closing you will be asked to acknowledge your receipt of this information. If you have any questions concerning this notice, kindly contact your loan officer.
IMPORTANT: Please notify your insurance agent that the "loss payable" clause for the mortgagee on both the hazard and flood insurance must read as follows, unless otherwise advised.

---

MIN # 100176185031729174                    HALL                    Loan #    0503172917
AHL DISCNTC2.UFF                            Page 2 of 3                        Rev. 05/04

## DISCLOSURE NOTICES

I/We hereby certify that I/we have read the Notices set forth above and fully understand all of the above. In addition to these Notices, I/we the applicant(s) certify that I/we have received the "Settlement Cost Booklet" and the "Consumer Handbook on Adjustable Rate Mortgages" (CHARM booklet), if applicable.

| | | | |
|---|---|---|---|
| Borrower  CHERYL HALL | Date  3-25-05 | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

MIN # 100176105031729174
AHL.DISCNTC3.UFF

HALL
Page 3 of 3

Lead # 0503172917
Rev. 05/04

## APPRAISAL DISCLOSURE

Borrower Name(s):
CHERYL HALL

Lender:
Home Funds Direct
15090 Avenue of Science
San Diego, CA 92128

0503172917

Property Address:
105 TV ROAD
DOTHAN, AL 36301

Date:
March 25, 2005

You have the right to a copy of the appraisal report used in connection with your application for credit. If you wish a copy, please write to us at the mailing address we have provided. We must hear from you no later than 90 days after we notify you about the action taken on your credit application or you withdraw your application.

| | |
|---|---|
| Contact: | Customer Service |
| Lender/Broker: | Home Funds Direct |
| Address: | Attention: Post Closing |
| | 16550 West Bernardo Dr. Bldg 1 |
| | San Diego, CA 92127-1870 |
| Telephone: | (877) 683-4466 |

In your letter, give us the following information:
Your Name
Your Address
Your Telephone Number

Borrower CHERYL HALL                Date 3-23-05

Borrower                Date                Borrower                Date

Borrower                Date                Borrower                Date

Borrower                Date                Borrower                Date

100176105031729174                                    0503172917

122 (0004).01                VMP MORTGAGE FORMS - (800)521-7291                12/93

# RESPA SERVICING DISCLOSURE

0503172917

Lender: **Home Funds Direct**
**15090 Avenue of Science**
**San Diego, CA 92128**

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights, *whether or not your loan servicing is transferred*. If you send a "qualified written request" to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1.  The following is the best estimate of what will happen to the servicing of your mortgage loan:

[x] We may assign, sell or transfer the servicing of your loan while the loan is outstanding.   [x] We are able to service your loan and we [ ] will [ ] will not [x] haven't decided whether to service your loan.

OR

[ ] We do not service mortgage loans, [ ] and we have not serviced mortgage loans in the past three years.

[ ] We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

[ ] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:

[ ] sell all of the mortgage servicing        [ ] retain all of the mortgage servicing
[ ] assign, sell or transfer _____ % of the mortgage servicing

2.  For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is between:

_____ [0 to 25%] or [NONE]   _____ 26 to 50%   _____ 51 to 75%   x   [76 to 100%] or [ALL]

This estimate [x] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3.  [x] We have previously assigned, sold or transferred the servicing of federally related mortgage loans.

OR

[ ] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| Year | Percentage of Loans Transferred (Rounded to nearest quartile - 0%, 25%, 50%, 75%, or 100%) |
|---|---|
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |

This information [x] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.

**March 25, 2005**                                    **Home Funds Direct**
Date                                                          Present Servicer or Lender

**ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT**

I/We have read this disclosure form and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

_signature_ **3-25-05** _____
Applicant **CHERYL HALL**    Date    Applicant    Date

_____    _____
Applicant    Date    Applicant    Date

-552R (9808).01

VMP MORTGAGE FORMS - (800)521-7291

12/94

0503172917

## ALABAMA
### Choice of Insurance Notice

| Loan Number | Date |
|---|---|
| 0503172917 | March 25, 2005 |

Borrower
CHERYL HALL

| Property Address | Lender |
|---|---|
| 105 TV ROAD | Home Funds Direct |
| DOTHAN, AL 36301 | 15090 Avenue of Science |
| | San Diego, CA 92128 |

The AL Code Section 5-19-20(e) requires that you receive written notification of your right to select insurance of your choice, when hazard insurance is required by the lender as a condition of the loan.

**Home Funds Direct**
shall not require that you, upon financing the purchase of real property or lending money on the security of real property, as a condition precedent, concurrent or subsequent to financing the purchase of such property or renewal or extension to lending money upon the security of a mortgage thereon, negotiate any policy of insurance or renewal thereof through a particular insurer, agent, solicitor or broker.

The lender reserves the right to approve or disapprove an insurer selected based on reasonable standards, such as financial soundness, services of insurer and required coverage.

Your acknowledgment below signifies that written notice was provided to you pursuant to the state statute.

CHERYL HALL

-1039(AL) (0105)       VMP MORTGAGE FORMS - (800)521-7291       5/01

0503172917

Date:           March 25, 2005          02:56PM

Stage:          60 - 60 - docs drawn stage

Borrower:       CHERYL HALL

Loan Number:    0503172917                                          **FINAL**

SECTION 32 CALCULATION
SUMMARY

| | |
|---|---|
| Section32: | NO |
| Purpose: | REFI, CASH-OUT |
| Occupancy: | Owner Occupied |
| Loan Term / Balloon Term: | 360   / 360 |
| PrePayment Penalty: | No |
| Total DTI: | 39.734% |
| Doc Type: | Full |
| APR: | 7.975 |
| T-Bill Rate: | 4.550% |
| Max Rate w/o Sec32: | 12.550% |
| Amount Financed: | $52,417.10 |
| Sec32 Pts/Fees: | $3,560.50 |
| Max Fees w/o Sec32: | $4,193.37 |

GOOD FAITH ESTIMATE
SUMMARY

| HUD-1 or HUD-1A DESCRIPTION OF CHARGES | Lender | | OTHER |
|---|---|---|---|
| 801  ORIGINATION FEE | $ | 1,960.00 | $    0.00 |
| 802  DISCOUNT FEE | $ | 0.00 | $    0.00 |
| 807  APPLICATION FEE | $ | 0.00 | $    0.00 |
| 810  PROCESSING FEE | $ | 500.00 | $    0.00 |
| 811  UNDERWRITING FEE | $ | 500.00 | $    0.00 |
| 812  DOCUMENT PREPARATION FEE | $ | 250.00 | $    0.00 |
| 813  APPRAISAL REVIEW FEE | $ | | |
| 814  REDRAW FEE | $ | 0.00 | $    0.00 |
| 815  ESCROW HOLDBACK FEE | $ | 0.00 | $    0.00 |
| 816  FUNDING FEE | $ | 0.00 | $    0.00 |
| 819  COURIER FEE | $ | 0.00 | $    0.00 |
| 825  WAREHOUSE FEE | $ | 0.00 | $    0.00 |
| 827  RE-VERIFICATION FEE | $ | 9.50 | $    0.00 |
| 828  ZONE DETERMINATION FEE | $ | 66.00 | $    0.00 |
| 829  TAX SERVICE FEE | $ | | $ |
| 830  LENDER SERVICE FEE | $ | | $ |
| 804  CREDIT REPORT FEE | $ | 0.00 | $    0.40 |

| | | | OTHER |
|---|---|---|---|
| 1101  CLOSING AGENT FEE | $ | | $    275.00 |
| 1105  CLOSING AGENT DOCUMENT FEE | $ | | $    0.00 |
| 1107  DEMAND FEE | $ | | $    0.00 |
| 1112  COURIER FEE - CLO | $ | | $ |

| | | | |
|---|---|---|---|
| INDIVIDUAL SUB-TOTALS | $ | 3,285.50 | $    275.00 |
| COMBINED SUB-TOTAL | | | $    3,560.50 |
| 901  ODD DAYS INTEREST | | | $    22.40 |
| TOTAL | | | $    3,582.90 |

| | |
|---|---|
| Loan Amount: | 56,000.00 |
| Rate: | 7.299% |
| Margin: | 0.000% |

600068.uff

## ADDITIONAL REQUIREMENT FORM

| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br><br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

Fax all items per Item 5 below
if original loan documents are not with lender

1. Closing agent in receipt of original handwritten & typed 1003's with correct loan amount & interest rate. Government Monitoring & Interviewer section to be completed.

2. Insured Closing Protection Letter - if applicable to your state - (fax if possible)

3. HUD to be a certified copy of the true original, must show all pay offs & fees paid to correct parties and all fees must match our loan documents.

4. HUD to be a certified copy of the true original, must show all pay offs & fees paid to correct parties and all fees must match our loan documents.

5. The day of disbursement (if loan package is not returned to lender during the rescission period) please fax a copy of the following fully executed items to:
   **(866) 539-7026**
   A. TRUTH IN LENDING
   B. NOTICE OF RIGHT TO CANCEL - ONE FOR EACH BORROWER (IF APPLICABLE
   C. OUTSTANDING CONDITIONS THAT MAY BE REQUIRED TO MEET OUR LOAN APPROVAL
   D. CERTIFIED COPY OF FINAL HUD-1 EXECUTED BY ALL
   E. FIRST PAGE AND SIGNATURE PAGE OF MORTGAGE AND ALL RIDERS
   F. COMPLETE NOTE WITH ALL RIDERS

Upon receipt & approval of above items, we will provide you written authorization to release funds.

You may not release funds on this transaction until you are in receipt of written authorization from the lender.

| _Jane Carcello_ | _05/28/05_ |
|---|---|
| Closing Officer | Date of Transaction |

| ~~signature~~  3-25-05 | |
|---|---|
| Borrower<br>**CHERYL HALL** Date | Borrower Date |
| Borrower Date | Borrower Date |
| Borrower Date | Borrower Date |
| Borrower Date | Borrower Date |

MIN # 100176105031729174                 HALL                 Loan #    0503172917
ADDLRQFM.UFF                 Page 1 of 1

## SIGNATURE / NAME AFFIDAVIT

DATE:        03/25/2005

LOAN #:      0503172917

BORROWER:    HALL, CHERYL

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

CHERYL HALL
(Print or Type Name)                              Signature

If applicable, complete the the following:
**I AM ALSO KNOWN AS:**

CHERYL R. HALL
(Print or Type Name)                              Signature

CHERYL H. FRAZIER
(Print or Type Name)                              Signature


(Print or Type Name)                              Signature


(Print or Type Name)                              Signature

I FURTHER CERTIFY THAT ALL THE ABOVE LISTED NAMES ARE ONE AND THE SAME PERSON.

State of _Alabama_

County of _Houston_

Subscribed and sworn (affirmed) before me
this _25_ day of _March 2005_

_Diane L. Hilson_
Notary Public name (printed)

_Diane L. Hilson_
Notary Public in and for
the State of _Alabama_
County of _Houston_
My Commission Expires. My Commission
Expires 3-06-06

MIN # 100176105031729174          HALL          Diane L. Hilson          Loan # 0503172917
610007.UFF                        Page 1 of 1    Alabama State            rev. 01/04
                                                 at Large

**Hall-Frazier**
**Record - 000260**

# PRIVACY POLICY

| Borrower Name(s):<br>CHERYL HALL | Lender:<br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

The trust of our customers is very important to **Home Funds Direct**. Keeping non public personal information about our customers in a secure environment and using that information only in accordance with this Privacy Policy is our top priority.

This Privacy Policy includes examples of the types on non public personal information **Home Funds Direct** collects. The provisions of this Policy apply to all our customers and consumers.

**Home Funds Direct** collects non public personal information about you from the following sources:

* Information we receive from you on applications or other forms;
* Information about your transactions with us or others; and
* Information we receive from a consumer reporting agency.

We do not disclose any nonpublic personal information about you to anyone, except as permitted by law. If you decide to pay off your loans (s), we will adhere to the privacy policies and practices as described in this notice.

**Home Funds Direct** restricts access to your personal and account information to those employees who need to know that information to provide products or services to you. **Home Funds Direct** maintains electronic and procedural safeguards that comply with federal regulations to guard your nonpublic information.

We may disclose all of the information we collect, as described above, to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

**Home Funds Direct** sells its mortgage loans into securitizations from time to time and, as permitted by law, disclosure of nonpublic information could result from such activity.

**Home Funds Direct** does not disclose nonpublic information about former customers or customers with inactive accounts, except in accordance with this privacy policy.

| Borrower<br>**CHERYL HALL** | Date<br>3-25-05 | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

## REQUEST FOR LOSS PAYABLE ENDORSEMENT

To: Agent or Broker

Name EUGENE MCGRIFF-STATE FARM FIRE

Add. PO BOX 1185

DOTHAN, AL 36302

Insured's Name & Address

Name CHERYL HALL

Add. 105 TV ROAD
DOTHAN, AL 36301

This letter is to advise you that I/we have, on **March 25, 2005**                granted a security interest on the property listed below, to the company listed as LENDER. Please issue your standard mortgage loss payable endorsement as instructed below. Mail the original endorsement and a copy of the policy to the lender named, at the address below.

The agent listed above is my/our voluntary selection of agents, as my/our choice and whose selection was not a condition precedent to this loan. Said designation may be revoked hereafter by written notice to the party named.

Property Add. 105 TV ROAD
            DOTHAN, AL 36301
Lender: Home Funds Direct                              Indebtedness $56,000.00
        1130 Northchase Parkway
        Marietta, GA 30067-6420                        Term: 360              Months

                        EUGENE MCGRIFF-STATE FARM FIRE AND CASUA PO BOX 1185
Insurance Company: DOTHAN, AL 36302

Phone No.                          Policy No. 01-GP-2037-2

Endorsement should show lender as:     **See mortgage loss payable endorsement below**

[x] First        [ ] Second        [ ] Third        [ ] Other                          Mortgagee

Lender as a condition of the loan in addition to the fire and casualty protection [ ] Requires  [x] Does not require a Flood insurance policy in the amount of the indebtedness covering the real property listed above.

If I/we fail to furnish a valid insurance policy or written evidence from an insurance company for all the required coverages within 15 days, I/we hereby agree to pay LENDER or its assignees any earned premium and costs for any policy they may have to place to comply with this requirement.

Thank you in advance for your prompt attention.

**Mortgagee loss payable endorsement**
Home Funds Direct
A Division of Accredited Home Lenders, Inc.
A California Corporation,
Signatures:                                        it's successors and/or assigns
                                                   P.O. Box 10436
                                                   Van Nuys, CA 91410-0436

CHERYL HALL

-898 (0003)                        VMP MORTGAGE FORMS - (800)521-7291              3/00
                        HALL          0503172917

## Initial Escrow Account Disclosure Statement

Date: 03/25/2005    Loan Number: 0503172917    Case Number:

Servicer's Name and Address:
Accredited Home Lenders
Escrow Administration
15050 Avenue of Science 200
San Diego, CA 92128

Borrowers:
CHERYL HALL

Toll Free Number: 877-683-4466

Property Address:
105 TV ROAD
DOTHAN, AL 36301

Mailing Address:
105 TV ROAD
DOTHAN, AL 36301

This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account.

| Month (or Period) | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| Initial Deposit: | | | $ | 535.00 |
| Jun 05 | 133.75 | 0.00 | | 668.75 |
| Jul 05 | 133.75 | 0.00 | | 802.50 |
| Aug 05 | 133.75 | 0.00 | | 936.25 |
| Sep 05 | 133.75 | 0.00 | | 1,070.00 |
| Oct 05 | 133.75 | 0.00 | | 1,203.75 |
| Nov 05 | 133.75 | 0.00 | | 1,337.50 |
| Dec 05 | 133.75 | 537.00 | County Prop. Tax | 934.25 |
| Jan 06 | 133.75 | 0.00 | | 1,068.00 |
| Feb 06 | 133.75 | 0.00 | | 1,201.75 |
| Mar 06 | 133.75 | 1,068.00 | Hazard Ins. Impounds | 267.50 |
| Apr 06 | 133.75 | 0.00 | | 401.25 |
| May 06 | 133.75 | 0.00 | | 535.00 |

(PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.) Cushion selected by servicer: $ _____ 267.50

[x] Your monthly mortgage payment for the coming year will be $ 517.64 of which $383.89 will be for principal and interest and $ 133.75 will go into your escrow account, and $0.00 will be for discretionary items (such as life insurance, disability insurance) that you chose to be included with your monthly payment.

[ ] Your first mortgage payment for the coming year will be $ of which $ will be for principal and interest and $ will go into your escrow account, and $ will be for discretionary items (such as life insurance, disability insurance) that you chose to be included with your monthly payment. The terms of your loan may result in changes to the monthly principal and interest payments during the year.

503X (9R02).01    2/98
VMP MORTGAGE FORMS (800)521-7291

## HAZARD INSURANCE AUTHORIZATION & REQUIREMENTS

Lender: **Home Funds Direct**

Date: **March 25, 2005**
Loan Number: 0503172917

Escrow Company: SWAFFORD & HAYES SETTLEMENT SERVICES INC
9041 EXECUTIVE PARK DRIVE, KNOXVILLE, TN, 37923

Escrow Number: 05-2813

Borrower Name(s): CHERYL HALL

Property Address: 105 TV ROAD
DOTHAN, AL 36301

AN ACCEPTABLE HAZARD INSURANCE POLICY, WITH ENDORSEMENTS AND/OR ASSIGNMENTS, MUST BE IN
LENDER'S OFFICE BEFORE THIS LOAN CAN BE FUNDED; OTHERWISE, LENDER MAY BE FORCED TO PLACE
INTERIM COVERAGE ON THE PROPERTY AT AN ADDITIONAL COST TO THE BORROWER(S).

Your Lender may require that you or your Insurance Agency provide the "ORIGINAL POLICY", but
generally, a "Binder" or a "Certificate of Evidence of Insurance" is acceptable. Ask your
Lender which they will accept.  Please forward all policies, assignments and/or endorsements
to Lender at the above address, "ATTENTION: LOAN PROCESSING."

Listed below are your Lender's policies and procedures, and minimum requirements for Hazard
Insurance coverage.

1.  The amount of coverage provided by the policy must be no less than the lesser of: 1) the
replacement value of the improvements on the above referenced property as established by the
insurance company providing coverage, or 2) an amount equal to the sum of this loan amount
plus the balances of all other existing liens.
2.  The insurance company providing coverage must have a "B+" rating or better in the latest
edition of "Best's Insurance Guide",  must be licensed to do business in the state in which
property is located, and must be licensed to transact the lines of insurance  required.
3.  The Policy must provide at least "Broad Form" coverage on properties of one to four units,
and at least "Vandalism & Malicious Mischief" on properties with over four units. WITH NO
DEVIATION.  Home owners policies must provide coverage equal to "HO3" form.
4.  Deductibles may not be greater than the lesser of 1) $1,000.00 or 2) one percent (1.0%) of
the coverage amounts determined using the guidelines in Requirement #1 above (This limit
applies for loans secured by residential properties of 1 to 4 units which may be sold to or
originated for either.  Federal National Mortgage Association, Federal Home Loan Mortgage
Corporation, FHA or VA).  Your Lender's deductible requirements may be more stringent; if so,
you will be notified of your Lender's requirements prior to funding.
5.  The Policy must provide coverage for a term of at least one year.  Premiums may be paid on
an annual installment basis only if the policy provides that the Lender will be notified in
writing of cancellation 30 days prior to expiration of coverage, for any cause.
6.  If a policy of coverage is already "in force" (typical in refinance transactions) which
expires within six months from the date of the recording of this loan, Lender may require
renewal of said policy for a term as required in #5 above.
7.  All forms and endorsements pertaining to the Lender's requirements must appear on the
"Declaration Page" of policy.
8.  For loans which have Hazard Insurance premiums impounded by the Lender, when notifying
Lender of any new policy or changes of Insurance Carrier, said notification must be
accompanied by a signed "Broker of Record Authorization".
9.  Verification of renewal of insurance policies must be in lender's office at least thirty
days prior to the expiration date of the
policy.  If this requirement is not met, LENDER OR ITS SUCCESSORS AND/OR ASSIGNS MAY AT THEIR
OPTION, BUT WITHOUT THE OBLIGATION TO DO SO, PROVIDE COVERAGE TO REPLACE ANY EXPIRING POLICIES
WHICH HAVE NOT BEEN PROPERLY RENEWED.  Premiums for such coverage shall be remitted promptly
by the undersigned, or Lender may charge borrower's account for the cost thereof.
10.  Lender's Loss Payable Endorsement 438 BFU for the 1st    Trust Deed to be affixed to
policy in favor of: Home Funds Direct
A Division of Accredited Home Lenders, Inc.
A California Corporation,
it's successors and/or assigns
P.O. Box 10436
Van Nuys, CA 91410-0436

RE: LOAN NO: 0503172917
11.  The property address and the insured's names must be designated on the policy exactly as
on the ALTA Title Policy.
12.  The Lender's loan number must appear on the policy and on any subsequent endorsements.
13.  The effective date of new policies, endorsements, and/or assignments shall be as of, or
prior to, the date of recording of this loan.
14.  Please notify your agent to forward future premium notices directly to you.
15.  If the security property is a condominium, the Master Policy must contain a minimum of
$1,000,000.00 coverage for "Directors & Officers' liability.  A copy of the Master Policy, or
a certificate showing proof of coverage for both the Homeowners Association and the
Condominium unit owner, must be submitted to the Lender prior to funding.

BY SIGNING BELOW, each of the undersigned acknowledges that he or she has read, understands
and accepts the foregoing provisions and insurance requirements.  This authorization shall
remain irrevocable for the undersigned as owner(s) of the property, and for any assignee(s),
for as long as this loan remains on the subject property.

Borrower CHERYL HALL                        Borrower

Borrower                                    Borrower

Borrower                                    Borrower

Borrower                                    Borrower

610030.UFF

## GENERAL AUTHORIZATION AND BORROWER'S CERTIFICATION

| Borrower Name(s):<br>CHERYL HALL | Lender:<br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
|---|---|
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

### CERTIFICATION

The Undersigned certify the following:

1. I/We have applied for a mortgage loan from Lender. In applying for the loan, I/we completed a loan application containing various information on the purpose of the loan, the amount and source of the down payment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that in the event the loan is processed under a reduced documentation program, Lender reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine, or imprisonment, or both to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### AUTHORIZATION TO RELEASE INFORMATION

To Whom It May Concern:

1. I/We have applied for a mortgage loan from Lender. As part of the application process, Lender may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to Lender, and to any investor to whom Lender may sell my mortgage, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. Lender or any investor that purchases the mortgage may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to Lender or the investor that purchased the mortgage is appreciated.

Privacy Act Notice: This information is to be used by the agency collecting it in determining whether you qualify as a prospective mortgagor under the program. It will not be disclosed outside the agency without your consent as required and permitted by law, you do not have to give us this information, but if you do not your approval as a prospective mortgagor may be delayed or rejected. The information requested in this form is authorized by Title 38, U.S.C. Chapter 37 (if VA); By 12 U.S.C., Section 1701 et., seq. if (HUD/FHA); and Title 42

| _(signature)_ 3-25-05 | |
|---|---|
| Borrower  Date<br>CHERYL HALL | Borrower  Date |
| Borrower  Date | Borrower  Date |
| Borrower  Date | Borrower  Date |
| Borrower  Date | Borrower  Date |

MIN # 100176105031729174          HALL          Loan # 0503172917
GNATBRCT.UFF                       Page 1 of 1

## NOTICE TO BORROWER
### *NOT IN*
### SPECIAL FLOOD HAZARD AREA

Borrower: HALL, CHERYL                                                    Loan #: 0503172917

Property Location: 105 TV RD
                   DOTHAN, AL 36301

National Flood Insurance Program Community: DOTHAN, CITY OF

This Notice Date is as of: 03/18/05

Attached is the completed Standard Flood Hazard Determination Form that indicates that the improved real
estate or mobile home securing your loan is not located in an area designated by the Director of the Federal
Emergency Management Agency ("FEMA") as a Special Flood Hazard Area ("SFHA"). As a result of this
determination, you will not be required to obtain mandatory flood insurance in connection with the making of
your loan.

However, your home may be near a SFHA. As such you, or your lender, may want to consider the advisability
of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to the
coverage types and amounts available to you and make your own determination as to whether you desire any
such coverage.

If, however, at any time during the term of your loan the improved real estate or mobile home securing your
loan is, due to re-mapping by FEMA or otherwise, located in an area that has been identified by the Director of
FEMA as an area having special flood hazards and in which flood insurance is available under the National
Flood Insurance Program, you will be so notified and advised that you must obtain an appropriate amount of
flood insurance coverage. If, within 45 days after we send you such notification, you fail to purchase flood
insurance in an amount not less than the amount we advise you is necessary, we shall purchase such flood
insurance on your behalf at your expense, as we are authorized to do in accordance with the provisions of the
Flood Disaster Protection Act of 1973, as amended.

I/We, the undersigned borrower(s)/applicant(s), hereby understand and agree to all the above.

_____        3-05-05        _____
Borrower/Applicant                      Date    Borrower/Applicant                      Date

_____        _____
Borrower/Applicant                      Date    Borrower/Applicant                      Date

_____        _____
Borrower/Applicant                      Date    Borrower/Applicant                      Date

https://www.floodcert.com/main/findorder.do?printable=1&floodCertNum=0503844472                3/18/2005

## HARDSHIP NOTICE

| | |
|---|---|
| Borrower Name(s):<br>**CHERYL HALL** | Lender:<br><br>**Home Funds Direct**<br>**15090 Avenue of Science**<br>**San Diego, CA 92128** |
| Property Address:<br>**105 TV ROAD**<br>**DOTHAN, AL 36301** | Date:<br>**March 25, 2005** |

I/We are aware that my/our first payment is due on **May 1, 2005** and I/we will make a full payment on that date. I/We realize that my/our first payment is less than thirty (30) days from the date of funding and this does not create a financial hardship on me/us.

| | | | |
|---|---|---|---|
| Borrower<br>**CHERYL HALL** | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

MIN # 100176105031729174      HALL      Loan # 0503172917
HRDSHNTC.UFF      Page 1 of 1

# CREDIT SCORE NOTICE

| Borrower Name(s): | Lender: |
|---|---|
| CHERYL HALL | Home Funds Direct |
| | 15090 Avenue of Science |
| | San Diego, CA 92128 |
| | (866) 487-4350 |
| | Date: |
| | March 25, 2005 |

## NOTICE TO THE HOME LOAN APPLICANT

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

One or more of the following consumer reporting agencies will provide the credit score:

| Experian | Equifax Credit Information Services | Trans Union |
|---|---|---|
| P.O. Box 2002 | P.O. Box 740241 | P.O. Box 4000 |
| Allen, TX 75013 | Atlanta, GA 30374 | Chester, PA 19016 |
| 1-888-397-3742 | 1-800-685-1111 | 1-866-887-2673 |

Your acknowledgment below signifies that this written notice was provided to you.

| | | |
|---|---|---|
| Borrower CHERYL HALL    Date 3-25-05 | Borrower    Date |
| Borrower    Date | Borrower    Date |
| Borrower    Date | Borrower    Date |
| Borrower    Date | Borrower    Date |

100176105031729174                                    0503172917

VMP-140 (0410)                VMP Mortgage Solutions, Inc. (800)521-7291                10/04

Date:       March 25 , 2005        02:56PM
Stage:      60 - 60 - docs drawn stage
Borrower:   CHERYL HALL

Loan Number:   0503172917                              FINAL

## HIGH COST LOAN SUMMARY

| | |
|---|---|
| State Test Failed: | No |
| State: | AL |

| | |
|---|---|
| Lien Position: | 1st |
| Purpose: | REFI, CASH-OUT |
| Occupancy: | Owner Occupied |
| Property Type: | SFR - Detached |
| # of Units: | 1 |
| Doc Type: | Full |
| Interest Rate: | 7.299 |
| Loan Term / Balloon Term: | 360/360 |
| Loan Amount: | 56,000.00 |
| Prepayment Penalty: | No |

| | |
|---|---|
| APR: | 7.975 |
| T-Bill Rate: | 4.550% |
| Max Rate: | 0.000% |
| Reduce APR By: | 0.000% |
| Amount Financed: | $52,417.10 |
| State Pts/Fees: | $0.00 |
| Max Fees: | $0.00 |
| Reduce Fees By: | $0.00 |

MIN #   100176105031729174                HALL                Loan #   0503172917
HICTLNSM.UFF                           Page 1 of 1

Addendum for Loan # : 0503172917 - HALL, CHERYL

--- LIABILITIES ---

| | | |
|---|---|---|
| Creditor | :Subject Loan | |
| Address | : | Acct. #    : |
| | | Balance    : $0.00 |
| C/S/Z | : | Payment    : [$0.00] |
| Acct. Type | :Mortgage | Rem. Term  :    0 |
| In Name Of | : | |

| | | |
|---|---|---|
| Creditor | :THE CR STR/PROVIDIAN | |
| Address | : | Acct. #    : |
| | | Balance    : *$785.00 |
| C/S/Z | : | Payment    : [$0.00] |
| Acct. Type | :Installment | Rem. Term  :    0 |
| In Name Of | : | |

| | | |
|---|---|---|
| Creditor | :PALISADES | |
| Address | : | Acct. #    : |
| | | Balance    : *$694.00 |
| C/S/Z | : | Payment    : [$0.00] |
| Acct. Type | :Installment | Rem. Term  :    0 |
| In Name Of | : | |

| | | |
|---|---|---|
| Creditor | :HOLLOWAY CREDIT | |
| Address | : | Acct. #    : |
| | | Balance    : *$452.00 |
| C/S/Z | : | Payment    : [$0.00] |
| Acct. Type | :Installment | Rem. Term  :    0 |
| In Name Of | : | |

| | | |
|---|---|---|
| Creditor | :SMALL  LNS | |
| Address | : | Acct. #    : |
| | | Balance    : *$399.00 |
| C/S/Z | : | Payment    : [$0.00] |
| Acct. Type | :Installment | Rem. Term  :    0 |
| In Name Of | : | |

| | | |
|---|---|---|
| Creditor | :CRDT MGT | |
| Address | : | Acct. #    : |
| | | Balance    : *$182.00 |
| C/S/Z | : | Payment    : [$0.00] |
| Acct. Type | :Installment | Rem. Term  :    0 |
| In Name Of | : | |

| | | |
|---|---|---|
| Creditor | :FRIEDMANS JEWELERS | |
| Address | : | Acct. #    : |
| | | Balance    : *$400.00 |
| C/S/Z | : | Payment    : *$0.00 |
| Acct. Type | :Installment | Rem. Term  :    0 |
| In Name Of | : | |

| | | |
|---|---|---|
| Creditor | :ARMY AVIATION CENTER FCU | |
| Address | : | Acct. #    : |
| | | Balance    : *$54,594.49 |
| C/S/Z | : | Payment    : *$0.00 |
| Acct. Type | :Mortgage | Rem. Term  :    0 |
| In Name Of | : | |

| | | |
|---|---|---|
| Creditor | :ALABAMA APPRAISAL SERVICES | |
| Address | : | Acct. #    : |
| | | Balance    : *$300.00 |
| C/S/Z | : | Payment    : *$0.00 |
| Acct. Type | :Mortgage | Rem. Term  :    0 |
| In Name Of | : | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date: | Co-Borrower's Signature | Date: |
|---|---|---|---|
| X | 3-25-03 | X | |

Addendum for Loan # : 0503172917    HALL, CHERYL

--- LIABILITIES ---

| | | |
|---|---|---|
| Creditor | :State Farm Insurance | Acct. # : |
| Address | : | Balance : *$1,068.00 |
| | | Payment : *$0.00 |
| C/S/Z | : | Rem. Term : 0 |
| Acct. Type | :Mortgage | |
| In Name Of | : | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | 3-25-05 | X | |

Hall-Frazier
Record - 000271



hp officejet 5500 series 5510          Personal Printer/Fax/Copier/Scanner

Log for
Diane Hilson
334-794-9404
9/13/2005 6:15PM

Last Transaction

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| 03/13 | 06:13p | Fax Sent | 18659341236 | 1:52 | 4 | OK |

I Cheryl Hall am borrowing against my home for home improvement reasons, as I am the caretaker of a disabled individual residing permanently at my residence, improvements will be made to add easy access and comfort throughout the home.

**Swafford & Hays Settlement Services, Inc.**
**Privacy Policy**

**Borrower Name(s):** Cheryl Hall _____

**Date** 3-25-05

The trust of our customers is very important to Swafford & Hays Settlement Services, Inc. Keeping non-public personal information about our customers in a secure environment and using that information only in accordance with the Privacy Policy is our top priority.

This Privacy Policy includes examples of the types on non-public personal information Swafford & Hays Settlement Services, Inc. collects. The provisions of this Policy apply to all our customers and consumers.

We do no disclose any nonpublic personal information about you to anyone, except as permitted by law.

Swafford & Hays Settlement Services, Inc. restricts access to your personal and account information to those employees who need to know that information to provide service to you. Swafford & Hays Settlements Services, Inc. maintains electronic and procedural safeguards that comply with federal regulations to guard your nonpublic information.

We may disclose all of the information we collect to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

_____ 3-25-05 _____

**Borrower Signature**     **Date**     **Borrower Signature**     **Date**

File No: 05-2813

## AFFIDAVIT

The undersigned affiant(s) do hereby state the following:

1. That there are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between 03/25/2005 and the recording of the interest to be insured.

2. That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured.

3. That there are no unrecorded special assessment liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to that county or municipality.

The real estate and improvements referred to herein are situated in the County of Houston, State of AL, and described as follows, to-wit:

105 TV Road, Dothan, AL 36301

3-25-05
_____
Date

_____
Cheryl Hall

_____    _____

_____    _____

_____    _____

STATE OF AL

COUNTY OF Houston

Sworn to and subscribed before me this .

My Commission expires: **My Commission Expires 3-06-06**

Diane L. Hilson
Notary Public
Alabama State
at Large

Loan Number 0501179912

File No: 05-2813

# AFFIDAVIT AS TO LIENS AND ENCUMBRANCES

equipment which are now installed in or upon said real property, or in the improvements thereon.

Affiant further says that there are no outstanding deeds of trusts, mortgages, judgement liens, mechanic's or materialmen's liens filed of record or unfilled claims or any other liens or encumbrances of any form of taxes, (including, property, real property, county, city, village, township or water/sewer) of any kind expect as follows:

Affiant on behalf of said Owner of Property and/or General Contractor does for a valuable consideration hereby agree and guarantee to hold None (by reason of the fact that it has issued its title insurance policies), harmless against any liens, claims or suit of or by any general contractor, subcontractor, mechanic or materialman, and against chattel mortgages, conditional bills of sales, retention of title agreements, security agreements, financing statements, or personal property leases in connection with the construction, repair or sale of such building or improvements on said real estate.

The real estate and improvements referred to herein are situated in the County of Houston, State of AL, and are described as follows, to-wit:

105 TV Road, Dothan, AL 36301

| | |
|---|---|
| 3-25-05 | Cheryl Hall |
| Date | |

STATE OF AL
COUNTY OF Houston

Sworn to and subscribed before me this .

My Commission Expires:

My Commission
Expires 3-06-06

Diane L Hilson
Notary Public

Diane L Hilson
Alabama State
at Large
Lnsa No. 050317291?

Hall-Frazier
**Record - 000276**



*Barry L. Ferguson*
*251-978-0127*

*Sherri B. Ferguson*
*251-752-4611*

### *SAND DOLLAR TITLE RESEARCH*
**12246 Venice Blvd.**
**Foley, AL. 36535**
**251-955-2784 (Phone)**
**251-955-5276 (Fax)**
**blfsbf@gulftel.com**

TO: Earl P. Underwood, Jr., Esquire
RE: Subpoena Request for Documents
DATE: April 3, 2008

Dear Mr. Underwood:

This letter is in regards to the Subpoena in the United States District Court, Southern District of Alabama, Jonathan Edwards, et al, V. Accredited Home Lenders, Inc., et al, Case Number 1:07-CV-00160-KD-C. The Subpoena requested copies of all invoices on work done for Lender's First Choice for the last 24 months.

My procedures regarding billing to Lenders First Choice have always been conducted in the same manner since we began a working relationship. Lenders First Choice would fax an order request to Sand Dollar Title Research for completion. On their cover sheet, at the bottom of the first page, was a section that already contained the pre-agreed price for the particular search, along with a blank which required addition of the copy charges. This cover always accompanied the completed search report back to Lenders First Choice, and they paid according to the cover sheet price. There have never been any invoices generated by Sand Dollar Title Research to Lenders First Choice, as they paid automatically from the search request sheet upon its return. They were always very prompt with their payment. Sand Dollar Title Research kept a hard copy of each search request until payment was received and for a period of up to 30 days after payment in case of questions. After that date, the search and all accompanying documents were destroyed. Almost all of these searches were current owner requested searches and provided no long term benefit for Sand Dollar Title Research to retain. I cannot speak of the procedures of Lenders First Choice for closed files.

I sincerely hope this is a satisfactory reply, even though it may not be exactly what you were looking for in your discovery request. I have disclosed all of my usual and customary business practices by and between Sand Dollar Title and Lenders First Choice. I have signed the Affidavit attached for verification of the procedures by and between Sand Dollar Title Research and Lenders First Choice. If I can be of further assistance to you please contact me.

Sincerely,

Barry L. Ferguson
Sand Dollar Title

# DECLARATION BY CUSTODIAN OF RECORDS FOR

## Barry L. Ferguson d/b/a Sand Dollar Title Research

I declare that

1.  I am the duly authorized Custodian of Records for Barry L. Ferguson, d/b/a Sand Dollar Title Research;  I am familiar with the procedures and practices for the creation and matters set forth by, or from information transmitted by, a person with knowledge of those matters.

4.  I certify that the record(s) was (were) kept in the course of the regularly conducted activity.

5.  I certify that the record(s) was (were) made by the regularly conducted activity as a regular practice.

6.  The record(s) produced with this declaration is (are) a true duplicate(s) of domestic record(s) pertaining to the matters described in the subpoena.  There are no other records described in the subpoena, copies of which have not been produced with this declaration.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.
Executed this 2nd day of April , 2008, in Foley , Alabama
City    State

Barry J. Ferguson
Signature

BARRY L. FERGUSON
Printed Name

12246 Venice Blvd.
Address

Foley, AL. 36535
Address

RE: Jonathan Edwards, et al. v. Accredited Home Lenders, Inc., et al.
S.D.Ala 1:07-cv-00160-KD-C

**Hall-Frazier**
**Record - 000278**

## SOUTHERN LAND & TITLE, LLC
1136 Forrest Avenue   Gadsden, AL  35901
P. O. Box 1665 Gadsden, AL  35902
solandtitle@microxl.com

Jason E. Knowles, J.D.                                    Telephone 256-543-1361
Norman R. Dasinger, Jr.                                          Fax 256-543-1377

### May 28, 2008

Earl T. Underwood, Jr.
P.O. Box 969
Fairhope, Alabama 36533-0969

**Re: Cheryl H. Frazier v. Accredited Home Lenders, Inc.**
**United States District Court, Middle District of Alabama**
**Case #: 1:08-CV-00011-MHT-SRW**

Dear Earl:

I am co-owner of Southern Land & Title, LLC, and also an attorney (Knowles Law Firm, LLC).  I have executed the Declaration By Custodian Of Records for Southern Land & Title, LLC, and provided copies of the documents requested in your subpoena.

In March 2005, Southern Land & Title, LLC, performed a current owner search on the subject property pursuant to an order received from Swafford & Hays Services, Inc., for whom we did many searches from January 2005 until February 2008.  We hired Cindy Barnes, an abstractor in Dothan, Alabama, to perform the search for us.  Mrs. Barnes performed a current owner search and provided a handwritten title search report, along with copies of relevant documents.  We sent the title report and documents to Swafford and billed Swafford $72.00, for our work.

The documents enclosed and the information in this letter are the only information we have about the closing of the property of Cheryl Hall Frazier at 105 TV Road, Dothan, Alabama, on March 25, 2005.  I think a deposition of any representative of Southern Land & Title, LLC, would be a gigantic waste of

**Hall-Frazier**
**Record - 000279**

everyone's time, but we will accommodate you as necessary.  Please let me know if
you need anything further.  I appreciate your attention to this matter.

Sincerely,

Jason Knowles

## DECLARATION BY CUSTODIAN OF RECORDS FOR

### SOUTHERN LAND & TITLE, LLC

I declare that

1.    I am the duly authorized Custodian of Records for **SOUTHERN LAND & TITLE, LLC**;  I am familiar  with the procedures and practices for the creation and maintenance of records by  **SOUTHERN LAND & TITLE, LLC**, and that I have the authority to certify said records.

2.    Concurrently produced with this declaration are a duplicate (or duplicates) of a domestic record(s) of **SOUTHERN LAND & TITLE, LLC**'s regularly conducted activity, more particularly described in the attached Schedule of **SOUTHERN LAND & TITLE, LLC**'s Authenticated Documents.

3.    I certify that the record(s) was (were) made at or near the time of the occurrences of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

4.    I certify that the record(s) was (were) kept in the course of the regularly conducted activity.

5.    I certify that the record(s) was (were) made by the regularly conducted activity as a regular practice.

6.    The record(s) produced with this declaration is (are) a true duplicate(s) of domestic record(s) pertaining to the matters described in the subpoena.  There are no other records described in the subpoena, copies of which have not been produced with this declaration.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this _28th_ day of _MAY_ , 2008, in _Gadsden_ , _Alabama_ .
                                                          City          State

_Jason Knowles_
Signature

_Jason Knowles_
Printed Name

_1136 Forrest Avenue_
Address

_Gadsden AL 35901_
Address

RE: Cheryl Hall Frazier v. Accredited Home Lenders, Inc., et al.
M.D.Ala 1:08-cv-00011-MHT-SRW

**Schedule of CUSTODIAN OF RECORDS**
**SOUTHERN LAND & TITLE, LLC**
**Authenticated Documents**

The following documents are being produced pursuant to the attached DECLARATION BY CUSTODIAN OF RECORDS FOR **SOUTHERN LAND & TITLE, LLC**:

1. Document Name: _Customer Balance Detail_

   Description of Document _Statement of all invoices from Southern Land & Title LLC to Swafford Settlement Services from Jan. 5, 2005, through Feb. 18, 2008_

2. Document Name: _Order from Swafford + Hays Services, Inc._

   Description of Document _order from Swafford dated 3-18-05; also used as cover page for title report by Southern Land + Title to Swafford, dated 3-21-05_

3. Document Name: _Title Report + supporting documents_

   Description of Document _Title report was completed by Cindy Barnes, an abstractor in Dothan, AL, hired by Southern Land + Title_

4. Document Name: _Fax cover sheet dated 3-23-05_

   Description of Document _Fax cover sheet with deed copy and one page of a chain of title sheet, prepared by employee Jana Ferguson_

RE:Cheryl Hall Frazier v. Accredited Home Lenders, Inc., et al.  1:08-cv-11-MHT

5.    Document Name: _____

      Description of Document _____

      _____

      _____

      _____


6.    Document Name: _____

      Description of Document _____

      _____

      _____

      _____


7.    Document Name: _____

      Description of Document _____

      _____

      _____

      _____


8.    Document Name: _____

      Description of Document _____

      _____

**RE:Cheryl Hall Frazier v. Accredited Home Lenders, Inc., et al.  1:08-cv-11-MHT**

Hall-Frazier
Record - 000283

9:11 AM

05/28/08

Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| **Swafford Settlement Services** | | | | | | | 37,644.00 |
| Invoice | 1/5/2005 | 7205 | 04-13505 | CO-Corey Marmaduke-Chambers | Alabama | 88.00 | 37,732.00 |
| Invoice | 1/5/2005 | 7207 | 0521 | CO -Alexis Benjamin-Rockdale | Georgia | 69.00 | 37,801.00 |
| Invoice | 1/7/2005 | 7263 | 05-138 | CO-Wright-Etowah | Alabama | 69.00 | 37,870.00 |
| Invoice | 1/7/2005 | 7267 | 05-28 | CO-Smith-Talladega | Alabama | 75.00 | 37,945.00 |
| Invoice | 1/7/2005 | 7273 | 05-68 | CO-Durocher-Shelby | Alabama | 69.00 | 38,014.00 |
| Invoice | 1/7/2005 | 7292 | 05-150 | CO-Barbour-Madison | Alabama | 70.00 | 38,084.00 |
| Invoice | 1/7/2005 | 7296 | 05-139 | Co-Pendergrass-DeKalb | Alabama | 70.00 | 38,154.00 |
| Invoice | 1/7/2005 | 7302 | 05-114 | 30yr-Tenpow-Clayton | Georgia | 125.00 | 38,279.00 |
| Invoice | 1/7/2005 | 7306 | 05-167 | co search-Jowers-Baldwin | Alabama | 68.00 | 38,347.00 |
| Invoice | 1/7/2005 | 7307 | 05-160 | co search-Tran-Mobile | Alabama | 68.00 | 38,415.00 |
| Invoice | 1/10/2005 | 7346 | 05-147 | CO-Mack Dillingham-Montgomer | Alabama | 65.00 | 38,480.00 |
| Invoice | 1/10/2005 | 7347 | 05-130 | CO-Martha Wise-Elmore | Alabama | 75.00 | 38,555.00 |
| Invoice | 1/10/2005 | 7348 | 05-60 | CO-Maxine Goodwin-Shelby | Tennessee | 69.00 | 38,624.00 |
| Invoice | 1/11/2005 | 7394 | 05-253 | CO-Hester Webb-Montgomery | Alabama | 77.00 | 38,701.00 |
| Invoice | 1/12/2005 | 7408 | 05-242 | Co-Kerry Crane-Cherokee | Alabama | 74.00 | 38,775.00 |
| Invoice | 1/12/2005 | 7410 | 05-193 | CO-Samuel Robinson-Jefferson | Alabama | 80.00 | 38,855.00 |
| Invoice | 1/12/2005 | 7428 | 05-210 | CO-Gertrde Guice-Lee | Alabama | 70.00 | 38,925.00 |
| Invoice | 1/13/2005 | 7449 | 05-259 | CO-Mary Vinson-Montgomery | Alabama | 70.00 | 38,995.00 |
| Invoice | 1/14/2005 | 7505 | 05-391 | CO search-Steven Gladden | Alabama | 72.00 | 39,067.00 |
| Invoice | 1/14/2005 | 7532 | 05-448 | CO-Prince Lewis-Bibb | Georgia | 69.00 | 39,136.00 |
| Invoice | 1/17/2005 | 7554 | 05-457 | CO-Jesse Reynolds-Randolph | Alabama | 90.00 | 39,226.00 |
| Invoice | 1/17/2005 | 7560 | 05-349 | CO-Donald Bulloch-Union | Alabama | 73.00 | 39,299.00 |
| Invoice | 1/17/2005 | 7561 | 05-316 | CO-David Letson-Lawrence | Alabama | 69.00 | 39,368.00 |
| Invoice | 1/18/2005 | 7580 | 05-422 | CO-David Wallace-Polk | Georgia | 73.00 | 39,441.00 |
| Invoice | 1/18/2005 | 7583 | 05-539 | CO search-Charles Claus-Shelby | Alabama | 71.00 | 39,512.00 |
| Invoice | 1/18/2005 | 7588 | 05-431 | CO-Billy Joe Delong-Lee | Alabama | 74.00 | 39,586.00 |
| Invoice | 1/19/2005 | 7620 | 05-553 | CO-Robert Watson-Troup | Georgia | 68.00 | 39,654.00 |
| Invoice | 1/19/2005 | 7628 | 04-7967 | update-Melvilla Noibi | Georgia | 31.00 | 39,685.00 |
| Invoice | 1/19/2005 | 7638 | 05-360 | CO-Walter Johnson | Alabama | 78.00 | 39,763.00 |
| Invoice | 1/19/2005 | 7655 | 05-611 | CO-Il Lee-Fulton | Georgia | 69.00 | 39,832.00 |
| Invoice | 1/20/2005 | 7695 | 05-523 | CO-Angela Smallwood-Marsh | Alabama | 71.00 | 39,903.00 |
| Invoice | 1/21/2005 | 7722 | 05-578 | CO-Edward Beers-Dallas | Alabama | 90.00 | 39,993.00 |
| Invoice | 1/21/2005 | 7739 | 05-590 | CO-George Castle-Lamar | Alabama | 73.00 | 40,066.00 |
| Invoice | 1/21/2005 | 7743 | 05-701 | CO-George Giles-Williamson | Tennessee | 69.00 | 40,135.00 |
| Invoice | 1/21/2005 | 7759 | 05-509 | CO-Glenn Freeman-Forsyth | Georgia | 68.00 | 40,203.00 |
| Invoice | 1/21/2005 | 7764 | 05-616 | CO-Sara Stovall-Franklin | Alabama | 69.00 | 40,272.00 |
| Invoice | 1/24/2005 | 7795 | 05-629 | CO-Clarice Reed Harper-Troup | Georgia | 67.00 | 40,339.00 |
| Invoice | 1/25/2005 | 7833 | 05-643 | CO-James Bignon-Douglas | Georgia | 71.00 | 40,410.00 |
| Invoice | 1/25/2005 | 7866 | 05-717 | CO search-Charles Moody-Gwinne | Georgia | 71.00 | 40,481.00 |
| Invoice | 1/25/2005 | 7870 | 05-696 | CO-Elaine Mirras-Fulton | Georgia | 70.00 | 40,551.00 |
| Invoice | 1/25/2005 | 7886 | | Update-Rachel Holt-Lee | Alabama | 30.00 | 40,581.00 |
| Invoice | 1/26/2005 | 7894 | 05-698 | 30 yr-Roger Scott-Lawrence | Alabama | 125.00 | 40,706.00 |
| Invoice | 1/26/2005 | 7900 | 04-11743 | Update-Rodger Williamson-Calho | Georgia | 25.00 | 40,731.00 |
| Invoice | 1/26/2005 | 7910 | 05-829 | CO-George McGlown-Henry | Alabama | 73.00 | 40,804.00 |
| Invoice | 1/26/2005 | 7929 | 05-888 | CO-Derrick Roberson-Chatham | Georgia | 68.00 | 40,872.00 |
| Invoice | 1/27/2005 | 7945 | 05-868 | CO-Voncile Myles-Mobile | Alabama | 74.00 | 40,946.00 |
| Invoice | 1/27/2005 | 7953 | 05-819 | CO-Fonta Campbell-Dekalb | Georgia | 71.00 | 41,017.00 |
| Invoice | 1/27/2005 | 7954 | 05-847 | 30 yr-Alisa Rodriguez-Gwinnett | Georgia | 125.00 | 41,142.00 |

Hall-Frazier
Record - 000284

9:11 AM

05/28/08

Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 1/27/2005 | 7969 | 05-778 | CO-Cole-Shelby | Tennessee | 67.00 | 41,209.00 |
| Invoice | 1/27/2005 | 7976 | 05-781 | CO-Shervington-Lee-Shelby | Tennessee | 69.00 | 41,278.00 |
| Invoice | 1/27/2005 | 7988 | 05-708 | 30 yr-Bradford-Walker | Alabama | 125.00 | 41,403.00 |
| Invoice | 1/28/2005 | 8016 | 05-890 | CO-Backelant-Dawson | Georgia | 71.00 | 41,474.00 |
| Invoice | 1/28/2005 | 8027 | 05-885 | CO-Houston-Coweta | Georgia | 68.00 | 41,542.00 |
| Invoice | 1/31/2005 | 8072 | 05-887 | CO-George-Chilton | Alabama | 65.00 | 41,607.00 |
| Invoice | 1/31/2005 | 8086 | 05-457 | update-Reynolds-Randolph | Alabama | 27.00 | 41,634.00 |
| Invoice | 2/2/2005 | 8175 | 05-953 | CO-Jarrett-Blount | Alabama | 68.00 | 41,702.00 |
| Invoice | 2/3/2005 | 8199 | 05-643 | update-Bignon-Douglas | Georgia | 35.00 | 41,737.00 |
| Invoice | 2/4/2005 | 8272 | 05-1034 | CO-Hess-Oglethorpe | Georgia | 66.00 | 41,803.00 |
| Invoice | 2/4/2005 | 8277 | 05-1130 | Tony Whitlow-CO-Lee | Alabama | 75.00 | 41,878.00 |
| Invoice | 2/10/2005 | 8439 | 05-1327 | CO-Thompson-Jefferson | Alabama | 125.00 | 42,003.00 |
| Invoice | 2/10/2005 | 8444 | 05-1417 | CO-Berendt-Calhoun | Alabama | 68.00 | 42,071.00 |
| Invoice | 2/10/2005 | 8453 | 05-1379 | CO-Crowe-Whitfield | Georgia | 68.00 | 42,139.00 |
| Invoice | 2/10/2005 | 8469 | 05-1381 | CO-Harper 3601-H-Dekalb | Georgia | 69.00 | 42,208.00 |
| Invoice | 2/10/2005 | 8472 | 05-1386 | CO-Harper 3595-H-Dekalb | Georgia | 70.00 | 42,278.00 |
| Invoice | 2/10/2005 | 8473 | 05-1384 | CO-Harper 3603-J-Dekalb | Georgia | 69.00 | 42,347.00 |
| Invoice | 2/10/2005 | 8481 | 05-1349 | CO-Kennedy-Lee | Alabama | 74.00 | 42,421.00 |
| Invoice | 2/10/2005 | 8489 | 05-1370 | CO-Prince(3609-D)-Dekalb | Georgia | 79.00 | 42,500.00 |
| Invoice | 2/10/2005 | 8492 | 05-1374 | CO-Merchant (3595-L)-Dekalb | Georgia | 78.00 | 42,578.00 |
| Invoice | 2/10/2005 | 8494 | 05-1371 | CO-Merchant (3595-N)-Dekalb | Georgia | 79.00 | 42,657.00 |
| Invoice | 2/10/2005 | 8496 | 05-1377 | CO-Prince (3607-J)-Dekalb | Georgia | 78.00 | 42,735.00 |
| Invoice | 2/10/2005 | 8498 | 05-1411 | CO-Byrd-Dekalb | Georgia | 72.00 | 42,807.00 |
| Invoice | 2/11/2005 | 8512 | 05-1440 | CO-Lyle-Randolph | Alabama | 69.00 | 42,876.00 |
| Invoice | 2/11/2005 | 8526 | 05-1455 | CO-Stokes-Pike | Georgia | 69.00 | 42,945.00 |
| Invoice | 2/11/2005 | 8527 | 05-1388 | CO-Park-Walker | Alabama | 75.00 | 43,020.00 |
| Invoice | 2/11/2005 | 8542 | 05-1223 | CO-Shorts-Clayton | Georgia | 68.00 | 43,088.00 |
| Invoice | 2/11/2005 | 8544 | 05-1497 | CO-Callahan-Fayette | Georgia | 65.00 | 43,153.00 |
| Invoice | 2/11/2005 | 8550 | 05-1463 | CO Osaseri-Gwinnett | Georgia | 69.00 | 43,222.00 |
| Invoice | 2/11/2005 | 8557 | 05-1408 | CO-Johnson-Long | Georgia | 69.00 | 43,291.00 |
| Invoice | 2/14/2005 | 8572 | 05-1451 | CO-Nash-Cherokee | Georgia | 68.00 | 43,359.00 |
| Invoice | 2/14/2005 | 8582 | 05-1510 | CO-Alexander-Calhoun | Alabama | 65.00 | 43,424.00 |
| Invoice | 2/14/2005 | 8587 | 05-1461 | CO-Johnson-Montgomery | Alabama | 75.00 | 43,499.00 |
| Invoice | 2/14/2005 | 8606 | 05-1429 | CO-Holmes-Lee | Alabama | 75.00 | 43,574.00 |
| Invoice | 2/15/2005 | 8639 | 05-1509 | CO-Wimberly-Muscogee | Georgia | 69.00 | 43,643.00 |
| Invoice | 2/15/2005 | 8640 | 05-1474 | CO-Stovall-Montgomery | Alabama | 78.00 | 43,721.00 |
| Invoice | 2/15/2005 | 8641 | 05-1416 | CO-Miley-Muscogee | Georgia | 72.00 | 43,793.00 |
| Invoice | 2/15/2005 | 8642 | 05-1443 | CO-Sims-Effingham | Georgia | 68.00 | 43,861.00 |
| Invoice | 2/15/2005 | 8643 | 05-1473 | CO-Cope-Effingham | Georgia | 71.00 | 43,932.00 |
| Invoice | 2/15/2005 | 8658 | 05-1538 | CO-Cagle-Elmore | Alabama | 73.00 | 44,005.00 |
| Invoice | 2/16/2005 | 8671 | 05-1458 | CO-Horn-Clay/Tallladega | Alabama | 137.00 | 44,142.00 |
| Invoice | 2/16/2005 | 8672 | 05-1383 | CO-Wells(3595-J)-Dekalb | Georgia | 73.00 | 44,215.00 |
| Invoice | 2/16/2005 | 8674 | 05-1375 | CO-Miles(3603-I)-Dekalb | Georgia | 73.00 | 44,288.00 |
| Invoice | 2/16/2005 | 8675 | 05-1380 | CO-Miles(3601-G)-Dekalb | Georgia | 74.00 | 44,362.00 |
| Invoice | 2/16/2005 | 8677 | 05-1382 | CO-Wells(3607-K)-Dekalb | Georgia | 74.00 | 44,436.00 |
| Invoice | 2/16/2005 | 8678 | 05-1404 | CO-Miles(3603-F)-Dekalb | Georgia | 75.00 | 44,511.00 |
| Invoice | 2/16/2005 | 8679 | 05-1373 | CO-Washington(3603-C)-Dekalb | Georgia | 75.00 | 44,586.00 |
| Invoice | 2/16/2005 | 8680 | 05-1403 | CO-Miles(3605-F)Dekalb | Georgia | 74.00 | 44,660.00 |
| Invoice | 2/16/2005 | 8681 | 05-1376 | CO-Washington(3601-D)Dekalb | Georgia | 76.00 | 44,736.00 |

9:11 AM

05/28/08

Accrual Basis

## Southern Land & Title, LLC
## Customer Balance Detail
### As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 2/16/2005 | 8693 | 05-1378 | CO-Washington(3603-E)Dekalb | Georgia | 74.00 | 44,810.00 |
| Invoice | 2/16/2005 | 8701 | 05-1574 | 30 yr-Reese-Wilson | Tennessee | 125.00 | 44,935.00 |
| Invoice | 2/16/2005 | 8709 | 05-1369 | CO-Washington(3604-D)Dekalb | Georgia | 74.00 | 45,009.00 |
| Invoice | 2/16/2005 | 8726 | 05-1552 | CO-Cole-Dekalb | Georgia | 70.00 | 45,079.00 |
| Invoice | 2/17/2005 | 8735 | 05-1483 | 30 yr-Teeter-Geneva | Alabama | 125.00 | 45,204.00 |
| Invoice | 2/18/2005 | 8829 | 05-1476 | CO-Todd-Richmond | Georgia | 72.00 | 45,276.00 |
| Invoice | 2/21/2005 | 8837 | 05-1697 | CO-White-Dallas | Alabama | 73.00 | 45,349.00 |
| Invoice | 2/22/2005 | 8902 | 05-1667 | CO-Ralston-Gordon | Georgia | 79.00 | 45,428.00 |
| Invoice | 2/22/2005 | 8915 | 05-1794 | CO-Lambert-Davidson | Tennessee | 71.00 | 45,499.00 |
| Invoice | 2/23/2005 | 8952 | 05-1688 | 30 yr-Jackson(A20)-Dekalb | Georgia | 125.00 | 45,624.00 |
| Invoice | 2/23/2005 | 8954 | 05-1687 | 30 yr-Jackson(A19)-Dekalb | Georgia | 125.00 | 45,749.00 |
| Invoice | 2/23/2005 | 8959 | 05-1707 | 30 yr-Jackson(A17)-Dekalb | Georgia | 125.00 | 45,874.00 |
| Invoice | 2/23/2005 | 8961 | 05-1706 | 30 yr-Jackson(K4)-Dekalb | Georgia | 125.00 | 45,999.00 |
| Invoice | 2/23/2005 | 8976 | 05-1801 | CO-McMillian-Escambia | Alabama | 73.00 | 46,072.00 |
| Invoice | 2/23/2005 | 8986 | 05-1682 | 30 yr-Ishmael(F8)-Dekalb | Georgia | 125.00 | 46,197.00 |
| Invoice | 2/23/2005 | 8996 | 05-1741 | CO-Awad-Whitfield | Georgia | 71.00 | 46,268.00 |
| Invoice | 2/23/2005 | 8997 | 05-1684 | 30 yr-Ishmael-Dekalb | Georgia | 125.00 | 46,393.00 |
| Invoice | 2/23/2005 | 8999 | 05-1825 | CO-Pettit-Dekalb | Alabama | 67.00 | 46,460.00 |
| Invoice | 2/23/2005 | 9001 | 05-1811 | update-Sasine-Fulton | Georgia | 28.00 | 46,488.00 |
| Invoice | 2/23/2005 | 9002 | 05-1809 | CO-Hall-Shelby | Tennessee | 69.00 | 46,557.00 |
| Invoice | 2/24/2005 | 9021 | 05-1835 | CO-Zahn-Blount | Tennessee | 76.00 | 46,633.00 |
| Invoice | 2/24/2005 | 9042 | 05-1858 | CO-Graham Sichra | Georgia | 72.00 | 46,705.00 |
| Invoice | 2/24/2005 | 9047 | 05-1784 | CO-Scoggins-Bradley | Tennessee | 71.00 | 46,776.00 |
| Invoice | 2/24/2005 | 9054 | 05-1431 | CO-Young-Cheatham | Tennessee | 71.00 | 46,847.00 |
| Invoice | 2/24/2005 | 9071 | 05-1833 | 30 yr-Sloan-Chatham | Georgia | 125.00 | 46,972.00 |
| Invoice | 2/25/2005 | 9075 | 05-1783 | CO-Catherine Jones-Mobile | Alabama | 75.00 | 47,047.00 |
| Invoice | 2/25/2005 | 9111 | 05-1831 | CO-Prince-Meigs | Tennessee | 82.00 | 47,129.00 |
| Invoice | 2/25/2005 | 9122 | 05-1385 | CO-Wells-Dekalb | Georgia | 81.00 | 47,210.00 |
| Invoice | 2/28/2005 | 9132 | 04-13272 | update-Dawson-Dale | Alabama | 25.00 | 47,235.00 |
| Invoice | 2/28/2005 | 9143 | 05-2004 | CO-Lounangphay-Davidson | Tennessee | 69.00 | 47,304.00 |
| Invoice | 2/28/2005 | 9156 | 05-1966 | CO-Johnson-Etowah | Alabama | 70.00 | 47,374.00 |
| Invoice | 3/1/2005 | 9165 | 05-1997 | CO-Cotton-Rockdale | Georgia | 67.00 | 47,441.00 |
| Invoice | 3/2/2005 | 9239 | 05-1979 | CO-Clauson-Jones | Georgia | 71.00 | 47,512.00 |
| Invoice | 3/2/2005 | 9251 | 05-2113 | CO-Burnham-Calhoun | Alabama | 71.00 | 47,583.00 |
| Invoice | 3/3/2005 | 9277 | 05-2094 | CO-Speer-Cullman | Alabama | 70.00 | 47,653.00 |
| Invoice | 3/3/2005 | 9278 | 05-2027 | CO-Phillips-Dallas | Alabama | 82.00 | 47,735.00 |
| Invoice | 3/3/2005 | 9296 | 05-2139 | CO-Crabb-Bibb | Georgia | 73.00 | 47,808.00 |
| Invoice | 3/3/2005 | 9297 | 05-12814 | update-Gandy-Baldwin | Alabama | 25.00 | 47,833.00 |
| Invoice | 3/3/2005 | 9309 | 05-2112 | CO-Colbert-Bibb | Georgia | 68.00 | 47,901.00 |
| Invoice | 3/3/2005 | 9316 | 05-2029 | CO-Phillips-Dekalb | Georgia | 70.00 | 47,971.00 |
| Invoice | 3/4/2005 | 9322 | 05-2159 | CO-Minter-Bibb | Georgia | 73.00 | 48,044.00 |
| Invoice | 3/4/2005 | 9334 | 05-2126 | CO-Brunson-Cobb | Georgia | 68.00 | 48,112.00 |
| Invoice | 3/4/2005 | 9349 | 04-12795 | update-Lawson-Murray | Georgia | 25.00 | 48,137.00 |
| Invoice | 3/4/2005 | 9358 | 05-572 | judment/lien-Griffin-Fulton | Georgia | 40.00 | 48,177.00 |
| Invoice | 3/4/2005 | 9366 | 05-2108 | CO-Dunsford-Winston | Alabama | 72.00 | 48,249.00 |
| Invoice | 3/7/2005 | 9386 | 05-2110 | CO-Taplin-Habersham | Georgia | 70.00 | 48,319.00 |
| Invoice | 3/7/2005 | 9396 | 05-2205 | CO-Luallen-Calhoun | Alabama | 68.00 | 48,387.00 |
| Invoice | 3/7/2005 | 9398 | 05-2229 | CO-Selvage-Shelby | Alabama | 65.00 | 48,452.00 |
| Invoice | 3/7/2005 | 9418 | 05-2219 | CO-Stewarat-Richmond | Georgia | 78.00 | 48,530.00 |

Page 3

Hall-Frazier
Record - 000286

9:11 AM

05/28/08

Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 3/7/2005 | 9434 | 05-2198 | CO-Jett-Morgan | Alabama | 70.00 | 48,600.00 |
| Invoice | 3/8/2005 | 9504 | 05-2133 | CO-Talbor-Fulton | Georgia | 54.00 | 48,654.00 |
| Invoice | 3/9/2005 | 9529 | 05-2233 | CO-Woerner-Baldwin | Alabama | 73.00 | 48,727.00 |
| Invoice | 3/10/2005 | 9631 | 05-2271 | CO-Nicholson-Gilmer | Georgia | 68.00 | 48,795.00 |
| Invoice | 3/10/2005 | 9637 | 05-2165 | 30 yr-Arrington-Montgomery | Alabama | 125.00 | 48,920.00 |
| Invoice | 3/10/2005 | 9653 | 05-2121 | CO-Reeves-Morgan | Alabama | 48.75 | 48,968.75 |
| Invoice | 3/11/2005 | 9689 | 05-2294 | CO-Richardson-Dallas | Alabama | 67.00 | 49,035.75 |
| Invoice | 3/11/2005 | 9691 | 05-2363 | CO-Biddle-Whitfield | Georgia | 70.00 | 49,105.75 |
| Invoice | 3/11/2005 | 9697 | 05-2297 | CO-Hamrick-Heard | Georgia | 70.00 | 49,175.75 |
| Invoice | 3/11/2005 | 9708 | 05-2375 | CO-Dunn-Chambers | Alabama | 72.00 | 49,247.75 |
| Invoice | 3/11/2005 | 9709 | 05-2050 | 30 yr-Lawson-Tuscaloosa | Alabama | 125.00 | 49,372.75 |
| Invoice | 3/14/2005 | 9743 | 05-2388 | CO-Breland-Madison | Alabama | 70.00 | 49,442.75 |
| Invoice | 3/14/2005 | 9789 | 05-2349 | CO-Harris-Paulding | Georgia | 65.00 | 49,507.75 |
| Invoice | 3/15/2005 | 9805 | 05-2385 | CO-Collins-Gwinnett | Georgia | 68.00 | 49,575.75 |
| Invoice | 3/16/2005 | 9870 | 05-2446 | CO-Hitchcock-Carroll | Georgia | 71.00 | 49,646.75 |
| Invoice | 3/16/2005 | 9888 | 05-2444 | CO-Scales-Fulton | Georgia | 50.25 | 49,697.00 |
| Invoice | 3/17/2005 | 9890 | 05-2647 | CO-Greely-Dekalb | Georgia | 70.00 | 49,767.00 |
| Invoice | 3/17/2005 | 9904 | 05-2669 | CO-Baird-Henry | Georgia | 69.00 | 49,836.00 |
| Invoice | 3/18/2005 | 9953 | 05-2643 | CO-Galella-Coffee | Alabama | 71.00 | 49,907.00 |
| Invoice | 3/18/2005 | 9976 | 05-2729 | CO-Evans-Henry | Georgia | 66.00 | 49,973.00 |
| Invoice | 3/18/2005 | 9980 | 05-2758 | CO-Bourdon-CO-Lauderdale | Alabama | 68.00 | 50,041.00 |
| Invoice | 3/18/2005 | 9986 | 05-2746 | CO-Kitchens-Jones | Georgia | 68.00 | 50,109.00 |
| Invoice | 3/18/2005 | 9987 | 05-2743 | CO-Milton-Paulding | Georgia | 70.00 | 50,179.00 |
| Invoice | 3/21/2005 | 9993 | 05-2730 | CO-Gresham-Cobb | Georgia | 71.00 | 50,250.00 |
| Invoice | 3/21/2005 | 10004 | 05-2705 | CO-Bean-Pike | Alabama | 69.00 | 50,319.00 |
| Invoice | 3/21/2005 | 10025 | 05-2772 | CO-Washington-Dekalb | Georgia | 68.00 | 50,387.00 |
| Invoice | 3/21/2005 | 10026 | 05-2736 | CO-Willoughby-Dekalb | Alabama | 71.00 | 50,458.00 |
| Invoice | 3/21/2005 | 10027 | 05-2781 | CO-Willis-Baldwin | Alabama | 73.00 | 50,531.00 |
| Invoice | 3/21/2005 | 10028 | 05-2788 | CO-Durst-Lexington | South Ca... | 69.00 | 50,600.00 |
| Invoice | 3/21/2005 | 10029 | 05-2775 | CO-Donald Smith-Chilton | Alabama | 69.00 | 50,669.00 |
| Invoice | 3/22/2005 | 10050 | 05-2752 | CO-Brack-Paulding | Georgia | 69.00 | 50,738.00 |
| Invoice | 3/22/2005 | 10056 | 05-2813 | CO-Hall-Houston | Alabama | 72.00 | 50,810.00 |
| Invoice | 3/23/2005 | 10097 | 05-2865 | CO-Wheeler-Muscogee | Georgia | 73.00 | 50,883.00 |
| Invoice | 3/23/2005 | 10099 | 05-2817 | CO-Morrow-Wilson | Tennessee | 70.00 | 50,953.00 |
| Invoice | 3/23/2005 | 10103 | 05-2784 | CO-Collier-Lee | Alabama | 71.00 | 51,024.00 |
| Invoice | 3/23/2005 | 10112 | 05-2790 | CO-Roy Smith-Douglas | Georgia | 69.00 | 51,093.00 |
| Invoice | 3/23/2005 | 10139 | 05-2882 | CO-Griffin-Gwinnett | Georgia | 68.00 | 51,161.00 |
| Invoice | 3/24/2005 | 10164 | 05-2869 | CO-McDaniel-Montgomery | Alabama | 71.00 | 51,232.00 |
| Invoice | 3/24/2005 | 10173 | 05-2877 | CO-Hendrix-Gilmer | Georgia | 72.00 | 51,304.00 |
| Invoice | 3/24/2005 | 10209 | 04-13505 | update-Marmaduke-Chambers | Alabama | 29.00 | 51,333.00 |
| Invoice | 3/25/2005 | 10237 | 05-2952 | CO-Twitley-Mobile | Alabama | 72.00 | 51,405.00 |
| Invoice | 3/25/2005 | 10238 | 05-2897 | CO-West-Cherokee | Georgia | 73.00 | 51,478.00 |
| Invoice | 3/25/2005 | 10263 | 05-2989 | CO-Cheng-Chatham | Georgia | 70.00 | 51,548.00 |
| Invoice | 3/28/2005 | 10277 | 05-3026 | CO-Harrington-Clayton | Georgia | 68.00 | 51,616.00 |
| Invoice | 3/28/2005 | 10304 | 05-3055 | CO-Broughton-Dekalb | Georgia | 69.00 | 51,685.00 |
| Invoice | 3/29/2005 | 10347 | 05-3073 | CO-Spickard-Gwinnett | Georgia | 71.00 | 51,756.00 |
| Invoice | 3/29/2005 | 10348 | 05-3009 | CO-Shelton-Bibb | Alabama | 69.00 | 51,825.00 |
| Invoice | 3/29/2005 | 10349 | 05-3037 | CO-Coman-Gwinnett | Georgia | 69.00 | 51,894.00 |
| Invoice | 3/29/2005 | 10367 | 05-3067 | CO-Ennis-Effingham | Georgia | 67.00 | 51,961.00 |

Hall-Frazier
Record - 000287

9:11 AM

05/28/08

Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 3/29/2005 | 10375 | 05-3072 | CO-Edward-Chilton | Alabama | 69.00 | 52,030.00 |
| Invoice | 3/29/2005 | 10378 | 05-3068 | CO-Reeves-Jones | Georgia | 67.00 | 52,097.00 |
| Invoice | 3/29/2005 | 10385 | 05-3042 | CO-Bass-Jones | Georgia | 76.00 | 52,173.00 |
| Invoice | 3/30/2005 | 10434 | 05-3134 | CO-Daniel-Muscogee | Georgia | 70.00 | 52,243.00 |
| Invoice | 3/31/2005 | 10478 | 05-3155 | CO-Searey-Montgomery | Alabama | 73.00 | 52,316.00 |
| Invoice | 3/31/2005 | 10487 | 05-3169 | CO-Smitherman-CO-Coweta | Georgia | 67.00 | 52,383.00 |
| Invoice | 3/31/2005 | 10504 | 05-611 | update-II Lee-Fulton | Georgia | 25.00 | 52,408.00 |
| Invoice | 4/1/2005 | 10529 | 05-3187 | CO-Leonard-Greenville | South Ca... | 73.00 | 52,481.00 |
| Invoice | 4/1/2005 | 10541 | 05-3179 | CO-Angie Smith-Escambia | Alabama | 72.00 | 52,553.00 |
| Invoice | 4/1/2005 | 10544 | 05-3289 | CO-Rinehart-Shelby | Tennessee | 70.00 | 52,623.00 |
| Invoice | 4/1/2005 | 10554 | 05-3233 | CO-Hamblin-Houston | Alabama | 72.00 | 52,695.00 |
| Invoice | 4/4/2005 | 10576 | 05-3205 | CO-Ricot-Cobb | Georgia | 68.00 | 52,763.00 |
| Invoice | 4/4/2005 | 10615 | 05-3274 | CO-Sheffield-Dekalb | Georgia | 70.00 | 52,833.00 |
| Invoice | 4/5/2005 | 10644 | 05-2989 | judg/tax lien-Cheng-Chatham | Georgia | 40.00 | 52,873.00 |
| Invoice | 4/5/2005 | 10657 | 05-3294 | CO-Webb-Henry | Georgia | 69.00 | 52,942.00 |
| Invoice | 4/6/2005 | 10728 | 05-3245 | CO-Crane-Blount | Alabama | 69.00 | 53,011.00 |
| Invoice | 4/6/2005 | 10730 | 05-3423 | CO-Tolbert-Blount | Alabama | 73.00 | 53,084.00 |
| Invoice | 4/7/2005 | 10742 | 05-3349 | update-Holmes-Lee | Alabama | 25.00 | 53,109.00 |
| Invoice | 4/8/2005 | 10817 | 05-3528 | CO-Hall-Chatham | Georgia | 65.00 | 53,174.00 |
| Invoice | 4/8/2005 | 10820 | 05-3036 | 30 yr-Stephens-Pike | Alabama | 125.00 | 53,299.00 |
| Invoice | 4/8/2005 | 10837 | 05-3559 | CO-Brown-Mobile | Alabama | 74.00 | 53,373.00 |
| Invoice | 4/11/2005 | 10870 | 05-3584 | CO-Domineck-Dekalb | Georgia | 69.00 | 53,442.00 |
| Invoice | 4/11/2005 | 10892 | 05-1463 | CO-Osaseri-Gwinnett | Georgia | 25.00 | 53,467.00 |
| Invoice | 4/12/2005 | 10923 | 05-3556 | CO-Huntley-Bennett-Montgomery | Alabama | 77.00 | 53,544.00 |
| Invoice | 4/13/2005 | 11018 | 05-3661 | CO-Burnette-Walker | Georgia | 69.00 | 53,613.00 |
| Invoice | 4/14/2005 | 11042 | 05-3774 | CO-Foshehe-Lee | Alabama | 77.00 | 53,690.00 |
| Invoice | 4/14/2005 | 11052 | 05-3533 | 30 yr-Kelly-Tallapoosa | Alabama | 125.00 | 53,815.00 |
| Invoice | 4/18/2005 | 11130 | 05-3887 | CO-Mitchell-Cobb | Georgia | 68.00 | 53,883.00 |
| Invoice | 4/18/2005 | 11169 | 05-3968 | CO-Debs-Oconee | Georgia | 70.00 | 53,953.00 |
| Invoice | 4/19/2005 | 11222 | 05-3922 | CO-Bruce-Pickens | Georgia | 69.00 | 54,022.00 |
| Invoice | 4/19/2005 | 11225 | 05-3874 | CO-Harris-Dekalb | Georgia | 74.00 | 54,096.00 |
| Invoice | 4/19/2005 | 11226 | 05-3958 | CO-Phillips-Dekalb | Georgia | 69.00 | 54,165.00 |
| Invoice | 4/20/2005 | 11257 | 05-3937 | CO-Millwood-Bartow | Georgia | 69.00 | 54,234.00 |
| Invoice | 4/20/2005 | 11283 | 05-4019 | CO-Ferrell-Clayton | Georgia | 66.00 | 54,300.00 |
| Invoice | 4/20/2005 | 11304 | 05-4051 | CO-Farrow-Elmore | Alabama | 73.00 | 54,373.00 |
| Invoice | 4/20/2005 | 11305 | | II Lee-mtg. rec-Fulton | Georgia | 35.00 | 54,408.00 |
| Invoice | 4/21/2005 | 11340 | 05-3624 | CO-Mitchell-Chilton | Alabama | 71.00 | 54,479.00 |
| Invoice | 4/21/2005 | 11342 | 05-4117 | CO-Walmsley-Montgomery | Alabama | 69.00 | 54,548.00 |
| Invoice | 4/21/2005 | 11346 | 05-4180 | CO-Castald-Autauga | Alabama | 78.00 | 54,626.00 |
| Invoice | 4/21/2005 | 11348 | 05-4091 | CO-Moore-Dekalb | Georgia | 71.00 | 54,697.00 |
| Invoice | 4/21/2005 | 11363 | 05-4171 | CO-Brown-Richmond | Georgia | 72.00 | 54,769.00 |
| Invoice | 4/21/2005 | 11365 | 05-1831 | update-Prince-Meigs | Tennessee | 25.00 | 54,794.00 |
| Invoice | 4/21/2005 | 11367 | 05-4134 | CO-Barry-Clayton | Georgia | 68.00 | 54,862.00 |
| Invoice | 4/22/2005 | 11384 | 05-4106 | CO-Posada-Gwinnett | Georgia | 73.00 | 54,935.00 |
| Invoice | 4/22/2005 | 11385 | 05-4120 | CO-Jones-Gwinnett | Georgia | 65.00 | 55,000.00 |
| Invoice | 4/26/2005 | 11485 | 05-4308 | CO-Powell-Cobb | Georgia | 70.00 | 55,070.00 |
| Invoice | 4/26/2005 | 11489 | 05-2888 | Jesse Thomas-mtg. rec-Fulton | Georgia | 35.00 | 55,105.00 |
| Invoice | 4/26/2005 | 11493 | 05-4306 | CO-Angel-Morgan | Georgia | 79.00 | 55,184.00 |
| Invoice | 4/26/2005 | 11496 | 05-4280 | CO-Whitley-Fulton | Georgia | 69.00 | 55,253.00 |

Hall-Frazier
Record - 000288

9:11 AM

05/28/08

Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 4/27/2005 | 11541 | 05-4273 | CO-Whitley-Muscogee | Georgia | 71.00 | 55,324.00 |
| Invoice | 4/27/2005 | 11542 | 05-4289 | CO-Perez-Gwinnett | Georgia | 76.00 | 55,400.00 |
| Invoice | 4/27/2005 | 11560 | 05-4436 | CO-Agner-Cabarrus | North Ca... | 69.00 | 55,469.00 |
| Invoice | 4/28/2005 | 11579 | 05-4432 | CO-Graham-Paulding | Georgia | 67.00 | 55,536.00 |
| Invoice | 4/28/2005 | 11587 | 05-4370 | CO-Shannon-Dallas | Alabama | 82.00 | 55,618.00 |
| Invoice | 4/29/2005 | 11670 | 05-4557 | CO-Bivins-Bibb | Georgia | 69.00 | 55,687.00 |
| Invoice | 4/29/2005 | 11680 | 05-4450 | CO-Kennedy-Winston | Alabama | 74.00 | 55,761.00 |
| Invoice | 5/2/2005 | 11718 | 05-4542 | CO-Andrews-Mobile | Alabama | 72.00 | 55,833.00 |
| Invoice | 5/3/2005 | 11719 | 05-4576 | CO-Fish-Dale | Alabama | 70.00 | 55,903.00 |
| Invoice | 5/3/2005 | 11733 | 05-4120 | update-Roberson-Gwinnett | Georgia | 25.00 | 55,928.00 |
| Invoice | 5/3/2005 | 11748 | 05-44424 | 30 yr-Garrett-Mobile | Alabama | 125.00 | 56,053.00 |
| Invoice | 5/3/2005 | 11792 | | Smith-mtg. rec-Fulton | Georgia | 35.00 | 56,088.00 |
| Invoice | 5/4/2005 | 11794 | 05-4521 | CO-Sims-Haralson | Georgia | 65.00 | 56,153.00 |
| Invoice | 5/4/2005 | 11820 | 05-4599 | CO-Grandberry-Cobb | Georgia | 70.00 | 56,223.00 |
| Invoice | 5/4/2005 | 11826 | 053752 | mtg rec-Pearson-Fulton | Georgia | 35.00 | 56,258.00 |
| Invoice | 5/4/2005 | 11842 | 05-4681 | CO-Tennyson-Pickens | Alabama | 77.00 | 56,335.00 |
| Invoice | 5/5/2005 | 11861 | 05-4673 | CO-Hinkle-Blount | Alabama | 71.00 | 56,406.00 |
| Invoice | 5/5/2005 | 11870 | 05-4653 | CO-Dibenebetto-Cabbarrus | North Ca... | 70.00 | 56,476.00 |
| Invoice | 5/5/2005 | 11881 | 05-4667 | CO-Reeves-Henry | Georgia | 69.00 | 56,545.00 |
| Invoice | 5/5/2005 | 11892 | | mtg rec-Rebecca Cook-Fulton | Georgia | 35.00 | 56,580.00 |
| Invoice | 5/5/2005 | 11899 | 05-4602 | CO-Lynn-Morgan | Alabama | 69.00 | 56,649.00 |
| Invoice | 5/5/2005 | 11912 | 05-4718 | CO-Sheppard-Richmond | Georgia | 68.00 | 56,717.00 |
| Invoice | 5/5/2005 | 11913 | 05-4660 | CO-Lee-Forsyth | Georgia | 68.00 | 56,785.00 |
| Invoice | 5/6/2005 | 11937 | 05-4712 | CO-Fuller-Montgomery | Alabama | 72.00 | 56,857.00 |
| Invoice | 5/6/2005 | 11946 | 05-4754 | CO-Black-Escambia | Alabama | 80.00 | 56,937.00 |
| Invoice | 5/6/2005 | 11957 | 05-4690 | CO-Clark-Chatham | Georgia | 65.00 | 57,002.00 |
| Invoice | 5/6/2005 | 11970 | 05-4789 | CO-Boston-Meclenburg | North Ca... | 68.00 | 57,070.00 |
| Invoice | 5/6/2005 | 11974 | 05-4781 | CO-Hardy-Fulton | Georgia | 71.00 | 57,141.00 |
| Invoice | 5/9/2005 | 11994 | 05-4787 | CO-Gordon-Dale | Alabama | 69.00 | 57,210.00 |
| Invoice | 5/9/2005 | 12024 | 05-4631 | CO-Chung-Dade | Georgia | 68.00 | 57,278.00 |
| Invoice | 5/9/2005 | 12038 | 05-4817 | CO-Bell-Mobile | Alabama | 71.00 | 57,349.00 |
| Invoice | 5/10/2005 | 12055 | 05-4848 | CO-Glover-Cobb | Georgia | 70.00 | 57,419.00 |
| Invoice | 5/10/2005 | 12076 | 05-4890 | CO-Barrera-Cobb | Georgia | 76.00 | 57,495.00 |
| Invoice | 5/10/2005 | 12083 | 05-4825 | CO-Morris-Richmond | Georgia | 68.00 | 57,563.00 |
| Invoice | 5/10/2005 | 12085 | 05-2349 | update-Harris-Paulding | Georgia | 31.00 | 57,594.00 |
| Invoice | 5/10/2005 | 12087 | 05-4868 | CO-West-Escambia | Alabama | 77.00 | 57,671.00 |
| Invoice | 5/11/2005 | 12152 | 05-4793 | CO-Perkins-Gwinnett | Georgia | 69.00 | 57,740.00 |
| Invoice | 5/12/2005 | 12172 | 05-4877 | CO-Zayas-Gwinnett | Georgia | 68.00 | 57,808.00 |
| Invoice | 5/12/2005 | 12181 | 05-4898 | CO-Hardy-Speed-Clayton | Georgia | 68.00 | 57,876.00 |
| Invoice | 5/12/2005 | 12184 | 05-4888 | CO-Peart-Clayton | Georgia | 69.00 | 57,945.00 |
| Invoice | 5/12/2005 | 12199 | 05-4861 | CO-Williams-Richmond | Georgia | 67.00 | 58,012.00 |
| Invoice | 5/12/2005 | 12200 | 05-4833 | Co-Durand-Gwinnett | Georgia | 70.00 | 58,082.00 |
| Invoice | 5/12/2005 | 12212 | 05-4918 | CO-Robbins-Escambia | Alabama | 74.00 | 58,156.00 |
| Invoice | 5/12/2005 | 12219 | 05-4982 | CO-Campbell-Fayette | Georgia | 68.00 | 58,224.00 |
| Invoice | 5/12/2005 | 12224 | 05-4938 | CO-Horne-Muscogee | Georgia | 70.00 | 58,294.00 |
| Invoice | 5/12/2005 | 12231 | 05-3067 | update-Ennis-Effingham | Georgia | 30.00 | 58,324.00 |
| Invoice | 5/13/2005 | 12244 | 05-4958 | CO-Lane-Chatham | Georgia | 67.00 | 58,391.00 |
| Invoice | 5/13/2005 | 12294 | 05-4975 | CO-Fowler-Fulton | Georgia | 73.00 | 58,464.00 |
| Invoice | 5/13/2005 | 12295 | 05-4986 | CO-James-Clayton | Georgia | 68.00 | 58,532.00 |

9:11 AM
05/28/08
Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
**As of April 30, 2008**

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 5/13/2005 | 12296 | 05-4385 | CO-Jackson-Madison | Alabama | 69.00 | 58,601.00 |
| Invoice | 5/13/2005 | 12301 | 05-4952 | CO-Winters-Fulton | Georgia | 68.00 | 58,669.00 |
| Invoice | 5/13/2005 | 12314 | 05-4116 | mtg. rec-Daniels-Fulton | Georgia | 35.00 | 58,704.00 |
| Invoice | 5/13/2005 | 12315 | 05-4126 | mtg. rec-Hopper-Fulton | Georgia | 35.00 | 58,739.00 |
| Invoice | 5/16/2005 | 12349 | 05-5017 | Co-Brown-Richmond | Georgia | 77.00 | 58,816.00 |
| Invoice | 5/16/2005 | 12353 | | mtg. rec-TamaraWhitsett-Fulton | Georgia | 35.00 | 58,851.00 |
| Invoice | 5/16/2005 | 12356 | 05-5059 | CO-Fenley-Blount | Alabama | 68.00 | 58,919.00 |
| Invoice | 5/16/2005 | 12364 | 05-4973 | CO-Bynes-Cobb | Georgia | 70.00 | 58,989.00 |
| Invoice | 5/16/2005 | 12370 | 05-5009 | CO-Dennis-Cobb | Georgia | 69.00 | 59,058.00 |
| Invoice | 5/16/2005 | 12383 | 05-4998 | CO-Peoples-Jackson | Georgia | 68.00 | 59,126.00 |
| Invoice | 5/17/2005 | 12391 | 05-5006 | CO-Guice-Lee | Alabama | 70.00 | 59,196.00 |
| Invoice | 5/17/2005 | 12399 | 05-5098 | CO-Carr-Douglas | Georgia | 71.00 | 59,267.00 |
| Invoice | 5/17/2005 | 12422 | 05-5139 | CO-Albright-Calhoun | Alabama | 67.00 | 59,334.00 |
| Invoice | 5/17/2005 | 12444 | 05-5149 | CO-Williams-Richmond | Georgia | 34.00 | 59,368.00 |
| Invoice | 5/17/2005 | 12446 | 05-5031 | Co-Pruitt-Habersham | Georgia | 71.00 | 59,439.00 |
| Invoice | 5/17/2005 | 12462 | 05-5143 | CO-Swanson-Dekalb | Georgia | 72.00 | 59,511.00 |
| Invoice | 5/17/2005 | 12466 | 05-5151 | Co-Bosarge-Mobile | Alabama | 71.00 | 59,582.00 |
| Invoice | 5/18/2005 | 12474 | 05-5125 | CO-Evans-Newton | Georgia | 80.00 | 59,662.00 |
| Invoice | 5/18/2005 | 12521 | 05-5170 | CO-Walden-Dekalb | Georgia | 68.00 | 59,730.00 |
| Invoice | 5/19/2005 | 12530 | 05-5246 | CO-Thomas-Calhoun | Alabama | 69.00 | 59,799.00 |
| Invoice | 5/19/2005 | 12546 | 05-5104 | CO-Kiwanuka-Gwinnett | Georgia | 50.25 | 59,849.25 |
| Invoice | 5/19/2005 | 12553 | 05-5055 | CO-Vest-Cherokee | Georgia | 50.25 | 59,899.50 |
| Invoice | 5/19/2005 | 12574 | 05-5133 | CO-Daniels-Forsyth | Georgia | 70.00 | 59,969.50 |
| Invoice | 5/20/2005 | 12632 | 05-5245 | CO-Nelson-Richmon | Georgia | 73.00 | 60,042.50 |
| Invoice | 5/20/2005 | 12652 | 05-5156 | CO-Hare-White | Georgia | 52.50 | 60,095.00 |
| Invoice | 5/23/2005 | 12674 | 05-5320 | CO-Hammett-Morgan` | Alabama | 70.00 | 60,165.00 |
| Invoice | 5/23/2005 | 12676 | 05-5358 | CO-Taylor-Tuscaloosa | Alabama | 73.00 | 60,238.00 |
| Invoice | 5/24/2005 | 12739 | 05-5299 | CO-Jarrard-Floyd | Georgia | 71.00 | 60,309.00 |
| Invoice | 5/24/2005 | 12758 | 05-5287 | CO-Chumney-Houston | Alabama | 74.00 | 60,383.00 |
| Invoice | 5/25/2005 | 12800 | 05-2113 | update-Burnham-Calhoun | Alabama | 27.00 | 60,410.00 |
| Invoice | 5/25/2005 | 12803 | 05-5356 | CO-Cook-Russell | Alabama | 72.00 | 60,482.00 |
| Invoice | 5/25/2005 | 12840 | 05-4280 | mtg. rec-Whitley-Fulton | Georgia | 35.00 | 60,517.00 |
| Invoice | 5/27/2005 | 12984 | 04-40130 | Co-Samuels-Mobile | Alabama | 69.00 | 60,586.00 |
| Invoice | 5/30/2005 | 13040 | 05-5546 | CO-Viard-Whitfield | Georgia | 74.00 | 60,660.00 |
| Invoice | 5/31/2005 | 13012 | 05-5471 | CO-Bennett-Dallas | Alabama | 82.00 | 60,742.00 |
| Invoice | 5/31/2005 | 13018 | 05-5535 | CO-Derico-Montgomery | Alabama | 68.00 | 60,810.00 |
| Invoice | 6/1/2005 | 13066 | 05-5455 | CO-Thomas-Union | North Ca... | 67.00 | 60,877.00 |
| Invoice | 6/1/2005 | 13073 | 05-5533 | CO-Crum-Montgomery | Alabama | 69.00 | 60,946.00 |
| Invoice | 6/2/2005 | 13121 | 05-4848 | judg/lien-Glover-Cobb | Georgia | 25.00 | 60,971.00 |
| Invoice | 6/2/2005 | 13155 | 05-5547 | 30 yr-Cosper-Tallapoosa | Alabama | 125.00 | 61,096.00 |
| Invoice | 6/6/2005 | 13259 | 05-5609 | 30 yr-Robinson-Forsyth | Georgia | 151.00 | 61,247.00 |
| Invoice | 6/6/2005 | 13291 | 05-5680 | CO-Roberts-Clarke | Mississippi | 71.00 | 61,318.00 |
| Invoice | 6/6/2005 | 13300 | 05-5012 | mtg. rec-Mirras-Fulton | Georgia | 35.00 | 61,353.00 |
| Invoice | 6/6/2005 | 13303 | 05-5704 | CO-Carver-Harrison | Mississippi | 69.00 | 61,422.00 |
| Invoice | 6/6/2005 | 13308 | 05-5647 | CO-Morgan-Mobile | Alabama | 69.00 | 61,491.00 |
| Invoice | 6/7/2005 | 13368 | 05-3639/49... | mtg. rec-Barber-Fulton | Georgia | 70.00 | 61,561.00 |
| Invoice | 6/8/2005 | 13389 | 05-5689 | CO-Lawrence-Dallas | Alabama | 69.00 | 61,630.00 |
| Invoice | 6/8/2005 | 13407 | 05-5718 | CO-Malcolm-Etowah | Alabama | 72.00 | 61,702.00 |
| Invoice | 6/8/2005 | 13422 | 05-5670 | CO-Fields-Henry | Georgia | 70.00 | 61,772.00 |

9:11 AM

05/28/08
Accrual Basis

### Southern Land & Title, LLC
### Customer Balance Detail
As of April 30, 2008

| Type | Date | Num | P.O. # | Descrip | Class | Amount | Balance |
|------|------|-----|--------|---------|-------|--------|---------|
| Invoice | 6/8/2005 | 13433 | 05-5681 | CO-Cheatham-Franklin | Alabama | 67.00 | 61,839.00 |
| Invoice | 6/8/2005 | 13438 | 05-5721 | CO-Allen-Colbert | Alabama | 69.00 | 61,908.00 |
| Invoice | 6/8/2005 | 13468 | 05-5647 | CO-Sylvester-Morgan-Mobile | Alabama | 72.00 | 61,980.00 |
| Invoice | 6/9/2005 | 13508 | 05-5635 | 30 yr-Robinson-Cobb | Georgia | 125.00 | 62,105.00 |
| Invoice | 6/9/2005 | 13517 | 05-5780 | CO-Newll-Lauderdale | Mississippi | 78.00 | 62,183.00 |
| Invoice | 6/9/2005 | 13550 | 05-5750 | CO-Watters-Montgomery | Alabama | 69.00 | 62,252.00 |
| Invoice | 6/9/2005 | 13559 | 05-5787 | 30 yr-Lambert-Baldwin | Alabama | 125.00 | 62,377.00 |
| Invoice | 6/10/2005 | 13571 | 05-2865 | CO-Wheeler,Dirk-Muscogee | Georgia | 73.00 | 62,450.00 |
| Invoice | 6/10/2005 | 13572 | 05-5784 | CO-Headley,Thomas-Chilton | Alabama | 70.00 | 62,520.00 |
| Invoice | 6/10/2005 | 13594 | 05-5864 | CO-Bullock,Wanda-Calhoun | Alabama | 69.00 | 62,589.00 |
| Invoice | 6/10/2005 | 13629 | 05-5786 | CO-Collins,Tommy-Montgomery | Alabama | 71.00 | 62,660.00 |
| Invoice | 6/10/2005 | 13648 | 05-5889 | CO-Coppock,Wayne-Calhoun | Alabama | 67.00 | 62,727.00 |
| Invoice | 6/10/2005 | 13653 | 05-5892 | CO-Hamoton,Paul-Union | North Ca... | 64.00 | 62,791.00 |
| Invoice | 6/10/2005 | 13654 | 05-5790 | CO-Wilson,Stacy-Colbert | Alabama | 75.00 | 62,866.00 |
| Invoice | 6/13/2005 | 13678 | 05-5885 | CO-Martin,Elizabeth-Hinds | Mississippi | 68.00 | 62,934.00 |
| Invoice | 6/13/2005 | 13688 | 05-5670 | Judg/Lien-Fields,Jackie-Henry | Georgia | 35.00 | 62,969.00 |
| Invoice | 6/13/2005 | 13707 | 05-5681 | CO-Cheatham,Joanne-Franklin | Alabama | 68.00 | 63,037.00 |
| Invoice | 6/13/2005 | 13708 | 05-5833 | CO-Lawshe,Larry-Mobile | Alabama | 73.00 | 63,110.00 |
| Invoice | 6/13/2005 | 13709 | 05-5895 | CO-Randolph,Florence-Franklin | Alabama | 73.00 | 63,183.00 |
| Invoice | 6/13/2005 | 13735 | 05-5852 | CO-Ford,Thomas-Marshall | Alabama | 68.00 | 63,251.00 |
| Invoice | 6/13/2005 | 13747 | 05-5830 | CO-Lamy,Stephen-Madison | Alabama | 72.00 | 63,323.00 |
| Invoice | 6/14/2005 | 13774 | 05-5930 | CO-Smith,Diane-Baldwin | Alabama | 70.00 | 63,393.00 |
| Invoice | 6/15/2005 | 13828 | 05-5971 | CO-Adams-Dale | Alabama | 70.00 | 63,463.00 |
| Invoice | 6/15/2005 | 13831 | 05-5951 | CO-Napier-Mobile | Alabama | 71.00 | 63,534.00 |
| Invoice | 6/15/2005 | 13855 | 05-5875 | CO-Thompson-Mobile | Alabama | 80.00 | 63,614.00 |
| Invoice | 6/15/2005 | 13861 | 05-5888 | CO-Crook-Baldwin | Alabama | 72.00 | 63,686.00 |
| Invoice | 6/15/2005 | 13869 | 05-5948 | CO-Faust-Elmore | Alabama | 72.00 | 63,758.00 |
| Invoice | 6/15/2005 | 13874 | 05-5952 | CO-Barnett-Jasper | Mississippi | 71.00 | 63,829.00 |
| Invoice | 6/16/2005 | 13897 | 05-5906 | CO-Cartwright-Madison | Alabama | 68.00 | 63,897.00 |
| Invoice | 6/16/2005 | 13901 | 05-5957 | CO-Greene-Union | North Ca... | 74.00 | 63,971.00 |
| Invoice | 6/16/2005 | 13950 | 05-5994 | CO-Whale-Cherokee | Alabama | 71.00 | 64,042.00 |
| Invoice | 6/16/2005 | 13976 | 05-5095 | mtg. rec-Garland-Fulton | Georgia | 35.00 | 64,077.00 |
| Invoice | 6/17/2005 | 14025 | 05-6010 | CO-Howard-Mobile | Alabama | 73.00 | 64,150.00 |
| Invoice | 6/21/2005 | 14124 | 04-4781 | update-Hardy-Fulton | Georgia | 25.00 | 64,175.00 |
| Invoice | 6/21/2005 | 14132 | 05-6127 | CO--McCrary-Rowan | North Ca... | 73.00 | 64,248.00 |
| Invoice | 6/21/2005 | 14167 | 05-6142 | CO-Manning-Rankin | Mississippi | 69.00 | 64,317.00 |
| Invoice | 6/22/2005 | 14243 | 05-6213 | Co-Akers-Chambers | Alabama | 78.00 | 64,395.00 |
| Invoice | 6/23/2005 | 14312 | 05-6288 | CO-Ballard-Marion | Alabama | 72.00 | 64,467.00 |
| Invoice | 6/24/2005 | 14314 | 05-6259 | CO-Taylor-Hinds | Mississippi | 66.00 | 64,533.00 |
| Invoice | 6/24/2005 | 14320 | 05-6145 | CO-Poindexter-Hinds | Mississippi | 74.00 | 64,607.00 |
| Invoice | 6/24/2005 | 14326 | 05-5490 | judg/lien-Waters-Murray | Georgia | 25.00 | 64,632.00 |
| Invoice | 6/24/2005 | 14336 | 05-6319 | CO-Smith-Madison | Mississippi | 87.00 | 64,719.00 |
| Invoice | 6/24/2005 | 14351 | 05-6350 | CO-2 parcelsBarham-Lauderdale | Mississippi | 135.00 | 64,854.00 |
| Invoice | 6/24/2005 | 14378 | 05-6237 | CO-Dixon-Hinds | Mississippi | 68.00 | 64,922.00 |
| Invoice | 6/28/2005 | 14471 | 05-6380 | Co-Anderson-Lee | Alabama | 72.00 | 64,994.00 |
| Invoice | 7/1/2005 | 14664 | 05-6464 | CO-Wilson-Elmore | Alabama | 73.50 | 65,067.50 |
| Invoice | 7/5/2005 | 14716 | 05-6383 | CO-Scott-Mobile | Alabama | 72.00 | 65,139.50 |
| Invoice | 7/5/2005 | 14723 | 04-4975 | update-Fowler-Fulton | Georgia | 25.00 | 65,164.50 |
| Invoice | 7/7/2005 | 14837 | 05-6515 | CO-Herring-Elmore | Alabama | 69.00 | 65,233.50 |

Page 8

Hall-Frazier
Record - 000291

9:11 AM

05/28/08
Accrual Basis

## Southern Land & Title, LLC
## Customer Balance Detail
### As of April 30, 2008

| Type | Date | Num | P.O. # | Descrip | Class | Amount | Balance |
|------|------|-----|--------|---------|-------|--------|---------|
| Invoice | 7/7/2005 | 14888 | 05-6492 | CO-Shelton-Jefferson | Alabama | 72.00 | 65,305.50 |
| Invoice | 7/8/2005 | 14981 | 05-6548 | Co-Headley-Chilton | Alabama | 68.00 | 65,373.50 |
| Invoice | 7/12/2005 | 15040 | 05-6679 | CO-Wilson-Talladega | Alabama | 89.00 | 65,462.50 |
| Invoice | 7/12/2005 | 15043 | 05-6645 | CO-Steward-Copiah | Mississippi | 69.00 | 65,531.50 |
| Invoice | 7/12/2005 | 15046 | 05-6641 | CO-Matthews-Madison | Mississippi | 74.00 | 65,605.50 |
| Invoice | 7/13/2005 | 15072 | 05-4781 | mtg. rec-Hardy-Fulton | Georgia | 35.00 | 65,640.50 |
| Invoice | 7/13/2005 | 15073 | 05-5977 | mtg. rec-Cannon-Fulton | Georgia | 35.00 | 65,675.50 |
| Invoice | 7/13/2005 | 15074 | 05-5727 | mtg. rec-Peek-Fulton | Georgia | 35.00 | 65,710.50 |
| Invoice | 7/13/2005 | 15076 | 05-6721 | CO-Jefferson-Tuscaloosa | Alabama | 69.00 | 65,779.50 |
| Invoice | 7/13/2005 | 15077 | 05-6745 | CO-Boler-Tuscaloosa | Alabama | 69.00 | 65,848.50 |
| Invoice | 7/13/2005 | 15103 | 05-6693 | CO-Bracey-Hinds | Mississippi | 74.00 | 65,922.50 |
| Invoice | 7/14/2005 | 15153 | 05-6734 | CO-McMillian-Talladega | Alabama | 79.00 | 66,001.50 |
| Invoice | 7/15/2005 | 15212 | 05-6838 | CO-Beasley-Jones | Mississippi | 68.00 | 66,069.50 |
| Invoice | 7/15/2005 | 15217 | 05-6813 | CO-East-Madison | Alabama | 71.00 | 66,140.50 |
| Invoice | 7/15/2005 | 15223 | 05-6770 | CO-Mooneyham-Harrison | Mississippi | 71.00 | 66,211.50 |
| Invoice | 7/15/2005 | 15266 | | CO-Winborn-Lauderdale | Alabama | 70.00 | 66,281.50 |
| Invoice | 7/15/2005 | 15272 | 05-6893 | CO-Jones-Tuscaloosa | Alabama | 68.00 | 66,349.50 |
| Invoice | 7/18/2005 | 15283 | 05-6818 | Co-Owens-Dallas | Alabama | 73.00 | 66,422.50 |
| Invoice | 7/18/2005 | 15292 | 05-6629 | CO-Rogers-Lamar | Alabama | 83.00 | 66,505.50 |
| Invoice | 7/18/2005 | 15301 | 05-6839 | CO-Cooper-Clarke | Mississippi | 70.00 | 66,575.50 |
| Invoice | 7/18/2005 | 15302 | 05-6873 | CO-Gardner-Tuscaloosa | Alabama | 70.00 | 66,645.50 |
| Invoice | 7/18/2005 | 15317 | 05-6877 | CO-Finch-Houston | Alabama | 77.00 | 66,722.50 |
| Invoice | 7/19/2005 | 15369 | 05-6914 | CO-McDaniels-Iredell | North Ca... | 75.00 | 66,797.50 |
| Invoice | 7/19/2005 | 15371 | 05-6904 | Co-Harmon-Cabarrus | North Ca... | 69.00 | 66,866.50 |
| Invoice | 7/19/2005 | 15372 | 05-6090 | mtg. rec-Oliver-Fulton | Georgia | 35.00 | 66,901.50 |
| Invoice | 7/19/2005 | 15377 | 05-6955 | CO-Stewart-Hinds | Mississippi | 70.00 | 66,971.50 |
| Invoice | 7/20/2005 | 15391 | 05-6983 | CO-Bolden-Mecklenburg | North Ca... | 71.00 | 67,042.50 |
| Invoice | 7/20/2005 | 15409 | 05-5017 | update-Brown-Richmond | Georgia | 25.00 | 67,067.50 |
| Invoice | 7/20/2005 | 15412 | 05-4385 | CO-Jackson-Madison | Alabama | 47.00 | 67,114.50 |
| Invoice | 7/20/2005 | 15423 | 05-6515 | CO-Herring-Elmore | Alabama | 67.00 | 67,181.50 |
| Invoice | 7/20/2005 | 15429 | 05-6938 | CO-Harvey-Lauderdale | Mississippi | 72.00 | 67,253.50 |
| Invoice | 7/21/2005 | 15506 | 05-7004 | CO-King-Iredell | North Ca... | 72.00 | 67,325.50 |
| Invoice | 7/21/2005 | 15517 | 05-6964 | CO-Jones-Etowah | Alabama | 71.00 | 67,396.50 |
| Invoice | 7/22/2005 | 15583 | 05-7039 | CO-Davis-Calhoun | Alabama | 68.00 | 67,464.50 |
| Invoice | 7/25/2005 | 15614 | 05-7089 | CO-Jett-Walker | Alabama | 75.00 | 67,539.50 |
| Invoice | 7/25/2005 | 15617 | 05-7057 | CO-Gildersleeve-Mobile | Alabama | 67.00 | 67,606.50 |
| Invoice | 7/25/2005 | 15629 | 05-7052 | CO-Young-Tallapoosa | Alabama | 73.00 | 67,679.50 |
| Invoice | 7/25/2005 | 15632 | 05-7053 | CO-Copeland-Autauga | Alabama | 74.00 | 67,753.50 |
| Invoice | 7/25/2005 | 15663 | 05-7016 | Co-Glover-Scott | Mississippi | 70.00 | 67,823.50 |
| Invoice | 7/26/2005 | 15678 | 05-7075 | CO-Sako-Mecklenburg | North Ca... | 67.00 | 67,890.50 |
| Invoice | 7/26/2005 | 15719 | 05-7130 | CO-Martin-Autauga | Alabama | 75.00 | 67,965.50 |
| Invoice | 7/27/2005 | 15728 | 05-7131 | CO-Fernandez-Iredell | North Ca... | 72.00 | 68,037.50 |
| Invoice | 7/27/2005 | 15761 | 05-5833 | update-Lawshe-Mobile | Alabama | 25.00 | 68,062.50 |
| Invoice | 7/29/2005 | 15880 | 05-6515 | 4 part-Herring-Elmore | Alabama | 27.25 | 68,089.75 |
| Invoice | 8/1/2005 | 15930 | 05-7178 | CO-Parker-Montgomery | Alabama | 81.00 | 68,170.75 |
| Invoice | 8/1/2005 | 15933 | 05-7186 | update-Collins-Montgomery | Alabama | 27.00 | 68,197.75 |
| Invoice | 8/1/2005 | 15935 | 05-7179 | CO-Havranek-Baldwin | Alabama | 78.00 | 68,275.75 |
| Invoice | 8/1/2005 | 15957 | 05-7215 | CO-Jones-Etowah | Alabama | 70.00 | 68,345.75 |
| Invoice | 8/3/2005 | 16080 | 05-7276 | CO-Mangrum-Mecklenburg | North Ca... | 70.00 | 68,415.75 |

Page 9

9:11 AM

05/28/08
Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 8/4/2005 | 16084 | 05-7240 | CO/24 mo-Bell-Dallas | Alabama | 74.00 | 68,489.75 |
| Invoice | 8/4/2005 | 16093 | 05-7302 | CO-24 mo. chain-Ware-Mobile | Alabama | 82.00 | 68,571.75 |
| Invoice | 8/8/2005 | 16202 | 05-5341 | mtg. rec-Johnson-Fulton | Georgia | 35.00 | 68,606.75 |
| Invoice | 8/8/2005 | 16247 | 05-7359 | CO-Williams-Mecklenburg | North Ca... | 70.00 | 68,676.75 |
| Invoice | 8/8/2005 | 16261 | 05-6864 | CO-Sage-Coffee | Alabama | 74.00 | 68,750.75 |
| Invoice | 8/9/2005 | 16305 | 05-7311 | CO-Sutton-Wake | North Ca... | 69.00 | 68,819.75 |
| Invoice | 8/10/2005 | 16344 | 05-7360 | CO-Clement-Bunccombe- | North Ca... | 75.00 | 68,894.75 |
| Invoice | 8/10/2005 | 16360 | 05-4975 | mtg. rec-Johnson-Fulton | Georgia | 35.00 | 68,929.75 |
| Invoice | 8/11/2005 | 16422 | 05-7353 | CO-Barnett-Jasper | Mississippi | 83.00 | 69,012.75 |
| Invoice | 8/11/2005 | 16432 | 05-7398 | CO-Williams-Tuscaloosa | Alabama | 68.00 | 69,080.75 |
| Invoice | 8/11/2005 | 16435 | 05-5784 | update-Headley-Chilton | Alabama | 25.00 | 69,105.75 |
| Invoice | 8/11/2005 | 16455 | 05-7428 | 30 yr-Shoemake-Hancock | Mississippi | 125.00 | 69,230.75 |
| Invoice | 8/11/2005 | 16458 | 05-7372 | 30 yr-Swader-Morgan | Alabama | 125.00 | 69,355.75 |
| Invoice | 8/12/2005 | 16516 | 05-7362 | CO-Hill-Mobile | Alabama | 88.00 | 69,443.75 |
| Invoice | 8/12/2005 | 16558 | 05-7403 | CO-Hooper-Gaston | North Ca... | 71.00 | 69,514.75 |
| Invoice | 8/16/2005 | 16657 | 05-7494 | CO-Maye-Jasper | Mississippi | 74.00 | 69,588.75 |
| Invoice | 8/16/2005 | 16678 | 05-6703 | mtg. rec-Johnson-Fulton | Georgia | 35.00 | 69,623.75 |
| Invoice | 8/16/2005 | 16712 | 05-7444 | CO-McBee-Mecklenburg | North Ca... | 67.00 | 69,690.75 |
| Invoice | 8/17/2005 | 16779 | 05-7623 | CO-Newell-Hinds | Mississippi | 72.00 | 69,762.75 |
| Invoice | 8/18/2005 | 16788 | 05-7537 | CO-Lancaster-Hancock | Mississippi | 70.00 | 69,832.75 |
| Invoice | 8/18/2005 | 16830 | 05-7476 | Co-Woods-Mobile | Alabama | 71.00 | 69,903.75 |
| Invoice | 8/18/2005 | 16843 | 05-7480 | CO-Cosilow-Copiah | Mississippi | 69.00 | 69,972.75 |
| Invoice | 8/19/2005 | 16860 | 05-7551 | CO-Harper-Lee | Alabama | 72.00 | 70,044.75 |
| Invoice | 8/19/2005 | 16879 | 05-7483 | CO-Ward-Elmore | Alabama | 71.00 | 70,115.75 |
| Invoice | 8/19/2005 | 16891 | 05-7556 | CO-Wright-Dekalb | Alabama | 69.00 | 70,184.75 |
| Invoice | 8/23/2005 | 16995 | 05-7630 | CO-Arrington-Limestone | Alabama | 70.00 | 70,254.75 |
| Invoice | 8/23/2005 | 17007 | 05-7587 | CO-Reed-Madison | Mississippi | 74.00 | 70,328.75 |
| Invoice | 8/23/2005 | 17011 | 05-7668 | CO-Gunn-Etowah | Alabama | 69.00 | 70,397.75 |
| Invoice | 8/23/2005 | 17018 | 05-7676 | CO-Pourclau-Shelby | Alabama | 73.00 | 70,470.75 |
| Invoice | 8/24/2005 | 17097 | 05-7674 | CO-Fowler-Talladega | Alabama | 74.00 | 70,544.75 |
| Invoice | 8/25/2005 | 17120 | 05-7735 | CO-Lumpkin-Etowah | Alabama | 71.00 | 70,615.75 |
| Invoice | 8/25/2005 | 17182 | 05-7716 | CO-McMullan-Smith | Mississippi | 70.00 | 70,685.75 |
| Invoice | 8/31/2005 | 17360 | 05-7796 | CO-Dick-Calhoun | Alabama | 77.00 | 70,762.75 |
| Invoice | 8/31/2005 | 17369 | 05-7784 | CO-Ridgeway-Talladega | Alabama | 67.00 | 70,829.75 |
| Invoice | 8/31/2005 | 17396 | 05-7817 | Co-Blackman-Escambia | Alabama | 72.00 | 70,901.75 |
| Invoice | 9/1/2005 | 17413 | 05-7190 | mtg. rec-Oliver-Fulton | Georgia | 41.00 | 70,942.75 |
| Invoice | 9/1/2005 | 17414 | 05-5510 | mtg. rec-Johnson-Fulton | Georgia | 35.00 | 70,977.75 |
| Invoice | 9/2/2005 | 17491 | 05-7852 | CO-Vaughn-Surry | North Ca... | 71.00 | 71,048.75 |
| Invoice | 9/2/2005 | 17499 | 05-7879 | CO-Parker-Etowah | Alabama | 73.00 | 71,121.75 |
| Invoice | 9/2/2005 | 17520 | 05-7849 | CO-Brown-Calhoun | Alabama | 73.00 | 71,194.75 |
| Invoice | 9/8/2005 | 17643 | 05-7845 | CO-Hill-Walker | Alabama | 75.00 | 71,269.75 |
| Invoice | 9/8/2005 | 17664 | 05-6964 | Update-Jones-Etowah | Alabama | 25.00 | 71,294.75 |
| Invoice | 9/8/2005 | 17702 | 05-7761 | CO-Taylor-Mobile | Alabama | 74.00 | 71,368.75 |
| Invoice | 9/9/2005 | 17707 | 05-7786 | CO-Gordon-Mobile | Alabama | 84.00 | 71,452.75 |
| Invoice | 9/13/2005 | 17848 | 05-7901 | CO-Green-Montgomery | Alabama | 87.00 | 71,539.75 |
| Invoice | 9/14/2005 | 17902 | 05-8050 | CO-Kelly-Tuscaloosa | Alabama | 71.00 | 71,610.75 |
| Invoice | 9/14/2005 | 17937 | 05-8020 | CO-Sanderson-Colbert | Alabama | 68.00 | 71,678.75 |
| Invoice | 9/15/2005 | 17978 | 05-7956 | CO-Shelton-Jones | Mississippi | 67.00 | 71,745.75 |
| Invoice | 9/15/2005 | 17981 | 05-5341 | mtg. filing-Kelly-Fulton | Georgia | 35.00 | 71,780.75 |

Hall-Frazier
Record - 000293

9:11 AM

05/28/08

Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
**As of April 30, 2008**

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 9/15/2005 | 18011 | 05-8049 | Co-McDavid-Hinds | Mississippi | 70.00 | 71,850.75 |
| Invoice | 9/16/2005 | 18055 | 05-5830 | update-Lamy-Limestone | Alabama | 25.00 | 71,875.75 |
| Invoice | 9/19/2005 | 18115 | 05-8100 | CO-Chukwurah-Wake | North Ca... | 70.00 | 71,945.75 |
| Invoice | 9/19/2005 | 18124 | 05-8137 | Co-McGill-Mecklenburg | North Ca... | 69.00 | 72,014.75 |
| Invoice | 9/19/2005 | 18135 | 05-8127 | CO-Tedder-Houston | Alabama | 82.00 | 72,096.75 |
| Invoice | 9/20/2005 | 18190 | 05-8236 | Co-Brown-Colbert | Alabama | 72.00 | 72,168.75 |
| Invoice | 9/20/2005 | 18198 | 05-8181 | CO-Holloway-Randolph | Alabama | 84.00 | 72,252.75 |
| Invoice | 9/20/2005 | 18223 | 05-8051 | full search-Rogers-Montgomery | Alabama | 125.00 | 72,377.75 |
| Invoice | 9/22/2005 | 18360 | 05-8161 | CO-Wilbourn-Jackson | Alabama | 70.00 | 72,447.75 |
| Invoice | 9/23/2005 | 18456 | 05-8298 | CO-Harrison-Mecklenburg | North Ca... | 70.00 | 72,517.75 |
| Invoice | 9/23/2005 | 18458 | 05-8300 | CO-Martin-Mecklenburg | North Ca... | 70.00 | 72,587.75 |
| Invoice | 9/26/2005 | 18529 | 05-7178 | update-Parker-Montgomery | Alabama | 25.00 | 72,612.75 |
| Invoice | 9/27/2005 | 18536 | 05-8292 | CO-Upchurch-Durham | North Ca... | 70.00 | 72,682.75 |
| Invoice | 9/27/2005 | 18575 | 05-8321 | CO-Smith-Montgomery | Alabama | 72.00 | 72,754.75 |
| Invoice | 9/28/2005 | 18627 | 05-8345 | full search-Casey-Surry | North Ca... | 125.00 | 72,879.75 |
| Invoice | 9/29/2005 | 18697 | 05-8369 | CO-Davis-Cleveland | North Ca... | 72.00 | 72,951.75 |
| Invoice | 10/4/2005 | 18839 | 05-8420 | co-Hicks- Madison | Alabama | 69.00 | 73,020.75 |
| Invoice | 10/4/2005 | 18857 | 05-7053 | retrieval- Copland-Autauga | Alabama | 25.00 | 73,045.75 |
| Invoice | 10/5/2005 | 18916 | 058468 | co-Hoke-Catawba | North Ca... | 69.00 | 73,114.75 |
| Invoice | 10/5/2005 | 18921 | 05-523 | retrieval-Smallwood-Dekalb | Alabama | 25.00 | 73,139.75 |
| Invoice | 10/7/2005 | 19028 | 05-7556 | Update-Wright-Dekalb | Alabama | 25.00 | 73,164.75 |
| Invoice | 10/11/2005 | 19170 | 05-8526 | co-Lauderdale-Marion | Alabama | 90.00 | 73,254.75 |
| Invoice | 10/12/2005 | 19200 | 05-8528 | CO-Hopson-Lauderdale | Mississippi | 68.00 | 73,322.75 |
| Invoice | 10/14/2005 | 19334 | 05-8604 | co-Dimsdale-Buncombe | North Ca... | 71.00 | 73,393.75 |
| Invoice | 10/17/2005 | 19445 | 05-8688 | co-Digby-Calhoun | Alabama | 69.00 | 73,462.75 |
| Invoice | 10/18/2005 | 19456 | 05-8659 | co-McCarthy-Durham | North Ca... | 72.00 | 73,534.75 |
| Invoice | 10/19/2005 | 19510 | 05-7302 | update-Ware-Mobile | Alabama | 25.00 | 73,559.75 |
| Invoice | 10/19/2005 | 19518 | 05-8655 | CO-Huguley-Chambers | Alabama | 72.00 | 73,631.75 |
| Invoice | 10/19/2005 | 19522 | 05-7852 | update-Vaughn-Surry | North Ca... | 25.00 | 73,656.75 |
| Invoice | 10/20/2005 | 19574 | 05-8680 | co-Hatfield-Madison | Mississippi | 70.00 | 73,726.75 |
| Invoice | 10/21/2005 | 19625 | 05-8745 | CO-Laird-Baldwin | Alabama | 73.00 | 73,799.75 |
| Invoice | 10/21/2005 | 19688 | 05-8798 | CO-McCrary-Scott | Mississippi | 75.00 | 73,874.75 |
| Invoice | 10/24/2005 | 19698 | 05-8689 | Stevens-co-Dekalb | Alabama | 125.00 | 73,999.75 |
| Invoice | 10/24/2005 | 19718 | 05-7817 | update-Blackman-Escambia | Alabama | 25.00 | 74,024.75 |
| Invoice | 10/26/2005 | 19880 | 05-8860 | CO-Baty-Wake | North Ca... | 71.00 | 74,095.75 |
| Invoice | 10/26/2005 | 19895 | 05-8873 | CO-Reynolds-Hinds | Mississippi | 70.00 | 74,165.75 |
| Invoice | 10/26/2005 | 19902 | 05-8863 | CO-Pounders-Marion | Alabama | 77.00 | 74,242.75 |
| Invoice | 10/27/2005 | 19930 | 05-8875 | CO-Lewis,Tyler-Scott | Mississippi | 77.00 | 74,319.75 |
| Invoice | 10/27/2005 | 19945 | 05-8918 | CO-Freeman,Heather-Calhoun | Alabama | 68.00 | 74,387.75 |
| Invoice | 10/27/2005 | 19949 | 05-8857 | CO-Brock,Jimmy-Etowah | Alabama | 70.00 | 74,457.75 |
| Invoice | 10/27/2005 | 19973 | 05-8877 | CO-Eady-Morgan | Alabama | 74.00 | 74,531.75 |
| Invoice | 10/28/2005 | 20004 | 05-8858 | CO-Royster-Morgan | Alabama | 15.50 | 74,547.25 |
| Invoice | 11/7/2005 | 20246 | 05-8982 | CO-Ainsworth-Rankin | Mississippi | 73.00 | 74,620.25 |
| Invoice | 11/7/2005 | 20279 | 05-8960 | CO-Moncrief-Montgomery | Alabama | 71.00 | 74,691.25 |
| Invoice | 11/7/2005 | 20285 | 05-9000 | CO-Walker-Madison | Mississippi | 64.00 | 74,755.25 |
| Invoice | 11/8/2005 | 20396 | 05-9043 | CO-Jairam-Colbert | Alabama | 68.00 | 74,823.25 |
| Invoice | 11/8/2005 | 20423 | 05-9011 | CO-Howard-Montgomery | Alabama | 76.00 | 74,899.25 |
| Invoice | 11/9/2005 | 20478 | 05-9059 | CO-McBounds-Hinds | Mississippi | 72.00 | 74,971.25 |
| Invoice | 11/9/2005 | 20509 | 05-9079 | CO-Lee-Etowah | Alabama | 73.00 | 75,044.25 |

9:11 AM

05/28/08

Accrual Basis

## Southern Land & Title, LLC
### Customer Balance Detail
#### As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 11/9/2005 | 20515 | 05-8200 | mtg. rec-Evans-Fulton | Georgia | 35.00 | 75,079.25 |
| Invoice | 11/9/2005 | 20516 | 05-9037 | CO-Jenkins-Tallapoosa | Alabama | 76.00 | 75,155.25 |
| Invoice | 11/9/2005 | 20530 | 05-9064 | CO-Nelson-Calhoun | Alabama | 67.00 | 75,222.25 |
| Invoice | 11/10/2005 | 20586 | 05-9073 | Co-Mohead-Rankin | Mississippi | 68.00 | 75,290.25 |
| Invoice | 11/10/2005 | 20591 | 05-9120 | CO-Lanham-Etowah | Alabama | 69.00 | 75,359.25 |
| Invoice | 11/10/2005 | 20626 | 05-9071 | CO-Jarell-Marshall | Alabama | 69.00 | 75,428.25 |
| Invoice | 11/10/2005 | 20628 | 05-9040 | CO-Haywood-Montgomery | Alabama | 82.00 | 75,510.25 |
| Invoice | 11/10/2005 | 20638 | 05-8963 | CO-Johnson-Mobile | Alabama | 70.00 | 75,580.25 |
| Invoice | 11/16/2005 | 20793 | 05-8963 | CO-Johnson-Mobile | Alabama | 81.00 | 75,661.25 |
| Invoice | 11/16/2005 | 20827 | 05-9168 | CO-Hallyburton-Elmore | Alabama | 69.00 | 75,730.25 |
| Invoice | 11/17/2005 | 20907 | 05-9169 | CO-Robinson-Madison | Alabama | 76.00 | 75,806.25 |
| Invoice | 11/21/2005 | 21000 | 05-7798 | mtg. rec-Henderson-Fulton | Georgia | 35.00 | 75,841.25 |
| Invoice | 11/21/2005 | 21007 | 05-7791 | mtg. rec-Toure-Fulton | Georgia | 35.00 | 75,876.25 |
| Invoice | 11/22/2005 | 21056 | 05-9299 | Co-Self-Etowah | Alabama | 68.00 | 75,944.25 |
| Invoice | 11/22/2005 | 21057 | 05-9424 | CO-Freeze-Rowan | North Ca... | 70.00 | 76,014.25 |
| Invoice | 11/22/2005 | 21094 | 05-9252 | Co-Cameron-Hinds | Mississippi | 69.00 | 76,083.25 |
| Invoice | 11/23/2005 | 21146 | | mtg. ret-Robinson-Dekalb | Georgia | 25.00 | 76,108.25 |
| Invoice | 11/30/2005 | 21336 | 05-8873 | copy of mtg-Matory-Hinds | Mississippi | 31.00 | 76,139.25 |
| Invoice | 11/30/2005 | 21352 | 05-9339 | CO-Canty-Montgomery | Alabama | 73.00 | 76,212.25 |
| Invoice | 12/2/2005 | 21433 | 05-7891 | mtg. rec-Watson-Fulton | Georgia | 35.00 | 76,247.25 |
| Invoice | 12/5/2005 | 21452 | 05-9343 | CO-Wells-Montgomery | Alabama | 71.00 | 76,318.25 |
| Invoice | 12/8/2005 | 21595 | 05-9423 | CO-Moss-Mecklenburg-Charlotte | North Ca... | 72.00 | 76,390.25 |
| Invoice | 12/8/2005 | 21623 | 05-9362 | CO-Lands-Blount | Alabama | 71.00 | 76,461.25 |
| Invoice | 12/10/2005 | 21679 | 05-9449 | CO-Riddle-Winston | Alabama | 67.00 | 76,528.25 |
| Invoice | 12/14/2005 | 21888 | 05-9494 | CO-Smith-Etowah | Alabama | 70.00 | 76,598.25 |
| Invoice | 12/14/2005 | 21905 | 05-9476 | CO-Carpenter-Buncombe | North Ca... | 68.00 | 76,666.25 |
| Invoice | 12/15/2005 | 21915 | 05-9429 | CO-Dula-Caldwell | North Ca... | 73.00 | 76,739.25 |
| Invoice | 12/15/2005 | 21920 | 05-9412 | CO-Lewis-Etowah | Alabama | 71.00 | 76,810.25 |
| Invoice | 12/15/2005 | 21923 | 05-9399 | CO-Harris-Mobile | Alabama | 73.00 | 76,883.25 |
| Invoice | 12/19/2005 | 22040 | 05-9536 | CO-Watts-Dekalb | Alabama | 74.00 | 76,957.25 |
| Invoice | 12/19/2005 | 22051 | 05-9552 | CO-Bartlett-Cullman | Alabama | 70.00 | 77,027.25 |
| Invoice | 12/20/2005 | 22060 | 05-9429 | CO-Dula-Caldwell | North Ca... | 73.00 | 77,100.25 |
| Invoice | 12/20/2005 | 22069 | 05-9505 | 30 yr-Upton-Pickens | Georgia | 135.00 | 77,235.25 |
| Invoice | 12/21/2005 | 22169 | 05-9571 | 30 yr-Crowley-Morgan | Alabama | 125.00 | 77,360.25 |
| Invoice | 12/28/2005 | 22319 | 05-9658 | CO-Hamilton-Davidson | North Ca... | 71.00 | 77,431.25 |
| Invoice | 12/29/2005 | 22379 | 05-9680 | CO-Johnson-Montgomery | Alabama | 87.00 | 77,518.25 |
| Invoice | 12/29/2005 | 22380 | 05-9676 | CO-Thompkins-Montgomery | Alabama | 72.00 | 77,590.25 |
| Invoice | 1/3/2006 | 22517 | 05-9683 | CO-Boyd-Morgan | Alabama | 67.00 | 77,657.25 |
| Invoice | 1/4/2006 | 22550 | 05-9710 | CO-Hardrick-Montgomery | Alabama | 72.00 | 77,729.25 |
| Invoice | 1/4/2006 | 22604 | 05-8976 | mtg. rec-Shepard-Fulton | Georgia | 35.00 | 77,764.25 |
| Invoice | 1/6/2006 | 22673 | 06-00099 | CO-Dula-Forsyth | North Ca... | 69.00 | 77,833.25 |
| Invoice | 1/6/2006 | 22677 | 06-00063 | Co-Jenkins-Baldwin | Alabama | 83.00 | 77,916.25 |
| Invoice | 1/10/2006 | 22785 | 06-00101 | CO-Sanders-Chambers | Alabama | 117.00 | 78,033.25 |
| Invoice | 1/10/2006 | 22791 | 06-00084 | CO-Bullie-Hinds | Mississippi | 71.00 | 78,104.25 |
| Invoice | 1/11/2006 | 22856 | 0600165 | CO-Halloway-Randolph | Alabama | 25.00 | 78,129.25 |
| Invoice | 1/12/2006 | 22881 | 06-00192 | CO-Sturgis-Hinds | Mississippi | 72.00 | 78,201.25 |
| Invoice | 1/15/2006 | 22988 | 06-00223 | CO-Burwell-Etowah | Alabama | 68.00 | 78,269.25 |
| Invoice | 1/17/2006 | 23031 | 06-00226 | CO-Simmons-Lauderdale | Mississippi | 68.00 | 78,337.25 |
| Invoice | 1/17/2006 | 23054 | 06-00254 | CO-Lindley-Marion | Alabama | 77.00 | 78,414.25 |

Hall-Frazier
Record - 000295

9:11 AM

05/28/08
Accrual Basis

### Southern Land & Title, LLC
### Customer Balance Detail
#### As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 1/20/2006 | 23196 | 06-00291 | CO-Handley-Madison | Alabama | 69.00 | 78,483.25 |
| Invoice | 1/20/2006 | 23211 | 06-00323 | CO-Reid-Escambia | Alabama | 72.00 | 78,555.25 |
| Invoice | 1/23/2006 | 23244 | 06-00337 | CO-Harris-Russell | Alabama | 75.00 | 78,630.25 |
| Invoice | 1/23/2006 | 23281 | 06-00335 | CO-Stovall-Tallapoosa | Alabama | 75.00 | 78,705.25 |
| Invoice | 1/25/2006 | 23315 | 06-00303 | CO-Ward-Madison | Alabama | 72.00 | 78,777.25 |
| Invoice | 1/25/2006 | 23317 | 06-00295 | CO-Wright-Autauga | Alabama | 70.00 | 78,847.25 |
| Invoice | 1/27/2006 | 23496 | 06-00426 | CO-Johnson-Morgan | Alabama | 51.00 | 78,898.25 |
| Invoice | 2/1/2006 | 23628 | 06-00446 | CO-Potter-Hinds | Mississippi | 69.00 | 78,967.25 |
| Invoice | 2/3/2006 | 23733 | 059536 | update-Watts-Dekalb | Alabama | 25.00 | 78,992.25 |
| Invoice | 2/7/2006 | 23816 | 06-00491 | CO-Daw-Lauderdale | Mississippi | 71.00 | 79,063.25 |
| Invoice | 2/9/2006 | 23958 | 06-00528 | CO-Byce-Blount | Alabama | 71.00 | 79,134.25 |
| Invoice | 2/13/2006 | 24050 | 06-00546 | CO-Avans-Elmore | Alabama | 74.00 | 79,208.25 |
| Invoice | 2/13/2006 | 24052 | 06-00545 | CO-Nixon-Baldwin | Alabama | 78.00 | 79,286.25 |
| Invoice | 2/14/2006 | 24091 | 06-00555 | update-Dimsdale-Buncombe | North Ca... | 25.00 | 79,311.25 |
| Invoice | 2/21/2006 | 24332 | 06-00595 | CO-Heath-Montgomery | Alabama | 80.00 | 79,391.25 |
| Invoice | 2/24/2006 | 24459 | 06-00640 | CO-Brewer-Hinds | Mississippi | 73.00 | 79,464.25 |
| Invoice | 2/27/2006 | 24538 | 06-00644 | CO-Strong-Montgomery | Mississippi | 73.00 | 79,537.25 |
| Invoice | 2/28/2006 | 24583 | 06-00084 | update-Bullie-Hinds | Mississippi | 25.00 | 79,562.25 |
| Invoice | 3/2/2006 | 24651 | 06-00685 | CO-Tate-Montgomery | Alabama | 74.00 | 79,636.25 |
| Invoice | 3/3/2006 | 24726 | 06-00654 | CO-Scott-Autauga | Alabama | 82.00 | 79,718.25 |
| Invoice | 3/9/2006 | 24971 | 06-00735 | CO-Lee-Baldwin | Alabama | 72.00 | 79,790.25 |
| Invoice | 3/9/2006 | 25002 | 06-00728 | CO-Shearer-Cherokee | Georgia | 71.00 | 79,861.25 |
| Invoice | 3/17/2006 | 25358 | 06-00785 | CO-Pounders-Marion | Alabama | 76.00 | 79,937.25 |
| Invoice | 3/26/2006 | 25595 | 06-00063 | update-Jenkins-Baldwin | Alabama | 25.00 | 79,962.25 |
| Invoice | 3/26/2006 | 25602 | 06-00828 | CO-Hall-Hinds | Mississippi | 71.00 | 80,033.25 |
| Invoice | 3/26/2006 | 25606 | 06-00491 | update-Daw-Lauderdale | Mississippi | 25.00 | 80,058.25 |
| Invoice | 3/31/2006 | 25930 | 06-00919 | CO-Clark-Madison | Alabama | 70.00 | 80,128.25 |
| Invoice | 3/31/2006 | 25944 | 06-00929 | CO-Hunter-Tuscaloosa | Alabama | 69.00 | 80,197.25 |
| Invoice | 4/4/2006 | 25978 | 06-00935 | CO-Wade-Hinds | Mississippi | 73.00 | 80,270.25 |
| Invoice | 4/4/2006 | 25987 | 06-00915 | CO-Hall-Cullman | Alabama | 75.00 | 80,345.25 |
| Invoice | 4/7/2006 | 26205 | 06-00961 | CO-Wilson-Colbert | Alabama | 71.00 | 80,416.25 |
| Invoice | 4/11/2006 | 26272 | 06-00968 | CO-Nelms-Lee | Alabama | 82.00 | 80,498.25 |
| Invoice | 4/12/2006 | 26447 | 06-01033 | CO-Hewett-Calhoun | Alabama | 68.00 | 80,566.25 |
| Invoice | 4/14/2006 | 26513 | 06-01036 | CO-Bush-Knox | Tennessee | 69.00 | 80,635.25 |
| Invoice | 4/21/2006 | 26742 | 06-01075 | CO-Henderson-Hinds | Mississippi | 71.00 | 80,706.25 |
| Invoice | 4/21/2006 | 26743 | 06-01067 | CO-Holmes-Hinds | Alabama | 69.00 | 80,775.25 |
| Invoice | 4/21/2006 | 26750 | 06-01055 | CO-Killingsworth-Hinds | Mississippi | 71.00 | 80,846.25 |
| Invoice | 4/21/2006 | 26774 | 06-01072 | CO-Garner-Jackson | Mississippi | 69.00 | 80,915.25 |
| Invoice | 4/21/2006 | 26831 | 06-01075 | CO-Henderson-Hinds | Mississippi | 71.00 | 80,986.25 |
| Invoice | 4/21/2006 | 26840 | 06-01057 | CO-Edwards-Hinds | Mississippi | 71.00 | 81,057.25 |
| Invoice | 4/26/2006 | 27010 | 06-01137 | CO-Dove-Lauderdale | Mississippi | 69.00 | 81,126.25 |
| Invoice | 4/27/2006 | 27094 | 04-11631 | CO-Harris-Rockdale | Georgia | 45.00 | 81,171.25 |
| Invoice | 4/28/2006 | 27155 | 06-01153 | CO-Snipes-Lee | Alabama | 84.00 | 81,265.25 |
| Invoice | 4/28/2006 | 27207 | 06-01157 | CO-Wilson-Warren | Mississippi | 82.00 | 81,337.25 |
| Invoice | 5/2/2006 | 27227 | 06-01173 | CO-Baylor-Lauderdale | Mississippi | 69.00 | 81,406.25 |
| Invoice | 5/2/2006 | 27286 | 06-01171 | CO-Bradley-Baldwin | Alabama | 70.00 | 81,476.25 |
| Invoice | 5/3/2006 | 27331 | 06-01159 | full search-Smith-Hinds | Mississippi | 125.00 | 81,601.25 |
| Invoice | 5/3/2006 | 27332 | 06-01186 | CO-Mallory-Hinds | Mississippi | 69.00 | 81,670.25 |
| Invoice | 5/3/2006 | 27343 | 06-01176 | CO-Benson-Montgomery | Alabama | 70.00 | 81,740.25 |

Hall-Frazier
Record - 000296

9:11 AM

05/28/08

Accrual Basis

## Southern Land & Title, LLC
## Customer Balance Detail
### As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 5/3/2006 | 27390 | 06-01170 | CO-Short-Hinds | Mississippi | 70.00 | 81,810.25 |
| Invoice | 5/4/2006 | 27408 | 06-01195 | CO-Dunnaway-St.Clair | Alabama | 69.00 | 81,879.25 |
| Invoice | 5/5/2006 | 27454 | 06-01193 | CO-Spriggs-Montgomery | Alabama | 74.00 | 81,953.25 |
| Invoice | 5/10/2006 | 27648 | 06-01243 | CO-Fick-Rankin | Mississippi | 78.00 | 82,031.25 |
| Invoice | 5/10/2006 | 27692 | 06-01247 | CO-Smitherman-Chilton | Alabama | 73.00 | 82,104.25 |
| Invoice | 5/11/2006 | 27747 | 06-01252 | CO-Barnett-St.Clair | Alabama | 78.00 | 82,182.25 |
| Invoice | 5/12/2006 | 27791 | 06-01255 | CO-Wilson-Hinds | Mississippi | 70.00 | 82,252.25 |
| Invoice | 5/18/2006 | 28005 | 06-00929 | CO-Hunter-Tuscaloosa | Alabama | 69.00 | 82,321.25 |
| Invoice | 5/19/2006 | 28138 | 06-01281 | CO-Smith-Madison | Alabama | 79.00 | 82,400.25 |
| Invoice | 5/25/2006 | 28342 | 06-01315 | CO-Robinson-Jackson | Mississippi | 71.00 | 82,471.25 |
| Invoice | 6/6/2006 | 28761 | 06-01377 | CO-Strawn-St. Clair | Alabama | 74.00 | 82,545.25 |
| Invoice | 6/6/2006 | 28780 | 06-01369 | CO-McDonald-Lauderdale | Mississippi | 68.00 | 82,613.25 |
| Invoice | 6/6/2006 | 28801 | 06-01361 | CO-Calhoun-Jackson | Mississippi | 69.00 | 82,682.25 |
| Invoice | 6/7/2006 | 28859 | 06-01379 | CO-King-Mobile | Alabama | 72.00 | 82,754.25 |
| Invoice | 6/12/2006 | 29153 | 06-01417 | CO-Taylor-Anderson | Tennessee | 68.00 | 82,822.25 |
| Invoice | 6/15/2006 | 29406 | 06-01437 | CO-Williams-Hinds | Mississippi | 72.00 | 82,894.25 |
| Invoice | 6/16/2006 | 29470 | 06-01449 | CO-Patterson/Garrett-Talladega | Alabama | 74.00 | 82,968.25 |
| Invoice | 6/20/2006 | 29611 | 06-01467 | CO-Davidson-Baldwin | Alabama | 74.00 | 83,042.25 |
| Invoice | 6/26/2006 | 29913 | 06-01506 | CO-Long-Mobile | Alabama | 74.00 | 83,116.25 |
| Invoice | 7/11/2006 | 30500 | 06-01553 | Full-Ryan-Tuscaloosa | Alabama | 125.00 | 83,241.25 |
| Invoice | 7/17/2006 | 30820 | 06-01583 | CO-Kinsey-Baldwin | Alabama | 75.00 | 83,316.25 |
| Invoice | 7/17/2006 | 30886 | 06-01587 | CO-Harp-Hamilton | Tennessee | 71.00 | 83,387.25 |
| Invoice | 8/1/2006 | 31577 | 06-01684 | CO-Jones-Baldwin | Alabama | 78.00 | 83,465.25 |
| Invoice | 8/2/2006 | 31626 | 06-01697 | CO-Brown-Hinds | Mississippi | 69.00 | 83,534.25 |
| Invoice | 8/3/2006 | 31680 | 06-01721 | CO-North-Dale | Alabama | 83.00 | 83,617.25 |
| Invoice | 8/18/2006 | 32456 | 06-01799 | CO-Abraham-Rankin | Mississippi | 69.00 | 83,686.25 |
| Invoice | 8/31/2006 | 33040 | 06-01910 | CO-Tarver-Russell | Alabama | 72.00 | 83,758.25 |
| Invoice | 9/13/2006 | 33721 | 06-01995 | CO-White-Dale | Alabama | 75.00 | 83,833.25 |
| Invoice | 9/14/2006 | 33795 | 06-01996 | CO-Stephens-Limestone | Alabama | 74.00 | 83,907.25 |
| Invoice | 9/19/2006 | 33958 | 06-02041 | CO-Stephens-Tuscaloosa | Alabama | 73.00 | 83,980.25 |
| Invoice | 9/19/2006 | 33961 | 06-02019 | CO-Hudson-Chambers | Alabama | 75.00 | 84,055.25 |
| Invoice | 9/20/2006 | 34127 | 06-02076 | CO-Brown-Etowah | Alabama | 77.00 | 84,132.25 |
| Invoice | 9/20/2006 | 34155 | 06-02028 | CO-McGrath-Jackson | Mississippi | 71.00 | 84,203.25 |
| Invoice | 9/20/2006 | 34173 | 06-02027 | CO-Meaux-Hancock | Mississippi | 72.00 | 84,275.25 |
| Invoice | 9/21/2006 | 34232 | 06-02038 | CO-Williams-Madison | Alabama | 67.00 | 84,342.25 |
| Invoice | 9/25/2006 | 34473 | 06-02102 | CO-Johnson-Jefferson | Alabama | 75.00 | 84,417.25 |
| Invoice | 9/27/2006 | 34622 | 06-02069 | CO-Wallace-Harrison | Mississippi | 69.00 | 84,486.25 |
| Invoice | 9/29/2006 | 34721 | 06-02176 | CO-Glover-Mobile | Alabama | 85.00 | 84,571.25 |
| Invoice | 9/29/2006 | 34858 | 06-02135 | CO-Smith-Cherokee | Alabama | 51.00 | 84,622.25 |
| Invoice | 10/3/2006 | 34944 | 06-02173 | CO-Brown-Lee | Alabama | 81.00 | 84,703.25 |
| Invoice | 10/5/2006 | 35105 | 06-02230 | CO-Bye-Montgomery | | 75.00 | 84,778.25 |
| Invoice | 10/5/2006 | 35175 | 06-02194 | CO-Spohn-Gwinnett | Georgia | 68.00 | 84,846.25 |
| Invoice | 10/6/2006 | 35183 | 06-02190 | CO-Free-Elmore | Alabama | 75.00 | 84,921.25 |
| Invoice | 10/6/2006 | 35251 | 06-02245 | CO-Pham-Shelby | Alabama | 81.00 | 85,002.25 |
| Invoice | 10/6/2006 | 35270 | 06-02201 | CO-Gray-Hinds | Mississippi | 71.00 | 85,073.25 |
| Invoice | 10/9/2006 | 35294 | 06-02244 | CO-Ramsey-Lauderdale | Mississippi | 76.00 | 85,149.25 |
| Invoice | 10/9/2006 | 35360 | 06-02246 | 30yr-Davis-Cherokee | Alabama | 69.00 | 85,218.25 |
| Invoice | 10/9/2006 | 35361 | 06-02248 | CO-McQuarley-Jefferson | Alabama | 78.00 | 85,296.25 |
| Invoice | 10/13/2006 | 35571 | 06-02269 | CO-Bowers-Hardeman | Tennessee | 72.00 | 85,368.25 |

9:11 AM

05/28/08
Accrual Basis

### Southern Land & Title, LLC
### Customer Balance Detail
#### As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 10/16/2006 | 35692 | 06-02265 | CO-Johnson-Baldwin | Alabama | 79.00 | 85,447.25 |
| Invoice | 10/16/2006 | 35722 | 06-02288 | CO-Carter-Jackson | Mississippi | 71.00 | 85,518.25 |
| Invoice | 10/17/2006 | 35835 | 06-02311 | CO-Fore-Escambia | Alabama | 75.00 | 85,593.25 |
| Invoice | 10/20/2006 | 36028 | 06-02338 | CO-Carter-Warren | Mississippi | 68.00 | 85,661.25 |
| Invoice | 10/23/2006 | 36151 | 06-02376 | CO-Patterson-Lauderdale | Mississippi | 91.00 | 85,752.25 |
| Invoice | 10/24/2006 | 36167 | 06-02366 | CO-Corbett-Baldwin | Alabama | 82.00 | 85,834.25 |
| Invoice | 10/24/2006 | 36288 | 06-02409 | CO-Bilstein-Lauderdale | Alabama | 83.00 | 85,917.25 |
| Invoice | 10/25/2006 | 36326 | 06-02414 | CO-Wynn-Rankin | Mississippi | 73.00 | 85,990.25 |
| Invoice | 10/27/2006 | 36512 | 06-02485 | CO-Patterson-Harrison | Mississippi | 71.00 | 86,061.25 |
| Invoice | 10/31/2006 | 36685 | 06-02483 | CO-Ewing-Lauderdale | Mississippi | 91.00 | 86,152.25 |
| Invoice | 11/2/2006 | 36800 | 06-02505 | CO-Murray-Harrison | Mississippi | 72.00 | 86,224.25 |
| Invoice | 11/10/2006 | 37165 | 06-02570 | CO-Casey-Calhoun | Alabama | 68.00 | 86,292.25 |
| Invoice | 11/16/2006 | 37450 | 06-02611 | CO-Hays-Hinds | Mississippi | 71.00 | 86,363.25 |
| Invoice | 11/17/2006 | 37558 | 06-02626 | CO-Phillips-Hinds | Mississippi | 83.00 | 86,446.25 |
| Invoice | 11/20/2006 | 37605 | 06-02655 | CO-Tucker-Jones | | 72.00 | 86,518.25 |
| Invoice | 11/20/2006 | 37615 | 06-02677 | CO-Smith-Rankin | Mississippi | 71.00 | 86,589.25 |
| Invoice | 11/20/2006 | 37616 | 06-02675 | CO-Clark-Hinds | Mississippi | 70.00 | 86,659.25 |
| Invoice | 11/22/2006 | 37738 | 06-02679 | CO-Harper-Harrison | Mississippi | 69.00 | 86,728.25 |
| Invoice | 11/22/2006 | 37739 | 06-02696 | CO-Kelley-Harrison | Mississippi | 70.00 | 86,798.25 |
| Invoice | 11/22/2006 | 37740 | 06-02663 | CO-Ladner-Harrison | Mississippi | 70.00 | 86,868.25 |
| Invoice | 11/22/2006 | 37782 | 06-02682 | CO-Green-Hinds | Mississippi | 70.00 | 86,938.25 |
| Invoice | 11/22/2006 | 37783 | 06-02698 | CO-Tucker-Hinds | Mississippi | 70.00 | 87,008.25 |
| Invoice | 11/29/2006 | 37976 | 06-08729 | CO-Smith-Lauderdale | Mississippi | 96.00 | 87,104.25 |
| Invoice | 11/30/2006 | 38046 | 06-02743 | CO-McCain-Montgomery | Alabama | 75.00 | 87,179.25 |
| Invoice | 12/4/2006 | 38169 | 06-02736 | CO-Williams-Hinds | Mississippi | 71.00 | 87,250.25 |
| Invoice | 12/7/2006 | 38388 | 06-02749 | CO-Brock-Hancock | Mississippi | 69.00 | 87,319.25 |
| Invoice | 12/7/2006 | 38417 | 06-02793 | CO-Fraley-Gaston | North Ca... | 71.00 | 87,390.25 |
| Invoice | 12/8/2006 | 38452 | 06-02803 | CO-Boulldin-Dekalb | Alabama | 70.00 | 87,460.25 |
| Invoice | 12/8/2006 | 38511 | 06-02805 | CO-Taylor-St.Clair | Alabama | 71.00 | 87,531.25 |
| Invoice | 12/12/2006 | 38692 | 06-02028 | update-McGrath-Jackson | Mississippi | 25.00 | 87,556.25 |
| Invoice | 12/14/2006 | 38778 | 06-02863 | CO-Briggs-Harrison | Mississippi | 68.00 | 87,624.25 |
| Invoice | 12/21/2006 | 39137 | 06-02938 | CO-Ramsey-Lauderdale | Mississippi | 73.00 | 87,697.25 |
| Invoice | 12/21/2006 | 39187 | 06-02939 | CO--Strozier-Coweta | Georgia | 68.00 | 87,765.25 |
| Invoice | 12/22/2006 | 39356 | 06-02969 | CO-Scott-Warren | Mississippi | 62.00 | 87,827.25 |
| Invoice | 12/27/2006 | 39378 | 06-02976 | CO-Anderson-Rankin | Mississippi | 72.00 | 87,899.25 |
| Invoice | 12/28/2006 | 39414 | 06-03004 | CO-Tucker-Jones | Mississippi | 70.00 | 87,969.25 |
| Invoice | 12/28/2006 | 39436 | 06-02948 | CO-Short-Hinds | Mississippi | 75.00 | 88,044.25 |
| Invoice | 1/8/2007 | 39757 | 06-03035 | CO-Williams-Madison | Mississippi | 73.00 | 88,117.25 |
| Invoice | 1/8/2007 | 39810 | 06-02969 | 30 yr-Scott-Warren | Mississippi | 125.00 | 88,242.25 |
| Invoice | 1/10/2007 | 39861 | 06-02244 | update-Ramsey-Lauderdale | Mississippi | 25.00 | 88,267.25 |
| Invoice | 1/10/2007 | 39868 | 07-00032 | CO-Shiver-Jackson | Mississippi | 70.00 | 88,337.25 |
| Invoice | 1/10/2007 | 39889 | 07-00055 | CO-Richardson-Harrison | Mississippi | 68.00 | 88,405.25 |
| Invoice | 1/10/2007 | 39939 | 07-00059 | CO-Donaldson-Desoto | Mississippi | 71.00 | 88,476.25 |
| Invoice | 1/19/2007 | 40368 | 07-00155 | CO-White-Harrison | Mississippi | 69.00 | 88,545.25 |
| Invoice | 1/30/2007 | 40773 | 07-00278 | CO-Nelson-Desoto | Mississippi | 72.00 | 88,617.25 |
| Invoice | 2/5/2007 | 40941 | 07-00298 | CO-Lindsey-Rankin | Mississippi | 70.00 | 88,687.25 |
| Invoice | 2/5/2007 | 40971 | 07-00320 | CO-Kilgore-Rankin | Mississippi | 68.00 | 88,755.25 |
| Invoice | 2/7/2007 | 41079 | 07-00344 | CO-Hopson-Lauderdale | Mississippi | 73.00 | 88,828.25 |
| Invoice | 2/13/2007 | 41340 | 06-00089 | update-Bartlett-Cullman | Alabama | 28.00 | 88,856.25 |

Hall-Frazier
Record - 000298

9:11 AM

05/28/08
Accrual Basis

**Southern Land & Title, LLC**
**Customer Balance Detail**
As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 2/16/2007 | 41468 | 06-03004 | update-Tucker-Jones | Mississippi | 25.00 | 88,881.25 |
| Invoice | 2/16/2007 | 41477 | 07-00419 | CO-Owens-Hinds | Mississippi | 71.00 | 88,952.25 |
| Invoice | 2/20/2007 | 41676 | 07-00451 | Collins-CO-Harrison | Mississippi | 125.00 | 89,077.25 |
| Invoice | 3/2/2007 | 42082 | 07-00532 | CO-Howell-Rankin | Mississippi | 68.00 | 89,145.25 |
| Invoice | 3/7/2007 | 42162 | 07-00537 | CO-Brown-Lauderdale | Mississippi | 72.00 | 89,217.25 |
| Invoice | 3/7/2007 | 42163 | 07-00536 | CO-Odoms-Lauderdale | Mississippi | 71.00 | 89,288.25 |
| Invoice | 3/12/2007 | 42372 | 07-00559 | CO-Jackson-Harrison | Mississippi | 72.00 | 89,360.25 |
| Invoice | 3/14/2007 | 42489 | 07-00577 | CO-Butler-Harrison | Mississippi | 70.00 | 89,430.25 |
| Invoice | 3/26/2007 | 43180 | 07-00650 | CO-Ewing-Lauderdale | Mississippi | 69.00 | 89,499.25 |
| Invoice | 3/27/2007 | 43236 | 07-00660 | CO-Dodson-Harrison | Mississippi | 75.00 | 89,574.25 |
| Invoice | 4/10/2007 | 43840 | 07-00728 | Current Owner Search-Lane-Hind | Mississippi | 68.00 | 89,642.25 |
| Invoice | 4/10/2007 | 43847 | 07-00723 | CO-Smith-Jackson | Mississippi | 71.00 | 89,713.25 |
| Invoice | 4/11/2007 | 43890 | 07-00732 | CO-Keetion-Harrison | Mississippi | 71.00 | 89,784.25 |
| Invoice | 4/12/2007 | 44015 | 07-00755 | CO-Ashley-Pike | Mississippi | 70.00 | 89,854.25 |
| Invoice | 4/18/2007 | 44212 | 07-00766 | CO-Brown-Madison | Mississippi | 73.00 | 89,927.25 |
| Invoice | 4/21/2007 | 44333 | 07-00278 | CO-Nelson-Desoto | Mississippi | 25.00 | 89,952.25 |
| Invoice | 4/24/2007 | 44539 | 07-00808 | CO-Keeton-Hancock | Mississippi | 74.00 | 90,026.25 |
| Invoice | 5/3/2007 | 44865 | 07-00853 | CO-Brashear-Hinds | Mississippi | 73.00 | 90,099.25 |
| Invoice | 5/3/2007 | 44879 | 07-00855 | CO-Hollis-Jackson | Mississippi | 79.00 | 90,178.25 |
| Invoice | 5/9/2007 | 45111 | 07-00903 | CO-Boler-Clayton | Georgia | 75.00 | 90,253.25 |
| Invoice | 5/9/2007 | 45133 | 07-00917 | CO-Hesler-Harrison | Mississippi | 73.00 | 90,326.25 |
| Invoice | 5/9/2007 | 45134 | 07-00931 | CO-Horn-Harrison | Mississippi | 70.00 | 90,396.25 |
| Invoice | 5/10/2007 | 45206 | 07-00951 | CO-Rhodes-Columbia | Georgia | 70.00 | 90,466.25 |
| Invoice | 5/10/2007 | 45213 | 07-00949 | CO-Linge-Cobb | Georgia | 69.00 | 90,535.25 |
| Invoice | 5/15/2007 | 45324 | 07-00930 | CO-Dannecker-Clayton | Georgia | 68.00 | 90,603.25 |
| Invoice | 5/16/2007 | 45376 | 07-00967 | CO-Horton-Holmes | Mississippi | 71.00 | 90,674.25 |
| Invoice | 5/16/2007 | 45415 | 07-00940 | CO-Bower-Cherokee | Georgia | 70.00 | 90,744.25 |
| Invoice | 5/18/2007 | 45438 | 07-00936 | CO-Veney-Jackson | Mississippi | 69.00 | 90,813.25 |
| Invoice | 5/18/2007 | 45445 | 07-00559 | update-Jackson-Harrison | Mississippi | 25.00 | 90,838.25 |
| Invoice | 5/21/2007 | 45515 | 07-00862 | CO-Eugene-Dekalb | Georgia | 68.00 | 90,906.25 |
| Invoice | 5/22/2007 | 45546 | 07-01019 | CO-Cheny-Rankin | Mississippi | 72.00 | 90,978.25 |
| Invoice | 5/22/2007 | 45547 | 07-01017 | CO-Harris-Rankin | Mississippi | 75.00 | 91,053.25 |
| Invoice | 5/22/2007 | 45550 | 07-01024 | CO-Peterson-Hinds | Mississippi | 71.00 | 91,124.25 |
| Invoice | 5/29/2007 | 45682 | 07-01061 | CO-Allen-Desoto | Mississippi | 68.00 | 91,192.25 |
| Invoice | 5/31/2007 | 45827 | 07-01068 | CO-Hime-Lauderdale | Mississippi | 76.00 | 91,268.25 |
| Invoice | 6/5/2007 | 45895 | 07-01078 | CO-Fendlason-Hinds | Mississippi | 78.00 | 91,346.25 |
| Invoice | 6/12/2007 | 46079 | 07-01142 | CO-Triche-Harrison | Mississippi | 67.00 | 91,413.25 |
| Invoice | 6/15/2007 | 46176 | 07-00344 | CO-Hopson-Lauderdale | Mississippi | 25.00 | 91,438.25 |
| Invoice | 6/19/2007 | 46282 | 07-01174 | CO-McNeely-Harrison | Mississippi | 72.00 | 91,510.25 |
| Invoice | 6/26/2007 | 46550 | 07-01221 | CO-Evans-Hinds | Mississippi | 71.00 | 91,581.25 |
| Invoice | 6/29/2007 | 46715 | 07-01240 | 30yr-Pearson-Clarke | Mississippi | 125.00 | 91,706.25 |
| Invoice | 7/10/2007 | 46925 | 07-01256 | CO-Mudd-Harrison | Mississippi | 70.00 | 91,776.25 |
| Invoice | 7/20/2007 | 47338 | 07-01328 | CO-Hinton-Hinds | Mississippi | 71.00 | 91,847.25 |
| Invoice | 7/26/2007 | 47454 | 07-01347 | CO-Henderson-Harrison | Mississippi | 68.00 | 91,915.25 |
| Invoice | 7/26/2007 | 47502 | 07-01068 | CO-Hime-Lauderdale | Mississippi | 25.00 | 91,940.25 |
| Invoice | 7/30/2007 | 47593 | 07-01350 | CO-Sund-Jackson | Mississippi | 69.00 | 92,009.25 |
| Invoice | 7/30/2007 | 47606 | 07-01364 | CO-Eppert-Harrison | Mississippi | 71.00 | 92,080.25 |
| Invoice | 8/14/2007 | 48118 | 07-00931 | update-Horn-Harrison | Mississippi | 28.00 | 92,108.25 |
| Invoice | 8/23/2007 | 48429 | 07-00344 | CO-Hopson-Lauderdale | Mississippi | 25.00 | 92,133.25 |

Hall-Frazier
Record - 000299

9:11 AM

05/28/08
Accrual Basis

## Southern Land & Title, LLC
## Customer Balance Detail
### As of April 30, 2008

| Type | Date | Num | P. O. # | Descrip | Class | Amount | Balance |
|------|------|-----|---------|---------|-------|--------|---------|
| Invoice | 8/24/2007 | 48528 | 07-00949 | update-Linge-Cobb | Georgia | 25.00 | 92,158.25 |
| Invoice | 8/29/2007 | 48562 | 07-01489 | CO-Martin-Rankin | Mississippi | 69.00 | 92,227.25 |
| Invoice | 8/29/2007 | 48627 | 07-01483 | CO-Obrien-Harrison | Mississippi | 79.00 | 92,306.25 |
| Invoice | 9/21/2007 | 49489 | 07-01621 | CO-Pearson-Lauderdale | Mississippi | 68.00 | 92,374.25 |
| Invoice | 9/27/2007 | 49736 | 07-01652 | CO-Bibbs-Hinds | Mississippi | 74.00 | 92,448.25 |
| Invoice | 10/4/2007 | 50003 | 07-01682 | CO-Johnson-Lauderdale | Mississippi | 69.00 | 92,517.25 |
| Invoice | 11/8/2007 | 51575 | 07-01483 | update-OBrien-Harrison | Mississippi | 25.00 | 92,542.25 |
| Invoice | 12/6/2007 | 52842 | 07-01621 | update-Pearscon-Lauderdale | Mississippi | 25.00 | 92,567.25 |
| Invoice | 2/18/2008 | 56359 | 08-00078 | CO-Farris-Rankin | Mississippi | 74.00 | 92,641.25 |

Total Swafford Settlement Services      54,997.25      92,641.25

**TOTAL**      **54,997.25**      **92,641.25**

Hall-Frazier
**Record - 000300**

*Swafford & Hays Services, Inc*
*"Professionalism With Integrity"*
*9041 Executive Park Dr. / Suite 400/ Knoxville, TN 37923*
*Phone: 1-888-272-2915  Fax: 1-865-539-1483*
*Toll Free Fax : 1-888-272-2916*

**File Number:** 05-2813

**Date:** 3/18/2005

**SHSS Contact:** Abstract Department

**Abstractor:** Southern Land & Title      **Phone:** 256-543-1361    **Fax:** 256-543-1377

**Please do Current Owner Search on the following: MUST INCLUDE A 24 MONTH CHAIN OF TITLE**
**(If borrower has not been vested on title for 24 months, MUST include a copy of previous deed).**

**Borrower:** Cheryl R. Hall         **S.S. #:** ████████

**Co-Borrower:**               **S.S. #:**

**Address:** 105 TV Road

**City:** Dothan    **State:** AL   **Zip:** 36301

**County:** Houston

**Comments:**

*The Following is required on each order:*

- Signature at the bottom confirming receipt of order within 2 hours along with fee that will be charged.
- Search to be **COMPLETED** within 48 hours or call placed to SHSS contact listed above with status.
- Weekly statements **MUST** be sent via U.S. Mail, ATTN: Accounting

*DOCUMENTS NEEDED WITH SEARCH:*

- Need *COMPLETE* Copies of Current Vesting Deed ( see above for 24 month requirement), ALL Open Mortgages, ALL Judgments, ALL Liens, Easements, Rights of Ways, Agreements, Assignments, etc. *[MUST INCLUDE FIRST TWO PAGES AND LAST TWO PAGES OF MORTGAGES, AND ALL COPIES OF RELEVANT OTHER DOCUMENTS].*
- Copies of Probates, Wills, Bankruptcies and Final Judgments of Divorce, if found.
- Copies of Trust if found , especially in Vesting
- Tax Bill and *ALL* amounts of Taxes and Dates they are Due. ALL delinquent taxwes must also be included.
- Effective date *MUST* be on the abstractors write-up report.
- (NO EXCEPTIONS)

**THE SEARCH MUST BE TO US IN 48 HOURS OR A CALL PLACED.  ALL TAX INFORMATION AND COPIES OF LIENS MUST BE PROVIDED. IF NOT WE WILL DOC THE INVOICE BY 50% (Per Contract).**

Received by: _____    Date / Time: 3-21-05

Fee for Search: $65
                $7.
                $72

11 pages
Thanks

# Southern Land & Title, L.L.C.

Through Date: 3-18-05

Name Cheryl R. Hall  Address: 105 TV Rd

City Dothan County Houston State Al Zip 36301

## Vesting Deed
### (Always Need Out-of-Family Warranty Deed)

Grantee (Current Owner) Cheryl Hall

Grantor Kevin Lorenzo Dixon, II, an unmarried man

Dated Date 3-2-05 Recorded Date 3-11-05 Consideration (Amt) 10⁰⁰

Book 622 Page 443 Instrument No.

## PUD/Condominium/Waterfront Information Circle Below
PUD  Y N       Condo Y N       Waterfront  Y N

Name

Recorded Date _____ Book _____ Page _____

## Tax Information

Parcel I.D. No. 10-09-31-4-003-001.007 Tax Year 04 Amount$ 496.62 *due plus late fees*

Date Paid _____ Are There Delinquent Taxes? No ____ Yes ✓ Amount$

Appraised Value  Land 7,100 Improvements 82,700 Total 89,800⁰⁰

## Mortgage Number 1
### (If no open mortgage-report satisfied mortgage to institutional lender)

Exact Name(s) of Borrower(s) (None) I did not find a mortgage.

Lender _____ MERS as Nominee? Yes ____ No ____

Book _____ Page _____ Dated Date ____ Recorded Date _____

Amount $ _____ Maturity Date _____ Open Ended? Yes ____ No ____

Last Assignment To _____ MERS As Nominee? Yes ____ No ____

Dated Date _____ Recorded Date _____ Book _____ Page _____

## Mortgage Number 2

Exact Name(s) of Borrower(s)_____

Lender_____    MERS as Nominee?Yes_____ No_____

Book_____ Page_____ Dated Date_____    Recorded Date_____

Amount $_____ Maturity Date_____    Open Ended? Yes_____ No_____

Last Assignment To_____    MERS as Nominee?Yes_____ No_____

Dated Date_____ Recorded Date_____    Book_____ Page_____

## Mortgage Number 3

Exact Name(s) of Borrower(s)_____

Lender_____    MERS as Nominee?Yes_____ No_____

Book_____ Page_____ Dated Date_____    Recorded Date_____

Amount $_____ Maturity Date_____    Open Ended? Yes_____ No_____

Last Assignment To_____    MERS As Nominee?Yes_____ No_____

Dated Date_____ Recorded Date_____    Book_____ Page_____

✱ 4 gud

### Judgment/T's Lien/UCC

① Type _Judgment_ Debtor _Cheryl R Hall_ Creditor _Army Aviation Center FCU_
Date _6-15-98_ Recorded Date _7-2-98_ Book _89_ Page _185_ Amount $ _3,558.26_
Case or File No. _DV 98 000128_

② Type _Judgment_ Debtor _Cheryl Ann Hall_ Creditor _Michael T. Mesirow_ DBA _Wholesale Auto_
Date _12-16-03_ Recorded Date _1-7-04_ Book _103_ Page _278_ Amount $ _3,000.00_
Case or File No. _SM 2003 00 1994_

③ Judgment Debtor: Kevin Dixon DBA Eisah's    Creditor: Inland Southern Management
dated 10-7-04    Filed 11-12-04    Amt 154,172.47
— See copy —
Book 106/420

④ Department of Revenue    US - Kevin Dixon
dated 12-13-04
Filed 12-14-04    Amt $431.65    Book 106/581

## Chain of Title Sheet

Volume: 598   Page: 34   Type of Deed: Warranty Deed

Grantee: Kevin Lorenzo Dixon, II

Grantor: Louis E. Sowers + wife, Fay Sowers

Date: 4-2-03   Date Recorded: 4-8-03

Volume: _____ Page: _____ Type of Deed: _____

Grantee: _____

Grantor: _____

Date: _____ Date Recorded: _____

Volume: _____ Page: _____ Type of Deed: _____

Grantee: _____

Grantor: _____

Date: _____ Date Recorded: _____

Volume: _____ Page: _____ Type of Deed: _____

Grantee: _____

Grantor: _____

Date: _____ Date Recorded: _____

*Use Additional Chain Sheet(s) As Needed*

### Easements/Restrictions

## WARRANTY DEED

This Deed prepared without benefit of Title Opinion or Survey

DEED     622    443
Recorded in Above Book and Page
03/11/2005 01:05:18 PM
Luke Cooley
Judge of Probate
Houston County, Alabama

STATE OF ALABAMA     }
HOUSTON COUNTY       }                    KNOW ALL MEN BY THESE PRESENTS

That in consideration of ***Ten Dollars*** and other good and valuable consideration to the undersigned GRANTOR, in hand paid by the GRANTEE herein, the receipt whereof is acknowledged, I,

**KEVIN LORENZO DIXON, II, a unmarried man**
whose address is 105 Melissa Lane, Headland, AL 36345

(herein referred to as GRANTOR), grants, bargains, sells and conveys unto:

**Cheryl Hall,**
whose address is 105 TV Road, Dothan, AL 36301

(herein referred to as GRANTEE), his heirs and assigns, all of my interest in the following described real estate situated in Houston County, Alabama, to-wit:

Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat Book 7, Page 23, in the Office of the Judge of Probate, Houston County, Alabama.

Subject to:
1.   Ad valorem taxes which may be due now or subsequent hereto;
2.   Any applicable zoning ordinances;
3.   Easements, restrictions, reservations, right of way and set back lines of record;
4.   Mineral and mining rights not owned by Grantor(s).

THE ABOVE REFERENCED PROPERTY IS NOT THE HOMESTEAD OF THE GRANTOR(S).
TO HAVE AND TO HOLD to the said GRANTEE, to his heirs and assigns forever.

And I do, for myself and for my heirs, executors and administrators, covenant with said GRANTEE, his heirs and assigns, that I am lawfully seized in fee simple of said premises; that it is free from all encumbrances, unless otherwise stated above; that I have a good right to sell and convey the same as aforesaid; that I will, and my heirs, executors and administrators shall warrant and defend the same to the said grantee, his heirs and assigns forever, against the lawful claims of all persons.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 2nd day of March, 2005.

KEVIN LORENZO DIXON, II

STATE OF ALABAMA
HOUSTON COUNTY

I, the undersigned authority, a Notary Public in and for said County and State, hereby certify that KEVIN LORENZO DIXON, II, whose name is signed to the foregoing document and who is known to me, acknowledged before me this date, that being informed of the conveyance, he has executed the same voluntarily on the date the same bears date.

Given under my hand and seal this the 2nd day of March, 2005.

Notary Public
My Commission Expires: 7-15-2008

This Instrument Prepared By:                    Send Tax Notice To:

J. Christopher Capps                           **Cheryl Hall**
Capps & Gartlan, P. C.                         105 TV Road
170 S. Oates St., Suite 2, Dothan, AL 36301    Dothan, AL 36301
(334)678-7994

Deed Tax          90.00
Recording Fee     11.00
TOTAL            101.00

**Hall-Frazier**
**Record - 000305**

This instrument was prepared by:

HALL, SMITH & JONES
Attorneys at Law
P. O. Box 1748
Dothan, Alabama 36302



DEED    598    34
Recorded In Above Book and Page
04/03/2003 03:14:40 PM
Luke Cooley
Judge of Probate
Houston County, Alabama

## WARRANTY DEED

STATE OF ALABAMA,
HOUSTON COUNTY.

    KNOW ALL MEN BY THESE PRESENTS;   That in consideration of Ten Dollars and other valuable consideration to the undersigned Grantor, in hand paid by the Grantee herein, the receipt whereof is acknowledged, LOUIS E. SOWERS and wife, FAY SOWERS, (herein referred to as Grantor, whether one or more), grant, bargain, sell and convey unto KEVIN LORENZO DIXON, II, whose mailing address is: 105 TV ROAD, DOTHAN, AL 36301, (herein referred to as Grantee, whether one or more), the following described real estate situated in Houston County, Alabama, to-wit:

    Lot 2, Block "C", of the Third Addition to Television Heights Subdivision in the City of Dothan, Alabama, as found recorded in Plat Book 7, Page 23, in the Office of the Judge of Probate of Houston County, Alabama. Together with all improvements thereon.

    THIS CONVEYANCE IS SUBJECT TO THE FOLLOWING:

    1.  AD VALOREM TAXES WHICH MAY BE DUE NOW OR SUBSEQUENT HERETO;
    2.  ANY APPLICABLE ZONING ORDINANCES;
    3.  EASEMENTS, RESTRICTIONS, RESERVATIONS, RIGHT OF WAY AND SET BACK LINES OF RECORD;
    4.  MINERAL AND MINING RIGHTS NOT OWNED BY GRANTOR.

    TO HAVE AND TO HOLD to the said Grantee, his, her or their heirs and assigns forever.

    And I (we) do, for myself (ourselves) and for my (our) heirs, executors and administrators, covenant with said grantee, his, her or their heirs and assigns, that I am (we are) lawfully seized in fee simple of said premises; that they are free from all encumbrances, unless otherwise stated above; that I (we) have a good right to sell and convey the same as aforesaid; that I (we) will, and my (our) heirs, executors and administrators shall warrant and defend the same to the said grantee, his, her or their heirs and assigns forever, against the lawful claims of all persons.

**Hall-Frazier**
**Record - 000306**

DEED  598  35

    IN WITNESS WHEREOF, I (we) have hereunto set my (our) hand(s) and seal(s) this 2nd day of April, 2003.

*Louis E. Sowers*
LOUIS E. SOWERS

*Fay Sowers*
FAY SOWERS

STATE OF ALABAMA,
HOUSTON COUNTY.

    I, the undersigned authority, a Notary Public in and for said County, in said State, hereby certify that **LOUIS E. SOWERS and FAY SOWERS**, whose name(s) is/are signed to the foregoing conveyance and who is/are known to me, acknowledged before me on this day, that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily on the day the same bears date.

    Given under my hand and official seal this 2nd day of April, 2003.

NOTARY PUBLIC
My Commission Expires: 7/24/05

Deed Tax        80.00
Recording Fee    14.00
TOTAL          94.00

**Hall-Frazier**
**Record - 000307**

CVL0312                    ALABAMA JUDICIAL DATA CENTER
                                    HOUSTON      COUNTY
                              CERTIFICATE OF JUDGEMENT
                                                        DV 98 000128.00
                                              M. JOHN STEENSLAND

                    IN THE DISTRICT COURT OF  HOUSTON    COUNTY

ARMY AVIATION CENTER F C U VS CHERYL R HALL ▮▮▮▮▮▮▮


          DEFENDANT                          PARTY'S ATTORNEY:

          HALL CHERYL R
          295 MALIBU ST

          KINSEY        , AL  36303-0000


     I, JUDY BYRD        , CLERK OF THE ABOVE NAMED COURT HEREBY

     CERTIFY THAT ON 06/15/98 PLAINTIFF, ARMY AVIATION CENTER F C U   RECOVERED

     OF DEFENDANT IN SAID COURT A JUDGEMENT WITHOUT WAIVER OF EXEMPTIONS FOR THE

     SUM OF     $3,558.24 DOLLARS PLUS      $88.00 DOLLARS COURT COSTS, AND

     THAT THE  PLAINTIFF'S ATTORNEY(S) OF RECORD WAS:  MATH, LEONARD N


     GIVEN UNDER MY HAND THIS DATE 06/15/98

                                        _Judy Byrd_
                                     CLERK JUDY BYRD
                                        114 N OATES PO DRAWR 6406
                                        DOTHAN, AL 35302
                                        (334) 677-4867


OPERATOR: JOS
PREPARED: 06/15/98

                                        JUDGE    89   185
                                     Recorded In Above Book and Page
                                        07/08/1998 10:27AM
                                          Luke Cooley
                                        Judge of Probate
        PLAINTIFF'S ATTORNEY:          Houston County, Alabama


                                     SDJ Fee        5.00
                                     Recording Fee  3.50
                                     TOTAL          8.50

        
          MATH, LEONARD N
          P O BOX 230759
          1800-311-4061
          MONTGOMERY  AL  36123

**Hall-Frazier**
**Record - 000308**

AVSO312                     ALABAMA JUDICIAL DATA CENTER
                                   HOUSTON    COUNTY
                            CERTIFICATE OF JUDGEMENT
                                          SM 2003 001994.00
                                          M. JOHN STEENSLAND

------------------------------------------------------------------
|              IN THE DISTRICT COURT OF HOUSTON      COUNTY      |
| MICHAEL T MEGIVERN DBA WHOLESALE AUTO VS CHERYL ANN HALL AKA ETAL |
|                                                                |
|    DEFENDANT                          PARTY'S ATTORNEY:        |
|    HALL CHERYL ANN AKA                                         |
|    CHERYL A HALL DUNN ETAL                                     |
|    386 E SAUNDERS RD #B-104                                    |
|    DOTHAN        ,AL  36301-0000                               |
|                                                                |
|  I, JUDY BYRD            , CLERK OF THE ABOVE NAMED COURT HEREBY |
|  CERTIFY THAT ON 12/15/2003 PLAINTIFF, MEGIVERN MICHAEL T    RECOVERED |
|  OF  DEFENDANT  IN SAID COURT A  JUDGEMENT  FOR  THE          |
|  SUM OF    $3,000.00 DOLLARS PLUS       $113.00 DOLLARS COURT COSTS, AND |
|  THAT THE PLAINTIFF'S ATTORNEY(S) OF RECORD WAS: *** PRO SE *** |
|                                                                |
|                                                                |
|    GIVEN UNDER MY HAND THIS DATE 12/16/2003                    |
|                                                                |
|                                    Judy Byrd                   |
|                            CLERK:JUDY BYRD                      |
|                            PO DR 6406, 114 N.OATES ST          |
|                            DOTHAN  AL  36302                   |
|                            (334)677-4867                       |
------------------------------------------------------------------
OPERATOR: JOS
PREPARED: 12/16/2003


        PLAINTIFF'S ATTORNEY:              JUDGE   io3 278
                                     Recorded In Above Book and Page
                                         01/07/2004 02:55:30 PM
                                             Luke Cooley
                                           Judge of Probate
                                        Houston County, Alabama

                                     Recording Fee    11.00
                                     Total            11.00

        MEGIVERN MICHAEL T
        DBA WHOLESALE AUTO
        3894 CO RD 203
        DOTHAN     ,AL  36301-0000

AVS0312                  ALABAMA JUDICIAL DATA CENTER
                              HOUSTON    COUNTY
                         CERTIFICATE OF JUDGEMENT
                                                  CV 2004 000216.00
                                           JERRY M. WHITE

-----------------------------------------------------------------

            IN THE CIRCUIT COURT OF HOUSTON      COUNTY

INLAND SOUTHERN MANAGEMENT CORP VS KEVIN DIXON DBA EISAH'S


    DEFENDANT                         PARTY'S ATTORNEY:

    DIXON KEVIN AN INDIVIDUAL DB
    105 MELISSA LANE

    HEADLAND        ,AL 36345-0000


    I, JUDY BYRD        , CLERK OF THE ABOVE NAMED COURT HEREBY

CERTIFY THAT ON 10/05/2004 PLAINTIFF, INLAND SOUTHERN MANAGEMENT RECOVERED

OF DEFENDANT IN SAID COURT A JUDGEMENT WITHOUT WAIVER OF EXEMPTIONS FOR THE

SUM OF   $154,172.47 DOLLARS PLUS    $199.00 DOLLARS COURT COSTS, AND

THAT THE PLAINTIFF'S ATTORNEY(S) OF RECORD WAS: LEE HEATHER ANN




    GIVEN UNDER MY HAND THIS DATE 10/07/2004

                                   *Judy Byrd*
                              CLERK JUDY BYRD
                                 PO DRAWER 6406
                                 DOTHAN AL 36302

-----------------------------------------------------------------

OPERATOR: LIL
PREPARED: 10/07/2004

                                      JUDGE   106   APC
                                 Recorded In Above Book and Page
                                 11/12/2004 02:14:44 PM
                                      Luke Cooley
                                   Judge of Probate
                                 Houston County, Alabama

    PLAINTIFF'S ATTORNEY:


                                 Recording Fee        11.00
                                 TOTAL                 11.00



    LEE HEATHER ANN
    3100 SOUTHTRUST TOWER
    420 NORTH 20TH STREET
    BIRMINGHAM AL 35203

**Hall-Frazier**
**Record - 000310**



G. THOMAS SURTEES
Commissioner

## STATE OF ALABAMA
## DEPARTMENT OF REVENUE
Montgomery, Alabama 36132
(www.ador.state.al.us)

CYNTHIA UNDERWOOD
Assistant Commissioner

LEWIS A. EASTERLY
Secretary

### NOTICE OF LIEN FOR TAXES

STATE OF ALABAMA
    -VS-

DIXON KEVIN
EISAHS
105 MELISSA LN
HEADLAND, AL  36345-2210

JUDGE    106    587
Recorded In Above Book and Page
12/14/2004 09:24:32 AM
Luke Cooley
Judge of Probate
Houston County, Alabama

REFERENCE #: 0000094521
KIND OF TAX: SALES TAX
ACCOUNT NUMBER: 3500 63376
COUNTY: HOUSTON
AMOUNT OF LIEN: 431.65
TAX PERIOD: OCTOBER 2003 - JANUARY 2004

As provided by Sections 40-1-2 and 40-29-20, et seq., Code of Alabama 1975,
the Alabama Department of Revenue certifies that the above named Taxpayer is
indebted to the Department of Revenue in the above amount.  The State claims a
lien upon all property and rights to property belonging to said Taxpayer.

Please record this notice in the real property records and return it to the
address shown below with endorsement and recording data.
ENTERED: 12-13-2004  (TDC)

_James H. Browder_
ASSESSMENT OFFICER

ALABAMA DEPARTMENT OF REVENUE
ASSESSMENT SECTION SALES AND USE TAX
P.O. BOX 327720
MONTGOMERY, ALABAMA 36132-7720
TELEPHONE (334)242-1340

Recording Fee    0.00
TOTAL            0.00

RVNT14 (55-23-2004)                "AN AFFIRMATIVE ACTION/EQUAL OPPORTUNITY EMPLOYER"

**Hall-Frazier**
**Record - 000311**

# SOUTHERN LAND & TITLE, L.L.C.

406 South 2nd Street Gadsden, AL 35901

P. O. Box 1665 Gadsden, AL 35902

Norman R. Dasinger, Ed.D.
Jason E. Knowles, J.D.

Telephone 256-543-1361
Fax 256-543-1377
solandtitle@microxl.com

## FACSIMILE COVER SHEET

TO: _Marette_

FAX NO: _888-272-2916_

DATE: _32305_

RE: _Cheryl R. Hall_ _# 05-2813_
_Houston County, AL_

TOTAL PAGES: _3_

COMMENTS:

_Chain of Title ÷ deed to make_

_24 months_

_Thanks!_
_Jana_



Warranty Deed  011-221249-285

BOOK **0311** PAGE **324**
State of Alabama
County of JEFFERSON

KNOW ALL MEN BY THESE PRESENTS, that Samuel R. Pierce, Jr., Secretary of Housing and Urban Development, of Washington, D. C., acting by and through the Office of Assistant Secretary for Housing - Federal Housing Commissioner, for and in consideration of TEN DOLLARS ($10.00), the receipt whereof is hereby acknowledged, does grant, bargain, sell, and convey unto Louis E. Sowers and Fay Sowers                as joint tenants with express right of survivorship and to the survivor's heirs and assigns the following described real property situated in the County of Houston        State of Alabama:

One House and Lot located in the City of Dothan, Houston County, Alabama, being more particularly described as follows: Lot 2, Block "C" of the Third Addition to Television Heights Subdivision, a subdivision located in the City of Dothan, Houston County, Alabama, per map or plat of same recorded in the Office of the Judge of Probate of Houston County, Alabama, in Plat Book 7, Page 23.

Subject to Statutory period of redemption which expires one year from January 23, 1985.

SUBJECT however, to all covenants, restrictions, reservations, easements, conditions, liens and other rights of whatever nature appearing of record, and further subject to any state of facts an accurate survey would show.

IN WITNESS WHEREOF the undersigned on this 19th  day of  JULY 1985 his hand as the duly authorized representative of the Secretary of Housing and Urban Development.

BEING the same property acquired by the Secretary of Housing and Urban Development pursuant to the provisions of the National Housing Act, as amended (47 USC 1441, et seq.)

TO HAVE AND TO HOLD, to the said Louis E. Sowers and Fay Sowers, as joint tenants with express right of survivorship and to the survivor's heirs and assigns forever.

Secretary of Housing and Urban Development
By: SAMUEL R. PIERCE, Jr.
ASSISTANT SECRETARY FOR HOUSING
FEDERAL HOUSING COMMISSION
By: R. E. Gunter
Birmingham Office
Dept. of Housing and Urban Development
Birmingham, Alabama

(STATE OF ALABAMA)
(COUNTY OF JEFFERSON)

I, the undersigned, a Notary Public in and for said County in said State, do hereby certify that R. E. Gunter               who is personally well known to me to be the duly authorized representative of the Secretary of Housing and Urban Development, and the person who executed the foregoing instrument bearing date  July 19, 1985         , by virtue of the authority vested in him by the Code of Federal Regulations, Title 24, Chapter II, and acknowledged before me on this day that, being informed of the contents of this conveyance, he executed the same voluntarily for and on behalf of Samuel R. Pierce, Jr., Secretary of Housing and Urban Development, on the day and year above stated.

Given under my hand and official seal this     19th     day of  JULY 1985

Notary Public
My commission expires  12-20-85

This instrument was prepared by R. E. Gunter
Department of Housing and Urban Development
19 South 20th Street
Birmingham, AL

56797

## Chain of Title Sheet

Volume: 598   Page: 34   Type of Deed: Warranty Deed

Grantee: Kevin Lorenzo Dixon, II

Grantor: Louis E. Sowers + wife, Fay Sowers

Date: 4-2-03   Date Recorded: 4-3-03

*****************************************

Volume: 311   Page: 324   Type of Deed: Survivorship

Grantee: Louis E. Sowers + Fay Sowers

Grantor: Secretary of Housing + Urban Development

Date: 7-19-85   Date Recorded: 7-26-85

*****************************************

Volume: _____   Page: _____   Type of Deed: _____

Grantee: _____

Grantor: _____

Date: _____   Date Recorded: _____

*****************************************

Volume: _____   Page: _____   Type of Deed: _____

Grantee: _____

Grantor: _____

Date: _____   Date Recorded: _____

*****************************************

*Use Additional Chain Sheet(s) As Needed*

### Easements/Restrictions

**Hall-Frazier**
**Record - 000314**

(Printed on Jun 12, 2008 @ 08:53)

U.S. Department of Housing and Urban Development

OMB No. 2502-0491

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| | |
|---|---|
| File Number: 36-02011712 | Loan Number: 0805304391 | Mortgage Ins. Case #: |

NAME AND ADDRESS OF BORROWER: JONATHAN EDWARDS, SHARRON W. EDWARDS , 11460 HENDERSON CAMP RD GRAND BAY AL, 36541-6712

NAME AND ADDRESS OF LENDER: HOME FUNDS DIRECT 3870 ROSIN CT STE 150 SACRAMENTO, CA, 95834-1647

PROPERTY LOCATION: 11460 HENDERSON CAMP RD GRAND BAY AL, 36541-6712

SETTLEMENT AGENT:    LENDERS FIRST CHOICE
PLACE OF SETTLEMENT:   2321 W. MARCH LANE SUITE 210 STOCKTON CA, 95207

| SETTLEMENT DATE: 06/12/2006 | DISBURSEMENT DATE: 06/16/2006 |
|---|---|

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. Items Payable in Connection With Loan | | 1501. MORTGAGE PAYOFF LOAN # 0030840557 | |
| 801. Loan Origination Fee | | ANC MORTGAGE | $44,426.85 |
| 802. Loan Discount | | 1502. ACCOUNT PAYMENT | |
| 803. Appraisal Fee POC $350.00 | | J & J FURNITURE | $715.00 |
| 804. Credit Report | | 1503. | |
| 805. Origination Fee Payable to HOME FUNDS DIRECT | $3,022.50 | 1504. | |
| 806. Processing Fee to HOME FUNDS DIRECT | | | |
| 807. Underwriting Fee to HOME FUNDS DIRECT | | | |
| 808. Flood Cert/Life of Loan to Inzura Settlement Services | $7.80 | 1505. | |
| 809. Tax Service Fee to Inzura Settlement Services | $50.00 | | |
| 810. Doc Prep Fee to HOME FUNDS DIRECT | | 1506. | |
| 811. Appraisal Review Fee to HOME FUNDS DIRECT | | | |
| 900. Items Required By Lender To Be Paid in Advance | | 1507. | |
| 901. Interest from 06/16/2006 TO 07/01/2006 @$16.82/DAY | $253.80 | | |
| 902. Mortgage Insurance Premium for | | 1508. | |
| 903. Hazard Insurance Premium for | | | |
| 904. | | 1509. | |
| 905. | | | |
| 1000. Reserves Deposited With Lender | | 1510. | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | 1511. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1512. | |
| 1005. Annual assessments | | | |
| 1006. | | 1513. | |
| 1007. | | | |
| 1008. Aggregate Adjustment | $0.00 | 1514. | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee LENDERS FIRST CHOICE | $450.00 | 1515. | |
| 1102. Abstract or title search LENDERS FIRST CHOICE | $175.00 | | |
| 1103. Title examination | | 1516. | |
| 1104. Title insurance binder | | | |
| 1105. Document preparation | $50.00 | 1517. | |
| 1106. Signing Fee LENDERS FIRST CHOICE | | | |
| 1107. Attorney's Fees | | 1518. | |
| (Includes above item numbers:    ) | | | |
| 1108. Title Insurance LENDERS FIRST CHOICE | $275.00 | 1519. | |
| (Includes above item numbers:    ) | | | |
| 1109. Lender's coverage | | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1110. Owner's coverage | | | $45,141.85 |
| 1111. Wire Fee LENDERS FIRST CHOICE | $25.00 | | |
| 1112. Delivery Fee LENDERS FIRST CHOICE | $30.00 | N. Net Settlement | |
| 1113. ALTA 8.1,9,116 | | | |
| 1200. Government Recording and Transfer Charges | | 1600. Loan Amount | $65,000.00 |
| 1201. Recording fees: | $88.00 | | |
| 1202. City/county tax/stamps: | $97.50 | 1601. Plus Check/Cash from Borrower | $0.00 |
| 1203. State tax/stamps: | | | |
| 1204. | | 1602. Minus total settlement charges | $4,524.60 |
| 1205. | | (Line 1400) | |
| 1300. Additional Settlement Charges | | 1603. Minus total Disbursements to | $45,141.85 |
| 1301. Survey | | Others (line 1520) | |
| 1302. Pest Inspection | | 1604. Equals disbursements to borrower | $15,333.55 |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1400. Total settlement charges (enter on line 1602) | $4,524.60 | | |

The undersigned hereby acknowledge receipt of a completed copy of this statement. To the best of my knowledge this HUD-1A and RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

X_____    X_____    X_____
LENDERS FIRST CHOICE            JONATHAN EDWARDS               SHARRON W. EDWARDS

EDWARDS00020

**Hall-Frazier**
**Record - 000315**

2006048225  Book-5995  Page-1678
Total Number of Pages: 16

Return To:

~~Home Funds Direct~~
~~Attn: Post Closing Dept.~~
~~16969 West Bernardo Dr. Bldg 1~~
~~San Diego, CA 92127-1870~~

RECORDING DEPT
Lenders First Choice
3850 Royal Avenue
Simi Valley, CA 93063
36-7355071

41.0
97.53
138.53
10.0
148.53
2.0
150.53

State of Alabama-Mobile County
I certify this instrument was filed on:
June 28, 2006 @   3:09:55 PM
MORTGAGE TAX        $97.50
S.R. FEE             $2.00
SURCHARGE           $10.00
RECORDING FEES      $41.00
TOTAL AMOUNT       $150.50

2006048225
Don Davis, Judge of Probate

2011712

——————[Space Above This Line For Recording Data]——————

# MORTGAGE

MIN 100176106053043916

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **June 12, 2006**,
together with all Riders to this document.
**(B) "Borrower"** is **JONATHAN EDWARDS AND SHARRON W. EDWARDS, HIS WIFE, AS JOINT TENANTS WITH THE RIGHT OF SURVIVORSHIP.**

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

0605304391

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3001 1/01

-6A(AL) (0005).03
Page 1 of 15        Initials:
VMP MORTGAGE FORMS - (800)521-7291

EDWARDS00001

**(D)** "**Lender**" is **Home Funds Direct**

Lender is a **Corporation**
organized and existing under the laws of **the State of California**
Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
**(E)** "**Note**" means the promissory note signed by Borrower and dated **June 12, 2006**
The Note states that Borrower owes Lender **sixty-five thousand and 00/100**

Dollars

(U.S. **$ 65,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 1, 2026**
**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L)** "**Escrow Items**" means those items that are described in Section 3.
**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

0605304391

-6A(AL) (0005).03                    Page 2 of 15                    Initials:                     Form 3001 1/01

EDWARDS00002

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
          **County**               of               **MOBILE**                    :
        [Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]
**See Legal Description Addendum Page Attached**

Parcel ID Number: **R02-45-01-12-0-000-041.**              which currently has the address of
**11460 HENDERSON CAMP RD**                                            [Street]
**GRAND BAY**                        [City] , **Alabama 36541**          [Zip Code]
("Property Address"):
    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6A(AL) (0005).03                          Page 3 of 15                                    0605304391
                                                                                           Form 3001 1/01

EDWARDS00003

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

EDWARDS00004

Hall-Frazier
Record - 000319

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(AL) (0005).03                    Page 5 of 16                    Initials: _____    0605304391
Form 3001 1/01

EDWARDS00005

Hall-Frazier
Record - 000320

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0605304391

EDWARDS00006

Hall-Frazier
Record - 000321

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



0605304391

EDWARDS00007

Hall-Frazier
Record - 000322

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss r serve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(AL) (0005).03                    Page 8 of 15                    Initials: _____                    0605304391

                                                                                             Form 3001 1/01

EDWARDS00008

Hall-Frazier
Record - 000323

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(AL) (0005).03

Page 9 of 15

Initials: _____

0605304391

Form 3001 1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0605304391

Initials: _J.E._
_BWG_

-6A(AL) (0005).03    Page 10 of 15    Form 3001 1/01

EDWARDS00010

**Hall-Frazier**
**Record - 000325**

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials

0605304391

Form 3001 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6A(AL) (0005)03                Page 12 of 15          Initials                    0605304391

Form 3001 1/01

**Hall-Frazier**
**Record - 000327**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in MOBILE County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**25. Attorneys' Fees.** Wherever this Security Instrument authorizes the Lender to collect reasonable attorneys' fees following default, such reasonable attorneys' fees shall not exceed fifteen percent (15%) of the unpaid debt after default and referral of the Security Instrument to an attorney who is not a salaried employee of Lender.

-6A(AL) (0005).03                 Page 13 of 15          Initials: J.C. SWE          0605304391
Form 3001 1/01

EDWARDS00013

Hall-Frazier
**Record - 000328**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          *Jonathan Edwards* _____ (Seal)
                                          JONATHAN EDWARDS          -Borrower

_____          *Sharron W. Edwards* _____ (Seal)
                                          SHARRON W EDWARDS         -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)            _____ (Seal)
                        -Borrower                                -Borrower

0605304391

-6A(AL) (0005).03                Page 14 of 15            Form 3001 1/01

EDWARDS00014

STATE OF ALABAMA,                          Mobile    County ss:

On this    12    day of  June 2006                          , I,
Neely Courtney
a Notary Public in and for said county and in said state, hereby certify that **JONATHAN EDWARDS, SHARRON W EDWARDS**

whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this    12    day of  June, 2006 .

My Commission Expires:

_____
Notary Public

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Dec 8, 2008
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Prepared By:
**Home Funds Direct**
**15090 Avenue of Science**
**San Diego, CA 92128**



-6A(AL) (0005) 03            Page 15 of 15            Initials            0605304391
                                                                          Form 3001 1/01

EDWARDS00015

Hall-Frazier
Record - 000330

EXHIBIT "A"

THE FOLLOWING DESCRIBED LAND LYING IN THE COUNTY OF MOBILE, STATE OF ALABAMA, TO-WIT:

TO FIND THE POINT OF BEGINNING: COMMENCE AT THE CENTER OF SECTION 12, TOWNSHIP 7 SOUTH, RANGE 4 WEST;

THENCE RUN EAST 2600 FEET TO A POINT; BEING LOCATED IN THE CENTER OF HENDERSON CAMP ROAD;

THENCE RUN NORTH 555 FEET TO A POINT, FOR THE POINT OF BEGINNING;

THENCE CONTINUE NORTH 110 FEET TO A POINT;

THENCE RUN WEST 244 FEET TO A POINT;

THENCE RUN SOUTH 110 FEET TO A POINT; THENCE RUN EAST 244 FEET TO THE POINT OF BEGINNING. PROPERTY LINES ON THE WEST SIDE OF HENDERSON CAMP ROAD, AND IS LOCATED IN MOBILE COUNTY, ALABAMA.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY ASSESSOR AS R024501120000041; SOURCE OF TITLE IS BOOK 1650, PAGE 0221 (RECORDED 11/24/76)

EDWARDS00016

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

* * * * * * * * * * * * * *

CHERYL HALL FRAZIER,
individually and on behalf of a
class of similarly situated
persons,

       CIVIL ACTION NO.:

     Plaintiff,

       1:08-CV-11-MHT

VS.

       JURY TRIAL DEMANDED

ACCREDITED HOME LENDERS, INC.,
d/b/a HOME FUNDS DIRECT,

       CLASS ACTION

     Defendant.

* * * * * * * * * * * * * *

     The deposition of CHERYL HALL FRAZIER,

     taken at the law offices of Earl P.

     Underwood, Jr., 21 South Section Street,

     Fairhope, Alabama, on June 9, 2008,

     commencing at approximately 1:05 p.m.

APPEARANCES

FOR THE PLAINTIFF:
JAMES D. PATTERSON, ESQUIRE
EARL P. UNDERWOOD, JR. LAW FIRM
ATTORNEYS AT LAW
21 SOUTH SECTION STREET
FAIRHOPE, ALABAMA 36532
251-990-5558

FOR THE DEFENDANT:
ROBERT E. POUNDSTONE, IV, ESQUIRE
BRADLEY, ARANT, ROSE & WHITE, LLP
ATTORNEYS AT LAW
ALABAMA CENTER FOR COMMERCE
401 ADAMS AVENUE, SUITE 780
MONTGOMERY, ALABAMA 36104
334-956-7700

COURT REPORTER:
KAREN T. McDONALD, CCR

Page 3

STIPULATION

It is stipulated and agreed by and between the parties hereto, through their respective counsel, that the deposition of CHERYL HALL FRAZIER may be taken before Karen T. McDonald, Notary Public for the State at Large, at the law offices of Earl P. Underwood, Jr., 21 South Section Street, Fairhope, Alabama, on June 9, 2008.

It is further stipulated and agreed that this deposition is taken pursuant to the Federal Rules of Civil Procedure. The provisions of Rule 32(d)(3) dealing with waiver of errors and irregularities as to the taking of the deposition apply fully to this deposition.

Notice of the deposition and any errors or irregularities therein [Rule 32(d)(1)] and any objections to the qualifications of the officer before whom this deposition is taken [Rule 32(d)(2)] are waived.

The submission of the deposition to the witness for reading to or by her and the signing of the deposition by her [Rule 30(e)] is waived.

Page 5

INDEX
EXAMINATION
By Mr. Poundstone - page 6


INDEX OF EXHIBITS
Defendant's Exhibit Number 1 - page 36
    Lenders Instructions

Defendant's Exhibit Number 2 - page 37
    Addendum to Lenders Instructions
Defendant's Exhibit Number 3 - page 38
    NOTE, dated March 25, 2005

Defendant's Exhibit Number 4 - page 39
    MORTGAGE
Defendant's Exhibit Number 5 - page 40
    SETTLEMENT STATEMENT

Defendant's Exhibit Number 6 - page 47
    FINAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
Defendant's Exhibit Number 7 - page 49
    NOTICE OF RIGHT TO CANCEL

Defendant's Exhibit Number 8 - page 50
    HIGH COST LOAN SUMMARY
Defendant's Exhibit Number 9 - page 52
    DISBURSEMENT SHEET

Filing of the original of the transcript of this deposition [Rule 30(f)(1)] is waived.

Any other technicality or defect in the taking of this deposition not otherwise covered by the terms of this stipulation is waived.


* * * * * * * *


I, Karen T. McDonald, Commissioner and Court Reporter, certify that on this date, as provided by the Federal Rules of Civil Procedure and the foregoing stipulation of counsel, there came before me at the law offices of Earl P. Underwood, Jr., 21 South Section Street, Fairhope, Alabama, on June 9, 2008, commencing at approximately 1:05 p.m.

CHERYL HALL FRAZIER, witness in the above cause, for oral examination, whereupon the following proceedings were had:

CHERYL HALL FRAZIER
was sworn and testified as follows:
3   THE WITNESS:  I do.
4        EXAMINATION
5   BY MR. POUNDSTONE:
6     Q   Would you state your full name for the
7   record, please?
8     A   My name is Cheryl Hall Frazier.
9     Q   Mrs. Frazier, what's your date of birth?
10    A   7/5/59.
11    Q   What is your current address?
12    A   105 TV Road, Dothan, Alabama.  The zip
13   code is 36301.
14    Q   Okay.  Is that the residence that is the
15   subject of the mortgage --
16    A   Yes, sir.
17    Q   -- that is the subject of this lawsuit?
18    A   Yes, sir.
19    Q   Have you ever had your deposition taken
20   before?
21    A   No.
22    Q   I'll just give you a few ground rules
23   that will help us move through this process today.

Page 7

1        As you see, there's a court reporter here
2   taking your testimony.
3     A   Yes.
4     Q   She has a hard time dealing with nods of
5   the head yes and no or uh-huhs and huh-uhs --
6     A   Right.
7     Q   -- and also us talking at the same time.
8   I have to work on things, but if you could, try to
9   remember to answer your questions in words rather
10   than in gestures or nods of the head.  And also try
11   to remember to wait until I get through asking a
12   question before you provide me with an answer.
13    A   Understood.
14    Q   Is there any reason sitting here today
15   that you can't understand my questions and answer
16   them truthfully?
17    A   No.
18    Q   You're not on any kind of medication that
19   would affect your ability to understand my
20   questions?
21    A   No.
22    Q   Would you agree for me today to only
23   answer questions that you understand?

1     A   Yes.
2     Q   If you don't understand a question, would
3   you agree to ask me to repeat it so that you do
4   understand it?
5     A   Yes.
6     Q   Okay.  Would you tell me a little bit
7   about your educational history?
8     A   I'm a high school graduate.
9     Q   Where did you go to high school?
10    A   Barringer High School in Newark,
11   New Jersey.
12    Q   What town is that?
13    A   Newark.
14    Q   Newark?
15    A   Uh-huh (positive response).
16    Q   Did you have any post-high school
17   education?
18    A   No.
19    Q   Now, how did you get in Dothan?
20    A   My husband was dying of cancer.  He was
21   an only child and he wanted to be put to rest in
22   Dothan.  We decided to come here; that's what made
23   us move here.

Page 9

1     Q   Okay.  Your deceased husband was from
2   Dothan?
3     A   Right.
4     Q   Do you have any blood relatives in
5   Dothan?
6     A   Yes.
7     Q   What blood relatives do you have in
8   Dothan?
9     A   My three children.
10    Q   What are their names?
11    A   Her first name is Kevina, K-E-V-I-N-A,
12   her brother, Kevin, and my baby son is Michael.
13    Q   Are those your only blood relatives in
14   Dothan?
15    A   I have two nephews also that are there.
16    Q   What are their names?
17    A   Steven and Douglas.
18    Q   What is Steven and Douglas's last name?
19    A   Hall.
20    Q   Hall.  How about your children's last
21   name?
22    A   Dixon, D-I-X-O-N.
23    Q   Was your late husband's last name Dixon?

3 (Pages 6 to 9)

Page 10

1    A    His last name was Jones. My three
2    children are from my first marriage.
3    Q    Okay. Any other blood relatives that you
4    have in Dothan?
5    A    No.
6    Q    How about anywhere else in Alabama?
7    A    No.
8    Q    How many times have you been married?
9    A    Three.
10   Q    Okay. Are you currently married?
11   A    Yes.
12   Q    What's your husband's name?
13   A    Vincent Frazier.
14   Q    How long have you been married to
15   Mr. Frazier?
16   A    Five years.
17   Q    Were you married to Mr. Frazier at the
18   time you took out the loan at issue?
19   A    No.
20   Q    What does Mr. Frazier do for a living?
21   A    He's a counselor at a behavioral center.
22   Q    What's the name of the behavioral center?
23   A    Laurel Oaks.

Page 12

1    Q    Okay. What do they do?
2    A    Actually they're a company that makes
3    cigars, Phillies Blunt cigars, all types of cigars.
4    Q    How long did you work there?
5    A    Two years before becoming disabled.
6    Q    So in '95 or so is when you started
7    working there?
8    A    Yes.
9    Q    Where did you work before that?
10   A    Before that I was a housewife.
11   Q    I'm sorry, you may have already said
12   this. What year did you move to Dothan?
13   A    I moved to Dothan in '95.
14   Q    Have you ever been convicted of a crime?
15   A    No.
16   Q    Any arrests?
17   A    No. Maybe a speeding ticket or something
18   like that.
19   Q    Okay. Have you ever been involved in any
20   other lawsuits?
21   A    No.
22   Q    Just so we're clear, you've never sued
23   anyone else before?

Page 11

1    Q    Is that in Dothan?
2    A    Yes. I just want to correct myself on
3    one of the questions.
4    Q    Sure.
5    A    That loan was taken out in 2005, so I was
6    married at that time.
7    Q    You were married?
8    A    Yes.
9    Q    Okay.
10   A    But I purchased the house before marrying
11   him.
12   Q    Is your husband a co-owner of the home
13   today?
14   A    No.
15   Q    Are you employed?
16   A    No, I'm disabled.
17   Q    How long has it been since you worked?
18   A    1997.
19   Q    What did you do prior to 1997?
20   A    I was working at a company called General
21   Cigar, and I was a machine operator there.
22   Q    Where was that located?
23   A    It's in Dothan.

Page 13

1    A    Let me go back. I had a lawsuit
2    against the highrise where I stayed at in East
3    Newark, New Jersey. Someone had left something on
4    the steps and I had just had my son, Michael, and I
5    slipped down the stairs.
6    Q    Okay.
7    A    So I do remember that, but it was many
8    years ago.
9    Q    Any other lawsuits that you've brought?
10   A    No.
11   Q    Have you ever been sued before?
12   A    No.
13   Q    My understanding is you filed for
14   bankruptcy, though; right?
15   A    Yes.
16   Q    When did you file for bankruptcy?
17   A    2007.
18   Q    Do you know what chapter it was?
19   A    13.
20   Q    What is the status of that bankruptcy?
21   A    It's dismissed.
22   Q    Tell me how you came to take out a loan
23   with Accredited Home Lenders. Home Funds Direct

Page 14

1  may be the phrase you know them as.
2      A   Okay. Well, my house was bought in cash.
3  My son bought the house for me as a gift. And I
4  decided to do some things to help out my niece; she
5  has Down Syndrome.
6      My sister passed away of cancer in 2003,
7  so I just wanted to make the house more comfortable
8  and convenient for her condition. We're both
9  disabled.
10     Q   And you wanted to. I take it, use the funds
11  to make improvements to the home?
12     A   For her, yes.
13     Q   How did you specifically come to take out
14  the loan with Home Funds Direct as opposed to
15  somebody else?
16     A   My son went online for me to seek out
17  someone to do my refinancing and they responded.
18     Q   Do you know what web site it was?
19     A   No. I don't.
20     Q   Okay. Which son helped you?
21     A   Kevin.
22     Q   Kevin. Did you ever speak with anyone at
23  Home Funds Direct?

Page 15

1      A   Yes, I spoke with a gentleman by the name
2  of Chris. I believe his name was Chris. He's the
3  one that walked me through this mortgage.
4      Q   You don't remember Chris's last name?
5      A   No.
6      Q   What do you remember about your
7  conversation with Chris?
8      A   Well, I was trying to explain to him what
9  I was trying to do, and he was there to help me.
10     Q   Do you remember any specifics of the
11  conversation?
12     A   No, none other than him asking me
13  questions about what type of loan I was looking for
14  and telling me about the type of interest rates he
15  could probably get for me. And I told him the
16  house was already paid for in full; I wasn't
17  looking to get into any serious debt.
18     Q   How many times did you speak with Chris?
19     A   Probably about four times.
20     Q   Were all those times that you spoke with
21  him prior to closing?
22     A   Yes.
23     Q   Is there anybody else at Home Funds

Page 16

1  Direct that you recall speaking with?
2      A   No. just him, because he was the one that
3  was handing the loan.
4      Q   Do you know specifically who Chris worked
5  for?
6      A   Home Funds.
7      Q   Did he tell you that he was with Home
8  Funds?
9      A   Yes, because every time he called, that's
10  what came up on my I.D. also.
11     Q   How about the closing company, Swafford
12  and Hays, did you have any communications with
13  anyone from that company?
14     A   Not until my closing.
15     Q   Who did you speak with at Swafford and
16  Hays at your closing?
17     A   I'm not sure of the lady's name; she came
18  up to my home.
19     Q   Do you know if that was actually an
20  employee of Swafford, or could it have been a
21  notary that they obtained?
22     A   She was a notary.
23     Q   Was her name Diane Hilson?

Page 17

1      A   I'm not sure.
2      Q   Was she only the one that was present for
3  your closing?
4      A   Yes.
5      Q   There wasn't anyone from Home Funds
6  Direct at your closing?
7      A   Nobody else but her.
8      Q   Do you remember the substance of any
9  communications that you had with the notary?
10     A   No, none other than her explaining each
11  section of my closing and me signing.
12     Q   And you said the closing took place at
13  your home?
14     A   Yes.
15     Q   I know you said that the notary and you
16  were the only people present. Did anybody attend
17  the closing via telephone?
18     A   No.
19     Q   If you would -- and this is kind of in
20  your words kind of thing -- tell me what you
21  remember taking place at the closing.
22     A   Well, she called my home the day before.
23  I also spoke with the gentleman who did my loan,

1  and he had informed me what time she was coming
2  over there the next day for my closing.
3    Q  What do you recall happening when she got
4  there?
5    A  Well, when she got there, I made her
6  comfortable because she had a lot of papers and
7  things with her. We sat down and she started going
8  over my closing.
9    Q  She went over the documents?
10    A  Right.
11    Q  And then had you sign them?
12    A  Right. She was basically just telling me
13  what each paper was for and then asking for my
14  signature.
15    Q  You said the gentleman on the phone told
16  you what time she was coming or what time the
17  closing would be?
18    A  Well, actually what he did was tell me
19  that he gave her the phone number. He gave her my
20  phone number and said she would be contacting me
21  and letting me know exactly what time she would be
22  available.
23    Q  Okay. Was that Chris or somebody else?

1    A  It was the guy that -- it was Chris, the
2  guy that did the loan. It was him calling me every
3  time.
4    Q  And Chris said, I've given this lady your
5  phone number; she's going to contact you?
6    A  Right, she's going to come and do the
7  closing. But he did mention the company, Swafford
8  and Hays, that that's where she would be coming
9  from, through that company.
10    Q  Did you have an opportunity to read the
11  documents that were being presented at the closing?
12    A  Yes.
13    Q  And did you get a copy of the documents
14  at the closing?
15    A  Yes.
16    Q  Do you have any personal knowledge of the
17  instructions that Home Funds Direct provided to
18  Swafford and Hays concerning your loan and its
19  closing?
20    A  Could you repeat that question?
21    Q  Yes. Do you have any personal knowledge
22  of what closing instructions, if any, Home Funds
23  Direct provided to Swafford and Hays?

1    A  No. I'm still not understanding your
2  question.
3    Q  Okay. And all I want to know is do you
4  have any personal knowledge of any communications
5  that took place between Home Funds Direct and --
6    A  And Swafford, no.
7    Q  -- Swafford as to how they ought to go
8  about closing the loan?
9    A  No. All I know is that he called me and
10  told me it was Swafford and Hays that was going to
11  be doing the settlement.
12    Q  I assume -- and just so we're clear on
13  the record -- you never participated in any
14  discussions between Home Funds Direct and Swafford
15  and Hays?
16    A  No.
17    Q  Are you personally aware of any evidence
18  that would show that Home Funds Direct had
19  knowledge of what you were charged for title
20  insurance?
21    A  Well, I guess they would have had
22  knowledge of what was charged. She did the closing
23  and all the fees were there.

1    Q  Right. But my question is: Do you
2  personally have any evidence that Home Funds Direct
3  had knowledge of what you were charged for title
4  insurance?
5    A  No.
6    Q  Are you personally aware of any evidence
7  that would show that Home Funds Direct ever
8  received any commission or other funds from the
9  title insurance on the loan?
10    A  No.
11    Q  Do you know what the TILA is?
12    A  That's for home lending.
13    Q  Okay. Do you understand that TILA is the
14  Truth-in-Lending Act?
15    A  Yes, it's the lending act. Yes, I do.
16    Q  Okay. Do you personally know how it is
17  that you're alleging that Home Funds Direct
18  violated TILA?
19    A  Well, they violated TILA by overcharging
20  me some fees.
21    Q  Do you know what fees?
22    A  Well, I'm not quite sure about all of
23  them because there's more than one.

Q   Do you know what the HOEPA is?

A   No.

Q   I assume then that you don't personally know how it is in this lawsuit you're alleging that Home Funds Direct violated HOEPA?

A   Well, the only way I -- are you asking me about my lawsuit?

Q   Yes.

A   Well, it came through Swafford and Hays, that's how I found out.

Q   Tell me what you mean by it came through Swafford and Hays.

A   Well, Swafford and Hays is the one that did the settlement. That's how I got in touch with my attorney because my name came up. I sent them the packet of my closing and that's when we came up with I was overcharged.

Q   Okay. You said your name came up. What do you mean by that?

A   On Swafford and Hays, they had something against Swafford and Hays and my name came into play with that. That's how my attorney got in touch with me.

Page 23

Q   Okay. Did you get some kind of class action notice or something like that?

A   Yes.

Q   And just so we're clear, you don't personally know -- just you sitting here today personally know -- how it is you're alleging that Home Funds Direct violated HOEPA?

A   No.

Q   Are you aware that you're seeking rescission in this lawsuit?

A   Yes.

Q   Do you know what rescission is?

A   Rescinding the loan.

Q   In layman's terms, do you understand that that means the loan would be undone?

A   I understand that.

Q   Okay. And do you understand that the purpose of rescission is to return parties to the status quo?

A   Uh-huh (positive response). 4:51 PM 6/19/2008

MR. PATTERSON: Was that a yes?

THE WITNESS: That was a yes, I'm sorry.

MR. PATTERSON: Just so I know. That's fine.

BY MR. POUNDSTONE:

Q   And you understand that if you do rescission, then the borrower would be responsible for returning the principal and the lender would be responsible for returning any financing fees or anything like that; correct?

A   Yes.

Q   Now, my understanding is that your loan is paid off; correct?

A   Yes.

Q   Do you recognize that if you pursue rescission claims on behalf of the class that some of the members of the class will not have paid off their loan?

A   Yes.

Q   Would you also acknowledge that some of those class members then are going to have to go out and find alternative financing if they're required to return the loan proceeds through rescission?

A   Yes.

Page 24

Q   Would you agree that that might not necessarily be in somebody's best interest?

MR. PATTERSON: I'm going to object to the form of that question. That's a legal conclusion, but you can go ahead and answer it if you can.

A   Oh, yes.

BY MR. POUNDSTONE:

Q   For instance, someone's credit may have changed and they may no longer be able to get financing?

A   Understood.

Q   And that's a possibility you would recognize?

A   Yes.

Q   You mentioned that there was a previous lawsuit against Swafford and Hays.

A   Yes. They had sent me something in the mail about the class action of some years before.

Q   Okay. And this is all I'm going to ask; were you a named plaintiff in the class action against Swafford and Hays, or were you just a member of the class?

Page 27

1  A   Just a member of the class.
2  Q   Tell me what if anything you've done to
3  personally investigate your claims in this lawsuit?
4  A   Well, me investigate, no. I haven't done
5  anything. I hired an attorney, and that's what I
6  did.
7  Q   So any investigation that's been done
8  wouldn't have been done by you?
9  A   No.
10  Q   It would have been done by your
11  attorneys?
12  A   Yes, sir.
13  Q   And to follow up on that, what if
14  anything have you personally done to investigate
15  the claims of the class members you seek to
16  represent?
17  A   None. The attorneys are taking care of
18  that.
19  Q   Okay. Any investigation into the class
20  members' claims would have been done by the
21  attorneys?
22  A   That's right.
23  Q   Do you recall when you paid off the Home

1  Funds Direct loan?
2  A   I believe it was somewhere in '06, but I
3  don't know the exact date.
4  Q   Okay. Are you aware that there are
5  several attorneys from several different law firms
6  representing you in this case?
7  A   Yes.
8  Q   Have you met all of your attorneys?
9  A   No, sir.
10  Q   Which of your attorneys have you met?
11  A   My attorney to my right and Mr.
12  Underwood.
13  Q   So the only attorneys that you've
14  personally met are the attorneys in Mr. Underwood's
15  office?
16  A   Yes.
17  Q   As a follow-up, have you ever used any of
18  the attorneys representing you for other legal
19  matters?
20  A   Never.
21  Q   Did you have any personal involvement in
22  the decision to bring other plaintiffs' attorneys
23  into this case?

Page 28

1  A   No.
2  Q   Do you have any knowledge of your
3  attorneys' experience in handling class actions?
4  A   None other than what I've read online.
5  Q   Where have you been to read online?
6  A   I had my niece look it up for me.
7  Q   What's your niece's name?
8  A   Her name is Kim, K-I-M, last name is
9  Hall.
10  Q   Okay. Do you know where on the internet
11  Kim went?
12  A   No, I don't.
13  Q   Tell me what she told you she saw on the
14  internet.
15  A   I was asking her to look up Earl
16  Underwood.
17  Q   When did that take place?
18  A   Over two years ago.
19  Q   Do you remember what information she
20  relayed to you?
21  A   She was telling me -- informed me -- what
22  type of an attorney he was.
23  Q   What type of work he did?

1  A   Right.
2  Q   How about any of the other attorneys,
3  have you ever looked into their experience --
4  A   No.
5  Q   -- in handling class actions?
6  A   No, I haven't.
7  Q   How about any of your attorneys'
8  experience handling TILA claims, have you looked
9  into that?
10  A   No, I haven't.
11  Q   Have you looked into that the addition of
12  additional attorneys representing you in this case
13  might cost more attorneys' fees in this matter?
14  A   Yes.
15  Q   Okay. Tell me what, if anything, you
16  know about that.
17  A   Well, like I said I have not met the
18  other attorneys and I haven't heard anything from
19  them, so I really don't know.
20  Q   You don't know whether more attorneys
21  being involved --
22  A   Right.
23  Q   -- will lead to more or less attorneys'

Page 30

```
 1    fees?
 2    A   Correct.
 3    Q   Have you spent any of your personal money
 4  in pursuing this case?
 5    A   None other than coming here.
 6    Q   Just the price of gas to get here?
 7    A   Yes.
 8    Q   Do you plan to spend any of your personal
 9  money in pursuing this case?
10    A   No.
11    Q   Would you be willing to spend personal
12  money if you needed to in pursuing this case?
13    A   Yes.
14    Q   Do you have an idea of how much you'd be
15  willing to spend?
16    A   Well, I couldn't answer that. I am
17  disabled, so I'm on a fixed income.
18    Q   Would it be fair to say it would be a
19  fairly nominal amount; it wouldn't be very much?
20    A   Right, it wouldn't be very much.
21    Q   When did you decide to pursue this case
22  as a class action?
23    A   About -- well, at least two years ago.
```

Page 31

```
 1    Q   Do you recognize that you didn't
 2  initially file this as a class action?
 3    A   Yes, understood.
 4    Q   But if I understand your testimony
 5  correctly, even though you didn't initially file it
 6  as a class action, at least two years ago you
 7  contemplated this as a class action?
 8    A   Yes.
 9    Q   What made you decide to become a class
10  representative?
11    A   Because I wanted everybody to be
12  recovered that's been damaged by this action just
13  as well as myself.
14    Q   Did you receive any settlement proceeds
15  from Swafford and Hays?
16    A   No.
17    Q   You never received anything from Swafford
18  and Hays?
19    A   No, not except for the settlement, when
20  they settled my closing.
21    Q   Okay. What I'm asking is, you said that
22  you were a member of the class in a lawsuit against
23  Swafford and Hays?
```

Page 32

```
 1    A   Yes.
 2    Q   Have you ever received any recovery --
 3    A   No.
 4    Q   -- from that lawsuit?
 5    A   No.
 6    Q   And she's trying to keep up, so let's
 7  make sure that we don't talk over each other.
 8    A   Okay.
 9    Q   Do you intend to make any personal
10  decisions concerning how this case is prosecuted?
11    A   No.
12    Q   Are you going to leave it all up to your
13  lawyers?
14    A   Yes.
15    Q   Did you have any involvement in deciding
16  how the class you seek to represent would be
17  defined?
18    A   No.
19    Q   Do you know what the definition is of the
20  class you seek to represent?
21    A   Somewhat. Repeat the question.
22    Q   Do you know what class you seek to
23  represent, who is included in that class?
```

Page 33

```
 1    A   It's a lot of the homeowners like myself.
 2    Q   Do you know precisely what the definition
 3  of the class is?
 4    A   No.
 5    Q   Were you involved in coming up with that
 6  definition?
 7    A   No.
 8    Q   Do you personally know how many people
 9  are in the class you seek to represent?
10    A   No, I don't.
11    Q   Do you know how the members of the class
12  would be notified?
13    A   No, I don't.
14    Q   If there are costs associated with
15  notifying the class, do you know who is going to
16  pay for that?
17    A   No.
18    Q   Do you plan to pay for that?
19    A   No.
20    Q   Are you aware that TILA provides for
21  limitations on amounts that can be recovered for a
22  class action?
23    A   Yes.
```

Q   Are you personally willing to take less than you could receive if you were pursuing your case individually if TILA's damage cap makes you recover an amount less under a class action?

A   No.

Q   You're not willing to take less?

A   No.

Q   Have you talked to any members of the class you seek to represent?

A   No.

Q   Are you expecting to receive any extra recovery because you are serving as a class rep?

A   Yes.

Q   That's something you expect?

A   Sure.

Q   What is your understanding as to what your responsibilities as a class rep are?

A   That part right there we have to do some research on.

Q   Okay.  Sitting here today you don't have any feeling personally as to what your duties as a class rep are?

A   Right.

Q   Have you reviewed any of the filings in this case?

A   No.

Q   Did you review the complaint?

A   Yes.

Q   Have you reviewed the amended complaint?

A   Yes.

Q   Other than the complaints, are there any other filings you've reviewed in this case?

A   No.

Q   Are you prepared to sit through the trial of this matter?

A   Yes.

Q   Even if it takes three weeks?

A   Yes.

Q   Do you personally know any details concerning loans that potential class members took out with Home Funds Direct?

A   No.

MR. POUNDSTONE:  Any time you want a break, just let me know.

THE WITNESS:  I'd like to have one, just a little one.

MR. POUNDSTONE:  Absolutely.

(Brief recess.)

A   On one question that you asked me about if I would take less money, the answer is yes to that question.

BY MR. POUNDSTONE:

Q   Okay.

A   And to the other question as understanding my position as a rep for the class action, I do understand some of my duties, such as doing depositions and the trial, so the answer is yes.

(Defendant's Exhibit Number 1 was received and marked for identification.)

BY MR. POUNDSTONE:

Q   Okay.  I'm going to show you what I've marked as Exhibit 1.  I'll give you some time to take a look at each page of that and let me know when you're ready.

A   Some of these numbers are very blurry; I don't have my glasses.  I think I'm ready.

Q   Okay.  Have you seen that document before?

A   Yes.

Q   It's your understanding that these are the closing instructions that Accredited Home Lenders or Home Funds Direct provided to Swafford and Hays?

A   Yes.

Q   And if you'd look just at the last page, does that contain your signature?

A   Yes.

Q   And if you look on the pages before that, there are initials on each of those pages down at the bottom?

A   Yes.

Q   Are those your initials, CH?

A   Yes.

Q   You received and signed this document at closing?

A   Yes, I did.

(Defendant's Exhibit Number 2 was received and marked for identification.)

BY MR. POUNDSTONE:

Q   Hold that just a second.  I'm going to show you what I'm going to mark as Exhibit 2.  I'll

1    let you take a look at that document.

.     A    Okay.

3    Q    Have you seen that document before?

4    A    Yes.

5    Q    And do you understand that it is the

6    Addendum to Accredited Home Lenders, Home Funds

7    Direct's instructions to Swafford and Hays?

8    A    Yes.

9    Q    Did you receive this at closing?

10   A    Yes.

11   Q    And does it contain you signature?

12   A    Yes.

13   Q    Other than what I've marked as Exhibit 1

14   and Exhibit 2, are you aware of any other closing

15   instructions that Accredited Home Lenders or Home

16   Funds Direct provided to Swafford and Hays?

17   A    No.

18      (Defendant's Exhibit Number 3 was received

19      and marked for identification.)

20   BY MR. POUNDSTONE:

21   Q    I'll show you what I've marked as Exhibit

22   3.

23   A    Okay.

Page 39

1    Q    Have you seen that document before?

2    A    Yes.

3    Q    Is that a copy of the note for the loan

4    at issue in this lawsuit?

5    A    Yes.

6    Q    Does it contain your signature on the

7    last page?

8    A    Yes.

9    Q    And does it also contain your initials on

10   the two pages before that?

11   A    Yes.

12   Q    Did you sign this document at closing?

13   A    Yes.

14   Q    And you were given a copy of it at

15   closing; correct?

16   A    Yes.

17      (Defendant's Exhibit Number 4 was received

18      and marked for identification.)

19   BY MR. POUNDSTONE:

20   Q    I'm going to show you what I've marked as

21   Exhibit 4. Have you seen this document before?

22   A    Yes.

23   Q    Is that the mortgage for the loan that's

1    the subject of this lawsuit?

.     A    Yes.

3    Q    Does it contain your signature on the

4    second to last page?

5    A    Yes.

6    Q    Okay. Do your initials appear on the

7    remaining pages?

8    A    Yes.

9    Q    Did you sign this document at closing?

10   A    Yes.

11   Q    I assume you received a copy of it at

12   closing.

13   A    Yes.

14      (Defendant's Exhibit Number 5 was received

15      and marked for identification.)

16   BY MR. POUNDSTONE:

17   Q    I'm going to show you what I've marked as

18   Exhibit 5. Take a look at that and just let me

19   know when you're ready.

20   A    Okay.

21   Q    Have you seen that document before?

22   A    Yes.

23   Q    Is that a copy of your Hud 1 Settlement

Page 41

1    Statement?

2    A    Yes.

3    Q    Does it contain your signature on the

4    second page?

5    A    Yes.

6    Q    And do you acknowledge receiving this at

7    your closing?

8    A    Yes.

9    Q    In your complaint you indicated that

10   Swafford and Hays obtained a title search and

11   abstract from another company. Do you know what

12   company they obtained that from?

13   A    No.

14   Q    Do you acknowledge that Accredited Home

15   Lenders or Home Funds Direct were not responsible

16   for performing the title search and abstract?

17   A    Yes, understood.

18   Q    If you would, look on the second page,

19   line 1102.

20   A    Uh-huh, I see it.

21   Q    It says, "Abstract or Title Search." You

22   were charged $200 for an abstract or title search;

23   correct?

Page 42

1    A    Yes.
2    Q    And if you look at the next line down,
3 line number 1103, you were charged $250 for title
4 examination; correct?
5    A    Yes.
6    Q    And the Hud 1 indicates that both of
7 these fees went to Swafford and Hays; correct?
8    A    I don't know.  Yes.
9    Q    Do you see that where it says to Swafford
10 and Hays Settlement Services?
11    A    Yes.
12    Q    And you don't dispute that's where those
13 funds went, do you?
14    A    No, I don't.
15    Q    And you don't have evidence that
16 Accredited Home Lenders or Home Funds Direct
17 received any of those fees?
18    A    No, I don't.
19    Q    Are you personally aware of any evidence
20 that Home Funds Direct or Accredited Home Lenders
21 had any involvement in determining the amount that
22 would be charged for those fees?
23    A    No.

Page 43

1    Q    Are you personally aware of any evidence
2 that Home Funds Direct or Accredited Home Lenders
3 knew how much Swafford and Hays had actually paid
4 the company who performed those services?
5    A    No, I don't.
6    Q    In your complaint, you indicated the
7 actual cost for the title and abstract was less
8 than $125.  What evidence do you have to support
9 that contention?
10    A    None.
11    Q    If you look on line 1201, do you see the
12 Recording fees and Service fees?
13    A    Yes.
14    Q    You were charged $120 for the recording
15 fee; correct?
16    A    Yes.
17    Q    The Hud 1 indicates that that fee went to
18 Swafford and Hays; correct?
19    A    Yes.
20         MR. PATTERSON:  Are you talking
21 about 1201?
22         MR. POUNDSTONE:  1201.  I'm sorry.
23 it went to the clerk of court.  Strike that

Page 44

1    question.
2    BY MR. POUNDSTONE:
3    Q    The Hud 1 indicates that the $120 went to
4 the clerk of court; correct?
5    A    Correct.
6    Q    You don't have any evidence that Home
7 Funds Direct or Accredited Home Lenders had any
8 involvement in determining how much was charged for
9 that fee, do you?
10    A    No, I don't.
11    Q    Are you aware personally of any evidence
12 that would show that Home Funds Direct or
13 Accredited Home Lenders knew how much Swafford and
14 Hays actually paid for recording?
15    A    No, I don't.
16    Q    Do you contend that any of the recording
17 fees went to Accredited Home Lenders or Home Funds
18 Direct?
19    A    I don't know.
20    Q    You don't have any evidence to show that
21 it went there, do you?
22    A    No.
23    Q    You allege in your complaint that you were

Page 45

1 charged $221 for title insurance.  But if you would
2 look on line 1108, the Hud 1 shows that you were
3 charged $200 for title insurance?
4    A    I see it.
5    Q    Correct?
6    A    I see it, yes.
7    Q    That's what the Hud 1 says?
8    A    Yes.
9    Q    Do you have any evidence or are you aware
10 of any evidence that would show you were actually
11 charged $221 for title insurance?
12    A    No.
13    Q    The Hud 1 indicates that the title
14 insurance fee went to Transnation Title Insurance
15 Company; correct?
16    A    I don't know.
17    Q    If you look on line 1108, the Hud 1
18 indicates that it went to Transnation Title
19 Insurance Company; correct?
20    A    Correct, yes.
21    Q    Do you have any knowledge of who chose
22 Transnation as the title insurance company?
23    A    No.

Q   I assume that you don't have any evidence
that Accredited Home Lenders or Home Funds Direct
made the decision to use Transnation?

A   No.

Q   And I assume also that you're not aware
of any evidence that shows Home Funds Direct or
Accredited Home Lenders had any involvement in
determining the amount that would be charged for
title insurance?

A   No.

Q   Are you personally aware of any evidence
that shows that Accredited Home Lenders or Home
Funds Direct knew how much Transnation actually
charged for title insurance?

A   No.

Q   Are you contending that any of the title
insurance funds went to Home Funds Direct or
Accredited Home Lenders?

A   No.

Q   Have you personally had any discussions
with anyone at the Alabama Department of Insurance
concerning the amount of title insurance you were
charged?

a look at that.

A   Okay.

Q   Have you seen that document before?

A   Yes, I have.

Q   Is it your understanding that that is the
Final Truth-in-Lending Disclosure Statement in
connection with your loan?

A   Correct.

Q   Does your signature appear on that
document?

A   Yes.

Q   And do you acknowledge receiving this at
closing?

A   Yes.

Q   If you would, look in the box that says,
"Prepayment."

A   Yes.

Q   Now, the disclosure statement indicates
that there is no prepayment penalty; correct?

A   Yes.

Q   Your complaint on the other hand alleges
that there was a prepayment penalty.  Are you aware
of any prepayment penalty?

A   No.

Q   If you look on line 1111, that indicates
that you were charged $50 for Endorsements;
correct?

A   Correct.

Q   And the Hud 1 indicates that that fee
went to Swafford and Hays; correct?

A   Correct.

Q   Are you personally aware of any evidence
that either Home Funds Direct or Accredited Home
Lenders had any involvement in determining the
amount that would be charged for endorsements?

A   No.

Q   Do you have any personal knowledge of any
evidence to suggest that Accredited Home Lenders or
Home Funds Direct received the fees for
endorsements?

A   No.

(Defendant's Exhibit Number 6 was received
and marked for identification.)

BY MR. POUNDSTONE:

Q   I'm going to show you what I'm going to
mark as Exhibit 6.  I'll give you a chance to take

A   No.

Q   Are you contending that there was a
prepayment penalty?

A   No.

Q   Do you have any idea why your complaint
contended there was a prepayment penalty?

A   I'm not sure.

(Defendant's Exhibit Number 7 was received
and marked for identification.)

BY MR. POUNDSTONE:

Q   I'm showing you what I'm going to mark as
Exhibit 7.

MR. POUNDSTONE:  Somehow I'm short a
copy of that.

MR. PATTERSON:  That's okay.

BY MR. POUNDSTONE:

Q   Have you seen that document before?

A   Yes, I have.

Q   Is that the Notice of Right to Cancel
that you received in connection with your loan?

A   Yes.

Q   And is that your signature on that
document?

1    A    Yes. it is.
2    Q    Do you acknowledge receiving that at
3 closing?
4    A    Yes.
5    Q    And just so we're clear, you also
6 acknowledge receiving the Truth-in-Lending
7 Disclosure Statement and the Hud 1 at closing?
8    A    Yes.
9    Q    And would you acknowledge that you did
10 not cancel this loan within three days of March 25,
11 2005?
12    A    Yes.
13    Q    You did not do that; correct?
14    A    I did not do it.
15    (Defendant's Exhibit Number 8 was received
16    and marked for identification.)
17 BY MR. POUNDSTONE:
18    Q    I'm showing you what I'm going to mark as
19 Exhibit 8. Have you seen that document before?
20    A    I'm not sure.
21    Q    You don't recall one way or the other?
22    A    Right.
23    Q    Do you understand that your attorneys

1 produced this to us in the course of this
2 litigation?
3    A    Yes.
4    Q    Are you aware of them getting documents
5 concerning your loan from any other source than
6 you?
7    A    Excuse me?
8    Q    Do you know if they obtained documents
9 concerning your loan from any other source other
10 than you?
11    A    No.
12    Q    Do you dispute that you received this?
13    A    No.
14    Q    You just don't remember or recall one way
15 or the other?
16    A    Right.
17    Q    And sitting here I know you said you
18 don't recall seeing that before, but you recognize
19 sitting here that it's a High Cost Loan Summary for
20 your loan; correct?
21    A    Yes.
22    Q    If you would, look at the line right
23 there that says, "Prepayment Penalty."

1    A    Yes.
2    Q    Would you acknowledge that this document
3 also indicates there was no prepayment penalty for
4 your loan?
5    A    Yes, I see it.
6    (Defendant's Exhibit Number 9 was received
7    and marked for identification.)
8 BY MR. POUNDSTONE:
9    Q    I'm showing you what I'm going to mark as
10 Exhibit 9. I'll give you a chance to take a look
11 at that.
12    MR. PATTERSON:    Can we go off the
13    record for just a second?
14    MR. POUNDSTONE:    Sure.
15    (Off-the-record discussion.)
16 BY MR. POUNDSTONE:
17    Q    Have you seen that document before?
18    A    Yes.
19    Q    Tell me where you've seen it.
20    A    I believe this sheet might have been at
21 my closing, but I'm not sure.
22    Q    Okay.  You think it might have been in
23 your closing packet, but you don't know for certain

1 one way or the other?
2    A    I'm not sure.  I just don't remember
3 sheet by sheet, you know.
4    Q    Sure.  Do you recall whether you had that
5 in your possession before you turned over documents
6 to your attorney?
7    A    I believe it was, but, again, I'm not
8 sure.
9    Q    You're not certain one way or the other
10 of where it came from?
11    A    Right.
12    Q    Sitting here today and looking at that
13 document, you understand that it shows the parties
14 who actually received loan proceeds?
15    A    Yes.
16    Q    Okay.
17    A    I'm sorry.  After carefully looking, I
18 believe that it was in my packet.
19    Q    You think it was in the packet that you
20 received at closing?
21    A    Yes, I believe so.
22    Q    Okay.  If you would, look on the line
23 that corresponds with Hud 1 line 1103, and it says,

"Title Examination."

A   Yes.

Q   S250; correct?

A   Yes.

Q   This Disbursement Sheet shows that that S250 went to Swafford and Hays; correct?

A   Yes.

Q   And you don't dispute that that's where it went?

A   No.

Q   If you'll look at the next entry down, it corresponds to Hud 1 line 1111, "Endorsements?"

A   Yes.

Q   S50. The Disbursement Sheet also shows that those funds went to Swafford and Hays; correct?

A   Correct.

Q   And you don't dispute that that's where they went?

A   No.

Q   If you look at the next line, there's an entry that corresponds to Hud 1 line 1108, and it says, "Title Insurance." It shows S140; correct?

A   Correct.

Q   And that shows that that money went to Swafford and Hays; correct?

A   Correct.

Q   And you don't dispute that they received that?

A   No.

Q   If you'll look two sections down --

A   Recording fee?

Q   -- there's another line for title insurance that corresponds with Hud 1 line 1108, and it's S60; correct?

A   Correct.

Q   And the Disbursement Sheet shows that those funds also went to Swafford and Hays. You don't dispute that, do you?

A   No.

Q   In looking at this Disbursement Sheet, there's no indication on here how much of the $200 that went towards title insurance was actually paid to Transnation, is there?

A   No.

Q   Are you aware of any evidence that would

show that Accredited Home Lenders or Home Funds Direct ever knew how much of that S200 was paid by Swafford and Hays to Transnation?

A   No.

Q   If you look right here, the second grouping down, the second column, the fee that corresponds to line 1102 in the Hud 1, "Abstract or Title Search" --

A   Yes.

Q   -- and you see S200; correct?

A   Correct.

Q   And it indicates that that money went to Swafford and Hays; correct?

A   Correct.

Q   And you don't dispute that that's where it went?

A   No.

Q   If you look at the last column where it says, "Recording fees and Service fees, S56," do you see that?

A   Yes.

Q   It indicates that those funds went to the Houston County Judge of Probate; correct?

A   Correct.

Q   And you don't dispute that that's where those funds went, do you?

A   No, I don't.

Q   There's another entry that corresponds with that same Hud 1 line. It's one, two, three, four columns down, where it says, "Recording fees and Service fee, S64."

A   Yes.

Q   And that indicates that those funds went to Swafford and Hays; correct?

A   Correct.

Q   And you don't dispute that that's where those funds went?

A   No, I don't.

MR. POUNDSTONE: We can take about five minutes, and I may be done.

(Brief recess.)

BY MR. POUNDSTONE:

Q   I have just two sort of catch-all questions I want to ask you that have already been specifically dealt with, but just so we're clear:

You don't have any personal knowledge of

1    any evidence that Accredited Home Lenders or Home
2    Funds Direct knew anything about the overcharges
3    that are alleged in your complaint, do you?
4        A    No. I don't.
5        Q    And you don't have any personal knowledge
6    of any evidence that would show that they received
7    any funds from those overcharges, do you?
8        A    No. I don't.
9            MR. PATTERSON:  And I'll just object
10   to those two, asked and answered.
11            MR. POUNDSTONE:  Sure.  We're done.
12   Thank you.
13   (The deposition concluded at 2:23 p.m.)
14
15
16
17
18
19
20
21
22
23

Page 59

1        C E R T I F I C A T E
2
3    STATE OF ALABAMA)
4    COUNTY OF BALDWIN)
5
6        I do hereby certify that the above and
7    foregoing transcript of proceedings in the matter
8    aforementioned was taken down by me in machine
9    shorthand and the questions and answers thereto
10   were reduced to writing under my personal
11   supervision, and that the foregoing represents
12   a true and correct transcript of the proceedings
13   given by said witness upon said hearing.
14        I further certify that I am neither of
15   counsel nor of kin to the parties to the action,
16   nor am I in anywise interested in the result of
17   said cause.
18
19
20        _____
         KAREN T. McDONALD, AL-CCR-40
21        COURT REPORTER, NOTARY PUBLIC
         STATE OF ALABAMA AT LARGE
22
     My Commission expires: 4/28 2012
23

# ATTENTION
# CLOSING AGENT

*PLEASE RETURN ORIGINAL SIGNED DOCUMENTS FOR FUNDING TO THE FOLLOWING ADDRESS:*

**Attn: Retail Funding**
**1130 Northchase Parkway**
**Suite 200**
**Marietta, GA 30067-6420**

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE DOC/FUNDING DEPARTMENT.*

*PHONE:* (866) 539-7025

MIN # 100176105031729174                    HALL                    Loan #  0503172917
AHL 610104.UFF                          Page 1 of 1



DEFENDANT'S
EXHIBIT
1

HALL00001

# ATTENTION CLOSING AGENTS:

1. **Do not make any changes to the loan documents. All changes require prior authorization by the Lender.**

2. **Please comply with the following policies related to the dates of our loan documents.**
   * Do not change to the date of our loan documents.
   * Accredited Home Lenders, Inc. does not require that the date of the loan documents be the same as date the Borrower is signing the documents.
   * The Borrower should date the documents the day they actually sign them.

3. **Please comply with the following policies related to RESPA Regulations.**
   * Accredited Home Lenders, Inc. must approve any changes to fees charges by the Broker.
   * No demands to closing should be accepted.
   * The payee must be shown next to all fees and charges on the final HUD-1.

*IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE DOC/FUNDING DEPARTMENT.*

*PHONE: (866) 539-7025*

MIN # 100176105031729174            **HALL**            Loan # 0503172917
AHL CLSGAGTN.UFF                     Page 1 of 1

HALL00002

OUR LOAN NO. 0503172917                                    CLOSING DATE  March 25, 2005

# LENDERS' INSTRUCTIONS   ISSUE DATE March 25, 2005

**IF THE LOAN DOES NOT CLOSE AS SCHEDULED PLEASE NOTIFY OUR OFFICE IMMEDIATELY (DO NOT USE OUR FUNDS IF YOU CANNOT COMPLY WITH ALL OF THE INSTRUCTIONS ON PAGES 2, 3, & 4 AND ADDITIONAL INSTRUCTIONS)**

CLOSING AGENT  SWAFFORD & HAYES SETTLEMENT SERVICES INC  ATTENTION  JAMES W SWAFFORD
CLOSING AGENT ADDRESS   9041 EXECUTIVE PARK DRIVE, KNOXVILLE, TN 37923
CLOSING AGENT PHONE NUMBER  (865)934-0466      CLOSING AGENT FAX NUMBER  (865)934-0215
LOAN PURPOSE  Refi Cash Out          LIEN TYPE  1st          LOAN TYPE  Fixed
MTGE AMT. $ 56,000.00   INTEREST RATE  7.299   % INITIAL RATE  7.299%   MARGIN  0.000   %
TERM  360/360      MUST CLOSE BY  04/05/2005   DOCUMENT EXPIRE ON  04/05/2005
MORTGAGOR(S) NAME(S)  CHERYL HALL
PROPERTY ADDRESS  105 TV ROAD, DOTHAN, AL 36301
TITLE COMPANY  SWAFFORD & HAYES SETTLEMENT SERVICES INC
TITLE NUMBER  05-2013      PHONE NUMBER  (865)934-0466

**A. ENCLOSED ARE THE FOLLOWING DOCUMENTS PERTAINING TO THE MORTGAGE CLOSING:**

( X ) DEED / MORTGAGE                      (  ) ORIGINAL POWER OF ATTORNEY - RETURN TO DESIGNEE

(  ) RIDER(S), ADDENDUM, ALLONGE #  _____   ( X ) TAX FORM # 4506 OR 8821

( X ) NOTE                                (  ) _____

( X ) RIDER(S) ATTATCHED SCHEDULES # _____   (  ) _____

( X ) TRUTH INLENDING FINAL (REG Z)       (  ) _____

( X ) W-9                                 (  ) _____

( X ) INFORMATIONAL DISCLOSURES           (  ) _____

( X ) RIGHT TO CANCEL - 3 COPIES PER BORROWER   (  ) _____
      -RETURN 1 EACH

**B. THE FOLLOWING LENDER ITEMS HAVE BEEN DEDUCTED FROM OUR CHECK/DRAFT TO YOU:**

| FEE ITEMS:<br>HUD-1 # | LENDER<br>FEES | N/A | LENDER<br>POC | TOTAL<br>FEES |
|---|---|---|---|---|
| 801 Origination Fee | 1,960.00 | | | 1,960.00 |
| 802 Discount Points | | | | |
| 803 Appraisal Fee | | | | 300.00 |
| 804 Credit Report Fee | | | | |
| 805 Final Inspection/442 Fee | | | | |
| 807 Application Fee | | | | |
| 810 Processing Fee | 500.00 | | | 500.00 |
| 811 Underwriting Fee | 500.00 | | | 500.00 |
| 813 Appraisal Review Fee | 250.00 | | | 250.00 |
| 815 Escrow Holdback Fee | | | | |
| 816 Funding Fee | | | | |
| 818 Courier Fee | | | | |
| 825 Warehouse Fee | | | | |
| 827 Reverif Fee | | | | |
| 828 Flood Cert/Life of Loan Fee | 9.50 | | | 9.50 |
| 829 Tax Service Fee | 66.00 | | | 66.00 |
| 901 Interest for 2 days  @ $ 11.2 per day | 22.40 | | | |
| 1001 Hazard Insurance 4 month(s) @  $89.30 | 356.00 | | | 356.00 |
| 1003 City Property Tax 0 month(s) @  $0.00 | | | | |
| 1004 County Property Tax 7 month(s) @  $44.75 | 313.25 | | | 313.25 |
| 1005 School Tax 0 month(s) @  $0.00 | | | | |
| 1006 Flood Insurance 0 month(s) @  $0.00 | | | | |
| 1008 Agg. Acctg. Adjustment | -134.25 | | | -134.25 |
| 1301 Survey Fee | | | | |
| | | | | |
| **TOTALS** | 3,842.90 | 0.00 | 0.00 | 4,120.50 |

**PAID BY LENDER**
204  LENDER CREDIT TO BORROWER    $ 0.00
809  YIELD SPREAD TO BROKER (POC)  $ 0.00
1203 STATE TAX/STAMPS            $               **NET CHECK / DRAFT $** 52,157.10

**For all Dry-Funding States and Refinances in Wet-Funding States:**
**ALL DOCUMENTS MUST BE IN OUR OFFICE TWO (2) BUSINESS DAYS PRIOR TO DISBURSEMENT OF LOAN FUNDS**
C. POLICY OF THE TITLE INSURANCE REQUIREMENTS ARE SET FORTH ON PAGE 2 AND OUR LIEN MUST BE SUBJECT
ONLY TO EXCEPTION NUMBERS    B1)1-9 B2)1-7 _____ AS
SHOWN ON THE PRELIMINARY REPORT /COMMITMENT DATED  March 18, 2005

Initial _____

Page 1 of 4
AH: Q635-AHL.UFF                                              HALL00003

## LENDERS' INSTRUCTIONS

**INITIAL
CLOSING
INSTRUCTIONS**

DO NOT CLOSE THIS LOAN IF:

1. We have not received and approved Preliminary Commitment for Title Insurance.
2. You are past the expiration date of our legal papers.
3. We have not received and approved an Estimated Closing Statement.
4. You have not given signed copy of these instructions plus any amendments to the borrowers.
5. If there has been any change to the original sales contract which we have not approved in writing.
6. If we have not received and accepted/approved:
   a. Security instruments conformed and certified plus two copies.
   b. Note plus two certified copies.
   c. Any other items sent for execution and/or notary in the numbers sent. We will not accept witnessed acknowledgments on notarized items.
7. We have not received an acceptable hazard insurance binder.
8. All conditions of our loan commitment have not been met.
9. SIGNATURES Please insure that the Borrowers sign ALL loan documents <u>EXACTLY AS THEIR NAMES ARE TYPED ON THE DOCUMENTS, EVEN IF THIS IS NOT THEIR USUAL SIGNATURE.</u> Please pay special attention to middle initials and middle names, and Junior and Senior. You should review the signature on each document <u>CAREFULLY. IF THERE IS ANY QUESTION AS TO THE READABILITY OF THE SIGNATURE OF AN INDIVIDUAL, YOU SHOULD OBTAIN A NOTARIZED SIGNATURE AFFIDAVIT</u> and return it with the other documents.
10. TAX CERTIFICATION This form must be completed and signed by YOU and have the LEGAL DESCRIPTION ATTACHED OR ENTERED AT THE BOTTOM OF THE FORM. Please be <u>sure</u> that ALL information is complete and correct and that you show an amount of taxes next due, even an estimated amount.
11. REVIEW All documents MUST be in our office for review PRIOR to recording. We request that documents be received a MINIMUM of <u>ONE DAY PRIOR TO THE DAY YOU WISH TO RECORD.</u> Please include THREE (3) CERTIFIED COPIES EACH OF THE NOTE AND DEED OF TRUST and provide copies of all other executed documents for recording such as <u>Warranty Deed, Excise Affidavit, Quit Claim Deed, Buyer or Seller Power of Attorney, etc.</u> Please direct the title company to forward take-off copies of ALL pages of ALL recorded documents as soon as possible.
12. Sales price is other than $00.00

**TITLE
POLICY
REQUIREMENTS**

1. The title policy must insure the mortgage as a good and valid lien of the type shown on Page 1 in accordance with your Preliminary Commitment for Title Insurance. We must have the original and two copies of the policy.
2. THERE MUST BE NO OTHER LIENS AGAINST THE PROPERTY OTHER THAN THOSE SHOWN ON PAGE 1, unless approved by us in writing.
3. No past-due taxes or special assessments are to be shown as exceptions. The title policy must show current year's taxes "not yet due and payable," or current half paid.
4. In examining the title, if you find any violations of restrictions, easements, or encroachments, secure our approval prior to the closing.
5. Vestee name spelling(s) must be identical to mortgage/deed of trust.
6. Marital status must be shown.
7. We require two copies of conditions, covenants, and restrictions and of any recorded exceptions not covered by FHA/VA/FNMA/FHLMC General Waivers.
8. The mortgage transaction must include the proper execution and recording of all necessary instruments to assure the issuance of a Mortgagee Title Policy, without exceptions except as shown on Page 1.
9. This Policy must be in the loan amount or maximum principal balance to be reached if negative amortization is involved (not to exceed 125%) insuring Home Funds Direct and its successors and/or assigns, and subject only to the following: Restrictions and building lines of record provided that the policy contains an Endorsement covering any violation.
10. Any lien for financing subordinate to ours and approved by us must be listed on the title policy and the policy must expressly provide that such lien is subordinate to that of our mortgage lien.
11. Property address must be shown as a part of the policy or by endorsement in states where possible.
12. Plat or survey must show correct street name or road name in full; must show all reference points used in legal description.
13. Protection of insured must be provided in the case of any unlocated easements, rights of way, encroachments, etc.
14. Protection of improvements including landscaping, must be provided if water, oil, gas, or mineral reservations exist and allow the right of surface entry.
15. The following endorsements must be included in the Mortgagees policy: 100, 116, 8.1, 8.2 if ARM with no negative amortization, condominium or P.U.D., if applicable, and EPA.
16. Have title company forward owners policy to borrowers at property or mailing address.
17. Have Mortgagees policy delivered to lender's address on page 4 of these instructions within <u>three</u> days of closing.
18. Title Policy to read as follows:
    Home Funds Direct
    Its Successors and/or assigns
19. Lender does not accept limited coverage title policies for loans more than $50,000.00
20. Lender requires that the final title policy insure the lien shown on page 1 of the Closing Instructions independent of any other lien closed concurrently. A final title policy insuring a combination of multiple liens is unacceptable.

LENDERS' INSTRUCTIONS

 •635 (02081.01)    Page 2 of 4    0503172917

Initials _C.H._

# LENDERS' INSTRUCTIONS

**CLOSING PACKAGE REQUIREMENTS**

1. HUD 1 & Addendum showing both buyer and seller sides and including addresses of all parties to the escrow   3 certified copies.
2. Policy of title insurance - see Requirements.
3. Policy(s) of hazard insurance.
4. Copy of Conveyance Instrument(s) and Excise Affidavits.
5. Copy of your Closing Order to title company.
6. Copy of your Escrow Instructions - signed.

**HUD-1 REQUIREMENTS**

Comply with all provisions of RESPA, as amended, in preparing this form.
Must be typed.

**DOCUMENT REQUIREMENTS**

1. Be certain that all papers which were not dated when received are dated by the person(s) who are to sign them.
2. Be certain that if we send one or more copies of a document, that EACH is returned with original signature(s).
3. INTERIM INTEREST - It is REQUIRED that the HUD-1 be amended (if necessary) to show the correct date and amount, and it is also REQUIRED that all totals on the HUD-1 be amended to reflect the correct amount. DO NOT SIMPLY CROSS OUT THE AMOUNT AND WRITE A NEW ONE ABOVE IT!
4. DO NOT SHOW ANY CREDITS FROM SELLER TO BUYER WITHOUT CONSULTING OUR OFFICE.
5. Make NO changes on the papers without our permission. Call for instructions.
6. If we give permission to make changes on the papers, all changes MUST be initialed by ALL SIGNATORIES to the documents.
7. Do not use Power of Attorney unless prior approved by us.
8. If we allow the use of a Power of Attorney, the person using that authority must sign as, for example, "Jane Doe by John Doe, her attorney-in-fact."
9. If notice of Right to Rescind is enclosed, have it signed and dated, concurrently with the Note, by all borrowers.
10. We assume no liability as to the identity of any person executing or acknowledging any instruments or documents delivered to you in connection with this transaction.
11. ALL DOCUMENTS MUST BE SIGNED EXACTLY AS TYPED NAMES APPEAR.

**HAZARD INSURANCE**

A Hazard Insurance binder must be furnished at the time of closing in an amount not less than the loan amount, or replacement cost of the structure, whichever is less.   (Combined Loan Amount)

1. The policy must meet the following requirements:

   a. Original policy or facsimile signed by an authorized agent.
   b. Minimum one year term with coverage equal at least to full replacement cost of the improvements, or loan amount, whichever is less.   (Minimum remaining term of 6 months for Purchase or Refinance is acceptable.)
   c. Full, correct borrower(s) names.
   d. Full, correct property address.
   e. Premium amount must be indicated on the policy.
   f. Agent name and address.
   g. Our loan number MUST be indicated on the policy.
   h. Paid receipt for first year premium attached or shown on HUD-1 as paid in closing.
   i. Earthquake Insurance (if required) use same, identifying criteria as for Flood Insurance.
   j. Insurer must have rating in Best's Insurance Guide of at least Class VI.
   k. FLOOD INSURANCE (if required): Standard policy issued by member of National Flood Insurers Association for not less than our loan amount or the maximum amount available under National Flood Insurance program, whichever is less. The name(s) of the buyer(s), legal description, street address, city, state, county and zip code of security property on these policies must be identical to those of the loan instruments.
   l. On condominiums, we must have an individual endorsement meeting the criteria above.
   m. Loss Payable Clause to: Home Funds Direct
      A Division of Accredited Home Lenders, Inc.
      A California Corporation,
      It's successors and/or assigns
      P.O. Box 10436
      Van Nuys, CA 91410-0436

**CLOSER REQUIREMENTS**

For all Dry-Funding States and Refinances in Wet-Funding States:
ALL DOCUMENTS MUST BE IN OUR OFFICE TWO (2) BUSINESS DAYS PRIOR TO DISBURSEMENT OF LOAN FUNDS
LENDER REQUIRES CONFIRMATION OF DISBURSEMENT OF FUNDS WITHIN 48 HOURS OF FUNDING.
DO NOT MAKE ANY CHANGES TO LOAN DOCUMENTS WITHOUT PRIOR LENDER AUTHORIZATION.

ALL FEES SHOWN ON THE HUD - 1 MUST MATCH EXACTLY THE FEES LISTED IN OUR CLOSING INSTRUCTIONS i. e. : FEE ITEMS - HUD DESCRIPTION AND DOLLAR AMOUNTS.
ALL PAYOFF CHECKS MUST BE SENT DIRECTLY TO THE CREDITOR. DO NOT GIVE ANY CHECKS TO THE BORROWER.

LENDERS' INSTRUCTIONS



# LENDERS' INSTRUCTIONS

**BUYER COST**
**REQUIREMENTS**

1. DOWNPAYMENT IN CASH FROM BORROWER(S) <u>MUST</u> TOTAL AMOUNT SHOWN ON PAGE 1.
2. BORROWERS CANNOT PAY THE FOLLOWING:

**VA LOANS**

1. PHOTOS & INSPECTION FEE MORE THAN ALLOWED BY VA
2. MESSENGER SERVICE
3. RECORDING OF ANY DOCUMENTS OTHER THAN DEED/DEED OF TRUST AND ANY ATTACHMENTS THERETO
4. ESCROW FEES
5. MORE THAN 2 MONTHS INSURANCE INTO ESCROW ACCOUNT
6. TERMITE INSPECTION
7. TAX SERVICE FEE
8. SETTLEMENT OR CLOSING FEE

**FHA LOANS**

1. TAX SERVICE/REGISTRATION FEE
2. MESSENGER SERVICE UNLESS AUTHORIZED BY BORROWER IN WRITING
3. RECORDING OF ANY DOCUMENTS OTHER THAN DEED OF TRUST/DEED AND ANY ATTACHMENTS THERETO
4. MORE THAN 2 MONTHS INSURANCE INTO ESCROW ACCOUNT
5. INSPECTION FEES - NOT MORE THAN ALLOWED BY FHA
6. DOCUMENT PREPARATION

**DISBURSEMENT**

1. It shall be the responsibility of the Closing Agent to request proceeds from the lender at such time as the Closing Agent is prepared to comply with all the terms and conditions of the Purchase/Sale Agreement and /or our Escrow Instructions. **SUCH A REQUEST, BY THE CLOSING AGENT, FOR FUNDS SHALL BE DEEMED TO BE A CERTIFICATION (LENDER) THAT ALL TERMS AND CONDITIONS HAVE BEEN MET AND THAT THE DOCUMENTS WILL BE PROPERLY RECORDED NOT LATER THAN <u>THE NEXT BUSINESS DAY</u> AFTER THE DAY THE CLOSING AGENT HAS RECEIVED THE PROCEEDS CHECK.** In the event that the documents are not recorded within 24 hours, the Closing Agent will immediately return the funds to the sender in accordance with the sender's instructions.

2. **HUD SETTLEMENT DATE**

GOVERNMENT LOANS: The HUD-1 settlement date <u>MUST</u> be the date on which the lender disburses proceeds to the Closing Agent and NOT the date on which proceeds are disbursed to the seller. These two dates may be the same day.

CONVENTIONAL LOANS: The settlement date on the HUD-1 statement may reflect the date on which the closing Agent disburses the proceeds, which would usually be the day after the Agent received loan proceeds from the lender.

**ADDITIONAL**
**INSTRUCTIONS:**

1. Undertaking to close this loan and acceptance of the lender's funds for disbursement shall constitute an undertaking to close this loan and disburse such funds in accordance with these Closing Instructions, whether or not these instructions are executed or delivered by the Closing Agent. Closing Agent will be responsible for any losses incurred by lender as a result of Closing Agent's failure to comply fully with these Closing Instructions.

2. Lender reserves the right to cancel or amend the loan or these instructions at any time prior to closing.

3. Closing Agent represents, warrants, and covenants that it is not an affiliate of or otherwise controlled by any party to this transaction.

4. From the time Closing Agent receives closing funds until the loan documents are sent to the lender, Closing Agent shall hold all loan documents for the benefit of the sender of the closing funds.

**E-MAIL:**

Handling of E-Mail and Closing Documents. If Closing Agent is willing to receive Closing Documents via e-mail, Closing Agent's e-mail address is set forth below, and Closing Agent shall be responsible for ensuring that all Closing documents received via e-mail are properly printed and otherwise handled in accordance with the Closing Documents handling requirements set forth above.

Closing Agent's Email Address: klmc@hhsincorporated.com

---

THE UNDERSIGNED BORROWER(S)

1. DIRECT THAT THE LOAN PROCEEDS BE PAYABLE TO THE ORDER OF THE SETTLEMENT AGENT.
2. ACKNOWLEDGE 1ST PAYMENT DATE OF <u>05/01/2005</u>
3. ACKNOWLEDGE THAT THE LENDER MAY CANCEL OR AMEND THESE INSTRUCTIONS WITHOUT MY/OUR APPROVAL.
4. ACKNOWLEDGE <u>ESTIMATED</u> MONTHLY PAYMENTS OF:

| | | |
|---|---|---|
| PRINCIPAL & INTEREST | $ | 383.89 |
| TAXES (BONDS) | | 44.75 |
| INSURANCE | | 89.00 |
| MTGE. INS. PREMIUM | | |
| | | |
| TOTAL $ | | 517.64 |

_____    _____
DATE                        CHERYL HALL

_____
DATE

_____
DATE

_____
DATE

100176105031729174                HALL
VMP -635 (0208).01                Page 4 of 4
®

## PLEASE RETURN DOCS TO:

Home Funds Direct
1130 Northchase Parkway
Suite 200
Marietta, GA 30067-6420

Ken Harper
CLOSER/FUNDER NAME

(866) 539-7025
TELEPHONE NUMBER

THE UNDERSIGNED AGREES TO CLOSE THIS LOAN IN ACCORDANCE WITH ALL OF THE INSTRUCTIONS AND CONDITIONS CONTAINED IN THE CLOSING INSTRUCTIONS.

SWAFFORD & HAYES SETTLEMENT SERVICES
SETTLEMENT AGENT

BY: _____
SIGNATURE

SWAFFORD & HAYES SETTLEMENT SERVICES
TYPED NAME

(865) 934-0466
TELEPHONE NUMBER

_____
DATE

LENDERS' INSTRUCTIONS

Closing Instructions

HALL00006

# ADDENDUM TO LENDERS INSTRUCTIONS

BORROWER'S  **CHERYL HALL**

LOAN #  **0503172917**                                          ESCROW #  05-2813

**ATTENTION CLOSING AGENTS: BY DISBURSING THIS LOAN YOU ARE GUARANTEEING DELIVERY OF THE FINAL HUD-1 WITHIN 24 HOURS OF CLOSING TO Home Funds Direct. PLEASE REMEMBER TO INCLUDE THE ACTUAL "DISBURSEMENT DATE" ON THE HUD-1 AND FAX TO THE ASSIGNED FUNDER INDICATED ON THE LENDER'S INSTRUCTIONS.**

## ** WE MUST HAVE THESE ITEMS IN AND APPROVED BEFORE FUNDING **

1.  __X__  Home Funds Direct
     IN 1st      LIEN POSITION AT TIME OF FUNDS.

2.  __X__  INSURED CLOSING PROTECTION LETTER FROM TITLE AGENT OR COPY OF
     ERRORS AND OMISSION POLICY FROM CLOSING AGENT.

3.  _____  COPY OF SURVEY OF PROPERTY OR NON-IMPROVEMENT AFFIDAVIT.

4.  __X__  CERTIFIED COPY OF ESTIMATED AND/OR FINAL HUD-1.

5.  _____  CERTIFIED COPY OF ESCROW INSTRUCTIONS WITH CORRECT RATE, TERMS &
     LENDER SIGNED BY ALL PARTIES.

6.  __X__  COPY OF ALL BORROWER(S) PHOTO ID.

7.  __X__  COMPLETED CORRECT TYPED 1003 SIGNED BY BORROWER(S) AND INTERVIEWER.

8.  __X__  HAZARD INSURANCE POLICY & FLOOD INSURANCE POLICY (IF REQUIRED) WITH
     MINIMUM 6 MONTHS REMAINING & COVERAGE OF THE LESSER OF:
     A.  THE COMBINED LOAN AMOUNT(S) OR   **$56,000.00**        OR
     B.  GUARANTEED REPLACEMENT COST OR   **$0.00**        OR
     C.  TOTAL ESTIMATED NEW COST ON APPRAISAL.
     MORTGAGE / LOSS PAYEE CLAUSE:
     Home Funds Direct
     A Division of Accredited Home Lenders, Inc.
     A California Corporation,
     It's successors and/or assigns
     P.O. Box 10436
     Van Nuys, CA 91410-0436

9.  __X__  TITLE POLICY TO READ AS FOLLOWS:
     Home Funds Direct
     ITS SUCCESSORS AND/OR ASSIGNS

10.  _____  BORROWER IS IN A SECTION 32 - MUST SIGN SECTION 32 NOTICE AND GO
     THROUGH 2 DAY RESCISSION PRIOR TO SIGNING FINAL LOAN DOCUMENTS.

11.  _____  BORROWER TO PROVIDE ORIGINAL SECTION 32 NOTICE SIGNED AND DATED PRIOR
     TO SIGNING FINAL LOAN DOCUMENTS.

12.  __X__  ALL LOAN DOCUMENTS MUST BE EXECUTED AT ESCROW OR CLOSING AGENT
     OFFICE.

13.  __X__  LENDER DOES NOT ACCEPT LIMITED COVERAGE TITLE POLICIES FOR LOANS
     GREATER THAN $50,000.00.

14.  __X__  COPY OF WIRE INSTRUCTIONS TO BE SUBMITTED WITHIN 24 HOURS OF FUNDING.
     FAX NUMBER(866) 539-7026

15.  _____  LENDER TO COLLECT AND PAY LIFE INSURANCE PREMIUM AT CLOSE OF ESCROW.

16.  __X__  POWER OF ATTORNEY IS PROHIBITED WITHOUT PRIOR AUTHORIZATION FROM
     LENDER.

17.  __X__  PROVIDE THREE CERTIFIED COPIES OF THE MORTGAGE/DEED OF TRUST WITH ALL
     RIDERS & THE NOTE WITH ALL RIDERS.



DEFENDANT'S
EXHIBIT
_2_

## ADDENDUM TO LENDERS INSTRUCTIONS, Continued

18.  Hazard Insurance Policy - If not impounded, requires 6 mo. coverage from loan date for refinances and 12 mo. for purchases. Mortgagee Clause: Accredited Home Lenders, Inc., A California Corporation, ISAOA P.O. Box 10436 Van Nuys, CA 91410-0436

19.  Pay the following in full at closing (payoff must show on est/final HUD1):

        Payoff Amount: THE CR STR/PROVIDIAN,      $785.00
        Payoff Amount: PALISADES,     $694.00
        Payoff Amount: HOLLOWAY CREDIT,     $452.00
        Payoff Amount: SMALL LNS,     $399.00
        Payoff Amount: CRDT MGT,     $182.00
        Payoff Amount: FRIEDMANS JEWELERS,     $400.00
        Payoff Amount: ARMY AVIATION CENTER FCU,  $4,594.49
        Payoff Amount: ALABAMA APPRAISAL SERVICES,     $300.00
        Payoff Amount: State Farm Insurance,  $1,068.00

        Total Amount:  $8,874.49

20.  AHL to be insured in 1st lienhold position with clear title

21.  Corrected original 1003, pages 1-4, to be fully completed and signed by borrowers and broker.

22.  Certified copy of Final HUD1

23.  Funds to be wired to the title company only.

24.  Provide detailed cash-out letter from borrower.


### *** NO FURTHER CONDITIONS ON THIS LOAN

THE UNDERSIGNED BORROWER(S) AND CLOSING OFFICER ARE HEREBY AWARE AND UNDERSTAND THAT THIS LOAN IS APPROVED SUBJECT TO THE APPROVAL OF THE CONDITIONS LISTED ON THIS ADDENDUM PAGE.  THE CONDITIONS MUST BE REVIEWED AND APPROVED BY THE FUNDER AND/OR UNDERWRITER AT
Home Funds Direct,

THE BORROWER(S) ARE AWARE THAT IN THE EVENT ANY OF THE ABOVE CONDITIONS ARE NOT ACCEPTABLE BY
Home Funds Direct,

THIS LOAN APPROVAL MAY BE RESCINDED AT THE SOLE DISCRETION AND OPTION OF
Home Funds Direct,

| Borrower        Date | Borrower        Date |
| --- | --- |
| **CHERYL HALL** | |
| Borrower        Date | Borrower        Date |
| Borrower        Date | Borrower        Date |
| Borrower        Date | Borrower        Date |

Closing Officer        Date

MIN # 100178105031729174                    HALL                    Loan #     0503172917
AHL 610022-F.UFF                             Page 2

# NOTE

March 25, 2005                    DOTHAN                         AL
[Date]                            [City]                         [State]

105 TV ROAD
DOTHAN, AL 36301
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 56,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Home Funds Direct**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          7.299 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**          day of each month beginning on **May 1, 2005**          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **April 1, 2035**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at          **P.O. Box 502480 San Diego, CA  92150-2480**
                                          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 383.89          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MIN# 100176105031729174                                          0503172917
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-5N (0207).01          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials: C.H.

**DEFENDANT'S
EXHIBIT
3**

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 10           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be           5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. Reasonable attorneys' fees shall not exceed 15% of the unpaid debt after default and referral of this Note to an attorney who is not a salaried employee of the Note Holder.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)        _____(Seal)
CHERYL HALL                    -Borrower                                -Borrower

_____(Seal)        _____(Seal)
                               -Borrower                                -Borrower

_____(Seal)        _____(Seal)
                               -Borrower                                -Borrower

_____(Seal)        _____(Seal)
                               -Borrower                                -Borrower

*[Sign Original Only]*

MIN# 100176105031729174                                      0503172917

-5N (0207).01                 Page 3 of 3                     Form 3200 1/01

HALL00012

Return To:

Home Funds Direct
Attn: Post Closing Dept.
16550 West Bernardo Dr. Bldg 1
San Diego, CA 92127-1870

————————— —— [Space Above This Line For Recording Data]—— —— ————————

# MORTGAGE

MIN 100176105031729174

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **March 25, 2005**                    , together with all Riders to this document.
**(B) "Borrower"** is CHERYL HALL

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

100176105031729                    0503172917

**ALABAMA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**                    Form 3001 1/01

VMP -6A(AL) (0005).03
Page 1 of 15                    Initials
VMP MORTGAGE FORMS (800)521-7291

DEFENDANT'S
EXHIBIT
4

HALL00013

(D) "Lender" is **Home Funds Direct**

Lender is a **Corporation**
organized and existing under the laws of **the State of California**
Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
(E) "Note" means the promissory note signed by Borrower and dated **March 25, 2005**
The Note states that Borrower owes Lender **fifty-six thousand and 00/100**

Dollars
(U.S. $**56,000.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **April 1, 2035**.
(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "**Escrow Items**" means those items that are described in Section 3.
(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.
(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

100176105031729                                    0503172917

-6A(AL) (0005).03                    Page 2 of 15                    Form 3001 1/01

HALL00014

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
                    **County**                    of                    **HOUSTON**                    :
            [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
**See Legal Description Addendum Page Attached**

Parcel ID Number: **10-09-31-4-003-001.007**                    which currently has the address of
**105 TV ROAD**                                                        [Street]
**DOTHAN**                                        [City] , Alabama **36301**        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

                    100176105031729                                    0503172917
                                            Initials: [initials]

[logo] -6A(AL) (0005).03                    Page 3 of 18                            Form 3001 1/01

HALL00015

Hall-Frazier
Record - 000361

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

HALL00016

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

100176105031729                                    0503172917

Initials

-6A(AL) (0005).03                Page 6 of 15                              Form 3001 1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

100176105031729                                              0503172917

HALL00018

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

100176105031729

Initials: _____

0503172917

-6A(AL) (0005).03

Page 7 of 15

Form 3001 1/01

HALL00019

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

100176105031729                                           0503172917

Initials: _____

-6A(AL) (0005).03                    Page 8 of 16                    Form 3001 1/01

HALL00020

Hall-Frazier
Record - 000366

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

100176105031729                                                        0503172917

Initials:

-6A(AL) (0005).03                     Page 9 of 15                                Form 3001 1/01

HALL00021

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

100176105031729                                    0503172917

Initials: _____

-6A(AL) (0005).02          Page 10 of 15          Form 3001 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

100176105031729                        Initials: [signature]                        0503172917

-6A(AL) (0005).03                        Page 11 of 15                        Form 3001 1/01

Hall-Frazier
Record - 000369

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

100176105031729                                0503172917

Initials: _____

-6A(AL) (0005).03                Page 12 of 15                Form 3001 1/01

HALL00024

Hall-Frazier
Record - 000370

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in HOUSTON County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

25. **Attorneys' Fees.** Wherever this Security Instrument authorizes the Lender to collect reasonable attorneys' fees following default, such reasonable attorneys' fees shall not exceed fifteen percent (15%) of the unpaid debt after default and referral of the Security Instrument to an attorney who is not a salaried employee of Lender.

100176105031729                          0503172917

-6A(AL) (0005).03              Page 13 of 15       Initials: CAH        Form 3001 1/01

HALL00025

**Hall-Frazier**
**Record - 000371**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Deane L. Nelson_

_____ (Seal)
CHERYL HALL                              -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                              -Borrower

100176105031729                         0503172917

-6A(AL) (0005).03                Page 14 of 15         Form 3001 1/01

**Hall-Frazier**
**Record - 000372**

STATE OF ALABAMA,                                           County ss: *Houston*

On this _15_ day of *March*, *2005* , I,
*DIANE L. Hilson*
a Notary Public in and for said county and in said state, hereby certify that **CHERYL HALL**

whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged
before me that, being informed of the contents of the conveyance, he/she/they executed the same
voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this _25_ day of *March, 2005*

My Commission Expires:

My Commission
Expires 3-06-06

Notary Public

Diane L. Hilson
Alabama State
at Large

Prepared By:
Home Funds Direct
15090 Avenue of Science
San Diego, CA 92128

100176105031729                    Initials                    0503172917

-6A(AL) (0005).03            Page 15 of 15                        Form 3001 1/01

HALL00027

(Printed on Mar 25, 2005 @ 16:19)
A.

US Department of Housing and Urban Development

**SETTLEMENT STATEMENT**

OMB No. 2502-0265

**B. Type of Loan**

| 1. [ ] FHA   2. [ ] FmHA   3. [ ] Conv. Unins. | 6. File Number: | 7. Loan Number: | |
| 4. [ ] VA   5. [X] Conv. Ins. | 05-2813 | 0503172917 | 8. Mortgage Ins. Case #: |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER/BUYER:**
Cheryl Hall 105 TV Road Dothan, AL 36301

**E. NAME AND ADDRESS OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:**
Home Funds Direct 1130 Northchase Parkway, Suite 200 Marietta, GA 30067

**G. PROPERTY LOCATION (Brief Legal):**
105 TV Road Dothan, AL 36301

| H. SETTLEMENT AGENT: | PLACE OF SETTLEMENT: |
| Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Janet Shelley | 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |

| I. SETTLEMENT DATE: | DISBURSEMENT DATE: |
| 03/25/2005 | 03/30/2005 |

| J. SUMMARY OF BORROWER(S) TRANSACTION | | K. SUMMARY OF SELLER(S) TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER :** | | **400. GROSS AMOUNT DUE TO SELLER :** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 13,896.39 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | 13,896.39 | **420. Gross Amount Due Seller** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER :** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER :** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 56,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller in advance | | Adjustments for items unpaid by Seller in advance | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 56,000.00 | **520. Total Reduction Amount Due Seller** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER :** | | **600. CASH AT SETTLEMENT TO/FROM SELLER :** | |
| 301. Gross Amount due from borrower (line 120) | 13,896.39 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 56,000.00 | 602. Less reductions in amt. due seller (line 520) | |
| 303. Cash [ ]From [X]To Borrower | 42,103.61 | 603. Cash [X]To [ ]From Seller | 0.00 |

SUBSTITUTION FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I on line 401(or if 401 is asterisked, line 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER, you are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller(s):



DEFENDANT'S EXHIBIT 5

HALL00034

(Printed on Mar 25, 2005 @ 16:19)

US Department of Housing and Urban Development

OMB No. 2502-0265

**SETTLEMENT CHARGES**

L.

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| 701. Listing Realtor Commission | | |
| 702. Selling Realtor Commission | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  To: Home Funds Direct | 1,960.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee  To: Alabama Appraisal Service | 300.00 | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Processing Fee  To: Home Funds Direct | 500.00 | |
| 809. Underwriting fee  To: Home Funds Direct | 500.00 | |
| 810. Document Preparation Fee | | |
| 811. Zone Determination Fee  To: Home Funds Direct | 9.50 | |
| 812. Tax Service Fee  To: Home Funds Direct | 66.00 | |
| 813. Appraisal Review Fee  To: Home Funds Direct | 250.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from Odd Days  To: Home Funds Direct | 22.40 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Insurance Premium for  To: State Farm | 1,068.00 | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard Insurance  To: Home Funds Direct | 356.00 | |
| 1002. Mortgage Insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes  To: Home Funds Direct | 313.25 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment  To: Home Funds Direct | -134.25 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | 275.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc. | 250.00 | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance  To: Transnation Title Insurance Company | 200.00 | |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage $67,500.00  @  $200.00 | | |
| 1110. Owner's coverage @ 0.00 | | |
| 1111. Endorsements  To: Swafford and Hays Settlement Services, Inc. | 50.00 | |
| 1112. | | |
| 1113. Overnight Courier & Handling Fees | | |
| **1200. GOVT. RECORDING, TRANSFER, AND SERVICE FEES** | | |
| 1201. Recording Fees and Service Fees  To: Clerk of the Court | 120.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $84.00 To: Clerk of the Court | 84.00 | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest inspection | | |
| 1303. Payoff  To: Army Aviation Center F C U  good thru 4/24 | 4,594.49 | |
| 1304. | | |
| 1305. Payment  To: The CR STR/Providian | 785.00 | |
| 1306. Payment  To: Palisades | 694.00 | |
| 1307. Payment  To: Holloway Credit | 452.00 | |
| 1308. Payment  To: Small LNS | 399.00 | |
| 1309. Payment  To: Crdt MGT. | 182.00 | |
| 1310. Payment  To: Friedmans Jewelers | 400.00 | |
| 1311. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | 13,896.39 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWER(S):                                         SELLER(S):

Cheryl Hall

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

HALL00035

_Jane Carcello_      03/28/08

Swafford and Hays Settlement Services, Inc.    Date

NOTE: Taxes have been prorated based on taxes for the year. Any re-proration will be handled between the buyer and seller. All utility bills (water, sewer, electric, cable and maintenance fees) have been paid or will be paid upon receipt of final bills.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

HALL00036

# FINAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

## (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| Borrower Name(s):<br>CHERYL HALL | Lender:<br>Home Funds Direct<br>15090 Avenue of Science<br>San Diego, CA 92128 |
|---|---|
| | Date: 03/25/2005     Loan #: 0503172917 |
| | Loan Type: Conventional |
| Borrower Address:<br>105 TV ROAD<br>DOTHAN, AL 36301 | |

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.975 % | $85,772.51 | $ 52,417.10 | $ 138,189.61 |

### PAYMENT SCHEDULE

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | $383.89 | 05/01/2005 | | | |
| 1 | $373.10 | 04/01/2035 | | | |

**DEMAND FEATURE:**  X  This loan does not have a Demand Feature.  |  This loan has a Demand Feature as follows:

**VARIABLE RATE FEATURE:** | This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

**SECURITY:** You are giving a security interest in the property located at:
**105 TV ROAD
DOTHAN, AL 36301**

**ASSUMPTION:** Someone buying this property X cannot assume the remaining balance due under original mortgage terms | may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

**FILING / RECORDING FEES:** $170.00

**PROPERTY INSURANCE:** X | Property hazard insurance in the amount of the lesser of the loan amount or replacement cost with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any company acceptable to the lender.
Hazard insurance | is | X is not available through the lender at an estimated cost of N/A for N/A year term.

**LATE CHARGES:** If your payment is more than 10 days late, you will be charged a late charge of 5.000% of the overdue payment.

**PREPAYMENT:** If you pay off your loan early, you
| may | X | will not have to pay a penalty. .
| may | X | will not be entitled to a refund of part of the finance charge.
See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| _____ 3-25-05 | _____ |
|---|---|
| Borrower       Date<br>CHERYL HALL | Borrower       Date |
| _____ | _____ |
| Borrower       Date | Borrower       Date |
| _____ | _____ |
| Borrower       Date | Borrower       Date |
| _____ | _____ |
| Borrower       Date | Borrower       Date |

MIN # 100176105031729174

TRTHNLND.UFF

HALL
Page 1 of 1

Loan #   0503172917
Rev 12/04

DEFENDANT'S
EXHIBIT
6

HALL00037

# NOTICE OF RIGHT TO CANCEL

Loan No:   0503172917                                    Date: March 25, 2005
Borrower: CHERYL HALL


Property Address: 105 TV ROAD
                  DOTHAN, AL 36301

**YOUR RIGHT TO CANCEL:**
You are entering into transaction that will result in a mortgage, lien, or security
interest on/in your home.  You have a legal right under federal law to cancel this
transaction, without cost, within three business days from whichever of the following
events occurs last:

1.   the date of the transaction, which is          **March 25, 2005**          ; or
2.   the date you received your Truth-in-Lending disclosures; or
3.   the date you received this notice of your right to cancel.


If you cancel the transaction, the mortgage, lien, or security interest is also
cancelled.  Within 20 calendar days after we receive your notice, we must take the
steps necessary to reflect the fact that the mortgage, lien, or security interest
on/in your home has been cancelled, and we must return to you any money or property
you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things
mentioned above, but you must then offer to return the money or the property.  If it
is impractical or unfair for you to return the property, you must offer its reasonable
value.  You may offer to return the property at your home or at the location of the
property.  Money must be returned to the address below.  If we do not take possession
of the money or property within 20 calendar days of your offer, you may keep it
without further obligation.

HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing at:

Name of Creditor: **Home Funds Direct**
                  **1130 Northchase Parkway, Suite 200**
                  **Marietta, GA 30067-6420**


You may use any written statement that is signed and dated by you and states your
intention to cancel, or you may use this notice by dating and signing below.  Keep one
copy of this notice because it contains important information about your rights.

If you cancel by mail or by telegram, you must send the notice no later than midnight
of    **March 29, 2005**
                  (or midnight of the third business day following the latest of the
three events listed above.)  If you send or deliver your written notice to cancel some
other way, it must be delivered to the above address no later than that time.


I WISH TO CANCEL


_____        _____
Consumer's Signature           Date
CHERYL HALL

I THE UNDERSIGNED HEREBY ACKNOWLEDGE, THAT, ON THE DATE SET FORTH BELOW, I RECEIVED TWO
(2) COPIES (IN ADDITION TO THIS COPY) OF THIS NOTICE OF RIGHT TO CANCEL, ADVISING ME OF
MY RIGHT TO CANCEL THE TRANSACTION TO WHICH THIS NOTICE RELATES AND ONE COPY OF THE
FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT.

Each borrower/owner in this transaction has the right to cancel.  The exercise of this
right by one borrower/owner shall be effective to all borrowers/owners.


_____        3-25-05
Consumer's Signature           Date
CHERYL HALL

610005.uff

DEFENDANT'S
EXHIBIT

7

HALL00040

**Hall-Frazier**
**Record - 000378**

Date:        March 25 , 2005              02:56PM
Stage:       60 - 60 - docs drawn stage
Borrower:    CHERYL HALL

Loan Number:   0503172917                                    FINAL

## HIGH COST LOAN SUMMARY

State Test Failed:              No
State:                          AL


Lien Position:                  1st
Purpose:                        REFI, CASH-OUT
Occupancy:                      Owner Occupied
Property Type:                  SFR - Detached
# of Units:                     1
Doc Type:                       Full
Interest Rate:                  7.299
Loan Term / Balloon Term:       360/360
Loan Amount:                    56,000.00
Prepayment Penalty:             No


APR:                            7.975
T-Bill Rate:                    4.550%
Max Rate:                       0.000%
Reduce APR: By:                 0.000%

Amount Financed:                $52,417.10
State Pts/Fees:                 $0.00
Max Fees:                       $0.00
Reduce Fees By:                 $0.00


MIN #  100176105031729174            HALL              Loan #    0503172917
HICTLNSM.UFF                    Page 1 of 1



**Hall-Frazier**
**Record - 000379**

Date Printed: Wednesday, March 15, 2006  12:29:44 PM

## Disbursement Sheet

| Order #: 05-2813 | Settlement Date: March 25, 2005 | Disbursement Date: 03/30/2005 |
|---|---|---|

| Buyer: | Cheryl Hall | Money Out: | $52,157.10 |
|---|---|---|---|
| Seller: | | Money In: | $52,157.10 |
| Property: | 105 TV Road Dothan, AL 36301 | Difference: | $0.00 |
| Lender: | Home Funds Direct | | |
| Loan #: | 0503172917 | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00025172 | 3/30/2005 3:34:01 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $275.00 |
| | | | 1103 | Title examination | | $250.00 |
| | | | 1111 | Endorsements | | $50.00 |
| | | | 1108 | Title Insurance | | $140.00 |
| | | | | | Total: | $715.00 |
| 00025173 | 3/30/2005 3:34:01 PM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $200.00 |
| | | | | | Total: | $200.00 |
| 00025174 | 3/30/2005 3:34:01 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $60.00 |
| | | | | | Total: | $60.00 |
| 00025440 | 3/31/2005 11:40:50 AM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: and Service fees: | | $64.00 |
| | | | | | Total: | $64.00 |
| wire # 5312332 | 3/30/2005 4:22:14 PM | Cheryl Hall | 303 | Cash [ ]From [X]To  Borrower | | $42,103.61 |
| | | | | | Total: | $42,103.61 |
| 00025176 | 3/30/2005 3:34:01 PM | Alabama Appraisal Service | 803 | Appraisal Fee | | $300.00 |
| | | | | | Total: | $300.00 |
| 00025177 | 3/30/2005 3:34:01 PM | Army Aviation Center F C U  good thru 4/24 | 1303 | Payoff | | $4,594.49 |
| | | | | | Total: | $4,594.49 |
| 00025178 | 3/30/2005 3:34:01 PM | The CR STR/Providian | 1305 | Payment | | $785.00 |
| | | | | | Total: | $785.00 |
| 00025179 | 3/30/2005 3:34:01 PM | Palisades | 1306 | Payment | | $694.00 |
| | | | | | Total: | $694.00 |
| 00025180 | 3/30/2005 3:34:01 PM | Holloway Credit | 1307 | Payment | | $452.00 |
| | | | | | Total: | $452.00 |
| 00025181 | 3/30/2005 3:34:01 PM | Small LNS | 1308 | Payment | | $399.00 |
| | | | | | Total: | $399.00 |
| 00025182 | 3/30/2005 3:34:01 PM | Crdt MGT. | 1309 | Payment | | $182.00 |
| | | | | | Total: | $182.00 |
| 00025183 | 3/30/2005 3:34:01 PM | Friedmans Jewelers | 1310 | Payment | | $400.00 |
| | | | | | Total: | $400.00 |
| 00025184 | 3/30/2005 3:34:01 PM | State Farm | 903 | Hazard Insurance Premium for | | $1,068.00 |
| | | | | | Total: | $1,068.00 |
| 00025441 | 3/31/2005 11:40:50 AM | HOUSTON COUNTY JUDGE OF PROBATE | 1203 | State tax/stamps:   Deed $0.00 Mortgage $84.00 | | $84.00 |
| | | | | | Total: | $84.00 |
| 00025442 | 3/31/2005 11:40:50 AM | HOUSTON COUNTY JUDGE OF PROBATE | 1201 | Recording fees: and Service fees: | | $56.00 |
| | | | | | Total: | $56.00 |

### Money In

| Ref# | Date | Name | Hud | Detail | Amount |
|---|---|---|---|---|---|
| 05-2813/Lender/1 | 03/30/2005 | Home Funds Direct | | | |
| | | | 202 | Principal amount of new loan(s) | $56,000.00 |
| | | | 801 | Loan Origination Fee | ($1,960.00) |
| | | | 808 | Processing Fee | ($500.00) |
| | | | 809 | Underwriting fee | ($500.00) |
| | | | 813 | Appraisal Review Fee | ($250.00) |
| | | | 811 | Zone Determination Fee | ($9.50) |
| | | | 812 | Tax Service Fee | ($66.00) |
| | | | 1004 | County property taxes | ($22.25) |

DEFENDANT'S EXHIBIT 9

HALL00079

Hall-Frazier
Record - 000380

| | | |
|---|---|---|
| 1001 | Hazard insurance | ($356.00) |
| 1008 | Aggregate Accounting Adjustment | $134.25 |
| 901 | Interest from Odd Days | ($22.40) |
| | Total: | $52,157.10 |

HALL00080

0001

1      IN THE U.S. DISTRICT COURT

2     FOR THE SOUTHERN DISTRICT OF ALABAMA

3        SOUTHERN DIVISION

4

5  JONATHAN AND SHARRON EDWARDS,
   individually and on behalf of
6  all similarly situated
7  individuals,
8
9       Plaintiffs,
10

11   vs.             Case No.: 1:07-CV-00160-KD-C

12

13  ACCREDITED HOME LENDERS,
   INC., LENDER'S FIRST CHOICE
14  AGENCY, INC.; LENDER'S FIRST
   CHOICE AGENCY OF ALABAMA,
15  INC.,
16

17      Defendants.

18  ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

19

20     VIDEOTAPED DEPOSITION OF
       ALMA LUZ DIAZ
21

        May 6, 2008
22        9:10 a.m.
23    600 West Broadway, Suite 2600
      San Diego, California
24
25   Reported by Elana Zucconi - CSR, RPR, CRR

0002

1          APPEARANCES OF COUNSEL

2

3   FOR PLAINTIFFS:

4          LAW OFFICES OF EARL P. UNDERWOOD, JR.
5          EARL P. UNDERWOOD, JR., ESQ.  (Telephonically)
6          21 South Section Street
7          Fairhope, Alabama  36533
8          (251) 990-5558  FAX (251) 990-0626
9          Email:  Epunderwood@alalaw.com

10

11   FOR ACCREDITED HOME LENDERS, INC.:

12          BUCKLEY KOLAR
13          KIRK D. JENSEN, ESQ.
14          MATTHEW P. PREVIN, ESQ.
15          1250 24th Street, NW
16          Suite 700
              Washington, DC  20037
17          (202) 349-8048  FAX (202) 349-8080
              Email:  Kjensen@buckleykolar.com
18          Email:  Mprevin@buckleykolar.com
19

20   FOR ACCREDITED HOME LENDERS, INC.:

21          BRADLEY, ARANT, ROSE & WHITE
              J. DOUGLAS MINOR, JR., ESQ.
22          188 East Capitol Street
              Suite 450
23          Jackson, Mississippi  39215
              (601) 948-8000  FAX (601) 948-3000
24          Email:  Dminor@bradleyarant.com
25

0003

1        APPEARANCES OF COUNSEL (CONTINUED)

2

3    FOR LENDER'S FIRST CHOICE AGENCY, INC. AND

4    LENDER'S FIRST CHOICE AGENCY OF ALABAMA, INC.:

5        JENNIFER BLAIR HOOVER BALCH & BRINGHAM

6        KELLY BRENNAN, ESQ.  (Telephonically)

7        1710 Sixth Avenue North

8        Birmingham, Alabama  35201

9        (202) 251-8100

10

11

12    VIDEO OPERATOR:  DANA BACHMANN

13

14

15

16

17

18

19

20

21

22

23

24

25

0004

1                    I N D E X

2

3   WITNESS:  ALMA LUZ DIAZ

4

5   EXAMINATION                        PAGE

6   BY MR. UNDERWOOD                        7

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

0005

1                    INDEX OF EXHIBITS

2  EXHIBITS                          MARKED

3

4     1    Re-Notice of Taking Rule 30(b)(6)       6

5          Video Deposition

6     2    Amended Class Action Complaint         6

7     3    Defendant, Accredited Home Lenders,    6

8          Inc.'s Answer to Amended Class Action

9          Complaint

10    4    Defendant, Accredited Home Lenders,    6

11         Inc.'s Responses to Plaintiffs' First

12         Set of Interrogatories and Request for

13         Production of Documents

14    5    Defendant Accredited HomeLenders,      6

15         Inc.'s Initial Disclosures

16    6    Loan documents                     6

17    7    Second Amended Class Action Complaint   6

18    8    Defendant Accredited Home Lenders,     6

19         Inc.'s Responses to Plaintiffs' Second

20         Set of Interrogatories and Request for

21         Production of Documents

22    9    Settlement Statement               6

23

24

25

0006

1        SAN DIEGO, CALIFORNIA; May 6, 2008; 9:10 A.M.

2

3        (Exhibits 1 through 9 marked)

4

5        VIDEO OPERATOR:  Good morning.  My name is Dana

6  Bachmann, with Paulson Litigation and Reporting

7  Services, located at 555 West Beech Street, Suite 111,

8  San Diego, California 92101.  This is the deposition of

9  Alma L. Diaz, in the matter of Jonathan and Sharron

10  Edwards versus Accredited Home Lenders, Incorporated, et

11  al., case No. 07160.  This deposition is taking place at

12  600 West Broadway, Suite 2600, San Diego, California

13  92101.  This deposition is being videotaped and

14  audiotaped at all times, unless specified to go off the

15  record.  We are now commencing at 9:10 a.m., on May 6th,

16  2008.

17        Would all present please identify themselves,

18  beginning with the witness.

19        THE WITNESS:  Alma L. Diaz.

20        VIDEO OPERATOR:  Counsel.

21        MR. JENSEN:  Kirk Jensen, with Buckley Kolar,

22  representing defendant Accredited Home Lenders.

23        MR. PREVIN:  Matthew Previn, also from Buckley

24  Kolar, on behalf of Accredited.

25        MR. MINOR:  Doug Minor, with Bradley, Arant,

0007

1   Rose & White, on behalf of Accredited.

2       VIDEO OPERATOR:  Counsel telephonically.

3       MR. UNDERWOOD:  Earl Underwood, on behalf of

4   the plaintiffs, Jonathan and Sharron Edwards.

5       MS. BRENNAN:  And Kelly Brennan, on behalf of

6   Lender's First Choice.

7       VIDEO OPERATOR:  Thank you.  Madame Court

8   Reporter, would you please swear in the witness.

9

10              ALMA LUZ DIAZ,

11   having been first duly sworn, testified as follows:

12

13              EXAMINATION

14  BY MR. UNDERWOOD:

15   Q.  All right.  If you would, please, ma'am, just

16  state your name for the record.  Hello?

17   A.  Alma Luz Diaz.

18   Q.  Okay.  Can you hear me okay?

19   A.  Yes, I can.

20   Q.  Let me know if you can't.

21       Have you given a deposition before?

22   A.  No, I haven't.

23   Q.  All right.  Well, I am going to be asking some

24  questions, and of course I got the Southern draw and the

25  Southern accent in the mike that you may not be

0008

1    accustomed to, and I have been doing this for 20 years,

2    but sometimes I am not very good at asking a question.

3    I may ask you a question that doesn't make sense or you

4    may just not understand my question.  And if I do that,

5    if you would just ask me to repeat or restate the

6    question, and I will be happy to do that.  Now, on the

7    other hand, if you don't do that, I'm going to assume

8    that you understood the question and that you are

9    answering truthfully.  Is that fair?

10    A.  Yes.

11    Q.  Okay.  All right.  Now, do you understand that

12   you are appearing this morning as the corporate

13   representative of Accredited Home Lenders, Inc.?

14    A.  Yes, I do.

15    Q.  All right.  And -- all right.  Well, I am going

16   to start off by asking you just a few questions about

17   your job with Accredited and about your employment

18   history, and if you would just give us your full name

19   and home address again.

20    A.  Okay.  My full name is Alma Luz Diaz.  My home

21   address?

22    Q.  Yes, ma'am.

23    A.  Is 7500 Glencliff Drive, Downey, California

24   90240.

25    Q.  All right.  And Ms. Diaz, how long have you

0009

1    been employed by Accredited Home Lenders?

2    A.  Next month will be seven years.

3    Q.  All right.  And before going to work for

4  Accredited, what did you do?

5    A.  I worked for a credit union, as a teller.

6    Q.  All right.  What credit union was that, please,

7  ma'am?

8    A.  MWD.

9    Q.  NWD?

10    A.  MWD.

11    Q.  And where was that located?

12    A.  Downtown Los Angeles.

13    Q.  All right.  And how long did you work there?

14    A.  Four years.

15    Q.  And where did you work before MWD?

16    A.  I worked for a company called MoneyGram.  Um, I

17  worked there for two years.  It was in the City of

18  Huntington Park, and I was a cashier as well.

19    Q.  Four years?

20    A.  Two years there.

21    Q.  Two years.  Okay.

22    A.  Um-hum.

23    Q.  All right.  And before that?

24    A.  I think that's it.

25    Q.  All right.  And tell me about your schooling.

0010

1     A.   Okay.

2     Q.   Where did you go to high school?

3     A.   I went to Francisco Bravo Medical Magnet

4   School, in downtown Los Angeles.

5     Q.   All right.  And did you finish there?

6     A.   Yes.

7     Q.   When was that, please, ma'am?

8     A.   Um, 2004.

9     Q.   All right.

10     A.   I'm sorry, I mean, 1994.

11     Q.   1994.  Okay.

12     A.   Yeah.

13     Q.   All right.  And what did you do after finishing

14   school there in Los Angeles?

15     A.   I went for three years to UCLA.

16     Q.   And what did you study there?

17     A.   Just undergraduate work.  I didn't complete the

18   course.

19     Q.   And was your last year there 1987?

20     A.   Yes.

21     Q.   And what did you do in 1987?

22     A.   I worked.

23     Q.   All right.  And is that when you went to work

24   at --

25     A.   I worked at the school, actually.

0011

1    Q.  Okay.

2    A.  And probably a couple of months in a theater,

3  before I went to MoneyGram.

4    Q.  Okay.  What did you do at the school?

5    A.  I worked at the dorms, for the -- the

6  cafeteria.

7    Q.  Okay.  All right.  And tell me -- I know you

8  told me you were a cashier at MoneyGram, tell me, what

9  does MoneyGram do, and describe your duties at

10  MoneyGram?

11    A.  It is a check cashing place and we just -- we

12  received -- people will come in and cash their checks

13  there.

14    Q.  All right.  And was it your job to cash the

15  checks for them and you take the checks in and give them

16  the cash, is that what -- just describe what you did at

17  MoneyGram.

18    A.  Okay.  Um, we would -- when a person first

19  started there -- I mean, the first time a customer would

20  come in, we would verify their employment.  We will call

21  their employer and make sure that they worked there.  We

22  looked at the check to make sure that it looked valid.

23  We called the bank to verify funds.  Once everything was

24  verified, we will go ahead and cash the check and give

25  the money to the borrower -- I mean, to the -- to the

0012

1    customer.

2    Q.  Okay.  All right.  And what was the reason for

3    leaving MoneyGram?

4    A.  I had a better opportunity with MWD.  I wanted

5    to move up.

6    Q.  Okay.  And tell me what you did at -- is that

7    MWD?

8    A.  Yes, Metropolitan Water District for short.

9    Q.  Okay.  Tell me what you did when you first

10   started at MWD.

11   A.  I was a teller.

12   Q.  And if you would just describe that -- that

13   position for me, what your duties were.

14   A.  Well, same thing.  We would -- our customers

15   would come in and cash their checks as well, and make

16   deposits.  Make deposits and withdraws.  They would --

17   just did banking stuff.

18   Q.  All right.  And was that -- did you hold the

19   same position the whole time you were there?

20   A.  Yes.

21   Q.  And what was the reason for leaving MWD?

22   A.  I was given the opportunity to go to the

23   mortgage industry, which was --

24   Q.  All right.  And is that when you went to work

25   for Accredited --

0013

1    A.  Yes.

2    Q.  -- or did you go to work for someone else?

3        And what Accredited office did you work at?

4    A.  I worked in the Anaheim office.  It was a

5   retail processing center.

6    Q.  And what was your job title when you went to

7   work for Accredited?

8    A.  Senior loan specialist.

9    Q.  All right.  That was your entry -- your entry

10  job title?

11   A.  Yes.

12   Q.  All right.  And tell me what you did as a

13  senior loan specialist when you first started working

14  for Accredited.

15   A.  Our duties there were to take a file from the

16  underwriting team -- um, the loan was approved by then

17  and it had conditions.  I would then coordinate with the

18  branch processor to get these conditions and satisfy

19  them.  Once everything was satisfied, it was moved on to

20  a doc and funding department.

21   Q.  And how long did you have that position?

22   A.  For 2-1/2 years.

23   Q.  2-1/2?

24   A.  Yes.

25   Q.  And what was your next position at Accredited?

0014

1    A.   As an ops manager, I was in charge of the

2    senior loan specialists, and that was in the middle of

3    2003.

4    Q.   All right.  Were you still at the Anaheim

5    office?

6    A.   Yes.

7    Q.   And describe your -- if you would, your duties

8    as office manager in 2003.

9    A.   I was just in charge of the senior loan

10    specialist, to make sure that they were completing the

11    work correctly.  If they had any questions, they would

12    come to me.  I was a branch manager, so if processors

13    had any concerns or questions, they would call me as

14    well.  I was just basic support for everybody, both

15    my --

16    Q.   Okay.  Back in 2003, how many people did you

17    supervise?

18    A.   It was about four or five.

19    Q.   And did you continue to review loan files

20    yourself?

21    A.   When needed to, yes.

22    Q.   All right.  And how long did you have that

23    position as office manager, like you described for me?

24    A.   That was until February of 2004.  So it was

25    about six, seven months.

0015

1   Q.   What did -- did you get a new position in

2   February of 2004?

3   A.   Yes, I became --

4   Q.   What was that, please?

5   A.   I became the doc funding manager.

6   Q.   Okay.  Would you say that again for me though,

7   you became what?

8   A.   Doc funding manager.

9   Q.   Doc funding manager?

10   A.   Yes.

11   Q.   And what did you do as the doc funding manager?

12   A.   I had about five people underneath me who drew

13   docs, closing documents, and did the post-closing once

14   the documents were executed, and we funded the loans.

15   And I supervised them, and if they had any questions,

16   they would come to me.  And any problems, people would

17   come to me as well.

18   Q.   Okay.  Now, let me ask you to say that one more

19   time.  You said you had five people under you, working

20   under you, who did what?

21   A.   Who draw docs, documents, closing documents.

22   Q.   Who drew them?

23   A.   Yes.

24   Q.   What do you mean by that?

25   A.   Um, well, um, after a loan has been given to

0016

1  our department from the underwriting team, the documents

2  for the closing, the loan documents, were prepared by my

3  group, and they were sent to title companies.

4      Q.  Okay.  Now, when you say "title companies," do

5  you mean the companies that would close the loans,

6  something like Lender's First Choice, for example?

7      A.  Correct.

8      Q.  Okay.  And how long did you have that job as

9  doc funding manager?

10     A.  To the present.

11     Q.  Is that presently your job title with

12  Accredited?

13     A.  Yes.

14     Q.  And are you still in the Anaheim office?

15     A.  I am currently in the Orange office.  It's just

16  five minutes away.

17     Q.  And how long have you been at the Orange

18  office?

19     A.  Since August of 2007.

20     Q.  All right.  Now, let me ask you this -- well,

21  let's see, before I get into that, did you have any

22  training with regard to lending laws or regulations when

23  you worked for MoneyGram?

24     A.  No.

25     Q.  All right.  Did --

0017

1    A.   Well, we had just training on -- on basic money

2    transactions.

3    Q.   Okay.

4    A.   As --

5    Q.   Would you describe that for me, what you mean

6    by that, describe that for me.

7    A.   Well, just recognizing checks and recognizing a

8    fraudulent check.  Just basic training --

9    Q.   Okay.

10    A.   -- dealing with the cash.

11    Q.   Okay.  And if you would, describe the training

12    that you had for me when you went to work for the Water

13    District Credit Union.

14    A.   There I just had someone sit with me and teach

15    me their -- my job duties.  It was basically the same

16    kind of training as verifying checks and verifying

17    people's information.

18    Q.   All right.  Now, what about when you went to

19    work for Accredited as a senior loan specialist, what

20    sort of training did you have at that point?

21    A.   I also had someone sit with me for a month or

22    so, giving me training of -- looking at credit reports

23    and title reports and just a whole complete loan file,

24    at pay stubs, I mean, everything -- the pay stubs, I had

25    previous training in the MoneyGram and MWD, so it was

0018

1  similar.

2     Q.  All right.  Did you have any additional

3  training, when you went to work in 2003, as an office

4  manager?

5     A.  No.

6     Q.  What about in 2004, when you became the

7  document funding manager?

8       Am I saying that right?

9     A.  Yes, you are.

10    Q.  Okay.

11    A.  Um, well, um, throughout the years of credit

12  and doc and funding, you just look more closely into

13  title reports and -- and just state guidelines, um,

14  which are available to all of us in the company.  And I

15  did have training on how they -- they process and input

16  information to the system.  And I had close contact with

17  the company's legal department.

18    Q.  And if you would, describe for me what you had

19  with regard to guidelines.

20    A.  Well, we have underwriting guidelines.  We had,

21  um, state guidelines that was provided by the legal

22  department.  Um, it just tells us -- just state specific

23  guidelines, where either -- I don't know.  Each state is

24  different, and we work with all 50 states, so I don't

25  know what you really want me to specify on.

0019

1    Q.   Okay.  Well, are these printed manuals or are

2  they something that you would look at a computer to

3  consult, or what was the form of these -- the format of

4  these guidelines?

5    A.   We do have a printout, but they are available

6  in our company intranet, we can just view, to be

7  paperless.

8    Q.   Did you bring any documents with you today?

9    A.   No.

10    Q.   If you would, can you tell me the title of the

11  guidelines that you had?  You told me that you had

12  something for underwriting guidelines.  What's the title

13  of that file or manual?

14    A.   Those were just called underwriting guidelines,

15  and they are updated monthly.

16    Q.   Okay.

17    A.   As time changes, there are changes in the

18  underwriting guidelines.

19    Q.   And what about the guide to the states that you

20  described for me?

21    A.   Um, that changes monthly as well, if there are

22  any changes in the state laws, so it updates monthly as

23  well.  And it is called state summary guidelines.

24    Q.   And could you tell me what you would use

25  underwriting guidelines for?