● HOMEOWNERS LOAN CORP ●
## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [X] the income or assets of a person other than the "Borrower" (including Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA [X] Conventional [ ] Other: [ ] FHA [ ] FmHA | | Agency Case Number | Lender Case Number 1006588B |
|---|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: | |
|---|---|---|---|---|
| 152875 | 8.125 % | 360 | [ ] Fixed Rate [ ] GPM [X] ARM (type) 2/28 | [ ] Other (explain): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & zip code) | No. of Units |
|---|---|
| 155 BAYVIEW DRIVE, DAPHNE, BALDWIN AL 36526 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE PRELIMINARY TITLE REPORT | |

| Purpose of Loan | [ ] Purchase [ ] Construction [ ] Other (explain): [X] Refinance [ ] Construction-Permanent | Property will be: [X] Primary Residence [ ] Secondary Residence [ ] Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made |
|---|---|---|---|---|
| 1994 | 127000 | 96000 | 12 Debt Consolidation | Cost: $ |

| Title will be held in what Name(s) | Manner in which Title will be held Joint Tenancy | Estate will be held in: [X] Fee Simple [ ] Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| |

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower | |
|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) MART     GIBBS | | Co-Borrower's Name (include Jr. or Sr. if applicable) | |

| Social Security Number 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 | Home Phone (incl. area code) 251-621-0446 | Age 53 | Yrs. School | Social Security Number | Home Phone (incl. area code) | Age | Yrs. School |
|---|---|---|---|---|---|---|---|

| [X] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Co-Borrower) No. 1   Ages 15 | [ ] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Borrower) No.   Ages |
|---|---|---|---|

| Present Address (street, city, state, zip code) [X] Own [ ] Rent No. Yrs. 9 | Present Address (street, city, state, zip code) [ ] Own [ ] Rent No. Yrs. |
|---|---|
| 155 BAYVIEW DRIVE DAPHNE, AL 36526 | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, zip code) [ ] Own [ ] Rent No. Yrs. | Former Address (street, city, state, zip code) [ ] Own [ ] Rent No. Yrs. |
|---|---|

| Former Address (street, city, state, zip code) [ ] Own [ ] Rent No. Yrs. | Former Address (street, city, state, zip code) [ ] Own [ ] Rent No. Yrs. |
|---|---|

### IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer [X] Self Employed Yrs. on this job 6 | CLEANING SERVICE 155 BAYVIEW DR DAPHNE, AL 36526 | Years employed in this line of work/profession | Name & Address of Employer [ ] Self Employed Yrs. on this job | Years employed in this line of work/profession |

| Position/Title/Type of Business OWNER | Business Phone (incl. area code) 251-621-0446 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer [ ] Self Employed | Dates (from – to) | Monthly Income $ | Name & Address of Employer [ ] Self Employed | Dates (from – to) | Monthly Income $ |
|---|---|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer [ ] Self Employed | Dates (from – to) | Monthly Income $ | Name & Address of Employer [ ] Self Employed | Dates (from – to) | Monthly Income $ |
|---|---|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Freddie Mac 65/Rev. 10/92
Printed by The Loan Handler from Contour Software, Inc. (408) 370-1700

Page 1 of 3

INITIALS: M.B.B.

Fannie Mae Form 1003/Rev. 10/92

MG 0064

**Hall-Frazier**
**Record - 001101**

## HOMEOWNERS LOAN CORP

### V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income * | $ 4350.00 | $ | $ 4350.00 | Rent | | |
| Overtime | | | | First Mortgage (P & I) | 656.00 | 1135.10 |
| Bonuses | | | | Other Financing (P & I) | | |
| Commissions | | | | Hazard Insurance | 93.82 | 93.82 |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 4350.00 | $ | $ 4350.00 | Total | 749.82 | 1228.92 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income  Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) doesn't choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

### VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, the Statement and supporting schedules must be completed about that spouse also.

Completed [X] Jointly [ ] Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Pymt. & Mos. Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| Cash deposit toward purchase held by: | | | | |
| | | Name and address of Company | $ Pymt./Mos. | $ |
| List checking and savings accounts below | | MBNA AMERICA | | |
| Name and address of Bank, S & L, or Credit Union | | | *380 / 53 | *20210 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Pymt./Mos. | $ |
| Name and address of Bank, S & L, or Credit Union | | FIRST USA | *170 / 50 | *8508 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Pymt./Mos. | $ |
| Name and address of Bank, S & L, or Credit Union | | SEARS | *170 / 53 | *9009 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Pymt./Mos. | $ |
| Name and address of Bank, S & L, or Credit Union | | MBNA | *183 / 49 | *8950 |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Pymt./Mos. | $ |
| Stocks & Bonds (Company name/number & description) | | CITI | 334 / 40 | 13374 |
| | | Acct. no. | | |
| Life insurance net cash value  Face amount $ | $ | Name and address of Company | $ Pymt./Mos. | $ |
| | | AMSOUTH | 226 / 22 | 5071 |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 180000 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company  CHASE MANHATAN | $ Pymt./Mos.  656 | $  *R.E. Loan  98460 |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 2119 | |
| Total Assets a. | $ 180000 | Net Worth (a minus b) $ 16418 | Total Liabilities b. | $ 163582 |

MARY        GIBBS

MG 0065

## HOMEOWNERS LOAN CORP

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if currently held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| SEE SCHEDULE OF R.E. | | $ 180000 | 98460 | | 656 | | |
| | | $ | | | | | |
| Totals | | $ 180000 | 98460 | $ | 656 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

Alternate Name    Creditor Name    Account Number

| | $ | | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|---|
| a. Purchase price | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | | | Yes | No | Yes | No |
| b. Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | | | | X | | X |
| c. Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | | | | X | | X |
| d. Refinance (incl. debts to be paid off) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | | | X | | X |
| e. Estimated prepaid items | | d. Are you a party to a lawsuit? | | | | X | | X |
| f. Estimated closing costs | 152693.00 | e. Have you directly or indirectly been obligated on any loan... | | | | X | | X |
| g. PMI, MIP, Funding Fee paid in cash | | | | | | | | |
| h. Discount (if Borrower will pay) | | f. Are you presently delinquent or in default on any Federal debt... | | | | X | | X |
| i. Total costs (add items a through h) | 152693.00 | | | | | | | |
| j. Subordinate financing | | g. Are you obligated to pay alimony, child support, or separate maintenance? | | | | X | | X |
| k. Borrower's closing costs paid by Seller | | h. Is any part of the down payment borrowed? | | | | X | | X |
| l. Other Credits (explain) | | i. Are you a co-maker or endorser on a note? | | | | X | | X |
| | | j. Are you a U.S. citizen? | | | X | | X | |
| | | k. Are you a permanent resident alien? | | | | X | | X |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 152875.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | | | X | | X | |
| n. PMI, MIP, Funding Fee financed | | m. Have you had an ownership interest in a property in the last three years? | | | PR | | | |
| o. Loan amount (add m & n) | 152875.00 | (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | | | | | | |
| p. Cash from / to Borrower (subtract j, k, l & o from i) | −182.00 | (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | | | |

Right to Receive Copy of Appraisal. I/We have the right to a copy of the appraisal report used in connection with this application for credit. To obtain a copy, I/We must send Lender a written request at the mailing address I/we have provided. Lender must hear from me/us no later than 90 days after Lender notifies me/us about the action taken on this application, or I/we withdraw this application.

Certification: I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signature(s)on this application...

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| x *Mary A. Gibbs* | 2-27-08 | x | |

**BORROWER**
☐ I do not wish to furnish this information
Race/National Origin:
☐ American Indian or Alaskan Native   ☐ Asian or Pacific Islander   ☐ White, not of Hispanic origin
☒ Black, not of Hispanic origin   ☐ Hispanic
☐ Other (specify)
Sex:   ☐ Female   ☒ Male

**CO-BORROWER**
☐ I do not wish to furnish this information
Race/National Origin:
☐ American Indian or Alaskan Native   ☐ Asian or Pacific Islander   ☐ White, not of Hispanic origin
☐ Black, not of Hispanic origin   ☐ Hispanic
☐ Other (specify)
Sex:   ☐ Female   ☐ Male

| To be Completed by Interviewer | Interviewer's Name (print or type) Michael Swetell | Name and Address of Interviewer's Employer HOMEOWNERS LOAN CORP |
|---|---|---|
| This application was taken by: | Interviewer's Signature | Date |
| ☐ face-to-face interview | | 4501 CIRCLE 75 PARKWAY, SUITE |
| ☐ by mail | Interviewer's Phone Number (include area code) | ATLANTA, GA 30339 |
| ☐ by telephone | 770-850-6800 | |

Freddie Mac Form, 10/92    Page 3 of 3    Fannie Mae Form 1003 10/92
FRM00017 (2/97)    Printed by The Loan Handler from Contour Software, Inc. (408) 370-1700 www.contoursoft.com

MARY GIBBS

MG 0066

**Hall-Frazier**
**Record - 001103**

## Continuation Sheet/Residential Loan Application

| Use the continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: MARY GIBBS | Agency Case Number: |
| --- | --- | --- |
| | Co-Borrower: | Lender Case Number: 10065888 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
| --- | --- | --- | --- |
| x⍟ Mary L. Gibbs | 12-21-02 | x | |

Freddie Mac 65/Rev. (10/92) (Amended)   Addendum to 1003   Printed By The Loan Handler from Contour Software, Inc. (408) 370-1700   Fannie Mae Form 1003/Rev. 10/92 (Amended)

MG 0067

American Pioneer Title Insurance Company      Page 1 of 2



**AMERICAN PIONEER**
**TITLE INSURANCE COMPANY**
495 EAST SEMORAN BOULEVARD
CASSELBERRY, FLORIDA 32707
800-393-9762

March 3, 2003
Attention: Post Closing

Homeowners Loan
Its successors and/or assigns as their interest may appear
4501 Circle 75 Parkway, Suite D4100
Atlanta, GA 30339

RE: Insured Closing Service Letter For Individual Transaction Only
Issuing Agent/Approved Attorney: Swafford & Hays Settlement Services, Inc. 224 S. Peters Rd., #205, Knoxville, TN 37923
Issuing Agent/Approved Attorney File #: 11549
Proposed Insured/Project Name: Mary Gibbs
State Real Estate Transaction as described in APTIC Binder/Commitment #: CM-1-1583-9460

Dear Sir/Madam:

Provided title insurance of American Pioneer Title Insurance Company (APTIC) is specified for your protection in connection with the above described APTIC binder/commitment for title insurance on the Stated Real Estate Transaction in which you are to be the lessee or purchaser of an interest in land or a lender secured by a mortgage (including any other security instrument) of an interest in land, the American Pioneer Title Insurance Company, subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with such closing on the Stated Real Estate Transaction when conducted by said Issuing Agent or Approved Attorney when such loss arises out of:

1. Failure of said Issuing Agent or Approved Attorney to comply with your written closing instructions on the Stated Real Estate Transaction to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or

2. Fraud or dishonesty of said Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closing on the Stated Real Estate Transaction. If you are a lender protected under the foregoing paragraph, your borrower in connection with a loan secured by a mortgage on a one to four family dwelling shall be protected as if this letter were addressed to your borrower.

Conditions and Exclusions
A. The American Pioneer Title Insurance Company will not be liable to you for the loss arising out of:
1. Failure of said Issuing Agent or Approved Attorney to comply with your closing instructions on the Stated Real Estate Transaction which require title insurance protection inconsistent with that set forth in the title insurance binder or commitment issued by the American Pioneer Title Insurance Company. Instructions which require the removal of specific exceptions to title or compliance with the requirements contained in said binder or commitment shall not be deemed to be inconsistent. This paragraph shall not be applicable when such binder or commitment has not been required by the lender prior to closing.
2. Loss or impairment of your funds in the course of collection or while on deposit with a bank due to bank failure, insolvency or suspension, except such as shall result from failure of said Issuing Agent or Approved Attorney to comply with your written closing instructions to deposit the funds in a bank which you designated by name.
3. Mechanics' and materialmen's liens in connection with your purchase or lease or construction loan transactions, except to the extent that protection against such liens is afforded by a title insurance binder, commitment or policy of the American Pioneer Title Insurance Company for the above Stated Real Estate Transaction.
4. The periodic disbursement of construction loan proceeds or funds furnished by the owner to pay for construction costs during the construction of improvements to the land to be insured, unless an officer of the company has specifically accepted the responsibility to you for such disbursement program in writing.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law or any similar law.

B. When the American Pioneer Title Insurance Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the American Pioneer Title Insurance Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.

C. Any liability of the American Pioneer Title Insurance Company for loss incurred by you in connection with the closing of the Stated Real Estate Transaction by said Issuing Agent or Approved Attorney shall be limited to the protection provided by this letter. However, this letter shall not affect the protection afforded by a title insurance binder, commitment or policy of American Pioneer Title Insurance Company. The dollar amount of liability hereby incurred shall not be greater than the amount of the title insurance binder, commitment or policy of title insurance to be issued, and liability hereunder as to any particular loss transaction shall be coextensive with liability under the policy issued to you in connection with such transaction. Payment in accordance with the terms of this letter shall reduce by the same amount the liability under

3/3/2003

MG 0068



American Pioneer Title Insurance Company                                        Page 2 of 2

such policy and payment under such policy shall reduce by the same amount the company's liability under the terms of this letter.

D.   Claims of loss shall be made promptly to the American Pioneer Title Insurance Company at its principal office at 493 East Semoran Boulevard, Casselberry, Florida 32707. When the failure to give prompt notice shall prejudice the American Pioneer Title Insurance Company, then liability of the American Pioneer Title Insurance Company hereunder shall be reduced to the extent of such prejudice.

E.   Nothing contained herein shall be construed as authorizing compliance by any issuing agent or approved attorney with any such closing instructions, compliance with which would constitute a violation of any applicable law, rule or regulation relating to the activity of title insurers, their Issuing Agents or Approved Attorneys, and their failure to comply with any such closing instructions shall not create any liability under the terms of this letter.

F.   The protection herein offered will be effective until cancelled by written notice from the American Pioneer Title Insurance Company. Any previous Insured Closing Service letter or similar agreement is hereby cancelled, except as to closing of your real estate transactions regarding which you have previously sent (or within 30 days hereafter send) written closing instructions to said Issuing Agent or Approved Attorney.

G.   This letter is ineffective to afford protection in Florida, New Jersey, New Mexico, Pennsylvania, Texas, Vermont, and Virginia. These states utilize insured closing services letters specifically promulgated and/or approved by their state insurance regulator.

Authorized Signatory:   *Leara Miles*

cc: Swafford & Hays Settlement Services, Inc.

3/3/2003

MG  0069

## HOMEOWNERS LOAN

*Helping Homeowners Achieve Their Dreams*

Borrower(s):  **MARY L. GIBBS**
**JAMES C. GIBBS**

Property Address:  **155 BAYVIEW DRIVE**
**DAPHNE, AL 36526**

Loan Closer:  **JENNIFER BARON**

Attn: Closing Agent

The enclosed closing documents are forwarded to you to obtain the borrower's signatures. Please insure that you comply with the following requirements.

1. The documents are dated **02/27/03** . The borrower **must** use this date when dating all documents that they sign. **NO EXCEPTIONS.**

2. A HUD-1 Settlement Statement is enclosed. No changes to any fees can be made without the written consent of Homeowners Loan.

3. If these documents were faxed to you, all documents must be printed on bond paper (NO THERMAL FAX PAPER ALLOWED). This page will be the first page of the document package being sent to you.

3. Return all documents to the following address within twenty-four hours of obtaining signatures by overnight mail.

Return Documents To:
**HOMEOWNERS LOAN CORP.**
**4501 CIRCLE 75 PARKWAY, STE D4300**
**ATLANTA, GA  30339**
**PHONE – 770-850-6800**
**FAX –  770-850-1455**

IF YOU HAVE ANY QUESTIONS
OR PROBLEMS PLEASE CALL:

**FRANK WILLIAMS – (770) 850-6800**

*4501 Circle 75 Parkway, Suite F6500, Atlanta, GA  30339*
*(770) 850-6800     Fax (770) 612-8514*

MG 0070

### ACKNOWLEDGMENT OF RECEIPT OF DISCLOSURES
### AND COPIES OF DOCUMENTS SIGNED AT CLOSING

Loan Number: **10065888**

Date: **FEBRUARY 27, 2003**

To: **HOMEOWNERS LOAN CORP.**
     **4501 CIRCLE 75 PARKWAY, SUITE F6300**
     **ATLANTA, GA 30339**

From: **MARY L. GIBBS**
       **JAMES C. GIBBS**

Property Address:    **155 BAYVIEW DRIVE**
                     **DAPHNE, AL  36526**

I/We hereby acknowledge receipt of a Good Faith Estimate through the mail in an envelope postmarked no later than three days after my having made application for credit to Homeowners Loan Corp. Further, in the event my loan is an adjustable rate mortgage ("ARM") loan, I acknowledge receipt of a Consumer Handbook on Adjustable Rate Mortgages and an ARM disclosure through the mail in an envelope postmarked no later than three days after my decision to apply for the ARM loan and I/we have had ample opportunity to review the handbook and disclosure

Finally, I acknowledge that I have received a copy of each document I signed at the closing of this loan, including, but not limited to, a copy of the Note, the mortgage (or deed of trust), the Truth-in-Lending Statement and 2 copies of the Notice of Right to Cancel.


_Mary L. Gibbs_                          _2-24-03_
Borrower  **MARY L. GIBBS**              Date

_James C. Gibbs_                         _2-27-03_
Borrower  **JAMES C. GIBBS**             Date


_____              _____
Borrower                                 Date


_____              _____
Borrower                                 Date


Homeowners Loan (9412003)
BLACKDOC

MG 0071

**3-YEAR LIBOR ARM (Adjusts Semi-annually After Initial 3 Years)**
IMPORTANT ADJUSTABLE RATE MORTGAGE LOAN INFORMATION
PLEASE READ CAREFULLY

Lender:   **HOMEOWNERS LOAN CORP.**
          **4501 CIRCLE 75 PARKWAY, SUITE F6300**
          **ATLANTA, GA 30339**

This disclosure notice is given to you in connection with your application for an adjustable rate mortgage loan and provides information that you should read. An adjustable-rate mortgage loan ("ARM") is a type of loan that permits changes in the loan interest rate. Such changes generally are based on changes in an index, and normally result in an increase or decrease in the regular monthly loan payment. Such changes generally are based on changes in an index, and normally result in an increase or decrease in the regular monthly loan payment. We offer other ARM programs in addition to those described in this document. Information on other ARM programs we offer will be provided upon request. The Lender or any other party holding your loan by transfer and having the right to receive payments under the loan is called the "Note Holder".

**Your Initial Interest Rate**

Interest rates in our ARM programs are based on an "index" and a "margin". An index is a published measurement of current interest rates in specific financial markets or investments. A margin is a percentage defined in your agreement with the Lender that will be added to the index to determine the interest rate on your loan.

Your Index. The index rate for this program is the average of interbank offered rates for six-month U.S. dollar - denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal. If this index is no longer published or is otherwise unavailable at any Interest Rate Change Date, the Note Holder will choose a new index that is based on comparable information and will give you notice of this choice.

Current Index and Margin. The index as of the beginning of this year, and a sample recent margin, are shown in the "Historical Example" that is attached. The index and margin change frequently. Please ask us about the current index and margin.

Discount or Premium. From time to time we offer initial interest rates which are "discounted", which means that the initial rate is less than the rate that would result from adding your margin to the current index. Please ask if your initial rate reflects any discount or premium (any initial rate in excess of the current index plus margin). Any discount or premium applies only to your initial interest rate, and will not be reflected in future rate adjustments.

Please note that because your initial interest rate may be discounted, your interest rate may increase on the first change date even if the index decreases. If your initial rate is a premium rate, your interest rate may decrease on the first interest rate change date even if the index increases.

**How Your Interest Rate and Payment are Determined**

Beginning on the first interest rate change date, your interest rate will be determined by adding the current index rate to the margin and then rounding the sum up to the nearest one-eighth of one percentage point (0.125%). (From time to time we offer a "Conforming" version of this ARM program, in which the said sum is rounded to the nearest one-eighth of one percentage point). The current index rate is the index rate in effect 30 days prior to the date on which your interest rate could change. Each date on which your interest rate could change is called a "Change Date". Ask us for our current interest rate and margin.

When your interest rate adjusts, your principal and interest payment will be based on the new interest rate, loan balance and remaining loan term. The new payment will be an amount sufficient to repay the loan balance at the new interest rate in substantially equal payments over the remaining loan term.

**How Your Interest Rate Can Change**

Your first interest rate change can occur on your thirty-sixth (36th) monthly payment due date. Thereafter, your interest rate can change every six (6) months.

Your interest rate cannot increase or decrease by more than          **1.000**     % at each Interest Rate Change Date after the first Change Date.

Your interest rate cannot increase than a certain percentage ("Cap") over the initial interest rate during the term of the loan. Our programs presently feature Caps in the range from 6.00% to 7.00%. Please ask about the available Cap.

Your interest rate cannot decrease during the term of the loan by more than a certain percentage ("Floor") relative to your initial rate. Our programs presently feature Floors which range from a Floor equal to the lesser of the initial rate or the fully indexed rate to a Floor two percentage points (2.00%) below the initial interest rate, or the gross margin on your loan, whichever is greater.

**How Your Payment Can Change**

Your first monthly payment change will be one (1) month after the first interest rate change. Thereafter, your monthly payment can change every six (6) months based on changes in the interest rate.

You will be notified in writing at least 25, but not more than 120, days prior to the due date of a payment at a new level. This notice will contain information about your index, interest rate, payment amount, and loan balance and will include the title and telephone number of a person who will answer any questions you may have regarding the notice.

**Late Charge**

If your payment arrives later than 15 days after it is due, you will be obligated to pay a late charge not to exceed   **5.000**    % of the monthly payment of principal and interest, or any lesser amount of late charge in compliance with applicable law.

**Prepayment Penalty**

Usually, unless otherwise limited by state law, you loan will provide for a prepayment penalty if you pay off your loan early, or prepay principal in excess of certain limits (usually, the limit is 20% of the outstanding principal balance within any one year period). The prepayment penalty is in effect only during the first few years of your loan (usually either three years or five years) and consists of an amount equal to six months interest, at the rate then in effect on your loan on the amount which is prepaid in excess of the allowed limit. The specific duration and/or amount of the prepayment penalty may vary in your state. Please ask about the specific prepayment penalty (if any) applicable to your loan.

**Assumption/Demand Feature in the event of Sale or Transfer of the Property**

Your loan documents will contain what is commonly called a "due-on-sale" clause. This means that if you sell or otherwise transfer the property prior to repayment of the debt without our prior written consent, we may require immediate payment in full of all sums secured by the Security Instrument for your loan unless prohibited by federal law as of the date of the Security Instrument.

*G.C.H.*
*M.S.H.*

3 Year LIBOR ARM Disclosure - (5% Initial Cap - 1%2 Periodic Cap - 7% Life Cap)
ARMDISC - Revised (5/99)                                         Page 1 of 2

**Escrow (Impound) Payments**

Under our ARM programs, unless specifically agreed otherwise or if inconsistent with state law, you may be required to pay to the Note Holder with each regularly scheduled payment under your loan, a portion of the real estate taxes, insurance, and any other charges or fees expected to become due on your home loan each year. The purpose of requiring these payments in advance is to assure the Note Holder that the taxes and insurance will be paid when due. The Note Holder may also require that you obtain private mortgage insurance on your loan. You may be required to pay the premium for this insurance with each regularly-scheduled loan payment.

The payments for such taxes, hazard insurance, private mortgage insurance and other charges are commonly called escrow payments. The funds represented by these escrow payments are held by the Note Holder until the taxes, insurance premiums, or other charges are due, at which time the Note Holder will pay them on your behalf. You will be required to make the necessary escrow payments throughout the term of the loan.

You will be provided an Initial Escrow Account Statement at loan settlement that (i) itemizes the estimated taxes, insurance premiums, and other charges that are reasonably anticipated to be paid during the first 12 months after settlement and (ii) sets out the anticipated due dates for payment of such charges from the escrow account. The initial required deposit at loan settlement will be an amount sufficient to pay all such estimated charges when due, calculated in compliance with applicable laws. This calculation will take into account the monthly escrow payments that you will make after settlement, and may include a permitted two-months reserve, or "cushion," equal to one-sixth (1/6) of the total estimated amount of all such charges over the 12-month period, or a lesser cushion amount in compliance with applicable law.

The Note Holder or servicer will send you an analysis of your escrow account each year with your Annual Escrow Account Statement. You will be notified in writing if the escrow amount is deficient and the extent of the deficiency. You may correct such deficiency by making a lump sum payment or by paying additional escrow amounts with your regular monthly payment.

If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50). If the surplus is less than 50 dollars ($50), the servicer may refund such amount to the borrower, or credit such amount against the next year's escrow payments.

If you fail to make the required escrow payments, Note Holder may apply all or a portion of your monthly payment of principal and interest toward the escrow payment. If your payments are insufficient to cover the required escrow payments, Note Holder may pay any taxes, insurance premiums, and other charges with its own funds to protect its security interest in the property securing your loan. Your failure to make the required escrow payments will give the Note Holder the right to call your loan immediately due and payable, and could result in a forced sale of your home.

Specific laws applicable to your state, or changes in laws, may require different or additional practices in connection with your escrow account. In that event the provisions of those laws will control, instead of any inconsistent practices described in this document.

### EXAMPLE OF OPERATION OF THE LOAN

The example set out below is based on the following assumptions and show how a loan describe dis the disclosure would operate. The margin contained in the example is a margin we have used recently; your margin may be different. The Caps and Floor contained in this example are the highest recently offered under this program. Your cap and/or Floor may be different.

| | | | |
|---|---|---|---|
| Loan Amount: | $10,000.00 | Semi-annual interest rate Cap[*]: | 1.00% |
| Term of Loan: | 30 years | Lifetime interest rate Cap: | 7.00% |
| Payment Adjustment Frequency[*]: | 6 months | Lifetime interest rate Floor: | Equal to initial rate |
| Interest Adjustment frequency[*]: | 6 months | | |
| Margin (example): | 3.00% | | |

Index:  The six-month London Interbank Offered Rate ("LIBOR")
Discount or Premium reflected in the following Example: 0.00%

[*] after initial adjustment at 36 months.  Your interest rate cannot increase by more than 3.0% at the initial adjustment.

#### Example: Calculating Minimum and Maximum Monthly Payments

Based on the assumptions shown above and an initial interest rate of 8.125% (the rounded sum equal to the margin plus the index in effect as of the first business day of the most recent year adjusted by the amount of any discount or premium) for example this program is seven percentage points, to 15.125 percent, and the monthly payment could rise from a first-year payment of $74.25 to a maximum of $124.36 in the 6th year.  The periodic payment may increase or decrease substantially depending on changes in the interest rate.  This maximum payment calculation reflects the highest periodic rate Cap (1% periodicity/2% annually/5% initial adjustment) and lifetime rate (7%) recently offered by us with our Three-Year LIBOR ARMs.  Your Caps may be different at closing and you should review your closing documents for the Caps that will effect your loan.  The Floor reflected in this maximum payment calculation, which is the Floor allowing for the least downward rate adjustment, is the initial rate.

In order to calculate the payment amount you would have to pay based on the interest rate shown above, divide the loan amount for which you intend to apply by $10,000 and multiply the resulting product by the minimum and maximum payment amounts shown above.  (For example, the initial monthly payment for a mortgage amount of $60,000 would be: $60,000 divided by 10,000 = 6; 6 x $74.25 = $445.50 per month.)

#### *****Important - Please sign one copy of this disclosure and return it to Lender*****

I/We acknowledge receiving and reading the above disclosure Notice

*Mary L. Gibbs*
Borrower  **MARY L. GIBBS**                                 2-27-03
                                                            Date

*James C. Gibbs*
Borrower  **JAMES C. GIBBS**                                2-27-03
                                                            Date

_____                          _____
Borrower                                          Date

_____                          _____
Borrower                                          Date

3 Year LIBOR ARM Disclosure - (3% Initial Cap - 1% Periodic Cap - 7% Life Cap)
ARMDISC - Revised (9/99)                          Page 2 of 2

MG 0073

**Hall-Frazier**
**Record - 001110**

## STATEMENT OF ANTI-COERCION
In Regard To
Placing of Insurance Coverage

Loan Number:    10065888

Borrower(s):    MARY L. GIBBS
JAMES C. GIBBS

The laws of this state provide that the lender may not require the borrower to purchase insurance through any particular insurance agent or insurance company to protect the mortgaged property.

The borrower has the right to have the insurance placed with an insurance agent or insurance company of his choice, provided the company meets the requirements of the lender. The lender has the right to designate reasonable financial requirements as to the company and adequacy of the coverage.

I have ready the foregoing statement and understand my rights and privileges and those of the lender relative to the placing of such insurance, applied and reasonable.

I have selected the _____ Insurance Agency,

or _____ Insurance Company

to write the hazard insurance covering property located at:

155 BAYVIEW DRIVE
DAPHNE, AL 36526
[Property Address]

_____    2-27-03
Borrower  MARY L. GIBBS                Date

_____    2-27-03
Borrower  JAMES C. GIBBS              Date

_____    _____
Borrower                              Date

_____    _____
Borrower                              Date

XLANTICO
Homeowners Loan Anti-Coercion Statement

MG 0074

## HOMEOWNERS LOAN CORP. PRIVACY STATEMENT

Loan Number:   **10065888**

Borrower(s):   **MARY L. GIBBS**
**JAMES C. GIBBS**

Property Address:   **155 BAYVIEW DRIVE**
**DAPHNE, AL 36526**

Homeowners Loan Corp. takes great care to protect the privacy of our customer's information.   In order to provide you information on how this is accomplished, we are providing you this privacy statement.

Homeowners Loan. Corp. may collect nonpublic information about you (such as your name, address, social security number, assets and income) from the following sources:

* From the loan application and/or other forms that you fill out;
* Transactions made by you with us; and
* From a consumer reporting agency.

## HOMEOWNERS LOAN CORP. WILL NOT SHARE ANY NONPUBLIC PERSONAL INFORMATION ABOUT YOU WITH ANYONE OTHER THAN THE FOLLOWING:

* Homeowners Loan employees who need to have access to the information to provide products or services to you;
* Companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements, and
* Other Financial institutions as permitted by law.

We maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.   We do not sell, share or in any other way convey your personal, nonpublic information to any other sources than those listed above.

I have read and understand the Privacy Statement above.

Borrower  **MARY L. GIBBS**                    Date   2-27-08

Borrower   **JAMES C. GIBBS**                    Date   2-27-03

Borrower                                         Date

Borrower                                         Date

HLPRIVST

MG 0075

## IDENTIFICATION AFFIDAVIT

Now comes,  **SWAFFORD & HAYS**

BEING DULY SWORN, and says that (s)he was the closing attorney for the Borrower(s) described below and that (s)he personally obtained and observed photographic identification or acceptable equivalent of the Borrower(s), and does hereby certify to the following:

BORROWER:  **MARY L. GIBBS**      _Mary L. Gibbs_

DATE OF BIRTH:  _01/18/50_

DRIVERS LICENSE NO.:  _AL # 3645019_

EXPIRATION DATE:  _01/31/06_

BORROWER:  **JAMES C. GIBBS**      _James C. Gibbs_

DATE OF BIRTH:  _10/12/49_

DRIVERS LICENSE NO.:  _AL # 3586572_

EXPIRATION DATE:  _10/31/03_

BORROWER: _____

DATE OF BIRTH: _____

DRIVERS LICENSE NO.: _____

EXPIRATION DATE: _____

BORROWER: _____

DATE OF BIRTH: _____

DRIVERS LICENSE NO.: _____

EXPIRATION DATE: _____

_Attorney_  _Notary Public_ ℗

Sworn to before me this  _27_  day of  _FEBRUARY, 2003_ :

Notary public for  _STATE OF ALABAMA, County OF BALDWIN_

My Commission Expires: _____

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Oct 7, 2005
BONDED THRU NOTARY PUBLIC UNDERWRITERS

ID.IDAFF

MG 0076

**Hall-Frazier**
**Record - 001113**

---

**Form W-9**
(Rev. December 1996)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer**
**Identification Number and Certification**

Give Form to Requester.
Do NOT send to the IRS.

Please print or type
Name (If a joint account or you changed your name, see SPECIFIC INSTRUCTIONS on page 2.)

MARY L. GIBBS

Business name, if different from above. (See SPECIFIC INSTRUCTIONS on page 2)

Check appropriate box: ☐ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other _____

Address (Number, street, and apt. or suite no.)
155 BAYVIEW DRIVE

City, state and ZIP code
DAPHNE, AL  36526

Requester's name and address (optional)
HOMEOWNERS LOAN CORP.
4501 CIRCLE 75 PARKWAY, SUITE F6
ATLANTA, GA 30339

List account number(s) here (optional)

**PART I: Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, if you are a resident alien OR a sole proprietor, see the instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see HOW TO GET A TIN on page 2.

Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.

**Social Security Number**
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

OR

**Employer Identification Number**

**PART II: For Payees Exempt from Backup Withholding**
(See the Instructions on page 2.)

→

**PART III: Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), AND

2. I am not subject to back withholding because (A) I am exempt from backup withholding, or (B) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (C) the IRS has notified me that I am no longer subject to backup withholding.

Certification Instructions: -You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

SIGN HERE  Signature→ *Mary L. Gibbs*    Date→ 2-27-05

**Purpose of Form.** A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are an exempt payee.

Note: If a requester gives you a form other than a W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**What Is Backup Withholding?** Persons making certain payments to you must withhold and pay to the IRS 31% of such payments under certain conditions. This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends,

broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, payments you receive will not be subject to backup withholding. Payments you receive WILL be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. The IRS tells the requester that you furnished an incorrect TIN, or

3. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

4. You do not certify to the requester that you are not subject to backup withholding under 3 above (for reportable interest and dividend accounts opened after 1983 only), or

5. You do not certify your TIN when required. See the Part III instructions on page 2 for details.

Certain payees and payments are exempt from backup withholding. See the Part II instructions and the separate "Instructions for the Requester of Form W-9."

**Penalties**

**Failure To Furnish TIN.** -- If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil Penalty for False Information with Respect to Withholding.** -- If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal Penalty for Falsifying Information.** -- Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** -- If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

Page 1 of 2    Cat. No. 10231X    Form W-9    (Rev. 12-96)

MG 0077

## Specific Instructions

**Name.** - If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage, without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle the name of the person or entity whose number you enter in Part I of the form.

*Sole Proprietor.* - You must enter your individual name as shown on your social security card. You may enter your business, trade, or "doing business as" name on the business name line.

*Other Entities.* - Enter the business name as shown on required Federal tax documents. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or "doing business as" name on the business name line.

### Part I - Taxpayer Identification Number (TIN)

You must enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If your do not have an ITIN, see How To Get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, using your EIN may result in unnecessary notices to the requester.

**Note:** *See the chart on this page for further clarification of name and TIN combinations.*

**How To Get a TIN.** - If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5 from your local Social Security Administration office. Get Form W-7 to apply for an ITIN or Form SS-4 to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676).

If you do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, you will generally have 60 days to get a TIN and give it to the requester. Other payments are subject to backup withholding.

**Note:** *Writing "Applied For" means that you have already applied for a TIN OR that you intend to apply for one soon.*

### Part II - For Payees Exempt From Backup Withholding

Individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. For more information on exempt payees, see the separate instructions for the Requester of Form W-9.

If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding. Enter your correct TIN in Part I, write "Exempt" in Part II, and sign and date the form.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester a completed Form W-8, Certificate of Foreign Status.

### Part III - Certification

For a joint account, only the person whose TIN is shown in Part I should sign (when required).

**1. Interest, Dividend, and Barter Exchange Accounts Opened Before 1984 and Broker Accounts Considered Active During 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, Dividend, Broker, and Barter Exchange Accounts Opened After 1983 and Broker Accounts Considered Inactive During 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real Estate Transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other Payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services (including attorney and accounting fees), and payments to certain fishing boat crew members.

**5. Mortgage Interest Paid by You, Acquisition or Abandonment of Secured Property, Cancellation of Debt, or IRA Contributions.** You must give your correct TIN, but you do not have to sign the certification.

### Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to give your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation and to cities, states, and the District of Columbia to carry out their tax laws.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 31% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

### What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
|    b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "doing business as" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** *If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.*

MG 0078

## AFFIDAVIT OF COMMON IDENTITY

Loan No.: 10065888

Lender Name: HOMEOWNERS LOAN CORP.
4501 CIRCLE 75 PARKWAY, SUITE F6300
ATLANTA, GA  30339

STATE OF *ALABAMA*

COUNTY OF BALDWIN

Before me, the undersigned authority, personally appeared MARY L. GIBBS
who after being duly sworn deposes and says that (s)he is one and the same person as:

**MARY GIBBS**

and that (s)he makes this statement with the expressed purpose of inducing the above named lender to accept a mortgage on
the following described property:

**SEE ATTACHED EXHIBIT "A"**

(Legal Description Above)

Further affiant saith not.

_____ (Seal)
MARY L. GIBBS                    -Borrower

STATE OF *ALABAMA*

COUNTY OF BALDWIN

The foregoing instrument was acknowledged before me this 27 day of FEBRUARY , 19 2003 , by:

MARY L. GIBBS

known to me to be the person whose name is subscribed to the within instrument, and I acknowledge that executed the
same.

_____
Notary Public

My commission expires:

IDENTITY     NOTARY PUBLIC STATE OF ALABAMA AT LARGE
             MY COMMISSION EXPIRES: Oct 3, 2005
             BONDED THRU NOTARY PUBLIC UNDERWRITERS

MG 0079

LOAN NO.10065888

Form **8821**
(Rev. February 1993)
Department of the Treasury
Internal Revenue Service

**Tax Information Authorization**

OMB No. 1545-1165
Expires 2-29-96

### 1. Taxpayer Information (Taxpayer(s) must sign and date this form on line 7.)

| Taxpayer name(s) and address (Please type or print.) | Social Security Number(s) | Employer Identification Number |
|---|---|---|
| MARY L. GIBBS<br>155 BAYVIEW DRIVE<br>DAPHNE, AL 36526 | 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 | |
| | Daytime Telephone Number | Plan Number (if applicable) |

### 2. Appointee

| Name and Address (Please type or print.) | |
|---|---|
| 865-539-2442 | CAF No. |
| | Telephone No. (   ) |
| | Fax No. (   ) |
| | Check if new:   Address ☐      Telephone No. ☐ |

The appointee is authorized to inspect and/or to receive confidential tax information in any office of the IRS for the tax matters listed in line 3.

### 3. Tax Matters

| Type of Tax (Income, Employment, Excise, etc.) | Tax Form Number (1040, 941, 720, etc.) | Year(s) or Period(s) |
|---|---|---|
| | | |
| | | |
| | | |

4. **Specific Use Not Recorded on Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, please check this box. (See Line 4 - Specific Use Not Recorded on CAF on page 2.) . . . . . . . →  ☐
Do not use lines 5 and 6 if the box on line 4 is checked.

5. **Disclosure of Tax Information**   (you must check one of the following unless box 4 is checked):
   a. If you want tax information, notices, and other written communications sent to the appointee on an ongoing basis, check this
      box.  This will cause all computer-generated notices to be sent to the appointee . . . . . . . . . . . . . . .  ☐
   b. If you do not want any notices or communications sent to your appointee, check this box . . . . . . . . . . . . . .  ☐

6. **Retention/Revocation of Tax Information Authorization.**   This tax information authorization automatically revokes all earlier
   tax information authorizations on file with the Internal Revenue Service for the        same tax matters and years or periods covered
   by this document.  If you do not want to revoke a prior tax information authorization check this box . . . . . . . . . →  ☐
   You MUST attach a copy of any tax information authorization you want to remain in effect.

7. **Signature of Taxpayer(s).-** If a tax matter concerns a joint return,  either  husband or wife must sign.  If signed by a corporation
   officer, partner, guardian, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the
   authority to execute this form with respect to the tax matters/periods covered.

**IF THIS TAX INFORMATION AUTHORIZATION IS NOT SIGNED AND DATED, IT WILL BE RETURNED.**

_Mary L. Gibbs_                    _2-27-05_
Borrower  **MARY L. GIBBS**              Date                              Title (if applicable)


Borrower                          Date                              Title (if applicable)

**Privacy Act and Paperwork Reduction Act Notice. -** We ask for the information on this form to carry out the Internal Revenue laws of the United States. Form 8821 is provided by the IRS for your convenience and its use is voluntary. If you choose to designate an appointee to inspect and/or receive confidential information, under section 6109, you must disclose your social security number (SSN) or your employer identification number (EIN). The principal purpose of this disclosure is to secure proper identification of the taxpayer. We also need this information to gain access to your tax information in our files and properly

respond to your request. If you do not disclose this information, the IRS may - suspend processing the tax information authorization and may not be able to fill your request until you provide the number.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is: Recordkeeping, 7 min.; Learning about the law or the form, 11 min.; Preparing the form, 22 min.; Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making this form more simple, we would be happy to hear from you. You can write to both the Internal Revenue Service, Washington, DC 20224, Attention: IRS Reports Clearance Officer, T:FP; and the Office of Management and Budget, Paperwork Reduction Project (1545-1165), Washington, DC 20503. DO NOT send Form 8821 to either of these offices. Instead, see Filing the Tax Information Authorization on Page 2.

Cat. No. 11596P                                              Form **8821** (Rev. 2-93)

MG 0080

Hall-Frazier
Record - 001117

Form 8821 (Rev. 2-93)                                                                                    Page 2

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Purpose of the Form.**—Form 8821 authorizes any individual, corporation, firm, organization, or partnership you designate to inspect and/or receive confidential information in any office of the IRS for the type of tax and the years or periods you list on this form. You may file a tax information authorization without using Form 8821, but it must reflect all information that is required on Form 8821.

If you want an individual to have the authority to represent you and/or perform other acts on your behalf, such as the execution of waivers, consents, or closing agreements, use Form 2848, Power of Attorney and Declaration of Representative, instead of Form 8821.

**Fiduciaries.**—A fiduciary (trustee, executor, administrator, receiver or guardian) stands in the position of a taxpayer and acts as the taxpayer. Therefore, a fiduciary does not act as an appointee and should not file a tax information authorization, Form 56, Notice Concerning Fiduciary Relationship, should be filed to notify the IRS of the existence of a fiduciary relationship. If a fiduciary wishes to authorize an appointee to inspect and/or receive confidential tax information on behalf of the entity, a tax information authorization must be filed and signed by the fiduciary acting in the position of the taxpayer.

**Partnership/Subchapter S Items.**—Sections 6221-6231 and 6241-6245 authorize a Tax Matters Partner or Tax Matters Person to perform certain acts on behalf of an affected partnership or S corporation. Rules governing the use of Form 8821 do not supersede any provisions of the above referenced sections.

**Filing the Tax Information Authorization.**—File the original, photocopy, or facsimile transmission (fax) of the tax information authorization with each IRS office in which you want your appointee to inspect and/or receive confidential tax information on your behalf. If you choose to file a tax information authorization by fax, you must first be sure that the appropriate IRS office is equipped to accept fax transmissions. If the tax information authorization is filed for a matter currently pending before an office of the IRS, such as an examination, file the tax information authorization with that office. Otherwise, file the tax information authorization with the service center where the related return was, or will be, filed. Refer to the instructions for the related tax return for the service center addresses. Form 8821 must be received by the IRS within 60 days of the date it was signed and dated by the taxpayer.

### Line-by-Line Instructions

**Line 1—Taxpayer Information.**—

**Individuals.**—Enter your name, SSN (and/or EIN, if applicable), and street address in the space provided. If a joint return is used, enter your spouse's name and social security number also.

**Corporations, partnerships, or associations.**—Enter the name, EIN, and business address.

**Employee plan.**—Enter the plan name, EIN of the plan sponsor, three-digit plan number, and business address of the plan sponsor.

**Trust.**—Enter the name, title, and address of the trustee, and the name and EIN of the trust.

**Estate.**—Enter the name, title, and address of the decedent's executor/personal representative, and the name and identification number of the estate. The identification number for an estate includes both the EIN, if the estate has one, and the decedent's SSN.

**Line 2—Appointee.**—Enter the name of your appointee. Please use the identical name on all submissions. If you wish to name more than one appointee, indicate so on this line and attach a list to the form. Enter the nine-digit CAF number for each appointee. If an appointee has been issued a CAF number for any previously filed tax information authorization (Form 8821) or power of attorney (Form 2848), that number should be used. If a CAF number has not been assigned, enter "NONE," and the IRS will issue one directly to your appointee.

The CAF number is a unique nine-digit identification number (not the SSN or EIN) that the IRS assigns to appointees. The CAF number is not an indication of authority to practice. The appointee should use the assigned CAF number on all future tax information authorizations. CAF numbers will not be assigned for employee plans and exempt organization application requests.

**Line 3—Tax Matter(s).**—Enter the type of tax, the tax form number, and the years or periods. For example, you may list "income tax Form 1040" for calendar year "1990" and "Excise tax Form 720" for the "1st, 2nd, 3rd, and 4th quarters of 1990." A general reference to "All years," "All periods," or "All taxes" is not acceptable. Any tax information authorization with such general reference will be returned. You may list any tax years or periods already ended as of the date you sign the tax information authorization. However, the number of future periods that can be recorded on the CAF is limited to returns with due dates within 3 years of your signature on Form 8821. If the matter relates to estate tax, enter the date of the taxpayer's death instead of the year or period. If either the type of tax, tax form number, or years or periods do not apply to the matter, specifically describe on this line the matter to which the tax information authorization pertains and enter "Not Applicable" in the appropriate column(s).

You may enter on this line any specific information you want the IRS to provide. For example, you may request a transcript of an account, a balance due amount, or whether a return was filed.

**Line 4—Specific Use Not Recorded on CAF.**—Generally, the IRS records all tax information authorizations on the CAF system. However a tax information authorization will not be recorded on the CAF if it relates to a specific issue. Examples of specific issues include but are not limited to: (1) requests to disclose information to loan companies or educational institutions, (2) requests to disclose information to Federal or state agency

investigators for background checks, (3) civil penalty issues, (4) trust fund recovery penalty, (5) application for employer identification number, and (6) claims filed on Form 843, Claim for Refund and Request for Abatement. Check the specific use box on line 4 if the tax information authorization is for a use that will not be recorded on the CAF. If the box on line 4 is checked, the appointee should bring a copy of the tax information authorization to each meeting with the IRS. A specific use tax information authorization will not automatically revoke any prior tax information authorizations.

**Line 5 - Retention/Revocation of Prior Tax Information Authorizations.**—If there are any existing tax information authorizations you do not want to revoke, check the box on this line and attach a copy of the tax information authorization.

If you want to revoke an existing tax information authorization and do not want to name a new appointee, send a copy of the previously executed tax information authorization to each IRS office where the tax information authorization was filed. The copy of the tax information authorization must have a current signature of the taxpayer under the signature already on line 7. Write "REVOKE" across the top of the form. If you do not have a copy of the tax information authorization you want to revoke, send a statement to each IRS office where you filed the tax information authorization. The statement of revocation must indicate that the authority of the tax information authorization is revoked and must be signed by the taxpayer. Also, the name and address of each recognized appointee whose authority is revoked must be listed.

The filing of a Form 8821 will not revoke any Form 2848 that is in effect.

**Line 7 . Signature of Taxpayer(s).**—

**Individuals.**—You must sign and date the authorization. If a joint return is used, either husband or wife must sign. Signatures of both husband and wife are not required.

**Corporations.**—Generally, Form 8821 can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, (3) any officer or employee upon written request signed by any principal officer and attested by the secretary or other officer, and (4) any other person authorized to access information under section 6103(e). (For shareholders in S corporations not excepted and provided for under sections 6241-6245, see Partnership/ Subchapter S items above.)

**Partnerships.**—Generally, Form 8821 can be signed by any person who was a member of the partnership during any part of the tax period covered by Form 8821. (For partners in partnerships provided for and defined by sections 6221-6231, see Partnership/ Subchapter S items above.)

**Other.**—If the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver or administrator is acting for the taxpayer, see section 6103(e).

✩ U.S. Government Printing Office: 1993–343-034/80103

MG 0081

**Hall-Frazier**
**Record - 001118**

Form **4506**
(Rev. May 1997)
LOAN NO. 10065898
Department of the Treasury
Internal Revenue Service

## Request for Copy or Transcript of Tax Form

Read instructions before completing this form.
Type or print clearly. Request may be rejected
if the form is incomplete or illegible.

OMB No. 1545-0429

Note: Do not use this form to get tax account information. Instead, see instructions below.

| | | | |
|---|---|---|---|
| 1a | Name shown on tax form. If a joint return, enter the name shown first.<br>MARY L. GIBBS | 1b | First social security number on tax form or employer identification number. (See instructions.)<br>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 |
| 2a | If a joint return, spouse's name shown on tax form | 2b | Second social security number on tax form |

3  Current name, address (including apt., room, or suite no.), city, state and ZIP code.
MARY L. GIBBS          155 BAYVIEW DRIVE
                       DAPHNE, AL 36526

4  Address (including apt., room, or suite no.), city, state and ZIP code shown on the last return filed if different from line 3.

5  If copy of form or tax return transcript is to be mailed to someone else, show the third party's name and address.

6  If we cannot find a record of your tax form and you want the payment refunded to the third party, check here . . . . . . . . ☐

7  If name in third party's records differs from line 1a above, show name here. (See instructions.)

8  Check only one box to show what you want. There is no charge for items 8a, b, and c.
a ☐ Tax return transcript of form 1040 series filed during the current calendar year and the 3 prior calendar years. (See instructions.)
b ☐ Verification of nonfiling.
c ☐ Form(s) W-2 information (see instructions).
d ☐ Copy of tax form and all attachments (including Form(s) W-2, schedules or other forms). The charge is $23 for each period requested.
    Note: If these copies must be certified for court or administrative proceedings, see instructions and check here . . . . . . . ☐

9  If this request is to meet a requirement of one of the following, check all boxes that apply.
   ☐ Small Business Administration  ☐ Department of Education  ☐ Department of Veterans Affairs  ☒ Financial Institution

| | | | |
|---|---|---|---|
| 10 | Tax form number (Form 1040, 1040A, 941, etc.) | 12 | Complete only if line 8d is checked.<br>Amount due:<br>a Cost for each period . . . . . $ 23.00<br>b Number of periods requested . .<br>c Total cost. Multiply 12a by 12b $ |
| 11 | Tax period(s) (year or period ended date). If more than four, see instructions. | | Full payment must accompany your request. Make check or money order payable to "Internal Revenue Service." |

Caution: Before signing, make sure all items are complete and the form is dated.

I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested.
I am aware that based upon this form, the IRS will release the tax information requested to any party shown on line 5. The IRS has no
control over what that party does with the information.

**Please**
**Sign**
**Here**

Signature. See instructions. If other than taxpayer, attach authorization document.   Date  12-21-08

Title (if line 1a above is a corporation, partnership, estate, or trust)

Spouse's signature                    Date

Telephone number of requester
(251)621-0446

Best time to call

**TRY A TAX RETURN**
**TRANSCRIPT** (see
Line 8a instructions)

MARY L. GIBBS

---

## Instructions

Section references are to the Internal Revenue Code.

TIP: If you had your tax form filed in by a paid preparer, check first to see if you can get a copy from the preparer. This may save you both time and money.

Purpose of Form. Use Form 4506 to get a tax return transcript, verification that you did not file a Federal tax return, Form W-2 information, or a copy of a tax form. Allow 6 weeks after you file a tax form before you request a copy of it or a transcript. For W-2 information, wait 13 months after the end of the year in which the wages were earned. For example, wait until Feb. 1999 to request W-2 information for wages earned in 1997.

Do not use this form to request Form 1099 or tax account information. See the page for details on how to get these items.

Note: Form 4506 must be received by the IRS within 60 calendar days after the date you signed and dated the request.

How Long Will It Take? You can get a tax return transcript or verification of nonfiling within 7 to 10 workdays after the IRS receives your request. It can take up to 60 calendar days to get a copy of a tax form or W-2 information. To avoid any delay, be sure to furnish all the information asked for on Form 4506.

Forms 1099. If you need a copy of a Form 1099, contact the payer. If the payer cannot help you, call or visit the IRS to get Form 1099 information.

Tax Account Information Only. If you need a statement of your tax account showing any later changes that you or the IRS made to the original return, request tax account information. Tax account information lists certain items from your return including any later changes.

To request tax account information, write or visit an IRS office or call the IRS at the number listed in your telephone directory.

If you want your tax account information sent to a third party, complete Form 8821, Tax Information Authorization. You may get this form by phone (call 1-800-829-3676) or on the Internet (at http://www.irs.ustreas.gov).

Line 1b. Enter your employer identification number (EIN) only if you are requesting a copy of a business tax form. Otherwise, enter the first social security number shown on the tax form.

Line 2b. If requesting a copy or transcript of a joint tax form, enter the second social security number shown on the tax form.

Note: If you do not complete line 1b and, if applicable, line 2b, there may be a delay in processing your request.

Line 5. If you want someone else to receive the tax form or tax return transcript (such as a CPA, an enrolled agent, a scholarship board, or a mortgage lender), enter the name and address of the individual. If we cannot find a record of your tax form we will notify the third party directly that we cannot fill the request.

For Privacy Act and Paperwork Reduction Act Notice, see page 2 of form.     Cat. No. 41721E     Form 4506 (Rev. 5-97)

**Page 1 of 2**

MG 0082

**Hall-Frazier**
**Record - 001119**

**Line 7.** Enter the name of the client, student, or applicant if it is different from the name shown on line 1a. For example, the name on line 1a may be the parent of a student applying for financial aid. In this case, you would enter the student's name on line 7 so the scholarship board can associate the tax form or tax return transcript with their file.

**Line 8a.** If you want a tax return transcript, check this box. Also, on line 10 enter the tax form number and on line 11 enter the tax period for which you want the transcript.

A tax return transcript is available only for returns in the 1040 series ( Form 1040, Form 1040A, 1040EZ, etc.). It shows most line items from the original return, including accompanying forms and schedules. In many cases, a transcript will meet the requirement of any lending institution such as a financial institution, the Department of Education, or the Small Business Administration. It may also be used to verify that you did not claim any itemized deductions for a residence.

**Note:** A tax return transcript does not reflect any changes you or the IRS made to the original return. If you want a statement of you tax account with the changes, see Tax Account Information on page 1.

**Line 8b.** Check this box only if you want proof from the IRS that you did not file a return for the year. Also, on line 11 enter the tax period for which you want verification of nonfiling.

**Line 8c.** If you want only Form(s) W-2 information, check this box. Also, on line 10 enter "Form(s) W-2 only" and on line 11 enter the tax period for which you want the information.

You may receive a copy of your actual Form W-2 or a transcript of the information, depending on how your employer filed the form. However, state withholding information is not show on a transcript. If you have filed your tax return for the year the wages were earned, you can get a copy of the actual Form W-2 by requesting a complete copy of your return and paying the required fee.

Contact your employer if you have lost your current year's Form W-2 or have not received it by the time you are ready to prepare your tax return.

**Note:** If you are requesting information about your spouse's Form W-2, your spouse must sign Form 4506.

**Line 8d.** If you want a certified copy of a tax form for court or administrative proceedings, check the box to the right of line 8d. It will take at least 60 days to process your request.

**Line 11.** Enter the year(s) of the tax form or tax return transcripts you want. For fiscal-year filers or requests for quarterly tax forms, enter the date the period ended; for example, 3/31/98, 6/30/98, etc. If you need more than four different tax periods, use additional Form 4506. Tax forms filed 6 or more years ago may not be available for making copies. However, tax account information is generally still available for these periods.

**Line 12c.** Write your SSN or EIN and "Form 4506 Request" on your check or money order. If we cannot fill your request, we will refund your payment.

**Signature.** Requests for copies of tax forms or tax return transcripts to be sent to a third party must be signed by the person whose name is shown on line 1a or by a person authorized to receive the requested information.

Copies of tax forms or tax return transcripts for a jointly filed return may be furnished to either the husband or the wife. Only one signature is required. However, see the line 5c instructions. Sign Form 4506 exactly as your name appeared on the original tax form. If you changed your name, also sign your current name.

For a corporation, the signature of the president of the corporation, or any principal officer and the secretary, or the principal officer and another officer are generally required. For more details on who may obtain tax information so corporations, partnerships, estates, and trusts, see section 6103.

If you are not the taxpayer shown on line 1a, you must attach your authorization to receive a copy of the requested tax form or tax return transcript. You may attach a copy of the authorization document if the original has already been filed with the IRS. This will generally be a power of attorney (Form 2848), or other authorization, such as Form 8821, or evidence of entitlement (for Title 11 Bankruptcy or Receivership Proceedings). If the tax payer is deceased, you must send Letters Testamentary or other evidence to establish that you are authorized to act for the taxpayer's estate.

**Where To File.** Mail Form 4506 with the correct total payment attached, if required, to the Internal Revenue Service Center for the place where you lived when the requested tax form was filed.

**Note:** You must use a separate form for each service center from which you are requesting a copy of your tax form or tax return transcript.

| If you lived in: | Use this address: |
|---|---|
| New Jersey, New York (New York City and Counties of Nassau, Rockland, Suffolk, and Westchester) | 1040 Waverly Ave. Photocopy Unit Stop 532 Holtsville, NY 11742 |
| New York (all other counties), Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont | 310 Lowell St. Photocopy Unit Stop 679 Andover, MA 01810 |
| Florida, Georgia, South Carolina | 4800 Buford Hwy. Photocopy Unit Stop 91 Doraville, GA 30362 |
| Indiana, Kentucky, Michigan, Ohio, West Virginia | P.O. Box 145500 Photocopy Unit Stop 521 Cincinati, OH 45250 |
| Kansas, New Mexico, Oklahoma, Texas | 3651 South Interregional Highway Photocopy Unit Stop 6716 Austin, TX 73301 |
| California (all other counties), Hawaii | 5045 E. Butler Ave. Photocopy Unit Stop 52180 Fresno, CA 93888 |
| Alabama, Arkansas, Louisiana, Missippi, North Carolina, Tennessee | P.O. Box 30309 Photocopy Unit Stop 45 Memphis, TN 38130 |

| | |
|---|---|
| Alaska, Arizona, California, (counties of Alpine, Amador, Butte, Calaveras, Colusa, Contra Costa, Del Norte, El Dorado, Glenn, Humboldt, Lake, Lassen, Marin, Mendocino, Modoc, Napa, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Solano, Sonoma, Sutter, Tehama, Trinity, Yolo, and Yuba), Colorado, Idaho, Montana, Nebraska, Nevada, North Dakota, Oregon, South Dakota, Utah, Washington, Wyoming | P.O. Box 9941 Photocopy Unit Stop 6734 Ogden, UT 84409 |
| Illinois, Iowa, Minnesota, Missouri, Wisconsin | 2306 E. Bannister Rd. Photocopy Unit Stop 6700, Annex 1 Kansas City, MO 64999 |
| Delaware, District of Columbia, Maryland, Pennsylvania, Virginia, a foreign country, or A.P.O. or F.P.O. address | 11601 Roosevelt Blvd. Photocopy Unit DP 536 Philadelphia, PA 19255 |

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to your tax form or transcript under the Internal Revenue Code, including sections 6103 and 6109. We need it to gain access to your form or transcript in our files and properly respond to your request. If you do not furnish the information, we will not be able to fill your request. We may give the information to the Department of Justice or other appropriate law enforcement official, as provided by law.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is:

Recordkeeping . . . . . . . . . . 13 min.
Learning about the law or the form . . 7 min.
Preparing the form . . . . . . . . 26 min.
Copying, assembling, and sending the form to the IRS . . . . . . 17 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. You can write to Tax Forms Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. DO NOT send the form to this address. Instead, see Where to File on this page.

---

For Privacy Act and Paperwork Reduction Act Notice, see above          Cat. No. 41721E          Form **4506** (Rev. 5-97)

MG 0083

# AFFIDAVIT OF COMMON IDENTITY

Loan No.:   **10065888**

Lender Name:  **HOMEOWNERS LOAN CORP.**
**4501 CIRCLE 75 PARKWAY, SUITE F6300**
**ATLANTA, GA  30339**

STATE OF *ALABAMA*

COUNTY OF **BALDWIN**

Before me, the undersigned authority, personally appeared *JAMES C. GIBBS*
who after being duly sworn deposes and says that (s)he is one and the same person as:

**JAMES GIBBS**

and that (s)he makes this statement with the expressed purpose of inducing the above named lender to accept a mortgage on
the following described property:

**SEE ATTACHED EXHIBIT "A"**

(Legal Description Above)

Further affiant saith not.

_James C. Gibbs_                  (Seal)
**JAMES C. GIBBS**               -Borrower

STATE OF *ALABAMA*

COUNTY OF **BALDWIN**

The foregoing instrument was acknowledged before me this 27 day of FEBRUARY, 19 2003, by:

JAMES C. GIBBS

known to me to be the person whose name is subscribed to the within instrument, and I acknowledge that executed the
same.

_____
Notary Public

My commission expires:

IDENTITY        NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES:  Oct 3, 2005
BONDED THRU NOTARY PUBLIC UNDERWRITERS

MG  0084

# HOMEOWNERS
# LOAN

*Helping Homeowners Achieve Their Dreams*

Dear Valued Customer:

At Homeowners Loan we always strive to provide the highest level of service to you our customers. As part of this goal we ask that you take a few minutes to give us your opinion on how well we met your needs during the loan process. If you wish to talk with a member of our senior management team please feel free to call the number provided below. Again, thank you for your business and please consider us for any future needs.

Sincerely,

*Homeowners Loan*

Homeowners Loan Senior Management Contact: **BOB LOWERY, VICE PRESIDENT**
**(770) 850-6803**

Loan Officer: **Michael Swetell**

1. How well were you kept informed during your loan process?

| Not Very Well | | Adequately | | More Than Adequately |
|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 |

2. How satisfied were you with the length of time from application to closing?

| Not Very Well | | Adequately | | More Than Adequately |
|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 |

3. How was your loan closing?

| Some Unexpected Problems | | Satisfied | | Very Good |
|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 |

4. Overall, how do you feel you were treated throughout the process?

| Poorly | | Satisfactory | | Very Well |
|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 |

5. Which word would best describe your overall experience with Homeowners Loan?

| Dissatisfied | | Satisfied | | Excellent |
|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 |

Comments/Suggestions

_____

_____

_____

_____

Can you think of 2 or 3 friends or family members that might be interested in seeing how I can help them, whether it be saving them money monthly or getting them the cash they need for whatever reason?

| Name | Phone Number |
|---|---|
| 1. James C. Hill | _____ |
| 2. _____ | _____ |
| 3. _____ | _____ |

MG 0085

## FIRST PAYMENT NOTICE

Loan Number: **10065888**
Date:    **FEBRUARY 27, 2003**
Lender:  **HOMEOWNERS LOAN CORP.**
         **4501 CIRCLE 75 PARKWAY, SUITE F6300**
         **ATLANTA, GA 30339**
Borrower(s): **MARY L. GIBBS**

Property Address:  **155 BAYVIEW DRIVE**
                   **DAPHNE, AL 36526**

The first payment on your loan will be due at least 30 days from the date of the disbursement. This date may be different from the first payment due date stated on your note. You will be notified of any payment due date change.

Acknowledged:

Borrower **MARY L. GIBBS**          Date  2-27-03

Borrower _____          Date _____

Borrower _____          Date _____

Borrower _____          Date _____

---

*This section to be completed only if payment modification is required.*

To: **MARY L. GIBBS**                    Loan No.: **10065888**

Date: _____

Re: Modification to First Payment Date

You recently signed a Note dated **FEBRUARY 27, 2003**  in the amount of $ **152,875.00**  . In the Note the first payment date is shown as **APRIL 4, 2003**  . Based on the date your funds were disbursed, _____ , your first payment will be due _____ . Your payments will continue to be due on the _____ day of each month until _____

All other terms of your loan will remain unchanged.

Questions regarding this matter should be directed to our Funding Department.

Sincerely,

Funding Department

NL/FPM0D

MG 0086

## FIRST PAYMENT LETTER

Date: **FEBRUARY 27, 2003**             Loan Number: **10065888**

Borrower(s): **MARY L. GIBBS**          Lender: **HOMEOWNERS LOAN CORP.**
                                        **4501 CIRCLE 75 PARKWAY, SUITE A1225**
                                        **ATLANTA, GA 30339**

Dear Borrower:

We wish to take this opportunity to welcome you as a customer and to provide you with the following information regarding your loan.

In accordance with the terms of the Note and Mortgage, your first monthly payment is due and payable on or before **APRIL 4, 2003**.

Your monthly payment will be as follows:

| | |
|---|---|
| Principal & Interest....................... | $ **1,135.10** |
| Escrow/Impound Account: | |
|    Hazard Insurance........................ | $ _____ |
|    Property Tax ............................. | $ _____ |
|    Flood Insurance......................... | $ _____ |
|    Mortgage Insurance Premium ......... | $ _____ |
| | ... $ _____ |
| | ... $ _____ |
| **TOTAL PAYMENT:**.................. | $ **1,135.10** |

You should receive a coupon book or a monthly payment statement prior to your first monthly payment due date. In the event that you do not receive a payment statement, please mail your check for the TOTAL PAYMENT amount indicated above to:

**HOMEOWNERS LOAN CORP.**
**4501 CIRCLE 75 PARKWAY, SUITE A1225**
**ATLANTA, GA 30339**

**PHONE: 800-278-5470**

If you have any questions, please call our Customer Service Representative at the number indicated above.

BORROWER: I have received a copy of this statement

Borrower ~~Mary L. Gibbs~~          Date 2-27-03
**MARY L. GIBBS**

Borrower _____          Date _____

Borrower _____          Date _____

Borrower _____          Date _____

---

**INITIAL PAYMENT COUPON**

Name: **MARY L. GIBBS**              Loan Number: **10065888**
Property Address: **155 BAYVIEW DRIVE**     Amount: **$1,135.10**
**DAPHNE, AL 36526**                 Due Date: **APRIL 4, 2003**

A late charge will be assessed if payment is not received at the designated location within 15 days of the payment due date.

**HOMEOWNERS LOAN CORP.**
**4501 CIRCLE 75 PARKWAY, SUITE A1225**
**ATLANTA, GA 30339**

HOMEOWNERS LOAN
10JIWTLYX

MG 0087

Hall-Frazier
Record - 001124

# DISCLOSURE STATEMENT

LOAN NO. 10065888

NOTICE TO MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RIGHTS. READ THIS STATEMENT AND SIGN IT ONLY IF YOU UNDERSTAND ITS CONTENTS.

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2601 et. seq.) you have certain rights under that federal law. This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the date of the transfer. The new loan servicer must also send you notice within 15 days after the date of the transfer. Also, a notice of prospective transfer may be provided to you at settlement (when title to your new property is transferred to you) to satisfy these requirements. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you under certain limited circumstances, when your servicer is changed abruptly. This exception applies only if your servicer is fixed for cause, as in bankruptcy proceedings, or is involved in a conservatorship or receivership initiated by a federal agency.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, the name, address and toll-free or collect-call telephone number of the new servicer, and toll-free or collect-call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions about the transfer of servicing. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. Not later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of this section.

**Servicing Transfer Estimates by Original Lender**

The following is the best estimate of what will happen to the servicing of your mortgage loan:

1.  __X__   We do not service mortgage loans. We intend to assign, sell, or transfer the servicing of your loan to another party. You will be notified at settlement regarding the servicer.

OR

2.  _____   We are able to service this loan and presently intend to do so. However, that may change in the future. For all the loans that we make in the 12-month period after your loan is funded, we estimate that the chances that we will transfer the servicing of those loans is between:

_____ 0 to 25%   _____ 26 to 50%   _____ 51 to 75%   _____ 76 to 100%

This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. This is our record of transferring the servicing of the loans we have made in the past:

| Year | Percentage of Loans Transferred (Rounded to nearest quartile- 0%, 25%, 50%, 75% or 100%) | |
|------|------|------|
| 2002 | 100 | % |
| 2001 | 100 | % |
| 2000 | 100 | % |

The estimates of 2. and 3. above do not include transfers to affiliates or subsidiaries. If the servicing of your loan is transferred to an affiliate or subsidiary in the future, you will be notified in accordance with RESPA.

HOMEOWNERS LOAN CORP.
Lender

FEBRUARY 27, 2003
Date

ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/we have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below.

Borrower  MARY L. GIBBS            Date  2-27-03

Borrower            Date

Borrower            Date

Borrower            Date

MG 0088

**Hall-Frazier**
**Record - 001125**

## SIGNATURE/NAME AFFIDAVIT

Date: **FEBRUARY 27, 2003**

Loan No.: **10065888**

Borrower: **MARY L. GIBBS**

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

| | |
|---|---|
| **MARY L. GIBBS** | *Mary L. Gibbs* |
| (Print or Type Name) | Signature |
| | |
| (Print or Type Name) | Signature |
| | |
| (Print or Type Name) | Signature |
| | |
| (Print or Type Name) | Signature |

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

| | |
|---|---|
| *Mary Gibbs* | *Mary Gibbs* |
| (Print or Type Name) | Signature |
| *Mary White Gibbs* | *Mary White Gibbs* |
| (Print or Type Name) | Signature |
| | |
| (Print or Type Name) | Signature |
| | |
| (Print or Type Name) | Signature |
| | |
| (Print or Type Name) | Signature |
| | |
| (Print or Type Name) | Signature |

and that all "also known as" names are one and the same as the person(s) listed above.

Subscribed and sworn (affirmed) before me  *Phyllis L. Bordelon*
this  27  day of  *February, 2003* .

*Phyllis L. Bordelon*
Notary Public in and for

the State of *ALABAMA*
County of *BALDWIN*

My Commission Expires:

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Oct 3, 2005
BONDED THRU NOTARY PUBLIC UNDERWRITERS

SIG2OAFF

MG 0089

## FALSE STATEMENT/EMPLOYMENT/OCCUPANCY FORM
## BORROWERS CERTIFICATION

Date: **FEBRUARY 27, 2003**

To: **HOMEOWNERS LOAN CORP.**

Loan No.: **10065888**

Case No.:

Property Address: **155 BAYVIEW DRIVE**
**DAPHNE, AL 36526**

DEPONENTS, being duly sworn, depose and state as follows:

That the mortgagor is currently employed, or if the Residential Loan Application or FHA Form 2900 disclosed both deponents to be employed, they are both currently employed and that such current employment continues with the same employer as disclosed in the above mentioned forms. That the income from employment disclosed in the above forms has not changed.

That all debts or outstanding obligations as of the date of making application were fully disclosed in the above forms. That there have been no new debts or credit obligations incurred from the date of making application to this date.

That in no way has there been any monies borrowed nor any debt incurred to obtain or cover the closing costs for this mortgage nor the downpayment, if any, on the purchase price of the home covered by the above applications, and that the mortgagor has not paid in excess of $ _____ for the said property.  (See HUD Warning below)

      **XX**   That they either now occupy, or intend to occupy within a reasonable time after closing, as their home, the property, on which this mortgage is placed.

      _____  The property, on which this mortgage is placed, has been purchased as an investment property, and they do not intend to occupy.

That they have inspected said property, and the improvements on said property exist in the same condition now as they did when the RESIDENTIAL APPRAISAL REPORT, THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT CONDITIONAL COMMITMENT or the VETERANS ADMINISTRATION CERTIFICATE OF VALUE was issued.

HUD/VA WARNING:  We are aware of and understand that if we fail to move into the property within 90 days, that we are subject to prosecution under Section 1010, Title 18, United States Code, Federal Housing Administration Transactions, and that we are liable to be fined not more than $5,000, or imprisoned not more than two years, or both. We are aware of and understand that other Federal Statutes provide severe penalties for any fraud or misrepresentation made for the purpose of influencing the issuance of any guaranty or insurance or the making of any loan by the Administrator of Veterans Affairs.

CONVENTIONAL WARNING:  It is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the facts in connection with an application for a conventional mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

_Mary L. Gibbs_
_____
Borrower **MARY L. GIBBS**


_____
Borrower


_____
Borrower


_____
Borrower

BORCERT

MG 0090

## COMPLIANCE AGREEMENT

State of:

County of: **BALDWIN**

Lender: **HOMEOWNERS LOAN CORP.**
     **4501 CIRCLE 75 PARKWAY, SUITE F6300**
     **ATLANTA, GA 30339**

Borrower(s): **MARY L. GIBBS**

Property Address: **155 BAYVIEW DRIVE**
     **DAPHNE, AL 36526**

Loan No.: **10065888**

The undersigned Borrower(s) in consideration of the above Lender funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, and or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Housing Authority or the Veterans Administration.

The undersigned Borrower(s) agrees to comply with all above noted requests by Lender within 30 days from date of mailing of said requests by Lender.  Borrower agrees to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with Lender's requests in the above noted time period.

The undersigned Borrower(s) do hereby so agree in order to assume that this loan documentation will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in said loan documentation.

_Mary L. Gibbs_            _2-27-03_
Borrower **MARY L. GIBBS**         Date

_____     _____
Borrower                   Date

_____     _____
Borrower                   Date

_____     _____
Borrower                   Date

State of: _ALABAMA_

County of: **BALDWIN**

The foregoing instrument was acknowledged before me this _27_ day of _FEBRUARY_ , _2003_.
by _MARY L. Gibbs_

_Phillis L. Bradeler_
Notary Public

My Commission expires: NOTARY PUBLIC STATE OF ALABAMA AT LARGE
                  MY COMMISSION EXPIRES: Oct 3, 2005
                  BONDED THRU NOTARY PUBLIC UNDERWRITERS

COMPLI

## APPRAISAL DISCLOSURE

Date: **FEBRUARY 27, 2003**

Loan Number: **10065888**

Lender: **HOMEOWNERS LOAN CORP.**

Borrower(s): **MARY L. GIBBS**

Property Address: **155 BAYVIEW DRIVE**
**DAPHNE, AL 36526**

You have the right to a copy of the appraisal report obtained in connection with your application for credit provided that, if required, you have paid for or are willing to pay for the appraisal. You can get a copy of this report by writing to us at the address listed below. We must hear from you no later than 90 days after you are notified about the action taken on your credit application. (If you withdraw your application, you must make your request for an appraisal report within 90 days of the withdrawal.) In your letter, please provide the following information:

Loan Number (if known): **10065888**

Applicant(s): **MARY L. GIBBS**

Property Address: **155 BAYVIEW DRIVE**
**DAPHNE, AL 36526**

Please forward your request to:

Lender: **HOMEOWNERS LOAN CORP.**
Address: **4501 CIRCLE 75 PARKWAY, SUITE F6300**
**ATLANTA, GA 30339**

Borrower **MARY L. GIBBS**          Date **2-87-03**

Borrower _____          Date _____

Borrower _____          Date _____

Borrower _____          Date _____

APPR03SC

MG 0092

LOAN NUMBER 10065888

## FIRST LIEN/TITLE CLEARANCE LETTER

Date: FEBRUARY 27, 2003

To: HOMEOWNERS LOAN CORP.

Re: Escrow Number:

Borrower(s):    MARY L. GIBBS

Property Address:    **155 BAYVIEW DRIVE**
**DAPHNE, AL  36526**

In connection with the property covered by the captioned title commitment, we wish to advise you that we have closed your mortgage loan and that the ALTA Mortgage Policy will reflect the highest outstanding loan balance of 152,675.00    (including FHA and VA GPM's Highest Outstanding Balance).

This mortgage has been completely disbursed and is a valid first lien on the above captioned property.

Sincerely,

Signature _____    _____ 3-3-03 _____
                                                                                            Date

Title _____

SWAFFORD & HAYS
Title Company

MG 0093

Hall-Frazier
Record - 001130

## E C O A NOTICE

Date: **FEBRUARY 27, 2003**
Lender: **HOMEOWNERS LOAN CORP.**

Loan No.: **10065988**

EQUAL CREDIT OPPORTUNITY ACT

The Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of age, race, color, religion, national origin, sex, marital status, receipt of income from public assistance programs, or the fact that the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency which administers compliance with this law concerning this Lender is: Federal Trade Commission, Sixth & Pennsylvania, Washington, DC 20580.

FAIR CREDIT REPORTING ACT NOTICE

In connection with your application for a loan, please be advised that we will order a credit report regarding your credit experience. This report may contain information on your character, general reputation, personal characteristics or mode of living, in addition to your actual credit experience from persons or firms with which you have done business, your credit worthiness, your credit standing and credit capacity. You have a right given by Federal law to know the nature and scope of the information given in this report if you make a written request for the information. In the event we deny your application or raise the cost of your credit based on this information, you have a right within sixty (60) days to make a written request that we disclose the name and address of the reporting agency used.

FAIR LENDING NOTICE

It is illegal to discriminate in the provision of or in the availability of financing assistance because of the consideration of:

1. Trends, characteristics or conditions in the neighborhood or geographic area surrounding a housing accommodation, unless the financial institution can demonstrate in the particular case that such consideration is required to avoid an unsafe business practice.

or

2. Race, color, religion, sex, marital status, national origin, or ancestry.

It is illegal to consider the racial, ethnic, religious or national origin composition of neighborhood or geographic area surrounding a housing accommodation or whether or not such composition is undergoing change, or is expected to undergo change. In appraising a housing accommodation or in determining whether or not, or under what terms and conditions, to provide financial assistance.

These provisions govern financial assistance for the purpose of the purchase, construction, rehabilitation or refinancing of one to four family residences by the owner and for the purpose of the home improvement of any one to four unit family residence.

If you have any questions about your rights or if your wish to file a complaint, contact the management of this financial institution.

**FEBRUARY 27, 2003**
Date

_____ (Seal)
**MARK L. GIBBS**                 - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

ECOA

MG 0094

## DISBURSEMENT AND FLOOD INSURANCE AUTHORIZATION

Lender: **HOMEOWNERS LOAN CORP.**
**4501 CIRCLE 75 PARKWAY, SUITE F6300**
**ATLANTA, GA 30339**

Date: **FEBRUARY 27, 2003**

Borrower(s): **MARY L. GIBBS**

Loan Number: **10065888**

Property Address: **155 BAYVIEW DRIVE**
**DAPHNE, AL  36526**

### PART I - DISBURSEMENT AUTHORIZATION

We, the purchasers of the above captioned property, hereby advise that the house and all the improvements have been inspected by us and same are hereby accepted in their present condition; and this will serve as authority for the lender to make disbursement of funds to the seller.

### PART II - FLOOD INSURANCE AUTHORIZATION

Regulations effective March 2, 1974, will not permit a lender to close a loan which is insured, guaranteed, or regulated by the Federal Government on property located in an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 without flood insurance.

The undersigned agree that flood insurance will be purchased if the property is located in a special flood hazard area, and if flood insurance is available in the community. The undersigned further agree that if the property is determined to be in such special flood hazard area, and if insurance is available (1) at the time the loan is closed, or (2) after the loan is closed, that we will obtain and pay for such insurance in an amount at least equal to the existing loan balance.

If flood insurance is required as hereinbefore provided, we will pay the premiums for such insurance.

Borrower **MARY L. GIBBS**                           Date 2-27-03

Borrower _____                Date _____

Borrower _____                Date _____

Borrower _____                Date _____

FLOOD

Hall-Frazier
Record - 001132

## FLOOD HAZARD NOTICE

*V/A*

Date: **FEBRUARY 27, 2003**
Loan No.: **10065889**
Borrower(s): **MARY L. GIBBS**

Property Address: **155 BAYVIEW DRIVE**
**DAPHNE, AL 36526**

### NOTICE TO BORROWER OF SPECIAL FLOOD HAZARDS

The improved real estate or mobile home described above is, or will be located, in an area designated by the Director of the Federal Emergency Management Agency as an area having special flood hazards. This area is delineated on Federal Insurance Administration's Flood Insurance Rate Map (FIRM) or, if the FIRM is unavailable, on the Flood Hazard Boundary Map (FHBM). This area has at least a one percent chance of being flooded within any given year. The risk of exceeding the one percent chance increases with time periods longer than one year. For example, during the life of a 30-year mortgage, a structure located in a special flood hazard area has at least a 26 percent chance of being flooded.

### NOTICE TO BORROWER ABOUT FEDERAL DISASTER RELIEF ASSISTANCE

[  ]  <u>Notice to Participating Communities:</u>

The improved real estate or mobile home securing your loan is, or will be located, in a community that is now participating in the National Flood Insurance Program. In the event such property is damaged by flooding in a federally-declared disaster, Federal disaster relief may be available. However, such assistance will be unavailable if your community has been identified as a special flood hazard area for one year or longer and is not participating in the National Flood Insurance Program at the time the assistance would be approved. This assistance, usually in the form of a loan with a favorable interest rate, may be available for damages incurred in excess of your flood insurance.

[  ]  <u>Notice to Non-participating Communities</u>

The improved real estate or mobile home securing your loan is, or will be located, in a community that is not participating in the National Flood Insurance Program. This means that such property is not eligible for Federal flood insurance. In the event such property is damaged by flooding in a federally-declared disaster, federal disaster relief assistance will be unavailable if your community has been identified as a special flood hazard area for one year or longer. Such assistance may be available only if at the time assistance would be approved your community is participating in the National Flood Insurance Program or has been identified as a special flood hazard area for less than one year.

### FLOOD INSURANCE COVERAGE REQUIREMENTS

All federally insured or regulated lenders require the purchase of flood insurance on all structures (not applicable to land) being financed in Special Flood Hazard Areas (SFHA's) for communities participating in the National Flood Insurance Program (NFIP).

The undersigned borrower(s) agree to provide and maintain for the term of the loan, flood insurance in an amount equal to the lesser of:

* the unpaid principal balance of the mortgage, if replacement cost coverage is not available for the type of building insured, or

* the maximum amount of coverage available under the appropriate National Flood Insurance Program.

NOTE: A lending institution, as part of its lending policy, may require a borrower to purchase flood insurance in an amount greater than that required by statute and for buildings outside Special Flood Hazard Areas on the basis of its evaluation of the risk to which the property is exposed.

BY SIGNING BELOW, I/We acknowledge receiving a copy of and reading the above disclosure notice.

Borrower  **MARY L. GIBBS** _____     Date _____

Borrower  _____     Date _____

Borrower  _____     Date _____

Borrower  _____     Date _____

FLOOD16.IL

MG 0096

## ADDRESS CERTIFICATION

Date: **FEBRUARY 27, 2003**          Loan No.: **10065888**

Mortgagor (1): _____ **MARY L. GIBBS** _____
                                                    Print or Type

Mortgagor (2): _____
                                                    Print or Type

Mortgagor (3): _____
                                                    Print or Type

Mortgagor (4): _____
                                                    Print or Type

I hereby request that all mortgage related notices and materials be mailed to me at this location:

_____    Property Address (on file)

_____    Mailing Address

         **155 BAYVIEW DRIVE** _____
         (Street or P.O. Box)

         **DAPHNE, AL 36526** _____
         (City, State, Zip)

Should my mailing address change in the future, I will immediately notify the Note holder's Customer Service Department.

**FEBRUARY 27, 2003** _____
Date

_Mary L. Gibbs_ _____          **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** _____
Borrower - **MARY L. GIBBS**                    Social Security No.

_____          _____
Borrower -                                      Social Security No.

_____          _____
Borrower -                                      Social Security No.

_____          _____
Borrower -                                      Social Security No.

(    ) - _____    Business Phone
(    ) - _____    New Home Phone (if known)

Note:    Acknowledgement by Note holder of a mailing address which differs from the property address does not constitute
         an implied waiver of any owner-occupancy provision carried in the mortgage documents.

BLADDRCRT

MG 0097

## AFFIDAVIT OF OCCUPANCY

STATE OF *ALABAMA*                    }
                                      } SS.        Loan Number:  **10065888**
COUNTY OF **BALDWIN**                 }


**155 BAYVIEW DRIVE**
**DAPHNE, AL  36526**
[Property Address]

Before me, the undersigned authority duly authorized to take acknowledgments and administer oaths personally appeared:

**MARY L. GIBBS**


("Affiants") who, upon being duly sworn, depose and say as follows:

1.  Affiants hereby certify that, upon taking title to the real property described above, their occupancy status will be as follows:

[ **X** ]  1.1 **Primary Residence:** Occupied by owner as his/her principal residence and entitled to receive, under law, Homestead Exemptions for taxes and/or creditor exemptions.

[   ]  1.2 **Secondary Residence:** Occupied by owner as second home (vacation, etc.) while maintaining principal residence elsewhere.
(NOTE: Please mark this box if property will initially be a second home but you plan to establish it as your primary residence at a future date (i.e., retirement)).

[   ]  1.3 **Investment Property:** Not owner occupied. Purchased as an investment to be held or rented.

2.  Affiants acknowledge that this Affidavit of Occupancy is given as a material inducement to cause:

**HOMEOWNERS LOAN CORP.**

to make a mortgage loan to Affiants and that any false statements, misrepresentations or material omissions shall constitute a breach of the Affiant's obligation to:

**HOMEOWNERS LOAN CORP.**

and that all the provisions of the mortgage indenture concerning default on the Promissory Note will thereupon be in full force and effect.

3.  Affiants further acknowledge that they have read and understand the following:
    **18 United States Code Section 1014:**
    "Whoever knowingly makes any false statement or report...for the purpose of influencing in any way the action of...any institution the accounts of which are insured by the Federal Savings and Loan Insurance Corporation...any member of the Federal Home Loan Bank System, the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation...upon any application...or loan...shall be fined not more than $5,000.00 or imprisoned not more than 2 years or both".

4.  The agreements and covenants contained herein shall survive the closing of the mortgage loan transaction.


*Mary L. Gibbs* _____ (Seal)        _____ (Seal)
**MARY L. GIBBS**               - Borrower                                    - Borrower

                               _____ (Seal)        _____ (Seal)
                                              - Borrower                                    - Borrower

State of: *ALABAMA*
County of: *BALDWIN*

On  **FEBRUARY 27, 2003**                          , before me, the undersigned, a notary public in and for said County and State, personally appeared
     **MARY L. GIBBS**

proved to me on the basis of satisfactory evidence to be the person(s) whose name is/are subscribed to this instrument, and acknowledged that he/she/they executed the same.


_____
NOTARY PUBLIC

OCCUPAT        NOTARY PUBLIC STATE OF ALABAMA AT LARGE
               MY COMMISSION EXPIRES: Oct 3, 2005
               BONDED THRU NOTARY PUBLIC UNDERWRITERS


MG 0098

## BORROWER'S CERTIFICATION AND QUALITY CONTROL AUTHORIZATION

**LOAN NO. 10065888**

As part of an ongoing effort to assure that all mortgage loans are originated in accordance with accepted standards of professional ethics and business practices, a quality control audit is performed on a random sampling of loans. As a result of this sampling, an audit may be performed on your loan before or after closing.

### Certification

The undersigned Certify the following:

1. I/We have applied for a mortgage loan from **HOMEOWNERS LOAN CORP.** (the Lender). In applying for the loan, I/we completed a loan application containing various information on the purpose of the loan, the amount and source of the downpayment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/we omit any pertinent information.

2. I/We understand and agree that **HOMEOWNERS LOAN CORP.** (the Lender) reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### Authorization to Release Information

To Whom It May Concern:

1. I/We have applied for a mortgage loan from **HOMEOWNERS LOAN CORP.** (the Lender). As part of the application process or the quality control audit, **HOMEOWNERS LOAN CORP.** (the Lender) and the mortgage guaranty insurer (if any), may verify or re-verify information contained in my/our loan application and in other documents required in connection with the loan, either before or after the loan is closed.

2. I/We authorize you to provide to **HOMEOWNERS LOAN CORP.** (the Lender) or a third party authorized by the Lender, and to any investor to whom **HOMEOWNERS LOAN CORP.** (the Lender) may sell my mortgage and to the mortgage guaranty insurer (if any), any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. **HOMEOWNERS LOAN CORP.** (the Lender) or any investor that purchases the mortgage, or the mortgage guaranty insurer (if any), may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to **HOMEOWNERS LOAN CORP.** (the Lender) or the investor that purchased the mortgage or the mortgage guaranty insurer (if any) is appreciated.

6. Mortgage guaranty insurer (if any):

Borrower MARY L. GIBBS                    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
                                          Social Security Number

Borrower                                  Social Security Number

Borrower                                  Social Security Number

Borrower                                  Social Security Number

QCAUTH

MG 0099

Date: **FEBRUARY 27, 2003**

Loan Number:   **10065888**

Lender:   **HOMEOWNERS LOAN CORP.**
          **4501 CIRCLE 75 PARKWAY, SUITE F6300**
          **ATLANTA, GA 30339**

Borrower(s):   **MARY L. GIBBS**

Property Address:   **155 BAYVIEW DRIVE**
                    **DAPHNE, AL   36526**

## QUALITY CONTROL RELEASE

I/We authorize the Lender to re-verify all of the information contained in my/our loan application for the purpose of quality control. This authorization includes, but is not limited to, my/our credit, employment, bank accounts, mortgage/rental history, occupancy status and the appraisal. It is understood that the quality control procedure may be performed before or after the closing of my/our loan.

_Mary L. Gibbs_                                    2-27-03
Borrower/**MARY L. GIBBS**                          Date

_____                          _____
Borrower                                          Date

_____                          _____
Borrower                                          Date

_____                          _____
Borrower                                          Date

qcrel

MG 0100

**Hall-Frazier**
**Record - 001137**

## DOCUMENT COPY POLICY/RECEIPT
## ACKNOWLEDGMENT

Lender: **HOMEOWNERS LOAN CORP.**

Settlement Agent

Loan #:  **10065888**
Borrower: **MARY L. GIBBS**

Settlement Agent:
**SWAFFORD & HAYS**

Lender requires borrowers to receive a complete copy of our closing documents at the time of document signing.

I hereby accept the responsibility to copy/distribute borrower(s) copy packages as necessary to comply with Lender's document copy policy.

_____          _____
Settlement Agent                                          Date

**Borrower's Acknowledgment**

I/We the borrower(s) for the following transaction:

Loan #: **10065888**

Property Address:   **155 BAYVIEW DRIVE
                                  DAPHNE, AL 36526**

Loan Amount:   **152,875.00**

acknowledge receipt of a copy of our loan documents from our settlement agent.

**FEBRUARY 27, 2003**
Date

_____ (Seal)
**MARY L GIBBS**                                     - Borrower

_____ (Seal)
                                                                - Borrower

_____ (Seal)
                                                                - Borrower

_____ (Seal)
                                                                - Borrower

HLDOCACK

MG 0101

**Hall-Frazier**
**Record - 001138**

Loan No.   10065888
Case Number:
Case Name:
**MARY L. GIBBS**

Property Address:
**155 BAYVIEW DRIVE**
**DAPHNE, AL 36526**

## FLOOD INSURANCE CERTIFICATE

This is to certify that to the best of our knowledge all provisions of the Flood Disaster Protections Act of 1973 were complied with at the time of closing the subject loan.

The subject property

_____   is not in a special flood hazard area (flood insurance is not required)

_____   is in a special flood hazard area (flood insurance is required and must be obtained prior to closing)

The above information was obtained from

_____   special flood hazard area map #

_____   other

Dated:  __**FEBRUARY 27, 2003**__

_____
Signature and Title

H3-FLOOD

MG 0102

Loan No.   10065888

### HARDSHIP LETTER

I/We,    **MARY L. GIBBS**

am/are aware that my/our first payment is due on    **APRIL 4, 2003**    , and that I/We will make a full payment on that date. I/We realize that our first payment is less than 30 days from the date of funding and herein state that this does not create a financial hardship on me/us.

I/We realize that by the loan "funding into the month", the amount of interest payable to the lender at the end of the month is greater than the amount of interest due the lender by me/us from the funding date of the loan. A refund check for the interest accruing from the first day of the month until the funding date of the loan will be mailed to me/us directly from **HOMEOWNERS LOAN CORP.**    upon    funding of the loan.

I/We acknowledge that this agreement is between    **HOMEOWNERS LOAN CORP.** and me/us and that no other parties are affected by this agreement.

_____ (Seal)
**MARY L. GIBBS**    - Borrower

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

HARDSHIP

MG 0103

## CASH OUT LETTER

Lender:  HOMEOWNERS LOAN CORP.

Borrower(s): MARY L. GIBBS

Property Address: 155 BAYVIEW DRIVE
DAPHNE, AL 36526

I/We will use the proceeds from this loan for:

☐ Home Improvements

☐ Purchase a Vehicle

☐ Vacation

☐ Educational Expenses

☐ Purchase Property

☑ Other: _____

Date: FEBRUARY 27, 2003

_____ (Seal)
MARY L. GIBBS                     - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

_____ (Seal)
                                  - Borrower

RECASHOUT

MG 0104

File No.: 11549

# AFFIDAVIT

The undersigned affiant(s) do hereby state the following:

1. That there are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between February 7, 2003 and the recording of the interest to be insured.

2. That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured.

3. That there are no unrecorded special assessments liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to the county or municipality.

The real estate and improvements referred to herein are situated in the County of Baldwin, State of Alabama, and are described as follows, to-wit:

155 Bayview Dr., Daphne, AL 36526

---

February 27, 2003                          *James C. Hibbs.*
Date                                       James C. Gibbs

                                           *Mary L. Hibbs*
                                           Mary L. Gibbs

---

STATE OF ALABAMA
COUNTY OF BALDWIN
Sworn to and subscribed before me this  *FEBRUARY 27, 2003.*

                                           *Phillip L. Batchelor*
                                           Notary Public

My Commission expires:

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Oct 2, 2005
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Rev. 4/00                        Page 1 of 1                        Loan No.:

MG 0105

File No.: 11549

# AFFIDAVIT AS TO LIENS AND ENCUMBRANCES

On this February 27, 2003, before me personally appeared James C. Gibbs and Mary L. Gibbs, as joint tenants with right of survivorship, Owner of property and/or General Contractor, to me personally known, who, being duly sworn on (his /their) oath(s), did say that all of the persons, firms and corporations, including the general contractor and all subcontractors who have furnished services, labor or materials according to plans and specifications, or extra items, used in the constructions or repair of buildings and improvements on the real estate hereinafter described, have been paid in full and that such work has been fully completed and accepted by the owner.

Affiant further says that no proceedings in bankruptcy or receivership have been instituted by or against him/them.

Affiant further says that no claims have been made to affiant by, nor is any suit now pending on behalf of any contractor, subcontractor, laborer or materialman, and further that no chattel mortgages, conditional bills of sale, retention of title agreements, security agreements, financing statements, or personal property leases have been given or are outstanding as to any fixtures, appliances, or equipment which are now installed in or upon said real property, or the improvements thereon.

Affiant further says that there are no outstanding deeds of trust, mortgages, judgment liens, mechanic's or materialmen's liens filed of record or unfiled claims or any other liens or encumbrances of any kind except as follows:

- NONE -

Affiant on behalf of said Owner of Property and/or General Contractor does for a valuable consideration hereby agree and guarantee to hold
NONE (by reason of the fact that it has issued its title insurance policies), harmless against any liens, claims or suit of or by any general contractor, subcontractor, mechanic or materialman, and against chattel mortgages, conditional bills of sales, retention of title agreements, security agreements, financing statements, or personal property leases in connection with the construction, repair or sale of such building or improvements on said real estate.

The real estate and improvements referred to herein are situated in the County of Baldwin, State of Alabama, and are described as follows, to-wit:

155 Bayview Dr, Daphne, AL 36526

February 27, 2003
_____
Date

*James C. Gibbs*
James C. Gibbs

*Mary L. Gibbs*
Mary L. Gibbs

STATE OF ALABAMA
COUNTY OF BALDWIN

Sworn to and subscribed before me this *FEBRUARY 27, 2003.*

*Phyllis L. Bedsole*
Notary Public

My Commission expires:

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: Oct 3, 2005
BONDED THRU NOTARY PUBLIC UNDERWRITERS

Rev. 4/88                    Page 1 of 1                    Loan No.:

MG 0106

JAN 03 2003 1:31PM    HP LASERJET 3200                                    P.2

## NOTICE AND WAVIER OF TITLE INSURANCE

Borrower(s):  Mary L. Gibbs               Date: 2-27-03
              James C. Gibbs

Property
Address:  155 BAYVIEW DR.
          DAPHNE, AL 36526

Lender: _____

I / We have been notified by the person conducting or handling the settlement of this transaction that I / we may obtain owner's title insurance coverage.

_____  I / We desire to purchase owner's title insurance coverage.  Further information will be furnished upon my request.

___✓___  I / We do not desire to purchase owner's title insurance coverage.

I / We have read the above notice and waiver and acknowledge receiving a copy by signing below.

_James C. Gibbs_____ Date: 2-27-03
_Mary L. Gibbs_____ Date: 2-27-03
_____ Date: _____
_____ Date: _____

## BORROWER'S CERTIFICATION

If the amounts collected for my / our mortgage on the Settlement Statement are insufficient due to escrow shortages or escrow disbursement, I / we will work with Swafford & Hays Settlement Services to make sure that I / we will wire funds to their escrow account within 24 hours of notification to complete this payoff. I / We understand that all efforts to obtain correct payoff(s) will be used.

_James C. Gibbs_____ Date: 2-27-03
_Mary L. Gibbs_____ Date: 2-27-03
_____ Date: _____
_____ Date: _____

Swafford & Hays Settlement Services    224 S. Peters Road    Suite 205
Knoxville, Tennessee 37923    888.272.3915 - Phone    865.539.2442 - Fax

MG 0107

## COMMITMENT

SCHEDULE B - Section 1

Commitment Number: CM-1-1581-9460

File Number: 11549

### Requirements

The following are the requirements to be complied with:

1.  Instrument(s) creating the estate or interest to be insured must be approved, executed and filed for record, to wit:

    a.  Mortgage executed by James C. Gibbs and Mary L. Gibbs, securing HomeOwners Loan Corporation, must be properly executed and recorded.

2.  Payment of the full consideration to, or for the account of, the grantors or mortgagors.

3.  Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

4.  Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

5.  Exceptions 3 and 4 of Schedule B - Section 2 of this commitment may be amended to or deleted from the policy to be issued if a survey, satisfactory to Company, is furnished to Company.

6.  Affidavit to be executed by James C. Gibbs and Mary L. Gibbs, as joint tenants with right of survivorship, stating: 1) There are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between February 7, 2003 and the recording of the interest to be insured. 2) That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured. 3) That there are no unrecorded special assessments liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to the county or municipality.

7.  Satisfy and release mortgage executed by James C. Gibbs and Mary L. Gibbs, husband and wife, dated March 5, 2002 and recorded March 12, 2001, in Instrument No. 586279, in the Office of the Judge of Probate of Baldwin County, Alabama, securing SouthTrust Mortgage Corporation, in the principal amount of $100,000.00.

8.  Tax ID# 05-32-09-32-0-005-003.000
9.  2002 property taxes were exempt.
10. 2003 property taxes are exempt.

SC-2 (REV. 2/03)

MG 0108

HOMEOWNERS LOAN    Fax:770-612-6314    Feb 26 2003  15:41  P.02
FEB. 26. 2003  2:28PM  S  D HOSP    NU. 014

*Real 699 page 1924*

## South Baldwin Regional Medical Center
### Hospital Lien Release

State of Alabama
County of Baldwin

For and in consideration of the sum of **390.75** Dollars
to me in hand paid this date, the receipt of which is hereby acknowledged, South Baldwin
Regional Medical Center hereby release from a certain lien filed by South Baldwin
Regional Medical Center in the Office of the Clerk of Baldwin County,
State of Alabama, on the **26** day of **Feb**
For the sum of **390.75** Dollars due the hospital for labor and
services and/or materials, and I do hereby declare said lien fully satisfied.

WITNESS my hand and seal this **26** day of **Feb**, **2003**

Signed *Jamie Armstrong*
Title *BO D*

State of Alabama
County of Baldwin,    ss: 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
On this **26** day of **Feb**, **2003** personally
Appeared before me *Jamie M Armstrong* and he acknowledged the he executed
the foregoing release of lien for the purposes therein expressed.

Notary Public *Vickie J Sandusky*

MY COMMISSION EXPIRES

HOMEOWNERS LOAN        Fax:770-612-8314            Feb 26 2003  15:41   P.03
FEB. 26. 2003  2:28PM   GOLD HOSP                                    NO. 614   P. 3

3-7-37

Ø51
621 0046

MG 0110

FEB. 26. 2003  2:28PM  ●ALD HOSP          Feb 26 2003  15:29  P.01
                                                        NO. 614  P. 1

AT
Azure

# SOUTH BALDWIN
## REGIONAL MEDICAL CENTER

1613 NORTH McKENZIE STREET
FOLEY, ALABAMA 36535

PHONE: (334) 952-3408
FAX: (334) 952-3557

DATE: 2-26-03                    # OF PAGES: ③
                                 (INCLUDING COVER SHEET)

AZURE  TO: ~~Michael Suttall~~    LOCATION: _____

FROM: Vickie Sandusky    DEPARTMENT: _____

### MESSAGE

Mary Gibbs
_____
_____
_____
_____

The information contained in this faxed report is CONFIDENTIAL and is intended only for the use of the individual or entity named above. If the reader is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATIONS IS STRICTLY PROHIBITED. If you have received this communication in error, please notify us immediately by telephone and return the original message to us via the U.S. Postal Service.

MG 0111

FEB. 26. 2003  2:28PM    ALD HOSP

Feb 26 2003  15:29    P.02
NO. 614   P. 2

*Real 699 page 1924*

## South Baldwin Regional Medical Center
### Hospital Lien Release

State of Alabama
County of Baldwin

For and in consideration of the sum of _390.75_ Dollars
to me in hand paid this date, the receipt of which is hereby acknowledged, South Baldwin
Regional Medical Center hereby release from a certain lien filed by South Baldwin
Regional Medical Center in the Office of the Clerk of Baldwin County,
State of Alabama, on the _26_ day of _Feb_
For the sum of _390.75_ Dollars due the hospital for labor and
services and/or materials, and I do hereby declare said lien fully satisfied.

WITNESS my hand and seal this _26_ day of _Feb_, _2003_

Signed _Janice Armstrong_
Title _BaD_

State of Alabama
County of Baldwin,
On this _26_ day of _Feb_    ss: _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_
Appeared before me _Janice B Armstrong_ and he acknowledged the he executed
the foregoing release of lien for the purposes therein expressed.

Notary Public _Vickie J Sindurski_

MY COMMISSION EXPIRES MAY 26 2006

Hall-Frazier
Record - 001149

FEB. 26. 2003  2:28PM    ALD HOSP

Feb 26 2003  15:30  P.03
NO. 614  P. 3

3-7-37

61 0046

MG 0113

**Hall-Frazier**
**Record - 001150**

HOMEOWNERS LOAN      Fax:770-612-8314          Feb 26 2003  15:40    P.01
FEB. 26. 2003  2:28PM   S BLD HOSP                              NU. 014

ATT
Azure

## SOUTH BALDWIN
## REGIONAL MEDICAL CENTER

### 1613 NORTH McKENZIE STREET
### FOLEY, ALABAMA 36535

PHONE: (334) 952-3498
FAX: (334) 952-3557

DATE: 2.26.03                          # OF PAGES: ③
                                        (INCLUDING COVER SHEET)

Azure TO: ~~Michael Suttall~~          LOCATION: _____

FROM: Vickie Sandusky    DEPARTMENT: _____

MESSAGE

Mary Gibbs

The information contained in this faxed report is CONFIDENTIAL and is intended only for the use of the individual or entity named above. If the reader is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATIONS IS STRICTLY PROHIBITED. If you have received this communication in error, please notify us immediately by telephone and return the original message to us via the U.S. Postal Service.

MG 0114

HOMEOWNERS LOAN       Fax:770-612-8314       Feb 25 2003  16:31.   P.02

**COMMITMENT**

SCHEDULE B - Section 1

Commitment Number: CM-1-1581-9460

File Number: 11549

**Requirements**

The following are the requirements to be complied with:

1. Instrument(s) creating the estate or interest to be insured must be approved, executed and filed for record, to wit:

   a. Mortgage executed by James C. Gibbs and Mary L. Gibbs, securing HomeOwners Loan Corporation, must be properly executed and recorded.

2. Payment of the full consideration to, or for the account of, the grantors or mortgagors.

3. Payment of all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

4. Satisfactory evidence should be had that improvements and/or repairs or alterations thereto are completed; that contractor, subcontractors, labor and materialmen are all paid.

5. Exceptions 3 and 4 of Schedule B - Section 2 of this commitment may be amended in or deleted from the policy to be issued if a survey, satisfactory to Company, is furnished to Company.

6. Affidavit to be executed by James C. Gibbs and Mary L. Gibbs, as joint tenants with right of survivorship, stating: 1) There are no matters pending against the affiant(s) that could give rise to a lien that would attach to the property between February 7, 2003 and the recording of the interest to be insured. 2) That the affiant(s) have not and will not executed any instruments that would adversely affect the interest to be insured. 3) That there are no unrecorded special assessments liens or unrecorded liens arising by virtue of ordinances, unrecorded agreements as to impact or other development fees, or unpaid waste fees payable to the county or municipality.

7. Satisfy and release mortgage executed by James C. Gibbs and Mary L. Gibbs, husband and wife, dated March 5, 2002 and recorded March 12, 2001, in Instrument No. 586279, in the Office of the Judge of Probate of Baldwin County, Alabama, securing SouthTrust Mortgage Corporation, in the principal amount of $100,000.00.

8. Satisfy and release judgment in favor of South Baldwin Hospital, filed July 22, 1996, in Book 699 at page 1924, in the Office of the Judge of Probate of Baldwin County, Alabama, against Mary Gibbs, in the principal amount of $390.75. *[handwritten]*

9. Satisfy and release judgment in favor of Jacqueline M. Tucker, filed October 6, 1995, in Book 649 at page 1793, in the Office of the Judge of Probate of Baldwin County, Alabama, against Ja... Gibbs ... in the principal amount of $1,534.64.

10. Tax ID# 05-32-09-32-0-005-003.000

11. 2002 property taxes were exempt.

*[handwritten: OK TO REMOVE?]*

Documentation *[handwritten]*

*[handwritten notes:]*

Vicki

251
fax: 949-3557
@ Hospital    no
do non-id?

SC-3 (REV. 2/93)

MG 0115

Hall-Frazier
Record - 001152

HOMEOWNERS LOAN    Fax:770-612-8314    Feb 25 2003  16:30    P.01

## HOMEOWNERS LOAN

*Helping Homeowners Achieve Their Dreams*

## *Fax Cover Sheet*

Date:  02/25/03
To:  AZURE
Company:  BRAFORD
Phone:
Fax:  865-539-2442

From:  HOMEOWNERS LOAN CORP.
Attn:
Phone:  888-985-1119
Fax:  251-438-4933
Number of Pages:  2

## Comments

HELLO

PLEASE REFERENCE #11549

1) LIEN #8 FOR BALDWIN HOSPITAL IS NOT MRS. MARY GIBBS ACCOUNT.

2) LIEN #9 IN FAVOR OF JACQUELINE M TUCKER HAS LONG BEEN
   SATISFIED. MR. GIBBS HAS NO RECORD DUE TO AGE OF LIEN.

PLEASE UPDATE AND EAMIL NEW COMMITMENT, TRYING TO CLOSE
2/26/03

THANK YOU
MICHAEL SWETELL

NOTICE OF CONFIDENTIALITY

All documents/information contained in this facsimile are confidential and are legally privileged and intended only for the person or entity named above. If you are not the intended recipient, BE ADVISED that ANY disclosure, copying, distribution or use of the contents of this information is PROHIBITED. If you have received this facsimile in error, please notify us by return telephone or facsimile immediately so that we can arrange the retrieval of the original documents at no cost to you.

MG 0116

02/26/2003 12:13   281  8816          Feb 26 2003  13:30   P.02
                                    MBE #3997 N.DAPHNE          PAGE 01

580-2874

# OFFICE OF THE DISTRICT ATTORNEY
### TWENTY-EIGHTH JUDICIAL CIRCUIT
### CHILD SUPPORT DIVISION
#### Baldwin County

John D. Whetstone
District Attorney

Carmen E. Bosch
Assistant District Attorney



P. O. Box 146
Bay Minette, AL 36507
334-937-0259
334-943-5611 ext. 259
334-928-0860 ext. 259

October 9, 1996

VIA Facsimile

AmSouth Bank
Daphne, AL 36526

RE: JAMES C. GIBBS

Dear Peggy:

As of today's date the records held by the Department of Human Resources indicate Mr. Gibbs no longer owes Child Support arrears. If you need additional information, please do not hesitate to call me.

Sincerely,

Carmen E. Bosch
Assistant District Attorney

MG 0117



02/26/2003 12:13   281 █ 58816          Feb 26 2003  13:30   P.03
                                        MBE #3997 N.DAYNE         PAGE  82

CVLJ2612

ALABAMA JUDICIAL DATA CENTER
CERTIFICATE OF JUDGMENT

PHYLLIS ASSETT

IN THE DISTRICT COURT OF BALDWIN        COUNTY
STATE OF ALA EX REL. JACQUELINE M. TUCKER VS. JAMES C. OZBND

DEFENDANT                               PARTY'S ATTORNEY
OZBND JAMES C.
188 BAYVIEW DRIVE                       BAY MINETTE      : AL  36607
           : AL  36526-0009

I, JACKIE M. CALHOUN      , CLERK OF THE ABOVE NAMED COURT HEREBY
CERTIFY THAT ON 12/14/96 PLAINTIFF, TUCKER JACQUELINE M.  RECOVERED
OF DEFENDANT IN SAID COURT A JUDGMENT FOR THE
SUM OF    $2,394.84 DOLLARS PLUS     0.00 DOLLARS COURT COSTS, AND
THAT THE PLAINTIFF'S ATTORNEY(S) OF RECORD WAS  KOSCH, DARREN ELENA

        $334.04

GIVEN UNDER MY HAND THIS DATE 04/26/96

CLERK

PLAINTIFF'S ATTORNEY:

KOSCH, DARREN ELENA

BAY MINETTE  AL  36607

CONTACT
MR. Brunce Ikner
251-580-2874

MG 0118

Feb 26 2003  13:30    P.01

## HOMEOWNERS
## LOAN
*Helping Homeowners Achieve Their Dreams*

# *Fax Cover Sheet*

Date:    02/26/03
To:    AZURE
Company:    SWAFORD
Phone:
Fax:    865-539-2442

From:    HOMEOWNERS LOAN CORP.
Attn:
Phone:    888-985-1119
Fax:    251-438-4933
Number of Pages:    3

### Comments

HELLO: AZURE

1) LIEN #8 FOR BALDWIN HOSPITAL IS NOT MRS. MARY GIBBS ACCOUNT.

2) LIEN#9 PROVIDING A LETTER OF SATISFACTION OF CHILD SUPPORT
   DATED OCTOBER 9 ,1996.

PLEASE UPDATE AND EAMIL NEW COMMITMENT, TRYING TO CLOSE

THANK YOU
MICHAEL SNETELL

NOTICE OF CONFIDENTIALITY
All documents/information contained in this facsimile are confidential and are legally privileged and intended only for the person or entity named above. If you are not the intended recipient BE ADVISED that ANY disclosure, copying, distribution or use of the contents of this information is PROHIBITED. If you have received this facsimile in error, please notify us by return telephone or facsimile immediately so that we can arrange the retrieval of the original documents at no cost to you.

MG 0119

 

Feb 12 2003  15:00   P.01

## HOMEOWNERS LOAN
*Helping Homeowner Achieve Their Dreams*

### REQUEST FOR TITLE WORK

To:
Attn:   SWAFFORD & HAYS
Phone:  888-272-2915
Fax:    888-827-2916

RECEIVED
FEB 1 2 2003
BY: *M.L.*

---

*LENDER INFORMATION*

Date: 02/12/03

Branch: ATLANTA

Branch Address: 4501 CIRCLE 75 PARKWAY, SUITE F6300
ATLANTA, GA 30339

Loan Officer: Michael Swatell          Loan Processor: ?
Phone:  888-985-1119
Fax:    800-754-0707

---

*BORROWER INFORMATION*

Borrower: MARY GIBBS
Social Security Number: 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          Date of Birth:
Home Phone: 251-621-0446                     Work Phone: 251-621-0446
Current Marital Status:

Co-Borrower:
Social Security Number:                      Date of Birth:
Home Phone:                                  Work Phone:
Current Marital Status:

---

*PROPERTY INFORMATION*

Property Address: 155 BAYVIEW DR
DAPHNE, AL 36526

County:   BALDWIN

Property Type:  SFR          Number of Units:  1

Year Acquired:  94

Current Mortgage Holder:  CHASE MANHATAN

Legal Description:

---

*LOAN INFORMATION*

Loan Amount: $  180,000.00          Lien Position:  FIRST
Loan Purpose: REFINANCE
Estimated Close Date:

*Special Instructions:*

Homeowners Loan - Title Request
HLTITLE (Rev 7-00)

MG 0120

02/14/03  12:24 FAX 1 334 687 1027                                      @001/009

## A & B Abstracts, Inc.

| | | |
|---|---|---|
| 2725 Calhoun Drive<br>Abbeville, AL 36310 | Phone: 334-687-4846<br>Fax:    334-687-1027<br>Email: ababstracts@earthlink.net | A & B ABSTRACTS, INC.<br>Covering Counties in Alabama, Georgia,<br>Mississippi, and North West Florida |

A&B# 3-29124

| NAME: Mary Gibbs | ADDRESS: | 155 Bayview Drive<br>Daphne, AL 36526 |
|---|---|---|
| | COUNTY: | Baldwin |

| | |
|---|---|
| CURRENT DEED: SWD | TAX INFORMATION |
| GRANTOR: Daya Builders, Inc. | PARCEL ID # 05-32-09-32-0-005-003.000 |
| GRANTEE: James C. Gibbs and Mary L. Gibbs | YEAR: 2002          Status: Exempt |
| DATED:    6/24/94<br>FILED:    7/6/94<br>BOOK:     582<br>PAGE:     1207 | Assessed Value: $13,800.00<br><br>Legal Description:<br><br>See Deed |

| | |
|---|---|
| FIRST MORTGAGE    Amt: $ 100,000.00 | SECOND MORTGAGE    Amt: $ |
| Date of Mtg.:  3/5/01    Date Filed: 3/12/01 | Date of Mtg.:          Date Filed: |
| Instrument # 586279 | Book:          Page: |
| Mortgagee:  SouthTrust Mortgage Corporation | Mortgagee: |
| Assigned: | Assigned: |
| Mortgagor:  James C. Gibbs & Mary L. Gibbs,<br>husband and wife | Mortgagor: |

| | |
|---|---|
| LIENS: | 699p1924 South Baldwin Hospital vs. Mary Gibbs $ 390.75 Filed: 7/22/96 |
| JUDGMENTS: | 649p1793 Jacqueline M. Tucker vs. James C. Gibbs $1,334.64 + $9.00 court cost<br>Filed: 10/6/95 |
| EASEMENTS: | Subject to R-O-W, Setback Lines, and Easements of Record |
| UCC: | None of Record |
| CCR's: | Subject to any Covenants, Restrictions, or Conditions of Record. |
| Note: | |

## PROBATE RECORDS CHECKED FROM 7/6/94 THROUGH 2/7/03

MG 0121

**Hall-Frazier**
**Record - 001158**



02/14/03  12:24 FAX 1 334 887 1027                                    ☒003/009

FROM :                          FAX NO.              Oct. 02 2002 07:55PM  P4

STATE OF ALABAMA]
COUNTY OF BALDWIN]

WARRANTY DEED

KNOW ALL MEN BY THESE PRESENTS that DATA BUILDERS, INC., an Alabama corporation, hereinafter referred to as GRANTOR, for and in consideration of the sum of TEN AND NO/100 ($10.00) DOLLARS and other good and valuable consideration, hereby acknowledged to have been paid as it by the grantees, does hereby GRANT, BARGAIN, SELL and CONVEY unto JAMES C. GIBBS AND MARY D. GIBBS, as tenants in common with equal interests during the period of their concurrent lives and upon the death of either of them, then to the survivor of them in fee simple, hereinafter referred to as GRANTEES, their heirs and assigns, forever, all of the following described property situated in Baldwin County, Alabama, to-wit:

Lot 46, Lake Forest, Unit 7, as recorded in Map Book 7, Page 96, in the Office of the Judge of Probate, Baldwin County, Alabama.

SUBJECT TO:

1.  Building setback line and drainage and utility line easements as shown the recorded plat of said subdivision.
2.  Conveyance of all oil, gas and other minerals and all rights in connection therewith by Lake Forest, Inc. to Disrealmes Corporation by instrument dated January 29, 1972 and recorded in Deed Book 421, Page 703.
3.  Agreement of parties between Baldwin County, Alabama and Lake Forest Property Owners Association, Inc., dated April 15, 1968 and recorded in Real Property Book 251, Page 397.
4.  Declaration of Restrictions, Conditions, Easements, Covenants, Agreements, Liens, and Charges of Lake Forest, Inc., Unit 7, as contained in instrument by Lake Forest, Inc., dated June 14, 1971 and recorded in Miscellaneous Book 22, Page 691, as amended by that certain Amendment to Declaration of Restrictions, Conditions, Easements, Covenants, Agreements, Liens, and Charges of Lake Forest, Inc., dated December 13, 1973 and recorded in Miscellaneous Book 26, Page 1-9, as further amended by that certain Second Amendment of Declaration of Restrictions, Conditions, Easements, Covenants, Agreements, Liens, and Charges of Lake Forest, Inc., dated October 5, 1976 and recorded in Miscellaneous Book 85, Pages 535-539, as amended by instrument dated June 13, 1977 and recorded in Miscellaneous Book 27, Pages 396-385, and further subject to finding of facts, Conclusion of Law and Order dated October 2, 1986 recorded in Real Property Book 286, Page 1239.
5.  Subject to the Lake Forest Property Owners Association, Inc., By Laws, as amended October 10, 1988 and recorded in Miscellaneous Book 68, Page 931. By Laws of Lake Forest Property Owner's Association, Inc., dated July 27, 1971 and recorded in Corporate Book 10, Page 595 and amended in Real Property Book 251, Page 989.

Together with all and singular, the rights, members,

MG 0122

02/14/03  12:26 FAX 1 334 687 1027                                    ☑004/009



MG 0123

Hall-Frazier
Record - 001160

02/14/03  12:25 FAX 1 334 687 1027                                    005/009

FROM :                          FAX NO. :              Oct. 02 2002 07:59PM  P8

MORTGAGE

02/14/03  12:26 FAX 1 334 887 1027                                    @006/009

FROM :                    FAX NO. :              Oct. 22 2002 08:02PM  P9





Hall-Frazier
Record - 001163

A & B Abstracts, Inc.

2725 Calhoun Drive
Abbeville, AL 36310

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/14/2003 | 3-29124 |

**PAID**

**Bill To**

Swafford and Hays Settlement Services
9041 Executive Park Drive
Suite 400
Knoxville, Tn. 39723

| P.O. No. | Terms | Due Date | Ship Date | Ship Via |
|----------|-------|----------|-----------|----------|
| M. Gibbs | Net 30 | 3/16/2003 | 2/14/2003 | fax |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| Current Owner Se... | Mary Gibbs-Baldwin County, AL. | 1 | 90.00 | 90.00 |

**PLAINTIFF'S EXHIBIT**

2B

SCO

| | |
|---|---|
| **Total** | $90.00 |
| **Payments/Credits** | $-90.00 |
| **Balance Due** | $0.00 |

**Hall-Frazier**
**Record - 001164**

# CLOSING INSTRUCTIONS

Lender: **HOMEOWNERS LOAN CORP.**
      **4501 CIRCLE 75 PARKWAY, SUITE D4300**
      **ATLANTA, GA  30339**

Loan Closer: **JENNIFER BARON**
           **(770) 850-680**
           **504-291-3007**

Closing Agent:
Phone: (    ) **888-272-2915**
Reference No.:

Vesting:   **MARY L. GIBBS**

Mailing Address: **155 BAYVIEW DRIVE**
                   **DAPHNE, AL 36526**

Seller(s):   **REFINANCE**
Property Address:   **155 BAYVIEW DRIVE**
                   **DAPHNE, AL 36526**

Payment: $ **1,135.10**
Loan Type:   **CONVENTIONAL**
Document Date: **02/27/03**
1st Payment Date: **04/04/03**
Last Payment Date: **MARCH 4, 2033**
Sales Price:
Loan Amount:   **152,875.00**
Interest Rate:   **8.125**
Term:   **360**
Loan No.:   **10065888**
This loan must fund by: **03/04/03**

All documents must be in our office within twenty-four hours of closing. The Borrower(s) are not to be charged any delivery charge (Fedex, UPS, etc.) without prior written consent of lender.

Please make sure all the documents listed on page 2 of this escrow instructions are completed at the time funds are requested.

| DESCRIPTION | BORROWER | SELLER |
|---|---|---|
| LOAN AMOUNT | 152,875.00 | |
| LENDER PAID CLOSING COSTS | | |
| YIELD SPREAD PREMIUM PAID TO BROKER -- P.O.C. | | |
| ORIGINATION FEE | 4,150.00 | |
| DISCOUNT PONTS | | |
| ORIGINATION FEE TO BROKER | | |
| PER DIEM INTEREST    0    DAYS @ $ **34.50** | | |
| INSPECTION FEE | | |
| COMMITMENT FEE | | |
| **ADMINISTRATION FEE** | 295.00 | |
| UNDERWRITING FEE | | |
| TAX SERVICE FEE | | |
| **PROCESSING/UNDERWRITING FEE** | 390.00 | |
| **FUNDING FEE** | 365.00 | |
| **DOC PREP FEE** | 195.00 | |
| TOTAL PAYOFFS (See Addendum to Closing Instructions) | 145,629. | |
| 1ST YEAR HAZARD INS PREM | | |
| 1ST YEAR FLOOD INS PREM | | |
| CLOSING FEE    **SWAFFORD & HAYS** | 200.00 | |
| TITLE INSURANCE | 519.00 | |
| RECORDING FEES | 120.00 | |
| STATE TAX/STAMPS | 229.50 | |
| HAZARD    MOS @ | | |

All original forms (excluding the original mortgage) must be sent to Homeowners Loan Corp. Please include the following forms:

X : NOTE: Return original and 2 certified copies to the lender.
X : DEED OF TRUST and all applicable Riders: Return 3 certified copies to the lender.
X : HUD-1: Pages 1 and 2 to be completed. Two certified copies must be forwarded within 24 Hours after completion.

| | | | | | |
|---|---|---|---|---|---|
| X : | TIL/Itemization | X : | Tax Information Sheet | : | |
| X : | Closing Instructions | X : | Identity Affidavits | : | |
| X : | Flood Notice | X : | Compliance Agreement | : | |
| X : | Flood Hazard Determination | X : | Borrower Certs | : | |
| X : | First Lien/Clear Title | X : | Occupancy Affidavit | : | |
| X : | Payment Info Letter | X : | RESPA Servicing Disc | : | |
| X : | Rescission Notice | X : | Arbitration Agreement | : | |
| X : | IRS W-9 - all borrowers | X : | | : | |
| X : | Initial Escrow Acct Disc. | X : | | : | |
| X : | Impound Acct Agreement | X : | | : | |
| X : | Escrow Waiver Request | X : | | : | |
| X : | Hazard Ins Authorization | : | | : | |

IMPORTANT NOTE:
Settlement Agent must fax the following documents to Union Planters Bank at (901) 580-9620 prior to releasing funds.
  -Executed Mortgage Note   - Executed Deed of Trust/Mortgage/Security Deed

On the day the loan is funded, the Settlement Agent must fax to HLC's Accounting Department (fax 770-850-1309) the signed final HUD-1 settlement statement used to fund the loan.

ALTA policy must contain endorsements             with liability in the amount of    **152,875.00**    on property described herein. Issue said form of policy showing the title ˜ested as on page 1.
 JSSUE SAID FORM OF POLICY FREE FROM ENCUMBRANCES, EXCEPT ITEM(S):
OF PRELIMINARY REPORT DATED

Additional Items:
Note: Items below MUST be followed or the closing must be stopped and the Loan Officer should be called. If the following instructions are not followed the Title Company will be held accountable and may be penalized.
1) **BORROWERS SHOULD SIGN ONLY WHERE PRINTED NAMES APPEAR.**
2) **THE CLOSER OR THE BORROWER SHOULD MARK THROUGH NO DATES.**
3) **THE BORROWERS SHOULD INITIAL ANY HANDWRITTEN INFORMATION ON THE DOCUMENTS.**
4) **THE 1003 APPLICATION MUST BE SIGNED AND EACH PAGE MUST BE INITIALED BY THE BORROWER(S).**
5) **THE CLOSER SHOULD VERIFY THAT THE INFORMATION ON THE 1ST PAGE OF THE 1003 IS ACCURATE. IF THE INFORMATION IS NOT ACCURATE, THE CLOSER SHOULD MARK THROUGH THE INFORMATION, PUT THE CORRECT INFORMATION IN THE FIELD AND HAVE THE BORROWER INITIAL THE CHANGE.**
6) **ALL DOCUMENTS THAT REQUIRE NOTARIZATION MUST BE NOTARIZED AND THE NOTARY SEAL MUST BE VISIBLE.**
7) **LINE 804 OF HUD1-A SHOULD SHOW A CREDIT REPORT FEE OF $8.50 AS "POCL."**
8) **LINE 1303 OF HUD1-A SHOULD SHOW A FLOOD DETERMINATION FEE OF $9.50 AS "POCL."**



# Our Services

All abstracts of title will include both direct and reverse searches. They will be checked for judgments, liens, UCC's, taxes paid, covenants and restrictions, and easements. Exceptions may include one or more of the following. General and special taxes for the current year and subsequent years. Any prior reservation or conveyance of minerals of every kind and character, including, but



not limited to, oil, gas, sand, and gravel in, on, and under subject property. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records. Encroachments, variation in area, or in measurements, boundary line disputes, existing rights of way for public roads and easements for public utilities, roadways and matters not of record, including lack of access, which would be disclosed by any accurate survey and inspection of the property. Easements or other uses of subject property not visible form the surface, or easements or claims of easements, not shown by the public records. Rights or claims of parties in possession not shown by public records. Any environmental matter, law, or act, known or unknown, disclosed or undisclosed, that exist on the described property. Any and all errors found in Probate Records.

## Price List

**Full 30 year title search***  $150.00
*(The above fees include up to 15 copies)*

**Additional 10 year increment searches**  $25.00
**over 30 ***

**Current Owner searches***
**Alabama and Georgia**
**Mississippi & Florida**  $90.00
*(The above fees include up to 15 copies)*

**Two Owner Searches***  $125.00
*(The above fees include up to 15 copies)*

**Update on previous search**  $40.00

**Single Document Search**  $25.00

**UCC Search**  $45.00

**USFJ Search**  $55.00
UCC, State & Federal Tax Lien & Judgments

**Trip Fee  (Real Estate No Find)**  $40.00

**Per Copy Charge**  $ 1.00

**Recording Fee (NO RECORDINGS**  $35.00
**ARE BEING ACCEPTED AT THIS TIME)**

*ALL COMMERCIAL PROPERTIES SEARCHES
WILL BE BILLED ACCORDING TO TIME
CONSUMED. (NO COMMERCIAL SEARCHES
ARE BEING ACCEPTED AT THIS TIME)

**Discounts given for local counties, call for list.**

### Counties Covered:

**Alabama:**
    *ALL COUNTIES COVERED*

**Georgia:**
    *ALL COUNTIES COVERED*

**Mississippi:**
    *ALL COUNTIES COVERED*

PLAINTIFF'S
EXHIBIT

*A&B Abstracts strives for a 48 hour
turnaround on all orders. Some rural counties
may require slightly longer timeframe.*

*(Orders received after 9:00 A.M. are dated the Following date)*

# A & B  Abstracts, Inc

**2725 Calhoun Drive**
**Abbeville, Al. 36310**

Phone:  (334) 687-4846
Fax:    (334) 687-1027 or (334) 687-5446
Email: amyoyler@eufaula.rr.com

**Hall-Frazier**
**Record - 001167**

*331-687-1027*

### *Swafford & Hays Settlement Services, Inc.*
*"Professionalism With Integrity"*
*224 South Peters Road/Suite 205/Knoxville, TN 37923*
*Ph: 1-888-272-2915  Fax: 1-888-272-2916*

## GENERAL ABSTRACTORS AGREEMENT/CONTRACT

**This AGREEMENT** made this ___8___, day of August, 2002, by and between
**SWAFFORD AND HAYS SETTLEMENT SERVICES, INC.**, (First Party), and
___A & B Abstracts___, (Second Party).

**WITNESSETH:** That in consideration of the mutual covenants and agreements
to be kept and performed on the part of said parties hereto, respectively and herein stated,
the said party of the First Part does hereby covenant and agree that is shall:

I.      Provide to Second Party a completed Order for a Real Estate Current
Owner Search, Lien/Judgment Search or an Update of previous searches
and will provide additional information if necessary to complete search.
Party of the First Part will also give timely notice of cancellation of order
once First Party is given notice from lender. The Search is to be completed
within a 24 Hour/48 Hour time frame if any later or issues arise to delay
Second Party must notify in timely manner. If not notified or 48 Hour time
frame has passed First Party has the right to cancel file with Second Party
at no cost to re-assign to another.

      *✱ If abstract has been completed at time of cancellation
a full fee will be charged. A$ 50*

II.      And said party of the second part covenants and agrees that it shall:

      Provide to First Party a completed Title Abstractors Report, reflecting the
following: Vested Title Holder, any Open Mortgages, Liens and
Judgments, also if any Estates of Probate or Bankruptcies are found and
Tax Sale Certificates, complete information of such. Easements, and
Restrictions of record, if any are found.

      Also complete Tax Information including current amounts Paid or
Delinquent, when next Tax Bill is due and Copies of any Delinquent
Taxes and Bills of same.

      Also to provide to party of First Part complete copies of the following:
Open Mortgages (First Page, Signature Page and Legal Description)



PLAINTIFF'S
EXHIBIT

31

Full Copies of Liens or Judgments.

Bankruptcy Copies of all Schedules if attainable. → *Bankruptcy searches require a seperate order and fee from regular title search orders. AO 50*

Estates Copies of Probates and Wills.

Copies of Delinquent Tax Bills.

Copies of all Recorded Easements.

Second Party agrees to have Searches returned in 24 Hour/48 Hour Time Frame, unless otherwise have notified First Party and that if no contact has been made with First Party regarding Delay, Second Party agrees to have First Party cancel file at no charge.

*There will be a $40.00 trip fee charged for all no finds or incorrect information received from 1st party. AO 50*

III.    Other Terms to be observed by and between both parties:

Party of the First Part will Pay on a Net 30 basis on all Invoices submitted for payment. If a search has incomplete information when Payment is requested there will be a One-Half Cost deduction taken from actual Invoice of that particular incomplete search.

Party of the First Part also agrees to send daily list of Orders Placed for that day and Previous day's that orders are outstanding.

Party of the Second Part agrees to return to Party of the First Part within a 2 Hour period a Status Report of List sent by First Party.

This agreement shall be binding upon the parties, their successors, assigns and personal representatives. Time is of the essence on all undertakings. This agreement shall be enforced under the laws of the State of Tennessee. This is the entire agreement.

Signed this ___8th___ day of August, 2002.

Signed in the presence of:

_____          _____
Witness                                          First Party

_____          _____
Witness                                          Second Party

Hall-Frazier
Record - 001169

08/08/2002 THU 14:34  FAX 865 539 2329 SWAFFORD-HAYS SETTLEMENT                    ☑001/002

334-687-1027

## Swafford & Hays Settlement Services, Inc.
### "Professionalism With Integrity"
224 South Peters Road/Suite 205/Knoxville, TN 37923
Ph: 1-888-272-2915  Fax: 1-888-272-2916

## GENERAL ABSTRACTORS AGREEMENT/CONTRACT

This AGREEMENT made this ___8___ day of August, 2002, by and between SWAFFORD AND HAYS SETTLEMENT SERVICES, INC., (First Party), and ___A & B Abstracts___, (Second Party).

WITNESSETH: That in consideration of the mutual covenants and agreements to be kept and performed on the part of said parties hereto, respectively and herein stated, the said party of the First Part does hereby covenant and agree that is shall:

I.    Provide to Second Party a completed Order for a Real Estate Current Owner Search, Lien/Judgment Search or an Update of previous searches and will provide additional information if necessary to complete search. Party of the First Part will also give timely notice of cancellation of order once First Party is given notice from lender. The Search is to be completed within a 24 Hour/48 Hour time frame if any later or issues arise to delay Second Party must notify in timely manner. If not notified or 48 Hour time frame has passed First Party has the right to cancel file with Second Party at no cost to re-assign to another.

*If abstract has been completed at time of cancellation a fullt fee will be charged. A0 50*

II.   And said party of the second part covenants and agrees that it shall:

Provide to First Party a completed Title Abstractors Report, reflecting the following: Vested Title Holder, any Open Mortgages, Liens and Judgments, also if any Estates of Probate or Bankruptcies are found and Tax Sale Certificates, complete information of such. Easements, and Restrictions of record, if any are found.

Also complete Tax Information including current amounts Paid or Delinquent, when next Tax Bill is due and Copies of any Delinquent Taxes and Bills of same.

Also to provide to party of First Part complete copies of the following: Open Mortgages (First Page, Signature Page and Legal Description)

08/08/2002 THU 14:34  FAX 865 539 2329 SWAFFORD-HAYS SETTLEMENT                    @002/002

Full Copies of Liens or Judgments.
Bankruptcy Copies of all Schedules if attainable.   → *Bankruptcy searches AG*
Estates Copies of Probates and Wills.                    *require a separate order*
Copies of Delinquent Tax Bills.                              *and fee from regular*
Copies of all Recorded Easements.                          *title search orders. AO*
                                                                         *SO*

Second Party agrees to have Searches returned in 24 Hour/48 Hour Time
Frame, unless otherwise have notified First Party and that if no contact has
been made with First Party regarding Delay, Second Party agrees to have
First Party cancel file at no charge.

*There will be a $40.00 trip fee charged for all no finds*
*or incorrect information received from 1st party.*   *AG*
III.   Other Terms to be observed by and between both parties:   *SO*

Party of the First Part will Pay on a Net 30 basis on all Invoices submitted
for payment. If a search has incomplete information when Payment is
requested there will be a One-Half Cost deduction taken from actual
Invoice of that particular incomplete search.

Party of the First Part also agrees to send daily list of Orders Placed for
that day and Previous day's that orders are outstanding.

Party of the Second Part agrees to return to Party of the First Part within a
2 Hour period a Status Report of List sent by First Party.

      This agreement shall be binding upon the parties, their successors, assigns and
personal representatives. Time is of the essence on all undertakings. This agreement shall
be enforced under the laws of the State of Tennessee. This is the entire agreement.

Signed this ___8th___ day of August, 2002.


Signed in the presence of:



_____                    _____
Witness                                                    First Party

_____                    _____
Witness                                                    Second Party

**Hall-Frazier**
**Record - 001171**



(Printed on Aug 03, 2004 @ 10:17)

US Department of Housing and Urban Development

OMB No. 2502-0265

A.

### SETTLEMENT STATEMENT

**B. Type of Loan**

| 1. [ ] FHA 2. [ ] FmHA 3. [ ] Conv. Unins. | 6. File Number: | 7. Loan Number: | 8. Mortgage Ins. Case #: |
|---|---|---|---|
| 4. [ ] VA 5. [X] Conv. Ins. | 04-7349 | 04-B41169 | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked 'POC' were paid outside the closing; they are shown here for information purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER/BUYER:**
Jack L. Franklin 713 Sundale Dr Birmingham, AL 35235

**E. NAME AND ADDRESS OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:**
Nova Star Home Mortgage 11550 New Castle Avenue Suite 200 Baton Rouge, LA 70816

**G. PROPERTY LOCATION (Brief Legal):**
713 Sundale Dr Birmingham, AL 35235

| H. SETTLEMENT AGENT: | PLACE OF SETTLEMENT: |
|---|---|
| Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shaun Gaiford | 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |

| I. SETTLEMENT DATE: | DISBURSEMENT DATE: |
|---|---|
| 07/30/2004 | 08/04/2004 |

| J. SUMMARY OF BORROWER(S) TRANSACTION | | K. SUMMARY OF SELLER(S) TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER :** | | **400. GROSS AMOUNT DUE TO SELLER :** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 109,367.05 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | 109,367.05 | **420. Gross Amount Due Seller** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER :** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER :** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 120,700.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller in advance | | Adjustments for items unpaid by Seller in advance | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 120,700.00 | **520. Total Reduction Amount Due Seller** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER :** | | **600. CASH AT SETTLEMENT TO/FROM SELLER :** | |
| 301. Gross Amount due from borrower (line 120) | 109,367.05 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 120,700.00 | 602. Less reductions in amt. due seller (line 520) | |
| 303. Cash [ ]To [X]To Borrower | 11,332.95 | 603. Cash [X]To [ ]From Seller | 0.00 |

SUBSTITUTION FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I on line 401(or if 401 is asterisked, line 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER, you are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller(s):



PLAINTIFF'S EXHIBIT
32

(Printed on Aug 03, 2004 @ 10:17)
·L·

US Department of Housing and Urban Development
SETTLEMENT CHARGES

OMB No. 2502-0265

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| 701. Listing Realtor Commission | | |
| 702. Selling Realtor Commission | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  To: Nova Star Home Mortgage | 2,414.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Tax Service Fee  To: Nova Star Home Mortgage | 57.00 | |
| 809. Flood Certification Fee  To: Nova Star Home Mortgage | 7.50 | |
| 810. Mers Fee  To: Nova Star Home Mortgage | 3.95 | |
| 811. Underwriting Fee  To: Nova Star Home Mortgage | 595.00 | |
| 812. Processing Fee  To: Nova Star Home Mortgage | 395.00 | |
| 813. Administration Fee  To: Nova Star Home Mortgage | 595.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from 08/04/2004 to 08/01/2004 @ 29.6/day To: Nova Star Home Mortgage | -88.80 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Insurance Premium for | | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard insurance 11 months @ 46.5 per month To: Nova Star Home Mortgage | 511.50 | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes 12 months @ 57.63 per month To: Nova Star Home Mortgage | 691.56 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment  To: Nova Star Home Mortgage | -57.68 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | 275.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc. | 250.00 | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (Includes above item numbers: ) | | |
| 1108. Title Insurance  To: American Pioneer and Swafford & Hays | 314.10 | |
| (Includes above item numbers: ) | | |
| 1109. Lender's coverage  120,700.00@  314.10 | | |
| 1110. Owner's coverage @ 0.00 | | |
| 1111. Endorsements  To: Swafford and Hays Settlement Services, Inc. | 50.00 | |
| 1112. | | |
| 1113. Overnight Courier & Handling Fees | | |
| **1200. GOVT. RECORDING, TRANSFER, AND SERVICE FEES** | | |
| 1201. Recording fees:  To: Clerk of the Court | 120.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $181.05 To: Clerk of the Court | 181.05 | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest Inspection | | |
| 1303. Payoff  To: Wells Fargo Home Mortg acct#0019980101 | 87,761.90 | |
| 1304. Payoff  To: American General Finance acct#27556848 | 10,108.97 | |
| 1305. Payment  To: Capital One Bank | 1,836.00 | |
| 1306. Payment  To: Capital One Bank | 783.00 | |
| 1307. Payment  To: HHLD Bank | 754.00 | |
| 1308. Payment  To: HHLD Bank | 494.00 | |
| 1309. Payment  To: RNB Target | 166.00 | |
| 1310. Payment  To: Capital One Bank | 949.00 | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502. Section K)** | 109,367.05 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWER(S):                                                    SELLER(S):

Jack L. Franklin

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Brenda Cox

Swafford and Hays Settlement Services, Inc.                    Date  8/4/04

Date Printed: Friday, March 17, 2006  3:18:41 PM

## Disbursement Sheet

| Order #: 04-7349 | Settlement Date: 07/30/2004 | Disbursement Date: 08/05/2004 |
|---|---|---|

| | | |
|---|---|---|
| Buyer: | Jack L. Franklin | Money Out: $130,372.12 |
| Seller: | | Money In: $130,372.12 |
| Property: | 713 Sundale Dr Birmingham, AL 35235 | Difference: $0.00 |
| Lender: | Nova Star Home Mortgage | |
| Loan #: | 04-B41169 | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00071218 | 8/6/2004 3:20:25 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $275.00 |
| | | | 1103 | Title examination | | $250.00 |
| | | | 1111 | Endorsements | | $50.00 |
| | | | 1108 | Title Insurance | | $219.87 |
| | | | | | Total: | $794.87 |
| 00071219 | 8/6/2004 3:20:25 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $94.23 |
| | | | | | Total: | $94.23 |
| 00071220 | 8/6/2004 3:20:25 PM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $200.00 |
| | | | | | Total: | $200.00 |
| 00071510 | 8/9/2004 12:31:11 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: | | $85.50 |
| | | | | | Total: | $85.50 |
| wire # 3580631 | 8/11/2004 | Jack L. Franklin | 89 | New Check - | | $11,362.55 |
| | | | | | Total: | $11,362.55 |
| 00071222 | 8/6/2004 3:20:25 PM | Nova Star Home Mortgage | 801 | Loan Origination Fee | | $2,414.00 |
| | | | 812 | Processing Fee | | $395.00 |
| | | | 813 | Administration Fee | | $595.00 |
| | | | | | Total: | $3,404.00 |
| 00071223 | 8/6/2004 3:20:25 PM | Wells Fargo Home Mortg acct#0019980101 | 1303 | Payoff | | $87,761.90 |
| | | | | | Total: | $87,761.90 |
| 00071224 | 8/6/2004 3:20:25 PM | Capital One Bank | 1305 | Payment | | $1,836.00 |
| | | | | | Total: | $1,836.00 |
| 00071225 | 8/6/2004 3:20:25 PM | Capital One Bank | 1310 | Payment | | $949.00 |
| | | | | | Total: | $949.00 |
| 00071226 | 8/6/2004 3:20:25 PM | Capital One Bank | 1306 | Payment | | $783.00 |
| | | | | | Total: | $783.00 |
| 00071227 | 8/6/2004 3:20:25 PM | HHLD Bank | 1307 | Payment | | $754.00 |
| | | | | | Total: | $754.00 |
| 00071228 | 8/6/2004 3:20:25 PM | HHLD Bank | 1308 | Payment | | $494.00 |
| | | | | | Total: | $494.00 |
| 00071229 | 8/6/2004 3:20:25 PM | RNB Target | 1309 | Payment | | $166.00 |
| | | | | | Total: | $166.00 |
| 00071230 | 8/6/2004 3:20:25 PM | American General Finance acct#27556848 | 1304 | Payoff | | $10,108.97 |
| | | | | | Total: | $10,108.97 |
| 00071511 | 8/9/2004 12:31:11 PM | Jefferson County Judge of Probate | 1203 | State tax/stamps: Deed $0.00 Mortgage $181.05 | | $181.05 |
| | | | | | Total: | $181.05 |
| 00071512 | 8/9/2004 12:31:11 PM | Jefferson County Judge of Probate | 1201 | Recording fees: | | $34.50 |
| | | | | | Total: | $34.50 |
| 00071872 | 8/11/2004 11:36:28 AM | Bank of America | 303 | need cert fund for bor proceeds | | $11,362.55 |
| | | | | | Total: | $11,362.55 |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 04-7349/Title Agent/5 | 08/11/2004 | Swafford and Hays Settlement Services, Inc. | 88 | New Receipt - | | $11,362.55 |
| | | | | | Total: | $11,362.55 |

04-
7349/Lende
r/1

08/05/2004    Nova Star Home Mortgage

| | | | |
|---|---|---|---|
| 202 | Principal amount of new loan(s) | | $120,700.00 |
| 808 | Tax Service Fee | | ($57.00) |
| 809 | Flood Certification Fee | | ($7.50) |
| 810 | Mers Fee | | ($3.95) |
| 811 | Underwriting fee | | ($595.00) |
| 901 | Interest from 08/05/2004 to 08/01/2004 @ 29.6/day | | $118.40 |
| 1008 | Aggregate Accounting Adjustment | | $57.68 |
| 1001 | Hazard insurance 11 months @ 46.5 per month | | ($511.50) |
| 1004 | County property taxes 12 months @ 57.63 per month | | ($691.56) |
| | | **Total:** | $119,009.57 |

**Hall-Frazier**
**Record - 001175**

**LEDGER CARD**

Date Printed: Friday, March 17, 2006 3:18:37 PM

Order #: 04-7349
Buyer/Borrower : Jack L. Franklin
Seller :
Lender Name : Nova Star Home Mortgage
Loan Number : 04-B41169
Property Address : 713 Sundale Dr, Birmingham, AL  35235

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn | Bank of America- TN | 003786777421 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 08/05/2004 | funding wire | alisonw | 08/31/2004 | Nova Star Home Mortgage | 119,009.57 |
| 08/11/2004 | Cashier's check rece | alisonw | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | 11,362.55 |
| **\*TOTAL DEPOSITS** | | | | | **130,372.12** |

### CHECKS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 08/09/2004 | 00071510 | a.smith | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (85.50) |
| 08/09/2004 | 00071511 | a.smith | 08/31/2004 | Jefferson County Judge of Probate | (181.05) |
| 08/09/2004 | 00071512 | a.smith | 08/31/2004 | Jefferson County Judge of Probate | (34.50) |
| 08/11/2004 | wire # 3580631 | alisonw | 08/31/2004 | Jack L. Franklin | (11,362.55) |
| 08/06/2004 | 00071217v | a.smith | 08/31/2004 | Clerk of the Court | (301.05) |
| 08/06/2004 | 00071218 | rachelm | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (794.87) |
| 08/06/2004 | 00071219 | rachelm | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (94.23) |
| 08/06/2004 | 00071220 | rachelm | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 08/06/2004 | 00071221v | bj | 08/31/2004 | Jack L. Franklin | (11,362.55) |
| 08/06/2004 | 00071222 | rachelm | 08/31/2004 | Nova Star Home Mortgage | (3,404.00) |
| 08/06/2004 | 00071223 | rachelm | 08/31/2004 | Wells Fargo Home Mortg acct#0019980101 | (87,761.90) |
| 08/06/2004 | 00071224 | rachelm | 08/31/2004 | Capital One Bank | (1,836.00) |
| 08/06/2004 | 00071225 | rachelm | 08/31/2004 | Capital One Bank | (949.00) |
| 08/06/2004 | 00071226 | rachelm | 08/31/2004 | Capital One Bank | (783.00) |
| 08/06/2004 | 00071227 | rachelm | 08/31/2004 | HHLD Bank | (754.00) |
| 08/06/2004 | 00071228 | rachelm | 08/31/2004 | HHLD Bank | (494.00) |
| 08/06/2004 | 00071229 | rachelm | 09/30/2004 | RNB Target | (166.00) |
| 08/06/2004 | 00071230 | rachelm | 08/31/2004 | American General Finance acct#27556848 | (10,108.97) |
| 08/11/2004 | 00071872 | bj | 08/31/2004 | Bank of America | (11,362.55) |
| **\*TOTAL CHECKS** | | | | | **(142,035.72)** |

### VOIDS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 08/06/2004 | 00071217 | a.smith | 08/31/2004 | Clerk of the Court | 301.05 |
| 08/06/2004 | 00071221 | bj | 08/31/2004 | Jack L. Franklin | 11,362.55 |
| **\*TOTAL VOIDS** | | | | | **11,663.60** |

| **\*\*TOTALS FOR: tn** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                      **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                    **0.00**

(Printed on Mar 23, 2005 @ 15:55)
A.

US Department of Housing and Urban Development
**SETTLEMENT STATEMENT**

OMB No. 2502-0265

| B. Type of Loan | | |
|---|---|---|
| 1. [ ] FHA  2. [ ] FmHA  3. [ ] Conv. Unins. | 6. File Number:  05-2869 | 7. Loan Number:  0503080318 |
| 4. [ ] VA   5. [X] Conv. Ins. | | 8. Mortgage Ins. Case #: |

NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "POC" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. NAME AND ADDRESS OF BORROWER/BUYER:
Robert L. McDaniel 9441 Winfield Place Montgomery, AL 36117
Dolorus McDaniel

E. NAME AND ADDRESS OF SELLER:

F. NAME AND ADDRESS OF LENDER:
Home Funds Direct 1130 Northchase Parkway Marietta, GA 30067

G. PROPERTY LOCATION (Brief Legal):
9441 Winfield Place Montgomery, AL 36117

| H. SETTLEMENT AGENT: | PLACE OF SETTLEMENT: |
|---|---|
| Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom | 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |

| I. SETTLEMENT DATE: | DISBURSEMENT DATE: |
|---|---|
| 03/25/2005 | 03/30/2005 |

| J. SUMMARY OF BORROWER(S) TRANSACTION | | K. SUMMARY OF SELLER(S) TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER :** | | **400. GROSS AMOUNT DUE TO SELLER :** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 255,707.24 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | 255,707.24 | **420. Gross Amount Due Seller** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER :** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER :** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 256,400.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller in advance | | Adjustments for items unpaid by Seller in advance | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 256,400.00 | **520. Total Reduction Amount Due Seller** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER :** | | **600. CASH AT SETTLEMENT TO/FROM SELLER :** | |
| 301. Gross Amount due from borrower (line 120) | 255,707.24 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 256,400.00 | 602. Less reductions in amt. due seller (line 520) | |
| **303. Cash [ ]From [X]To Borrower** | 692.76 | **603. Cash [X]To [ ]From Seller** | 0.00 |

SUBSTITUTION FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I on line 401(or if 401 is asterisked, line 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER, you are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller(s):



PLAINTIFF'S
EXHIBIT

33

(Printed on Mar 25, 2005 @ 15:53)    US Department of Housing and Urban Development    OMB No. 2502-0265

L.    **SETTLEMENT CHARGES**

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| 701. Listing Realtor Commission | | |
| 702. Selling Realtor Commission | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  To: Home Funds Direct | 7,692.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee  To: Central Appraisal | 100.00 | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Processing Fee  To: Home Funds Direct | 995.00 | |
| 809. Underwriting fee  To: Home Funds Direct | 780.00 | |
| 810. Document Preparation Fee  To: Home Funds Direct | 625.00 | |
| 811. Zone Determination Fee  To: Home Funds Direct | 9.50 | |
| 812. Tax Service Fee  To: Home Funds Direct | 66.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from  To: Home Funds Direct | 120.82 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Insurance Premium for | | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard insurance  To: Home Funds Direct | 951.00 | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes  To: Home Funds Direct | 489.33 | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment  To: Home Funds Direct | -317.00 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | 275.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc. | 250.00 | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance  To: Transnation Title Insurance Company | 599.70 | |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage 256,400.00 @ 599.70 | | |
| 1110. Owner's coverage @ 0.00 | | |
| 1111. Endorsements  To: Swafford and Hays Settlement Services, Inc. | 50.00 | |
| 1112. | | |
| 1113. Overnight Courier & Handling Fees | | |
| **1200. GOVT. RECORDING, TRANSFER, AND SERVICE FEES** | | |
| 1201. Recording fees and Service fees:  To: Clerk of the Court | 120.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $384.60 To: Clerk of the Court | 384.60 | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Post inspection | | |
| 1303. Payoff  To: WFFinancial Acct# 39493255 | 207,562.00 | |
| 1304. Payoff  To: HFC Acct# 01520000159978 | 29,679.29 | |
| 1305. Payoff  To: WFFinancial | 5,075.00 | |
| 1306. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | 255,707.24 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.
BORROWER(S):                                                    SELLER(S):

Robert L. McDaniel

Delores McDaniel

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Jane Cancello          05/28/05
Swafford and Hays Settlement Services, Inc.    Date

NOTE: Taxes have been prorated based on taxes for the year. Any re-proration will be handled between the buyer and seller. All utility bills (water, sewer, electric, cable and maintenance fees) have been paid or will be paid upon receipt of final bills.
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Date Printed: Wednesday, March 15, 2006  12:25:15 PM

## Disbursement Sheet

| Order #: 05-2869 | Settlement Date: March 25, 2005 | Disbursement Date: 03/30/2005 |
|---|---|---|

Buyer: Robert L. McDaniel and Delores McDaniel, as joint tenants with right of survivorship
Seller:
Property: 9441 Winfield Place Montgomery, AL 36117
Lender: Home Funds Direct
Loan #: 0503080318

Money Out: $244,988.35
Money In: $244,988.35
Difference: $0.00

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00025304 | 3/30/2005 5:28:55 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $275.00 |
| | | | 1103 | Title examination | | $250.00 |
| | | | 1111 | Endorsements | | $50.00 |
| | | | 1108 | Title Insurance | | $419.79 |
| | | | | | Total: | $994.79 |
| 00025305 | 3/30/2005 5:28:55 PM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $200.00 |
| | | | | | Total: | $200.00 |
| 00025306 | 3/30/2005 5:28:55 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $179.91 |
| | | | | | Total: | $179.91 |
| 00025499 | 3/31/2005 1:09:54 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: and Service fees: | | $66.50 |
| | | | | | Total: | $66.50 |
| 00025307 | 3/30/2005 5:28:55 PM | Robert L. McDaniel and Delores McDaniel | 303 | Cash [ ]From [X]To  Borrower | | $5,158.64 |
| | | | | | Total: | $5,158.64 |
| 00025308 | 3/30/2005 5:28:55 PM | Central Appraisal | 803 | Appraisal Fee | | $100.00 |
| | | | | | Total: | $100.00 |
| 00025309 | 3/30/2005 5:28:55 PM | HFC Acct# 01520000159978 | 1304 | Payoff | | $29,679.29 |
| | | | | | Total: | $29,679.29 |
| 00025310 | 3/30/2005 5:28:55 PM | WFFinancial Acct# 39493255 | 1303 | Payoff Good thru 4/11 | | $203,214.91 |
| | | | | | Total: | $203,214.91 |
| 00025311 | 3/30/2005 5:28:55 PM | WFFinancial | 1305 | Payoff Good thru 4/28 | | $4,956.21 |
| | | | | | Total: | $4,956.21 |
| 00025500 | 3/31/2005 1:09:54 PM | MONTGPMERY COUNTY JUDGE OF PROBATE | 1203 | State tax/stamps:  Deed $0.00 Mortgage $384.60 | | $384.60 |
| | | | | | Total: | $384.60 |
| 00025501 | 3/31/2005 1:09:54 PM | MONTGPMERY COUNTY JUDGE OF PROBATE | 1201 | Recording fees: and Service fees: | | $53.50 |
| | | | | | Total: | $53.50 |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 05-2869/Lender/1 | 03/30/2005 | Home Funds Direct | | | | |
| | | | 202 | Principal amount of new loan(s) | | $256,400.00 |
| | | | 801 | Loan Origination Fee | | ($7,692.00) |
| | | | 808 | Processing Fee | | ($995.00) |
| | | | 809 | Underwriting fee | | ($780.00) |
| | | | 810 | Document Preparation Fee | | ($625.00) |
| | | | 1001 | Hazard insurance | | ($951.00) |
| | | | 1004 | County property taxes | | ($489.33) |
| | | | 1008 | Aggregate Accounting Adjustment | | $317.00 |
| | | | 901 | Interest from | | ($120.82) |
| | | | 811 | Zone Determination Fee | | ($9.50) |
| | | | 812 | Tax Service Fee | | ($66.00) |
| | | | | | Total: | $244,988.35 |

## LEDGER CARD

Date Printed: Wednesday, March 15, 2006  12:25:11 PM

**Order #: 05-2869**
Buyer/Borrower : Robert L. McDaniel and Delores McDaniel
Seller :
Lender Name : Home Funds Direct
Loan Number : 0503080318
Property Address : 9441 Winfield Place, Montgomery, AL  36117

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn2 | Bank of America- TN (New) | 003786809771 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/30/2005 | funding wire | alisonw | 03/31/2005 | Home Funds Direct | 244,988.35 |
| **\*TOTAL DEPOSITS** | | | | | **244,988.35** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/30/2005 | 00025303v | b.cooper | 03/31/2005 | Clerk of the Court | (504.60) |
| 03/30/2005 | 00025304 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (994.79) |
| 03/30/2005 | 00025305 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 03/30/2005 | 00025306 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (179.91) |
| 03/30/2005 | 00025307 | m.jerger | 04/30/2005 | Robert L. McDaniel and Delores McDaniel | (5,158.64) |
| 03/30/2005 | 00025308 | m.jerger | 04/30/2005 | Central Appraisal | (100.00) |
| 03/30/2005 | 00025309 | m.jerger | 04/30/2005 | HFC Acct# 0152000159978 | (29,679.29) |
| 03/30/2005 | 00025310 | m.jerger | 04/30/2005 | WFFinancial Acct# 39493255 | (203,214.91) |
| 03/30/2005 | 00025311 | m.jerger | 04/30/2005 | WFFinancial | (4,956.21) |
| 03/31/2005 | 00025499 | b.cooper | 04/30/2005 | Swafford and Hays Settlement Services, Inc. | (66.50) |
| 03/31/2005 | 00025500 | b.cooper | 04/30/2005 | MONTGOMERY COUNTY JUDGE OF PROBATE | (384.60) |
| 03/31/2005 | 00025501 | b.cooper | 04/30/2005 | MONTGPMERY COUNTY JUDGE OF PROBATE | (53.50) |
| **\*TOTAL CHECKS** | | | | | **(245,492.95)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/30/2005 | 00025303 | b.cooper | 03/31/2005 | Clerk of the Court | 504.60 |
| **\*TOTAL VOIDS** | | | | | **504.60** |

| **\*\*TOTALS FOR: tn2** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                    **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                                    **0.00**

(Printed on Aug 04, 2004 at 19:19)

US Department of Housing and Urban Development

OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| | | |
|---|---|---|
| File Number: 04-4243 | Loan Number: 10189572 | Mortgage Ins. Case #: |

**NAME AND ADDRESS OF BORROWER/BUYER:**
Rebecca Jean Todd Casey 265 Boren Road Warrior, AL 35180
Joe Casey ,

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4501 Circle 75 Parkway Suite F6300 Atlanta, GA 30339

**PROPERTY LOCATION (Brief Legal):**
265 Boren Road Warrior, AL 35180

**SETTLEMENT AGENT:**
Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom

**PLACE OF SETTLEMENT:**
9041 Executive Park Drive, Suite 400 Knoxville, TN 37923

| SETTLEMENT DATE: | DISBURSEMENT DATE: |
|---|---|
| 08/04/2004 | 08/09/2004 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payoff Account# 5456562100339016 | |
| 801. Loan Origination Fee   To: Homeowners Loan | 4,175.02 | To: Compass Bank | 24,918.97 |
| 802. Loan Discount | | 1502. Payment | |
| 803. Appraisal Fee POC $300.00 POCL $125.00   To: Bailey A | 225.00 | To: Amer First | 2,232.00 |
| 804. Credit Report Credit Report POCL $8.50 | | 1503. Payment | |
| 805. Lender's Inspection Fee | | To: Citi Financial | 7,767.45 |
| 806. Mortgage Insurance Application Fee | | 1504. 04 Taxes | |
| 807. Assumption Fee | | To: Jefferson County Tax Collector | 300.70 |
| 808. Processing\Underwriter Fee   To: Homeowners Loan | 390.00 | 1505. | |
| 809. Funding Fee   To: Homeowners Loan | 365.00 | | |
| 810. Administration Fee   To: Homeowners Loan | 295.00 | 1506. | |
| 811. Document Preparation Fee   To: Homeowners Loan | 195.00 | | |
| **900. Items Required By Lender To Be Paid In Advance** | | 1507. | |
| 901. Interest from | | | |
| 902. Mortgage Insurance Premium for | | 1508. | |
| 903. Hazard Insurance Premium for   To: Alfa Insurance | 566.00 | | |
| 904. | | 1509. | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | 1510. | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage insurance | | 1511. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1512. | |
| 1005. Annual assessments | | | |
| 1006. | | 1513. | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | 1514. | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee   To: Swafford and Hays Settle | 200.00 | 1515. | |
| 1102. Abstract or title search   To: Swafford and Hays Settleme | 375.00 | | |
| 1103. Title examination   To: Swafford and Hays Settlement Se | 225.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1104. Title insurance binder | | | 35,219.12 |
| 1105. Document preparation | | N. Net Settlement | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | 1600. Loan Amount | 76,000.00 |
| (Includes above item numbers:  ) | | | |
| 1108. Title Insurance   To: American Pioneer Title Insurance Co | 212.40 | 1601. Plus Check/Cash from Borrower | |
| (Includes above item numbers:  ) | | | |
| 1109. Lender's coverage 76,000.00 @ 212.40 | | 1602. Minus total settlement charges | 7,467.42 |
| 1110. Owner's coverage  @ 0.00 | | (Line 1400) | |
| 1111. | | 1603. Minus total Disbursements to | 35,219.12 |
| 1112. | | Others (line 1520) | |
| 1113. Overnight Courier & Handling Fees | | 1604. Equals disbursements to borrower | 33,313.46 |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees:   To: Clerk of the Court | 120.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:   Deed $0.00  Mortgage $114.00   To: Cl | 114.00 | | |
| 1204. Transfer Tax   To: Clerk of the Court | 10.00 | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Flood Determination POCL $9.50 | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. Total settlement charges (enter on line 1602)** | 7,467.42 | | |

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A ref. RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

X _____   X _____   _____
Swafford and Hays Settlement Services, Inc.   Rebecca Jean Todd Casey   Joe Casey

PLAINTIFF'S
EXHIBIT
34

(Printed on Aug 04, 2004 @ 19:19)     US Department of Housing and Urban Development     OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: 04-4243 | Loan Number: 10189572 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Rebecca Jean Todd Casey 265 Boren Road Warrior, AL 35180
Joe Casey

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4501 Circle 75 Parkway Suite F6300 Atlanta, GA 30339

**PROPERTY LOCATION (Brief Legal):**
265 Boren Road Warrior, AL 35180

| SETTLEMENT AGENT: | PLACE OF SETTLEMENT: |
|---|---|
| Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom | 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |

| SETTLEMENT DATE: | DISBURSEMENT DATE: |
|---|---|
| 08/04/2004 | 08/09/2004 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payoff Account# 5456562100339016 | |
| 801. Loan Origination Fee   To: Homeowners Loan | 4,175.00 | To: Compass Bank | 24,918.97 |
| 802. Loan Discount | | 1502. Payment | |
| 803. Appraisal Fee POC $300.00 POCL $125.00   To: Bailey A | 225.00 | To: Amer First | 2,232.00 |
| 804. Credit Report Credit Report POCL $8.50 | | 1503. Payment | |
| 805. Lender's Inspection Fee | | To: Citi Financial | 7,767.45 |
| 806. Mortgage Insurance Application Fee | | 1504. 04 Taxes | |
| 807. Assumption Fee | | To: Jefferson County Tax Collector | 300.70 |
| 808. Processing\Underwriter Fee   To: Homeowners Loan | 390.00 | 1505. | |
| 809. Funding Fee   To: Homeowners Loan | 365.00 | | |
| 810. Administration Fee   To: Homeowners Loan | 295.00 | 1506. | |
| 811. Document Preparation Fee   To: Homeowners Loan | 195.00 | | |
| **900. Items Required By Lender To Be Paid In Advance** | | 1507. | |
| 901. Interest from | | | |
| 902. Mortgage Insurance Premium for | | 1508. | |
| 903. Hazard Insurance Premium for   To: Alfa Insurance | 566.00 | | |
| 904. | | 1509. | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | 1510. | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage insurance | | 1511. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1512. | |
| 1005. Annual assessments | | | |
| 1006. | | 1513. | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | 1514. | |
| **1100. Title Charges** | | 1515. | |
| 1101. Settlement or closing fee   To: Swafford and Hays Settle | 200.00 | | |
| 1102. Abstract or title search   To: Swafford and Hays Settleme | 375.00 | | |
| 1103. Title examination   To: Swafford and Hays Settlement Se | 225.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1104. Title insurance binder | | | 35,219.12 |
| 1105. Document preparation | | N. Net Settlement | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | 1600. Loan Amount | 76,000.00 |
| (Includes above item numbers:   ) | | | |
| 1108. Title Insurance   To: American Pioneer Title Insurance Co | 212.40 | 1601. Plus Check/Cash from Borrower | |
| (Includes above item numbers:   ) | | | |
| 1109. Lender's coverage 76,000.00  @ 212.40 | | 1602. Minus total settlement charges | 7,467.42 |
| 1110. Owner's coverage  @ 0.00 | | (Line 1400) | |
| 1111. | | 1603. Minus total Disbursements to | 35,219.12 |
| 1112. | | Others (line 1520) | |
| 1113. Overnight Courier & Handling Fees | | 1604. Equals disbursements to borrower | 33,313.46 |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees:   To: Clerk of the Court | 120.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:   Deed $0.00 Mortgage $114.00   To: Cl | 114.00 | | |
| 1204. Transfer Tax   To: Clerk of the Court | 10.00 | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Flood Determination POCL $9.50 | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. Total settlement charges (enter on line 1602)** | 7,467.42 | | |

The undersigned hereby acknowledge receipt of a completed copy of this statement. To the best of my knowledge this statement is a true and accurate account of the funds which were received and have/will be disbursed by the undersigned as part of the settlement of this transaction.

x _____   x _____   x _____
Swafford and Hays Settlement Services, Inc.     Rebecca Jean Todd Casey     Joe Casey

(Printed on Aug 04, 2004 @ 10:19)    US Department of Housing and Urban Development    OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: 04-4243 | Loan Number: 10189572 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Rebecca Jean Todd Casey 265 Boren Road Warrior, AL 35180
Joe Casey ,

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4501 Circle 75 Parkway Suite F6300 Atlanta, GA 30339

**PROPERTY LOCATION (Brief Legal):**
265 Boren Road Warrior, AL 35180

| SETTLEMENT AGENT: Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom | PLACE OF SETTLEMENT: 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
|---|---|
| SETTLEMENT DATE: 08/04/2004 | DISBURSEMENT DATE: 08/09/2004 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payoff Account# 5456562100339016 | |
| 801. Loan Origination Fee    To: Homeowners Loan | 4,175.02 | To: Compass Bank | 24,918.97 |
| 802. Loan Discount | | 1502. Payment | |
| 803. Appraisal Fee POC $300.00 POCL $125.00    To: Bailey A | 225.00 | To: Amer First | 2,232.00 |
| 804. Credit Report Credit Report POCL $8.50 | | 1503. Payment | |
| 805. Lender's Inspection Fee | | To: Citi Financial | 7,267.45 |
| 806. Mortgage Insurance Application Fee | | 1504. 04 Taxes | |
| 807. Assumption Fee | | To: Jefferson County Tax Collector | 300.70 |
| 808. Processing/Underwriter Fee    To: Homeowners Loan | 390.00 | 1505. | |
| 809. Funding Fee    To: Homeowners Loan | 365.00 | | |
| 810. Administration Fee    To: Homeowners Loan | 295.00 | 1506. | |
| 811. Document Preparation Fee    To: Homeowners Loan | 195.00 | | |
| **900. Items Required By Lender To Be Paid In Advance** | | 1507. | |
| 901. Interest from | | | |
| 902. Mortgage Insurance Premium for | | 1508. | |
| 903. Hazard Insurance Premium for    To: Alfa Insurance | 566.00 | | |
| 904. | | 1509. | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | 1510. | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage insurance | | 1511. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1512. | |
| 1005. Annual assessments | | | |
| 1006. | | 1513. | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | 1514. | |
| **1100. Title Charges** | | 1515. | |
| 1101. Settlement or closing fee    To: Swafford and Hays Settle | 200.00 | | |
| 1102. Abstract or title search    To: Swafford and Hays Settleme | 375.00 | | |
| 1103. Title examination    To: Swafford and Hays Setttlement Se | 225.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1104. Title insurance binder | | | 35,219.12 |
| 1105. Document preparation | | N. Net Settlement | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | 1600. Loan Amount | 76,000.00 |
| (Includes above item numbers: ) | | | |
| 1108. Title Insurance    To: American Pioneer Title Insurance Co | 212.40 | 1601. Plus Check/Cash from Borrower | |
| (Includes above item numbers: ) | | | |
| 1109. Lender's coverage 76,000.00 @ 212.40 | | 1602. Minus total settlement charges | 7,467.42 |
| 1110. Owner's coverage  @ 0.00 | | (Line 1400) | |
| 1111. | | 1603. Minus total Disbursements to | 35,219.12 |
| 1112. | | Others (line 1520) | |
| 1113. Overnight Courier & Handling Fees | | 1604. Equals disbursements to borrower | 33,313.46 |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees:    To: Clerk of the Court | 120.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:    Deed $0.00  Mortgage $114.00   To: Cl | 114.00 | | |
| 1204. Transfer Tax    To: Clerk of the Court | 10.00 | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Flood Determination POCL $9.50 | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. Total settlement charges (enter on line 1602)** | 7,467.42 | | |

The undersigned hereby acknowledge receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A or RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Swafford and Hays Settlement Services, Inc.    Rebecca Jean Todd Casey    Joe Casey

08/04/2004   15:10                                   NO. 163   P03

(Printed on Aug 04, 2004 @ 15:43)                                    OMB No. 2502-0265

US Department of Housing and Urban Development

**SETTLEMENT STATEMENT (Transactions Without Sellers)**

| File Number: 04-4243 | Loan Number: 10189572 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Rebecca Jean Todd Casey 265 Boren Road Warrior, AL 35180
Joe Casey

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4501 Circle 75 Parkway Suite F6300 Atlanta, GA 30339

**PROPERTY LOCATION (Brief Legal):**
265 Boren Road Warrior, AL 35180

| SETTLEMENT AGENT: Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom | PLACE OF SETTLEMENT: 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
|---|---|
| SETTLEMENT DATE: 08/04/2004 | DISBURSEMENT DATE: 08/09/2004 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payoff Account# 5456562100339016 | |
| 801. Loan Origination Fee   To: Homeowners Loan | 4,175.02 | To: Compass Bank | 24,918.97 |
| 802. Loan Discount | | 1502. Payment | |
| 803. Appraisal Fee POCL $125.00   To: Bailey Appraisal | 225.00 | To: Amer First | 2,232.00 |
| 804. Credit Report Credit Report POCL $8.50 | | 1503. Payment | |
| 805. Lender's Inspection Fee | | To: Citi Financial | 7,767.45 |
| 806. Mortgage Insurance Application Fee | | 1504. 04 Taxes | |
| 807. Assumption Fee | | To: Jefferson County Tax Collector | 300.70 |
| 808. Processing/Underwriter Fee   To: Homeowners Loan | 390.00 | 1505. | |
| 809. Funding Fee   To: Homeowners Loan | 365.00 | | |
| 810. Administration Fee   To: Homeowners Loan | 295.00 | 1506. | |
| 811. Document Preparation Fee   To: Homeowners Loan | 195.00 | | |
| **900. Items Required By Lender To Be Paid In Advance** | | 1507. | |
| 901. Interest from | | | |
| 902. Mortgage Insurance Premium for | | 1508. | |
| 903. Hazard Insurance Premium   To: Alfa Insurance | 566.00 | | |
| 904. | | 1509. | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | 1510 | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage insurance | | 1511. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1512. | |
| 1005. Annual assessments | | | |
| 1006. | | 1513. | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | 1514. | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee   To: Swafford and Hays Settle | 200.00 | 1515. | |
| 1102. Abstract or title search   To: Swafford and Hays Settlem | 375.00 | | |
| 1103. Title examination   To: Swafford and Hays Settlement Se | 725.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1104. Title insurance binder | | | 35,219.12 |
| 1105. Document preparation | | N. Net Settlement | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | 1600. Loan Amount | 76,000.00 |
| (Includes above item numbers:  ) | | | |
| 1108. Title Insurance   To: American Pioneer Title Insurance Co | 212.40 | 1601. Plus Check/Cash from Borrower | |
| (Includes above item numbers:  ) | | | |
| 1109. Lender's coverage 76,000.00 @ 212.40 | | 1602. Minus total settlement charges (Line 1400) | 7,467.42 |
| 1110. Owner's coverage @ 0.00 | | | |
| 1111. | | 1603. Minus total Disbursements to Others (line 1520) | 35,219.12 |
| 1112. | | | |
| 1113. Overnight Courier & Handling Fees | | 1604. Equals disbursements to borrower | 33,313.46 |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees:   To: Clerk of the Court | 120.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:   Deed $0.00 Mortgage $114.00   To: Cl | 114.00 | | |
| 1204. Transfer Tax   To: Clerk of the Court | 10.00 | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Flood Determination POCL $9.50 | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. Total settlement charges (enter on line 1603)** | 7,467.42 | | |

The undersigned hereby acknowledge receipt of a completed copy of this statement. To the best of my knowledge the HUD-1 or RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

X                                      X
Swafford and Hays Settlement Services, Inc.    Rebecca Jean Todd Casey

X
Joe Casey

Date Printed: Thursday, March 16, 2006  11:32:39 AM

## Disbursement Sheet

| Order #: 04-4243 | Settlement Date: 08/04/2004 | Disbursement Date: 08/09/2004 |
|---|---|---|

| Buyer: | Rebecca Jean Todd Casey and Joe Casey, husband and wife | Money Out: | $70,579.98 |
|---|---|---|---|
| Seller: | Rebecca Jean Todd Casey | Money In: | $70,579.98 |
| Property: | 265 Boren Road Warrior, AL 35180 | Difference: | $0.00 |
| Lender: | Homeowners Loan | | |
| Loan #: | 10189572 | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00071396 | 8/9/2004 9:24:32 AM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $200.00 |
| | | | 1102 | Abstract or title search | | $175.00 |
| | | | 1103 | Title examination | | $225.00 |
| | | | 1108 | Title Insurance | | $148.68 |
| | | | | | Total: | $748.68 |
| 00071397 | 8/9/2004 9:24:32 AM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $63.72 |
| | | | | | Total: | $63.72 |
| 00071398 | 8/9/2004 9:24:32 AM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $200.00 |
| | | | | | Total: | $200.00 |
| 00071768 | 8/10/2004 4:02:27 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: | | $73.50 |
| | | | 1204 | Transfer Tax | | $10.00 |
| | | | | | Total: | $83.50 |
| wire #3563281 | 8/9/2004 | Rebecca Jean Todd Casey and Joe Casey | 303 | Cash [ ]From [X]To Borrower | | $33,313.46 |
| | | | | | Total: | $33,313.46 |
| 00071400 | 8/9/2004 9:24:32 AM | Bailey Appraisal | 803 | Appraisal Fee POC $300.00 POCL $125.00 | | $225.00 |
| | | | | | Total: | $225.00 |
| 00071401 | 8/9/2004 9:24:32 AM | Compass Bank | 1501 | Payoff Account# 5456562100339016 | | $24,918.97 |
| | | | | | Total: | $24,918.97 |
| 00071402 | 8/9/2004 9:24:32 AM | Amer First | 1502 | Payment | | $2,232.00 |
| | | | | | Total: | $2,232.00 |
| 00071403 | 8/9/2004 9:24:32 AM | Citi Financial | 1503 | Payment | | $7,767.45 |
| | | | | | Total: | $7,767.45 |
| 00071405 | 8/9/2004 9:24:32 AM | Alfa Insurance | 903 | Hazard Insurance Premium for | | $566.00 |
| | | | | | Total: | $566.00 |
| 00071769 | 8/10/2004 4:02:27 PM | Blount County Judge of Probate | 1203 | State tax/stamps:  Deed $0.00 Mortgage $114.00 | | $114.00 |
| | | | | | Total: | $114.00 |
| 00071770 | 8/10/2004 4:02:27 PM | Blount County Judge of Probate | 1201 | Recording fees: | | $35.00 |
| | | | | | Total: | $35.00 |
| 00071771 | 8/10/2004 4:02:27 PM | Blount County Judge of Probate | 1201 | Recording fees: | | $11.50 |
| | | | | | Total: | $11.50 |
| 00074612 | 8/26/2004 9:05:28 AM | Donny B. Ray, Revenue Commissioner | 1504 | 04 Taxes | | $300.70 |
| | | | | | Total: | $300.70 |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 04-4243/Lender/1 | 08/09/2004 | Homeowners Loan | | | | |
| | | | 808 | Processing\Underwriter Fee | | ($390.00) |
| | | | 809 | Funding Fee | | ($365.00) |
| | | | 810 | Administration Fee | | ($295.00) |
| | | | 811 | Document Preparation Fee | | ($195.00) |
| | | | 801 | Loan Origination Fee | | ($4,175.02) |
| | | | 1600 | Loan Amount | | $76,000.00 |
| | | | | | Total: | $70,579.98 |

**Hall-Frazier**
**Record - 001185**

Date Printed: Thursday, March 16, 2006 11:32:34 AM

## LEDGER CARD

Order #: 04-4243
Buyer/Borrower : Rebecca Jean Todd Casey and Joe Casey
Seller : Rebecca Jean Todd Casey
Lender Name : Homeowners Loan
Loan Number : 10189572
Property Address : 265 Boren Road, Warrior, AL  35180

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn | Bank of America- TN | 003786777421 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 08/09/2004 | funding wire | alisonw | 08/31/2004 | Homeowners Loan | 70,579.98 |
| **\*TOTAL DEPOSITS** | | | | | **70,579.98** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 08/09/2004 | 00071395v | a.smith | 08/31/2004 | Clerk of the Court | (244.00) |
| 08/09/2004 | 00071396 | n.guider | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (748.68) |
| 08/09/2004 | 00071397 | n.guider | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (63.72) |
| 08/09/2004 | 00071398 | n.guider | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 08/09/2004 | 00071399v | alisonw | 08/31/2004 | Rebecca Jean Todd Casey and Joe Casey | (33,313.46) |
| 08/09/2004 | 00071400 | n.guider | 08/31/2004 | Bailey Appraisal | (225.00) |
| 08/09/2004 | 00071401 | n.guider | 08/31/2004 | Compass Bank | (24,918.97) |
| 08/09/2004 | 00071402 | n.guider | 08/31/2004 | Amer First | (2,232.00) |
| 08/09/2004 | 00071403 | n.guider | 08/31/2004 | Citi Financial | (7,767.45) |
| 08/09/2004 | 00071404v | daynat | 08/31/2004 | Jefferson County Tax Collector | (300.70) |
| 08/09/2004 | 00071405 | n.guider | 09/30/2004 | Alfa Insurance | (566.00) |
| 08/09/2004 | wire # 3563281 | alisonw | 08/31/2004 | Rebecca Jean Todd Casey and Joe Casey | (33,313.46) |
| 08/10/2004 | 00071768 | a.smith | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (83.50) |
| 08/10/2004 | 00071769 | a.smith | 08/31/2004 | Blount County Judge of Probate | (114.00) |
| 08/10/2004 | 00071770 | a.smith | 08/31/2004 | Blount County Judge of Probate | (35.00) |
| 08/10/2004 | 00071771 | a.smith | 08/31/2004 | Blount County Judge of Probate | (11.50) |
| 08/26/2004 | 00074612 | daynat | 10/31/2004 | Donny B. Ray, Revenue Commissioner | (300.70) |
| **\*TOTAL CHECKS** | | | | | **(104,438.14)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 08/09/2004 | 00071395 | a.smith | 08/31/2004 | Clerk of the Court | 244.00 |
| 08/09/2004 | 00071399 | alisonw | 08/31/2004 | Rebecca Jean Todd Casey and Joe Casey | 33,313.46 |
| 08/09/2004 | 00071404 | daynat | 08/31/2004 | Jefferson County Tax Collector | 300.70 |
| **\*TOTAL VOIDS** | | | | | **33,858.16** |

| **\*\*TOTALS FOR: tn** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                            **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                            **0.00**

**SETTLEMENT STATEMENT (Transactions Without Sellers)**

| File Number: 05-53 | Loan Number: 10253456 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Kenneth R. McDonald 15546 Cassidy Drive Chunchula, AL 36521
Paula L. McDonald

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4501 Circle 75 Parkway Suite F6300 Atlanta, GA 30339

**PROPERTY LOCATION (Brief Legal):**
15546 Cassidy Drive Chunchula, AL 36521

**SETTLEMENT AGENT:**
Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom

**PLACE OF SETTLEMENT:**
9041 Executive Park Drive, Suite 400 Knoxville, TN 37923

**SETTLEMENT DATE:** 01/25/2005

**DISBURSEMENT DATE:** 01/31/2005

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. Items Payable In Connection With Loan | | 1501. Payoff good thru 2/10/05 | |
| 801. Loan Origination Fee  To: Homeowners Loan | 3,535.00 | To: GreenTree | 48,402.17 |
| 802. Loan Discount | | 1502. Payoff good thru 2/10/05 | |
| 803. Appraisal Fee POC $350.00 To H & H Appraisal | | To: Acceptance Loan Co. | 8,039.45 |
| 804. Credit Report Credit Report POCL $8.50 | | 1503. Payment on account | |
| 805. Lender's Inspection Fee | | To: NCO Financial/Progressive | 1,281.00 |
| 806. Mortgage Insurance Application Fee | | 1504. Payment on account | |
| 807. Assumption Fee | | To: Arrow/First Premier | 773.00 |
| 808. Processing/Underwriter Fee  To: Homeowners Loan | 390.00 | 1505. Payment on account | |
| 809. Funding Fee  To: Homeowners Loan | 365.00 | To: Arrow/First Premier | 583.00 |
| 810. Administration Fee  To: Homeowners Loan | 295.00 | 1506. | |
| 811. Document Preparation Fee  To: Homeowners Loan | 195.00 | | |
| 812. Tax Service Fee  To: Homeowners Loan | 63.00 | 1507. | |
| 900. Items Required By Lender To Be Paid In Advance | | | |
| 901. Interest from 01/31/2005 to 02/01/2005 @ 20.99/day  To: . | 20.99 | 1508. | |
| 902. Mortgage Insurance Premium for | | | |
| 903. Hazard Insurance Premium for  To: Blackmon Insurance | 1,316.52 | 1509. | |
| 904. | | | |
| 905. | | 1510. | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard insurance | | 1511. | |
| 1002. Mortgage insurance | | | |
| 1003. City property taxes | | 1512. | |
| 1004. County property taxes | | | |
| 1005. Annual assessments | | 1513. | |
| 1006. | | | |
| 1007. | | 1514. | |
| 1008. Aggregate Accounting Adjustment | | | |
| 1100. Title Charges | | 1515. | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlem | 200.00 | | |
| 1102. Abstract or title search  To: Swafford and Hays Settlem | 375.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1103. Title examination  To: Swafford and Hays Settlement Ser | 225.00 | | 59,078.62 |
| 1104. Title insurance binder | | N. Net Settlement | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | 1600. Loan Amount | 70,700.00 |
| 1107. Attorney's Fees | | | |
| (Includes above item numbers:  ) | | 1601. Plus Check/Cash from Borrower | |
| 1108. Title Insurance  To: American Pioneer Title Insurance Co | 200.40 | | |
| (Includes above item numbers:  ) | | 1602. Minus total settlement charges | 7,481.96 |
| 1109. Lender's coverage  70,700.00 @ 200.40 | | (Line 1400) | |
| 1110. Owner's coverage  @ 0.00 | | 1603. Minus total Disbursements to | 59,078.62 |
| 1111. Title Service Fee  To: Swafford and Hays Settlement Servi | 75.00 | Others (line 1520) | |
| 1112. | | 1604. Equals disbursements to borrower | 4,139.42 |
| 1113. Overnight Courier & Handling Fees | | | |
| 1200. Govt. Recording, Transfer, and Service Fees | | | |
| 1201. Recording fees:  To: Clerk of the Court | 120.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $106.05  To: Cler | 106.05 | | |
| 1204. | | | |
| 1205. | | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Flood Determination POCL $9.50 | | | |
| 1304. | | | |
| 1305. | | | |
| 1400. Total settlement charges (enter on line 1602) | 7,481.96 | | |

PLAINTIFF'S EXHIBIT 35

x Kenneth R. McDonald 1-25-05     x Paula L. McDonald 1-25-05

Swafford and Hays Settlement Services, Inc.   Kenneth R. McDonald   Paula L. McDonald

**Hall-Frazier**
**Record - 001187**

Date Printed: Wednesday, March 15, 2006  3:13:00 PM

# LEDGER CARD

Order #: 05-53
Buyer/Borrower : Kenneth R. McDonald and Paula L. McDonald
Seller :
Lender Name : Homeowners Loan
Loan Number : 10253456
Property Address : 15546 Cassidy Drive, Chunchula, AL  36521

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn2 | Bank of America- TN (New) | 003786809771 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 01/31/2005 | funding wire | alisonw | 01/31/2005 | Homeowners Loan | 65,836.01 |
| **\*TOTAL DEPOSITS** | | | | | **65,836.01** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 02/01/2005 | wire # 4834845 | alisonw | 02/28/2005 | Kenneth R. McDonald and Paula L. McDonald | (4,139.42) |
| 01/31/2005 | 00014601v | m.lay | 02/28/2005 | Clerk of the Court | (226.05) |
| 01/31/2005 | 00014602 | bj | 02/28/2005 | Swafford and Hays Settlement Services, Inc. | (740.28) |
| 01/31/2005 | 00014603 | bj | 02/28/2005 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 01/31/2005 | 00014604 | bj | 02/28/2005 | Swafford and Hays Settlement Services, Inc. | (75.00) |
| 01/31/2005 | 00014605 | bj | 02/28/2005 | Swafford and Hays Settlement Services, Inc. | (60.12) |
| 01/31/2005 | 00014606v | alisonw | 02/28/2005 | Kenneth R. McDonald and Paula L. McDonald | (4,139.42) |
| 01/31/2005 | 00014607 | bj | 02/28/2005 | GreenTree | (48,402.17) |
| 01/31/2005 | 00014608 | bj | 02/28/2005 | Acceptance Loan Co. | (8,039.45) |
| 01/31/2005 | 00014609 | bj | 02/28/2005 | NCO Financial/Progressive | (1,281.00) |
| 01/31/2005 | 00014610 | bj | 03/31/2005 | Arrow/First Premier | (773.00) |
| 01/31/2005 | 00014611 | bj | 03/31/2005 | Arrow/First Premier | (583.00) |
| 01/31/2005 | 00014612 | bj | 02/28/2005 | Blackmon Insurance | (1,316.52) |
| 02/01/2005 | 00015375 | m.lay | 03/31/2005 | Kenneth R. McDonald and Paula L. McDonald | (67.00) |
| 02/01/2005 | 00015376 | m.lay | 02/28/2005 | MOBILE COUNTY JUDGE OF PROBATE | (106.05) |
| 02/01/2005 | 00015377 | m.lay | 02/28/2005 | MOBILE COUNTY JUDGE OF PROBATE | (53.00) |
| **\*TOTAL CHECKS** | | | | | **(70,201.48)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 01/31/2005 | 00014601 | m.lay | 02/28/2005 | Clerk of the Court | 226.05 |
| 01/31/2005 | 00014606 | alisonw | 02/28/2005 | Kenneth R. McDonald and Paula L. McDonald | 4,139.42 |
| **\*TOTAL VOIDS** | | | | | **4,365.47** |

| **\*\*TOTALS FOR: tn2** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                                      **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                                          **0.00**

Date Printed: Wednesday, March 15, 2006  3:13:05 PM

## Disbursement Sheet

| Order #: 05-53 | Settlement Date: 01/25/2005 | Disbursement Date: 01/31/2005 |
|---|---|---|

Kenneth R. McDonald and Paula L. McDonald, as joint tenants in common with equal rights and interests for the period that both shall live

Buyer:
Seller:
Property:   15546 Cassidy Drive Chunchula, AL  36521
Lender:   Homeowners Loan
Loan #:   10253456

Money Out:   $65,836.01
Money In:   $65,836.01
Difference:   $0.00

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00014602 | 1/31/2005 9:20:29 AM | Swafford and Hays Settlement Services, Inc. | 1102 | | | |
| | | | 1102 | Abstract or title search | | $375.00 |
| | | | 1103 | Title examination | | $225.00 |
| | | | 1108 | Title Insurance | | $140.28 |
| | | | | | **Total:** | **$740.28** |
| 00014603 | 1/31/2005 9:20:29 AM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $200.00 |
| | | | | | **Total:** | **$200.00** |
| 00014604 | 1/31/2005 9:20:29 AM | Swafford and Hays Settlement Services, Inc. | 1111 | Title Service Fee | | $75.00 |
| | | | | | **Total:** | **$75.00** |
| 00014605 | 1/31/2005 9:20:29 AM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $60.12 |
| | | | | | **Total:** | **$60.12** |
| wire # 4834845 | 2/1/2005 9:30:38 AM | Kenneth R. McDonald and Paula L. McDonald | 303 | Cash [ ]From [X]To  Borrower | | $4,139.42 |
| | | | | | **Total:** | **$4,139.42** |
| 00015375 | 2/1/2005 4:34:44 PM | Kenneth R. McDonald and Paula L. McDonald | 1201 | Recording fees: | | $67.00 |
| | | | | | **Total:** | **$67.00** |
| 00014607 | 1/31/2005 9:20:29 AM | GreenTree | 1501 | Payoff good thru 2/10/05 | | $48,402.17 |
| | | | | | **Total:** | **$48,402.17** |
| 00014608 | 1/31/2005 9:20:29 AM | Acceptance Loan Co. | 1502 | Payoff good thru 2/10/05 | | $8,039.45 |
| | | | | | **Total:** | **$8,039.45** |
| 00014609 | 1/31/2005 9:20:29 AM | NCO Financial/Progressive | 1503 | Payment on account | | $1,281.00 |
| | | | | | **Total:** | **$1,281.00** |
| 00014610 | 1/31/2005 9:20:29 AM | Arrow/First Premier | 1504 | Payment on account | | $773.00 |
| | | | | | **Total:** | **$773.00** |
| 00014611 | 1/31/2005 9:20:29 AM | Arrow/First Premier | 1505 | Payment on account | | $583.00 |
| | | | | | **Total:** | **$583.00** |
| 00014612 | 1/31/2005 9:20:29 AM | Blackmon Insurance | 903 | Hazard Insurance Premium for | | $1,316.52 |
| | | | | | **Total:** | **$1,316.52** |
| 00015376 | 2/1/2005 4:34:44 PM | MOBILE COUNTY JUDGE OF PROBATE | 1203 | State tax/stamps:  Deed $0.00 Mortgage $106.05 | | $106.05 |
| | | | | | **Total:** | **$106.05** |
| 00015377 | 2/1/2005 4:34:44 PM | MOBILE COUNTY JUDGE OF PROBATE | 1201 | Recording fees: | | $53.00 |
| | | | | | **Total:** | **$53.00** |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 05-53/Lender/1 | 01/31/2005 | Homeowners Loan | | | | |
| | | | 808 | Processing\Underwriter Fee | | ($390.00) |
| | | | 809 | Funding Fee | | ($365.00) |
| | | | 810 | Administration Fee | | ($295.00) |
| | | | 811 | Document Preparation Fee | | ($195.00) |
| | | | 801 | Loan Origination Fee | | ($3,535.00) |
| | | | 812 | Tax Service Fee | | ($63.00) |
| | | | 1600 | Loan Amount | | $70,700.00 |
| | | | 901 | Interest from  01/31/2005 to 02/01/2005 @ 20.99/day | | ($20.99) |
| | | | | | **Total:** | **$65,836.01** |

## A & B Abstracts, Inc.

| | |
|---|---|
| 2725 Calhoun Drive<br>Abbeville, AL 36310 | Phone: 334-687-4846<br>Fax: 334-687-1027<br>Email: boverton@eufaula.rr.com |



A & B ABSTRACTS, Inc
Covering Counties in Alabama, Georgia,
And Mississippi

A & B #11849

| NAME: | Kenneth McDonald | ADDRESS: | 15546 Cassidy Drive |
|---|---|---|---|
| | | | Chunchula, AL 36521 |
| | | COUNTY: | Mobile |

**CURRENT DEED:** Venders Lien Deed
JTWROS

**TAX INFORMATION**

PARCEL ID # R02-09-08-28-0-000-052.001

**GRANTOR:** First Small Business Investment
Company of Alabama

| YEAR: 2004 | Amount: $ 165.29 |
|---|---|
| | Status: Paid 1-18-04 |

**GRANTEE:** Kenneth R. McDonald and
Paula L. McDonald

| YEAR: 2003 | Amount: $ 155.88 |
|---|---|
| | Status: Paid 11-8-02 |

| DATED: | 12-9-88 |
|---|---|
| FILED: | 12-28-88 |
| BOOK: | 3366 |
| PAGE: | 593 |

| YEAR: 2002 | Amount: $ 439.51 |
|---|---|
| | Status: Paid 2-27-04 |

Lien released in Book 4172 Page 537

Assessed Value: $ 4160.00

Legal Description:

Previous Deed:

See Deed

| FIRST MORTGAGE | Amt: $ 8878.43 | SECOND MORTGAGE | Amt: $ |
|---|---|---|---|
| Date of Mtg.: 3-4-04 | Date Filed: 3-16-04 | Date of Mtg.: | Date Filed: |
| Book: 5554 | Page: 1928 | Book: | Page: |
| Mortgagee: Acceptance Loan Company, Inc. | | Mortgagee: | |
| Assigned: | | Assigned: | |
| Mortgagor: Kenneth R. McDonald and Paula L. McDonald , husband and wife | | Mortgagor: | |

| LIENS: | None of Record for ten (10) Years, prior to effective Date |
|---|---|
| JUDGMENTS: | None of Record for ten (10) Years, prior to effective Date |
| EASEMENTS: | Subject to R-O-W, Setback Lines, and Easements of Record |
| UCC: | None of Record for five (5) Years, prior to effective Date |
| CCR's: | Subject to any Covenants, Restrictions, or Conditions of Record |
| Note: | |

**PROBATE RECORDS CHECKED FROM** 12-28-88 **THROUGH** 12-30-04

Hall-Frazier
Record - 001190

A & B Abstracts, Inc.

2725 Calhoun Drive
Abbeville, AL 36310

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/6/2005 | 11849 |

**Bill To**

Swafford and Hays Settlement Services
9041 Executive Park Drive
Suite 400
Knoxville, Tn. 37923

| P.O. No. | Terms | Due Date | Ship Date | Ship Via |
|----------|-------|----------|-----------|----------|
| 05-53 | Net 30 | 2/5/2005 | 1/6/2005 | email |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| Current Owner Se... | Kenneth McDonald-15546 Cassidy Drive-Mobile Co., AL. | 1 | 90.00 | 90.00 |

SCO

| | |
|---|---|
| **Total** | $90.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $90.00 |

(Printed on Jul 21, 2004 @ 17:12)

US Department of Housing and Urban Development

OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| | | |
|---|---|---|
| File Number: 04-6349 | Loan Number: 10205546 | Mortgage Ins. Case #: |

**NAME AND ADDRESS OF BORROWER/BUYER:**
Linda J. Johnson 815 18th St Bessemer, AL 35020

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4501 Circle 75 Parkway Suite F6300 Atlanta, GA 30339

**PROPERTY LOCATION (Brief Legal):**
815 18th St Bessemer, AL  35020

| SETTLEMENT AGENT: | PLACE OF SETTLEMENT: |
|---|---|
| Swafford and Hays Settlement Services, Inc.  865-539-1450 Contact: Shannon Odom | 9041 Executive Park Drive, Suite 400 Knoxville, TN  37923 |
| SETTLEMENT DATE: 07/21/2004 | DISBURSEMENT DATE: 07/26/2004 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payoff Account# 0041704107 | |
| 801. Loan Origination Fee    To: Homeowners Loan | 2,017.00 | To: Washington Mutual | 31,534.79 |
| 802. Loan Discount | | 1502. 04 Taxes | |
| 803. Appraisal Fee    To: Taylor Appraisal Co. | 225.00 | To: Jefferson County Tax Collector | 134.79 |
| 804. Credit Report Credit Report POCL $8.50 | | 1503. Payment | |
| 805. Lender's Inspection Fee | | To: Cross Country Bank | 159.00 |
| 806. Mortgage Insurance Application Fee | | 1504. | |
| 807. Assumption Fee | | | |
| 808. Processing\Underwriter Fee    To: Homeowners Loan | 390.00 | 1505. | |
| 809. Funding Fee    To: Homeowners Loan | 365.00 | | |
| 810. Administration Fee    To: Homeowners Loan | 295.00 | 1506. | |
| 811. Document Preparation Fee    To: Homeowners Loan | 195.00 | | |
| **900. Items Required By Lender To Be Paid In Advance** | | 1507. | |
| 901. Interest from | | | |
| 902. Mortgage Insurance Premium for | | 1508. | |
| 903. Hazard Insurance Premium for    To: Foremost Insurance | 655.04 | | |
| 904. | | 1509. | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | 1510. | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage insurance | | 1511. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1512. | |
| 1005. Annual assessments | | | |
| 1006. | | 1513. | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | 1514. | |
| **1100. Title Charges** | | 1515. | |
| 1101. Settlement or closing fee    To: Swafford and Hays Setttle | 200.00 | | |
| 1102. Abstract or title search    To: Swafford and Hays Settleme | 375.00 | | |
| 1103. Title examination    To: Swafford and Hays Setttlement Se | 225.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1104. Title insurance binder | | | 31,828.58 |
| 1105. Document preparation | | **N. Net Settlement** | |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | 1600. Loan Amount | 46,750.00 |
| (Includes above item numbers:  ) | | | |
| 1108. Title Insurance    To: American Pioneer Title Insurance Co | 200.00 | 1601. Plus Check/Cash from Borrower | |
| (Includes above item numbers:  ) | | | |
| 1109. Lender's coverage 46,750.00 @ 200.00 | | 1602. Minus total settlement charges | 5,332.24 |
| 1110. Owner's coverage  @ 0.00 | | (Line 1400) | |
| 1111. | | 1603. Minus total Disbursements to | 31,828.58 |
| 1112. | | Others (line 1520) | |
| 1113. Overnight Courier & Handling Fees | | 1604. Equals disbursements to borrower | 9,589.18 |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees:    To: Clerk of the Court | 120.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:    Deed $0.00  Mortgage $70.20    To: Cle | 70.20 | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Flood Determination POCL $9.50 | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. Total settlement charges (enter on line 1602)** | 5,332.24 | | |

The undersigned hereby acknowledge receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A ref RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

X _____            X _____
Swafford and Hays Settlement Services, Inc.            Linda J. Johnson

PLAINTIFF'S EXHIBIT
96

Date Printed: Friday, March 17, 2006 10:57:34 AM

## Disbursement Sheet

| Order #: 04-6349 | Settlement Date: 07/26/2004 | Disbursement Date: 07/26/2004 |
|---|---|---|

| | | | |
|---|---|---|---|
| Buyer: | Linda J. Johnson, a single woman | Money Out: | $43,488.00 |
| Seller: | | Money In: | $43,488.00 |
| Property: | 815 18th St. Bessemer, AL 35020 | Difference: | $0.00 |
| Lender: | Homeowners Loan | | |
| Loan #: | 10205546 | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00068158 | 7/26/2004 10:47:48 AM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $200.00 |
| | | | 1102 | Abstract or title search | | $175.00 |
| | | | 1103 | Title examination | | $225.00 |
| | | | 1108 | Title Insurance | | $140.00 |
| | | | | | Total: | $740.00 |
| 00068159 | 7/26/2004 10:47:48 AM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $60.00 |
| | | | | | Total: | $60.00 |
| 00068160 | 7/26/2004 10:47:48 AM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $200.00 |
| | | | | | Total: | $200.00 |
| 00068574 | 7/27/2004 2:43:21 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: | | $98.00 |
| | | | | | Total: | $98.00 |
| 00068161 | 7/26/2004 10:47:48 AM | Linda J. Johnson | 303 | Cash [ ]From [X]To Borrower | | $9,589.18 |
| | | | | | Total: | $9,589.18 |
| 00068162 | 7/26/2004 10:47:48 AM | Washington Mutual | 1501 | Payoff Account# 0041704107 | | $31,534.79 |
| | | | | | Total: | $31,534.79 |
| 00068163 | 7/26/2004 10:47:48 AM | Jefferson County Tax Collector | 1502 | 04 Taxes | | $134.79 |
| | | | | | Total: | $134.79 |
| 00068164 | 7/26/2004 10:47:48 AM | Cross Country Bank | 1503 | Payment | | $159.00 |
| | | | | | Total: | $159.00 |
| 00068165 | 7/26/2004 10:47:48 AM | Foremost Insurance | 903 | Hazard Insurance Premium for | | $655.04 |
| | | | | | Total: | $655.04 |
| 00068166 | 7/26/2004 10:47:48 AM | Taylor Appraisal Co. | 803 | Appraisal Fee | | $225.00 |
| | | | | | Total: | $225.00 |
| 00068575 | 7/27/2004 2:43:21 PM | Jefferson County Judge of Probate | 1203 | State tax/stamps:   Deed $0.00 Mortgage $70.20 | | $70.20 |
| | | | | | Total: | $70.20 |
| 00068576 | 7/27/2004 2:43:21 PM | Jefferson County Judge of Probate | 1201 | Recording fees: | | $22.00 |
| | | | | | Total: | $22.00 |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 04-6349/Lende r/1 | 07/26/2004 | Homeowners Loan | 808 | Processing\Underwriter Fee | | ($390.00) |
| | | | 809 | Funding Fee | | ($365.00) |
| | | | 810 | Administration Fee | | ($295.00) |
| | | | 811 | Document Preparation Fee | | ($195.00) |
| | | | 801 | Loan Origination Fee | | ($2,017.00) |
| | | | 1600 | Loan Amount | | $46,750.00 |
| | | | | | Total: | $43,488.00 |

**Hall-Frazier**
**Record - 001193**

Date Printed: Friday, March 17, 2006  10:57:30 AM

## LEDGER CARD

Order #: 04-6349
Buyer/Borrower : Linda J. Johnson
Seller :
Lender Name : Homeowners Loan
Loan Number : 10205546
Property Address : 815 18th St., Bessemer, AL  35020

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn | Bank of America- TN | 003786777421 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/26/2004 | funding wire | alisonw | 07/31/2004 | Homeowners Loan | 43,488.00 |
| *TOTAL DEPOSITS | | | | | **43,488.00** |

### CHECKS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/26/2004 | 00068157v | a.smith | 07/31/2004 | Clerk of the Court | (190.20) |
| 07/26/2004 | 00068158 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (740.00) |
| 07/26/2004 | 00068159 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (60.00) |
| 07/26/2004 | 00068160 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 07/26/2004 | 00068161 | n.guider | 07/31/2004 | Linda J. Johnson | (9,589.18) |
| 07/26/2004 | 00068162 | n.guider | 07/31/2004 | Washington Mutual | (31,534.79) |
| 07/26/2004 | 00068163 | n.guider | 10/31/2004 | Jefferson County Tax Collector | (134.79) |
| 07/26/2004 | 00068164 | n.guider | 08/31/2004 | Cross Country Bank | (159.00) |
| 07/26/2004 | 00068165 | n.guider | 07/31/2004 | Foremost Insurance | (655.04) |
| 07/26/2004 | 00068166 | n.guider | 08/31/2004 | Taylor Appraisal Co. | (225.00) |
| 07/27/2004 | 00068574 | a.smith | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (98.00) |
| 07/27/2004 | 00068575 | a.smith | 08/31/2004 | Jefferson County Judge of Probate | (70.20) |
| 07/27/2004 | 00068576 | a.smith | 08/31/2004 | Jefferson County Judge of Probate | (22.00) |
| *TOTAL CHECKS | | | | | **(43,678.20)** |

### VOIDS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/26/2004 | 00068157 | a.smith | 07/31/2004 | Clerk of the Court | 190.20 |
| *TOTAL VOIDS | | | | | **190.20** |

| **TOTALS FOR: tn** | **0.00** |
|---|---|

***POSTED TOTAL**          **0.00**

## PENDING ESCROWS

****TOTAL(POSTED + PENDING)**          **0.00**

✓

(Printed on Jul 08, 2004 @ 16:29)                    US Department of Housing and Urban Development                    OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: 04-5252 | Loan Number: 10191658 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Eleanor Sterling 6271 East Mill Road Lineville, AL 36266
Wylean Sterling 6271 East Mill Rd Lineville, AL 36266

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4501 Circle 75 Parkway Suite F6300 Atlanta, GA 30339

**PROPERTY LOCATION (Brief Legal):**
6271 East Mill Road Lineville, AL  36266

| SETTLEMENT AGENT: Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom | PLACE OF SETTLEMENT: 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
|---|---|
| SETTLEMENT DATE: 07/08/2004 | DISBURSEMENT DATE: 07/13/2004 |

| L. SETTLEMENT CHARGES | | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | | 1501. Payoff | |
| 801. Loan Origination Fee    To: Homeowners Loan | | 536.40 | To: Citifinancial | 4,252.21 |
| 802. Loan Discount | | | 1502. Payment | |
| 803. Appraisal Fee POC: $350.00    To: Talladega Appraisal | | 120.00 | To: Capital One | 854.00 |
| 804. Credit Report Credit Report POCL $8.50 | | | 1503. Payment | |
| 805. Lender's Inspection Fee | | | To: Spiegel | 2,087.00 |
| 806. Mortgage Insurance Application Fee | | | 1504. | |
| 807. Assumption Fee | | | | |
| 808. Processing\Underwriter Fee  To: Homeowners Loan | | 390.00 | 1505. | |
| 809. Funding Fee    To: Homeowners Loan | | 365.00 | | |
| 810. Administration Fee    To: Homeowners Loan | | 295.00 | 1506. | |
| 811. Document Preparation Fee    To: Homeowners Loan | | 195.00 | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | 1507. | |
| 901. Interest from | | | | |
| 902. Mortgage Insurance Premium for | | | 1508. | |
| 903. Hazard Insurance Premium for    To: Alfa Mutual Fire Ins C | | 397.00 | | |
| 904. | | | 1509. | |
| 905. | | | | |
| **1000. Reserves Deposited With Lender** | | | 1510. | |
| 1001. Hazard insurance | | | | |
| 1002. Mortgage insurance | | | 1511. | |
| 1003. City property taxes | | | | |
| 1004. County property taxes | | | 1512. | |
| 1005. Annual assessment | | | | |
| 1006. | | | 1513. | |
| 1007. | | | | |
| 1008. Aggregate Accounting Adjustment | | | 1514. | |
| **1100. Title Charges** | | | | |
| 1101. Settlement or closing fee    To: Swafford and Hays Settle | | 200.00 | 1515. | |
| 1102. Abstract or title search    To: Swafford and Hays Settleme | | 375.00 | | |
| 1103. Title examination    To: Swafford and Hays Settlement Se | | 225.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1104. Title insurance binder | | | | 7,193.21 |
| 1105. Document preparation | | | N. Net Settlement | |
| 1106. Notary Fees | | | | |
| 1107. Attorney's Fees | | | 1600. Loan Amount | 26,820.00 |
| (includes above item numbers:  ) | | | | |
| 1108. Title Insurance    To: American Pioneer Title Insurance Co | | 200.00 | 1601. Plus Check/Cash from Borrower | |
| (includes above item numbers:  ) | | | | |
| 1109. Lender's coverage  26,820.00 @ 200.00 | | | 1602. Minus total settlement charges | 3,458.75 |
| 1110. Owner's coverage  @ 0.00 | | | (Line 1400) | |
| 1111. | | | 1603. Minus total Disbursements to | 7,193.21 |
| 1112. | | | Others (line 1520) | |
| 1113. Overnight Courier & Handling Fees | | | 1604. Equals disbursements to borrower | 16,168.04 |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | | |
| 1201. Recording fees:    To: Clerk of the Court | | 120.00 | | |
| 1202. City/county tax/stamps: | | | | |
| 1203. State tax/stamps:    Deed $0.00  Mortgage $40.35    To: Cle | | 40.35 | | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. Additional Settlement Charges** | | | | |
| 1301. Survey | | | | |
| 1302. Pest inspection | | | | |
| 1303. Flood Determination POCL $9.50 | | | | |
| 1304. | | | | |
| 1305. | | | | |
| **1400. Total settlement charges (enter on line 1602)** | | 3,458.75 | | |

**PLAINTIFF'S EXHIBIT**
**37**

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge this HUD-1A or RESPA Settlement Statement is a true and accurate account of the funds which were received and will be/have been disbursed by the undersigned as part of the settlement of this transaction.

x _Wylean Sterling_           x _Eleanor Sterling_
Swafford and Hays Settlement Services, Inc.    Wylean Sterling           Eleanor Sterling



## A & B Abstracts, Inc.

| | |
|---|---|
| 2725 Calhoun Drive<br>Abbeville, AL 36310 | Phone: 334-687-4846<br>Fax:   334-687-1027<br>Email: ginapeacock@eufaula.rr.com |

*A & B ABSTRACTS, Inc*
*Covering Counties in Alabama,*
*Georgia and Mississippi,*

A&B# 8258

| NAME: Wylean Sterling | ADDRESS:   6271 East Mill Road |
|---|---|
| | Lineville, AL  36266 |
| | COUNTY:   Clay |

**CURRENT DEED:  SWD**

**TAX INFORMATION**

**GRANTOR:**  Eleanor Sterling, a single woman

PARCEL ID #   17-07-01-01-0-000-009.001

**GRANTEE:**  Eleanor Sterling and Wylean
Sterling

YEAR: 2001          Status: Paid

YEAR: 2002          Status: Paid

| DATED:   12/6/76 | YEAR: 2003          Amount: $85.92 |
|---|---|
| FILED:   12/6/76 | Status: Paid 1/2/04 |
| BOOK:   74 | |
| PAGE:   370 | Assessed Value: $4,920.00 |

**PREVIOUS DEED:**

Legal Description:

68p43 WD Mrs. Ollie C. East and William R.
East & Carol G. East and Robert L. Henson
and Joanne East Henson  to Eleanor Sterling
Date: 7/7/72 Filed: 11/13/72

See Deed

| FIRST MORTGAGE          Amt: $27,600.00 | SECOND  MORTGAGE          Amt: $ 25,800.00 |
|---|---|
| Date of Mtg.:  10/19/90          Date Filed: 11/7/90 | Date of Mtg.: 9/14/95          Date Filed: 9/15/95 |
| Book:   H58          Page: 91 | Book:   1041          Page: 39 |
| Mortgagee:   City Finance Company | Mortgagee:   City Finance Company |
| Assigned: | Assigned: |
| | Mortgagor:   Wylean Sterling, a single woman and |
| Mortgagor:   Wylean Sterling , single and<br>Eleanor Sterling, single | Eleanor Sterling, a single woman |

LIENS:                 None of Record for ten (10) years, prior to effective date

JUDGMENTS:        None of Record for ten (10)  years, prior to effective date

EASEMENTS:       Subject to R-O-W, Setback Lines, and Easements of Record

UCC:                   None of Record for five (5) years, prior to effective date

CCR's:                Subject to any Covenants, Restrictions, or Conditions of Record.

Note:

**PROBATE RECORDS CHECKED FROM     11/13/72     THROUGH     6/3/04**

### Disbursement Sheet

Date Printed: Thursday, March 16, 2006 11:51:43 AM

| Order #: 04-5252 | Settlement Date: 07/08/2004 | Disbursement Date: 07/13/2004 |
|---|---|---|

Buyer:
Seller:
Property: 6271 East Mill Road Lineville, AL 36266
Lender: Homeowners Loan
Loan #: 10191658

Eleanor Sterling and Wylean Sterling, for and during their joint lives, and upon the death of either of them, then to the survivor of them in fee simple, together with every contingent remainder and right of reversion

Money Out: $25,038.60
Money In: $25,038.60
Difference: $0.00

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00066385 | 7/13/2004 10:09:28 AM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $200.00 |
| | | | 1102 | Abstract or title search | | $175.00 |
| | | | 1103 | Title examination | | $225.00 |
| | | | 1108 | Title Insurance | | $140.00 |
| | | | | | Total: | $740.00 |
| 00066386 | 7/13/2004 10:09:28 AM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $60.00 |
| | | | | | Total: | $60.00 |
| 00066387 | 7/13/2004 10:09:28 AM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $200.00 |
| | | | | | Total: | $200.00 |
| 00066837 | 7/15/2004 4:43:41 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: | | $86.50 |
| | | | | | Total: | $86.50 |
| 00066388 | 7/13/2004 10:09:28 AM | Eleanor Sterling and Wylean Sterling | 303 | Cash [ ]From [X]To Borrower | | $16,168.04 |
| | | | | | Total: | $16,168.04 |
| 00066389 | 7/13/2004 10:09:28 AM | Talladega Appraisal | 803 | Appraisal Fee POC $350.00 | | $120.00 |
| | | | | | Total: | $120.00 |
| 00066390 | 7/13/2004 10:09:28 AM | Capital One | 1502 | Payment | | $854.00 |
| | | | | | Total: | $854.00 |
| apt#667,ck 66391 | 8/1/2004 | Spiegel | 1503 | Payment | | $2,087.00 |
| | | | | | Total: | $2,087.00 |
| 00066392 | 7/13/2004 10:09:28 AM | Citifinancial | 1501 | Payoff | | $4,252.21 |
| | | | | | Total: | $4,252.21 |
| 00066393 | 7/13/2004 10:09:28 AM | Alfa Mutual Fire Ins Co. | 903 | Hazard Insurance Premium for | | $397.00 |
| | | | | | Total: | $397.00 |
| 00066838 | 7/15/2004 4:43:41 PM | Clay County Judge of Probate | 1203 | State tax/stamps:   Deed $0.00 Mortgage $40.35 | | $40.35 |
| | | | | | Total: | $40.35 |
| 00066839 | 7/15/2004 4:43:41 PM | Clay County Judge of Probate | 1201 | Recording fees: | | $33.50 |
| | | | | | Total: | $33.50 |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 04-5252/Lender/1 | 07/13/2004 | Homeowners Loan | | | | |
| | | | 808 | Processing\Underwriter Fee | | ($390.00) |
| | | | 809 | Funding Fee | | ($365.00) |
| | | | 810 | Administration Fee | | ($295.00) |
| | | | 811 | Document Preparation Fee | | ($195.00) |
| | | | 801 | Loan Origination Fee | | ($536.40) |
| | | | 1600 | Loan Amount | | $26,820.00 |
| | | | | | Total: | $25,038.60 |

**Hall-Frazier**
**Record - 001197**

# LEDGER CARD

Date Printed: Thursday, March 16, 2006 11:51:39 AM

Order #: 04-5252
Buyer/Borrower : Eleanor Sterling and Wylean Sterling
Seller :
Lender Name : Homeowners Loan
Loan Number : 10191658
Property Address : 6271 East Mill Road, Lineville, AL  36266

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn | Bank of America- TN | 003786777421 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/13/2004 | funding wire | alisonw | 07/31/2004 | Homeowners Loan | 25,038.60 |
| **\*TOTAL DEPOSITS** | | | | | **25,038.60** |

### CHECKS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/13/2004 | 00066384v | ronl | 07/31/2004 | Clerk of the Court | (160.35) |
| 07/13/2004 | 00066385 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (740.00) |
| 07/13/2004 | 00066386 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (60.00) |
| 07/13/2004 | 00066387 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 07/13/2004 | 00066388 | n.guider | 07/31/2004 | Eleanor Sterling and Wylean Sterling | (16,168.04) |
| 07/13/2004 | 00066389 | n.guider | 07/31/2004 | Talladega Appraisal | (120.00) |
| 07/13/2004 | 00066390 | n.guider | 07/31/2004 | Capital One | (854.00) |
| 07/13/2004 | 00066391v | daynat | 10/31/2004 | Spiegel | (2,087.00) |
| 07/13/2004 | 00066392 | n.guider | 07/31/2004 | Citifinancial | (4,252.21) |
| 07/13/2004 | 00066393 | n.guider | 07/31/2004 | Alfa Mutual Fire Ins Co. | (397.00) |
| 08/01/2004 | apti#667,ck66391 | daynat | 08/31/2004 | Spiegel | (2,087.00) |
| 07/15/2004 | 00066837 | ronl | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (86.50) |
| 07/15/2004 | 00066838 | ronl | 07/31/2004 | Clay County Judge of Probate | (40.35) |
| 07/15/2004 | 00066839 | ronl | 07/31/2004 | Clay County Judge of Probate | (33.50) |
| **\*TOTAL CHECKS** | | | | | **(27,285.95)** |

### VOIDS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/13/2004 | 00066384 | ronl | 07/31/2004 | Clerk of the Court | 160.35 |
| 07/13/2004 | 00066391 | daynat | 10/31/2004 | Spiegel | 2,087.00 |
| **\*TOTAL VOIDS** | | | | | **2,247.35** |

| **\*\*TOTALS FOR: tn** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                               **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                   **0.00**

(Printed on Sep 24, 2004 @ 14:16)

US Department of Housing and Urban Development

**SETTLEMENT STATEMENT (Transactions Without Sellers)**

OMB No. 3502-0265

| File Number: 04-9674 | Loan Number: 0408187057 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Delores Collins 5009 Court I Birmingham, AL 35208

**AME AND ADDRESS OF LENDER:**
Home Funds Direct 1130 Northchase Parkway Suite 200 Marietta, GA 30067

**PROPERTY LOCATION (Brief Legal):**
5009 Court I Birmingham, AL 35208

| **SETTLEMENT AGENT:** Swafford and Hays Settlement Services, Inc.  865-539-1450 Contact: Shaun Gafford | **PLACE OF SETTLEMENT:** 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
|---|---|
| **SETTLEMENT DATE:** 09/24/2004 | **DISBURSEMENT DATE:** 09/29/2004 |

| **L. SETTLEMENT CHARGES** | | **M. DISBURSEMENT TO OTHERS** | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payment | |
| 801. Loan Origination Fee  To: Home Funds Direct | 1,850.00 | To: NCSC-EC Home | 4,055.02 |
| 802. Loan Discount | | 1502. Payment | |
| 803. Appraisal Fee | | To: Equity Partner | 1,430.11 |
| 804. Credit Report | | 1503. Payment | |
| 805. Lender's Inspection Fee | | To: Popeil Inventions Inc | 69.00 |
| 806. Mortgage Insurance Application Fee | | 1504. Payment | |
| 807. Assumption Fee | | To: Credit Acceptance | 4,787.00 |
| 808. Processing Fee  To: Home Funds Direct | 400.00 | 1505. Payment | |
| 809. Underwriting fee  To: Home Funds Direct | 400.00 | To: Ford Motor Credit | 3,067.00 |
| 810. Appraisal Review Fee  To: Home Funds Direct | 259.24 | 1506. Payment | |
| 811. Zone Determination Fee  To: Home Funds Direct | 9.50 | To: The Credit Store | 1,097.00 |
| 812. Tax Service Fee  To: Home Funds Direct | 66.00 | 1507. Payment | |
| **900. Items Required By Lender To Be Paid In Advance** | | To: Capital One | 750.00 |
| 901. Interest from  To: Home Funds Direct | 24.64 | 1508. Payment | |
| 902. Mortgage Insurance Premium for | | To: Capital One | 420.00 |
| 903. Hazard Insurance Premium for  To: ALFA Insurance | 1,164.00 | 1509. Payment | |
| 904. | | To: Capital One | 310.00 |
| 905. | | 1510. Payment | |
| **1000. Reserves Deposited With Lender** | | To: Amsher Collection Serv | 307.00 |
| 1001. Hazard insurance  To: Home Funds Direct | 291.00 | 1511. Payment | |
| 1002. Mortgage insurance | | To: Cavalary Portfolio | 355.00 |
| 903. City property taxes | | 1512. Payment | |
| /04. County property taxes  To: Home Funds Direct | 310.28 | To: Jefferson Capital | 200.00 |
| 1005. Annual assessments | | 1513. | |
| 1006. | | | |
| 1007. | | 1514. | |
| 1008. Aggregate Accounting Adjustment  To: Home Funds Dir | -225.68 | | |
| **1100. Title Charges** | | 1515. | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settle | 275.00 | | |
| 1102. Abstract or title search  To: Swafford and Hays Settleme | 200.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1103. Title examination  To: Swafford and Hays Settlement Se | 250.00 | | 16,848.03 |
| 1104. Title insurance binder | | **N. Net Settlement** | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | 1600. Loan Amount | 50,000.00 |
| 1107. Attorney's Fees | | | |
| (Includes above item numbers:  ) | | 1601. Plus Check/Cash from Borrower | |
| 1108. Title Insurance  To: American Pioneer Title Insurance Co | 200.00 | | |
| (Includes above item numbers:  ) | | 1602. Minus total settlement charges | 5,729.48 |
| 1109. Lender's coverage  50,000.00@ 200.00 | | (Line 1400) | |
| 1110. Owner's coverage @ 0.00 | | 1603. Minus total Disbursements to | 16,848.03 |
| 1111. Endorsements  To: Swafford and Hays Settlement Servic | 50.00 | Others (line 1520) | |
| 1112. | | 1604. Equals disbursements to borrower | 27,422.49 |
| 1113. Overnight Courier & Handling Fees | | | |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees:  To: Clerk of the Court | 130.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps?  Deed $0.00 Mortgage $75.00  To: Cle | 75.00 | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. | | | |
| 1304. | | | |
| 05. | | | |
| 00. Total settlement charges (enter on line 1602) | 5,729.48 | | |

This undersigned hereby acknowledged receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A or, RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

x _Brenda Cor_    x _Delores Collins_

Swafford and Hays Settlement Services, Inc.    Delores Collins

PLAINTIFF'S EXHIBIT 38

PX-8238

Date Printed: Thursday, March 16, 2006  10:34:33 AM

## LEDGER CARD

**Order #: 04-9674**
Buyer/Borrower : Delores Collins
Seller : Delores Murrell
Lender Name : Home Funds Direct
Loan Number : 0408187057
Property Address : 5009 Court I, Birmingham, AL  35208

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn | Bank of America- TN | 003786777421 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 09/29/2004 | funding wire | alisonw | 09/30/2004 | Home Funds Direct | 46,614.52 |
| **\*TOTAL DEPOSITS** | | | | | **46,614.52** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 10/25/2004 | 00085243 | daynat | 10/31/2004 | Delores Collins | (1,259.46) |
| 10/25/2004 | 00085244 | daynat | 10/31/2004 | Ford Motor Credit | (1,807.54) |
| 09/29/2004 | 00080906v | s.owens | | Clerk of the Court | (205.00) |
| 09/29/2004 | 00080907 | e.koty | 10/31/2004 | Swafford and Hays Settlement Services, Inc. | (715.00) |
| 09/29/2004 | 00080908 | e.koty | 10/31/2004 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 09/29/2004 | 00080909 | e.koty | 10/31/2004 | Swafford and Hays Settlement Services, Inc. | (60.00) |
| 09/29/2004 | 00080910 | e.koty | 10/31/2004 | Delores Collins | (27,422.49) |
| 09/29/2004 | 00080911 | e.koty | 10/31/2004 | ALFA Insurance | (1,164.00) |
| 09/29/2004 | 00080912 | e.koty | 10/31/2004 | NCSC-EC Home | (4,055.92) |
| 09/29/2004 | 00080913 | e.koty | 10/31/2004 | Equity Partner | (1,430.11) |
| 09/29/2004 | 00080914 | e.koty | 10/31/2004 | Credit Acceptance | (4,787.00) |
| 09/29/2004 | 00080915v | daynat | 10/31/2004 | Ford Motor Credit | (3,067.00) |
| 09/29/2004 | 00080916 | e.koty | 10/31/2004 | The Credit Store | (1,097.00) |
| 09/29/2004 | 00080917 | e.koty | 10/31/2004 | Capital One | (750.00) |
| 09/29/2004 | 00080918 | e.koty | 10/31/2004 | Capital One | (420.00) |
| 09/29/2004 | 00080919 | e.koty | 10/31/2004 | Capital One | (310.00) |
| 09/29/2004 | 00080920 | e.koty | 10/31/2004 | Amsher Collection Serv | (307.00) |
| 09/29/2004 | 00080921 | e.koty | 10/31/2004 | Cavalary Portfolio | (355.00) |
| 09/29/2004 | 00080922 | e.koty | 11/30/2004 | Jefferson Capital | (200.00) |
| 09/29/2004 | 00080923 | e.koty | | Popeil Inventions Inc | (69.00) |
| 10/05/2004 | 00082053 | m.lay | 10/31/2004 | Swafford and Hays Settlement Services, Inc. | (73.00) |
| 10/05/2004 | 00082054 | m.lay | 10/31/2004 | JEFFERSON COUNTY JUDGE OF PROBATE | (75.00) |
| 10/05/2004 | 00082055 | m.lay | 10/31/2004 | JEFFERSON COUNTY JUDGE OF PROBATE | (49.50) |
| 10/05/2004 | 00082056 | m.lay | 10/31/2004 | JEFFERSON COUNTY JUDGE OF PROBATE | (7.50) |
| **\*TOTAL CHECKS** | | | | | **(49,886.52)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 09/29/2004 | 00080906 | s.owens | 10/31/2004 | Clerk of the Court | 205.00 |
| 09/29/2004 | 00080915 | daynat | 10/31/2004 | Ford Motor Credit | 3,067.00 |
| **\*TOTAL VOIDS** | | | | | **3,272.00** |

| **\*\*TOTALS FOR: tn** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                            **0.00**

## PENDING ESCROWS

Hall-Frazier
Record - 001200

Date Printed: Thursday, March 16, 2006 10:34:51 AM

## Disbursement Sheet

| Order #: 04-9674 | | Settlement Date: 09/24/2004 | | Disbursement Date: 09/29/2004 | |
|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Buyer: | Delores Collins | | Money Out: | $46,614.52 |
| Seller: | Delores Murrell | | Money In: | $46,614.52 |
| Property: | 5009 Court 1 Birmingham, AL 35208 | | Difference: | $0.00 |
| Lender: | Home Funds Direct | | | |
| Loan #: | 0408187057 | | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00080907 | 9/29/2004 5:27:40 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $275.00 |
| | | | 1103 | Title examination | | $250.00 |
| | | | 1111 | Endorsements | | $50.00 |
| | | | 1108 | Title Insurance | | $140.00 |
| | | | | | Total: | $715.00 |
| 00080908 | 9/29/2004 5:27:40 PM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $200.00 |
| | | | | | Total: | $200.00 |
| 00080909 | 9/29/2004 5:27:40 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $60.00 |
| | | | | | Total: | $60.00 |
| 00082053 | 10/5/2004 8:04:02 AM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: | | $73.00 |
| | | | | | Total: | $73.00 |
| 00080910 | 9/29/2004 5:27:40 PM | Delores Collins | 303 | Cash [ ]From  [X]To  Borrower | | $27,422.49 |
| | | | | | Total: | $27,422.49 |
| 00085243 | 10/25/2004 1:23:51 PM | Delores Collins | 1505 | Payment | | $1,259.46 |
| | | | | | Total: | $1,259.46 |
| 00080911 | 9/29/2004 5:27:40 PM | ALFA Insurance | 903 | Hazard Insurance Premium for | | $1,164.00 |
| | | | | | Total: | $1,164.00 |
| 00080912 | 9/29/2004 5:27:40 PM | NCSC-EC Home | 1501 | Payment | | $4,055.92 |
| | | | | | Total: | $4,055.92 |
| 00080913 | 9/29/2004 5:27:40 PM | Equity Partner | 1502 | Payment | | $1,430.11 |
| | | | | | Total: | $1,430.11 |
| 00080914 | 9/29/2004 5:27:40 PM | Credit Acceptance | 1504 | Payment | | $4,787.00 |
| | | | | | Total: | $4,787.00 |
| 00085244 | 10/25/2004 1:23:51 PM | Ford Motor Credit | 1505 | Payment | | $1,807.54 |
| | | | | | Total: | $1,807.54 |
| 00080916 | 9/29/2004 5:27:40 PM | The Credit Store | 1506 | Payment | | $1,097.00 |
| | | | | | Total: | $1,097.00 |
| 00080917 | 9/29/2004 5:27:40 PM | Capital One | 1507 | Payment | | $750.00 |
| | | | | | Total: | $750.00 |
| 00080918 | 9/29/2004 5:27:40 PM | Capital One | 1508 | Payment | | $420.00 |
| | | | | | Total: | $420.00 |
| 00080919 | 9/29/2004 5:27:40 PM | Capital One | 1509 | Payment | | $310.00 |
| | | | | | Total: | $310.00 |
| 00080920 | 9/29/2004 5:27:40 PM | Amsher Collection Serv | 1510 | Payment | | $307.00 |
| | | | | | Total: | $307.00 |
| 00080921 | 9/29/2004 5:27:40 PM | Cavalary Portforio | 1511 | Payment | | $355.00 |
| | | | | | Total: | $355.00 |
| 00080922 | 9/29/2004 5:27:40 PM | Jefferson Capital | 1512 | Payment | | $200.00 |
| | | | | | Total: | $200.00 |
| 00080923 | 9/29/2004 5:27:40 PM | Popeil Inventions Inc | 1503 | Payment | | $69.00 |
| | | | | | Total: | $69.00 |

| 00082054 | 10/5/2004 8:04:02 AM | JEFFERSON COUNTY JUDGE OF PROBATE | 1203 | State tax/stamps: Deed $0.00 Mortgage $75.00 | | Total: | $75.00 $75.00 |

| 00082055 | 10/5/2004 8:04:02 AM | JEFFERSON COUNTY JUDGE OF PROBATE | 1201 | Recording fees: | | Total: | $49.50 $49.50 |

| 00082056 | 10/5/2004 8:04:02 AM | JEFFERSON COUNTY JUDGE OF PROBATE | 1201 | Recording fees: | | Total: | $7.50 $7.50 |

## Money In

| Ref# | Date | Name | Hud | Detail | Amount |
|---|---|---|---|---|---|
| 04-9674/Lender/1 | 09/29/2004 | Home Funds Direct | | | |
| | | | 801 | Loan Origination Fee | ($1,850.00) |
| | | | 808 | Processing Fee | ($400.00) |
| | | | 809 | Underwriting fee | ($400.00) |
| | | | 810 | Appraisal Review Fee | ($259.74) |
| | | | 901 | Interest from | ($24.64) |
| | | | 1600 | Loan Amount | $50,000.00 |
| | | | 1001 | Hazard insurance | ($291.00) |
| | | | 1004 | County property taxes | ($310.28) |
| | | | 1008 | Aggregate Accounting Adjustment | $225.68 |
| | | | 811 | Zone Determination Fee | ($9.50) |
| | | | 812 | Tax Service Fee | ($66.00) |
| | | | | Total: | $46,614.52 |

Printed on Dec 27, 2004 @ 17:07)                  US Department of Housing and Urban Development                  OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: #04-12564 | Loan Number: 0411234513 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Joseph M. Hayden 12768 J E McDonald Farm Road Andalusia, AL 36420
Billie K. Hayden

**NAME AND ADDRESS OF LENDER:**
Home Funds Direct 1130 Northchase Parkway Suite 200 Marietta , GA 30067-6420

**PROPERTY LOCATION (Brief Legal):**
12768 J E McDonald Farm Road Andalusia, AL 36420

| **SETTLEMENT AGENT:** Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shaun Galford | **PLACE OF SETTLEMENT:** 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
|---|---|
| **SETTLEMENT DATE:** 12/27/2004 | **DISBURSEMENT DATE:** 12/31/2004 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payoff | |
| 801. Loan Origination Fee    To: Home Funds Direct | 3,284.25 | To: Mid-State Homes Acct#15410327 | 38,936.96 |
| 802. Loan Discount | | 1502. 2004 Taxes | |
| 803. Appraisal Fee    To: Real Estate Appraisal | 150.00 | To: Covington County Tax Collector | 76.84 |
| 804. Credit Report | | 1503. Payment | |
| 805. Lender's Inspection Fee | | To: AND MIL CU | 1,422.00 |
| 806. Mortgage Insurance Application Fee | | 1504. Payment | |
| 807. Assumption Fee | | To: American Honda Finance | 2,306.00 |
| 808. Processing Fee | | 1505. Payment | |
| 809. Underwriting fee    To: Home Funds Direct | 700.00 | To: Acceptance | 2,026.00 |
| 810. Processing Fee    To: Home Funds Direct | 800.00 | 1506. Payment | |
| 811. Zone Determination Fee    To: Home Funds Direct | 9.50 | To: Badcock Home | 1,240.00 |
| 812. Tax Service Fee    To: Home Funds Direct | 66.00 | 1507. Payment | |
| 813. Appraisal Review Fee | | To: Capital I BK | 476.00 |
| **900. Items Required By Lender To Be Paid In Advance** | | 1508. | |
| 901. Interest from    To: Home Funds Direct | 14.46 | | |
| 902. Mortgage Insurance Premium for | | 1509. | |
| 903. Hazard Insurance Premium for    To: State Farm | 253.04 | | |
| 904. | | 1510. | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | 1511. | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage insurance | | 1512. | |
| 1003. City property taxes | | | |
| 1004. County property taxes | | 1513. | |
| 1005. Annual assessments | | | |
| 1006. | | 1514. | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | 1515. | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee    To: Swafford and Hays Settle | 275.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1102. Abstract or title search    To: Swafford and Hays Settleme | 200.00 | | 46,483.80 |
| 1103. Title examination    To: Swafford and Hays Settlement Se | 250.00 | N. Net Settlement | |
| 1104. Title Insurance binder | | | |
| 1105. Document preparation | | 1600. Loan Amount | 75,500.00 |
| 1106. Notary Fees | | | |
| 1107. Attorney's Fees | | 1601. Plus Check/Cash from Borrower | |
| (Includes above item numbers: ) | | | |
| 1108. Title Insurance    To: Home Funds Direct | 212.40 | 1602. Minus total settlement charges | 6,497.90 |
| (Includes above item numbers: ) | | (Line 1400) | |
| 1109. Lender's coverage  75,500.00@ 212.40 | | 1603. Minus total Disbursements to | 46,483.80 |
| 1110. Owner's coverage  @ 0.00 | | Others (line 1520) | |
| 1111. Endorsements    To: Swafford and Hays Settlement Servic | 50.00 | 1604. Equals disbursements to borrower | 22,518.30 |
| 1112. | | | |
| 1113. Overnight Courier & Handling Fees | | | |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees: and Service fees:    To: Clerk of the Court | 120.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:   Deed $0.00 Mortgage $113.25  To: Cl | 113.25 | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| **1400. Total settlement charges (enter on line 1602)** | 6,497.90 | | |

PLAINTIFF'S EXHIBIT
P
39

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge, the HUD-1A ref. RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

x _Jane Cancello_                    x _Joseph M. Hayden_                    x _Billie K Hayden_
Swafford and Hays Settlement Services, Inc.        Joseph M. Hayden                    Billie K. Hayden

Date Printed: Wednesday, March 15, 2006  7:34:00 PM

## Disbursement Sheet

Order #: 04-12564          Settlement Date: 12/27/2004          Disbursement Date: 12/31/2004

| | |
|---|---|
| Buyer:<br>Seller: | Joseph M. Hayden, and wife Billie K. Hayden, for and during their joint lives and upon the death of either of them, then to the survivor of them in fee simple, together with every contingent remainder and right of reversion |
| Property:<br>Lender:<br>Loan #: | 12768 J E McDonald Farm Road Andalusia, AL 36420<br>Home Funds Direct<br>0411234513 |

| | |
|---|---|
| Money Out:<br>Money In: | $70,625.79<br>$70,625.79 |
| Difference: | $0.00 |

### Money Out

| Ref# | Date | Name | Hud | Detail | Amount |
|------|------|------|-----|--------|--------|
| 00010166 | 12/31/2004<br>3:50:01 PM | Swafford and Hays Settlement Services, Inc. | 1101<br>1103<br>1111<br>1108 | Settlement or closing fee<br>Title examination<br>Endorsements<br>Title Insurance | $275.00<br>$250.00<br>$50.00<br>$148.68 |
| | | | | **Total:** | **$723.68** |
| 00010167 | 12/31/2004<br>3:50:01 PM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | $200.00 |
| | | | | **Total:** | **$200.00** |
| 00010168 | 12/31/2004<br>3:50:01 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | $63.72 |
| | | | | **Total:** | **$63.72** |
| 00011220 | 1/5/2005<br>4:16:36 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: and Service fees: | $66.50 |
| | | | | **Total:** | **$66.50** |
| 00010169 | 12/31/2004<br>3:50:01 PM | Joseph M. Hayden and Billie K. Hayden | 303 | Cash [ ]From [X]To  Borrower | $22,518.30 |
| | | | | **Total:** | **$22,518.30** |
| 00010170 | 12/31/2004<br>3:50:01 PM | Real Estate Appraisal | 803 | Appraisal Fee | $150.00 |
| | | | | **Total:** | **$150.00** |
| 00010171 | 12/31/2004<br>3:50:01 PM | State Farm | 903 | Hazard Insurance Premium for | $253.04 |
| | | | | **Total:** | **$253.04** |
| 00010172 | 12/31/2004<br>3:50:01 PM | Covington County Tax Collector | 1502 | 2004 Taxes | $76.84 |
| | | | | **Total:** | **$76.84** |
| 00010173 | 12/31/2004<br>3:50:01 PM | AND MIL CU | 1503 | Payment | $1,422.00 |
| | | | | **Total:** | **$1,422.00** |
| 00010174 | 12/31/2004<br>3:50:01 PM | American Honda Finance | 1504 | Payment | $2,306.00 |
| | | | | **Total:** | **$2,306.00** |
| 00010175 | 12/31/2004<br>3:50:01 PM | Acceptance | 1505 | Payment | $2,026.00 |
| | | | | **Total:** | **$2,026.00** |
| 00010176 | 12/31/2004<br>3:50:01 PM | Mid-State Homes Acct#15410327 | 1501 | Payoff | $38,936.96 |
| | | | | **Total:** | **$38,936.96** |
| 00010177 | 12/31/2004<br>3:50:01 PM | Badcock Home | 1506 | Payment | $1,240.00 |
| | | | | **Total:** | **$1,240.00** |
| 00010178 | 12/31/2004<br>3:50:01 PM | Capital 1 BK | 1507 | Payment | $476.00 |
| | | | | **Total:** | **$476.00** |
| 00011221 | 1/5/2005<br>4:16:36 PM | COVINGTON COUNTY JUDGE OF PROBATE | 1203 | State tax/stamps:  Deed $0.00 Mortgage $113.25 | $113.25 |
| | | | | **Total:** | **$113.25** |
| 00011222 | 1/5/2005<br>4:16:36 PM | COVINGTON COUNTY JUDGE OF PROBATE | 1201 | Recording fees: and Service fees: | $53.50 |
| | | | | **Total:** | **$53.50** |

### Money In

| Ref# | Date | Name | Hud | Detail | Amount |
|------|------|------|-----|--------|--------|
| 04-12564/Lender/1 | 12/31/2004 | Home Funds Direct | 801<br>809<br>810 | Loan Origination Fee<br>Underwriting fee<br>Processing Fee | ($3,284.25)<br>($700.00)<br>($800.00) |

Hall-Frazier
Record - 001204

| 901 | Interest from | | ($14.46) |
| 1600 | Loan Amount | | $75,500.00 |
| 811 | Zone Determination Fee | | ($9.50) |
| 812 | Tax Service Fee | | ($66.00) |
| | | Total: | $70,625.79 |

Hall-Frazier
Record - 001205

# LEDGER CARD

Date Printed: Wednesday, March 15, 2006  7:23:48 PM

Order #: 04-12564
Buyer/Borrower : Joseph M. Hayden and Billie K. Hayden
Seller :
Lender Name : Home Funds Direct
Loan Number : 0411234513
Property Address : 12768 J E McDonald Farm Road, Andalusia, AL  36420

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn2 | Bank of America- TN (New) | 003786809771 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 12/31/2004 | funding wire | alisonw | 12/31/2004 | Home Funds Direct | 70,625.79 |
| **\*TOTAL DEPOSITS** | | | | | **70,625.79** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 12/31/2004 | 00010165v | m.lay | 01/31/2005 | Clerk of the Court | (233.25) |
| 12/31/2004 | 00010166 | e.koty | 01/31/2005 | Swafford and Hays Settlement Services, Inc. | (723.68) |
| 12/31/2004 | 00010167 | e.koty | 01/31/2005 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 12/31/2004 | 00010168 | e.koty | 01/31/2005 | Swafford and Hays Settlement Services, Inc. | (63.72) |
| 12/31/2004 | 00010169 | e.koty | 01/31/2005 | Joseph M. Hayden and Billie K. Hayden | (22,518.30) |
| 12/31/2004 | 00010170 | e.koty | 01/31/2005 | Real Estate Appraisal | (150.00) |
| 12/31/2004 | 00010171 | e.koty | 01/31/2005 | State Farm | (253.04) |
| 12/31/2004 | 00010172 | e.koty | 01/31/2005 | Covington County Tax Collector | (76.84) |
| 12/31/2004 | 00010173 | e.koty | 01/31/2005 | AND MIL CU | (1,422.00) |
| 12/31/2004 | 00010174 | e.koty | 01/31/2005 | American Honda Finance | (2,306.00) |
| 12/31/2004 | 00010175 | e.koty | 01/31/2005 | Acceptance | (2,026.00) |
| 12/31/2004 | 00010176 | e.koty | 01/31/2005 | Mid-State Homes Acct#15410327 | (38,936.96) |
| 12/31/2004 | 00010177 | e.koty | 01/31/2005 | Badcock Home | (1,240.00) |
| 12/31/2004 | 00010178 | e.koty | 01/31/2005 | Capital 1 BK | (476.00) |
| 01/05/2005 | 00011220 | m.lay | 01/31/2005 | Swafford and Hays Settlement Services, Inc. | (66.50) |
| 01/05/2005 | 00011221 | m.lay | 01/31/2005 | COVINGTON COUNTY JUDGE OF PROBATE | (113.25) |
| 01/05/2005 | 00011222 | m.lay | 01/31/2005 | COVINGTON COUNTY JUDGE OF PROBATE | (53.50) |
| **\*TOTAL CHECKS** | | | | | **(70,859.04)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 12/31/2004 | 00010165 | m.lay | 01/31/2005 | Clerk of the Court | 233.25 |
| **\*TOTAL VOIDS** | | | | | **233.25** |

| **\*\*TOTALS FOR: tn2** | **0.00** |
|---|---|

## \*\*\*POSTED TOTAL                                                     0.00

## PENDING ESCROWS

## \*\*\*\*TOTAL(POSTED + PENDING)                          0.00

✓

## SETTLEMENT STATEMENT (Transactions Without Sellers)

le Number: 05-3109 | Loan Number: 20220764 | Mortgage Ins. Case #:

**ME AND ADDRESS OF BORROWER/BUYER:**
Alma R. Jones 1172 Northwest 46th Avenue Lauderhill, FL 33313

**ME AND ADDRESS OF LENDER:**
meowners Loan Corp. 3854 American Way Suite A-5 Baton Rouge, LA 70816

**ERTY LOCATION (Brief Legal):**
172 Northwest 46th Avenue Lauderhill, FL 33313

**TTLEMENT AGENT:**
Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Lee
range

**PLACE OF SETTLEMENT:**
9041 Executive Park Drive, Suite 400 Knoxville, TN 37923

**TTLEMENT DATE:**
03/31/2005

**DISBURSEMENT DATE:**
04/05/2005

| SETTLEMENT CHARGES | | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|---|
| **0. Items Payable In Connection With Loan** | | | 1501. Payoff on acct good thru 4/20/05 | |
| 1. Loan Origination Fee    To: Homeowners Loan Corp. | | 6,680.00 | To: Citifinancial | 99,934.34 |
| 2. Loan Discount | | | 1502. Payment | |
| 3. Appraisal Fee    To: FCP Appraisal Service | | 300.00 | To: HAF | 9,358.00 |
| 4. Credit Report Credit Report FOCL $8.50 | | | 1503. 04 Taxes good thru 4/30/05 | |
| 5. Lender's Inspection Fee | | | To: Broward Co Tax Collector | 1,408.14 |
| 6. Mortgage Insurance Application Fee | | | 1504. | |
| 7. Assumption Fee | | | | |
| 8. Processing\Underwriter Fee    To: Homeowners Loan | | 390.00 | 1505. | |
| 9. Funding Fee    To: Homeowners Loan | | 365.00 | | |
| 0. Administration Fee    To: Homeowners Loan | | 295.00 | 1506. | |
| 1. Document Preparation Fee    To: Homeowners Loan | | 195.00 | | |
| 2. Tax Service Fee    To: Land America | | 63.00 | 1507. | |
| **00. Items Required By Lender To Be Paid In Advance** | | | | |
| 1. Interest from | | | 1508. | |
| 2. Mortgage Insurance Premium for | | | | |
| 3. Hazard Insurance Premium for    To: PF Insurance | | 2,499.00 | 1509. | |
| 4. Flood Insurance | | | | |
| 5. Flood Insurance | | | 1510. | |
| 6. Citizens | | | | |
| **00. Reserves Deposited With Lender** | | | 1511. | |
| 01. Hazard insurance | | | | |
| mortgage insurance | | | 1512. | |
| ity property taxes | | | | |
| 04. County property taxes | | | 1513. | |
| 05. Annual assessments | | | | |
| 06. | | | 1514. | |
| 07. | | | | |
| 08. Aggregate Accounting Adjustment | | | 1515. | |
| **00. Title Charges** | | | | |
| 01. Settlement or closing fee    To: Swafford and Hays Settlem | | 200.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 02. Abstract or title search    To: Swafford and Hays Settlemen | | 375.00 | | 110,700.48 |
| 03. Title examination    To: Swafford and Hays Settlement Ser | | 225.00 | N. Net Settlement | |
| 04. Title insurance binder | | | | |
| 05. Document preparation | | | 1600. Loan Amount | 145,000.00 |
| 06. Notary Fees | | | | |
| 07. Attorney's Fees | | | 1601. Plus Check/Cash from Borrower | |
| Includes above item numbers: ) | | | | |
| 08. Title Insurance    To: TICOR Title Insurance Company of F | | 865.00 | 1602. Minus total settlement charges | 13,564.50 |
| Includes above item numbers: ) | | | (Line 1400) | |
| 09. Lender's coverage $157,500.00 @ $865.00 | | | 1603. Minus total Disbursements to | 110,700.48 |
| 10. Owner's coverage @ 0.00 | | | Others (line 1520) | |
| 11. Title Service Fee    To: Swafford and Hays Settlement Servi | | 75.00 | 1604. Equals disbursements to borrower | 20,735.02 |
| 12. | | | | |
| 13. Overnight Courier & Handling Fees | | | | |
| **00. Govt. Recording, Transfer, and Service Fees** | | | | |
| 01. Recording fees    To: Clerk of the Court | | 240.00 | | |
| 02. City/county tax/stamps:    Mortgage $290.00  To: Clerk of | | 290.00 | | |
| 03. State tax/stamps:    Deed $0.00  Mortgage $507.50    To: Cler | | 507.50 | | |
| 04. | | | | |
| 05. | | | | |
| **00. Additional Settlement Charges** | | | | |
| 0  Survey | | | | |
| t inspection | | | | |
| 0... ood Determination FOCL $9.50 | | | | |
| 04. | | | | |
| 05. | | | | |
| **00. Total settlement charges (enter on line 1602)** | | 13,564.50 | | |

PLAINTIFF'S
EXHIBIT
40

undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A ref. RESPA Settlement Statement is a true and accurate account of the funds which were received
borrower will be disbursed by the undersigned as part of the settlement of this transaction.

Swafford and Hays Settlement Services, Inc.    x  Alma R. Jones
                                                   Alma R. Jones

Hall-Frazier
Record - 001207

*Per Steve G.*

7/31/02 8:18 PM

| Settlement Statement | U.S. Department of Housing | |
|---|---|---|
| Transactions without Sellers | and Urban Development | OMB Approval No. 2502-0491 |

**Name & Address of Borrower:**
Alma R. Jones, 1172 NW 46th Ave., Lauderhill, FL 33313

**Name & Address of Lender:**
HomeOwners Loan Corporation
4501 Circle 75 Parkway
Suite F5300
Atlanta, GA 30339

**Property Location:**
1172 NW 46th Ave., Lauderhill, FL 33313

Settlement Agent: Swafford and Hays Settlement Services, Inc. (B

Loan Number: 2136308
File Number: 2731

**Place of Settlement:**
224 S. Peters Road, Ste. 110, Knoxville, TN 37923
734-89-388409
(PREP)

| L. | Settlement Charges | | M. | Disbursements to Others | |
|---|---|---|---|---|---|
| 800 | Items payable in connection with loan | | | | |
| 801 | Loan origination fee to HomeOwners Loan Corporation | 2,739.00 | 1501 | Payoff Mortgage to Wells Fargo | 53,106.36 |
| 802 | Loan discount | 0.00 | 1502 | Payment on Account to Providian | 3,779.00 |
| 803 | Appraisal fee to STEVE HALL APPRAISAL SERVICE | 340.00 | | | |
| 804 | Credit report | 0.00 | 1503 | Payment on Account to Providian | 1,348.00 |
| 805 | Lender's inspection fee | 0.00 | | | |
| 806 | Mortgage insurance application fee | 0.00 | 1504 | Payment on Account to Capital 1 Bank | 582.00 |
| 807 | Assumption fee | 0.00 | | | |
| 808 | Tax Service Fee | 0.00 | 1505 | Payment on Account to HHLD Bank | 465.00 |
| 809 | Underwriting Fee Processing Fee to HomeOwners Loan C | 380.00 | | | |
| 810 | Funding Fee to HomeOwners Loan Corporation | 300.00 | 1506 | Payment on Account to Capital 1 Bank | 300.00 |
| 811 | Administration Fee | 1950.00 | | | |
| 900 | Items required by lender to be paid in advance | | 1507 | Payoff Lien to Deidra Williams | 10,001.94 |
| 901 | Interest from | 0.00 | | | |
| 902 | Mortgage insurance premium for | 0.00 | 1508 | Payment on Account to Bruening Insuran | 291.00 |
| 903 | Hazard insurance premium for | 0.00 | | | |
| 904 | Flood Insurance Premium | 0.00 | 1509 | Payment on Account to State Farm Insuran | 351.00 |
| 1000 | Reserves deposited with lender | | | | |
| 1001 | Hazard insurance | 0.00 | 1510 | | 0.00 |
| 1002 | Mortgage insurance | 0.00 | | | |
| 1003 | City property taxes | 0.00 | | | |
| 1004 | County property taxes | 0.00 | 1511 | | 0.00 |
| 1005 | Annual assessments (maint.) | 0.00 | | | |
| 1006 | | 0.00 | 1512 | | 0.00 |
| 1007 | | 0.00 | | | |
| 1008 | | 0.00 | 1513 | | 0.00 |
| 1100 | Title charges | | | | |
| 1101 | Settlement or closing fee to Swafford and Hays Settlement | 390.00 | 1514 | | 0.00 |
| 1102 | Abstract or title search to Swafford and Hays Settlement S | 275.00 | | | |
| 1103 | Title examination to Swafford and Hays Settlement Service | 225.00 | 1515 | | 0.00 |
| 1104 | Title insurance binder | 0.00 | | | |
| 1105 | Document preparation | 0.00 | 1516 | | 0.00 |
| 1106 | Notary fees | 0.00 | | | |
| 1107 | Attorney's fees to | 0.00 | 1517 | | 0.00 |
| | includes above items no. | | | | |
| 1108 | Title insurance to Swafford and Hays Settlement Services | 842.80 | 1518 | | 0.00 |
| | includes above items no. | | | | |
| 1109 | Lender's coverage $94,450.00 $542.80 | | 1519 | | 0.00 |
| 1110 | Owner's coverage | | | | |
| 1111 | Endorsements | 0.00 | | | |
| 1112 | Express Mail | 0.00 | | | |
| 1113 | Wire Fee | 0.00 | 1520 | Total Disbursed | 80,596.50 |
| 1200 | Government recording and transfer charges | | | | |
| 1201 | Recording fees: Mortgage $114.00 | 114.00 | N. | Net settlement | |
| 1202 | City/county tax/stamps: | 0.00 | | | |
| 1203 | State tax/stamps: Mortgage $330.40 | 330.40 | 1600 | Loan Amount | 94,000.00 |
| 1204 | Florida Intangible Tax Mortgage $188.80 | 188.80 | | | |
| 1205 | Recording Fees Payable To | 0.00 | 1601 | Plus Check/Cash from Borrower | 0.00 |
| 1300 | Additional settlement charges | | 1602 | Minus total settlement charges (line 1400) | 8,909.00 |
| 1301 | Survey | 0.00 | | | |
| 1302 | Pest inspection | 0.00 | 1603 | Minus Total Disbursements to Others (line 1520) | 80,596.00 |
| 1303 | Payment on Account | 0.00 | | | |
| 1304 | Payment on Account | 0.00 | | | |
| 1305 | Payment On Account | 0.00 | | | |
| 1306 | | 0.00 | 1604 | Equals disbursements to borrower (after expiration of any applicable rescission period required by law) | 7,993.00 |
| 1307 | | 0.00 | | | |
| 1400 | Total Settlement charges (enter on line 1602) | 8,909.00 | | File also has non-HUD-1A items | |

The undersigned hereby acknowledge receipt of a completed copy of this statement. To the best of my knowledge this HUD-1A or HUD-1A Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Swafford and Hays Settlement Services, Inc. (866) 539-1450
Settlement Agent

Form HUD-1A ref RESPA (2/94)

x _____ Borrower
Alma R. Jones

x _____ Borrower



## SETTLEMENT STATEMENT (Transactions Without Sellers)

| le Number: 05-3109 | Loan Number: 20220764 | | Mortgage Ins. Case #: |
|---|---|---|---|

**ME AND ADDRESS OF BORROWER/BUYER:**
Alma R. Jones 1172 Northwest 46th Avenue Lauderhill, FL 33313

**ME AND ADDRESS OF LENDER:**
Homeowners Loan Corp. 3854 American Way Suite A 5 Baton Rouge, LA 70816

**OPERTY LOCATION (Brief Legal):**
1172 Northwest 46th Avenue Lauderhill, FL 33313

| **TTLEMENT AGENT:** Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Lee range | **PLACE OF SETTLEMENT:** 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
|---|---|
| **TTLEMENT DATE:** 03/31/2005 | **DISBURSEMENT DATE:** 04/05/2005 |

| SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| **0. Items Payable In Connection With Loan** | | 1501. Payoff on acct good thru 4/20/05 | |
| 1. Loan Origination Fee   To: Homeowners Loan Corp. | 6,680.00 | To: Citifinancial | 99,934.34 |
| 2. Loan Discount | | 1502. Payment | |
| 3. Appraisal Fee   To: FCP Appraisal Service | 300.00 | To: HAF | 9,358.00 |
| 4. Credit Report Credit Report POCL $8.50 | | 1503. 04 Taxes good thru 4/30/05 | |
| 5. Lender's Inspection Fee | | To: Broward Co Tax Collector | 1,408.14 |
| 6. Mortgage Insurance Application Fee | | 1504. | |
| 7. Assumption Fee | | | |
| 8. Processing\Underwriter Fee   To: Homeowners Loan | 399.00 | 1505. | |
| 9. Funding Fee   To: Homeowners Loan | 365.00 | | |
| 0. Administration Fee   To: Homeowners Loan | 295.00 | 1506. | |
| 1. Document Preparation Fee   To: Homeowners Loan | 195.00 | | |
| 2. Tax Service Fee   To: Land America | 63.00 | 1507. | |
| **0. Items Required By Lender To Be Paid In Advance** | | | |
| 1. Interest from | | 1508. | |
| 2. Mortgage Insurance Premium for | | | |
| 3. Hazard Insurance Premium for   To: PF Insurance | 2,499.00 | 1509. | |
| 4. Flood Insurance | | | |
| 5. Flood Insurance | | 1510. | |
| 6. Citizens | | | |
| **00. Reserves Deposited With Lender** | | 1511. | |
| 01. Hazard insurance | | | |
| Mortgage insurance | | 1512. | |
| City property taxes | | | |
| 04. County property taxes | | 1513. | |
| 05. Annual assessments | | | |
| 06. | | 1514. | |
| 07. | | | |
| 08. Aggregate Accounting Adjustment | | 1515. | |
| **00. Title Charges** | | | |
| 01. Settlement or closing fee   To: Swafford and Hays Settlem | 200.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 02. Abstract or title search   To: Swafford and Hays Settlem | 375.00 | | 110,700.48 |
| 03. Title examination   To: Swafford and Hays Settlement Ser | 225.00 | **N. Net Settlement** | |
| 04. Title insurance binder | | | |
| 05. Document preparation | | 1600. Loan Amount | 145,000.00 |
| 06. Notary Fees | | | |
| 07. Attorney's Fees | | 1601. Plus Check/Cash from Borrower | |
| Includes above item numbers: ) | | | |
| 08. Title Insurance   To: TICOR Title Insurance Company of P | 865.00 | 1602. Minus total settlement charges | 13,564.50 |
| Includes above item numbers: ) | | (Line 1400) | |
| 09. Lender's coverage $157,500.00 @ $865.00 | | 1603. Minus total Disbursements to | 110,700.48 |
| 10. Owner's coverage @ 0.00 | | Others (line 1520) | |
| 11. Title Service Fee   To: Swafford and Hays Settlement Servi | 75.00 | 1604. Equals disbursements to borrower | 20,735.02 |
| 12. | | | |
| 13. Overnight Courier & Handling Fees | | | |
| **00. Govt. Recording, Transfer, and Service Fees** | | | |
| 01. Recording fees:   To: Clerk of the Court | 240.00 | | |
| 02. City/county tax/stamps:   Mortgage $290.00   To: Clerk of | 290.00 | | |
| 03. State tax/stamps:   Deed $0.00 Mortgage $507.50   To: Cler | 507.50 | | |
| 04. | | | |
| 05. | | | |
| **00. Additional Settlement Charges** | | | |
| Survey | | | |
| st Inspection | | | |
| 03. Flood Determination POCL $9.50 | | | |
| 04. | | | |
| 05. | | | |
| **00. Total settlement charges (enter on line 1602)** | 13,564.50 | | |

understand that I have acknowledged receipt of a completed copy of this statement. To the best of my knowledge this HUD-1A rts. RESPA Settlement Statement is a true and accurate account of the funds which were received
how to operate and re-disbursed by the undersigned as part of the settlement of this transaction.

x _Jane Carcelli_   x _Alma R Jones_

Swafford and Hays Settlement Services, Inc.   Alma R. Jones

Date Printed: Thursday, March 30, 2006  9:29:00 AM

## Disbursement Sheet

| Order #: 05-3109 | Settlement Date: 03/31/2005 | | Disbursement Date: 04/05/2005 | |
|---|---|---|---|---|

| Buyer: | Alma R. Jones, a single woman | Money Out: | $137,012.00 |
| Seller: | | Money In: | $137,012.00 |
| Property: | 1172 Northwest 46th Avenue Lauderhill, FL 33313 | Difference: | $0.00 |
| Lender: | Homeowners Loan Corp. | | |
| Loan #: | 20220764 | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00025616 | 4/5/2005 3:07:38 PM | Swafford and Hays Settlement Services, Inc. | 1102 | | | |
| | | | 1102 | Abstract or title search | | $375.00 |
| | | | 1103 | Title examination | | $225.00 |
| | | | 1108 | Title Insurance | | $605.50 |
| | | | | | Total: | $1,205.50 |
| 00025617 | 4/5/2005 3:07:38 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $200.00 |
| | | | | | Total: | $200.00 |
| 00025618 | 4/5/2005 3:07:38 PM | Swafford and Hays Settlement Services, Inc. | 1111 | Title Service Fee | | $75.00 |
| | | | | | Total: | $75.00 |
| 00025619 | 4/5/2005 3:07:38 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $259.50 |
| | | | | | Total: | $259.50 |
| 00025670 | 4/7/2005 8:21:47 AM | Alma R. Jones | 1201 | Recording fees: | | $60.00 |
| | | | | | Total: | $60.00 |
| wire # 5372086 | 4/5/2005 | Alma R. Jones | 303 | Cash [ ]From [X]To Borrower | | $20,735.02 |
| | | | | | Total: | $20,735.02 |
| 00025621 | 4/5/2005 3:07:38 PM | FCP Appraisal Service | 803 | Appraisal Fee | | $300.00 |
| | | | | | Total: | $300.00 |
| 00025622 | 4/5/2005 3:07:38 PM | Citifinancial | 1501 | Payoff on acct good thru 4/20/05 | | $99,934.34 |
| | | | | | Total: | $99,934.34 |
| 00025624 | 4/5/2005 3:07:38 PM | PF Insurance | 903 | Hazard Insurance Premium for | | $2,499.00 |
| | | | | | Total: | $2,499.00 |
| 00025625 | 4/5/2005 3:07:38 PM | HAF | 1502 | Payment | | $9,358.00 |
| | | | | | Total: | $9,358.00 |
| 00025671 | 4/7/2005 8:21:47 AM | BOARD OF COUNTY COMMISSIONERS | 1202 | City/county tax/stamps: Mortgage $290.00 | | $290.00 |
| | | | | | Total: | $290.00 |
| 00025672 | 4/7/2005 8:21:47 AM | BOARD OF COUNTY COMMISSIONERS | 1203 | State tax/stamps: Deed $0.00 Mortgage $507.50 | | $507.50 |
| | | | | | Total: | $507.50 |
| 00025673 | 4/7/2005 8:21:47 AM | BOARD OF COUNTY COMMISSIONERS | 1201 | Recording fees: | | $180.00 |
| | | | | | Total: | $180.00 |
| 00025853 | 4/14/2005 1:37:53 PM | Bank of America | 1503 | 04 Taxes good thru 4/30/05 | | $1,408.14 |
| | | | | | Total: | $1,408.14 |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 05-3109/Lender/1 | 04/06/2005 | Homeowners Loan Corp. | | | | |
| | | | 808 | Processing\Underwriter Fee | | ($390.00) |
| | | | 809 | Funding Fee | | ($365.00) |
| | | | 810 | Administration Fee | | ($295.00) |
| | | | 811 | Document Preparation Fee | | ($195.00) |
| | | | 1600 | Loan Amount | | $145,000.00 |
| | | | 801 | Loan Origination Fee | | ($6,680.00) |
| | | | 812 | Tax Service Fee | | ($63.00) |
| | | | | | Total: | $137,012.00 |

**Hall-Frazier**
**Record - 001210**

Date Printed: Thursday, March 30, 2006  9:28:45 AM

## LEDGER CARD

Order #: 05-3109
Buyer/Borrower : Alma R. Jones
Seller :
Lender Name : Homeowners Loan Corp.
Loan Number : 20220764
Property Address : 1172 Northwest 46th Avenue, Lauderhill, FL  33313

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| fl | Bank of America - FL | 005489521503 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 04/06/2005 | funding wire | alisonw | 04/30/2005 | Homeowners Loan Corp. | 137,012.00 |
| **\*TOTAL DEPOSITS** | | | | | **137,012.00** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 04/05/2005 | 00025615v | m.lay | 04/30/2005 | Clerk of the Court | (1,037.50) |
| 04/05/2005 | 00025616 | m.jerger | 04/30/2005 | Swafford and Hays Settlement Services, Inc. | (1,205.50) |
| 04/05/2005 | 00025617 | m.jerger | 04/30/2005 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 04/05/2005 | 00025618 | m.jerger | 04/30/2005 | Swafford and Hays Settlement Services, Inc. | (75.00) |
| 04/05/2005 | 00025619 | m.jerger | 04/30/2005 | Swafford and Hays Settlement Services, Inc. | (259.50) |
| 04/05/2005 | 00025620v | alisonw | 04/30/2005 | Alma R. Jones | (20,735.02) |
| 04/05/2005 | 00025621 | m.jerger | 04/30/2005 | FCP Appraisal Service | (300.00) |
| 04/05/2005 | 00025622 | m.jerger | 04/30/2005 | Citifinancial | (99,934.34) |
| 04/05/2005 | 00025623v | daynat | 04/30/2005 | Broward Co Tax Collector | (1,408.14) |
| 04/05/2005 | 00025624 | m.jerger | 04/30/2005 | PF Insurance | (2,499.00) |
| 04/05/2005 | 00025625 | m.jerger | 04/30/2005 | HAF | (9,358.00) |
| 04/14/2005 | 00025853 | daynat | 04/30/2005 | Bank of America | (1,408.14) |
| 04/05/2005 | wire # 5372086 | alisonw | 04/30/2005 | Alma R. Jones | (20,735.02) |
| 04/07/2005 | 00025670 | m.lay | 06/30/2005 | Alma R. Jones | (60.00) |
| 04/07/2005 | 00025671 | m.lay | 04/30/2005 | BOARD OF COUNTY COMMISSIONERS | (290.00) |
| 04/07/2005 | 00025672 | m.lay | 04/30/2005 | BOARD OF COUNTY COMMISSIONERS | (507.50) |
| 04/07/2005 | 00025673 | m.lay | 04/30/2005 | BOARD OF COUNTY COMMISSIONERS | (180.00) |
| **\*TOTAL CHECKS** | | | | | **(160,192.66)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 04/05/2005 | 00025615 | m.lay | 04/30/2005 | Clerk of the Court | 1,037.50 |
| 04/05/2005 | 00025620 | alisonw | 04/30/2005 | Alma R. Jones | 20,735.02 |
| 04/05/2005 | 00025623 | daynat | 04/30/2005 | Broward Co Tax Collector | 1,408.14 |
| **\*TOTAL VOIDS** | | | | | **23,180.66** |

| **\*\*TOTALS FOR: fl** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                              **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                          **0.00**

(Printed on Jul 15, 2004 @ 18:54)

**A.**

US Department of Housing and Urban Development
**SETTLEMENT STATEMENT**

OMB No. 2502-0265

**B. Type of Loan**

| 1. [] FHA  2. [] FmHA  3. [] Conv. Unins. | 6. File Number: | 7. Loan Number: | 8. Mortgage Ins. Case #: |
|---|---|---|---|
| 4. [] VA  5. [] Conv. Ins. | 04-5251 | 0001707291 | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked POC were paid outside the closing; they are shown here for information purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:**
Aubrey D. Patterson 25140 County Road 71 Robertsdale, AL 36567
Annette P. Childress

**E. NAME AND ADDRESS OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:**
New Century Mortgage Corporation, ISAOA 3109 W Martin Luther King BLVD, Suite 300 Tampa, FL 33607

**G. PROPERTY LOCATION:**
25140 County Road 71 Robertsdale, AL 36567

**H. SETTLEMENT AGENT:**
Swafford and Hays Settlement Services, Inc.  865-539-1450 Contact: Shane Todd

**PLACE OF SETTLEMENT:**
Swafford and Hays Settlement Services, Inc. 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923

**I. SETTLEMENT DATE:**
07/15/2004

**DISBURSEMENT DATE:**
07/20/2004

| J. SUMMARY OF BORROWER(S) TRANSACTION | | K. SUMMARY OF SELLER(S) TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER :** | | **400. GROSS AMOUNT DUE TO SELLER :** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 102,326.67 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by Seller in advance | | Adjustments for items paid by Seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | 102,326.67 | **420. Gross Amount Due Seller** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER :** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER :** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 114,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by Seller in advance | | Adjustments for items unpaid by Seller in advance | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 114,000.00 | **520. Total Reduction Amount Due Seller** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER :** | | **600. CASH AT SETTLEMENT TO/FROM SELLER :** | |
| 301. Gross Amount due from borrower (line 120) | 102,326.67 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 114,000.00 | 602. Less reductions in amt. due seller (line 520) | |
| **303. Cash [] From  [X] To  Borrower** | 11,673.33 | **603. Cash [X] To  [] From  Seller** | 0.00 |

SUBSTITUTION FORM 1099 SELLER STATEMENT: The information contained in Blocks E,G,H and I on line 401(or if 401 is asterisked, line 403 and 404) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER, you are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law.

Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

Seller(s):

PLAINTIFF'S EXHIBIT
41

APC
A.D.P.

(Printed on Jul 15, 2004 @ 18:54)
L.

US Department of Housing and Urban Development
**SETTLEMENT CHARGES**

OMB No. 2502-0265

| | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | | |
| 701. Listing Realtor Commission | | |
| 702. Selling Realtor Commission | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  To: Amerisave Mortgage Corporation | 4,560.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. Processing Fee  To: New Century Mortgage Corporation, ISAOA | 100.00 | |
| 809. Underwriting fee  To: New Century Mortgage Corporation, ISAOA | 350.00 | |
| 810. Document Preparation Fee  To: New Century Mortgage Corporation, ISAOA | 300.00 | |
| 811. Tax Service Fee  To: New Century Mortgage Corporation, ISAOA | 78.00 | |
| 812. Flood Certification Fee  To: New Century Mortgage Corporation, ISAOA | 11.20 | |
| 813. Processing Fee  To: Amerisave Mortgage Corporation | 500.00 | |
| 814. Yield Spread Premium to broker paid by lender POCLS2280 | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from 07/20/2004 to 08/01/2004 @ 30.14/day To: New Century Mortgage Corporation, ISAOA | 361.68 | |
| 902. Mortgage Insurance Premium for | | |
| 903. Hazard Insurance Premium for  To: Farmers Insurance Group | 1,176.08 | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard insurance | | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes | | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment | | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlement Services, Inc. | 275.00 | |
| 1102. Abstract or title search  To: Swafford and Hays Settlement Services, Inc. | 200.00 | |
| 1103. Title examination  To: Swafford and Hays Settlement Services, Inc. | 250.00 | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary Fees | | |
| 1107. Attorney's Fees | | |
| (Includes above item numbers: ) | | |
| 1108. Title Insurance  To: American Pioneer and Swafford & Hays | 299.40 | |
| (Includes above item numbers: ) | | |
| 1109. Lender's coverage 114,000.00@  299.40 | | |
| 1110. Owner's coverage @ 0.00 | | |
| 1111. Endorsements  To: Swafford and Hays Settlement Services, Inc. | 50.00 | |
| 1112. | | |
| 1113. Overnight Courier & Handling Fees | | |
| **1200. GOVT. RECORDING, TRANSFER, AND SERVICE FEES** | | |
| 1201. Recording fees:  To: Clerk of the Court | 120.00 | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps:  Deed $0.00  Mortgage $171.00 To: Clerk of the Court | 171.00 | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey | | |
| 1302. Pest inspection | | |
| 1303. Payoff  To: Litton Loan Services | 93,524.31 | |
| 1304. | | |
| 1305. | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | 102,326.67 | 0.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

BORROWER(S)                                                    SELLER(S):

Audrey D. Patterson

Annette R. Childress

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

_____                    7-19-04
Swafford and Hays Settlement Services, Inc.            Date

NOTE: Taxes have been prorated based on taxes for the year.  Any re-proration will be handled between the buyer and seller.  All utility bills (water, sewer, electric, cable and maintenance fees) have been paid or will be paid upon receipt of final bills.

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment.  Fo

Date Printed: Friday, March 17, 2006 10:34:18 AM

## Disbursement Sheet

| Order #: 04-5251 | Settlement Date: 07/15/2004 | Disbursement Date: 07/20/2004 |
|---|---|---|

| | | |
|---|---|---|
| Buyer: | Aubrey D. Patterson and Annette P. Childress, as tenants in common, for the period or term they both survive, and to the survivor of them at the death of the other | Money Out: $115,079.12 |
| Seller: | | Money In: $115,079.12 |
| Property: | 25140 County Road 71 Robertsdale, AL 36567 | Difference: $0.00 |
| Lender: | New Century Mortgage Corporation, ISAOA | |
| Loan #: | 0001707291 | |

### Money Out

| Ref# | Date | Name | Hud | Detail | Amount |
|---|---|---|---|---|---|
| 00067747 | 7/22/2004 10:52:24 AM | Swafford and Hays Settlement Services, Inc. | 1101 | | $275.00 |
| | | | 1103 | Settlement or closing fee | $250.00 |
| | | | 1111 | Title examination | $50.00 |
| | | | 1108 | Endorsements | $209.58 |
| | | | | Title Insurance | |
| | | | | **Total:** | **$784.58** |
| 00067748 | 7/22/2004 10:52:24 AM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | $89.82 |
| | | | | **Total:** | **$89.82** |
| 00067749 | 7/22/2004 10:52:24 AM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | $200.00 |
| | | | | **Total:** | **$200.00** |
| 00067924 | 7/23/2004 12:08:40 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: | $47.00 |
| | | | | **Total:** | **$47.00** |
| wire#3440800 | 7/22/2004 11:20:27 AM | Aubrey D. Patterson and Annette P. Childress | 303 | Cash [ ]From [X]To Borrower | $11,673.33 |
| | | | | **Total:** | **$11,673.33** |
| 00067751 | 7/22/2004 10:52:24 AM | Amerisave Mortgage Corporation | 801 | Loan Origination Fee | $4,560.00 |
| | | | 813 | Processing Fee | $500.00 |
| | | | | **Total:** | **$5,060.00** |
| 00067752 | 7/22/2004 10:52:24 AM | Amerisave Mortgage Corporation | 89 | New Check - | $2,280.00 |
| | | | | **Total:** | **$2,280.00** |
| 00067753 | 7/22/2004 10:52:24 AM | Litton Loan Services | 1303 | Payoff | $93,524.31 |
| | | | | **Total:** | **$93,524.31** |
| 00067754 | 7/22/2004 10:52:24 AM | Farmers Insurance Group | 903 | Hazard Insurance Premium for | $1,176.08 |
| | | | | **Total:** | **$1,176.08** |
| 00067925 | 7/23/2004 12:08:40 PM | Baldwin County Judge of Probate | 1203 | State tax/stamps:  Deed $0.00 Mortgage $171.00 | $171.00 |
| | | | | **Total:** | **$171.00** |
| 00067926 | 7/23/2004 12:08:40 PM | Baldwin County Judge of Probate | 1201 | Recording fees: | $73.00 |
| | | | | **Total:** | **$73.00** |

### Money In

| Ref# | Date | Name | Hud | Detail | Amount |
|---|---|---|---|---|---|
| 04-5251/Lender/1 | 07/20/2004 | New Century Mortgage Corporation, ISAOA | 202 | Principal amount of new loan(s) | $114,000.00 |
| | | | 808 | Processing Fee | ($100.00) |
| | | | 809 | Underwriting fee | ($350.00) |
| | | | 810 | Document Preparation Fee | ($300.00) |
| | | | 901 | Interest from  07/20/2004 to 08/01/2004 @ 30.14/day | ($361.68) |
| | | | 812 | Flood Certification Fee | ($11.20) |
| | | | 811 | Tax Service Fee | ($78.00) |
| | | | 88 | New Receipt - | $2,280.00 |
| | | | | **Total:** | **$115,079.12** |

**Hall-Frazier**
**Record - 001214**

Date Printed: Friday, March 17, 2006 10:34:14 AM

## LEDGER CARD

**Order #: 04-5251**
Buyer/Borrower : Aubrey D. Patterson and Annette P. Childress
Seller :
Lender Name : New Century Mortgage Corporation, ISAOA
Loan Number : 0001707291
Property Address : 25140 County Road 71, Robertsdale, AL  36567

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn | Bank of America- TN | 003786777421 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/20/2004 | funding wire | alisonw | 07/31/2004 | New Century Mortgage Corporation, ISAOA | 115,079.12 |
| **\*TOTAL DEPOSITS** | | | | | **115,079.12** |

### CHECKS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/22/2004 | 00067746v | a.smith | 07/31/2004 | Clerk of the Court | (291.00) |
| 07/22/2004 | 00067747 | rachelm | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (784.58) |
| 07/22/2004 | 00067748 | rachelm | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (89.82) |
| 07/22/2004 | 00067749 | rachelm | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 07/22/2004 | 00067750v | daynat | 07/31/2004 | Aubrey D. Patterson and Annette P. Childress | (11,673.33) |
| 07/22/2004 | 00067751 | rachelm | 07/31/2004 | Amerisave Mortgage Corporation | (5,060.00) |
| 07/22/2004 | 00067752 | rachelm | 07/31/2004 | Amerisave Mortgage Corporation | (2,280.00) |
| 07/22/2004 | 00067753 | rachelm | 07/31/2004 | Litton Loan Services | (93,524.31) |
| 07/22/2004 | 00067754 | rachelm | 07/31/2004 | Farmers Insurance Group | (1,176.08) |
| 07/22/2004 | wire#3440800 | daynat | 07/31/2004 | Aubrey D. Patterson and Annette P. Childress | (11,673.33) |
| 07/23/2004 | 00067924 | a.smith | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (47.00) |
| 07/23/2004 | 00067925 | a.smith | 07/31/2004 | Baldwin County Judge of Probate | (171.00) |
| 07/23/2004 | 00067926 | a.smith | 07/31/2004 | Baldwin County Judge of Probate | (73.00) |
| **\*TOTAL CHECKS** | | | | | **(127,043.45)** |

### VOIDS

| Date | Reference # | Updated B | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 07/22/2004 | 00067746 | a.smith | 07/31/2004 | Clerk of the Court | 291.00 |
| 07/22/2004 | 00067750 | daynat | 07/31/2004 | Aubrey D. Patterson and Annette P. Childress | 11,673.33 |
| **\*TOTAL VOIDS** | | | | | **11,964.33** |

| **\*\*TOTALS FOR: tn** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                  **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                      **0.00**

Loan Number: 0001707291

**LENDER:**
Contact for Funds/Funding Authorization
NEW CENTURY MORTGAGE CORPORATION
3109 W Martin Luther King Blvd, Ste 300
Tampa, FL 33607
Attention:                          Phone: 813-241-3500

Account Manager Name:Shannon Brubaker
Account Executive Name:Amy Crow
BROKER:AMERISAVE MORTGAGE CORPORATION

| Fee | | Paid to: | Paid by Borrower | Paid by Seller |
|---|---|---|---|---|
| Discount Fee: | 0.0000 | | | |
| Origination Fee: | 4.0000 | BROKER | 4,560.00 | |
| Processing Fee | | LENDER | 100.00 | |
| Underwriting Fee: | | LENDER | 350.00 | |
| Document Fee: | | LENDER | 300.00 | |
| Tax Service Fee: | | LENDER | 78.00 | |
| Flood Certification: | | LENDER | 11.20 | |
| Appraisal Fee: | | | | |
| Credit Fee: | | | | |
| | | | | |
| PROCESSING FEE | | BROKER | 500.00 | |
| | | | | |
| ***Settlement Fee | | to Title | 275.00 | |
| Courier/Wire Fee | | | | |

Total fees withheld from loan proceeds by Lender $          5,899.20
*** AMOUNT ON THIS LINE NOT INCLUDED IN TOTALS

| | SALES PRICE | LOAN AMOUNT |
|---|---|---|
| | | 114,000.00 |

Less Interest @          30.14
From: 7/20/04  To: 8/1/04          361.68

Less Fees Withheld from
Loan Proceeds          5,899.20

| | | |
|---|---|---|
| Mos. County Tax | @ | $ |
| Mos. City Tax | @ | $ |
| Mos. Local Tax | @ | $ |
| Mos. School Tax | @ | $ |
| Mos. Hazard Ins | @ | $ |
| Mos. Flood Ins | @ | $ |
| Mos. MMI | @ | $ |
| Mos. | @ | $ |

Gross Escrow/Impound          Less Net Escrow/
Impound Reserves

Aggregate Adjustment          Subtotal          107,739.12

Add Broker Fees          5,060.00

Add yield premium to Broker
(Paid by Lender) ( 2.0 %)          2,280.00

Estimated Check/Wire Amount
Loan Proceeds          115,079.12

_Aubrey D. Patterson_
AUBREY D. PATTERSON

Closing Agent/Officer _Brenda Cone_
LENDER'S INSTRUCTIONS TO CLOSING AGENT
Page 3 OF 3          RE-155C de 101303

(Printed on Jun 28, 2004 @ 11:59)                                  US Department of Housing and Urban Development                          OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

File Number: 04-3109     Loan Number: 10204470     Mortgage Ins. Case #:

NAME AND ADDRESS OF BORROWER/BUYER:
Garry Morris 195 Morris Lane Toney, AL 35773

AME AND ADDRESS OF LENDER:
Homeowners Loan 4501 Circle 75 Parkway Suite F6300 Atlanta, GA 30339

PROPERTY LOCATION (Brief Legal):
195 Morris Lane Toney , AL 35773

| SETTLEMENT AGENT: Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Melanie Rea | PLACE OF SETTLEMENT: 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
| --- | --- |
| SETTLEMENT DATE: 06/28/2004 | DISBURSEMENT DATE: 07/02/2004 |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
| --- | --- | --- | --- |
| **800. Items Payable In Connection With Loan** | | 1501. Payoff | |
| 801. Loan Origination Fee    To: Homeowners Loan | 3,459.00 | To: USDA-RHS Acct# 643437 | 36,276.42 |
| 802. Loan Discount | | 1502. | |
| 803. Appraisal Fee POC $150    To: Cope Appraisals | 150.00 | | |
| 804. Credit Report Credit Report POCL $8.50 | | 1503. | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | 1504. | |
| 807. Assumption Fee | | | |
| 808. Processing\Underwriter Fee    To: Homeowners Loan | 390.00 | 1505. | |
| 809. Funding Fee    To: Homeowners Loan | 365.00 | | |
| 810. Administration Fee    To: Homeowners Loan | 295.00 | 1506. | |
| 811. Document Preparation Fee    To: Homeowners Loan | 195.00 | | |
| **900. Items Required By Lender To Be Paid In Advance** | | 1507. | |
| 901. Interest from | | | |
| 902. Mortgage Insurance Premium for | | 1508. | |
| 903. Hazard Insurance Premium for | | | |
| 904. | | 1509. | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | 1510. | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage insurance | | 1511. | |
| 1003. City property taxes | | | |
| '04. County property taxes | | 1512. | |
| '05. Annual assessments | | | |
| 1006. | | 1513. | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | 1514. | |
| **1100. Title Charges** | | 1515. | |
| 1101. Settlement or closing fee    To: Swafford and Hays Settlem | 200.00 | | |
| 1102. Abstract or title search    To: Swafford and Hays Settlemen | 375.00 | | |
| 1103. Title examination    To: Swafford and Hays Settlement Ser | 225.00 | 1520. TOTAL DISBURSED (enter on line 1603) | 36,276.42 |
| 1104. Title insurance binder | | **N. Net Settlement** | |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | 1600. Loan Amount | 68,400.00 |
| 1107. Attorney's Fees | | | |
| (Includes above item numbers:  ) | | 1601. Plus Check/Cash from Borrower | |
| 1108. Title Insurance    To: American Pioneer Title Insurance Co | 207.00 | | |
| (Includes above item numbers:  ) | | 1602. Minus total settlement charges | 6,108.60 |
| 1109. Lender's coverage 68,400.00 @ 207.00 | | (Line 1400) | |
| 1110. Owner's coverage  @ 0.00 | | 1603. Minus total Disbursements to | 36,276.42 |
| 1111. | | Others (line 1520) | |
| 1112. | | 1604. Equals disbursements to borrower | 26,014.98 |
| 1113. Overnight Courier & Handling Fees | | | |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees:    To: Clerk of the Court | 120.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps:   Deed $0.00  Mortgage $102.60  To: Cler | 102.60 | | |
| 1204. Transfer Tax    To: Clerk of the Court | 25.00 | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1303. Flood Determination POCL $9.50 | | | |
| 1304. | | | |
| 1305. | | | |
| **9. Total settlement charges (enter on line 1602)** | 6,108.60 | | |



PLAINTIFF'S EXHIBIT
42

...the undersigned hereby acknowledges receipt of a completed copy of this statement. to the best of my knowledge the HUD-1A ref RESPA Settlement Statement is a true and accurate account of the funds which were received and... ...have been or will be disbursed by the undersigned as part of the settlement of this transaction

X _Sarah Cadie_      X _Garry Morris_
Swafford and Hays Settlement Services, Inc.      Garry Morris

Date Printed: Saturday, March 18, 2006 12:02:18 PM

## Disbursement Sheet

| Order #: 04-3109 | Settlement Date: 06/28/2004 | | Disbursement Date: 07/02/2004 | |
|---|---|---|---|---|

| Buyer: | Garry Morris | Money Out: | $63,696.00 |
|---|---|---|---|
| Seller: | | Money In: | $63,696.00 |
| Property: | 195 Morris Lane Toney , AL  35773 | Difference: | $0.00 |
| Lender: | Homeowners Loan | | |
| Loan #: | 10204470 | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00064696 | 7/2/2004 | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $200.00 |
| | | | 1102 | Abstract or title search | | $175.00 |
| | | | 1103 | Title examination | | $225.00 |
| | | | 1108 | Title Insurance | | $144.90 |
| | | | | | **Total:** | **$744.90** |
| 00064697 | 7/2/2004 | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $62.10 |
| | | | | | **Total:** | **$62.10** |
| 00064698 | 7/2/2004 | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $200.00 |
| | | | | | **Total:** | **$200.00** |
| 00069136 | 7/29/2004 3:03:35 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: | | $77.75 |
| | | | 1204 | Transfer Tax | | $2.25 |
| | | | | | **Total:** | **$80.00** |
| wire        # 3325912 | 7/2/2004 3:59:21 PM | Garry Morris | 303 | Cash [ ]From [X]To  Borrower | | $26,014.98 |
| | | | | | **Total:** | **$26,014.98** |
| 00064700 | 7/2/2004 | USDA-RHS  Acct# 643437 | 1501 | Payoff | | $36,276.42 |
| | | | | | **Total:** | **$36,276.42** |
| 00064701 | 7/2/2004 | Cope Appraisals | 803 | Appraisal Fee POC $150 | | $150.00 |
| | | | | | **Total:** | **$150.00** |
| 00069137 | 7/29/2004 3:03:35 PM | Madison County Judge of Probate | 1204 | Transfer Tax | | $22.75 |
| | | | | | **Total:** | **$22.75** |
| 00069138 | 7/29/2004 3:03:35 PM | Madison County Judge of Probate | 1203 | State tax/stamps:    Deed $0.00 Mortgage  $102.60 | | $102.60 |
| | | | | | **Total:** | **$102.60** |
| 00069139 | 7/29/2004 3:03:35 PM | Madison County Judge of Probate | 1201 | Recording fees: | | $42.25 |
| | | | | | **Total:** | **$42.25** |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 04-3109/Lender/1 | 07/02/2004 | Homeowners Loan | | | | |
| | | | 808 | Processing\Underwriter Fee | | ($390.00) |
| | | | 809 | Funding Fee | | ($365.00) |
| | | | 810 | Administration Fee | | ($295.00) |
| | | | 811 | Document Preparation Fee | | ($195.00) |
| | | | 801 | Loan Origination Fee | | ($3,459.00) |
| | | | 1600 | Loan Amount | | $68,400.00 |
| | | | | | **Total:** | **$63,696.00** |

**Hall-Frazier**
**Record - 001218**

## LEDGER CARD

Date Printed: Saturday, March 18, 2006  12:02:03 PM

Order #: 04-3109
Buyer/Borrower : Garry Morris
Seller :
Lender Name : Homeowners Loan
Loan Number : 10204470
Property Address : 195 Morris Lane, Toney , AL  35773

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn | Bank of America- TN | 003786777421 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 07/02/2004 | funding wire | alisonw | 07/31/2004 | Homeowners Loan | 63,696.00 |
| **\*TOTAL DEPOSITS** | | | | | **63,696.00** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 07/02/2004 | 00064695v | a.smith | 07/31/2004 | Clerk of the Court | (247.60) |
| 07/02/2004 | 00064696 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (744.90) |
| 07/02/2004 | 00064697 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (62.10) |
| 07/02/2004 | 00064698 | n.guider | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 07/02/2004 | 00064699v | alisonw | 07/31/2004 | Garry Morris | (26,014.98) |
| 07/02/2004 | 00064700 | n.guider | 07/31/2004 | USDA-RHS  Acct# 643437 | (36,276.42) |
| 07/02/2004 | 00064701 | n.guider | 07/31/2004 | Cope Appraisals | (150.00) |
| 07/02/2004 | wire # 3325912 | alisonw | 07/31/2004 | Garry Morris | (26,014.98) |
| 07/29/2004 | 00069136 | a.smith | 08/31/2004 | Swafford and Hays Settlement Services, Inc. | (80.00) |
| 07/29/2004 | 00069137 | a.smith | 08/31/2004 | Madison County Judge of Probate | (22.75) |
| 07/29/2004 | 00069138 | a.smith | 08/31/2004 | Madison County Judge of Probate | (102.60) |
| 07/29/2004 | 00069139 | a.smith | 08/31/2004 | Madison County Judge of Probate | (42.25) |
| **\*TOTAL CHECKS** | | | | | **(89,958.58)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 07/02/2004 | 00064695 | a.smith | 07/31/2004 | Clerk of the Court | 247.60 |
| 07/02/2004 | 00064699 | alisonw | 07/31/2004 | Garry Morris | 26,014.98 |
| **\*TOTAL VOIDS** | | | | | **26,262.58** |

| **\*\*TOTALS FOR: tn** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                    **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                       **0.00**

**Hall-Frazier**
**Record - 001219**

# A & B Abstracts, Inc.

| | |
|---|---|
| 2725 Calhoun Drive<br>Abbeville, AL 36310 | Phone: 334-687-4846<br>Fax:   334-687-1027<br>Email: ginapeacock@eufaula.rr.com |

*A & B ABSTRACTS, Inc*
*Covering Counties in Alabama, Georgia,*
*Mississippi, and North West Florida*

A&B# 7995

| NAME:  Garry Morris | ADDRESS: | 195 Morris Lane<br>Toney, AL  35773 |
|---|---|---|
| | COUNTY: | Madison |

| | |
|---|---|
| **CURRENT DEED:  SWD** | **TAX INFORMATION** |
| **GRANTOR:**  Garry Morris and wife, Millicent Morris | PARCEL ID # 1-2W-25.00---37 C1 · ⸱⸱· |
| | YEAR: 2001       Status: Paid |
| **GRANTEE:**  Gary Morris and wife, Millicent Morris | YEAR: 2002       Status: Paid |
| | YEAR: 2003       Amount: $182.17<br>                     Status: Paid 2/4/04 |
| DATED:      7/28/86<br>FILED:      7/29/86<br>BOOK:      677<br>PAGE:       485 | Assessed Value: $6,160.00 |
| | Legal Description: |
| **PREVIOUS DEED:** | See Deed |
| 676p1166 WD Buford Morris and wife, Carman Morris to Garry Morris Date: 4/21/86 Filed: 7/21/86 | |

| FIRST MORTGAGE          Amt: $37,500.00 | SECOND  MORTGAGE          Amt: $ |
|---|---|
| Date of Mtg.:  7/22/86       Date Filed: 7/22/86 | Date of Mtg.:          Date Filed: |
| Book: 1431                   Page: 844 | Book:                   Page: |
| Mortgagee:  Farmers Home Administration | Mortgagee: |
| Assigned: | Assigned: |
| Mortgagor:  Gary Morris and wife, Millicent Morris | Mortgagor: |

| | |
|---|---|
| LIENS: | None of Record |
| JUDGMENTS: | None of Record |
| EASEMENTS: | Subject to R-O-W, Setback Lines, and Easements of Record |
| UCC: | None of Record |
| CCR's: | Subject to any Covenants, Restrictions, or Conditions of Record. |
| Note: | |

**PROBATE RECORDS CHECKED FROM    7/21/86    THROUGH    3/29/04**

FROM :C                          FAX NO. :0                Jur. '9 2004 87:39PM P1

US Department of Housing and Urban Development                      OMB No. 3502-0265
(Revised on Jun 29, 2004 @ 19:56)

**SETTLEMENT STATEMENT** (Transactions Without Sellers)

| File Number: 04-6028 | Loan Number: 10197391 | | Mortgage Ins. Case #: | |
|---|---|---|---|---|

**NAME AND ADDRESS OF BORROWER:**
Oliver Earl Prothro 2409 Mckletoy Avenue Annison, AL 36201
Frances Reed Prothro

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4501 Circle 75 Parkway Suite 76300 Atlanta, GA-30339

**PROPERTY LOCATION:**
2409 Mckletoy Avenue Anniston, AL 36201

| SETTLEMENT AGENT: | PLACE OF SETTLEMENT: |
|---|---|
| Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom | Swafford and Hays Settlement Services, Inc. 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
| SETTLEMENT DATE: 06/29/2004 | DISBURSEMENT DATE: 07/06/2004 |

| L. SETTLEMENT CHARGES | | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|---|
| 800. Items Payable In Connection With Loan | | | 1501. Payoff Account# 0000053482 | |
| 801. Loan Origination Fee   To: Homeowners Loan | | 1,398.60 | To: Security National | 33,708.26 |
| 802. Loan Discount | | | 1502. Payment | |
| 803. Appraisal Fee $150.00 To Areawide Appraisal   To: A | | 150.00 | To: Providian | 5,268.00 |
| 804. Credit Report Credit Report POCL $8.50 | | | 1503. Payment | |
| 805. Lender's Inspection Fee | | | To: Farmers Furniture | 202.35 |
| 806. Mortgage Insurance Application Fee | | | 1504. Payment | |
| 807. Assumption Fee | | | To: Family Loan | 1,975.00 |
| 808. Processing/Underwriter Fee   To: Homeowners Loan | | 390.00 | 1505. Payment | |
| 809. Funding Fee   To: Homeowners Loan | | 365.00 | To: PVNC | 1,518.00 |
| 810. Administration Fee   To: Homeowners Loan | | 295.00 | 1506. Payment | |
| 811. Document Preparation Fee   To: Homeowners Loan | | 195.00 | To: Cross Country | 1,491.00 |
| 900. Items Required By Lender To Be Paid In Advance | | | 1507. Payment | |
| 901. Interest from | | | To: Capital One | 559.00 |
| 902. Mortgage Insurance Premium for | | | 1508. | |
| 903. Hazard Insurance Premium for | | | | |
| 904. | | | 1509. | |
| 905. | | | | |
| 1000. Reserves Deposited With Lender | | | 1510. | |
| 1001. Hazard insurance | | | | |
| 1002. Mortgage insurance | | | 1511. | |
| 1003. City property taxes | | | | |
| 1004. County property taxes | | | 1512. | |
| 1005. Annual assessments | | | | |
| 1006. | | | 1513. | |
| 1007. | | | | |
| 1008. Aggregate Accounting Adjustment | | | 1514. | |
| 1100. Title Charges | | | 1515. | |
| 1101. Settlement or closing fee   To: Swafford and Hays Settle | | 200.00 | | |
| 1102. Abstract or title search   To: Swafford and Hays Settleme | | 375.00 | | |
| 1103. Title examination   To: Swafford and Hays Settlement Se | | 225.00 | 1520. TOTAL DISBURSED (enter on line 1603) | 44,721.63 |
| 1104. Title insurance binder | | | | |
| 1105. Document preparation | | | N. Net Settlement | |
| 1106. Notary Fees | | | | |
| 1107. Attorney's Fees | | | 1600. Loan Amount | 54,000.00 |
| (Includes above item numbers:   ) | | | | |
| 1108. Title Insurance   To: American Pioneer Title Insurance Co | | 200.00 | 1601. Plus Check/Cash from Borrower | |
| (Includes above item numbers:   ) | | | | |
| 1109. Lender's coverage $4,000.00  @ 200.00 | | | 1602. Minus total settlement charges (Line 1400) | 3,994.60 |
| 1110. Owner's coverage  @ 0.00 | | | | |
| 1111. | | | 1603. Minus total Disbursements to Others (line 1520) | 44,721.63 |
| 1112. | | | | |
| 1113. Overnight Courier & Handling Fees | | | 1604. Equals disbursements to borrower | 5,283.77 |
| 1200. Govt. Recording, Transfer, and Service Fees | | | | |
| 1201. Recording fees:   To: Clerk of the Court | | 120.00 | | |
| 1202. City/county tax/stamps: | | | | |
| 1203. State tax/stamps:   Deed $0.00 Mortgage $81.00   To: Cle | | 81.00 | | |
| 1204. | | | | |
| 1205. | | | | |
| 1300. Additional Settlement Charges | | | | |
| 1301. Survey | | | | |
| 1302. Pest inspection | | | | |
| 1303. Flood Determination POCL $9.50 | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1400. Total settlement charges (enter on line 1602) | | 3,994.60 | | |

PLAINTIFF'S EXHIBIT
43

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of our knowledge, the HUD-1A, as 22329, Settlement Statement is a true and accurate account of this funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

X _____   x _Oliver Earl Prothro_   x _Frances Reed Prothro_
Swafford and Hays Settlement Services, Inc.   Oliver Earl Prothro      Frances Reed Prothro

## LEDGER CARD

Date Printed: Saturday, March 18, 2006 12:05:20 PM

Order #: 04-6028
Buyer/Borrower : Oliver Earl Prothro and Frances Reed Prothro
Seller :
Lender Name : Homeowners Loan
Loan Number : 10197391
Property Address : 2409 Mckleroy Avenue, Anniston, AL  36201

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn | Bank of America- TN | 003786777421 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 07/06/2004 | funding wire | alisonw | 07/31/2004 | Homeowners Loan | 51,356.40 |
| **\*TOTAL DEPOSITS** | | | | | **51,356.40** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 07/05/2004 | 00065137v | a.smith | 07/31/2004 | Clerk of the Court | (201.00) |
| 07/05/2004 | 00065138 | rachelm | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (740.00) |
| 07/05/2004 | 00065139 | rachelm | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (60.00) |
| 07/05/2004 | 00065140 | rachelm | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 07/05/2004 | 00065141 | rachelm | 07/31/2004 | Oliver Earl Prothro and Frances Reed Prothro | (5,283.77) |
| 07/05/2004 | 00065142 | rachelm | 07/31/2004 | Areawide Appraisal | (150.00) |
| 07/05/2004 | 00065143 | rachelm | 07/31/2004 | Security National | (33,708.24) |
| 07/05/2004 | 00065144 | rachelm | 07/31/2004 | Providian | (5,268.00) |
| 07/05/2004 | 00065145 | rachelm | 07/31/2004 | Farmers Furniture | (202.39) |
| 07/05/2004 | 00065146 | rachelm | 07/31/2004 | Family Loan | (1,975.00) |
| 07/05/2004 | 00065147 | rachelm | 07/31/2004 | PVN/C | (1,518.00) |
| 07/05/2004 | 00065148 | rachelm | 07/31/2004 | Cross Country | (1,491.00) |
| 07/05/2004 | 00065149 | rachelm | 07/31/2004 | Capital One | (559.00) |
| 07/08/2004 | 00066060 | a.smith | 07/31/2004 | Swafford and Hays Settlement Services, Inc. | (90.00) |
| 07/08/2004 | 00066061 | a.smith | 08/31/2004 | Calhoun County Judge of Probate | (81.00) |
| 07/08/2004 | 00066062 | a.smith | 08/31/2004 | Calhoun County Judge of Probate | (30.00) |
| **\*TOTAL CHECKS** | | | | | **(51,557.40)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 07/05/2004 | 00065137 | a.smith | 07/31/2004 | Clerk of the Court | 201.00 |
| **\*TOTAL VOIDS** | | | | | **201.00** |

| **\*\*TOTALS FOR: tn** | **0.00** |
|---|---|

**\*\*\*POSTED TOTAL**                                                          **0.00**

## PENDING ESCROWS

**\*\*\*\*TOTAL(POSTED + PENDING)**                                      **0.00**

Hall-Frazier
Record - 001222

Date Printed: Saturday, March 18, 2006  12:00:35 PM

## Disbursement Sheet

| Order #: 04-6028 | Settlement Date: 06/29/2004 | Disbursement Date: 07/06/2004 |
|---|---|---|

Oliver Earl Prothro and wife, and Frances Reed
Prothro, for and during their joint lives and upon
the death of either, to the survivor

| | | |
|---|---|---|
| Buyer: | | Money Out: | $51,356.40 |
| Seller: | | Money In: | $51,356.40 |
| Property: | 2409 Mckleroy Avenue Anniston, AL  36201 | Difference: | $0.00 |
| Lender: | Homeowners Loan | | |
| Loan #: | 10197391 | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00065138 | 7/5/2004 12:17:25 PM | Swafford and Hays Settlement Services, Inc. | 1102 | Abstract or title search | | $375.00 |
| | | | 1103 | Title examination | | $225.00 |
| | | | 1108 | Title Insurance | | $140.00 |
| | | | | | Total: | $740.00 |
| 00065139 | 7/5/2004 12:17:25 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $60.00 |
| | | | | | Total: | $60.00 |
| 00065140 | 7/5/2004 12:17:25 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $200.00 |
| | | | | | Total: | $200.00 |
| 00066060 | 7/8/2004 12:35:03 PM | Swafford and Hays Settlement Services, Inc. | 1201 | Recording fees: | | $90.00 |
| | | | | | Total: | $90.00 |
| 00065141 | 7/5/2004 12:17:25 PM | Oliver Earl Prothro and Frances Reed Prothro | 303 | Cash [ ]From [X]To  Borrower | | $5,283.77 |
| | | | | | Total: | $5,283.77 |
| 00065142 | 7/5/2004 12:17:25 PM | Areawide Appraisal | 803 | Appraisal Fee POC $150.00 To Areawide Appraisal | | $150.00 |
| | | | | | Total: | $150.00 |
| 00065143 | 7/5/2004 12:17:25 PM | Security National | 1501 | Payoff Account# 0000053482 | | $33,708.24 |
| | | | | | Total: | $33,708.24 |
| 00065144 | 7/5/2004 12:17:25 PM | Providian | 1502 | Payment | | $5,268.00 |
| | | | | | Total: | $5,268.00 |
| 00065145 | 7/5/2004 12:17:25 PM | Farmers Furniture | 1503 | Payment | | $202.39 |
| | | | | | Total: | $202.39 |
| 00065146 | 7/5/2004 12:17:25 PM | Family Loan | 1504 | Payment | | $1,975.00 |
| | | | | | Total: | $1,975.00 |
| 00065147 | 7/5/2004 12:17:25 PM | PVN/C | 1505 | Payment | | $1,518.00 |
| | | | | | Total: | $1,518.00 |
| 00065148 | 7/5/2004 12:17:25 PM | Cross Country | 1506 | Payment | | $1,491.00 |
| | | | | | Total: | $1,491.00 |
| 00065149 | 7/5/2004 12:17:25 PM | Capital One | 1507 | Payment | | $559.00 |
| | | | | | Total: | $559.00 |
| 00066061 | 7/8/2004 12:35:03 PM | Calhoun County Judge of Probate | 1203 | State tax/stamps:   Deed $0.00 Mortgage $81.00 | | $81.00 |
| | | | | | Total: | $81.00 |
| 00066062 | 7/8/2004 12:35:03 PM | Calhoun County Judge of Probate | 1201 | Recording fees: | | $30.00 |
| | | | | | Total: | $30.00 |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 04-6028/Lender/1 | 07/06/2004 | Homeowners Loan | | | | |
| | | | 808 | Processing\Underwriter Fee | | ($390.00) |
| | | | 809 | Funding Fee | | ($365.00) |
| | | | 810 | Administration Fee | | ($295.00) |
| | | | 811 | Document Preparation Fee | | ($195.00) |
| | | | 801 | Loan Origination Fee | | ($1,398.60) |
| | | | 1600 | Loan Amount | | $54,000.00 |
| | | | | | Total: | $51,356.40 |

**Hall-Frazier**
**Record - 001223**

(Printed on Mar 15, 2005 @ 15 58)    US Department of Housing and Urban Development    OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: 05-733 | Loan Number: 60036381 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Norman L. Langworthy, II 492 Norman Street Barryton, MI 49305
Stephanie G. Langworthy

**NAME AND ADDRESS OF LENDER:**
Homeowners Loan 4145 Shackleford Road, Suite 330 Norcross, GA 30093

**PROPERTY LOCATION (Brief Legal):**
492 Norman Street Barryton, MI 49305

| **SETTLEMENT AGENT:** | **PLACE OF SETTLEMENT:** |
|---|---|
| Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom | 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
| **SETTLEMENT DATE:** 03/16/2005 | **DISBURSEMENT DATE:** 03/21/2005 |

| **I. SETTLEMENT CHARGES** | | | **M. DISBURSEMENT TO OTHERS** | | |
|---|---|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | | 1501. Payoff Acct# 0001234371 Good Thru 3/3 | | |
| 801. Loan Origination Fee    To: Homeowners Loan | 1,700.00 | | To: Ohio Savings Bank | | 42,521.48 |
| 802. Loan Discount | | | 1502. Payment | | |
| 803. Appraisal Fee    To: Town & Country Appraisals | 280.00 | | To: Ford Motor Credit | | 3,256.00 |
| 804. Credit Report POCL $8.50 | | | 1503. Payment | | |
| 805. Lender's Inspection Fee | | | To: ANBCC | | 2,853.00 |
| 806. Mortgage Insurance Application Fee | | | 1504. Payment | | |
| 807. Assumption Fee | | | To: Discover | | 1,719.00 |
| 808. Processing Fee    To: Homeowners Loan | 390.00 | | 1505. | | |
| 809. Funding Fee    To: Homeowners Loan | 365.00 | | | | |
| 810. Administration Fee    To: Homeowners Loan | 295.00 | | 1506. | | |
| 811. Document Preparation Fee    To: Homeowners Loan | 195.00 | | | | |
| 812. Tax Service Fee    To: Land America | 63.00 | | 1507. | | |
| **900. Items Required By Lender To Be Paid In Advance** | | | 1508. | | |
| 901. Interest from | | | | | |
| 902. Mortgage Insurance Premium for | | | 1509. | | |
| 903. Hazard Insurance Premium for    To: Fidelity National Insur | 834.00 | | | | |
| 904. | | | 1510. | | |
| 905. | | | | | |
| **1000. Reserves Deposited With Lender** | | | 1511. | | |
| 1001. Hazard insurance | | | | | |
| 1002. Mortgage insurance | | | 1512. | | |
| 3. City property taxes | | | | | |
| 4. County property taxes | | | 1513. | | |
| 1005. Annual assessments | | | | | |
| 1006. | | | 1514. | | |
| 1007. | | | | | |
| 1008. Aggregate Accounting Adjustment | | | 1515. | | |
| **1100. Title Charges** | | | | | |
| 1101. Settlement or closing fee    To: Swafford and Hays Settlem | 800.00 | | 1520. TOTAL DISBURSED (enter on line 1603) | | |
| 1102. Abstract or title search | | | | | 50,349.48 |
| 1103. Title examination | | | **N. Net Settlement** | | |
| 1104. Title insurance binder | | | | | |
| 1105. Document preparation | | | 1600. Loan Amount | | 59,200.00 |
| 1106. Notary Fees | | | | | |
| 1107. Attorney's Fee | | | 1601. Plus Check/Cash from Borrower | | |
| (includes above item numbers:    ) | | | | | |
| 1108. Title Insurance    To: American Pioneer and Swafford & H | 537.50 | | 1602. Minus total settlement charges | | 5,684.50 |
| (includes above item numbers:    ) | | | (Line 1400) | | |
| 1109. Lender's coverage 59,200.00 @ 537.50 | | | 1603. Minus total disbursements to | | 50,349.48 |
| 1110. Owner's coverage @ 0.00 | | | Others (line 1520) | | |
| 1111. Title Service Fee    To: Swafford and Hays Settlement Serv | 75.00 | | 1604. Equals disbursements to borrower | | 3,166.02 |
| 1112. | | | | | |
| 1113. Overnight Courier & Handling Fees | | | | | |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | | | |
| 1201. Recording fees:    To: Clerk of the Court | 150.00 | | | | |
| 1202. City/county tax/stamps: | | | | | |
| 1203. State tax/stamps: | | | | | |
| 1204. | | | | | |
| 1205. | | | | | |
| **1300. Additional Settlement Charges** | | | | | |
| 1301. Survey | | | | | |
| 1302. Pest inspection | | | | | |
| 1303. Flood Determination POCL $9.50 | | | | | |
| 1304. | | | | | |
| 5. | | | | | |
| **00. Total settlement charges (enter on line 1602)** | 5,684.50 | | | | |

PLAINTIFF'S EXHIBIT

45

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A or RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

X _____    _____    _____
Swafford and Hays Settlement Services, Inc.    Norman L. Langworthy, II    Stephanie G. Langworthy

**Hall-Frazier**
**Record - 001224**

(Printed on May 15, 2005 @ 15:38)

US Department of Housing and Urban Development

OMB No. 2502-0265

## SETTLEMENT STATEMENT (Transactions Without Sellers)

| File Number: 05-733 | Loan Number: 60036381 | Mortgage Ins. Case #: |
|---|---|---|

**NAME AND ADDRESS OF BORROWER/BUYER:**
Norman L. Langworthy, II 492 Norman Street Burryton, MI 49305
Stephanie G. Langworthy

**AE AND ADDRESS OF LENDER:**
Homeowners Loan 4145 Shackleford Road, Suite 330 Norcross, GA 30093

**PROPERTY LOCATION (Brief Legal):**
492 Norman Street Burryton, MI 49305

| SETTLEMENT AGENT: Swafford and Hays Settlement Services, Inc. 865-539-1450 Contact: Shannon Odom | PLACE OF SETTLEMENT: 9041 Executive Park Drive, Suite 400 Knoxville, TN 37923 |
|---|---|

| SETTLEMENT DATE: 03/16/2005 | DISBURSEMENT DATE: 03/21/2005 |
|---|---|

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payoff Acct# 0001234371 Good Thru 3/3 To: Ohio Savings Bank | 42,521.48 |
| 801. Loan Origination Fee  To: Homeowners Loan | 1,700.00 | 1502. Payment | |
| 802. Loan Discount | | To: Ford Motor Credit | 3,236.00 |
| 803. Appraisal Fee  To: Town & Country Appraisals | 280.00 | 1503. Payment | |
| 804. Credit Report POCL $8.50 | | To: ANBCC | 2,853.00 |
| 805. Lender's Inspection Fee | | 1504. Payment | |
| 806. Mortgage Insurance Application Fee | | To: Discover | 1,719.00 |
| 807. Assumption Fee | | 1505. | |
| 808. Processing Fee  To: Homeowners Loan | 390.00 | | |
| 809. Funding Fee  To: Homeowners Loan | 365.00 | 1506. | |
| 810. Administration Fee  To: Homeowners Loan | 295.00 | | |
| 811. Document Preparation Fee  To: Homeowners Loan | 195.00 | 1507. | |
| 812. Tax Service Fee  To: Land America | 63.00 | | |
| **900. Items Required By Lender To Be Paid In Advance** | | 1508. | |
| 901. Interest from | | | |
| 902. Mortgage Insurance Premium for | | 1509. | |
| 903. Hazard Insurance Premium for  To: Fidelity National Insur | 834.00 | | |
| 904. | | 1510. | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | 1511. | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | 1512. | |
| 3. City property taxes | | | |
| 4. County property taxes | | 1513. | |
| 1005. Annual assessments | | | |
| 1006. | | 1514. | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | | 1515. | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee  To: Swafford and Hays Settlem | 800.00 | 1520. TOTAL DISBURSED (enter on line 1603) | |
| 1102. Abstract or title search | | | 50,349.48 |
| 1103. Title examination | | **N. Net Settlement** | |
| 1104. Title insurance binder | | 1600. Loan Amount | 59,200.00 |
| 1105. Document preparation | | | |
| 1106. Notary Fees | | 1601. Plus Check/Cash from Borrower | |
| 1107. Attorney's Fees | | | |
| (Includes above item numbers:  ) | | 1602. Minus total settlement charges | 5,684.50 |
| 1108. Title Insurance  To: American Pioneer and Swafford & H | 537.50 | (Line 1400) | |
| (Includes above item numbers:  ) | | 1603. Minus total Disbursements to | 50,349.48 |
| 1109. Lender's coverage 59,200.00 @ 537.50 | | Others (line 1520) | |
| 1110. Owner's coverage  @ 0.00 | | 1604. Equals disbursements to borrower | 3,166.02 |
| 1111. Title Service Fee To: Swafford and Hays Settlement Serv | 75.00 | | |
| 1112. | | | |
| 1113. Overnight Courier & Handling Fees | | | |
| **1200. Govt. Recording, Transfer, and Service Fees** | | | |
| 1201. Recording fees:  To: Clerk of the Court | 150.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps: | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey | | | |
| 1302. Pest inspection | | | |
| 1305. Flood Determination POCL $9.50 | | | |
| 1304. | | | |
| 5. | | | |
| **400. Total settlement charges (enter on line 1602)** | 5,684.50 | | |

The undersigned hereby acknowledges receipt of a completed copy of this statement. To the best of my knowledge the HUD-1A or RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as a part of the settlement of this transaction.

X _____    _____    X _____
Swafford and Hays Settlement Services, Inc.    Norman L. Langworthy, II    Stephanie G. Langworthy

**Hall-Frazier**
**Record - 001225**

Date Printed: Monday, March 27, 2006  11:41:57 AM

## Disbursement Sheet

| Order #:  05-733 | Settlement Date:  03/16/2005 | Disbursement Date:  03/21/2005 |
|---|---|---|

| | | | |
|---|---|---|---|
| Buyer: | Norman L. Langworthy, II and Stephanie G. Langworthy, husband and wife | Money Out: | $56,192.00 |
| Seller: | Norman L. Langworthy II, a single man | Money In: | $56,192.00 |
| Property: | 492 Norman Street Barryton, MI 49305 | Difference: | $0.00 |
| Lender: | Homeowners Loan | | |
| Loan #: | 60036381 | | |

### Money Out

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 00023571 | 3/22/2005 4:35:13 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $600.00 |
| | | | 1108 | Title Insurance | | $376.25 |
| | | | | | **Total:** | **$976.25** |
| 00023572 | 3/22/2005 4:35:13 PM | Swafford and Hays Settlement Services, Inc. | 1111 | Title Service Fee | | $75.00 |
| | | | | | **Total:** | **$75.00** |
| 00023573 | 3/22/2005 4:35:13 PM | Swafford and Hays Settlement Services, Inc. | 1101 | Settlement or closing fee | | $200.00 |
| | | | | | **Total:** | **$200.00** |
| 00023574 | 3/22/2005 4:35:13 PM | Swafford and Hays Settlement Services, Inc. | 1108 | Title Insurance | | $161.25 |
| | | | | | **Total:** | **$161.25** |
| wire # 5252585 | 3/23/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | 303 | Cash [ ]From [X]To Borrower | | $3,166.02 |
| | | | | | **Total:** | **$3,166.02** |
| 00042319 | 6/30/2005 8:51:44 AM | Norman L. Langworthy, II and Stephanie G. Langworthy | 1201 | Recording fees: | | $62.00 |
| | | | | | **Total:** | **$62.00** |
| 00023576 | 3/22/2005 4:35:13 PM | Town & Country Appraisals | 803 | Appraisal Fee | | $280.00 |
| | | | | | **Total:** | **$280.00** |
| 00023577 | 3/22/2005 4:35:13 PM | Ohio Savings Bank | 1501 | Payoff Acct# 0001234371 Good Thru 3/31/05 | | $42,521.48 |
| | | | | | **Total:** | **$42,521.48** |
| 00023578 | 3/22/2005 4:35:13 PM | Ford Motor Credit | 1502 | Payment | | $3,256.00 |
| | | | | | **Total:** | **$3,256.00** |
| 00023579 | 3/22/2005 4:35:13 PM | ANBCC | 1503 | Payment | | $2,853.00 |
| | | | | | **Total:** | **$2,853.00** |
| 00023580 | 3/22/2005 4:35:13 PM | Discover | 1504 | Payment | | $1,719.00 |
| | | | | | **Total:** | **$1,719.00** |
| 00023874 | 3/24/2005 11:14:08 AM | MECOSTA COUNTY REGISTER OF DEEDS | 1201 | Recording fees: | | $71.00 |
| | | | | | **Total:** | **$71.00** |
| 00023876 | 3/24/2005 11:14:08 AM | MECOSTA COUNTY REGISTER OF DEEDS | 1201 | Recording fees: | | $17.00 |
| | | | | | **Total:** | **$17.00** |
| 00023963 | 3/24/2005 4:17:49 PM | Sweeney Holback Schuberg | 903 | Hazard Insurance Premium for | | $834.00 |
| | | | | | **Total:** | **$834.00** |

### Money In

| Ref# | Date | Name | Hud | Detail | | Amount |
|---|---|---|---|---|---|---|
| 05-733/Lender /1 | 03/23/2005 | Homeowners Loan | | | | |
| | | | 801 | Loan Origination Fee | | ($1,700.00) |
| | | | 808 | Processing Fee | | ($390.00) |
| | | | 809 | Funding Fee | | ($365.00) |
| | | | 810 | Administration Fee | | ($295.00) |
| | | | 811 | Document Preparation Fee | | ($195.00) |
| | | | 1600 | Loan Amount | | $59,200.00 |
| | | | 812 | Tax Service Fee | | ($63.00) |
| | | | | | **Total:** | **$56,192.00** |

**Hall-Frazier**
**Record - 001226**

Date Printed: Monday, March 27, 2006  11:41:40 AM

## LEDGER CARD

Order #: 05-733
Buyer/Borrower : Norman L. Langworthy, II and Stephanie G. Langworthy
Seller : Norman L.  Langworthy II
Lender Name : Homeowners Loan
Loan Number : 60036381
Property Address : 492 Norman Street, Barryton, MI  49305

## POSTED ESCROWS

| ID# | Bank Name | Account # | Address | City | State | Balance |
|-----|-----------|-----------|---------|------|-------|---------|
| tn2 | Bank of America- TN (New) | 003786809771 | | | | 0.00 |

### DEPOSITS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/23/2005 | funding wire | alisonw | 03/31/2005 | Homeowners Loan | 56,192.00 |
| **\*TOTAL DEPOSITS** | | | | | **56,192.00** |

### CHECKS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/22/2005 | 00023570v | b.cooper | 03/31/2005 | Clerk of the Court | (150.00) |
| 03/22/2005 | 00023571 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (976.25) |
| 03/22/2005 | 00023572 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (75.00) |
| 03/22/2005 | 00023573 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 03/22/2005 | 00023574 | m.jerger | 03/31/2005 | Swafford and Hays Settlement Services, Inc. | (161.25) |
| 03/22/2005 | 00023575v | alisonw | 03/31/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | (3,166.02) |
| 03/22/2005 | 00023576 | m.jerger | 04/30/2005 | Town & Country Appraisals | (280.00) |
| 03/22/2005 | 00023577 | m.jerger | 03/31/2005 | Ohio Savings Bank | (42,521.48) |
| 03/22/2005 | 00023578 | m.jerger | 04/30/2005 | Ford Motor Credit | (3,256.00) |
| 03/22/2005 | 00023579 | m.jerger | 04/30/2005 | ANBCC | (2,853.00) |
| 03/22/2005 | 00023580 | m.jerger | 04/30/2005 | Discover | (1,719.00) |
| 03/22/2005 | 00023581v | bj | 03/31/2005 | Fidelity National Insurance | (834.00) |
| 03/23/2005 | wire # 5252585 | alisonw | 03/31/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | (3,166.02) |
| 03/24/2005 | 00023873v | s.barclay | 04/30/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | (57.70) |
| 03/24/2005 | 00023874 | b.cooper | 04/30/2005 | MECOSTA COUNTY REGISTER OF DEEDS | (71.00) |
| 03/24/2005 | 00023875v | s.barclay | 04/30/2005 | MECOSTA COUNTY REGISTER OF DEEDS | (4.30) |
| 03/24/2005 | 00023876 | b.cooper | 04/30/2005 | MECOSTA COUNTY REGISTER OF DEEDS | (17.00) |
| 03/24/2005 | 00023963 | bj | 04/30/2005 | Sweeney Holback Schuberg | (834.00) |
| 04/01/2005 | 00025742v | n.grimsley | 06/30/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | (62.00) |
| 06/30/2005 | 00042319 | n.grimsley | 07/31/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | (62.00) |
| **\*TOTAL CHECKS** | | | | | **(60,466.02)** |

### VOIDS

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|------------|---------|-------|--------|
| 03/22/2005 | 00023570 | b.cooper | 03/31/2005 | Clerk of the Court | 150.00 |
| 03/22/2005 | 00023575 | alisonw | 03/31/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | 3,166.02 |
| 03/22/2005 | 00023581 | bj | 03/31/2005 | Fidelity National Insurance | 834.00 |
| 03/24/2005 | 00023873 | s.barclay | 04/30/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | 57.70 |
| 03/24/2005 | 00023875 | s.barclay | 04/30/2005 | MECOSTA COUNTY REGISTER OF DEEDS | 4.30 |
| 04/01/2005 | 00025742 | n.grimsley | 06/30/2005 | Norman L. Langworthy, II and Stephanie G. Langworthy | 62.00 |
| **\*TOTAL VOIDS** | | | | | **4,274.02** |

| **\*\*TOTALS FOR: tn2** | | | | | **0.00** |
|---|---|---|---|---|---|

**\*\*\*POSTED TOTAL**                                                                **0.00**

## PENDING ESCROWS

****TOTAL(POSTED + PENDING)                                    0.00

Hall-Frazier
Record - 001228

## LEDGER CARD

Date Printed: Tuesday, March 22, 2005  4:37:44 PM

Order #: 05-733
Buyer/Borrower : Norman L. Langworthy, II and Stephanic G. Langworthy
Seller : Norman L. Langworthy II
Lender Name : Homeowners Loan
Loan Number : 60036381
Property Address : 492 Norman Street, Barryton, MI 49305

## POSTED ESCROWS

| ID# | Bank Name | | Account # | Address | City | State | Balance |
|-----|-----------|---|-----------|---------|------|-------|---------|
| tn2 | Bank of America- TN (New) | | 003786809771 | | | | (56,192.00) |

**CHECKS**

| Date | Reference # | Updated By | Cleared | Payee | Amount |
|------|-------------|-----------|---------|-------|--------|
| 03/22/2005 | 00023570 | m.jerger | | Clerk of the Court | (150.00) |
| 03/22/2005 | 00023571 | m.jerger | | Swafford and Hays Settlement Services, Inc. | (976.25) |
| 03/22/2005 | 00023572 | m.jerger | | Swafford and Hays Settlement Services, Inc. | (75.00) |
| 03/22/2005 | 00023573 | m.jerger | | Swafford and Hays Settlement Services, Inc. | (200.00) |
| 03/22/2005 | 00023574 | m.jerger | | Swafford and Hays Settlement Services, Inc. | (161.25) |
| 03/22/2005 | 00023575 | m.jerger | | Norman L. Langworthy, II and Stephanie G. Langworthy | (3,166.02) |
| 03/22/2005 | 00023576 | m.jerger | | Town & Country Appraisals | (280.00) |
| 03/22/2005 | 00023577 | m.jerger | | Ohio Savings Bank | (42,521.48) |
| 03/22/2005 | 00023578 | m.jerger | | Ford Motor Credit | (3,256.00) |
| 03/22/2005 | 00023579 | m.jerger | | ANDCC | (2,853.00) |
| 03/22/2005 | 00023580 | m.jerger | | Discover | (1,719.00) |
| 03/22/2005 | 00023581 | m.jerger | | Fidelity National Insurance | (834.00) |
| **\*TOTAL CHECKS** | | | | | **(56,192.00)** |

| **\*\*TOTALS FOR: tn2** | **(56,192.00)** |
|---|---|

## \*\*\*POSTED TOTAL                                    (56,192.00)

## PENDING ESCROWS

**DEPOSITS**

| | | |
|---|---|---|
| | Homeowners Loan | 56,192.00 |
| **\*TOTAL PENDING DEPOSITS** | | **56,192.00** |

## \*\*\*(PENDING) TOTAL                                    56,192.00

## \*\*\*\*TOTAL(POSTED + PENDING)                        0.00

1      VIDEOTAPED DEPOSITION OF GREGORY A. SWAFFORD

2              May 19, 2008

3        IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF ALABAMA
4               SOUTHERN DIVISION

5   --------------------------------------
    CHERYL H. FRAZIER,                    )
6                                         )
         Plaintiff,            )
7                              )Case No.
    vs.                        )2:07mc3379-MHT
8                              )
    ACCREDITED HOME LENDERS, INC., d/b/a )
9   HOME FUNDS DIRECT,               )
                                   )
10         Defendant.            )
    --------------------------------------
11

12

13   APPEARANCES:

14         FOR THE PLAINTIFF:

15         EARL P. UNDERWOOD, JR., ESQ.
           (VIA TELEPHONE)
16          21 South Section Street
           Fairhope, Alabama 36532
17

18         FOR THE DEFENDANT:

19         J. DOUGLAS MINOR, ESQ.
           BRADLEY ARANT ROSE & WHITE LLP
20          188 East Capital Street, Suite 450
           Jackson, Mississippi 39215-1789
21

22   ALSO PRESENT:

23         Ernie Tracy, Videographer

24

25

2

1             I N D E X
    Examinations                    Page
2
    GREGORY A. STAFFORD
3

4   EXAMINATION BY MR. MINOR:            4
    EXAMINATION BY MR. UNDERWOOD:        80
5   CONTINUED EXAMINATION BY MR. MINOR:       119
    CONTINUED EXAMINATION BY MR. UNDERWOOD:    121
6

7             E X H I B I T S
8
    No.         Description             Page
9
    Exhibit 1 - folders labeled Exhibits 1-36    4
10   containing documents bearing Bates
    production numbers Frazier v AHL Swafford
11   0001-84.

12   Exhibit 2 - documents bearing Bates       97
    production numbers Swafford0001-183.
13
    Exhibit 3 - document entitled Amendment No.   97
14   2 Transnation Title Insurance Company Title
    Insurance Premium Charges Revised October
15   28, 2002.

16   Exhibit 4 - document entitled Re-Notice of    117
    Taking Rule 30(b)(6) Deposition.
17

18

19

20

21

22

23

24

25

1          S T I P U L A T I O N

2          The deposition of GREG SWAFFORD, called as a

3     witness at the instance of the Defendant, taken

4     pursuant to all rules applicable to the Federal Rules

5     of Civil Procedure by notice on the 19th day of May,

6     2008, at the law office of Hunton & Williams, 900 South

7     Gay Street, Suite 2000, Knoxville, Tennessee, before

8     Thomas J. Dorsey, Registered Professional Reporter and

9     Notary Public, pursuant to stipulation of counsel.

10          It being agreed that Thomas J. Dorsey,

11     Registered Professional Reporter and Notary Public, may

12     report the deposition in machine shorthand, afterwards

13     reducing the same to typewriting.

14          All objections except as to the form of the

15     questions are reserved to on or before the hearing.

16          It being further agreed that all formalities

17     as to notice, caption, certificate, transmission, et

18     cetera, including the reading of the completed

19     deposition by the witness and the signature of the

20     witness, are expressly waived.

21

22

23

24

25

1          THE VIDEOGRAPHER:  Okay.  We're on the

2     record.  You may swear the witness.

3          GREGORY A. STAFFORD,

4  having first been duly sworn, was examined and

5  testified as follows:

6  EXAMINATION BY MR. MINOR:

7          (Exhibit 1 - folders labeled Exhibits 1-36

8              containing documents bearing Bates production

9              numbers Frazier v AHL Swafford 0001-84.)

10     Q.     Mr. Swafford, my name is Doug Minor, and

11  I am counsel for Accredited Home Lenders, Inc. in a

12  lawsuit that's been filed against it by Cheryl Hall

13  Frazier.  Present on the speakerphone is Mr. Earl

14  Underwood who represents Ms. Frazier.  Also in the

15  action, Mr. Underwood has requested that he be

16  designated as the attorney for a class of individuals

17  who would be represented by Ms. Frazier in an action

18  that's been filed in the Middle District of Alabama.

19          First let me begin by saying -- by asking

20  you to give me your full name.

21     A.     Gregory Alan Swafford.

22     Q.     And, Mr. Swafford, it's correct that you

23  are not represented here by any attorney; is that

24  correct?

25     A.     That is correct.

1    Q.    Okay.  Have you been deposed before?

2    A.    I have.

3    Q.    Okay.  How many times have you been

4    deposed?

5    A.    Around four, I don't know the exact

6    number.

7    Q.    Okay.

8    A.    Probably about four.

9    Q.    Have you been deposed recently?

10    A.    I have.

11    Q.    Okay.  So you're familiar with the

12    protocol?

13    A.    I am.

14    Q.    Okay.  Well, as you know, I'm going to

15    ask you a series of questions, Mr. Underwood will

16    likely ask you a series of questions.  The questions

17    are going to go to the claims and defenses in the

18    Frazier lawsuit.  You understand that you're not a

19    defendant in the lawsuit?

20    A.    I do.

21    Q.    The questions will be designed to get

22    information that you know about our lawsuit, but none

23    of them are designed in any way to place any sort of

24    blame on you with respect to this particular lawsuit.

25    A.    Okay.

1     Q.     Because Swafford and Hays acted as the

2   settlement agent, you obviously have some information

3   about the transaction that underlies this lawsuit, and

4   that's what we're trying to get some information about

5   here today.

6     A.     Okay.

7     Q.     I have looked back through the documents

8   that Swafford and Hays has produced.  I'm going to ask

9   you about some of those documents, not all of them.  If

10   I ask you an unclear question, please let me know, I'll

11   do my best to clarify it.  If I ask you a question that

12   assumes something that is inaccurate, please let me

13   know that there is an inaccurate premise in my

14   question.

15     A.     Okay.

16     Q.     If you think of anything after we move on

17   from a particular subject that you want to incorporate

18   in a previous answer or add to it, change it, this is

19   very informal, just let me know, and when we finish

20   that particular line of questioning that we're on, we

21   can go back to that particular issue.

22         If you need to take a break, I don't

23   anticipate going all day long, so feel free to take a

24   break to stretch your legs or to use the bathroom or

25   anything of that nature.

1          Do you have any questions about the

2   process here today?

3       A.     No.

4       Q.     Okay.  Tell me, have you done anything to

5   prepare for this deposition?

6       A.     I glanced over the file.

7       Q.     Okay.  Did you meet with any attorneys?

8   And I'm not asking you about what you said, but did you

9   meet with any attorneys in preparation for this

10  deposition?

11      A.     No.

12      Q.     Does the Baker Donelson firm serve as

13  counsel for you with respect to your service here

14  today?

15      A.     Not at this time.

16      Q.     Okay.  Tell me what your address is.

17      A.     9530 Hickory Knoll Lane, Knoxville,

18  Tennessee 37931.

19      Q.     And how long have you lived there?

20      A.     Four and a half years.

21      Q.     Are you married?

22      A.     I am.

23      Q.     What's your wife's name?

24      A.     Shelly Swafford.

25      Q.     And do you have any children?

1    A.    I do.

2    Q.    And how many children do you have?

3    A.    Four.

4    Q.    Okay.  How long have you been married?

5    A.    15 years in June.

6    Q.    Okay.  What's your birth date?

7    A.    3/31/72.

8    Q.    Okay.  Now, where were you born?

9    A.    In Maryland, Prince George County.

10    Q.    Did you go to grade school in Maryland?

11    A.    I did not.  I moved to Tennessee when I

12  was four.

13    Q.    To Knoxville?

14    A.    Yeah.  Well, Oak Ridge.

15    Q.    Oak Ridge; okay.  Is that where you did

16  your grade schooling?

17    A.    Yes.

18    Q.    Did you graduate from high school there?

19    A.    Yes.

20    Q.    And what year was that?

21    A.    1990.

22    Q.    You said Oak Ridge?

23    A.    Uh-huh.

24    Q.    Is that a suburb of Knoxville?

25    A.    It is not.

1    Q.    How far from here is that?

2    A.    Probably about 20 minutes.

3    Q.    Okay.  Do you have any college?

4    A.    I do.

5    Q.    Where did you go?

6    A.    University of Tennessee.

7    Q.    And what years were you there?

8    A.    Well, from '90 through -- I think I

9  graduated in '96.

10    Q.    Okay.  What was your major?

11    A.    Majored in economics and minored in

12  accounting.

13    Q.    And did you continue your schooling or go

14  to work in '96?

15    A.    I worked through college and continued

16  after.

17    Q.    Okay.  Where were you working?

18    A.    In '96?

19    Q.    Yes.

20    A.    At Oak Ridge Associated Universities.

21    Q.    What's that?

22    A.    It's a government contractor.

23    Q.    What kind of business did it do?

24    A.    Various things.  But I was in their

25  accounting department.

1    Q.    Okay.  Just kind of give me generally

2    what their business model was.

3    A.    Well, they're a government contractor for

4    the Department of Energy.  They did stipends which they

5    did research for labs, they did research overseas,

6    things of that nature.

7    Q.    Okay.  And what was your title there?

8    A.    I was in the pay master's office.  We did

9    auditing of payrolls, the stipend payrolls, all

10   accounts payable, accounts receivable.

11   Q.    Okay.  So was it your charge to make sure

12   that the disbursements from Oak Ridge were consistent

13   with all the federal guidelines that apply to federal

14   contractors?

15   A.    Correct.

16   Q.    Did you work at Oak Ridge Associated

17   while you were in college?

18   A.    I did.

19   Q.    Okay.  Do you know when you started

20   working with them?

21   A.    When I was 17 as a stipend -- as a co-op

22   student.

23   Q.    Okay.  So you pretty much worked for them

24   from '90 through '96?

25   A.    It was about eight years, yeah.

1    Q.    Did your title change there?

2    A.    It did.

3    Q.    To what?

4    A.    I don't remember all the titles.  I was

5    assistant pay master when I left.

6    Q.    Okay.  And what year did you leave?

7    A.    I think it would either have been later

8    in '96 or '97.

9    Q.    Okay.  Did you receive any on-the-job

10    training at Oak Ridge Associated outside of your

11    schooling, formal training?

12    A.    Formal training?  Nothing that would have

13    any type of certificate or degree or anything.

14    Q.    No classes outside of the workday or

15    anything?

16    A.    No.

17    Q.    And what did you do after you left

18    Oak Ridge Associated?

19    A.    I went to work for Ameriquest Mortgage.

20    Q.    Where?

21    A.    In Knoxville.

22    Q.    And what did you do there?

23    A.    I started as a loan officer.

24    Q.    And what were your job duties there?

25    A.    As a loan officer, I was to telemarket or

1    bring in applications.

2        Q.    Primarily over the phone?

3        A.    Yes.

4        Q.    How did you find that job?

5        A.    Through the business day at UT where the

6    different companies come in and interview graduates.

7        Q.    Had you worked in any capacity in the

8    mortgage or lending industry prior to going to work at

9    Ameriquest?

10       A.    No, I had not.

11       Q.    How long did you stay at Ameriquest?

12       A.    About four or five years, I believe.

13       Q.    Did your title change there?

14       A.    It did.

15       Q.    To?

16       A.    I went from loan officer to account

17   executive.  From account executive to branch manager.

18   And from branch manager to area manager.

19       Q.    As branch manager, you were in charge of

20   a particular branch of Ameriquest?

21       A.    Yes.

22       Q.    And where was that branch?

23       A.    It was on North Peters in Knoxville.

24       Q.    And you had loan officers under you?

25       A.    I did.

1    Q.    How many?

2    A.    Typically eight, and two processors.

3    Q.    How long would you have worked as a loan

4    officer before you became the branch manager?

5    A.    I'd say a year or so.

6    Q.    Okay.

7    A.    I might be incorrect on that.  That's an

8    estimate.

9    Q.    Okay.  And you received promotion of

10    branch manager?

11    A.    I did.

12    Q.    And going from branch manager to area

13    manager was a promotion as well?

14    A.    Correct.

15    Q.    And do you know what year you became area

16    manager?

17    A.    I do not.

18    Q.    As area manager, you had multiple

19    branches under you?

20    A.    I did.

21    Q.    How many?

22    A.    Five.

23    Q.    And what geographical area was covered by

24    those branches?

25    A.    Knoxville, two in Nashville, and two in

1  Louisville, Kentucky.

2      Q.      Okay.  How long did you serve as the area

3  manager?

4      A.      I would say less than a year.

5      Q.      Okay.  Why did you quit?

6      A.      I didn't quit, they closed down several

7  branches in several states, and Tennessee and Kentucky

8  were two of the states they stopped doing business in.

9      Q.      I'm sorry, I may have already asked you

10  this.  What year was this that you stopped serving as

11  area manager?

12      A.      It would have been in early 2000 or late

13  '99.  But I think it was early 2000.

14      Q.      Okay.  Did you have any ownership

15  interest in Ameriquest when you were there?

16      A.      I did not.

17      Q.      Did you have any ownership interest in

18  Oak Ridge Associated while you were there?

19      A.      I did not.

20      Q.      Had you started any businesses prior to

21  leaving Ameriquest?

22      A.      No.

23      Q.      Did you own any business as an LLC or

24  sole proprietorship prior to that time?

25      A.      No.

1     Q.     Tell me what you did after you left

2   Ameriquest Mortgage.

3     A.     I worked for a title company called Title

4   Specialists out of Alabama for a short period of time,

5   or Title Services, excuse me.

6     Q.     What city in Alabama?

7     A.     Birmingham.

8     Q.     Did you move to Birmingham?

9     A.     No, I actually worked in Knoxville.

10     Q.     And what did you do for Title Services?

11     A.     I was hired as their operations manager

12   to try to clean up improper processes that were in

13   place, try to get it back in line.

14     Q.     Did you do that?

15     A.     I was not able to, no.

16     Q.     And why is that?

17     A.     They were so far behind on bank

18   reconciliations and things were in such disarray, there

19   was no possible way to clean it up.

20     Q.     Okay.  When did you leave there?

21     A.     In either November or December of --

22   probably November -- no, excuse me, I'm sorry.

23   Somewhere in the late 2000.

24     Q.     Okay.  And where did you go?

25     A.     That's when I started Swafford

1 Settlement -- or Swafford and Hays Settlement Services.

2     Q.    And tell me how you made the decision to

3 start Swafford and Hays?

4     A.    Well, basically I met my partner, which

5 was Gary Hays, he also, he was a marketer at Title

6 Services.  And I guess I was -- he mentioned it to me

7 and I liked the idea, and so I went with it.

8     Q.    He mentioned to you that he thought that

9 there was a need for a settlement agency in this area?

10     A.    Right.  He thought that we could do a

11 good job with starting our own.

12     Q.    Had he worked at a settlement agent or

13 worked as a settlement agent at any time prior to

14 starting a business?

15     A.    I don't believe he had ever been a

16 settlement agent, but he had worked in the title

17 business for a while as a marketer.

18     Q.    Okay.  Were you familiar with the title

19 business and the settlement agent business prior to

20 starting Swafford and Hays?

21     A.    Just through my knowledge of it as being

22 in the mortgage business.

23     Q.    Okay.  What was the -- well, let me first

24 make sure we're clear on our terminology.  When I say

25 "settlement agent," are you kind of viewing that as

1    part and parcel of title agent?

2       A.    I am.

3       Q.    Okay.  Who served as the settlement agent

4    or title agent for Ameriquest when you were the branch

5    manager and loan -- and area manager there?

6       A.    We used different title companies in

7    Knoxville.

8       Q.    Okay.  Do you remember the names of any

9    of them?

10       A.    I think Title Enterprises was one of the

11    primary ones.

12       Q.    Did you have a familiarity with their

13    operations in your capacity as branch manager and area

14    manager?

15       A.    I did, because we closed our own loans

16    and processed our own loans once we got the title work.

17       Q.    I'm sorry, say that again?

18       A.    Well, meaning that I understood -- I had

19    that knowledge from the capacity that we did not ask

20    them to be a full service title company.  Once they

21    produced the title commitment, we cleaned up any

22    outstanding liens on the title commitment, got payoffs

23    from them, closed the actual loan closing, funded the

24    loan, et cetera.

25       Q.    Okay.  So what you're saying is you

1    actually or Ameriquest under your supervision actually

2    did some of the duties traditionally performed by a

3    settlement agent?

4        A.    Yes.

5        Q.    What was the breakdown in ownership

6    between Mr. Hays and you?

7        A.    I believe at the time we were 30 percent

8    and 30 percent.

9        Q.    And who owned the other 40?

10       A.    James Swafford owned 20 percent, and

11   there were two individuals that I cannot even recall

12   their name, it was relatives of Gary's that owned 10

13   percent and 10 percent.

14       Q.    And what's James Swafford's relationship

15   to you?

16       A.    It's my father.

17       Q.    Okay.  Did Mr. Hays' relatives or James

18   Swafford have any connection to the business other than

19   funding it?

20       A.    No.

21       Q.    Do you remember what the total amount of

22   money that was put forward to fund Swafford and Hays

23   was?

24       A.    It's -- I think it was 40,000.

25       Q.    Okay.  And it was funded by the

1  individuals you just mentioned based on the percentages

2  you just gave me?

3     A.    Correct.

4     Q.    What did you do when you funded it?  Tell

5  me what you purchased, where you were located, what

6  employees if any you hired.

7     A.    We started out with Gary as the marketer

8  and myself and another employee that we hired an

9  operations manager or branch manager.  So there was

10  just the three of us in the beginning.  And we worked

11  off of South Peters.  We rented the space.  We

12  purchased computers, printers, things of that nature,

13  and some office furniture and rented some office

14  furniture.

15     Q.    What did you do to advertise your new

16  business?

17     A.    Strictly marketing, word of mouth through

18  Gary.

19     Q.    And was he marketing to lenders?

20     A.    He was.  Well, either lenders or brokers

21  that funded their own loans, so they were lenders or

22  brokers who referred loans out to lenders.

23     Q.    Okay.  Did you do any -- I guess you

24  didn't do any business with Ameriquest because they

25  were no longer here?

1    A.    Correct.  At that time.

2    Q.    Leading up until the formation of

3    Swafford and Hays, had you taken any classes, received

4    any certifications?  I'm just talking about from the

5    moment you graduated from Tennessee forward.

6    A.    I took classes, but nothing through

7    universities and nothing that received certifications.

8    Q.    Okay.  Well, just tell me generally what

9    kind of classes.

10   A.    I don't remember exactly what they were,

11   but I know when I worked for Ameriquest, we were

12   constantly being told to take different training

13   courses, but ones that they offered.

14   Q.    Okay.

15   A.    And, of course, I later became a title

16   agent myself.

17   Q.    And when did you do that?

18   A.    It's been a few years.  I don't remember

19   the exact year.

20   Q.    Do you think it would have been shortly

21   after the formation of Swafford and Hays?

22   A.    No.  It was at least probably three years

23   later if not four.

24   Q.    Okay.  Would you consider yourself

25   familiar with the provisions of TILA and RESPA?

1      A.     I'm sorry, repeat the question.

2      Q.     Would you consider yourself to be

3    familiar with the provisions of TILA and RESPA?

4      A.     Some, yes.

5      Q.     And would you have gained the knowledge

6    that you have in your capacity as branch manager and

7    area manager and loan officer at Ameriquest?

8      A.     Some, yes.

9      Q.     Okay.  Have you ever taken any classes

10   involving any of those federal statutes?

11     A.     Nothing formal, no.

12     Q.     And did you study them when you were in

13   school?

14     A.     No, I did not.

15     Q.     If someone were to ask you in 2000 what

16   Swafford and Hays did, how would you have answered that

17   question?

18     A.     We were a full service title company.  We

19   take the application from title from inception all the

20   way through the final policy.

21     Q.     Is Swafford and Hays still in existence?

22     A.     They -- Swafford Settlement Services is

23   in existence, which is the same company.

24     Q.     Did you buy Mr. Hays out?

25     A.     We did.

1    Q.    And when was that?

2    A.    I believe it was late 2003.

3    Q.    Okay.

4    A.    Or early 2003.

5    Q.    You said "we," was that you and your

6    father?

7    A.    Yes.

8    Q.    Okay.  At its peak, how many employees

9    did Swafford and Hays have?

10   A.    I believe the highest number was 65.

11   Q.    And how many employees does it have now?

12   A.    Three.

13   Q.    Okay.  Did it have any offices outside of

14   Knoxville at any time?

15   A.    There are some states that were licensed

16   and that required a physical address, but we are not

17   physically located there.

18   Q.    Okay.  Do you know how many states you

19   were licensed in at the height?

20   A.    I don't believe we ever topped the upper

21   20s.

22   Q.    Okay.  And when you say licensing, do you

23   mean registering to do business with like a Secretary

24   of State?

25   A.    Correct.

1    Q.    Did you have any additional licensure

2    responsibilities?

3    A.    I'm sorry?

4    Q.    I mean, do settlement agents have to

5    register with any other entity other than a Secretary

6    of State in a state?

7    A.    It varies per statement.  Typically not,

8    but it does vary per state.  And the requirements vary.

9    Some have, you have to be appointed by the underwriter,

10    some you have to register as the agent and agency, some

11    just the agency.  It varies.

12    Q.    And were you licensed to do business in

13    Alabama in 2005?

14    A.    Yes.

15    Q.    Would you say you were licensed to do

16    business in Alabama for the majority of the time that

17    Swafford's been in existence?

18    A.    Yes.  Oh, well, I say "yes," I don't know

19    when the actual beginning date was.

20    Q.    Okay.  Did you do a lot of business in

21    Alabama?

22    A.    I don't know the ratios.  I know we did

23    quite a few, yes.

24    Q.    Would you be able to estimate for me how

25    many different lenders you served as a settlement agent

1  for?

2      A.    Oh, wow.  Probably not.  I was more

3  familiar at the time with the brokers than I was the

4  actual lenders, but I don't know.  I would say ten to

5  20, somewhere in that range probably.

6      Q.    Was there a particular broker or lender

7  that was a substantial portion of your business?

8      A.    Yes.

9      Q.    And who was that?

10     A.    Homeowners Loan.

11     Q.    Homeowners Loan?

12     A.    Uh-huh.

13     Q.    And where are they based out of?

14     A.    They were based out of Atlanta, Georgia.

15     Q.    Okay.  Did you have a legal agreement

16  with them?

17     A.    I did not.

18     Q.    Was it common for you not to have a legal

19  agreement with the lenders and mortgage brokers that

20  you did business with?

21     A.    That is correct.

22     Q.    You were able to agree on what

23  responsibilities you were to carry out orally with

24  them?

25     A.    Correct.

1      Q.      Did you regularly call on these lenders?

2   Did you make visits to their office for purposes of

3   marketing?

4      A.      Not myself personally, but, yes, our

5   company did.

6      Q.      Okay.  Did you have someone who was

7   charged to do that on a regular basis?

8      A.      Yes.

9      Q.      Did that person in the course of those

10   visits play a role in ensuring that you were doing what

11   these lenders and brokers wanted you to do?

12      A.      As far as if there was any concerns, they

13   brought them to their attention, yes.

14      Q.      The things that you did, were they pretty

15   standard across lenders and brokers?

16      A.      Yes.

17      Q.      Okay.  So if someone called you up and

18   asked you to perform a particular -- to be settlement

19   agent on a particular loan, I guess, I take it that

20   you're telling me a written agreement would not be

21   necessary because you would understand that everyone in

22   the industry would understand what it is you were to

23   do?

24      A.      Well, the primary reason for not having a

25   written agreement is most brokers and lenders do not

1    want to be obligated to use one title company, or if

2    they're not happy with your service, they want to be

3    able to use other title companies.  So there's --

4    contracts where they're locked into using you as a

5    title company are not that common in our industry.

6        Q.    Got you.

7            I asked you a question a moment ago about

8    any other businesses you had started up until a

9    particular time, I believe the year 2000.

10            Have you started any other businesses

11   since then?

12       A.    No.  We have the Swafford Settlement

13   Services, and we have Swafford Title Services which is

14   still basically the same company, but you have to have

15   an individual entity name for the State of Alabama.

16       Q.    Okay.  And does that sort of separate

17   company have any additional employees?

18       A.    No.

19       Q.    Does it have a physical office in

20   Alabama?

21       A.    It has a physical address with a

22   registered agent, I believe, yes.

23       Q.    Okay.  And I'm not trying to tie you to a

24   particular number, but as you sit here, do you have any

25   understanding of what percentage of your business was

1  through Home Funds Direct around the period of 2005?

2     A.     I don't know any percentages.  I know

3  that they were next to Homeowners one of our good --

4  one of our primary brokers.

5     Q.     Do you know about how many states you

6  would have worked for Home Funds in?

7     A.     No.  Because it would have depended on

8  whenever their fliers went out, what states they were

9  going to telemarket or market that at that time.

10  Because that's typically how we came to go in other

11  states.  When one of our brokers or lenders was going

12  to start doing business in another state, a lot of

13  times they would ask us if we were willing to get

14  licensed in that state so we could be their title

15  company.

16     Q.     Did you ever have any individual dealings

17  with anyone at Home Funds Direct?

18     A.     Me personally?

19     Q.     Yes.

20     A.     I'm sure I may have, I don't remember the

21  names or anything.

22     Q.     Okay.  If you did, in what capacity would

23  you have done it?  Would it have been in marketing or a

24  direct responsibility for a particular loan?

25     A.     Typically if I had any contact myself

1  with a broker or lender, it was over anything that they

2  would post closing or they go to apartments or what

3  have you, would want to make sure what we were doing

4  for them.

5      Q.     Do you ever recall any loans that Home

6  Funds Direct expressed disapproval of your company's

7  tasks with respect to that loan?

8      A.     Not offhand, no.

9      Q.     Was there a person at Swafford and Hays

10  that was assigned as a point person for Home Funds

11  Direct, someone who dealt with Home Funds calls?

12      A.     At our largest, we had particular

13  individuals in the offices that were -- or office that

14  was key contacts for different brokers and lenders, but

15  I don't know who would have been Home Funds.

16      Q.     Okay.  You had an employee named is it

17  Jane Carcello?

18      A.     Janey Carcello.

19      Q.     What was her job duty?

20      A.     I believe -- I know that she was in post

21  closing at one point.  I don't know if she worked at

22  any other departments.

23      Q.     Okay.  Have you had an opportunity at any

24  time to review the Swafford file for the Cheryl Frazier

25  loan?

1    A.    I have, yes.

2    Q.    Do you recall who at Swafford was

3  responsible for facilitating that loan at Swafford?

4    A.    No.

5    Q.    How many people would typically carry out

6  all the responsibilities inherent in being a settlement

7  agent at Swafford?

8    A.    It would be numerous.  Because there was

9  numerous departments and numerous people in each

10  department.

11    Q.    The method that you were paid as

12  settlement agent, was that standard across the brokers

13  and lenders that you dealt with?

14    A.    Yes.

15    Q.    And how were you paid?

16    A.    We were paid off of the HUD settlement

17  statement.  Is that what you mean?

18    Q.    Well, I guess that's kind of a broad

19  question.

20        The HUD settlement statement that you

21  just referenced has a line on it that says, is it

22  settlement agent fee?

23    A.    I believe so.

24    Q.    Just a moment, I'll see if I can find it.

25    A.    Fees and services or something to that

1    nature.

2         MR. UNDERWOOD:  Doug, I think it's 131

3    and 132.

4         MR. MINOR:  Okay.  Yeah, I see it here.

5    131, 132.

6         Earl, it is also Exhibit 16 on my list

7    beginning Bates number page 68.  That's the

8    version that came from Swafford.

9         MR. UNDERWOOD:  Okay.

10   BY MR. MINOR:

11   Q.    This is a document that will be marked as

12   Exhibit 16.  And I'm showing the witness Bates numbered

13   pages Frazier versus AHL Swafford 0068 to 0069.

14   A.    Okay.

15   Q.    And can you tell me, point to me the line

16   that shows how Swafford was paid?

17   A.    There are multiple lines.

18   Q.    Okay.  For purposes of this question, I

19   want to focus on -- let me ask it this way.

20   A.    Okay.

21   Q.    You both received payment directly and

22   you also received fees for particular tasks that you

23   performed, correct?

24   A.    I'm sorry, ask the question again.

25   Q.    Let me see this.

1     A.     It's the first part that I missed.

2     Q.     Okay.  All right.  I'm going to ask it

3   this way:  Line 1101 on the settlement statement, tell

4   me what that is.

5     A.     1101 says, "settlement or closing fee to

6   Swafford and Hays Settlement Services."

7     Q.     Okay.  And what is that fee?

8     A.     That would have been for us facilitating

9   the closing.  It would have been for the notary to go

10   out and do the closing.  And anything involved

11   basically in the closing.

12     Q.     Okay.  So is that -- that was

13   compensation that was paid directly to Swafford for the

14   tasks that Swafford completed?

15     A.     Correct.

16     Q.     Okay.  I'm going to get to some of the

17   other fees in a second.

18     A.     Okay.

19     Q.     Has Swafford ever had any investigations

20   against it by any state licensing entities, attorney

21   generals, secretaries of state?

22     A.     Well, we have our annual CRESPA audit

23   which the State of Virginia requires.  Besides that, I

24   don't remember anything that's ever been -- anything

25   like that, no.

1    Q.    That was an annual audit, it wasn't -- or

2    was it the result of a particular finding?

3    A.    No, that's something that they require it

4    be done.  And then, of course, our underwriters do

5    annual audits.

6    Q.    Outside of audits, were there any

7    administrative investigations or criminal

8    investigations against Swafford at any time?

9    A.    No.

10    Q.    Did you advertise in any journals or

11    trade publications?

12    A.    Not to my knowledge, no.

13    Q.    Was Swafford a member of any trade

14    associations, national organizations of settlement

15    agents?

16    A.    No.  There is -- there was something we

17    were a member of in Nashville, and I can't even

18    remember what it was now, but it was not national.  And

19    I don't believe it was for the purpose of getting any

20    future business.

21    Q.    Can you tell me who your competitors were

22    in this area, your primary competitors?

23    A.    Well, we have not really done much local

24    business, ours is usually regional.  So our largest

25    competitor was Nations Title.

1    Q.    Based in?

2    A.    I believe they're based in -- were based

3    in Baton Rouge, Louisiana, I believe.  That was one of

4    their offices.  They had offices in several locations.

5    Q.    Okay.  Did you bring any documents with

6    you today?

7    A.    I did not.

8    Q.    Outside of your attorney, have you spoken

9    to anyone about the Frazier lawsuit?

10    A.    I don't believe so, no.

11    Q.    Have you seen the complaint in the

12    Frazier lawsuit?

13    A.    I have.

14    Q.    Okay.  Was that given to you by your

15    attorney?

16    A.    I don't remember how I got it.  I

17    think -- I don't remember how I got it.

18    Q.    Have you looked at it recently?

19    A.    No.

20    Q.    Do you know whether you looked at the

21    amended complaint that was recently filed in the case

22    just in the last couple weeks?

23    A.    No, I don't know that.

24    Q.    You don't know if that's the one that you

25    saw?

1    A.    Right.

2    Q.    Have you ever met Mr. Underwood?

3    A.    I have.

4    Q.    Has he deposed you before?

5    A.    He has.

6    Q.    Would that have been in a case entitled

7    Dempsey?  Was the plaintiff Dempsey?

8    A.    I don't know which case it would have

9    been.

10    Q.    Has he deposed you more than once?

11    A.    I believe so, yes.

12    Q.    Okay.  The four depositions that I

13    believe you told me you had participated in, were they

14    all relating to lawsuits against Swafford and Hays?  I

15    want to separate out any personal.

16    A.    Right.  No, they were not.

17    Q.    They were not all related to that?

18    A.    No.

19    Q.    Some of them have to do with a car

20    accident or --

21    A.    Yeah, I had a personal, it was a car

22    accident.

23    Q.    Okay.  So you've been deposed three times

24    involving Swafford and Hays actions and various loans?

25    A.    Right.  Three or four.  I don't remember,

1    I think it's three.

2    Q.    Did Mr. Underwood depose you each time?

3    A.    No.

4    Q.    Okay.  Do you recall what other attorneys

5    deposed you?

6    A.    No, I do not.

7    Q.    Did all the depositions take place in

8    Knoxville?

9    A.    No.

10    Q.    Where were the other depositions taken?

11    A.    Somewhere in Alabama.  And one was in

12    Mississippi.

13    Q.    Have you reviewed your transcripts from

14    those, from those depositions?

15    A.    I did when I was having to sign off on

16    them.

17    Q.    Okay.  And you would have reviewed each

18    one of them?

19    A.    Yes.

20    Q.    Were you represented by counsel at those

21    depositions?

22    A.    I was.

23    Q.    And was that counsel the Baker Donelson

24    firm?

25    A.    Yes.

1    Q.    And was it Ms. Borden or Ms. Floyd that

2  was there?

3    A.    Not in all cases.

4    Q.    Okay.  Do you remember which Baker

5  Donelson attorneys were at which depositions?

6    A.    Eric Hospodore was at one in Mississippi.

7  Lisa Borden was at one, I believe, or two, I don't

8  remember.

9    Q.    Have all those actions been resolved?

10    A.    Most of them.

11    Q.    But not all?

12    A.    No.  Not a final, no.

13    Q.    Do you know when you first started doing

14  work with Home Funds Direct?

15    A.    I do not.

16    Q.    Do you know when you last did work with

17  Home Funds Direct?

18    A.    Not exactly.  I would guess it would have

19  been 2 -- I don't know, I'm sorry.

20    Q.    Okay.  Did Home Funds ever ask you to

21  deviate from your normal standard with respect to your

22  responsibilities and duties as a settlement agent?

23    A.    Not me personally.

24    Q.    Do you know if they ever asked anyone at

25  Swafford and Hays to do so?

1    A.    No, I don't.

2    Q.    Did you have any personal involvement

3  with the Frazier loan?

4    A.    I don't believe so.

5    Q.    You were telling me earlier the rationale

6  for brokers or lenders not entering into settlement

7  agreements with settlement agents.  Have you ever

8  entered into an agreement with such a lender or broker?

9    A.    Not a written agreement.

10    Q.    Were you ever asked to enter into one?

11    A.    By a --

12    Q.    By a broker or lender.

13    A.    For guaranteed business, you mean?

14    Q.    Or just to set out exactly what each

15  side's duties and responsibilities were?

16    A.    Yes.

17    Q.    And you refused to do so?

18    A.    No.  We have done that before.

19    Q.    Okay.  Yeah, putting aside the guaranteed

20  business component --

21    A.    Right.

22    Q.    -- was Swafford ever party to an

23  agreement with a broker or lender which delineated

24  terms such as compensation?

25    A.    What they expect.

1    Q.    And what they expected, yes.

2    A.    I don't believe compens -- and

3    compensation, but what they expected, yes.

4    Q.    And what broker or lenders can you

5    remember doing so with?

6    A.    Homeowners Loan.

7    Q.    Okay.  Was that a long agreement?

8    A.    I don't remember how lengthy it was.

9    Q.    Were you a signatory to the agreement?

10    A.    I believe so.

11    Q.    Did you have counsel advise you with

12    respect to the terms of that agreement, whether to sign

13    it, et cetera?

14    A.    I don't think so.

15    Q.    Okay.  Did you require -- I asked you

16    about training that you've had, classes, et cetera.

17    Did you require that the employees of Swafford and Hays

18    attend any classes or obtain any certifications?

19    A.    We did have -- nothing for the

20    certifications, no.  We did have some classes, yes.

21    Q.    And where were those classes?

22    A.    We had some that were in our office.  We

23    had some that were offered by our underwriter, I

24    believe they were in Nashville.  And there may have

25    been a couple in Atlanta.

1     Q.     Okay.  What can you recall being the

2     subjects of those classes?

3     A.     I don't remember all the subjects.  I

4     know that the ones with the underwriters I believe

5     bankruptcy, some things of that nature were in one or

6     two of them, but I don't remember all the different

7     subjects.

8     Q.     Okay.  Do you recall whether any of the

9     subjects included TILA or RESPA?

10     A.     I do not.

11     Q.     Would you have any attorneys employed at

12     Swafford and Hays?

13     A.     We did at one time.

14     Q.     And who was that person?

15     A.     Holly Sayne.

16     Q.     And what were her job responsibilities?

17     A.     To review our file -- she actually had

18     anything that could be a potential claim or a claim

19     that would come in.  She also was to review various

20     processes to make sure that we were in compliance.  And

21     she also researched different state requirements to

22     make sure we were in state requirements.

23     Q.     Okay.

24          MR. MINOR:  Earl, can we take a

25     five-minute break?

1           MR. UNDERWOOD:  Yeah, sure.

2        (Recess taken.)

3           THE VIDEOGRAPHER:  We're back on the

4      record.

5           MR. MINOR:  Okay.  Are you there, Earl?

6      Ready?

7           MR. UNDERWOOD:  Yeah.  I'm ready if you

8      guys are.

9           MR. MINOR:  Okay.  Earl, I'm going to

10      hand Mr. Swafford my Exhibit 28 which begins at

11      Bates numbered page 98 and goes through 175.

12           MR. UNDERWOOD:  Okay.

13    BY MR. MINOR:

14      Q.    Okay.  Mr. Swafford, as I hand this to

15    you, I want to represent to you that it -- that the

16    first few pages are the lender's instructions, and the

17    remainder of it is a portion of the loan file.

18      A.    Okay.

19      Q.    I'd like for you to take a look at the

20    first few pages and confirm for me what those pages

21    are.

22      A.    It's the lender's instructions of what

23    they require for the loan.

24      Q.    Okay.  Was it common for Swafford and

25    Hays to receive a set of lender's instructions from a

1  broker or lender for each loan?

2      A.    From the lender, yes.

3      Q.    Okay.  The provisions of the lender's

4  instructions, were they largely standard across

5  lenders?

6      A.    Typically, yes.

7      Q.    Sitting here, can you think of any

8  significant difference between or among the

9  instructions of the various brokers and lenders you did

10  business with?

11      A.    No, I can't think of any.

12      Q.    They all pretty much asked you to fill

13  out the paperwork the way that they requested, they

14  asked you not to change any of the fees without their

15  prior consent?  Is that standard?

16      A.    Yes, it does sound like that, yes.

17      Q.    Okay.  Do you know if you've ever seen

18  this particular set of instructions before?

19      A.    I may have when I glanced through the

20  file, yes.

21      Q.    Okay.  The -- we might have different

22  numbers.  No, we don't.  The top of the Bates numbered

23  page 100.

24      A.    Uh-huh.

25      Q.    That information there for Swafford and

1  Hays and its address and telephone number, is all that

2  information accurate?

3       A.    No.  Not any longer, no.

4       Q.    Okay.  Was it accurate as of March 25,

5  2005?

6       A.    Yeah, I believe so, yes.

7       Q.    Okay.  And that James W. Swafford is your

8  father?

9       A.    I also had a James W. Swafford which was

10  my brother who was the marketer.

11      Q.    Okay.

12      A.    So it probably was his name.

13      Q.    Okay.  The fees that are listed here

14  under B beginning with origination fee, these are fees

15  that Home Funds Direct was directing you to collect and

16  indicate on the HUD-1 at the closing, correct?

17            MR. UNDERWOOD:  I'm going to object to

18       the form of that question, Doug.

19            MR. MINOR:  Okay.

20      Q.    Do you understand my question?

21      A.    Yes.

22      Q.    Can you tell me, what are the fees that

23  are listed here under B?

24      A.    Okay.  And, by the way, I was saying yes,

25  I understand the question.

1    Q.    Yes.  I'm going to try to fix Earl's

2  objection.

3    A.    Okay.  Now, what are you asking me?  I'm

4  sorry.

5    Q.    Just tell me what these fees are under

6  paragraph B.

7    A.    Just read them, is that what you mean?

8    Q.    No, tell me what -- can you characterize

9  what these fees are?

10    A.    These are lender fees.

11    Q.    And by "lender fees," these are fees that

12  are paid directly to the lender at closing?

13    A.    Correct.

14    Q.    Okay.  You receive the amount of these

15  fees from the lender?

16    A.    Unless they do a POC or they do a net

17  wire.

18    Q.    Okay.  Were either of those done in this

19  particular instance?

20    A.    I don't know.

21    Q.    Okay.  But you don't know what amount to

22  charge for these fees unless you get that information

23  from the lender, correct?

24    A.    Yes.

25        MR. UNDERWOOD:  Doug, I'm going to object

1    to the form of that question as well.  You let the

2    one before that slip by me, but if you would try

3    not to lead him so I won't have to keep doing

4    that, Doug.

5    Q.    There would be no way for you to know

6    what amounts of money to put on the HUD-1 at closing

7    except for what you receive here from the lender,

8    correct?

9        MR. UNDERWOOD:  Object to the form of

10    that question.

11        THE REPORTER:  Excuse me, I need to go

12    off the record.

13        MR. MINOR:  Okay.  Hold on just a second,

14    Earl, the court reporter needs to go off the

15    record.

16    (Recess taken.)

17        THE VIDEOGRAPHER:  We're back on the

18    record.

19    BY MR. MINOR:

20    Q.    Okay.  The document we've been looking at

21    Bates numbered page 100, paragraph B says, "The

22    following lender items have been deducted from our

23    check draft to you"; correct?

24    A.    Yes.  So that was net funded.

25    Q.    And by "net funded," you mean?

1    A.    They kept their fees when they sent the

2    money to us to disburse.

3    Q.    Okay.  And they determined those fees,

4    correct?

5    A.    Yes.

6    Q.    All right.  Now, I want to direct your

7    attention back to Exhibit 16 that we looked at earlier.

8    Keep that there because we may look back at it.

9    A.    Okay.

10    Q.    What's the Bates numbered pages at the

11    bottom there?

12    A.    68.

13    Q.    Okay.  What is the document that begins

14    at Bates numbered page 68?

15    A.    The HUD settlement statement.

16    Q.    Okay.  On the second page of the

17    settlement statement, there are several fees that are

18    listed.

19    A.    Yes.

20    Q.    It is correct, is it not, that the fees

21    listed at 1102, 1103, 1108, 1111 and 1201 are fees that

22    Swafford and Hays charge?

23        MR. UNDERWOOD:  Object to the form of

24        that question.

25    Q.    You can answer.

1       A.      Those are fees that we put on the HUD

2   settlement statement, yes.

3       Q.      Okay.  Home Funds Direct had no role in

4   calculating those fees or charging those fees, correct?

5       A.      No.

6       Q.      In fact, you communicated to Home Funds

7   the amount of those fees, "you" as in Swafford and

8   Hays?

9       A.      Yes.

10      Q.      Okay.  I want to ask you some questions

11   about each of these fees.  I want to first ask you

12   about 1101.

13              1101 was money that was paid directly to

14   Swafford and Hays for the tasks that Swafford and Hays

15   performed, correct?

16      A.      Yes.

17      Q.      Those tasks except as otherwise set forth

18   below were all performed by Swafford and Hays?

19      A.      What do you mean by "set forth"?

20      Q.      Here's what I'm trying to ask:  I know

21   that there were some tasks that you received money for

22   as set forth here that other people performed some or

23   all of the task?

24      A.      1101 would have been at one of those

25   cases that you just mentioned.

1    Q.    It would have been one of those?

2    A.    Yes.  It's for fees -- it's for acts that

3    we performed and the notary.

4    Q.    Okay.  Any other acts?

5    A.    You mean any other third parties?

6    Q.    Any other third parties, I'm sorry.

7    A.    No.

8    Q.    And what was the notary's name?

9    A.    I'll have to see if it's in this, this

10   piece of paperwork I have.  I doubt it is.  I would

11   have to see the deed of trust or something like that.

12   Q.    Okay.  Let me take a moment here to see

13   if I can find it.

14   A.    Probably the next page.

15   Q.    Diane Hilson, does that sound familiar?

16   A.    Yes.

17   Q.    Okay.  And was Diane Hilson a Swafford

18   and Hays employee?

19   A.    No, she was not.

20   Q.    She's an independent contractor?

21   A.    Yes.

22   Q.    Did she receive a set amount of money for

23   each loan that she served as notary for?

24   A.    Yes, she would have.

25   Q.    Okay.  So looking at this $275, are you

1    able to tell me how much of that that went to

2    compensate her?

3        A.    No, because I don't know what her charge

4    was.

5        Q.    Okay.  All right.  So you've told me

6    about 1101.  Now I want to ask you about 1102.  What

7    fee is represented by 1102?

8        A.    1102 is when we access Swafford perform

9    when receiving an order and the abstractor themselves

10   when they go out, which is a third party.

11       Q.    Kind of in layman's terms if you were

12   just telling this to a jury, what is done in the course

13   of this abstract and title search?

14       A.    From the time we get -- you mean what do

15   we do, or what does the whole process involve?

16       Q.    The whole process.

17       A.    We receive the order, we confirm the

18   order with the loan officer who's sent it, we put it

19   into our database.  A lot of times they'll leave the

20   county and stuff off, we have to search to find out

21   what county it is in.  Then we find an abstractor in

22   that county and send them the order.  We monitor the

23   order to make sure it comes back within 48 hours,

24   because that's what most brokers and lenders require,

25   typically brokers, rather.  And once it comes back, it

1    would have then been handed over -- it would have been

2    reviewed to make sure that everything was there, all

3    copies of deeds, mortgages, legal description that was

4    legible, judgments, things of that nature.  It then

5    would have been handed over to the commitment

6    department.  But what I just told you would entail

7    1102.

8        Q.    Okay.  And were there third parties that

9    performed some of those tasks?

10       A.    Yes.

11       Q.    Do you know who those third parties were

12   for this loan?

13       A.    I think I just saw it in the paperwork,

14   if you'd like me to -- Southern Land & Title, SLNT I

15   think is what that stood for.

16            MR. UNDERWOOD:  What page are you looking

17       at?

18       Q.    What page were you looking at?

19       A.    I'm sorry, it's 79.  And I'm looking at

20   the fax header at the bottom that just says "SL&T."

21       Q.    Oh, I see.  And what's that stand for?

22       A.    Actually, if you look at 77, it's

23   Southern Land & Title.

24       Q.    Was that a company that you frequently

25   did business with?

1    A.    I believe so.

2    Q.    Any other third parties, would there have

3  been any other third parties that performed any of the

4  tasks represented by 1102?

5    A.    I don't believe so, no.

6    Q.    Sitting here now, can you tell me whether

7  the $200 figure that is indicated for 1102 was paid in

8  full to SLT?

9    A.    I don't believe so, no.

10    Q.    Okay.  Do you know how much of it was

11  paid to SLT?

12    A.    No, I do not.

13    Q.    Okay.  But do I understand from your

14  answer that some amount less than the full $200 was

15  paid to SLT?

16    A.    Yes.

17    Q.    I'm sorry, what is the settlement at the

18  bottom of the settlement statement?

19    A.    68.

20    Q.    Are you aware that some plaintiffs have

21  made the allegation that it was improper for Swafford

22  and Hays to charge an amount of money for title search

23  and abstracting in excess of what it paid the third

24  party to perform it?

25    A.    I am now, yes.

1    Q.    From any source, have you learned how

2    much the discrepancy is between the $200 and how much

3    was paid to the third party?

4    A.    On this file?

5    Q.    Yes.

6    A.    No, I do not know.

7    Q.    Okay.  Did that fee change, or was it

8    standard, the $200?

9    A.    I believe it was standard.

10    Q.    Okay.  And when you say "standard," do

11    you mean across all Swafford and Hays, all loans for

12    which Swafford and Hays served as the settlement agent?

13    A.    Yes.

14    Q.    Okay.  All right.  I now want to ask you

15    about 1103.  Please tell me in as close to lay terms as

16    you can as though you were explaining it to people who

17    knew nothing about what you did.

18    A.    Okay.

19    Q.    What task is represented by 1103?

20    A.    Title examination would have been once

21    the abstractor sent the search back over, and like I

22    said before, once the abstracting department, our

23    abstracting department made sure that everything was in

24    the search, it would have been given to the commitment

25    department.  And the commitment department would have

1   analyzed the information that came from the courthouse

2   and put it in the form of a commitment.

3        But basically when it says "title

4   examination," that could have also included the

5   processing department that we had, meaning that once

6   the commitment went over to the broker or lender, if

7   they stated that the borrower claimed that some of the

8   judgments showing or some of the liens showing were not

9   theirs or had been satisfied prior, our processing

10  department would have cleared that up for them.  They

11  would have called and verified that, gotten releases to

12  be recorded.  If it had been released, gotten proof of

13  social security numbers if it wasn't our borrower.

14  Things of that nature.

15  Q.   Okay.  The commitment department at

16  Swafford and Hays and the processing department at

17  Swafford and Hays?

18  A.   Primarily, yes.

19  Q.   Would any third parties have been paid

20  any of that $250?

21  A.   No.

22  Q.   Okay.

23  A.   I don't believe so.

24  Q.   Give me one second.

25        Do you know how you arrived at the $200

1   figure for the -- excuse me, the $250 figure for the

2   title examination?

3       A.      Do I know how?  I believe it was a

4   standard fee.

5       Q.      And when you say "standard fee," tell me

6   what you mean.

7       A.      Fee that was typically charged for our

8   services to perform the acts I mentioned to you.

9       Q.      Okay.  So what you mean is it was

10  standard across loans?

11      A.      Correct.

12      Q.      That Swafford and Hays handled?

13      A.      Typically, I believe so.

14      Q.      Do you know who came up with that amount

15  of money to cover those particular tasks?

16      A.      Typically when we went to brokers, they

17  had standard fees that they were willing to pay title

18  companies.  And basically if we did more work than

19  that, we pretty much had to eat it.

20      Q.      Okay.  So is it your testimony that you

21  arrived at the $250 figure because you thought it was

22  the standard industry fee for title examinations?

23          MR. UNDERWOOD:  Object to form of the

24      question.

25      A.      I'm sorry, repeat the question.

1    Q.    Sure.

2        I'm trying to see if I understand from

3    your answer that the $250 was your understanding of

4    what the standard fee for title examination fees were.

5        MR. UNDERWOOD:  The same objection.

6    A.    Yes.

7    Q.    Would you have had exposure to the fee

8    for that work in your capacities at Ameriquest?

9    A.    Yes.  But, like I said, we did a lot of

10   the work ourselves, so the title companies would not

11   have charged as much.

12   Q.    Okay.  And I just want to make sure I'm

13   clear.  I may have asked you this before.  But none of

14   that money was paid to anyone, to any entity outside of

15   Swafford and Hays?

16   A.    For title examination?

17   Q.    Yes.

18   A.    No, I don't believe so.

19   Q.    Okay.  I want to direct your attention to

20   line 1108.  And as before, tell me what fee is

21   represented there.

22   A.    It would be an insurance -- excuse me,

23   insurance premium for the lender's coverage.  Sorry.

24   Q.    And what's that?  What's an insurance

25   premium for the lender's coverage as though you're

55

1  explaining it to a layperson?

2      A.    Oh.  It's the -- well, we charge for the

3  commitment or the final policy.  And, you know, I

4  mentioned we issue a commitment.  A commitment tells

5  the lender what they have to do to be insured.  Once

6  the loan closes, if they've met those requirements,

7  then we issue a policy which is ensuring the lender

8  that they're in first lien position or whatever lien

9  position they've asked for.  And that's the insurance.

10      Q.    And did you have a relationship with a

11  particular insurance company?

12      A.    We've had a relationship with more than

13  one, yes.  On this one, it says "Transnation" which...

14      Q.    I want to direct your attention to --

15          MR. MINOR:  Earl?

16          MR. UNDERWOOD:  Yes.

17          MR. MINOR:  In my documents, it's

18      Exhibit 30 and 31, they're separated, but

19      Exhibit 30 Bates numbered 177 is the first page,

20      and then the remainder of the document picks up at

21      Exhibit 31 and page 178.

22          MR. UNDERWOOD:  Okay.

23  BY MR. MINOR:

24      Q.    Would you please look at that and tell me

25  what that is?

1      A.      It's the agreement between the

2  underwriter and Swafford and Hays Settlement Services.

3      Q.      Okay.  So is this the agreement that

4  would govern the title insurance that was provided

5  pursuant to line 1108?

6      A.      Yes.

7      Q.      You can put that back in there just to

8  keep up with it.

9      A.      Oh, okay.

10      Q.      The fee listed there for title insurance

11  on Bates numbered page 69 --

12      A.      Okay.

13      Q.      -- is $200?

14      A.      The fee listed there is $200, yes.

15      Q.      Yes.

16          MR. MINOR:  Can we go off the record for

17  a second?

18          THE VIDEOGRAPHER:  Sure.

19        (Discussion off the record.)

20          THE VIDEOGRAPHER:  All right.  We're back

21  on the record.

22  BY MR. MINOR:

23      Q.      Mr. Swafford, how is that $200 figure

24  arrived at?

25      A.      We have charts that we use.

1     Q.     And where do you get those charts from?

2     A.     The underwriter.

3     Q.     And is that a chart that takes the loan

4  amount and applies some sort of percentage and arrives

5  at the premium?

6     A.     Correct.

7     Q.     Okay.  Would that chart be with the

8  agreement that we just looked at?

9     A.     No, it would not.

10     Q.     Okay.  Is that chart not something that

11  would be made a part of an individual borrower's file?

12     A.     No.  In fact, I believe that with this

13  underwriter, it's on line, it was something that our

14  closing department had to log into and get it through

15  the computer.

16     Q.     Okay.  Did Swafford and Hays add any

17  amount of money to the figure that was represented from

18  the chart that you just told me about?

19     A.     I don't know.  I don't believe so.  I

20  don't know.

21     Q.     Okay.  But you would know if there was

22  any sort of standard practice to add a set amount of

23  money to that premium?

24     A.     Right, right.

25     Q.     And, to your knowledge, was there?

1      A.      On this file, I don't believe so, no.

2      Q.      No, I don't mean on this file, I just

3    mean in general.

4      A.      No.  We don't have that practice.

5      Q.      Okay.  And the premium that -- would you

6    receive a premium from the sale of this particular

7    policy -- excuse me, would you receive a commission

8    from the sale of a policy like this?

9      A.      We received a percentage, yes.

10      Q.      Okay.  And that would be from the $200,

11    correct, not added to the $200?

12      A.      That is correct.

13      Q.      Okay.  So the borrower would pay $200,

14    that premium was remitted to the title insurer, and

15    then your commission came subsequent to that from the

16    title insurer?

17      A.      No, we typically keep our percentage and

18    remit their portion to them.

19      Q.      Okay.  So some amount of money less than

20    $200 would go to the title insurer because you would

21    retain your commission?

22      A.      That is correct.

23      Q.      Would your commission be reflected on the

24    chart that you just told me about?

25      A.      Would my commission be -- no.

1    Q.    Okay.  The premium that you were to

2    charge would be reflected on the chart, but not your

3    commission?

4    A.    Correct.

5    Q.    So how would you know how much of a

6    commission to retain from what you remitted to the

7    insurer?

8    A.    Based upon my agreement with the insurer.

9    Q.    Okay.  And that would be a standard

10    percentage, or was it a set amount of money?

11    A.    A standard percentage.

12    Q.    Okay.  Do you recall what it would have

13    been for Transnation at this time in 2005?

14    A.    Different states could vary, but I

15    believe in Alabama, it was 30 percent.

16    Q.    Okay.  So you would have retained about

17    $60, and $140 would have been remitted to the title

18    insurer?

19    A.    No, the 30 percent would have been to the

20    title insurer, I believe.

21    Q.    Oh, okay.

22    A.    I can look at the agreement and tell you

23    in a minute if you want me to.

24    Q.    Yes, please do.

25    A.    Okay.  Do you want me to tell you the

1    page?

2        Q.    Yes.

3        A.    Page 184 says that the agent shall retain

4    70 percent of the states that were listed unless

5    otherwise specifically shown, and Alabama doesn't show

6    anything different.

7        Q.    Okay.  Do you know whether the premium

8    rates for title insurance were set by the Alabama

9    Department of Insurance?

10        A.    Versus the underwriter -- versus the

11    insurer selecting them and then filing them with it?

12    Is that what you mean?

13        Q.    Yeah.  Let me rephrase that question.

14            Is it your understanding that the title

15    insurer had to receive permission from a state

16    insurance department such as the Alabama Department of

17    Insurance to charge a particular premium?

18        A.    Yes.

19        Q.    Okay.  Did you rely on the title insurer

20    to reflect the approved premium rate in its chart

21    submitted to you, or did you go back and verify that

22    rate was in fact approved by the Alabama Department of

23    Insurance?

24        A.    I relied upon --

25            MR. UNDERWOOD:  Object to the form of the

1     question.

2     A.     We relied upon the underwriter.

3     Q.     Was that a standard practice for you to

4     do that, to rely on the underwriter to indicate rates

5     that had been approved by the state regulatory bodies?

6     A.     Yes.

7     Q.     Have you learned from any source that any

8     of the title insurance premiums that you charged the

9     borrowers you serviced were not approved by a state

10    insurance department?

11    A.     You mean did we use incorrect amounts at

12    times, or --

13    Q.     Have you learned from any source that you

14    used an amount that was not approved by a state

15    Department of Insurance?

16    A.     I do know that we have at times made

17    mistakes on the amounts, yes.

18    Q.     Okay.  And what's your understanding --

19    let me rephrase the question.

20         Was it a mistake on behalf of a title

21    insurer, or a mistake on behalf of Swafford?

22    A.     I don't know if they were all just

23    Swafford or if some of them were the title insurer, I

24    don't know that.

25    Q.     Okay.  And would you characterize this as

1  being an isolated instance, or across larger groups of

2  borrowers?

3      A.    I believe it was isolated, I'm just not

4  sure.

5      Q.    I just want to understand.  Are you

6  saying that someone typed in 15 instead of 17, or are

7  you saying --

8      A.    That -- I'm sorry.

9      Q.    -- or are you saying that -- or are you

10  saying that Swafford had a policy that resulted in an

11  inaccurate charge to numerous borrowers?

12      A.    More of a clerical type error.

13      Q.    Okay.  And from what source did you learn

14  of those errors?

15      A.    I don't remember now.

16      Q.    Did Swafford do anything to correct those

17  errors?

18      A.    For future loans?

19      Q.    Or for any loan.

20      A.    Yes, I believe we did.

21      Q.    For future loans you did?

22      A.    Yes.

23      Q.    All right.  I want to take you further

24  down on page 69 going back to the HUD-1.

25              I'm sorry, but before we go off that, I

1    just want to make sure, absolutely sure, of the $200

2    for title insurance, outside of the amounts you just

3    told me you paid, that were paid as a commission and

4    the amounts that were remitted to the title insurance

5    company, no other entity received any of that money; is

6    that correct?

7        A.    That is correct.

8        Q.    Okay.  Next I want to direct you to

9    endorsements at line 1111.

10        A.    Uh-huh.  Correct.

11        Q.    Please tell me using simple terms for a

12    layperson what task was performed as represented by

13    that fee.

14        A.    The endorsement fee, there are specific

15    endorsements that are added to a policy usually

16    required by the lender, the list what they want, what

17    endorsements they want, and then there is a fee for

18    that.

19        Q.    When you say the policy, are you talking

20    about the title insurance policy?

21        A.    Yes.

22        Q.    Okay.  Are you able to look at a

23    particular loan file and determine what endorsements

24    are added?

25        A.    I might be able to.  That is not

1    something I typically do.

2        Q.    Okay.  Where would that information be

3    found?

4        A.    It could be primarily on the instructions

5    from the lender.

6        Q.    Okay.  Do you have that still in front of

7    you?

8        A.    I do.  If I can remember which one it was

9    in.

10        Q.    I think it was --

11        A.    It was this one.

12        Q.    What's the Bates numbered page here so I

13    can find it?

14        A.    100.

15        Q.    Do you see it?

16        A.    Uh-huh.

17        Q.    Okay.  Where?

18        A.    I'm sorry.

19        Q.    I'm sorry, I thought you were looking --

20        A.    No, page 101.

21        Q.    Okay.  Okay.  Where on 101?

22        A.    It would be under Title Policy

23    Requirements.

24        Q.    Uh-huh.

25        A.    I know that they would also look at the

1    deed of trust or the mortgage and see if there was any

2    riders attached.

3        Q.    Okay.  So where in the title policy

4    requirements?

5        A.    Would it state if there was -- I don't

6    know, I'll have to look through them real fast.  I

7    don't know if this was the case, but I know nine says

8    that restrictions and building lines of record provide

9    that the policy contains an endorsement covering any

10    violation, I don't know if that would have been the

11    case.  The following endorsements, number 15, if that

12    applied.

13        Q.    When you say "if that applied," what do

14    you mean?

15        A.    It says, the following endorsement must

16    be included in the mortgage policy if there's an ARM

17    with no negative amortization or if there's a condo or

18    a P.U.D. and if applicable to EPA.  I don't know if

19    this was an ARM or negative amortization or condo or

20    anything like that.

21        Q.    So I think I understand.  There was

22    someone at Swafford who would take the lender's

23    instruction and in a particular loan determine whether

24    there was anything additional that needed to be

25    included in the title insurance policy?

1     A.     That is correct.

2     Q.     Do you know who that person was?

3     A.     Not at this time, no.

4     Q.     So there would be HUD-1s for borrowers

5  that Swafford acted as settlement agent for that will

6  have no amount of money indicated in the endorsements

7  blank?

8     A.     Uh-huh.  I mean, yes.

9     Q.     Did any third party receive any of the

10  $50 that was charged for endorsements?

11     A.     The underwriter would have been, would

12  have received money.

13     Q.     And how would that have broken down?

14  Would they have received all of it?

15     A.     I believe it's based on the same

16  percentage as the insurance.

17     Q.     Okay.  Is there a language in the --

18     A.     Contract?

19     Q.     -- contract that sets out the procedure

20  for endorsements that you just described?

21     A.     I don't see one, no.

22     Q.     Okay.  So would that have been something

23  that was industry practice?

24     A.     It would have been something our

25  underwriter would have specifically told us.

1    Q.    Orally?

2    A.    Yes.  I assume so since I don't see it in

3    here.

4    Q.    Okay.  All right.  Looking back to the

5    HUD-1 statement, tell me again the page, 100?

6    A.    68.

7    Q.    68.  On 69, directing your attention to

8    the line 1201.

9    A.    Uh-huh.

10    Q.    Tell me in layman's terms what task is

11    represented by the fee that's charged there.

12    A.    The cost of us recording the mortgage

13    riders with anything that needed to be recorded at the

14    courthouse.

15    Q.    And this would be the courthouse

16    encompassing the district where the property was

17    located?

18    A.    Correct.

19    Q.    Okay.  How was that fee determined?

20    A.    I believe we had -- you know, I don't

21    know exactly how that one was determined.  I know we

22    used Ernst which is a company that's on line.

23    Q.    E-R-N-S-T?

24    A.    Uh-huh.  E-R-N-S-T, yes.  That would give

25    you up to date recorded information.  We didn't always

1   know how many pages the mortgage was going to have or

2   if there was going to be any riders included once we

3   got the package.  The HUD had to be done prior to that

4   in many cases.

5        Q.     So typically that charge at least in part

6   is tied to the number of pages in the deed?

7        A.     Yes.

8        Q.     Okay.  Do you know what else is typically

9   included in that charge?

10        A.     If there's a quitclaim deed, if there's a

11   warranty deed, any riders that are with the mortgage.

12        Q.     So are you saying that the fee would be

13   different if there was a quitclaim versus a warranty

14   deed?

15        A.     Right, which we would have known that,

16   but we don't know how many riders are going to be with

17   the mortgage.  Unfortunately the mortgages are not

18   always standard as far as how many pages they are.

19        Q.     I see.

20             Is there any other third party besides

21   Ernst that would have received a portion of the $120

22   indicated for the recording?

23        A.     Ernst would not have received that.

24        Q.     Oh, I'm sorry, I thought you said that.

25        A.     No.  That's who we used, but we don't

1    actually pay them from the HUD.

2        Q.    Okay.  So who would have received that

3    money?

4        A.    Just Swafford or the courthouse.

5        Q.    Okay.  Did you hire someone to physically

6    go to the courthouse?

7        A.    At times.  Not with every loan.  And we

8    would use UPS to ship them if we did not hire someone

9    to physically go to the courthouse.

10        Q.    Okay.  So that $120, whatever ended up

11    being the exact amount charged by the Court was paid to

12    the Court, and any remainder was money that was

13    retained by Swafford and Hays?

14        A.    On this file, yes.

15        Q.    The information you just gave me about

16    these fees, 1102, 1103, 1108, 1111 and 1201, we've just

17    gone through each and you described to me how the fee

18    was determined and who may have received a portion of

19    the money.

20            The description you just gave me, that is

21    not reduced to writing in anywhere, is it?

22        A.    No.

23        Q.    And isn't it true that because it was not

24    reduced to writing, no one at Home Funds Direct would

25    have received any document detailing the summary you

70

1    just gave me?

2        MR. UNDERWOOD:  Object to the form of

3        that question.

4    A.    That is correct.

5    Q.    Okay.  Do you have any knowledge --

6    A.    Well, let me correct that.  I don't know

7    that when we first started doing business with Home

8    Funds that they didn't ask us to put it like in e-mail

9    writing, like, you know, correspondence, but I don't

10   know of any particular document that went to them, no.

11   Q.    And you don't have any specific

12   recollection of them asking for it?

13   A.    No.

14   Q.    Do you have any knowledge of anyone at

15   Swafford and Hays providing that information to anyone

16   at Home Funds in any form?

17   A.    I do not have specific knowledge of that,

18   no.

19   Q.    Okay.  There's no way for Home Funds to

20   know what third parties Swafford may have retained to

21   perform some of the tasks referenced by these fees,

22   correct?

23        MR. UNDERWOOD:  Object to the form of

24        that question.

25   A.    Not without asking Swafford, no.

1      Q.      And it was not Swafford's practice to

2    provide any of the invoices or any of the checkstubs

3    that were paid to title insurers or SLT to the

4    particular lender involved in the transaction, was it?

5      A.      No.

6            MR. UNDERWOOD:  The same objection.

7      Q.      And it's correct that Home Funds Direct

8    never received any of the money represented by these

9    fees, correct?

10            MR. UNDERWOOD:  The same objection.

11      A.      Correct.

12      Q.      Home Funds Direct was not affiliated in

13    any way with you or Swafford and Hays Settlement

14    Services, was it?

15      A.      No.

16      Q.      And by "affiliated," I mean, it was not

17    an affiliated company, no common ownership, no

18    agreements --

19      A.      No.

20      Q.      -- that you haven't told me about?

21      A.      No.

22            MR. MINOR:  Go off the record for a

23    second.

24        (Discussion off the record.)

25        (Recess taken.)