**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHERYL HALL FRAZIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CASE NO. 1:08-cv-11-MHT** |
| **ACCREDITED HOME LENDERS, INC.,** | ) | |
| **d/b/a HOME FUNDS DIRECT** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**DEFENDANT ACCREDITED HOME LENDERS, INC.'S BRIEF**</u>
<u>**IN OPPOSITION TO CLASS CERTIFICATION**</u>

COMES NOW Defendant Accredited Home Lenders, Inc. d/b/a Home Funds Direct ("Accredited") and respectfully moves the Court to deny the Plaintiff's Motion for Class Certification or, in the alternative, to certify a class much less expansive than the class the Plaintiff seeks to represent. In support of its opposition, Accredited states as follows[1]:

**INTRODUCTION**

Plaintiff seeks to certify a class in order to pursue claims under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, ("TILA") and the Home Ownership and Equity Protection Act, 15 U.S.C. § 1639, ("HOEPA"). The Eleventh Circuit has "properly recognized the permissive rather than mandatory nature of [TILA] class actions and that the determination whether to certify a class in the Truth-in-Lending context is still to be made on a case-by-case basis, bearing in mind the traditional prerequisites found in

---

[1]  In addition to the arguments against class certification set forth herein, Accredited has filed a Motion to Strike portions of the Joint Record. In determining whether Plaintiff has met her burden of proving class certification is warranted, this Court should not consider the portions of the Joint Record which are due to be stricken.

[Rule] 23(a) and (b)."  *Shroder v. Surburban Coastal Corp.*, 729 F.2d 1371, 1377 (11th Cir. 1984) (citations omitted).   In her Motion for Class Certification and Amended Ccomplaint, Plaintiff purports to bring this class action under the authority of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  In her brief in support of class certification, Plaintiff further asserts that class certification is authorized on her rescission-related declaratory claim under Rule 23(b)(2).

In order for a class to be certified, "the Plaintiff must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004)).  Specifically, Rule 23(a) sets forth that a class may be certified only if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Further, Rule 23(b)(2) requires that, in addition to the prerequisites in 23(a) being met, the Court must find: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) requires that the Court must find: "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the

fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; (D) the difficulties likely to be encountered from management of a class action." *Id.* Finally, "the burden of proof to establish the propriety of class certification rests with the advocate of the class." *Busby*, 513 F.3d at 1322 (quoting *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003)).

Because the Plaintiff has failed to establish that a class action is appropriate, her Motion for Class Certification should not be granted. Certification should be denied because Accredited is entitled to summary judgment on all claims. In the event summary judgment is not granted, the Plaintiff's Motion should be denied for two reasons. First, the Plaintiff fails to establish the requisite typicality between her claims and those of the purported class members because the Plaintiff's claims for damages are barred by the statute of limitations, and her loan is not a "high cost" loan entitling her to additional protections under HOEPA. Second, the Plaintiff does not establish that a class action is the superior method for adjudicating the instant claims because a class action will limit the amount of damages recoverable by the class members, and individual questions pertaining to the imposition and the effect of allegedly marked-up fees predominate over questions common to the purported class.

If class certification is not denied in its entirety, the Court should limit the class definitions proposed by the Plaintiff in four distinct ways. First, if a class is certified, it should exclude borrowers seeking actual damages, because any such recovery would require individualized proof not suited for class actions. Second, any class should exclude borrowers seeking any rescission-related relief – declaratory or otherwise – because rescission claims are inappropriate for a class action due to the individual nature of the rescission remedy, and a declaratory judgment authorizing class members to seek rescission would amount to little more than an advisory opinion. Third, the class should be limited to borrowers who obtained their loans no earlier than April 25, 2007, because there is a one-year limitations period applicable to damages claims for TILA and HOEPA violations. Finally, the class should be limited to those borrowers whose loans, like the Plaintiff's loan, a) were closed by Swafford and Hays Settlement Services, using third parties Transnation Title Insurance Company and Southern Land & Title, b) were secured by collateral located in the State of Alabama, and c) are not delinquent. Accordingly, if class certification is not denied, the class definition should be limited significantly.

**I.    THE PLAINTIFF HAS FAILED TO ESTABLISH THE PREREQUISITES FOR CLASS CERTIFICATION, AND THE MOTION THEREFORE MUST BE DENIED.**

The Plaintiff has failed to meet her burden of proving that the requirements of Rule 23(a) and 23(b) are met and, accordingly, the Plaintiff's Motion for Class Certification must be dismissed in its entirety for the reasons set forth below.

      A.    <u>The Plaintiff's Motion for Class Certification should be denied as moot because Accredited is entitled to summary judgment as to all of the Plaintiff's claims.</u>

The Plaintiff's Motion for Class Certification must be denied because the Plaintiff has no claims against Accredited which can survive summary judgment. This Court has held that "granting summary judgment in favor of [the defendant] necessarily renders moot the plaintiff's request for class certification." *Curtis v. Secor Bank*, 896 F.Supp. 1115 (M.D. Ala. 1995). Accredited has previously filed a Motion for Summary Judgment and supporting brief, which it contends is due to be granted. Accordingly, in the event this Court grants Accredited's Motion for Summary Judgment, then the Court must also deny the Plaintiff's Motion for Class Certification.

    B.    <u>The Plaintiff's claims are not typical of the claims of the class, and there are not sufficient questions of law and fact common to the class.</u>

        1.    *The Plaintiff cannot meet the typicality/commonality requirement because her claims for statutory damages arising from TILA and HOEPA violations are barred by the one-year limitations period.*

The typicality element requires a class representative to "possess the same interest and suffer the same injury as the class members." *Busby*, 513 F.3d at 1322-23 (citing *Cooper v. Southern Co.,* 390 F.3d 695, 713 (11th Cir. 2004)). Thus, "[t]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* (citing *Cooper*, 390 F.3d at 713). The Plaintiff seeks to represent a class seeking monetary damages. However, the Plaintiff's claim is not typical of the putative class claims because the Plaintiff is barred from recovering any monetary damages by the statute of limitations. Specifically, TILA provides that an action for damages is to be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "Nondisclosure is not a continuing violation for purposes of the statute of limitations" and, accordingly, the statute of

limitations begins running at the time a finance transaction is entered.  *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984).

Thus, if any violation of TILA or HOEPA occurred as to the Plaintiff, which Accredited denies, it necessarily would have occurred on March 25, 2005, when Plaintiff's loan was closed.[2]  (R. 00347-00378).  Plaintiff did not file suit until September 7, 2007, almost two and a half years after the transaction and eighteen months after the limitations period had run.  Accordingly, because the Plaintiff's claim for damages is time barred and because, as will be set forth herein below, statutory damages are the only damages that may be recovered via a class action, the Plaintiff's claims are not typical of the claims of the class she seeks to represent.

> 2.  *The Plaintiff does not meet the typicality/commonality requirements because her loan is not a "high cost" loan entitling her to additional HOEPA protections.*

The Plaintiff's claims are also atypical and not common to the claims of the proposed class she seeks to represent because her loan is not a "high cost" loan entitling her to additional HOEPA protections.  Frazier attempts in her brief to demonstrate that the total points and fees charged exceed 8% of her loan amount, thus qualifying her loan as "high cost" under HOEPA.  Frazier Class Cert. Memo p. 11.  However, her calculation is incorrect on a number of levels.  Plaintiff apparently added the total amounts of the allegedly marked-up fees together ($820.00) and subtracted this amount from the disclosed amount financed ($52,417.10) to reach an actual amount financed of $51,597.10.  She then added the $820 to the points and fees already listed for a total

---

[2]   The Plaintiff has alleged a tolling of the statute of limitations.  However, such allegation in and of itself should preclude class certification.  Determining whether or not a tolling of the statute of limitations occurred would necessarily require an examination of the facts for each individual class member for whom a tolling of the statute of limitations is sought in this lawsuit.  Such an examination causes individual questions to predominate and precludes class certification.

points and fees of $4,402.90, which totals 8.489% of the actual amount financed as determined by Frazier. *Id.* This misapplication of HOEPA completely ignores the guidance provided by 12 C.F.R. § 226 as well as the Official Staff Interpretations to assist in determining whether a loan qualifies for additional HOEPA protections. The Plaintiff also ignores the fact that only the allegedly unreasonable or "marked-up" portions of certain fees should be included in the total points and fees for HOEPA purposes. *Johnson v. Know Financial Group, L.L.C.*, No. 03-378, 2004 WL 1179335 (E.D. Pa. May 26, 2004). Consideration of these provisions and case law establishes that the Plaintiff can not prove a HOEPA violation on her behalf and therefore can not represent the class she seeks to have certified.

To determine whether the points and fees associated with a loan exceed 8% of the total amount of the loan, it is first necessary to determine the total amount of the loan. The total amount of the loan equals the amount financed, determined according to 12 C.F.R. § 226.18(b), minus any cost listed in § 226.32(b)(1)(iii) and § 226.32(b)(1)(iv) that is considered points and fees under § 226.32(b)(1) and is also financed by the lender. Official Staff Interpretations Supplement I to Part 226, Section 226.32(a)(1)(ii)-1.

The amount financed is essentially the amount of credit extended to the borrower and includes the principal loan amount, plus amounts financed by the lender that are not included in the finance charge, minus any prepaid finance charge. 12 C.F.R. § 226.18(b). The principal amount of the Frazier loan is $56,000. The amounts financed that are not part of the finance charge include the following:

| Fee Description | Line from HUD-1 | Amount |
|---|---|---|
| Appraisal | 803 | 300.00 |
| Zone Determination Fee | 811 | 9.50 |
| Tax Service Fee | 812 | 66.00 |

| | | |
|---|---|---|
| Appraisal Review Fee | 813 | 250.00 |
| Hazard Insurance Premium | 903 | 1068.00 |
| Hazard Insurance (Res.) | 1001 | 356.00 |
| County Property Taxes (Res.) | 1004 | 313.25 |
| Accounting Adjustment | 1008 | -134.25 |
| Abstract/Title Search | 1102 | 200.00 |
| Title Examination | 1103 | 250.00 |
| Title Insurance | 1108 | 200.00 |
| Endorsements | 1111 | 50.00 |
| Recording Fee | 1201 | 120.00 |
| Tax Stamps | 1203 | 84.00 |
| **TOTAL** | | **$3,132.50** |

These fees are excluded from the finance charge according to regulations contained at 12 C.F.R. § 226.  The appraisal fee is not part of the finance charge, pursuant to 12 C.F.R. § 226.4(c)(7), which excludes from the finance charge "property appraisal fees" that are "bona fide and reasonable in amount."  § 226.4(c)(7)(iv).  The zone determination fee, tax service fee, and appraisal review fee are all excluded from the finance charge pursuant to § 226.4(c)(7), which excludes real estate transaction charges "even if the services for which the fees are imposed are performed by the creditor's employees rather than by a third party."  Official Staff Interpretations Supplement I to Part 226, Section 226.4(c)(7)-1.  Also excluded is "the cost of verifying or confirming information connected to the item."  *Id.*

The hazard insurance premium is excluded from the finance charge because it is a "premium[] for insurance against loss of or damage to property, or against liability arising out of the ownership or use of property…"  12 C.F.R. § 226.4(d)(2).  The escrowed amounts for hazard insurance and county property taxes and the accounting adjustment associated with those amounts are not included in the finance charge because they are "amounts required to be paid into escrow…[that] would not otherwise be included in the finance charge."  § 226.4(c)(7)(v).  The hazard insurance reserve would

not otherwise be included in the finance charge according to § 226.4(d)(2), and the county property taxes would not be included, because such taxes are a charge "of a type payable in a comparable cash transaction," therefore they are not considered a finance charge. § 226.4(a). The tax stamp is also excluded from the finance charge pursuant to § 226.4(e)(1), which excludes "[t]axes and fees prescribed by law … for determining the existence of or for perfecting, releasing, or satisfying a security interest." § 226.4(e)(1).

Contrary to Plaintiff's allegations, the remaining fees for abstract/title search, title examination, and title insurance, endorsements, and recording were all properly excluded from the finance charge because the charges were neither required nor retained by Accredited. TILA provides that fees charged by third party closing agents are to be excluded from the finance charge "if the creditor does not require the imposition of the charges or the services provided and does not retain the charges." 15 U.S.C.A. § 1605(a). TILA also excludes from the finance charge certain real estate related charges, so long as they are "bona fide and reasonable in amount," 12 C.F.R. § 226.4(c)(7). Accordingly, even if Plaintiff were able to prove that certain allegedly marked-up portions of the settlement charges were not bona fide or reasonable, these portions still were properly excluded from the finance charge because Accredited did not require or retain those charges. (R. 000342-000343, 001273-001274, 001605).

The prepaid finance charge includes the following:

| Fee Description | Line from HUD-1 | Amount |
|---|---|---|
| Loan Origination Fee | 801 | 1960.00 |
| Processing Fee | 808 | 500.00 |
| Underwriting Fee | 809 | 500.00 |
| Interest from Odd Days | 901 | 22.40 |
| Settlement/Closing Fee | 1101 | 275.00 |
| **TOTAL** | | **$3,257.40** |

Accordingly, the amount financed equals $56,000.00, plus $3,132.50, minus $3,257.40, or $55,875.10.  With the amount financed determined, it is then necessary to subtract any costs listed in 12 C.F.R. § 226.32(b)(1)(iii) and § 226.32(b)(1)(iv) that are considered points and fees under § 226.32(b)(1) and are also financed by the lender.  Official Staff Interpretation Supplement I to Part 226, Section 226.32(a)(1)(ii)-1.   Section 226.32(b)(1)(iii) says that all items listed in § 226.4(c)(7), except for amounts held to pay taxes in the future, are not considered points and fees so long as they are reasonable, the creditor is not compensated directly or indirectly from the charge, and no affiliate of the creditor receives the charge.  § 226.32(b)(1)(iii).  These amounts include the following:

| Fee Description | Line from HUD-1 | Amount |
|---|---|---|
| Zone Determination Fee | 811 | 9.50 |
| Tax Service Fee | 812 | 66.00 |
| Appraisal Review Fee | 813 | 250.00 |
| Endorsements | 1111 | 50.00 |
| **TOTAL** | | **$375.50** |

The total loan amount thus equals $55,875.10 minus $375.50, or $55,499.60.  Eight percent of this amount is $4,439.97.  Therefore, as long as the total points and fees do not exceed $4,439.97, the Frazier loan is not a "high cost" loan subject to HOEPA protections.  The total points and fees are determined according to § 226.32(b)(1) and include the following:

| Fee Description | Line from HUD-1 | Amount |
|---|---|---|
| Settlement/Closing Fee | 1101 | 275.00 |
| Loan Origination Fee | 801 | 1960.00 |
| Processing Fee | 808 | 500.00 |
| Underwriting Fee | 809 | 500.00 |
| Endorsements | 1111 | 50.00 |
| Appraisal Review Fee | 813 | 250.00 |
| Zone Determination Fee | 811 | 9.50 |

| Tax Service Fee | 812 | 66.00 |
|---|---|---|
| **TOTAL** | | **$3,610.50** |

Because the total points and fees of $3,610.50 is less than 8% of the total loan amount ($4,439.97), HOEPA protections do not apply to the Frazier loan.  In fact, even giving Frazier the benefit of every doubt in her calculation and including in the above calculations the portions of fees that she alleges were improperly excluded from the points and fees or finance charge calculations, her loan still does not amount to a "high cost" loan under HOEPA.[3]   Accordingly Frazier's claims are not typical of those potential class members who may be entitled to HOEPA protections, and there are numerous questions of fact not common to the class; therefore, class certification should be denied.

> C.    The Plaintiff does not meet the adequacy requirement of Rule 23(a) because her expectation of a greater recovery than that of class members presents an impermissible conflict of interest.

The adequacy requirement "encompasses two separate inquiries:  (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Busby*, 513 F.3d at 1323 (quoting *Valley Drug*, 350 F.3d at 1189).  TILA expressly limits the recovery in a class action to the lesser of $500,000 or one percent of the creditor's net worth.  15 U.S.C. § 1640(a)(2)(B).  In an individual action on a note secured by real property, an individual plaintiff may recover up to $2,000.  15 U.S.C. § 1640(a)(2)(A).  Thus, in a class action, the pro rata recovery available to each member of the class is typically less

---

[3] Taking as true Frazier's allegations that there were $479.50 in marked-up fees that should have been included as part of the finance charge, *see* First Amended Complaint, at ¶¶ 24-27, the amount financed that is not part of the finance charge equals $2,653.00; the prepaid finance charge equals $3,736.90; the amount financed equals $54,916.10; the § 226.32(b)(1)(iii) & (iv) amounts total $805.00; and the total loan amount equals $54,111.10.  Eight percent of this amount is $4,328.89.  The total points and fees would amount to $4,040.00, even taking Frazier's allegations as true.  Thus, her loan would still not qualify as a "high cost" loan under HOEPA.

than the potential recovery of a plaintiff who brings an individual action. A class cannot be certified where a class representative "insists on the maximum statutory recovery for himself rather than a pro rata share of any recovery to which the class might be entitled, even if he met the other prerequisites of Rule 23 Fed. R. Civ. P., for class action representation." *Hooks v. General Finance Corp.*, 652 F.2d 651 (6th Cir. 1981). Furthermore, a class representative cannot have a separate recovery apart from his or her share of the class award. *Bantolina v. Aloha Motors, Inc.,* 419 F.Supp. 1116, 1121 (D. Hi. 1976) ("Where Congress could have easily provided for separate statutory recovery for class representatives but failed to do so, this Court will not so easily engage in judicial legislation. . . a fair and reasonable exercise of discretion mandates that the named plaintiffs share in a class award if any is obtained.); *Brame v. Ray Bills Finance Corp.*, 85 F.R.D. 568, 583 (N.D.N.Y. 1979) ("The Court is particularly reluctant to construe the statute in the manner suggested by plaintiffs in view of the fact that Congress has adopted another piece of consumer legislation the Fair Debt Collection Practices Act which contains a class action provision expressly allowing a separate recovery for named plaintiffs."); *McCoy v. Salem Mortg. Co.*, 74 F.R.D. 8, 11 (E.D. Mich. 1976) ("This Court is persuaded, however, that the statute does not support such an interpretation. In the only cases to consider the issue directly, the courts have declined to read the statute to allow the named plaintiff and intervenors to recover individual statutory damages.").

The Plaintiff initially testified that she would not be willing to take a lower recovery in a class action lawsuit than she could in an individual action in the event the statutory damages cap mandated such a result. (R. 000340). Interestingly, she changed her testimony and stated she would accept less after taking a break and presumably

discussing the matter with her counsel. (R. 000340). The Plaintiff also testified that she expects to receive a greater share of the settlement proceeds because of her status as a class representative, and this testimony was not recanted. (R. 000340). Clearly, in light of the statutory damages cap limiting the amount of recovery available to the class, the Plaintiff's testimony concerning the damages she expects to receive, and is willing to take, creates a conflict of interest between the Plaintiff and the class which should preclude her from serving as a class representative.

D.    <u>A class action is not a superior method for adjudicating the claims at issue in this lawsuit</u>.

1.    *Proceeding with this matter via a class action will severely limit the amount each individual class member could recover.*

The Plaintiff's proposed class encompasses Accredited borrowers nationwide, without regard to what settlement companies closed their loans. However, even if the class were limited only to borrowers whose loans were closed by Swafford and Hays, the settlement agent who closed the Plaintiff's loan, the proposed class would consist of approximately 1,040 members. Accordingly, if a 1,040 member class were certified, each member of the class would be limited to a recovery of approximately $480 due to the application of the cap on class action recoveries under TILA. If the court were to certify the class the Plaintiff seeks to represent, which is a nationwide class consisting of loans closed by any and all closing agents, the maximum potential recovery of each class member would be even less. On the other hand, each member could potentially recover $2,000 in individual actions. Clearly, proceeding with the class action, which would substantially limit the pro rata recovery available, is not a superior means for adjudicating this controversy. *See Stranger v. American Buyers Club, Inc.*, 445 F. Supp. 790, 793

(S.D. Ill. 1978) (holding it would be "grossly improper" to certify a class where the class action format could potentially waive 92% to 93% of the potential pro rata recovery.); *Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378, 382 (N.D. Ga. 1979) (refusing to certify class because, *inter alia*, members of purported class would recover more if they brought individual actions). Thus, the Plaintiff's motion for class certification should be denied in its entirety.

> 2. *A class action is not superior to other methods of adjudication because individual questions of law and fact predominate over any common questions at issue.*

In order to determine whether potential class members are entitled to relief under TILA, it is necessary to analyze each of the fees imposed on the borrower to decide whether that fee should have been disclosed in the finance charge and whether any failure to disclose a fee as part of the finance charge entitles the borrower to relief under TILA. While at first glance this may seem a simple task, making such a determination for each potential class member is a complicated process that will result in "mini-trials" for each individual borrower. Accordingly, this suit should not be adjudicated as a class action.

Frazier alleges in her amended complaint that the failure to disclose as finance charges certain excessive fees for title insurance, title examination, abstract/title search, recording, and endorsements amounts to a violation of TILA and entitles Frazier to rescission and statutory damages.[4] To determine the validity of Frazier's claim, it is first necessary to consider TILA's definition of finance charge. TILA provides:

---

[4]  Frazier asserts on page 12 of her brief that Swafford prepared the HUD-1 Settlement Statements. Although this is technically correct since Swafford physically produced the HUD-1 document, it should be noted that Accredited instructed Swafford regarding the information to be included on the HUD-1 Settlement Statements regarding the types and amounts of the fees which were imposed <u>by Accredited</u>. (R.001314-001315). It further should be noted that the fees at issue in this lawsuit were all fees which were imposed and set <u>by Swafford and Hays</u>.

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. The finance charge shall not include fees and amounts imposed by third party closing agents … if the creditor does not require the imposition of the charges or the services provided and does not retain the charges.

15 U.S.C. § 1605(a). Certain fees are excluded from the finance charge, if bona fide and reasonable. Those excludable fees are the following:

> (i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes.
> (ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents.
> (iii) Notary and credit report fees.
> (iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.
> (v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.
> (vi) Discounts offered to induce payment for a purchase by cash, check, or other means, as provided in section 167(b) of the Act.

12 C.F.R. § 226.4(c)(7). The cost of recording a mortgage is also excludable from the finance charge, according to § 226.4(e)(1), which provides, "[t]axes and fees prescribed by law that actually are or will be paid to public officials for determining the existence of or for perfecting, releasing, or satisfying a security interest" may be excluded. 12 C.F.R. § 226.4(e)(1). The Official Staff Interpretations to § 226.4(c)(7) provide further that "the cost of verifying or confirming information connected to the item is also excluded [from the finance charge]. For example, credit report fees cover not only the cost of the report, but also the cost of verifying information in the report." Official Staff Interpretations, Supp. I to Part 226, 12 C.F.R. § 226.4(c)(7)-1. Finally, if there is a portion of a fee that is

unreasonable, and therefore not excludable from the finance charge based on any of the foregoing considerations, then only that unreasonable portion is to be included in the finance charge. *See Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 800 (7th Cir. 2004).

Accordingly, for each allegedly excessive charge imposed by the settlement agent for each class member's loan, the court must determine the following:

- Whether the fee was required or retained by Accredited;

- Whether the fee would be charged in a comparable cash transaction;

- If the fee is listed in 12 C.F.R. § 226.4(c)(7) or § 226.4(e)(1);

- If the fee listed in § 226.4(c)(7) or (e)(1) is bona fide and reasonable;

- If portions of the fee listed in § 226.4(c)(7) are charged to cover the cost of confirming or verifying items listed in § 226.4(c)(7); and

- What, if any, portion of a fee should be included in the finance charge.

Once the determination is made regarding whether certain portions of fees were improperly excluded from the finance charge, it is then necessary for the Court to consider whether the exclusion of that charge amounts to a TILA violation for which Accredited could be held liable. TILA provides that "the disclosure of the finance charge and other disclosures affected by the finance charge" are to be treated as accurate "if the amount disclosed as the finance charge (A) does not vary from the actual finance charge by more than $100; or (B) is greater than the amount required to be disclosed under this subchapter..." 15 U.S.C. § 1605(f)(1). Furthermore, with respect to claims for rescission, the amount disclosed as the finance charge is treated as accurate if it "does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended," or "by more than an amount equal to one percent of the total amount of credit extended" for mortgages to refinance the principal then due and

finance charges that do "not provide any new consolidation or new advance" and are not "high-cost" mortgages under HOEPA.  15 U.S.C. § 1605(f).  Accordingly, it is then necessary to determine:

- The actual finance charge;

- The difference between the actual finance charge and the disclosed finance charge;

- Whether that difference exceeds $100 or whether the amount disclosed is greater than the actual finance charge for borrowers seeking statutory damages;

- One-half of one percent of the total amount of credit extended and if the finance charge disclosed varies from the actual finance charge by this amount or greater for borrowers seeking rescission; and/or

- One percent of the total amount of credit extended and if the finance charge disclosed varies from the actual finance charge by this amount or greater for borrowers seeking to rescind non-HOEPA mortgages that are a refinancing of principal then due.

Accordingly, the individual fact determinations to be made regarding the loans of each and every potential class member are numerous and complex and indeed would require the type of "mini-trials" meant to be avoided by class action litigation.  *See Reiser v. Residential Funding Corp.*, 236 F.R.D. 425, 429 (S.D. Ill. 2005).

In her Memorandum in Support of Class Certification, Frazier erroneously asserts that "all of the pertinent facts are capable of proof on a classwide basis."  Frazier Class Cert. Memo p. 32.  Further, she claims "[t]he fact of the inflated charge can be proven by reference to documents readily available.  While the type and amount of the fraudulent fees varied, the variation makes no material difference."  *Id.*[5]  To the contrary, the type

---

[5]    Frazier also cites to *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005) for the proposition that the requirements of Rule 23(b)(3) are met because class members' claims may be determined by simple arithmetic based on numbers provided on the borrower's TILA Disclosure Statement.  *See* Frazier Class Cert. Memo p. 33.  However, Frazier fails to mention that the Third Circuit made the statement about "simple arithmetic computations" specifically regarding the computation of individual

and amount of allegedly fraudulent fees, as well as the circumstances regarding their imposition, are critical to determining whether and the extent to which those fees should have been disclosed in the finance charge. Beyond this determination, it is also necessary to know the amount of each loan and whether any alleged inaccuracies or non-disclosures are protected by TILA's tolerances for accuracy established at 15 U.S.C. § 1605(f). A class action therefore is not the superior method for adjudicating the minutia of individual factual and legal issues encompassed by the claims in this case.

## II.    ALTERNATIVELY, THE DEFINITION OF THE CLASS THAT THE PLAINTIFF SEEKS TO REPRESENT SHOULD BE SUBSTANTIALLY MODIFIED.

In the event this Court does not deny the Plaintiff's motion for class certification in its entirety, this Court should substantially modify and limit any class that is certified so that it comports with the requirements of Rule 23. Such a limitation is supported by the following:

---

damages in the context of a settlement-only class action in which there would be no trial. *In re Community Bank*, 418 F.3d at 306. The court acknowledged that in the context of a settlement-only class action, it was unnecessary for the court certifying the class to consider "issues of manageability" that individual inquiries may create. *Id.* The court did find that Rule 23(b)(3) was satisfied, in spite of a few class members having distinct claims, because "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." *Id.* at 309 (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Because Frazier is not attempting to certify a settlement-only class, *Community Bank*'s Rule 23(b)(3) analysis is not applicable to this case.

Similarly, Frazier quotes *Hickey v. Great Western Mortgage Corp.*, 158 F.R.D. 603, 612 (N.D. Ill. 1994) for its proposition that "determination of whether the challenged fees were improperly included in the 'amount financed' or excluded from the 'finance charge' in individual transactions is a simple ministerial task." Frazier Class Cert. Memo p. 33. Frazier's reliance on *Hickey* is misleading, however, because the quoted statement was made by the court in response to Great Western's position that "whether the fees were included in the 'amount financed'" was one of four individual questions that predominated over any common questions of law or fact. *Hickey*, 158 F.R.D. at 612. While simple math calculations may be all that is necessary to determine what fees were or were not included in the finance charge or the amount financed for each class member's loan, such determinations hardly resolve the issue of whether TILA liability should be imposed. Accordingly, Frazier's assertion that common issues predominate over individual ones is not well-founded. Moreover, Frazier's repeated reliance on *Hickey* in support of class certification is puzzling, considering the district court decertified the class less than five months after granting Hickey's motion for class certification. *Hickey v. Great Western Mortgage Corp.*, No. 94 C 3638, 1995 WL 153372 (N.D. Ill. Apr. 16, 1995) ("The court decertified the class on March 15, 1995, finding that evidence presented by the parties differed substantially from the allegations of the complaint.")

A.    Any class certified in this matter must exclude claims for actual damages because common issues of law and fact do not predominate in such claims.

In her motion for class certification and amended complaint, the Plaintiff seeks actual damages on behalf of the proposed class. However, on page 30 of her brief in support of class certification, Plaintiff states: "No additional damages beyond statutory damages are sought in this case." To the extent Plaintiff may still be seeking actual damages, this Court should refuse to certify a class permitting the recovery of such damages. The appropriateness of actual damages "must be assessed as an individualized harm." *Peronne v. General Motors Acceptance Corp.*, 232 F.3d 433, 437 (5th Cir. 2000) (citing *Williams v. Public Finance Corp.*, 598 F.2d 349, 356 (5th Cir. 1979)); *see also McCoy*, 74 F.R.D. at 12 (". . . actual damage claims of class members must be resolved on an individual basis."). In fact, in order to recover actual damages, each individual must prove detrimental reliance, "that is a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages." *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001). Because of the required individualized determination, the "common issues of law and fact which make a class action superior for resolving issues of liability are not present in claims for actual damages." *McCoy,* 74 F.R.D. at 12; *see also Perrone,* 232 F.3d at 440 ("Since individual reliance is necessary to prove actual damages, a class action may not be certified on this issue.") (citing *Castano v. American Tobacco Co.,* 84 F.3d 734, 745 (5th Cir. 1996)); *Vickers v. Home Federal Savings & Loan Association of East Rochester*, 62 A.D.2d 1171, 1172 (N.Y.A.D. 1978) (. . . the recoverable actual damages of each individual member requires individualized proof of reliance and actual injury to so great an extent as

to be not amenable to easy calculation and, therefore, precludes the conclusion that common questions predominate as to the recovery of actual damages.") Accordingly, any class certified by this Court must necessarily exclude any actual damages claims.

        B.    <u>Claims for rescission cannot be pursued via a class action and, accordingly, any class certified by this Court must exclude such claims, whether claims for rescission or claims for declaratory relief.</u>

As with her claims for actual damages, the Plaintiff has modified her rescission claims in her brief in support of class certification. Plaintiff is no longer seeking to rescind the loans of the class, but now seeks a declaratory judgment from this Court declaring that class members are entitled to rescind. Regardless of the nature of the rescission-related claims, this Court should refuse to certify a class which includes rescission-related claims. In fact, the weight of precedent supports the position that rescission-related claims cannot be pursued via a class action.

The most recent Circuit to fully analyze the issue was the First Circuit in the case of *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418 (1st Cir. 2007). In *McKenna,* the First Circuit held that "as a matter of law, class certification is not available for rescission claims, direct or **declaratory**, under the TILA." (emphasis added). This holding was primarily based upon the First Circuit's extensive review of TILA's legislative history, in which it concluded that "Congress did not intend rescission suits to receive class-action treatment." *McKenna,* 475 F.3d at 423; *see also Nelson v. United Credit Plan, Inc.,* 77 F.R.D. 54, 58 (E.D. La. 1978) (". . .we have found no evidence of congressional intent that class treatment is appropriate in actions seeking rescission in the Truth-in-Lending context."). First, in examining the statutory cap that Congress placed upon statutory damages available in a TILA class action, the First

Circuit noted that "[i]t is nose-on-the-face plain that unrestricted class action availability for rescission claims would open the door to vast recoveries. . .considerably in excess of the cap." *McKenna,* 475 F.3d at 422-24. The Court went on to draw the logical conclusion that "[t]he notion that Congress would limit liability to $500,000 with respect to one remedy while allowing the sky to be the limit with respect to another remedy for the same violation strains credulity." *Id.; see also Gibbons v. Interbank Funding Group*, 208 F.R.D. 278, 285 (N.D. Cal. 2002) ("The court agrees with the Northern District of Illinois that 'allowing a class of plaintiffs to rescind their agreements against an individual defendant when the cost of recovery would exceed the harm done by the technical violation. . .would turn Section 1635(b) into a penal provision.'") (citing *Jefferson v. Security Pacific Financial Services, Inc.,* 161 F.R.D. 63 (N.D. Ill. 1995)).

The First Circuit continued with an extensive examination of legislative history which it found was "confirmatory evidence" of Congress' intent not to permit rescission claims to be brought via a class action. *McKenna,* 475 F.3d at 422-24. Specifically, the First Circuit focused on legislative history concerning: (1) the moratorium Congress placed on class actions after the Eleventh Circuit's "troubling" *Rodash* decision so that it could put in place "higher tolerance levels" which would keep lenders from facing "overwhelming liability"; (2) the failure of Congress to set forth any "process by which parties may sue in federal court to enforce rescission rights"; (3) the fact that "TILA already includes significant incentives for creditor compliance with its strictures, thus casting serious doubts on the need for a class-action mechanism with respect to rescission; (4) the fact that TILA provides "a powerful incentive to debtors to sue individually if a creditor refuses to honor a timely, well-founded rescission request." *Id.*

at 424-27.  Finally, in addition to the legislative history manifesting "an intent to shield residential lenders from crushing liability," the First Circuit astutely noted that Rule 23's class action analysis supports its findings in regards to the legislative history.  *Id.* at 424-26.  Specifically, in finding that individual questions predominated, the First Circuit stated that: "[t]he personal nature of the rescission remedy gives [the] legislative history a compelling quality [since] [t]he highly individualized character of this process and the range of variations that may occur render rescission largely incompatible with a sensible deployment of the class-action mechanism."  *Id.* at 424-25.

In a 1980 decision on a matter appealed from the Southern District of Alabama and which is binding precedent on this Court, the Fifth Circuit held that rescission is a "purely personal remedy" and could not be pursued via a class action.  *James v. Home Construction Co. of Mobile, Inc.*, 621 F.2d 727, 730-31 (5th Cir. 1980).  Like the First Circuit's holding in *McKenna*, the Fifth Circuit went on to conclude in *James* that "the notion of a class action in [the rescission] context would contradict what would seem to be the Congressional intent about the nature of this action."  *James*, 621 F.2d at 731.  Further, because purported class members have not submitted the required notices to rescind, the *Gibbons* court concluded that "plaintiff is effectively asking for an **advisory opinion**" and, accordingly, "it is not at all clear that a justiciable controversy exists between the class and defendants."  *Gibbons*, 208 F.R.D. at 285 (citing *Jefferson,* 161 F.R.D. at 69) (emphasis added).

Here, an advisory opinion is exactly what the Plaintiff is seeking in regards to her rescission-related claims.  It would be a waste of judicial economy and resources for this Court to consider such a request for advisory relief, which, if granted would merely be a

declaration that TILA "says what it says" in regards to rescission. No additional rights would be acquired by the class via such an order and, accordingly, this Court should deny class certification for such claims.

Additionally, even if one ignored the fact that Congress never authorized TILA rescission-related claims to be pursued via a class action in the first place, precedent set by numerous courts also establishes that such claims do not meet the requirements for class certification set forth in Rule 23 of the Federal Rules. First, individual issues predominate over issues common to the class.[6] Specifically, the Eleventh Circuit and numerous other courts have recognized that courts may impose conditions on rescission as equity dictates after an analysis of "all surrounding circumstances," including whether the plaintiff has the "ability to repay the principal amount." *Williams v. Homestake Mortgage Co.,* 968 F.2d 1137, 1142 (11th Cir. 1992); *see also Yamaoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) ("Thus, a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations. . . Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds."); *Gibbons*, 208 F.R.D. at 285 ("TILA contemplates that 'individuals must choose to assert the right to rescind, on an individual basis and within individual time frames, before filing suit.'") (citing *Jefferson,* 161

---

[6]  The Plaintiff cites to the case of *Williams v. Empire Funding Corp.*, 183 F.R.D. 428, 436 (E.D. Pa. 1998) for the proposition that TILA does not preclude the certification of a class seeking judicial declaration whether an infirmity in documents, common to all members of the class, entitles each member of the class to individually seek rescission. However, the *Williams* case is not analogous to the present case. Specifically, in *Williams*, the TILA violation alleged related to the uniform notice of right to rescind, which was the same for every class member. Contrary to the alleged uniform violation in *Williams*, the allegations in this case concern various allegedly marked up fees, which are not the same for every class member. Accordingly, the analysis of the violation in this case, as shown previously in this brief, requires extensive individualized examinations on a case-by-case basis, which were not required in *Williams*.

F.R.D. at 69); *Williams*, 968 F.2d at 1142 ('the courts, *at any time in the rescission process*, may impose equitable conditions to insure the consumer meets his obligations after the creditor has performed his obligations . . . the district court should consider . . . whether the [borrower] has the ability to repay the principal amount.") (citing S.Rep. No. 368, 96th Cong., 2d Sess. 29 (1980)) (emphasis in opinion).

Thus, because "whether the call [on whether to permit rescission] is correct must be determined on a case-by-case basis," it is clear that individual issues predominate over questions common to the class. *See Yamaoto*, 329 F.3d at 1173; *see also Davis v. FDIC*, 620 F.2d 489, 492 (5th Cir. 1980) ("We have no doubt that, by conditioning the continuing availability of rescission upon instances of material non-disclosure, Congress intended that rescission would not be appropriate in every case in which penalties would be."). Further, requesting a declaratory judgment ordering that class members are entitled to rescind their loans, instead of bringing a claim for actual rescission, does nothing to change the fact that individual issues predominate. Even in the context of the declaratory relief sought by Plaintiff, in order for any declaratory judgment to be more than a mere advisory recitation of the language in TILA concerning rescission (i.e., TILA "says what it says" concerning rescission), this Court would still have to go through an analysis of the individual facts and circumstances of each loan to determine if each class member actually is entitled to, and has actually requested to, rescind their respective loans. Such an analysis can not be undertaken via a class action.

Furthermore, there is a potential conflict of interest between members of a class and the class representative seeking rescission, which makes a finding of adequacy impossible. If this Court entered a declaratory judgment declaring that each member of

the class is entitled to rescind his or her loan, the well of funds available to claimants could inevitably run dry before all of the loans were rescinded.  Such a payout could be sufficiently large to create "an obvious conflict of interests of parties seeking rescission relief from a credit institution of limited solvency."  *Nelson*, 77 F.R.D. at 58 (citing *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 (5th Cir. 1975)).  This inherent conflict of interest makes "the propriety of ever pursuing rescission under the Truth-in-Lending Act through class action open to serious doubt" because the creditor will have insufficient solvency to rescind all of the loans.  *Nelson,* 77 F.R.D. at 58.

Similarly, another inherent conflict of interest defeating adequacy is created by the requirement that a borrower seeking rescission repay the loan proceeds to the creditor. *See Williams,* 968 F.2d at 1142; *Bustamonte v. First Federal Sav. and Loan Ass'n of San Antonio*, 619 F.2d 360, 365 (5th Cir. 1980).  The Plaintiff seeks a declaration that the class members may rescind their respective loans; however, there would obviously be members of the class who are not capable of paying back their loan principal amount or meeting other performance requirements this Court may set forth in a declaratory judgment.  As previously discussed herein, even Plaintiff acknowledges that rescission might not be in the best interest of those class members who would have to find new financing in the event their loans with Accredited are rescinded.  (R. 000337).  Due to the current mortgage market conditions and decrease in home values nationwide, class rescission in this case would create a situation for many class members wherein they may not be able to obtain new financing.  Significant individual-specific issues exist which would be pertinent and appropriate for this Court to address in any declaratory judgment granting the right to rescind, but which cannot be adequately and equitably addressed in a

necessarily generic class-wide declaratory judgment. Accordingly, in light of the numerous reasons set forth herein, the Plaintiff cannot be permitted to represent a class seeking a declaratory judgment authorizing the members of the class to rescind their respective loans.[7]

      C.    <u>The class must be limited to those borrowers whose loan transactions were consummated no earlier than April 23, 2007.</u>

The class must exclude any borrowers who closed their loans prior to April 23, 2007, because there is a one-year statute of limitations governing claims for statutory damages under TILA and HOEPA. 15 U.S.C. § 1640(e). The Plaintiff seeks to represent a class of all persons who entered into a consumer finance transaction from April 25, 2005, forward. Pursuant to 15 U.S.C. § 1640(e) an action for statutory damages under TILA must be brought "within one year from the date of the occurrence of the violation." Furthermore, "[n]ondisclosure is not a continuing violation for purposes of the statute of limitations" and, accordingly, the statute of limitations begins running at the time a finance transaction is entered. *Smith v. American Financial Systems, Inc.*, 737 F.2d 1549, 1552 (11th Cir. 1984). Accordingly, because the Plaintiff first filed her Complaint seeking to bring claims on behalf of a class on April 23, 2008, any class certified in this matter must necessarily be limited to finance transactions which were entered on April 23, 2007, or later. In fact, as is set out previously herein and in Accredited's summary judgment brief, Plaintiff's claim for statutory damages is time barred and, thus, she should be precluded from representing any class in this proceeding.

---

[7]  In the event this Court decides to certify a class seeking rescission-related relief, any class certified must exclude any and all class members who no longer have an interest in the property which was the subject of their respective loans. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23.

D.    <u>To meet the typicality/commonality requirements of Rule 23, any class certified in this matter should be limited to those borrowers whose loans are similar to the Plaintiff's loan.</u>

To ensure that legal and factual questions are common to the class and that the Plaintiff's claims and defenses are typical of those of the class members, any class certified should be limited to borrowers whose: a) loans were closed by Swafford and Hays; b) title insurance was provided through Transnation Title Insurance Company; c) abstracting services were performed by Southern Land & Title; d) loans were secured by collateral located within the State of Alabama; and e) loans are not delinquent.

Courts have held that where a variety of different closing and title services were performed by closing agents on the various loans included in a proposed class, the typicality/commonality requirement of Rule 23 is not satisfied. *See Reiser v. Residential Funding Corp.*, 236 F.R.D. 425, 428-29 (S.D. Ill. 2005). Accordingly, any class certified in this matter must be appropriately limited according to the services performed and charges levied by the closing agents. First, any class certified should be limited to loans closed by Swafford and Hays, the closing agent that closed the Plaintiff's loan. This limitation is warranted because the charges forming the basis of the Plaintiff's claims were imposed by Swafford and Hays. (R. 001273-001274). The evidence is clear that Accredited did not dictate the amount of the fees charged by the closing agents used to close Accredited loans.

Further, Accredited did not dictate how the closing agents went about performing services. For example, Accredited never asked Swafford and Hays to deviate from Swafford's normal standards with respect to the responsibilities and duties of the closing agent. (R. 001264-001265). Thus, without evidence that Accredited dictated to each

settlement agent precisely which services were to be performed and exactly how much the settlement agent was to charge for those services, and that Accredited required the same services and the same fees from each settlement agent that closed Accredited loans, there can be no typicality or commonality of claims. In other words, because each closing agent undoubtedly charged different amounts for different services performed, the Plaintiff cannot establish sufficient typicality or commonality beyond loans closed by Swafford and Hays.

In fact, charges and services would differ for loans closed by the same closing agent because each agent used various third parties to perform different services. (R. 001274-001276). For example, Swafford and Hays used different abstracting companies depending upon the county wherein the property serving as collateral was situated. (R. 001276). Swafford and Hays also used more than one title insurance company. (R. 001283). Thus, the class should be limited to borrowers who obtained services from the same third parties who performed closing services for the Plaintiff. Regardless, at a minimum, the typicality requirement of Rule 23 requires that any class which is certified must exclude any borrowers whose loans were not closed by Swafford and Hays, whose title insurance was not provided by Transnation Title Insurance Company, and whose abstracting services were not performed by Southern Land & Title.[8]

---

[8] The Plaintiff attempts to certify a nationwide class of borrowers who obtained a mortgage loan from Accredited, without regard to the identity of the closing agent. However, there is no evidence properly in the record regarding Accredited loans closed by settlement agents other than Swafford and Hays. Along with its Brief in Opposition to Class Certification, Accredited has also this day filed a Motion to Strike portions of the Joint Record filed by the Plaintiff. Specifically, Accredited seeks to have stricken, among other items, the deposition of an employee of Lender's First Choice – another settlement company used to close Accredited loans now the subject of another similar lawsuit styled, *Edwards v. Accredited Home Lenders, Inc.*, Case No. 07-0160-KD-C, currently pending before the United States District Court for the Southern District of Alabama. Because loans closed by Lenders First Choice are the subject of the *Edwards* litigation, and because the record contains no evidence regarding Accredited loans closed by other settlement agents, the class must be restricted, at the very least, to loans closed by Swafford and Hays.

Further, any class that is certified should also be limited to loans of borrowers whose property is located in the State of Alabama because many of the charges of which the Plaintiff complains vary from state to state.  For example, title insurance premiums are regulated by the individual states and, accordingly, the amounts that can be charged and retained by the closing agent and title insurer vary from state to state.  (R. 001287). In addition, recording fees presumably vary not only from state to state, but from county to county.  (R. 001318).  Thus, in addition to limiting the class to loans closed by Swafford and Hays, the typicality requirement in Rule 23 also requires, at a minimum, the limiting of the class geographically to loans secured by collateral property located in the State of Alabama.

Finally, any class certified in this matter must exclude all members of the purported class whose loan accounts are delinquent.  Specifically, in the event any certified class includes delinquent loans, Accredited reserves the right to file counterclaims over the delinquencies.  Thus, "[a]s to such class members, common questions of law and fact would no longer predominate since a variety of state law issues would be presented as well as a different fact pattern as to each allegedly delinquent class member." *Rollins v. Sears, Roebuck & Company*, 71 F.R.D. 540, 544 (E.D. La. 1976). Further, a class action is not a superior method for adjudicating the claims of borrowers with delinquent loans "because the state claims involved would absorb large amounts of the Court's time without any corresponding gain as a result of class action status that could not be achieved through the application of stare decisis and collateral estoppel." *Rollins*, 71 F.R.D. at 544.  Accordingly, if the Court does not deny class certification

altogether, it should at least limit the class to those borrowers whose loans are sufficiently similar to the Plaintiff's so that the requirements of Rule 23 are satisfied.

## III.    CONCLUSION

For all of the reasons set forth herein, Accredited respectfully requests that this Court deny Plaintiff's Motion for Class Certification in its entirety, because Plaintiff has failed to establish that the requirements of Rule 23 are met.  Alternatively, Accredited requests that this Court limit the class definition so that it complies with Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure.

Respectfully submitted, this the 8th day of August, 2008.


s:/ James D. Minor, Jr._____


**One of the attorneys for Defendant Accredited Home Lenders, Inc.**

OF COUNSEL

Robert E. Poundstone IV
BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701

James D. Minor, Jr. (admitted *pro hac vice*)
Kathleen R. Shields (admitted *pro hac vice*)
BRADLEY ARANT ROSE & WHITE LLP
One Jackson Place, Suite 450
188 East Capitol Street
Post Office Box 1789
Jackson, Mississippi 39215-1789

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Earl P. Underwood, Jr.
James Donnie Patterson
Law Offices of Earl P. Underwood, Jr.
P.O. Box 969
21 South Section Street
Fairhope, AL 36533-0969

George Richardson Irvine, III
Stone Granade & Crosby PC
PO Drawer 1509
Bay Minette, AL 36507-1509

Kenneth Joseph Riemer
166 Government Street, Suite 100
PO Box 1206
Mobile, AL 36633-1206

Steven Leon Nicholas
Cunningham, Bounds, Crowder, Brown & Breedlove, LLC
PO Box 66705
Mobile, AL 36660-6705

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

None.

Respectfully submitted,
s/ James D. Minor, Jr.

4/128109.5

31