## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHERYL HALL FRAZIER,** | * | |
| **Plaintiff,** | * | |
| **vs.** | * | **CIVIL NUMBER: 1:08-cv-11-MHT** |
| **ACCREDITED HOME LENDERS, INC., d/b/a HOME FUNDS DIRECT,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION

Comes now Plaintiff, by and through her undersigned attorneys, and files this Reply Brief in Support of her Motion for Class Certification. Defendant Accredited Home Lenders, Inc. ("Accredited") has not controverted most of the criteria for certification under Rule 23, and has failed to show why this matter should not be certified.

Plaintiff seeks certification of a class both under Rule 23(b)(2) and 23(b)(3) to obtain classwide relief for Defendant's systematic padding of settlement fees and the resulting understatement of TILA disclosures. For some class members, the understatement results in those class members' loans being defined as a high cost loan under HOEPA. Defendant admits it did not make the required HOEPA disclosures to any class member.

I.    **ACCREDITED'S PENDING SUMMARY JUDGMENT MOTION SHOULD NOT PREVENT CERTIFICATION.**

Accredited first argues that this matter should not be certified as a class action because it has filed a Motion for Summary Judgment. The timing of ruling on a motion for summary judgment and a motion to certify a class is within the sound discretion of the trial court. *Curtin v. United Airlines, Inc.*, 275 F.3d 88, 93 (D.C. Cir. 2001); *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474-76 (7th Cir. 1997). Plaintiff has no objection to the Court ruling on Accredited's pending Motion for Summary Judgment prior to ruling on class certification in this matter. Plaintiff has demonstrated in her opposition to summary judgment that her claims are viable. Plaintiff acknowledges, however, that should the Court grant summary judgment on one or more claims, those claims could not be certified with the Plaintiff as the class representative.

Defendant Accredited makes several merit-based arguments in opposition to the Motion for Class Certification. As noted by Plaintiff in her Memorandum in Support of Class Certification [Doc. 44] (hereinafter "Plaintiff's Memorandum"), the trial court should be cautious in reaching any merits determination in connection with a class certification inquiry. *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984). In the event the Court finds that there are material issues of disputed fact which preclude summary judgment, the inquiry into the merits for certification purposes is limited to whether Plaintiff is capable of proving her claims on a classwide basis. Any further merits determination is properly left for the trial on the merits.

Most of Defendant's merit-based arguments actually prove a class should be certified. Plaintiff has explained in detail how the calculation of finance charges and points and fees imposed by Defendant is wrong. However, for purposes of certification, the important fact is that the

-2-

interpretation of the applicable statutes and the regulations is a common issue of law, which is capable of being applied to all class members based on the uniform conduct shown in Plaintiff's Memorandum. The proper time for the merits determination is at trial, but it is clear that the decision can be made on a classwide basis.

## II.    PLAINTIFF HAS DEMONSTRATED THE ELEMENTS OF RULE 23 ARE MET IN THIS CASE.

Although Defendant opposes Plaintiff's Motion for Class Certification on several grounds, it is important to note that Defendant has not challenged several important aspects of Plaintiff's argument for certification. First, Defendant does not dispute the uniform nature of its own business practices, nor the uniform business practices of its settlement service providers. While Accredited takes issue with the quality and amount of proof which may be necessary to prove Plaintiff's claims on a classwide basis, the uniformity of conduct as explained in Plaintiff's Memorandum is not controverted.

Likewise, the fact that the class is sufficiently numerous that joinder is impracticable is not disputed by Defendant. Defendant also does not dispute that counsel for Plaintiff is qualified to pursue this matter. Consequently, none of these matters will be addressed further in this reply.

### A.    Plaintiff's Claims Are Typical.

Accredited maintains that Plaintiff may not represent the class because her claims are barred by the statute of limitations and she does not have a meritorious HOEPA claim. Both of these arguments are addressed fully in opposition to Accredited's Motion for Summary Judgment and are

incorporated herein. *See* Plaintiff's Corrected Memorandum in Response to Accredited Home Lenders, Inc.'s Motion for Summary Judgment, Doc. 80, at pp. 6, 24.

Defendant makes no argument that Plaintiff's claims are legally or factually unique such that they are not typical of the absent class members' claims. The required nexus for typicality clearly exists in this case, because Plaintiff's claims depend on the same factual and legal allegations as the absent class members' claims. *See Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). Other than arguing Plaintiff, and by extension the class, have no claims to assert, Defendant has not demonstrated that Plaintiff's claims are not identical to the class claims. Thus, typicality is met. *Cox v. American Cast Iron Pipe*, 784 F.2d 1546, 1557 (11th Cir. 1986).

### B.    Plaintiff Is an Adequate Representative.

Prior to certifying a class, due process requires the court find the plaintiff will adequately represent absent class members. *Papazian v. Gold Key Lease, Inc.*, 962 F. Supp. 1469 (M.D. Fla. 1997). A named plaintiff is adequate if she retains competent counsel and does not possess a substantial conflict of interest with the other class members. *Busby v. JRHBW Realty*, 513 F.3d 1241 (11th Cir. 2008).

Accredited argues that Plaintiff is not an adequate representative because she may be unhappy with a pro rata class recovery she will obtain, and her desire for a greater recovery constitutes a substantial conflict. Plaintiff agrees that under the amendments to TILA, she is entitled to no more than her pro rata class recovery, and thus no conflict exists. Unlike the cases cited by Accredited, Plaintiff makes no claim in addition to her share. Thus, Defendant has failed to show any substantial conflict disqualifying Plaintiff as a class representative.

The cases cited by Defendant finding a potential for conflict where a named plaintiff seeks more than a pro rata portion were decided soon after the amendments to TILA which limited class relief. At that time, certain plaintiffs maintained that they were able to recover a full statutory share for themselves and leave to the class the remaining portion of the capped liability. As noted by Defendant, most courts rejected the notion that the named plaintiff could recover more than a pro rata portion. Cases where a conflict of interest was found were those cases where the plaintiffs maintained that they were entitled to a full individual portion in addition to class recovery. *See Brame v. Ray Bills Finance Corp.*, 85 F.R.D. 568, 583 (N.D. N.Y. 1979).

Defendant cites *Hooks v. General Finance Corp.*, 652 F.2d 651 (6th Cir. 1981), as an example of such a conflict. However, in *Hooks*, the plaintiff sought and "insisted" on a separate individual recovery. Plaintiff here makes no such claim. Thus, even under the cases cited by Accredited, where Plaintiff acknowledges she is entitled to only her share, no conflict exists which prevents class treatment. *See Bartolino v. Aloha Motors, Inc.*, 419 F. Supp. 1116, 1121 (D. Haw. 1976). *See also Augustine v. Sidcon Corp.*, 69 F.R.D. 437 (E.D. Pa. 1975); *Lopez v. Orlor, Inc.*, 176 F.R.D. 35 (D. Conn. 1997).

Plaintiff testified unequivocally that she understood her duties as a class representative and is willing to accept her pro rata portion. (Record at p. 340.) In any event, her legal claim is set out in her Motion for Class Certification and the accompanying papers. No conflict exists in this case and certainly not the "substantial conflict" which would justify the exclusion of Plaintiff as a class representative. *See Busby*, 513 F.3d at 1323.

## C.    Class Treatment is Superior.

Under Rule 23(b)(3), a class should be certified only if the court finds class treatment is superior to other forms available for the fair and efficient adjudication of the case. Accredited argues class treatment is not superior because absent class members will only receive a pro rata recovery. Obviously, Accredited prefers that class members receive nothing, as opposed to a pro rata share. Accredited does not suggest an alternative more efficient way to resolve class members' claims.

Accredited attempts to defeat certification based on the fact that TILA was amended in 1974 and 1976 in order to limit class action recoveries so as to protect creditors from potential devastating liability under the statute. In amending the statute, Congress did not decide to eliminate class actions under TILA, but only to limit the creditors' maximum exposure.

Defendant's attempt to use the amendments to TILA to prevent certification has been specifically rejected in this circuit. In *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir. 1984), the court held:

> The courts have held that denying class certification because class recovery would be minimal is no longer valid. *Fetta v. Sears, Roebuck and Co, Inc.*, 77 F.R.D. 411 (1977). "This argument is no longer a valid basis for denying certification as a class action in view of the 1974 amendment to the Act, Public Law 93-495, Title IV (October 28, 1974), Section 408." *Fetta*, 77 F.R.D. at 413. In *Sarafin v. Sears, Roebuck and Co., Inc.*, 73 F.R.D. 585 (1977), the court upheld class certification even though class members would receive less in a class action than they would have if they sued individually. The defendant in *Sarafin* urged the court to deny class representation by the named plaintiffs under rule 23(a)(4) due to the drastic reduction in the awards that all members would receive if the suit proceeded as a class action. The court stressed that if this argument was adopted by the courts, it would prevent certification in all Truth-in-Lending cases in which the class, although otherwise manageable, was too large. *Sarafin*, 73 F.R.D. at 588.

*Id.* at 1376-77.

The reality is most class members are unaware of the claims asserted by Plaintiff in this action. Even if they were aware of the claims, the small nature of any recovery in an individual suit makes the pursuit of those claims unlikely. In the event some class members desire to pursue individual claims, they will have the opportunity to opt out and proceed accordingly.

This action meets the superiority test because, despite the statutory damages allowed, there remains little incentive to bring individual actions.

> We conclude initially that there is not much incentive in the Act for individuals to pursue alleged Truth-in-Lending violations. The costs of litigation against a financial institution can be enormous, actual damages are difficult to prove and the statutory recovery is low. It is in most individuals' interests, however, and in the public interest that lending institutions comply with the Act and be found responsible to consumer borrowers if they do not comply. Were it not for the class action, many borrowers likely would not pursue their rights in court. If any potential class members prefer to litigate their claims individually, they are entitled to opt out of the class pursuant to Rule 23(c)(2). It is our belief, however, that class action treatment of this case will eliminate a potential of multiple lawsuits while at the same time providing a forum in which these persons may fairly litigate their claims.

*Hughes v. Cardinal Federal Sav. & Loan Ass'n*, 97 F.R.D. 653, 656 (S.D. Ohio 1983).

The fact that the recovery would be small, and that individual litigation would not be economically feasible, is a strong argument for certification. *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809 (class action favorably allows pooling of claims); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) (court should consider inability of poor and uninformed to litigate individually).

Finally, Accredited's argument does not apply to Plaintiff's HOEPA claims, as these claims are not capped. *See* 15 U.S.C. § 1640(a)(4). Likewise, Accredited's argument does not apply to Plaintiff's request to certify this action under Rule 23(b)(2) for declaratory relief, as superiority is not an element of certification under that rule.

### D.    **Common Issues Predominate.**

Accredited asserts that this action should not be certified because individual questions of law and fact predominate over any common issues. However, in its argument, Accredited fails to demonstrate that the issues involved in this case cannot be resolved on a classwide basis.

Accredited acknowledges that the fees charged to absent class members are provable from a simple examination of certain documents in the hands of Accredited and/or its settlement service providers. For example, the amount of the fees actually charged for recording the mortgage, title insurance, and title examinations and abstracts is provable from a mere examination of the HUD-1 Settlement Statement provided to each borrower. *See, for example*, Record at pp. 1171, 1176. Thus, there is no need for any further proof or examination to determine the amount actually paid by each class member for these services.

Accredited does not dispute the overwhelming evidence that Swafford & Hays, as well as other settlement service providers, engaged in a systematic program of charging more than is legally allowed for recording fees. (See Plaintiff's Memorandum at pp. 10-16.) The amount of the legally permissible recording fee at issue is provable for each class member in two ways. First, for the Swafford & Hays loans, the Swafford & Hays documents themselves disclose the amount actually paid to record the mortgage. *See, for example*, Record at pp. 1173, 1178. Furthermore, in the rare

-8-

instance where the settlement service providers' documents do not disclose the amount of the recording fee, the charge is provable through a public record. Thus, a simple comparison of the amount charged versus the amount that should have been charged establishes whether the fee is bona fide and reasonable.

The evidence necessary to determine the legality of the amount charged for title insurance is basically the same. The amount charged each borrower for the title insurance is set forth in the HUD-1 Settlement Statement. The law is settled that in making a determination as to the proper bona fide and reasonable amount, where a published rate exists, the published rate defines the reasonable rate. *See In re Glauser*, 365 B.R. 531, 535 (Bankr. E.D. Pa. 2007). Consequently, a mathematical comparison of the amount charged to the published title insurance rates issued by the title insurer establishes whether the charge was bona fide and reasonable. *See, for example*, Record at pp. 1141, 1853, 2402. While rate manuals will vary by year and by state, the various rate manuals may be assembled and a simple comparison made.

An unreasonable charge for recording a mortgage or for title insurance as noted above would constitute a TILA violation and a potential HOEPA violation, and supports class certification in this matter. 12 C.F.R. § 226.4(c)(7)(ii). *See Mitchell v. Beneficial Loan & Thrift Co.*, 463 F.3d 793, 795 (8th Cir. 2006) (appraisal and title insurance fees excluded from HOEPA definition of total points and fees if bona fide and reasonable); *Fields v. Option One Mortgage Corp.*, 2006 WL 2191342 (E.D. Pa. 2006) (title insurance charges are excluded from points and fees calculation only if charge is reasonable); *Morris v. Novastar Mortgage, Inc.*, slip copy 2007 WL 2707749 (W.D. Mo. 2007) (appraisal fees excluded from TILA and HOEPA calculation only if bona fide and reasonable).

The legal consequences of the under-reporting of the finance charge are more fully set out in Plaintiff's Opposition to Accredited's Motion for Summary Judgment [Doc. 80], and are incorporated herein. However, for purposes of certification, the important point is the legal consequences may be proven from documents involved in each loan closing without any further proof. If the fees, or a portion thereof, are finance charges, the consequences of the non-disclosure flow as a matter of law.

In addition to the recording and title charges, Plaintiff has also alleged that she and the class suffered from an inflation and overcharge for title abstracts and title examinations as well. The analysis of the reasonableness and necessity of these charges will be slightly more involved, but not such that common issues of fact will not predominate. It is clear that service providers like Swafford & Hays and Lender's First Choice subcontract the title abstract to third parties. The evidence in this case discloses that those charges are significantly less than the amount charged to the borrower. *See* Record at pp. 278-313. Consequently, a similar analysis to that for recording fees and title insurance may be undertaken on a classwide basis. The amount charged to each class member for the title examination and abstract is discernible from the HUD-1. The amount paid for the abstract is generally available from the records of the settlement service provider. In those rare cases where such evidence is not available, there is testimonial evidence regarding the maximum amounts paid for such services. *See* Record at p. 793 (abstracts cost between $40 and $70.) Consequently, an additional mathematical calculation can be done to determine the amount and extent of any mark up or overcharge such as to cause those fees to be non-bona fide and unreasonable.

There is no need to evaluate whether services were provided by the settlement service company to justify the fees charged because the settlement company is already fully compensated

by the settlement fee and the title insurance premium. It is Plaintiff's uncontroverted allegation that no additional work is done in connection with the abstract mark up. Thus, the mark up is not a bona fide fee, and that fact can be proven on a classwide basis. *See* HUD 2001-1 Statement of Policy, footnote 7, attached to Doc. 80 as Exhibit 4.

*Rieser v. Residential Funding Corp.*, 236 F.R.D. 425 (S.D. Ill. 2005), cited by Accredited, does not support the denial of certification in this case. In that matter, the plaintiffs contended that charges made by a certain law firm were a sham and that the law firm performed no work for the fee. Contrary to those allegations, several witnesses provided testimony that the law firm provided services on each mortgage loan and that the amount and level of those services varied from loan to loan. Consequently, the court concluded that it would have to conduct mini-trials as to the level of services provided by the law firm and whether those services justified the fees involved.

This case provides just the opposite scenario. The amount for recording fees is set by law, and no further evidence is required to establish the bona fide and reasonable rate. Likewise, charges for title insurance are set by the title insurers themselves by rate manuals and by filed rates. That rate provides full compensation to the settlement service provider, and regardless of the level or amount of work performed, the settlement service provider is not entitled to a greater premium. The charges for title examinations and abstracts are paid to third parties, not to the settlement service provider. The amount paid to the third party establishes the bona fide and reasonable amount without further proof. The settlement service provider is fully compensated for his work by the other fees charged which are included in the disclosed finance charge. Thus, this case is the exact opposite of that presented in *Rieser* and is a strong case for certification.

Finally, Accredited argues that the issues regarding the tolerance set forth in TILA should prevent certification. Again, any tolerance inquiry is a mere mathematical calculation which can be done once the level of unreasonable and non-bona fide charges is established. Accredited has failed to show in any way that mini-trials would be necessary in order to calculate the applicable tolerance or to determine classwide liability in this matter.

### III.    THE CLASS DEFINITION SHOULD NOT BE MODIFIED.

#### A.    Plaintiff Does Not Seek Actual Damages.

Neither the named Plaintiff nor the class seek any actual damages under TILA. Thus, any defined class is limited to statutory damages for both TILA and/or HEOPA and rescission declaratory relief.

#### B.    Plaintiff May Seek Declaratory Relief Regarding Rescission.

Plaintiff seeks a Rule 23(b)(2) certification in connection with her request that this Court declare she has the right to rescind her loan because of the inaccurate TILA disclosures. Defendant does not challenge that she evidence is capable of classwide treatment, but maintains class treatment relating to rescission is not allowed.

Plaintiff acknowledges a split of authority exists regarding the viability of seeking declaratory relief regarding her rescission rights.

Accredited confuses claims where a plaintiff sought actual rescission on a class basis with those where declaratory relief was sought. Plaintiff does not seek classwide rescission. Thus, *James v. Home Construction Co.*, 621 F.2d 727, 730-31 (5th Cir. 1980), and its progeny have no application

to this case, which does not seek an actual rescission remedy but only attempts to establish the absent class members' right to rescind.

Declaratory actions are markedly different from classwide rescission attempts, and must be analyzed differently than those cases which sought rescission for each class member.

> Plaintiffs only seek a declaration that the notices of rescission in the sales and financing contracts violate TILA, and thus that each member of the class is entitled to seek rescission, . . . . Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission.

*Williams vs. Empire Funding Corp.*, 183 F.R.D. 428 (E.D. Pa. 1998). *See also Latham v. Residential Loan Centers*, 2004 WL 1093315 (N.D. Ill. May 6, 2004).

Plaintiff acknowledged in her Memorandum that the First Circuit's decision in *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418 (1st Cir. 2007), is directly contrary to her position in this case. Plaintiff respectfully submits that *McKenna* is wrongly decided in the context of declaratory relief, and that *Andrews v. Chevy Chase Bank*, 474 F. Supp. 2d 1006, 1007 (E.D. Wisc. 2007) and *In re Ameriquest*, 2007 WL 1202544 (N.D. Ill. 2007) are the better reasoned cases.

Contrary to Accredited's argument, the present case does not simply attempt to establish that TILA "says what it says." Plaintiff's case attempts to shed light on the wrongful and systematic wrongdoing which resulted in uniform overcharges to the class and uniform improper and misleading TILA disclosures. The ability to rescind is simply an additional remedy available to the Plaintiff and absent class members that flows from the Defendant's wrongful conduct. No reason exists to deprive the class of the option to exercise that remedy once the wrongful conduct is proven. Once the conduct is proven through a trial on the merits, the nature and extent of the TILA violations

-13-

will be established.  Absent class members may then make the personal decision of whether to rescind and comply with any prerequisites to rescission.

Injunctive and declaratory relief are available remedies under TILA, including declarations regarding the right to rescind.  *In re Consolidated "Non-Filing Insurance" Fee Litigation*, 195 F.R.D. 684, 692 (M.D. Ala. 2000).

Accredited's argument that equitable principles apply to the rescission process is likewise misplaced.  Any conditions on rescission may be imposed should a class member make that election, but in no event will this Court need to supervise or be involved in that process, having only established that the statutory right to rescind exists.

## C.    No Counterclaim Limitation Should Be Imposed.

Defendant's argument that the class must exclude members who have delinquencies is without merit.  In making this argument, Defendant relies on *Rollins v. Sears, Roebuck & Co.*, 71 F.R.D. 540 (E.D. La. 1976).  In *Rollins*, the district court held that class members with loan delinquencies against whom defendant would assert a counterclaim would not have TILA claims with common questions of law or fact.  That court reasoned that these counterclaims were compulsory under Rule 13, Federal Rules of Civil Procedure, and must be considered at the class certification stage.

The law in the Eleventh Circuit is contrary to the holding in *Rollins*.  In *Allapattah Services, Inc. v. Exxon Corporation*, 333 F.3d 1248, 1259-1260 (11th Cir. 2003), the Eleventh Circuit held that a defendant may not raise a counterclaim until after liability is established.  If liability is established, a court may handle the counterclaims on a "'class member-by-class member basis.'"  *Id.* at 1259

-14-

(quoting *Donson Stores, Inc. v. Am. Bakeries Co.*, 58 F.R.D. 485, 489-90 (S.D. N.Y. 1973). Unlike the district court in *Rollins*, the *Allapattah* court reasoned that Rule 13 "is inapplicable in class action suits." Id. at 1259 fn 14.

Furthermore, the mere threat of the filing of counterclaims should not be a factor in the Court's certification analysis. Unpled counterclaims do not stand as an impediment to class certification. *Heaven v. Trust Co. Bank*, 118 F.3d 735 (11th Cir. 1997); *Roper v. Conserve, Inc.*, 578 F.2d 1106 (5th Cir. 1978) *aff'd* 445 U.S. 326 (1980).

Accordingly, Defendant's threat to file counterclaims against absent class members for loan delinquencies is irrelevant for class certification purposes. This Court should reject it as a basis to narrow the class.

### D.    No State of Alabama Limitation Applies.

Without explanation, Defendant asserts that the class should be limited to Alabama borrowers. The misconduct alleged is not confined to Alabama, and the nature and limitations of the charges at issue bear no special relationship to Alabama. Rate manuals for title insurance, as well as filed rates, will vary by state, but are easily identified and proven. Likewise, recording fees vary both by county and state, but the variance does not require any different type analysis. No reason exists for any type of geographical limitation to the class definition.

### E.    No Settlement Service Provider Limitation Applies.

Finally, Defendant argues the class should be limited to those borrowers whose loans were closed by Swafford & Hays. As shown in Plaintiff's Memorandum, the wrongful conduct exposed

-15-

in this action is not limited to a single settlement service provider, and Accredited has not shown any reason to confine the class to that provider.

## CONCLUSION

This case presents a classic example of an action which is suitable for certification as a class. Defendant has a uniform business model wherein it uses uniform forms to make its truth-in-lending disclosures. Its uniform business model involves the outsourcing of services to settlement service providers. Those settlement service providers imposed fees on every member of the class which were inflated, and in contravention to the TILA regulations, those fees were not bona fide and reasonable. When the non-bona fide and unreasonable fees are added to the required truth-in-lending disclosures, the disclosed finance charges are inaccurate. The inaccuracies may be proven through the documents in the hands of Accredited, or its settlement service providers.

The remedies which flow from the wrongful disclosure of the TILA disclosures are derived by mathematical calculation. No member of the plaintiff class seeks damages in addition to statutory damages provided by law. There will be no need to have any individual inquiry into the specifics of any class members' closing; all that is necessary is a review of the applicable documents in order to identify the specific charges at issue for each loan. As such, all the prerequisites of Rules 23 are met in this case, and class certification is appropriate.

STEVEN L. NICHOLAS  (NICHS2021)
CUNNINGHAM BOUNDS, LLC
Post Office Box 66705
Mobile, Alabama  36660
251-471-6191

-16-

EARL P. UNDERWOOD, JR. (UNDEE9591)
Post Office Box 969
Fairhope, Alabama 36533
251-990-5558

KENNETH J. RIEMER (RIEMK8712)
Post Office Box 1206
Mobile, Alabama 36633
251-432-9212

GEORGE R. IRVINE, III (IRVIG4725)
STONE, GRANADE & CROSBY, P.C.
7133 Stone Drive
Daphne, Alabama 36526
251-626-6696
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I do hereby certify that on the _____ day of August, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record.

Robert E. Poundstone, IV
Bradley Arant Rose & White, LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Alabama 36104

James D. Minor, Jr.
J. William Manuel
Kathleen R. Shields
Bradley Arant Rose & White, LLP
One Jackson Place, Suite 450
188 East Capitol Street
Post Office Box 1789
Jackson, Mississippi 39215-1789


_____
STEVEN L. NICHOLAS

-17-