IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| CHERYL HALL FRAZIER, individually and on behalf of a class of similarly situated persons, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:08cv11-MHT |
| | ) | (WO) |
| ACCREDITED HOME LENDERS, INC., d/b/a Home Funds Direct, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Cheryl Hall Frazier filed this lawsuit on behalf of herself and a class of similarly situated persons against defendant Accredited Home Lenders, Inc., doing business as Home Funds Direct. Frazier asserts that Accredited improperly understated the finance charge on credit it extended to her, in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and that it failed to comply with additional disclosure requirements under the Home Ownership and Equity

Protection Act ("HOEPA"), 15 U.S.C. § 1639. Frazier seeks to rescind the transaction and thus void Accredited's interest in her home, and to recover damages.

Before the court is Accredited's motion for summary judgment, which is granted for the reasons that follow.

## SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

2

BACKGROUND

On March 25, 2005, Frazier closed on a $ 56,000 loan, secured by a mortgage on her home, with Accredited. Swafford & Hayes Settlement Services, a settlement company that is not a party to this action, closed the loan. Frazier was provided with a "Truth in Lending Disclosure Statement," a "Good Faith Estimate," and a "HUD Settlement Statement." These documents, which are required by TILA, listed various charges associated with her loan. Frazier later came to believe that certain charges were excessive and improperly excluded from the disclosed finance charge, resulting in an understatement of the finance charge.

On November 1, 2006, Frazier sent a letter to Accredited seeking to rescind her loan, relying on her assertion that the finance charge was not properly disclosed. Accredited did not honor or otherwise respond to her rescission notice, and she filed this lawsuit.

3

DISCUSSION

TILA and its implementing regulation, 12 C.F.R. § 226.1 et seq. ("Regulation Z"), require lenders to provide certain written disclosures to borrowers before closing; lenders must clearly and conspicuously disclose the 'amount financed,' which is the net amount of money lent to the borrower, Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I at 226.18(b)(2) n. 1.,[1] and the 'finance charge,' which is the borrower's cost of obtaining that money, including interest.   15 U.S.C. § 1605(a).   TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a).   HOEPA is an amendment to TILA that

---

1.   Official staff interpretations of Regulation Z are dispositive unless "demonstrably irrational." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565-67 (1980).

4

requires lenders to make additional disclosures on 'high cost' loans.  15 U.S.C. § 1639.

Frazier takes issue with the finance charge disclosed to her, contending that several charges were improperly excluded from the calculation of the finance charge. Frazier's first claim is that, because of these improper exclusions, the finance charge on her loan was understated in violation of TILA and she was entitled to rescind the transaction.  Second, Frazier claims that Accredited again violated TILA when it refused to honor her rescission notice.  Third, Frazier asserts that, when calculated correctly, the finance charge places the loan within HOEPA's definition of a 'high cost' loan that required Accredited to make certain additional disclosures.  Frazier contends that she is entitled to damages for both TILA violations as well as the HOEPA violation.

Accredited denies that it improperly excluded any fees from the finance charge.  Accredited contends that

5

the disclosures it made were accurate, complete, and in compliance with both TILA and HOEPA.  It further argues that, to the extent that the finance charge was inaccurately understated, any such inaccuracy falls within TILA's safe harbor and outside the bounds of HOEPA's definition of high-cost loans.

## I.  TILA violations

### A.  TILA claim for understatement of finance charge

The dispositive question is how to calculate properly the finance charge for Frazier's loan.[2]  Unsurprisingly, the parties disagree as to which charges should be included in this calculation.  Their disagreement is compounded by the imprecise language of TILA itself and the maze of federal regulations interpreting the statute.

TILA defines the finance charge as "the sum of all

_____

2.  Because Frazier's claims fail on the merits, the court does not address Accredited's contention that her claim for damages for understatement of the finance charge is untimely.

6

charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). The statute goes on at some length and is accompanied by detailed implementing regulations at 12 C.F.R. § 226.4. In short, the finance charge is the cost of obtaining credit.

Frazier claims that Accredited violated TILA by failing to include certain excessive fees in the disclosed finance charge. She contends that the endorsement fee was charged for a service that was not provided and that the fees for a title search, a title examination, recording, and title insurance were excessive. She argues that all of these charges should have been included in the finance charge. Accredited denies that it violated TILA; Accredited contends that the disputed fees were imposed by a third party; no charges were excessive; if any charges were excessive, only the excessive portion should be added to the finance

7

charge, not the entire charge as Frazier contends; certain charges were improperly included in the disclosed finance charge and must be excluded from the correct finance charge; and any difference between the correct finance charge and the disclosed finance charge falls within TILA's tolerance for accuracy.

### 1.   Whether Accredited is responsible for the charges imposed by a third party

Accredited first contends that it cannot be held responsible for any excessive fees because Swafford, the settlement agent that closed the loan, imposed the fees. Accredited argues that the disputed fees should be excluded because it "neither required nor retained the[] fees" charged by Swafford. Def. Br. at 6. This argument fails because the statute asks whether the lender required the <u>services</u>, not just the charges. <u>See</u> 15 U.S.C. § 1605(a) (third-party charges are included in the finance charge unless the lender "does not require the imposition of the charges or the services provided and

8

does not retain the charges"); <u>see also</u> <u>O'Brien v. J.I.</u>
<u>Kislak Mortg. Corp.</u>, 934 F. Supp. 1348, 1357 (S.D. Fla.
1996) (Ryskamp, J.) ("If the creditor required a third
party to perform a service, is aware that the third party
will perform the service, and imposes a separate charge
on the consumer for the performance of that service, the
fee is a disclosable finance charge.").

Accredited does not, and could not, dispute that it
required the services represented by the fees for title
insurance, abstract search, title examination, and
recording, as Frazier offers uncontradicted testimony of
the settlement agent that any services it performed were
required by Accredited.   <u>See</u> Pl. Exh. 7 at 112-13.
Accredited protests, however, that the endorsement fee is
a different matter, because no service was actually
provided for this fee and, thus, Accredited could not
have "required" it.  Frazier concedes that Accredited did
not require any service that mandated the $ 50
endorsement fee retained by Swafford.  <u>See</u> Pl. Br. at 19

(title insurance company's rate manual indicates that "all standard residential endorsements are included in the filed rate and no additional [endorsements] were written").  Because no separate endorsement service was required by Accredited, the endorsement fee must be excluded from the finance charge.

However, the court must determine whether the remaining fees challenged by Frazier were excessive and whether any excess resulted in an impermissible understatement of the finance charge.

### 2.  Calculation of the TILA tolerance for accuracy

TILA deems a finance charge accurately disclosed if it is understated by no more than "one-half of one percent of the total amount of credit extended."  15 U.S.C. § 1605(f)(2); <u>see also</u> 12 C.F.R. § 226.23(g) (understatement cannot be more than one-half of one percent of the "face amount of the note").  The correctly calculated finance charge is referred to as the "actual"

10

finance charge.   15 U.S.C. § 1605(f) (referring throughout to "actual finance charge" to describe finance charge when calculated correctly).  Accredited disclosed a finance charge of $ 85,772.51 for Frazier's $ 56,000 loan.[3]  The parties agree that the TILA tolerance for accuracy is $ 280, or one-half of one percent of $ 56,000.  To fall within TILA's tolerance for accuracy, Frazier's actual-finance charge must not exceed $ 86,052.51.[4]

---

3.   The disclosed finance charge was calculated by adding the prepaid-finance charge, which totaled $ 3,582.90, to the interest during the term of the loan, $ 82,189.61.  The prepaid-finance charge included the following: (1) origination fee ($ 1,960.00), (2) processing fee ($ 500.00), (3) underwriting fee ($ 500.00), (4) appraisal-review fee ($ 250.00), (5) flood-zone-determination fee ($ 9.50), (6) per diem interest fee ($ 22.40), and (7) settlement/closing fee ($ 275.00).  The interest during the term of the loan was calculated by subtracting the loan principal ($ 56,000) from the total payments ($ 138,189.61).  See Def. Exh. 8 at 4.

4.   The $ 280 is added to the disclosed finance charge of $ 85,772.51 to determine the tolerance for accuracy; the sum of these two amounts is $ 86,052.51.

### 3. Whether particular charges
### are part of the finance charge

The finance charge includes "fees for services to be performed periodically during the loan term." Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I at 226.4(c)(7) n. 3. However, TILA excludes certain charges from the finance charge: "Fees and charges prescribed by law which actually are or will be paid to public officials for determining the existence of or for perfecting or releasing or satisfying any security related to the credit transaction," 15 U.S.C. § 1605(d)(1); "Fees or premiums for title examination, title insurance, or similar purposes," 15 U.S.C. § 1605(e)(1); and "Appraisal fees, including fees related to any pest infestation or flood hazard inspections conducted prior to closing." 15 U.S.C. § 1605(e)(5). In addition to excluding the fee the lender was charged, the lender may exclude "the cost of verifying or confirming information connected to the item." Official Staff

12

Interpretation, 12 C.F.R. Pt. 226, Supp. I at 226.4(c)(7) n. 1.

In all cases, the charge must be "bona fide and reasonable" in order to be properly excluded from the finance charge.  12 C.F.R. § 226.4(c)(7).  Neither the statute nor the implementing regulations define "bona fide and reasonable."  Courts characterize a charge as bona fide and reasonable if "it was for a service actually performed and reasonable in comparison to the prevailing practices of the industry in the relevant market."  Brannam v. Huntington Mortgage Co., 287 F.3d 601, 606 (6th Cir. 2002); see also  Guise v. BWM Mortg., LLC, 377 F.3d 795, 801 (7th Cir. 2004).  Only the unreasonable portion of a fee, that is, the excessive portion, will be added to the finance charge.  Guise, 377 F.3d at 800.

With these guidelines in mind, the court turns to particular charges disputed by the parties, taking up, first, charges that Accredited contends were improperly

13

included in the disclosed finance charge, and, second,
the charges that Frazier contends were improperly
excluded.

### a.  Improperly included fees

#### i.  Whether such fees may be excluded in calculating the actual-finance charge

Accredited contends that the $ 250 appraisal-review
fee, the $ 66 tax-service fee, and the $ 9.50 flood-
hazard-determination fee were improperly disclosed as
part of the finance charge and should not be included
when calculating the actual-finance charge.  Frazier
argues that the court should not exclude these charges
because they were previously disclosed to Frazier as part
of the finance charge.

The statute requires the court to determine the
'actual' finance charge.  15 U.S.C. § 1605(f).  The word
'actual' instructs the court to determine the finance
charge based on the objective criteria outlined in the
statute and implementing regulations.  The court could

14

not include fees not properly characterized as finance charges and then call its determination the 'actual' finance charge.   Nowhere does the statute suggest that the court must begin its calculation of the actual-finance charge with the disclosed charge.   Indeed, the point of the entire exercise is for the court to calculate what the lender <u>should have</u> told the borrower and then determine whether the lender came close enough. Thus, Frazier's argument must fail.  <u>See</u> <u>Scott v. IndyMac Bank, FSB</u>, 2004 WL 422654, at *3 (N.D. Ill. 2004) (Gettleman, J.) (excluding from calculation of finance charge fees improperly included in disclosed finance charge); <u>see also</u> <u>Marquez v. New Century Mortg. Corp.</u>, 2004 WL 742205, at *3 (N.D. Ill. 2004) (Manning, J.) ("any finance charges disclosed to the plaintiffs must be reduced by the charges that should not have been included in their TILA documents").

Thus, in addition to the fees that Frazier challenges, the court must determine whether the fees for

15

appraisal review, tax service, and flood-hazard determination were properly included in the finance charge.

### ii.  Whether such fees were improperly included in the disclosed finance charge

The appraisal-review fee is "for an in-house appraiser's review of the appraisal report to verify the adequacy and completeness of the report, and to verify that the property value meets the minimum guidelines for the loan program." Def. Exh. 8 at 7.  Frazier challenges whether such a service was actually performed and, further, whether the $ 250 fee is reasonable for the service actually performed.  She argues that, "[i]n transactions covered by [Real Estate Settlement Procedures Act], such as the one at bar, the review of the work of another party is not a compensable service." Pl. Sur Reply in Opp. at 2.  But the court is determining whether the fee is a finance charge under TILA, and TILA regulations expressly allow lenders to exclude the cost

16

of verifying appraisals from the finance charge. Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I at 226.4(c)(7) n. 1. Frazier offers no evidence tending to show that the service was not performed or that $ 250 is excessive for an appraisal-review fee.[5] Thus, the fee is not properly characterized as a finance charge and should not have been included in the finance charge.

By contrast, the $ 9.50 flood-zone-determination fee and the $ 66 tax-service fee were properly included in the finance charge.  "[F]ees for services to be performed periodically during the loan term" are included the finance charge.  Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I at 226.4(c)(7) n. 3 (emphasis added). The official staff interpretation of the regulation provides examples particularly relevant here: Although "a

---

5.  The parties' Joint Appendix includes the report prepared by Accredited's review appraiser, and it is a detailed document; Frazier cannot plausibly argue that Accredited provided no service to earn this fee.  See Joint Appendix, Vol. X at 1529-31.

fee to search for tax liens on the property or to determine if flood insurance is required" should be excluded from the finance charge, "a fee for one or more determinations <u>during the loan term</u> of the current tax lien status or flood insurance requirements is a finance charge, <u>regardless of whether the fee is imposed at closing, or when the service is performed</u>." <u>Id.</u> (emphasis added). Because the tax-service fee was for a determination made <u>during</u> the loan term, <u>see</u> Def. Exh. 8 at 6 (tax-service fee is "for monitoring the property real estate taxes <u>after</u> loan closing") (emphasis added), it was properly included in the original finance charge. <u>See</u> <u>Romaker v. Crossland Mortg. Corp.</u>, 1995 U.S. Dist. LEXIS 22252, at *9 (N.D. Ill. Nov. 3, 1995) (Grady, J.) ("[T]ax service fee[s] ... are usually fees which are required to be included as part of the finance charge."). Similarly, because at least some portion of the flood-zone-determination fee was imposed for monitoring the property after closing, <u>see</u> Def. Br. at 17 (flood-zone-

determination fee, in part, was "for monitoring the
property in the event map revisions result in the
restructuring of the lender's insurance requirements"),
it too was properly included in the finance charge.[6]

For the above reasons, the $ 66 tax-service fee and
the $ 9.50 flood-zone-determination fee will be included
in the court's calculation of the actual-finance charge,
but the $ 250 appraisal-review fee will not.

### b.   Improperly excluded fees

Frazier challenges the reasonableness of a number of
fees, including the fees for title examination, title
abstract, recording, title insurance, and endorsement.
In total, Frazier's briefing alleges that the finance

---

6.   Although the most fair approach would split the
fee and include only that portion charged for monitoring,
the parties have not presented any argument or evidence
as to which portion of the fee is for monitoring.   At
this stage, the court views the facts in the light most
favorable to the plaintiff, and, thus resolves the
evidentiary equipoise in Frazier's favor.

charge was understated by $ 566.[7]   The court considers

each charge in turn.


### i. Title-examination fee

Frazier argues that the $ 250 title-examination fee

was neither bona fide nor reasonable and that the entire

fee should be included in the finance charge.[8]  Accredited

responds with evidence that this charge reflected the

cost of "Swafford's commitment department receiving the

title search from the abstracting department, analyzing

the information obtained from the courthouse, and putting

the information in the form of a title commitment," as

well as "any efforts by Swafford's processing department

to clear up any issues in the title commitment based on

_____

7. By contrast, in her complaint, Frazier contends
that the finance charge was understated by $ 499.50.  See
Am. Compl. ¶¶ 24-27.

8. Although Frazier's briefing is not crystal clear
on this point, the complaint does not allege that no
service was provided in exchange for the title-
examination fee, only that the fee was excessive.  See
Am. Compl. ¶ 24.

feedback from the lender." Def. Br. at 14 (citing Swafford deposition). Frazier does not dispute this evidence and offers nothing more than bare argument that the fee was not bona fide or reasonable. She does not suggest that Swafford did not perform these services, nor does she provide evidence or even argument that the fee was excessive based on prevailing-market rates.

In sum, Frazier has offered no basis upon which a reasonable factfinder could conclude that the title-examination fee was not bona fide or not reasonable. Accordingly, the court finds that the $ 250 charge for title examination was properly excluded from the finance charge.


ii. Title-abstract-search fee

Frazier was charged $ 200 for the title-abstract search. She contends that she should not have been charged more than $ 72 because this was the fee charged by the company that performed the abstract search for

Swafford.  She asserts that, because she was charged $ 200, the difference of $ 128 should be added to the finance charge.  Accredited responds with evidence that this charge covered the cost of verifying the title company's work, including "the cost of receiving and confirming the abstract/title search order with the loan officer, entering the order into the data base, determining the county where the property is located, sending the order to an abstractor in that same county, monitoring the order to make sure it was returned within 48 hours, and reviewing the abstract/title search to make sure it included all necessary components."  Def. Br. at 13 (citing Swafford deposition).  Frazier offers no evidence or argument that these services were not, in fact, provided or that the fee exceeded prevailing-market rates.  Accordingly, there is no basis from which a factfinder could conclude that the additional $ 128 was not bona fide or reasonable, and the $ 128 was properly excluded from the finance charge.

### iii. Recording fee

Frazier contends that the recording fee was neither bona fide nor reasonable because she was charged $ 64 above the cost of recording and Swafford performed no service in exchange for this additional money.

Payments "which actually are or will be paid to public officials" may be excluded from the finance charge. 15 U.S.C. § 1605(d)(1). Any overpayment must be treated as part of the finance charge. See Payton v. New Century Mortg. Corp., 2003 WL 22349118, at *4 (N.D. Ill. 2003) (Holderman, J.) (only actual recording fee paid to public official was properly excluded from finance charge). Swafford paid a recording fee of $ 56, Pl. Exh. 8 at 15, and the good-faith estimate shows that Frazier was charged $ 120 for the same. See Def. Exh. 3 at 2, Line 1201. Accordingly, $ 64 of the recording fee was not bona fide and should be added to the finance charge.

### iv.  Title-insurance fee

Frazier contends that a portion of the $ 200 title-insurance fee was not reasonable because it exceeded the rate charged by the title-insurance company.

The title-insurance company charged Swafford $ 126 for Frazier's title insurance.  Frazier was charged $ 200.  Frazier contends that the $ 74 difference should be included in the finance charge.  Accredited responds that $ 74 is a bona fide and reasonable fee for the service of securing title insurance, citing Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I at 226.4(c)(7) n. 1.  The Official Staff Interpretation, however, speaks only to whether lenders may exclude charges for "verifying or confirming information" connected with certain real estate fees, not whether lenders may exclude fees collected for securing services. As Accredited has produced no evidence that Swafford performed any additional work that might be construed as verifying the title-insurance company's work, the $ 74

**24**

difference was unreasonable and should be added to the finance charge.[9]

### 4.   Whether the tolerance is met

As noted above, in order to fall within TILA's tolerance for accuracy, the actual-finance charge must be equal to or less than $ 86,052.51.

The finance charge is calculated as follows:

| Prepaid-finance charge | |
|---|---|
| Origination fee* | $ 1,960.00 |
| Processing fee* | 500.00 |
| Underwriting fee* | 500.00 |
| Closing fee* | 275.00 |

---

9.   Frazier also contends that the rate was unreasonable because it exceeded the permissible rate under Alabama law.   Neither party identifies Alabama's permissible rate in the briefing on summary judgment; in her complaint, Frazier claims that the permissible rate was $ 161; in the briefing on class certification, Frazier asserts that the legal maximum was $ 126. However, because the court finds that Swafford's rate was unreasonable by $ 74 (the same amount by which the rate would be unreasonable if the legal maximum was $ 126), the court need not resolve this question.

| | |
|---|---:|
| Per-diem interest* | 22.40 |
| Tax-service fee | 66.00 |
| Flood-zone-determination fee | 9.50 |
| Recording fee | 64.00 |
| Title-insurance fee | 74.00 |
| TOTAL | $ 3,470.90 |

* These fees are not disputed

| Actual-finance charge | |
|---|---:|
| Prepaid-finance charge | $  3,470.90 |
| Loan-term interest | 82,189.61 |
| TOTAL | $ 85,660.51 |

Because the actual-finance charge ($ 85,660.51) is below the tolerance for accuracy ($ 86,052.51), the court finds that the disclosed finance charge was within TILA's tolerance for accuracy. Accordingly, summary judgment must be granted on the TILA understatement-of-finance-charge claim.

### B.   TILA claim for failure
### to honor rescission notice

Frazier also contends that Accredited violated TILA when it failed to honor her rescission notice.  However, Frazier's rescission notice relied on her assertion that the disclosures Accredited provided were inadequate; Frazier contended that Accredited understated the finance charge and that, as a result, she never received the disclosures she was due to receive under TILA.  Because, as established above, Accredited did not understate the finance charge in violation of TILA, the disclosures provided were not deficient.  Thus, Frazier's notice of rescission was without merit, and Accredited's refusal to honor her notice cannot form the basis for a separate TILA violation.  Accordingly, summary judgment will be granted on the TILA failure-to-honor-rescission claim.

## II.   HOEPA violation

HOEPA requires lenders to make certain specific disclosures for 'high cost' loans.  15 U.S.C. § 1639. Frazier argues that her loan was high cost under HOEPA and that Accredited violated HOEPA when it failed to make the disclosures required for high-cost loans.  Accredited denies that Frazier's loan was high cost.

A loan is high cost under HOEPA if "the total points and fees payable by the consumer at or before closing" exceed 8 % of the total-loan amount.  15 U.S.C. § 1602(aa)(1)(B)(I).  The parties do not agree on the total-loan amount or the total HOEPA points and fees. Frazier contends that the total-loan amount is $ 51,619.50; that the 8% HOEPA permissible points and fees is $ 4,129.56; and that she paid $ 4,380.50 in points and fees.  Accredited contends that the total-loan amount is $ 52,367.10; that the 8 % HOEPA permissible points and fees is $ 4,189.37; and that Frazier paid $ 3,610.50 in points and fees.

## A.  Total-loan amount

The Official Staff Commentary to Regulation Z explains that "the total loan amount is calculated by taking the amount financed, as determined according to 226.18(b),[10] and deducting any cost listed in 226.32(b)(1)(iii)[11] and 226.32(b)(1)(iv)[12] that is both

---

10.  12 C.F.R. § 226.18(b) provides that, "The amount financed is calculated by: (1) Determining the principal loan amount or the cash price (subtracting any downpayment); (2) Adding any other amounts that are financed by the creditor and are not part of the finance charge; and (3) Subtracting any prepaid finance charge."

11.  12 C.F.R. § 226.32(b)(1)(iii) includes "All items listed in 226.4(c)(7) (other than amounts held for future payment of taxes) unless the charge is reasonable, the creditor receives no direct or indirect compensation in connection with the charge, and the charge is not paid to an affiliate of the creditor."  12 C.F.R. § 226.4(c)(7) refers to "real-estate related fees": "(i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes. (ii) Fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents. (iii) Notary and credit report fees.  (iv) Property appraisal fees or fees for inspections to assess the value or condition of the property if the service is performed prior to closing, including fees related to pest infestation or flood hazard determinations.  (v) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included
(continued...)

included as points and fees under 226.32(b)(1) and financed by the creditor." Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I at 226.32(a)(1) (notes added). In other words, the total-loan amount is determined by taking the amount financed and subtracting (1) real-estate fees that are retained by the lender or unreasonable and (2) credit insurance. The amount financed, in turn, is determined by adding the loan principal and any amount financed by the creditor that is not part of the finance charge and then subtracting the prepaid-finance charge.

Thus, the calculation should look like this:

---

(...continued)
in the finance charge.

12.  12 C.F.R. § 226.32(b)(1)(iv) includes "Premiums or other charges for credit life, accident, health, or loss-of-income insurance, or debt-cancellation coverage (whether or not the debt-cancellation coverage is insurance under applicable law) that provides for cancellation of all or part of the consumer's liability in the event of the loss of life, health, or income or in the case of accident, written in connection with the credit transaction."

| Total-loan amount |
| --- |
| + Principal |
| + Amount financed that is not part of finance charge |
| - Prepaid-finance charge |
| - Real-estate fees retained by Accredited |
| - Unreasonable real-estate fees |
| - Credit Insurance |

The court addresses each term separately.

Principal:  The parties agree that the principal-loan amount is $ 56,000.

Amount financed that is not part of finance charge: The amount financed that is not part of finance charge "does not include any amounts already accounted for under 226.18(b)(1)."  Official Staff Interpretation, 12 C.F.R. Pt. 226, Supp. I at 226.18(b)(2) n. 1.  The parties agree that, in this case, the proper sum is $ 0.

Prepaid-finance charge:  The prepaid-finance charge is "any finance  charge paid separately in cash or by check before or at consummation of a transaction, or

withheld from the proceeds of the credit at any time."
12 C.F.R. § 226.2(a)(23).   As determined in the
discussion of Frazier's TILA claims, the prepaid-finance
charge is $ 3,470.90.

Real-estate fees retained by Accredited: Accredited
concedes that it retained the $ 250 appraisal-review fee,
the $ 66 tax-service fee, and the $ 9.50 flood-hazard-
determination fee.  The sum of these charges is $ 325.50.

Unreasonable real-estate fees: The fees at issue here
are the fees for endorsement, recording, and title
insurance.   The parties first dispute whether the
calculation includes only that portion of the fee which
is unreasonable, or the entire fee.   Frazier contends
that the court must use the entire fee, relying on the
language of 12 C.F.R. § 226.32(b)(1)(iii) that the
calculation includes "All items listed in 226.4(c)(7) ...
unless the charge is reasonable."   Accredited contends
that the court must use only the unreasonable portion.
Other courts to consider the question have concluded that

the regulation includes only the unreasonable portion of

the charge.  See Johnson v. Know Financial Group, L.L.C.,

2004 WL 1179335, at *7-8 (E.D. Pa. 2004) (Antwerpen, J.);

see also Strong v. Option One Mortg. Corp. (In re

Strong), 2005 WL 1463245, at *4-5 (E.D. Pa. 2005)

(Diamond, J.) (following Johnson).  In Johnson, the court

cited numerous cases where courts interpreted "reasonable

in amount" in § 226.4(c)(7) to mean that only

unreasonable portions of a particular charge must be

included in the finance charge.  Johnson, 2004 WL

1179335, at *8.  This court agrees that "there is no

reason to treat differently the phrase 'reasonable' in

§ 226.32(b)(1)(iii) of Regulation Z, whose purpose is to

determine which of the charges enumerated in

§ 226.4(c)(7) are to be included in the points and fees

calculation, and which specifically cites to

§ 226.4(c)(7)."  Id.  Frazier cites cases that do not

support her argument: One case assumes, without

explanation, that the entire fee is counted, Morris v.

33

Novastar Mortg. Inc., 2006 WL 2707349, at *4 (W.D. Mo. 2006) (Wright, J.), and the other two cases involved fees that were unreasonable in their entirety. McMaster v. CIT Group/Consumer Finance Inc., 2006 WL 1314379, at *6 (E.D. Pa. 2006) (O'Neill, Jr., J.) (entire fee unreasonable because duplicative); Bynum v. Equitable Mortgage Group, 2005 WL 81869, at *8 (D.D.C. 2005) (Conlon, J.) (entire fee unreasonable because illegal).

Accordingly, the court will include only those portions of the fees that are unreasonable. Here, Accredited concedes that the entire $ 50 endorsement fee is excessive, and the court has determined that $ 64 of the recording fee and $ 74 of the title insurance-fee are excessive. The sum of these fees is $ 188.

Credit insurance: The parties agree that this value is $ 0.

Total-loan amount: After carrying out the proper calculation, the total-loan amount is $ 52,015.60:

| Total-loan amount | |
|---|---:|
| Principal | $   56,000.00 |
| Amount financed that is not part of finance charge | 0 |
| Prepaid-finance charge | -      3,470.90 |
| Real-estate fees retained by Accredited | -        325.50 |
| Unreasonable real-estate fees | -        188.00 |
| Credit Insurance | -          0.00 |
| Total-loan amount | $ 52, 015.60 |

Eight percent of this amount is $ 4,161.25.


### B.   Points and fees

Under HOEPA, 'total points and fees' include:

> "(A) all items included in the finance charge, except interest or the time-price differential;

> "(B) all compensation paid to mortgage brokers;

> "(C) each of the charges listed in section 1605(e) of this title (except an escrow for future payment of taxes), unless --

> (i) the charge is reasonable;

35

(ii) the creditor receives no direct or indirect compensation; and

(iii) the charge is paid to a third party unaffiliated with the creditor; and

"(D) such other charges as the Board determines to be appropriate."

15 U.S.C. § 1602(aa)(4).  In turn, § 1605(e) lists:

"(1) Fees or premiums for title examination, title insurance, or similar purposes.

"(2) Fees for preparation of loan-related documents.

"(3) Escrows for future payments of taxes and insurance.

"(4) Fees for notarizing deeds and other documents.

"(5) Appraisal fees, including fees related to any pest infestation or flood hazard inspections conducted prior to closing.

"(6) Credit reports.

15 U.S.C. § 1605(e).  Thus, the points and fees are largely determined by the finance charge.  Title-related fees and appraisal fees are not included unless they are

unreasonable; the lender receives direct or indirect compensation for them; or they are paid to a third party affiliated with the lender.

The prepaid-finance charge, as determined above, is $ 3,470.90. For the points-and-fees calculation, the $ 22.40 in interest is subtracted, bringing the charge to $ 3,448.50. The charges that were retained by Accredited include the $ 250 appraisal-review fee, the $ 66 tax-service fee, and the $ 9.50 flood-zone-determination fee.[13] In addition, the charges that were unreasonable include the $ 50 endorsements fee, the $ 120 recording

---

[13]. The court hesitates to include the tax-service and flood-zone-determination fees because they are already included in the finance charge and counting them here arguably amounts to "double" counting. However, as the outcome is the same whether or not the court counts these fees, the court follows the direction of the statute without deciding the question.

fee, and the $ 200 title-insurance fee.[14]   The total points-and-fees amount is:

| Points-&-fees amount | |
|---|---|
| Prepaid-finance charge (less interest) | $ 3,448.50 |
| Appraisal-review fee | 250.00 |
| Tax-service see | 66.00 |
| Flood-zone-determination Fee | 9.50 |
| Endorsement | 50.00 |
| Recording fee | 120.00 |
| Title-insurance fee | 200.00 |
| TOTAL | $ 4,144.00 |

_____

14.   The parties disagree about whether HOEPA points and fees (as opposed to the HOEPA total-loan amount) include the entire unreasonable charge, or just the portion that is unreasonable.   The court need not reach this question, however, because, as explained below, the total points and fees do not exceed 8 % of the total-loan amount even if the unreasonable charges are included in their entirety, as Frazier urges.   If the court were to include only the unreasonable portion of the charges ($ 64 for the recording fee and $ 74 for the title insurance fee), the total points and fees would be even lower--$ 3,963.00.

   C.  Whether points and fees exceed 8 % of loan

As noted above, in order to qualify as a high-cost loan, the total points and fees must exceed 8 % of the total-loan amount.   The $ 4,144 that Frazier paid in total points and fees does not exceed $ 4,161.25, which is 8 % of the total-loan amount.   Thus, the loan is not a high-cost loan within the meaning of HOEPA, and no additional disclosures were required.   Accordingly, summary judgment will be granted as to Frazier's HOEPA claim.


               \*\*\*


For the foregoing reasons, summary judgment is granted as to Frazier's TILA and HOEPA claims.   An appropriate judgment will be entered.

DONE, this the 6th day of April, 2009.

         /s/ Myron H. Thompson
     UNITED STATES DISTRICT JUDGE